## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KERRY JOHNSON, et al. | * | |
| Plaintiffs | * | |
| v. | * | Civil Action No.  1:06-cv408 |
| GEICO Casualty Company, et al. | * | |
| Defendants | * | **CLASS ACTION** |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MOTION TO DISMISS OF DEFENDANTS GEICO CASUALTY COMPANY, GEICO GENERAL INSURANCE COMPANY AND GEICO INDEMNITY COMPANY

Defendants, GEICO Casualty Company, GEICO General Insurance Company and GEICO Indemnity Company, by their undersigned counsel, submit this Motion to Dismiss, and in support thereof, state:

1.    Plaintiffs have filed a class action complaint against Defendants GEICO Casualty Company, GEICO General Insurance Company and GEICO Indemnity Company alleging that Defendants have unlawfully denied or delayed payment of some or all of Plaintiffs' no-fault ("PIP") automobile insurance benefits.

2.    Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants move to dismiss the individual claims in this case because Plaintiffs have failed to state a claim upon which relief can be granted.

3.    Additionally, Defendants move to dismiss the class allegations of Plaintiffs' Complaint because Plaintiffs have failed sufficiently to allege the class action criteria of Federal Rule 23, and because, as a matter of law, Plaintiffs can never

demonstrate that common questions predominate over individual ones, nor can they demonstrate that class certification is a superior and manageable method for the fair and efficient adjudication of any controversy that exists.

    4.    Defendants adopt the arguments set forth in the Opening Brief in support of their motion.

 

*/s/ Gary Alderson*_____
Gary Alderson, Trial Bar No. 3895
Dawn L. Becker, Trial Bar No. 2975
Law Offices of Dawn L. Becker
Citizens Bank Center
919 Market Street
Suite 725
Wilmington, Delaware  19801
302-778-5784

**OF COUNSEL:**

George M. Church
Laura A. Cellucci
Miles & Stockbridge P.C.
10 Light Street
Baltimore, Maryland  21202
410-727-6464

**Attorneys for Defendants**

June 30, 2006

## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KERRY JOHNSON, et al. | * | |
| Plaintiffs | * | |
| v. | * | Civil Action No. 1:06-cv408 |
| GEICO Casualty Company, et al. | * | |
| Defendants | * | **CLASS ACTION** |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## OPENING BRIEF IN SUPPORT OF MOTION TO DISMISS BY DEFENDANTS GEICO CASUALTY COMPANY, GEICO GENERAL INSURANCE COMPANY AND GEICO INDEMNITY COMPANY

OF COUNSEL:

George M. Church
Laura A. Cellucci
Miles & Stockbridge P.C.
10 Light Street
Baltimore, Maryland  21202
410-727-6464

June 30, 2006

/s/ Gary Alderson
Gary Alderson, Trial Bar No. 3895
Dawn L. Becker, Trial Bar No. 2975
Law Offices of Dawn L. Becker
Citizens Bank Center
919 Market Street
Suite 725
Wilmington, Delaware  19801

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ i

I.   STATEMENT OF NATURE AND STAGE OF PROCEEDINGS
     AND SUMMARY OF ARGUMENT ................................................. 1

II.  ARGUMENT

     A.   Standard of Review:  Rule 12(b)(6) Is An Appropriate
          Vehicle for Dismissal At This Stage....................................... 3

     B.   The Delaware Personal Injury Protection Statute –
          An Overview        ....................................................................... 3

     C.   Dismissal of Plaintiffs' Complaint Is Warranted Under
          *Murphy v. United Services Auto Association*, 2005 WL
          1249374 (Del. Super. Ct. May 10, 2005)................................. 7

     D.   Plaintiffs' Complaint Fails To State A Claim Upon Which
          Relief Can Be Granted As To The Individual Claims ........................... 8

          1.   Count I:  Declaratory Judgment................................. 8

          2.   Count II:  Breach of Contract.................................... 9

          3.   Counts III-IX:  Fraud and Fraud-Based Actions........................ 11

               a.   Count III – Bad Faith Breach of Contract...................... 13

               b.   Count IV – Breach of Duty of Fair Dealing .................. 14

               c.   Count V – Common Law Fraud.................................... 15

               d.   Count VI – Consumer Fraud.......................................... 16

               e.   Count VII – Uniform Deceptive Trade Practice ............ 18

               f.   Count VIII – 18 Del. C. §2301 *et seq.* ........................... 19

               g.   Count IX – Racketeering Activity ................................. 21

     E.   Class Certification Requirement Of Rule 23 ......................................... 22

**Page**

F.    Dismissal Of The Class Allegations Is Appropriate
Because Plaintiffs' Complaint Fails To Allege The
Required Class Action Criteria Under Rules 23(A) .............................. 26

G.    Even If Plaintiffs Were To Amend Their Complaint
In An Attempt To Satisfy The Pleading Requirements Of
Rule 23, Their Class Action Allegations Should Be
Dismissed Because The Class Action Criteria Under
Rule 23(b)(3) Can Never Be Met As A Matter of Law ........................ 29

    1.    Individual Questions Will Predominate Over Any
Common Questions As A Matter Of Law ................................. 29

    2.    Plaintiffs Cannot Satisfy As A Matter Of Law
The Superiority And Manageability Requirements
of Rule 23(b)(3) ....................................................................... 32

H.    Plaintiffs Cannot Maintain A Class Action Under
Rule 23(B)(1)(A) or (23(B)(2)................................................................ 33

III.    CONCLUSION    .............................................................................. 35

# TABLE OF AUTHORITIES

**Page**

*Albanese v. Allstate Ins. Co.*, 1998 WL 437370
    (Del. Super. Ct. July 7, 1998) .............................................................................    5

*Allison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir. 1998)..................................   34

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)................................. 23, 24, 25

*American Surety Co. v. Franciscus*, 127 F.2d 810 (8th Cir. 1942) ...............................   13

*Andrews v. AT&T Co.*, 95 F.3d 1014 (11th Cir. 1996) ...................................................   24

*Applewhite v. Reichold Chems.*, 67 F.3d 571 (5th Cir. 1995)........................................   25

*Avery v. State Farm. Mut. Auto. Ins. Co.* 216 Ill.2d 100,
835 N.E.2d 801(2005), *reh'g denied,* 2005 Ill. Lexis 970 (Ill. Sept. 26, 2005),
*cert. denied,* 126 S.Ct. 1470 ( 2006) ..............................................................................   29

*Bixby's Food Sys. Inc. v. McKay,* 985 F. Supp. 802 (D. Ill. 1997) ...............................   21

*Board of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*
    296 F.3d 164 (3d Cir. 2002) ............................................................................   12

*Boughton v. Cotter Corp.*, 65 F.3d 823 (10th Cir. 1995)..............................................   34

*Castano v. American Tobacco Co.*, 84 F.3d 734 (5th Cir. 1996) .................................   24

*Dieter v. Prime Computer, Inc.*, 681 A.2d 1068 (Del. Ch. 1996)................................. 23, 34

*Eames v. Nationwide Mut. Ins. Co.*, 412 F. Supp 2d 31 (D. Del. 2006) ......................   17

*Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460 (D.N.J. 1998)............................   12

*Emig v. American Tobacco Co., Inc.*, 184 F.R.D. 379 (D. Kan. 1998) ........................   33

*Flowers v. State Farm Mut. Auto. Ins. Co.*, 2001 WL 1555332
    (Del. Com. Pl. July 21, 2001) .........................................................................    5

*Ford Motor Co. v. Sheldon*, 22 S.W. 3d 444 (Tex. 2000) .............................................   26

*Fresh v. State Farm Mut. Auto. Ins. Co.*, 1990 WL 964525
    (Del. Com. Pl. June 29, 1990)...........................................................................    5

**Page**

*Gaffin v. Teledyne, Inc.*, 611 A.2d 467 (Del. 1992)............................................. 31

*General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147 (1982)....................... 24, 25

*Georgine v. Amchem Prods., Inc.*, 83 F.3d 610 (3d. Cir. 1996) ................................ *passim*

*Gloria v. Allstate County Mut. Ins. Co.*, No. SA-99-CA-676-PM
    (W.D. Tex. Sept. 29, 2000)   ............................................................ 10

*Grand Ventures, Inc. v. Whaley*, 632 A.2d 63 (Del. 1993)............................. 18, 19

*Green v. Occidental Petroleum Corp.*, 541 F.2d 1335 (9th Cir. 1976) ......................... 35

*Greenspan v. Allstate Ins. Co.*, 937 F. Supp. 288 (S.D.N.Y 1996) .............................. 13, 16

*Guy v. Sills*, 1998 WL 409346 (Del. Ch. July 10, 1998)........................................ 9

*In re American Med. Sys., Inc.*, 75 F.3d 1069 (6th Cir. 1996)................................... 24, 25

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prods.*
    *Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995)............................................. 24

*In re Healthco Int'l, Inc. Sec. Litig.*, 777 F. Supp. 109 (D. Mass. 1991)................... 14

*In re LifeUSA Holding Inc.*, 242 F.3d 136 (3d Cir. 2001) ........................................ 23, 26, 33

*In re Rockefeller Center Prop., Inc.  Sec. Litig.*,
    311 F.3d 198 (3d Cir. 2002)   ............................................................ 21

*In re Rhone-Poulenc Rorer Inc.*, 51 F.3d 1293 (7th Cir. 1995)................................ 24

*Intratex v. Beeson*, 22 S.W.3d 398 (Tex. 2000)................................................ 26

*Kinnard v. Allstate Ins. Co.*, No. 992-00812
    (Mo. Cir. Ct. Nov. 15, 1999)  ........................................................... 10, 11

*Kost v. Kozakiewicz*, 1 F.3d 176 (3rd Cir. 1993) ........................................... 3

*Kurczi v. Eli Lilly & Co.*, 160 F.R.D. 667 (N.D. Ohio 1995)................................ 33

*Liberty Mut. Fire Ins. Co., v. Amundson*, 2001 WL 755375
    (Del. Super. Ct.  June 27, 2001)........................................................ 5

                                                                        **Page**

*Living Music Records, Inc. v. The Moss Music Group, Inc.*,
    827 F. Supp. 974 (D.N.Y. 1993)..................................................    21

*Maywalt v. Parker & Parsley Petroleum Co.*, 808 F. Supp. 1037
    (D.N.Y. 1992)          ..................................................................    13

*MCA, Inc. v. Matsushita Elec. Indus. Co., Ltd.*, 785 A.2d 625
    (Del. 2001)          ..................................................................    28

*McGill v. State Farm Mut. Auto. Ins. Co.*, 526 N.W.2d 12 (1994)...............    10

*Mentis v. Del. Am. Life Ins. Co.,* 1999 Del. Super. LEXIS 419
    (July 28, 1999)          ...........................................................    17

*Murphy v. United Services Auto Ass'n.,* 2005 WL 1249374
    (Del. Super. Ct. May 10, 2005)..........................................    4, 7

*O'Malley v. Boris*, 2001 WL 50204  (Del. Ch. Jan. 11, 2001).......................    34

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) ..................................    24

*Ostrof v. State Farm Mut. Auto. Ins. Co,* 200 F.R.D. 521 (D. Md. 2001) ...............    25

*Philip Morris, Inc. v. Angeletti*, 752 A.2d 200 (Md. 2000) ..........................    32

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ................................    28

*Piecknick v. Pennsylvania*, 36 F.3d 1250 (3rd Cir. 1994) ..........................    3

*Ramsey v. State Farm Mut. Ins. Co.* 869 A.2d 327 (Del. 2005) ...................    4, 30

*RCH v. Touche Ross & Co.*, 68 F.R.D. 243 (D.N.Y. 1975)...........................    13

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786
    (3d Cir. 1984), *cert. denied*, 469 U.S. 1211 (1985) ........................    15

*Somerville v. Major Exploration Inc.*, 576 F. Supp. 902 (D.N.Y. 1983)...............    13

*Southwestern Refining Co., Inc. v. Bernal*, 22 S.W. 3d 425 (Tex. 2000) ...............    33

*State Farm Mut. Auto. Ins. Co. v. Makris*, 2002 U.S. Dist. Lexis 7567
    (E.D. Pa. 2002)          .........................................................    13

**Page**

*Stephenson v. Capano Dev. Co.*, 462 A.2d 1069 (1983) ................................................. 16

*Toner v. Allstate Ins. Co.*, 821 F. Supp. 276 (D. Del. 1993)......................................... 14, 15

*United States of America v. Butler*, 74 F. Supp. 1201 (D. Fla. 2001) ......................... 13

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996)................................. 24

*Watson v. Metropolitan Prop. & Cas. Ins. Co.*, 2003 WL 22290906
    (Del. Super. Ct. September 12, 2003) ....................................................... 5, 6, 31

*Williams v. Potter*, 384 F. Supp.2d 730 (D. Del. 2005)................................................. 8

*Windham v. American Brands, Inc.*, 565 F.2d 59 (4th Cir. 1997) ................................. 25

STATUTES AND OTHER AUTHORITIES

Fed. R. Civ. P. 8                ................................................................... 8, 14

Fed. R. Civ. P. 9(b)        ................................................................... *passim*

Fed. R. Civ. P. 12(b)(6)    ................................................................... 3

Fed. R. Civ. P. 23         ................................................................... *passim*

Advisory Committee Note to Federal Rule 23 ................................................................. 34

18 U.S.C. § 1962           ................................................................... 21

28 U.S.C. § 1332           ................................................................... 1

28 U.S. C. § 1446          ................................................................... 1

6 Del. C. §2513             ................................................................... 16, 17

6 Del. C. §§2511-2526    ................................................................... 19

6 Del. C. § 2512            ................................................................... 17

6 Del. C. §2532             ................................................................... 18

**Page**

18 Del. C. §2301 ................................................................ 12, 19

18 Del. C. § 2304 ............................................................... 20

18 Del. C. §§ 2306-2311 ....................................................... 20

21 Del. C. § 2118 .............................................................. 1, 3, 31

Delaware Superior Court Civil Rule 23 ........................................ 23

Chancery Court Rule 23 ....................................................... 23

State of Delaware, Department of Insurance,
Auto Bulletin No. 10, Personal Injury Protection
(Oct. 15, 1998) ............................................................... 6

## I.    STATEMENT OF NATURE AND STAGE OF PROCEEDINGS AND SUMMARY OF ARGUMENT.

On April 19, 2006, Plaintiffs filed what purports to be a class action complaint in the Superior Court of the State of Delaware in and for New Castle County against GEICO Casualty Company, GEICO General Insurance Company and GEICO Indemnity Company.[1]    They assert a variety of causes of action against three corporate Defendants and also attempt to generically combine the three corporate Defendants under the name of "GEICO."    Essentially, Plaintiffs allege that they were denied certain personal injury protection ("PIP") benefits as required by 21 Del. C. § 2118.    Moreover, Plaintiffs assert claims on their own behalf and on behalf of

> all of GEICO's insureds who, during the period GEICO has issued insurance in Delaware, submitted covered claims for medical expenses or other benefits under PIP coverage issued as part of GEICO's contracts; but who, owing to GEICO's unreasonable, unfair, fraudulent deceptive and otherwise wrongful conduct (as shown by the regular, routine and consistent pattern and practice of claims alleged above) or denied the benefits and performances to which they were entitled, or otherwise subjected to injury.

Complaint at ¶ 34.

On June 27, 2006, Defendants removed the case from the Superior Court pursuant to 28 U.S.C. §§ 1332 and 1446.    While the Complaint asserts a variety of claims, including claims of statutory violations and common law tort and contract claims, the Complaint lacks the particularity required to place Defendants on notice of the facts which support those claims.    Rather, the Complaint consists of vague and general conclusory allegations that Defendants have unlawfully denied or delayed payment of

---

[1] Plaintiffs have failed to identify which of the three insurance companies they are insured with.

one or more types of benefits required by the statute to various unnamed members of the alleged class.

As for the individual causes of action, for those reasons set forth in detail herein, the allegations are simply insufficient to state claims upon which relief can be granted as to all claims and for those reasons, the individual claims should be dismissed.

Additionally, Defendants move to dismiss the class allegations of Plaintiffs' Complaint because Plaintiffs have failed sufficiently to set forth the required class action criteria under Federal Rule 23. Moreover, even if Plaintiffs were to amend their Complaint in an attempt to allege the threshold requirements of Rule 23, the purported class could never be certified because, as a matter of law, Plaintiffs can never, under any scenario, meet the predominance requirement of Rule 23(b)(3), given the individual nature of their and the putative class members claims that would necessarily be at issue in this action concerning payment of PIP benefits. As such, individual questions will inevitably predominate over common ones. Likewise, Plaintiffs will never be able to demonstrate that a class action is a superior and manageable method to fairly and efficiently adjudicate this case, which is a necessary component of the superiority requirement of Rule 23(b)(3). Finally, Plaintiffs' allegation that a class can be certified under Rules 23(b)(1) and 23(b)(2) simply by quoting those Rules, and without any supporting factual allegations, falls woefully short of the pleading requirement to assert a class action under those Rules. Indeed, for reasons that will be demonstrated, neither Rule 23(b)(1) nor 23(b)(2) apply to the action asserted by Plaintiffs.

2

## II.  ARGUMENT

### A.  Standard Of Review: Rule 12(b)(6) Is An Appropriate Vehicle For Dismissal At This Stage.

Rule 12(b)(6) of the Federal Rules of Civil Procedure governs motions to dismiss

for failure to state a claim and provides, in pertinent part:

> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defense may at the option of the pleader be made by motion: . . . (6) failure to state a claim upon which relief can be granted.

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not

to resolve disputed issues of material facts or decide the merits of the case. *Kost v.

Kozakiewicz*, 1 F.3d 176, 183 (3rd Cir. 1993). When considering a motion to dismiss, a

court must accept as true only all the well-plead allegations in the complaint, and must

draw all reasonable factual inferences from such allegations in the light most favorable to

the plaintiff. *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255 (3rd Cir. 1994). The court,

however, "is not required to accept legal conclusions either alleged or inferred from the

pleaded facts." *Kost*, 1 F. 3d at 183.

### B.  The Delaware Personal Injury Protection Statute – An Overview.

Delaware law requires automobile insurers to offer PIP coverage to their insureds.

The PIP statute requires that an insurer pay, up to the limits of an insured's policy,

"[c]ompensation to injured persons for <u>reasonable and necessary</u> expenses incurred

within 2 years from the date of the accident . . . ." 21 Del. C. § 2118(a)(2) (emphasis

added).

3

Despite Plaintiffs' erroneous assertion that there has been "no substantial litigation [regarding denial of PIP claims] in any forum" (Complaint at ¶ 39, emphasis added), Delaware courts have held that it is a plaintiff's burden to show the reasonableness of treatment and necessity of expenses. Indeed, in a recent putative class action case virtually identical to this one, the Honorable Richard F. Stokes for the Superior Court of the State of Delaware in and for Sussex County granted GEICO's motion to dismiss plaintiffs' class action complaint alleging unfair denial and/or reduction of PIP benefits by GEICO and other insurers. *Murphy v. United Services Auto Ass'n.,* 2005 WL 1249374 (Del. Super. Ct. May 10, 2005).[2] In *Murphy,* the plaintiffs asserted, as they do here, that "once the insurer has accepted responsibility for the injuries arising from an accident, prompt payment should be made until such time as there is an adjudication adverse to the insured . . . ." *Id.* at 4. The court disagreed, holding that "[a]s a matter of law, the burden lies on the Plaintiff, not on the insurer, to show the expenses were 'reasonable and necessary.'" *Id.* at 4. The court concluded that the words "'reasonable and necessary' qualify the scope of the delineated benefits that an insurance company must pay" and "section 2118 has been interpreted as 'fixing a statutory minimum rather than a maximum standard of protection.'" *Id.* (citations omitted). Accordingly, the court concluded that "Delaware has consistently permitted insurers to investigate the reasonableness of expenses." *Id.* at 5; *see also, Ramsey v. State Farm Mut. Ins. Co.* 869 A.2d 327 (Del. 2005) (affirming the trial court's grant of summary judgment because plaintiff failed to offer evidence that her expenses were reasonable and

---

[2] A compendium of the unreported cases cited herein is attached to Defendants' Motion for this Court's review.

4

necessary); *Flowers v. State Farm Mut. Auto. Ins. Co.*, 2001 WL 1555332 at 2 (Del. Com. Pl. July 21, 2001) (concluding that while the PIP statute is entitled to liberal construction to achieve the public policy of universal coverage, "[t]he terminology of reasonable and necessary, as used in the statute must be construed to mean coverage of ... payments required for medical treatment.   It follows that the determination of required treatment must be based on a reasonable medical assessment."); *Liberty Mut. Fire Ins. Co., v. Amundson*, 2001 WL 755375, at 2 (Del. Super. Ct.  June 27, 2001) ("In summary, the law favors PIP coverage for reasonable and necessary expenses.").  In short Delaware courts have made it clear that the burden of establishing reasonableness and necessity rests with the claimant and there is no burden upon an insurer to disprove these requirements.  Merely submitting medical bills to a PIP insurer does not satisfy either burden.

Delaware courts also have held that insurers have a right to contest the reasonableness and necessity of the expenses when evaluating PIP claims.  In *Albanese v. Allstate Ins. Co.*, 1998 WL 437370 (Del. Super. Ct. July 7, 1998), the Court upheld Allstate's right to contest the causal relationship of the plaintiff's carpal tunnel syndrome to the accident at issue.  Likewise, in *Fresh v. State Farm Mut. Auto. Ins. Co.*, 1990 WL 964525 (Del. Com. Pl. June 29, 1990), after emphasizing the "reasonable and necessary" requirement of the PIP statute (and State Farm's policy), the Court upheld State Farm's rejection of certain chiropractic treatment as not being medically necessary.  In doing so, the Court commented that "it is the function of the court to act as a fact finder and to resolve the obvious factual conflict as to whether chiropractic services ... were reasonable and necessary."  Finally, in *Watson v. Metropolitan Prop. & Cas. Ins. Co.*,

5

2003 WL 22290906 (Del. Super. Ct. September 12, 2003), a suit to recover medical expenses in which plaintiff also asserted a claim for bad faith, the court affirmed the insurer's right to contest the reasonableness and necessity of treatment and expenses. The court further concluded that the reasonableness of a physician's bill is "entirely factual" and dependent upon a variety of factors.

The Delaware Insurance Commissioner (the "Commissioner") also supports the notion that insurers are permitted to rely upon the "reasonable and necessary" standard set forth in the PIP statute when making PIP payments. According to the Commissioner, "[u]nder the applicable law, 21 Delaware Code, Section 2118(a)(2), insurers are responsible for paying the 'reasonable and necessary expenses' for PIP coverage. . . . [I]t is the Commissioner's opinion that PIP carriers must pay all of an insured's PIP cost . . . if those costs are reasonable and pertain to services that are necessarily required for the care of the insured." State of Delaware, Department of Insurance, Auto Bulletin No. 10, Personal Injury Protection ("PIP") (Oct. 15, 1998).

Put simply, neither Delaware courts nor the Commissioner has interpreted Delaware's PIP statute as mandating payment of all claims without regard to the "reasonable and necessary" standard. Nor have they ever held that it is inappropriate for an insurer to use independent medical examinations or record reviews to determine the necessity of medical treatment or to use computer programs to assist in the review of reasonableness of medical bills. To argue, as Plaintiffs do, that the issue of payment of PIP benefits under section 2118(a)(2) has not been litigated, is plainly inaccurate.

6

**C.    Dismissal of Plaintiffs' Complaint Is Warranted Under *Murphy v. United Services Auto Association*, 2005 WL 1249374 (Del. Super. Ct. May 10, 2005)**

In *Murphy v. United Services Auto Association*, the Superior Court for the State of Delaware in and for Sussex County addressed a virtually identical class action complaint filed by two class representatives against 17 insurers, including GEICO, alleging that the defendants had engaged in an industry-wide practice of unfairly denying full payment of medical expenses under Delaware's PIP statute. *Id.* at 1. Plaintiffs sought, as the seek here, monetary damages for each class member, punitive damages and requested declaratory judgment. *Id.* at 1-2. In response to plaintiffs' class action complaint, 15 defendants filed a motion to dismiss plaintiffs' complaint based on lack of standing as neither plaintiff was insured by any of these defendants. *Id.* at 2. The remaining two defendants, PNIC and GEICO, filed a Rule 12(b)(6) motion to dismiss alleging that plaintiffs had failed to plead sufficiently the Superior Court Civil Rule 23 class action criteria and even if the pleading deficiencies were cured by amendment, Plaintiffs could never, as matter of law, meet the requirements of certifying a class because of their inability, in particular, to satisfy the predominance and superiority elements of Rule 23(b)(3). The hurdles that faced the *Murphy class* plaintiffs are the same ones that confront these Plaintiffs.

In his memorandum opinion, Judge Stokes dismissed the fifteen "standing" defendants and also ruled that "[t]he Class allegations of Plaintiffs Murphy and Galley are also dismissed against GEICO and PNIC." *Id.* at 6. Only the named plaintiffs' individual claims, subject to a more definite statement and satisfaction of their burden to prove the reasonableness and necessity of claimed expenses, remained intact. *Id.*

**D.**    **Plaintiffs' Complaint Fails To State A Claim Upon Which Relief Can Be Granted As To The Individual Claims.**

    1.    **Count I: Declaratory Judgment**

Under Federal Rule of Civil Procedure 8, a plaintiff is required to provide in the Complaint "a short and plain statement of the claim showing that the pleader is entitled to relief" so as to provide a defendant with "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Williams v. Potter*, 384 F. Supp.2d 730, 733 (D. Del. 2005) (citations omitted). "Vague and conclusory factual allegations do not provide fair notice to a defendant." *Id.* (citations omitted). Moreover, if the complaint "fails to meet the liberal pleading standard of [Rule] 8, then it is subject to dismissal under [Rule] 12(b)(6) for failure to state a claim. *Id.* (citations omitted).

In Count I of their Complaint, Plaintiffs baldly assert that there is "an actual controversy of justiciable nature" that exists between the plaintiffs and GEICO which concerns "the parties' rights and obligations under the subject GEICO insurance contracts." (Complaint at ¶ 47). Yet, they fail to identify the specific justiciable controversy that requires declaratory relief. According to Plaintiffs, "the controversy is of sufficient immediacy to justify the entry of a declaratory judgment." As for the precise nature of the declaratory relief Plaintiffs seek, they make a vague and ambiguous demand for a declaration of "the parties' rights, duties, status or other legal relations under the disputed insurance contracts." (Complaint at ¶ 88b).

Plaintiffs' claim for Declaratory Judgment fails to meet the minimum pleading requirements of Rule 8. Plaintiffs' request for judicial declaration in this action is so vague that it is meaningless. Nowhere in the Complaint do Plaintiffs state what "rights, duties, status or other legal relations" they want declared. Plaintiffs have failed to apprise

Defendants of what specifically Plaintiffs want the Court to declare against GEICO and thus, have not complied with Rule 8. Absent a more definite assertion of the controversy and the desired relief, Count I of Plaintiffs' Complaint should be dismissed.

### 2. **Count II: Breach of Contract**.

In Count II of their Complaint, Plaintiffs assert a claim for Breach of Contract. Plaintiffs generally state that GEICO, as a generic group of three individual defendants, has "breached the subject contracts of insurance by delaying or denying payment of covered claims for PIP benefits" and as a result, Plaintiffs have been deprived of the benefit of the insurance coverage and of necessary medical care. (Complaint at ¶¶ 50 and 51). First, Plaintiffs fail to identify which of the three Defendants insured them or what sections or subparts of the insurance contracts were breached. No policy language is cited and the subject policies are not attached. At a minimum, in order to assert a breach of contract claim, the contracting parties must be identified.

Equally important, Plaintiffs have failed to allege any facts showing they suffered any harm as a result of GEICO's conduct. Absent allegations of any injury-in-fact, Plaintiffs fail to establish standing, as they must, to invoke the jurisdiction of the court. *See Guy v. Sills*, 1998 WL 409346, *1 (Del. Ch. July 10, 1998) (dismissing complaint for lack of standing where plaintiff's allegations failed to provide a basis for concluding plaintiff suffered an injury-in-fact as a result of defendant's allegedly improper conduct, and noting that where plaintiff's allegations are "merely conclusory (*i.e.,* without specific allegations of fact to support them) they are . . . . insufficient to withstand a motion to dismiss").

9

Notably, in cases involving insurers' supposed wrongful bill reviews, courts have repeatedly held that plaintiffs lack injury, hence standing, where they fail to allege sufficient facts showing they paid anything out-of-pocket for their disputed medical bills or were pursued for the balance. *See, e.g., Kinnard v. Allstate Ins. Co.*, No. 992-00812 (Mo. Cir. Ct. Nov. 15, 1999); *Gloria v. Allstate County Mut. Ins. Co.*, No. SA-99-CA-676-PM (W.D. Tex. Sept. 29, 2000); *McGill v. State Farm Mut. Auto. Ins. Co.*, 526 N.W.2d 12, 13 (1994).

For example, in *Gloria* -- a case alleging the same type of wrongful bill reduction theory Plaintiffs assert here -- the United States District Court for the Western District of Texas dismissed plaintiffs' federal RICO and antitrust claims[3] because they failed to allege any injury-in-fact. The *Gloria* plaintiffs alleged they "suffered damages and liability to the extent of their unpaid bills plus interest," and that they were "subject to legal liability for the unpaid balance of their bills." *Id.* at 17. In ruling that plaintiffs failed to allege any injury, the court explained:

> What plaintiffs have pleaded is the possibility that at some time in the future their "property" will be injured by Allstate's determination of reasonable medical expenses. That the harm is not imminent or actual is particularly obvious in light of plaintiffs' allegations that Allstate's allegedly illegal conduct occurred in 1997 and 1998 and, even though the fact that plaintiffs twice amended their complaint, the amended complaint contains essentially the same general allegations regarding possible injury as the original complaint filed in June 1999. There are no allegations that a health care provider who was not fully reimbursed by Allstate has challenged the determination of what are reasonable expenses, billed

---

[3] Although the finding of no injury also would have justified dismissal of the state claims, the court did not address those claims because, having disposed of the federal claims, it concluded it had no jurisdiction to do so. *Gloria*, at 24-25.

10

> plaintiffs for the balance, threatened to sue for the balance, or threatened to resort to a collection agency for payment of the balance.

*Gloria*, 17-18.    *See also Kinnard*, at 5-6 ("The pleading fails to state facts indicating how Bush's submission of [medical bills] to Allstate, and Allstate's refusal to pay "in full" gave rise to damages of $13.00.  Although Bush allegedly incurred expenses, there is no allegation that he was required to pay amounts, contrary to the terms of the Allstate policy.  The mere conclusion that Bush had damages of $13.00 does not show how that sum relates in any way to Allstate's alleged actions").  Plaintiffs' Complaint suffers from the same conclusory allegations regarding injury-in-fact as in the above cases.  Because the Complaint fails to identify which of the three entities actually contracted with Plaintiffs, what provisions of the contracts were breached and what, if any, actual injury was suffered, their claim for breach of contract must fail.

### 3.  Counts III-IX:  Fraud and Fraud-Based Actions

Counts III through IX of Plaintiffs' Complaint allege a variety of claims and causes of action.  A common thread linking each of these counts is that each is based on the alleged fraud of the Defendants.  Because Plaintiffs have failed to assert the particularity required by Rule 9(b), and because certain counts fail otherwise to properly assert a claim, each of the fraud and fraud-based counts must be dismissed.

In paragraphs 11-19 of their Complaint, Plaintiffs describe "GEICO's fraudulent practices."  After discussing the requirements of the PIP statutes (21 Del. C. §§2118 and 2118B), and GEICO's insurance contracts, Plaintiffs assert that GEICO:

- Systematically delays or denies full benefits without a reasonable basis (Complaint at ¶ 13);

- Routinely fails to pay PIP claims (Complaint at ¶ 14);

- Routinely fails to pay PIP claims within thirty (30) days (Complaint at ¶ 15);

- Reviews medical expenses, paying only usual and customary charges which Plaintiffs state is arbitrary and violates Delaware law and Defendants' insurance contracts, which, they say, requires payment of reasonable expenses (Complaint at ¶¶ 16-17); and

- Arbitrarily denies PIP benefits without an independent evaluation or expert opinion to justify its decisions (Complaint at ¶ 19).

In the allegations specific to each Plaintiff, they assert, without a shred of specificity, allegations similar to those described above – wrongful/arbitrary denial or delay in paying PIP benefits (Complaint at ¶¶ 20-33). Other than mere conclusions, they provide no detail of how Defendants committed fraud or caused them harm or damage.

Of the nine numbered counts in the Complaint, Counts III (Bad Faith Breach of Contract), IV (Breach of Duty of Fair Dealing), V (Common Law Fraud), VI (Consumer Fraud), VII (Uniform Deceptive Trade Practices), VIII (18 Del. C. §2301 *et seq.*) and IX (racketeering activity), all fall within the category of claims that involve allegations of fraudulent activity, inequitable conduct, vexatiousness, and immoral behavior, thereby requiring that Plaintiffs comply with the enhanced pleading specificity required by Rule 9(b).[4]

The purpose of Rule 9(b) is to provide a defendant with notice of precise misconduct and protect a defendant's reputation from spurious allegations of immoral behavior. *Board of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.* 296 F.3d 164 (3d Cir. 2002); *Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460 (D.N.J. 1998). Likewise, the Rule is meant to protect a defendant from harm to its reputation and

---

[4] Rule 9(b) provides in pertinent party that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

goodwill caused by unfounded claims of fraud and the like. *Maywalt v. Parker & Parsley Petroleum Co.*, 808 F. Supp. 1037 (D.N.Y. 1992). "The irreparable damage to reputations and goodwill which inevitably results from charges of fraud, and the threat of baseless strike suits are ample reasons for careful judicial review of claims alleging fraud." *Somerville v. Major Exploration Inc.*, 576 F. Supp. 902, 909 (D.N.Y. 1983). A plaintiff who files a complaint for fraud or immoral activity should only do so after a wrong is reasonably believed to have occurred and the plaintiff should not file a non-specific complaint hoping to discover fraud by conducting discovery. *RCH v. Touche Ross & Co.*, 68 F.R.D. 243, 245 (D.N.Y. 1975).[5] It is against these enhanced particularity requirements that the allegations in Counts III-IX must be scrutinized.

### a.    Count III – Bad Faith Breach of Contract

After incorporating by reference all of the non-specific and non-particular allegations which precede this Count, all of which were summarized above, Plaintiffs simply allege in Count III that GEICO's denial or delay in payment of covered PIP benefits was done without reasonable justification, that GEICO knowingly and intentionally violated its contract by arbitrarily and improperly reducing bills and that Plaintiffs suffered and will suffer injury as heretofore alleged. The underlying factual basis for this count is found in the section of the Complaint described as "GEICO's

---

[5] For additional cases assessing Rule 9(b) pleading requirements in fraud-based claims, *see also, State Farm Mut. Auto. Ins. Co. v. Makris*, 2002 U.S. Dist. Lexis 7567 (E.D. Pa. 2002) (Rule 9(b) places a defendant on notice of precise misconduct and safeguards against spurious charges of immoral and fraudulent behavior); *United States of America v. Butler*, 74 F. Supp. 1201 (D. Fla. 2001) (Rule 9(b) is meant to eliminate cases where facts of fraud are only learned through discovery); *American Surety Co. v. Franciscus*, 127 F.2d 810 (8th Cir. 1942) (A claim for insurers' vexatious failure to pay claims demands more particularity); *Greenspan v. Allstate Ins. Co.*, 937 F. Supp. 288 (S.D.N.Y 1996) (Dismissal of claim for failure to satisfy Rule 9(b)'s "heightened pleading standard" by failing to specify the false misleading statement, why and how it was fraudulent, where the statement was made, who made it, when it was made, etc.)

Fraudulent Practices," thus bringing this count within the ambit of Rule 9(b). *See In re Healthco Int'l, Inc. Sec. Litig.*, 777 F. Supp. 109 (D. Mass. 1991) (Rule 9(b)'s particularity requirements apply to all cases where fraud "lies at the core" of the claim); *see also, Toner v. Allstate Ins. Co.*, 821 F. Supp. 276, 283-284 (D. Del. 1993) and cases cited therein which discuss Rule 9(b)'s applicability to a wide variety of claims.

The allegations in support of Count III shed no light on what benefits were denied or delayed or what facts support the allegation that GEICO <u>knowingly</u> and <u>intentionally</u> violated its contracts and applicable law. Likewise, there is no specificity as to the manner in which Plaintiffs have been damaged. Even if the somewhat relaxed notice pleading requirements of Rule 8 apply, the allegations in Count III are insufficient to give Defendants fair notice or a fair idea of the particular fraudulent, knowing and intentional acts of which they are accused. Under Rule 9(b) criteria, there can be no question, as a matter of law, that the particularity required is absent from the Complaint.

### b.    Breach of Duty of Fair Dealing

Once again, in Count IV, Plaintiffs adopt the non-specific, insufficient factual allegations contained in the earlier paragraphs of the Complaint followed by the simple conclusory statement that "GEICO has failed and refused to deal fairly with Plaintiffs … in connection with their covered claims for PIP benefits (Complaint at ¶ 58) and, as a result, they "have suffered and will suffer injury . . . ." (Complaint at ¶ 59). As this Court stated in *Toner, supra*, Rule 9(b) applies "to all cases where the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud." 821 F. Supp. at 283. As indicated in the previous section, the *Toner* court noted that Rule 9(b) has been applied to a variety of claims "where fraud lies at the core of the action,"

14

ultimately concluding that the Rule applies to a claim for breach of the implied covenant of good faith and fair dealing in a contract. *Id.* at 284. The defendant in *Toner* argued that Rule 9(b) requires a plaintiff to aver the time, place and content of the defendant's deception which leads to the alleged breach. While the court agreed such allegations may be necessary in some circumstances, a plaintiff can accomplish the same thing by "using alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Id.* at 284-285 (citing *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984), *cert. denied*, 469 U.S. 1211 (1985). Yet, the court concluded that even employing the less than stringent formulation of the Rule 8 notice requirement, "plaintiff's amended complaint falls short of this specificity required" by the Rule. *Id.* at 285.

A comparison of the factual allegations contained in the Complaint currently under consideration with the allegations in *Toner* reveals that the allegations here are substantially less particular than those in *Toner*. Just as the *Toner* complaint for breach of implied duty of good faith and fair dealing was dismissed for lack of particularity, so, too, should that claim be dismissed here as well.

### c.    Count V – Common Law Fraud

There is no dispute that Rule 9(b) applies to Plaintiffs' claim against GEICO sounding in common law fraud. Yet, the necessary particularity required by the Rule is noticeably absent from the Complaint. The elements of common law fraud include a false statement by the defendant, known to be false at the time it was made coupled with the defendant's intention that the false statement be relied upon, reasonable detrimental reliance by the plaintiff on the false statement and damages emanating from such

15

reliance. *Stephenson v. Capano Dev. Co.*, 462 A.2d 1069, 1074 (1983).  In Count V, after once again incorporating by reference the previous averments, Plaintiffs then argue that the GEICO insurance contracts contain "implied representation[s] of fact that GEICO would neither delay nor deny payment of covered PIP benefits without reasonable justification" and "that GEICO would deal fairly with its insureds . . . ."  They also allege that GEICO never divulged to Plaintiffs "its intent to dishonor its contractual obligations under the disputed insurance contracts . . . ." (Complaint at ¶ 71).

Upon a review of the allegations in Count V, and even after incorporating the earlier allegations, GEICO is left to wonder what specific "affirmative acts of misrepresentation" it is alleged to have committed.  There is no statement of the particular parts of the contract that contain the implied representations of fact.  There is no reference to when the alleged fraud occurred, how it occurred, or how implied statements in the contracts could possibly have induced Plaintiffs to enter into these contracts.  There is nothing but a bald allegation that Plaintiffs relied upon implied representations allegedly made by GEICO and no attempt is made to describe how they were damaged.    None of the particularity that is required by Rule 9(b) is contained Count V or in any of the allegations incorporated into Count V.  *See Greenspan v. Allstate Ins. Co., supra.* If the Plaintiffs truly believe that GEICO has committed fraud, then GEICO is entitled to the details.

### d.    Consumer Fraud

Count VI purports to be a cause of action arising out of GEICO's alleged violation of the consumer fraud statute codified in 6 Del. C. §2513.  After incorporating by reference all of the earlier averments in the Complaint, Plaintiffs simply allege that

GEICO's conduct violated §2513. They neither describe actions by GEICO which violate the statute nor do they state which unlawful practice, of the many defined in the statute, that GEICO is alleged to have violated. Equally important is the fact that Plaintiffs only allege that as a result of GEICO's (unspecified) violations of the statute, Plaintiffs have and will suffer injury. They fail to describe how they were injured.[6]

In *Eames v. Nationwide Mut. Ins. Co.*, 412 F. Supp. 2d 31 (D. Del. 2006), this Court concluded that the particularity requirements of Rule 9(b) apply to a claim for consumer fraud under §2513(a). *Id.* at 438. In *Eames*, the Court dismissed plaintiff's complaint against Nationwide in which the plaintiff asserted that Nationwide had made certain misrepresentations when marketing its insurance policies and that plaintiff was damaged as a result. The Court concluded that the "complaint does not provide any facts concerning what documents the plaintiffs received, or when or from whom they received such documents." Thus, the Court concluded that "the complaint fails to allege fraud with the particularity necessary to satisfy Rule 9(b)" *Id.*

Not only is Rule 9(b) not satisfied, it seems equally clear that the consumer fraud statute does not apply to the claims handling practices which appear to be at the heart of Plaintiffs' Complaint. 6 Del. C. § 2512 describes the purpose of the consumer fraud subchapter: "to protect consumers ... from unfair or deceptive *merchandising* practices . . . ." A careful review of the Plaintiffs' Complaint fails to reveal any allegations of unfair or deceptive acts by GEICO in merchandising its insurance products. Rather, the

---

[6] Although §2513(b)(3) provides that this section does not apply to "matters subject to the jurisdiction of the ... insurance commissioner of this state" Delaware courts have concluded that violations of the statute permit a private cause of action against an insurance company. *Mentis v. Del. Am. Life Ins. Co.*, 1999 Del. Super. LEXIS 419 (July 28, 1999).

"fraudulent practices" (Complaint at ¶¶ 11-19) and the allegations specific to Johnson (Complaint at ¶¶ 20-26) and Anderson (Complaint at ¶¶ 27-33) all relate to GEICO's PIP claim handling and payment procedures.  As such, a comparison of the allegations in Plaintiffs' Complaint with the underlying purpose for the consumer fraud statute reveals that the statute does not apply to Plaintiffs' claims.  Because the allegations fail to satisfy Rule 9(b) and because the consumer fraud statue does not apply to these claims, Plaintiffs' claim for consumer fraud must fail.

**e.     <u>Count VII – Uniform Deceptive Trade Practices</u>**

In Count VII, Plaintiffs allege a violation of the Uniform Deceptive Trade Practices Act found at 6 Del. C. §2532 *et seq.* of the Delaware Code ("DTPA").  Section 2533 defines a dozen separate acts as deceptive trade practices.  All of these acts describe fraudulent and/or deceptive practices by persons engaging in the course of a business, vocation or occupation.  While paragraph 78 of the Complaint *generally* alleges various deceptive acts by GEICO, there is nothing in the Complaint that connects the general conclusory allegations with any particular deceptive practice defined in the Statute. GEICO has no way to determine the part or parts of the statute that form the basis of Plaintiffs' Complaint, as the Complaint fails to identify which of the dozen acts defined in the statute that GEICO is accused of violating.  In the absence of any specificity, the Rule 9(b) requirements are not met by the Complaint.

In addition to the deficiency in Plaintiffs' pleadings, the DTPA simply does not apply to a consumer claim against a business entity.  In *Grand Ventures, Inc. v. Whaley*, 632 A.2d 63 (Del. 1993), the Supreme Court of Delaware interpreted the DTPA and, because of some perceived ambiguity in the Act, discussed at length its legislative

18

history.  The Act was originally passed in 1965 as a companion bill to the Consumer Fraud Act (6 Del. C. §§2511-2526).  After an extensive analysis, the Court determined that the Consumer Fraud Act was meant to protect consumers in disputes with businesses while a "litigant has standing under the DTPA <u>only when such person has a business or trade interest at stake which is the subject of interference by the unfair or deceptive trade practices of another</u>. … [T]he Consumer Fraud Act provides remedies for violations of the vertical relationship between a buyer (the consumer) and a producer or seller . . . .  Conversely, the DTPA addresses unreasonable or unfair interference with the 'horizontal' relationship between various business interests."  *Id.* at 70 (emphasis added).  The court held that the DTPA is not intended to redress wrongs between a business and its customers.  Yet, the claims of the Plaintiffs here are precisely that – alleged wrongs between GEICO and its customers.  Because of the Rule 9(b) pleading insufficiencies and because the DTPA does not apply to a dispute between a company and its customer, Count VII must fail as a matter of law.

**f.**      <u>**Count VIII – 18 Del. C. §2301 *et seq.***</u>

Count VIII of the Complaint contains two paragraphs.  Paragraph 79 incorporates by reference, all the previous averments and paragraph 80 states that "GEICO's [unspecified] conduct is in violation of 18 Del. C. §2301 *et seq.*"  There is no allegation that the Plaintiffs were in any way damaged and there is no specificity with respect to how GEICO violated the statute.  In short, Count VIII fails to even satisfy the relaxed pleading requirements of Rule 8 and certainly does not provide the particularity required by Rule 9(b).

Title 18, Chapter 23 of the Delaware Code describes Unfair Practices in the Insurance Business.   Section 2304 (Unfair Methods of Competition and Unfair or Deceptive Acts or Practices Defined) defines the various acts or practices by insurance companies that are categorized as unfair or deceptive.  That section spans 16 pages of the Code and includes 25 definitions and scores of subparts.  The Complaint fails to provide GEICO or the Court with even a hint as to which of the definitions or numerous subparts GEICO is alleged to have violated.  Under the general notice pleading requirements of Rule 8, a defendant is, at the very least, entitled to sufficient information to provide bare notice of the substance of the Plaintiffs' claim.  Yet, a review of Count VIII provides these Defendants with no information about this claim.  GEICO is left clueless as to how it allegedly violated §2301 *et seq.*

As for Rule 9(b), because Count VIII is completely devoid of any factual detail, the claim against GEICO for unfair practices should be dismissed.   To the extent Plaintiffs are asserting a distinct cause of action based on a statute, Rule 9(b) requires, at the very least, that Plaintiffs identify that part of the statute upon which the claim is based and those facts or practices by the Defendants which would establish a statutory violation.  Count VIII provides neither.

In addition to the lack of specificity, GEICO has found no authority that suggests that Title 18, Chapter 23 provides a private cause of action against an insurer.  Rather, Chapter 23, after defining illegal acts and practices by insurers, provides an aggrieved party with a detailed administrative procedure for enforcing the statute.  *See* 18 Del. C. §§ 2306-2311.  Had the legislature intended Chapter 23 to provide litigants with a private cause of action based on the statute, it would have said so in clear and unequivocal

20

language.  Absent such authorization, and absent any authority to support a private cause of action based on Chapter 23, Count VIII of Plaintiffs' Complaint must be dismissed.

### g.    Count IX – Racketeering Activity

In Count IX, the Plaintiffs allege that "through the systematic practices complained of in the paragraphs above, GEICO has pursued a scheme to defraud its insureds.  GEICO has used the United States mails in furtherance of that scheme."  Based on this simple allegation, Plaintiffs accuse GEICO of engaging in racketeering activity as prohibited by 18 U.S.C. § 1962.  As with all of the other fraud based counts, the particularity requirements of Rule 9(b) apply to Count IX as well.  This is particularly true when a corporate defendant is accused of violating criminal and racketeering laws arising out of allegations of fraud.  *See In re Rockefeller Center Properties, Inc.  Sec. Litig.,* 311 F.3d 198 (3d Cir. 2002) (at a minimum, Rule 9(b) requires that plaintiffs support their allegations of fraud with all of the essential, factual background that would accompany the first paragraph of any newspaper story – that is, the "who, what, when, where and how" of the events at issue.); *Living Music Records, Inc. v. The Moss Music Group, Inc.,* 827 F. Supp. 974 (D.N.Y. 1993) (when a complaint alleges violations of RICO predicated on acts of mail fraud, the complaint must include "actual evidence of the content, time, place, and speaker of each alleged mailing or wire transmission" and "plaintiffs must demonstrate how each purported mailing or wire transmission further the alleged fraudulent scheme.*"); Bixby's Food Sys. Inc. v. McKay,* 985 F. Supp. 802 (D. Ill. 1997) (when plaintiffs rely upon acts of fraud, each much be pleaded with particularity).

A detailed review of the Complaint reveals that it is fraught with nothing but bald, conclusory allegations of fraudulent acts.  There is no reference to a single specific

instance or act by GEICO that can be pointed to as providing the Court and GEICO with the specifics of Plaintiffs' claim. As has been repeated throughout this Motion, GEICO ought not be hailed into Court to answer these non-specific, vague, unsupported allegations and GEICO ought not be required to defend the discovery process so that Plaintiffs can cast their net in the hopes that they will learn facts which might support a claim.

**E.**    **Class Certification Requirement Of Rule 23[7]**

Rule 23 of the Federal Rules of Civil Procedure provides, in pertinent part:

> (a)    *Prerequisites to a Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

> (b)    *Class Actions Maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

> (1)    the prosecution of separate actions by or against individual members of the class would create a risk of

> (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
>
> \*            \*            \*

---

[7] By focusing on these particular class action requirements in this Motion, Defendants in no way concede the existence of any of the other class action elements. If Defendants' motion is denied, and Plaintiffs are permitted to proceed with a motion for class certification, Defendants reserve the right to challenge formally Plaintiffs' showing as to all the Rule 23 requirements. This Motion, however, addresses only the legal deficiency of Plaintiffs' class action allegations on the face of the Complaint for purposes of this 12(b)(6) motion.

(2) the party opposing the class has acted or refused to act on ground generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3)    the Court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  The matter pertinent to the findings include:

(A)    The interest of members of the class in individually controlling the prosecution or defense of separate actions;

(B)    The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(C)    The desirability or undesirability of concentrating the litigation of claims in the particular forum;

(D)    The difficulties likely to be encountered in the management of a class action.

A party seeking class status under Rule 23 carries the burden of establishing that all prerequisites for the class action procedure have been satisfied.  *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 624 (3d. Cir. 1996), *aff'd, Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *In re LifeUSA Holding Inc.*, 242 F.3d 136, 143 (3d Cir. 2001); *Dieter v. Prime Computer, Inc.*, 681 A.2d 1068, 1071 (Del. Ch. 1996).[8]  In doing so, the litigant seeking to certify the class must meet a two-tiered set of mandatory criteria.  First, a plaintiff must provide sufficient evidence to satisfy all four of the class action prerequisites set forth in subsection (a) of Rule 23.  If a plaintiff succeeds in satisfying those four prerequisites, then he or she bears the additional burden of demonstrating that

---

[8]  Rule 23 of the Federal Rules of Civil Procedure is virtually identical to Delaware Superior Court Civil Rule 23 and Chancery Court Rule 23.

the particular class at issue falls within one of the three categories of additional class action criteria set forth in subsection (b) of the Rule. *Id.*

Federal law requires that courts apply a "rigorous analysis" to determine the propriety of class certification. Beginning with a series of decisions in the mid-1990's, federal appellate courts fleshed out stringent principles and guidelines necessary to justify certification of a class.[9]  Toward the end of the 1990's, the United States Supreme Court validated and reinforced this federal trend toward more careful scrutiny of proposed class actions in *Amchem Products Inc. v. Windsor*, 521 U.S. 591 (1997), and *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999).[10]  In *Amchem*, a case originating in the Third Circuit, the Court indicated the need for the federal courts to pay "heightened attention" to class certification requirements relating to commonality, typicality, adequacy, predominance and superiority. 521 U.S. at 620. The Court held that the proposed class failed to satisfy the "predominance" standard of Federal Rule 23(b)(3), indicating that the test for predominance of common questions is far more demanding. *Id.* at 622-625. In both cases, the Supreme Court reiterated the principle that the class action mechanism was merely a procedural means to an end, and could not be used to "enlarge, abridge, or

---

[9] *See, e.g., In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 822-23 (3d Cir. 1995) (vacating certification of a settlement class in products liability litigation); *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1230 (9th Cir. 1996) (decertifying products liability class action); *Andrews v. AT&T Co.*, 95 F.3d 1014, 1018 (11th Cir. 1996) (reversing the trial court's certification of a class of '900' telephone number service providers); *Castano v. American Tobacco Co.*, 84 F.3d 734, 752 (5th Cir. 1996) (decertifying nationwide class of tobacco claimants); *In re American Med. Sys., Inc.*, 75 F.3d 1069, 1090 (6th Cir. 1996) (reversing district court's certification of class against breast implant manufacturer and its parent); *In re Rhone-Poulenc Rorer Inc.*, 51 F.3d 1293, 1297-1304 (7th Cir. 1995) (reversing certification of nationwide class of hemophiliac claimants who received tainted blood products).

[10] It is worth noting that the Supreme Court first mentioned the "rigorous analysis" approach in *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147 (1982). At that time, the Court did not discuss with specificity what was required under this approach.

24

modify substantive rights" of litigants. *Amchem*, 521 U.S. at 618-619; *Ortiz*, 527 U.S at 845.

When implementing this heightened standard, courts no longer certify class actions merely on the pleadings, nor do they endorse an automatic presumption in favor of class certification. Trial courts are required to assess whether a class may be certified in light of the "underlying claims, defenses, relevant facts, and applicable substantive law."[11] Class proponents must satisfy **all** of the requirements for certification, and the burden of proof may not be shifted to the parties opposing certification.[12]

As demonstrated below, Plaintiffs' Complaint fails to satisfy the pleading requirements to maintain a class action. Even if Plaintiffs amend their Complaint to allege sufficiently the essential class action criteria of Rule 23(a) and 23(b)(3)[13], however, dismissal of their class action allegations would be warranted. First, Plaintiffs can never demonstrate under the rigorous analysis standard that common questions of law or fact predominate over individual ones given the individual nature of PIP claims. Moreover, Plaintiffs cannot demonstrate that handling this matter as a class action is a superior and more manageable method for the fair and efficient adjudication of this

---

[11] *See, e.g., In re American Med. Sys. Inc.*, 75 F.3d at 1069, *citing General Tel. Co. v. Falcon*, 457 U.S. 147 (1982); *Castano*, 84 F.3d 734 (5th Cir. 1996); *Applewhite v. Reichold Chems.*, 67 F.3d 571 (5th Cir. 1995).

[12] *In re American Med. Sys. Inc.*,75 F.3d at 1086 (certification reversed, in part, for improper allocation of burden of class certification to defendants to disprove satisfaction of class certification requirements); *Ostrof v. State Farm Mut. Auto. Ins. Co*, 200 F.R.D. 521, 528 (D. Md. 2001) ("There is no presumption in favor of such certification as 'would operate to remove the burden of establishing [a] right to class action treatment from the plaintiff . . . and impose it on the defendant or defendants.'"), *quoting Windham v. American Brands, Inc.*, 565 F.2d 59, 65, n. 6 (4th Cir. 1997)(en banc).

[13] The Complaint also attempts to assert class certification under Rule 23(b)(1) and 23(b)(2). (Complaint at ¶40). For reasons set forth in section H, *infra*, neither b(1) or b(2) apply to this case.

action.   Accordingly, Defendants request that Plaintiffs' class action allegations be dismissed.

### F.   Dismissal Of The Class Allegations Is Appropriate Because Plaintiffs' Complaint Fails To Allege The Required Class Action Criteria Under Rules 23(A) OR 23(B)(3).

To adequately plead a class action under Rule 23, Plaintiffs must allege all the necessary criteria of 23(a) – numerosity, commonality, typicality and adequacy – and 23(b)(3) – predominance of common questions of law or fact and superiority. *Georgine*, 83 F.3d at 624; *In re LifeUSA Holding Inc.*, 242 F.3d at 143. "Strict application of the criteria is mandated . . . . To allow lower standards for the requisites of the rule . . . would erode the protection afforded by the rule almost entirely." *Georgine*, 83 F.3d at 626.

Implicit in the prosecution of a class action is the requirement that Plaintiffs allege an adequate class definition.   "A properly defined class is essential to the maintenance of a class action." *Ford Motor Co. v. Sheldon*, 22 S.W. 3d 444, 453 (Tex. 2000).  The class definition "determines who is entitled to notice, who is entitled to relief, what relief can be awarded, and who will be bound by the judgment." *Id.*   Class members must be "clearly ascertainable by reference to objective criteria." *Id.*   A class cannot be defined by criteria that is subjective or that requires an analysis of the merits of the case. *Id.* at 454.   A class definition fails if the class that is defined is overbroad, ambiguous, vague, underinclusive or requires a finding of liability to identify members (also known as a "fail-safe class").   *See Intratex v. Beeson*, 22 S.W.3d 398, 403 (Tex. 2000).   Importantly, the failure of putative class members to set forth an adequate class definition alone is sufficient to defeat certification. *See Id.* (reversing and remanding

26

class certification because the class definition was not precise, and its members could not be ascertained until the alleged ultimate liability issue was decided).

Plaintiffs have failed to set forth an adequate class definition in their Complaint because it is defined by subjective criteria which requires an individual analysis to determine which putative class members can be included in the class. Plaintiffs have defined their class to include

> all of GEICO's insureds who, during the period GEICO has issued insurance in Delaware, submitted <u>covered</u> claims for medical expenses or other benefits under PIP coverage issued as part of GEICO's contracts; but who, owing to GEICO's unreasonable, unfair, fraudulent deceptive and otherwise wrongful conduct (as shown by the regular, routine and consistent pattern and practice of claims alleged above) or denied the benefits and performances to which they were entitled, or otherwise subjected to injury.

(Complaint at ¶ 34). (emphasis added).

By virtue of the use of the term "covered," the determination of class members is not readily ascertainable. Several factors would have to be decided in order to determine whether a claimant could potentially be a class member including, but not limited, to i) whether the injury alleged was causally related to the accident at issue, ii) whether the claim submitted was fraudulent, iii) whether the claim was barred by limitations, iv) whether the automobile insurance policy lapsed prior to the accident, v) whether the claimant was not covered under the applicable automobile insurance policy; and vi) whether the claimant was not damaged by any acts or omissions by any of the Defendant carriers. While this is not an exclusive list, establishing these factors would require a case by case analysis of each putative class members' claims file. *See, infra* at section G. In other words, a determination of class membership under Plaintiffs'

definition would require review of the merits of individual class members' claims on a case by case basis. This is contrary to the requirement that a class definition be defined by objective criteria which easily identifies the class members. Accordingly, Plaintiffs' class allegations should be dismissed for failure to set forth an adequate class definition.

Plaintiffs' Complaint also fails to allege why or how Plaintiffs Anderson and Johnson are adequate to represent the interests of the putative class members. The requirement that representative class plaintiffs must adequately protect the interests of the class is "more than a procedural technicality . . . [This requirement] has constitutional dimensions rooted in the Due Process Clause of the United States Constitution" as well. *MCA, Inc. v. Matsushita Elec. Indus. Co., Ltd.*, 785 A.2d 625, 635 (Del. 2001), *citing Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). The adequacy requirement is meant to protect the interests of parties not actively engaged in the litigation, but who nevertheless may be bound by the outcome. *See Id.* Other than the conclusory statement that Plaintiff Anderson and Plaintiff Johnson "will fairly and adequately protect [putative class members'] interests" (Complaint at ¶ 38), Plaintiffs' Complaint is devoid of any factual allegations to support the notion that they are willing and able to protect the absent putative class members in this litigation.

Finally, as discussed more fully below, the class allegations should also be dismissed because Plaintiffs fail to set forth adequately common questions of law or fact as required under Rule 23(a)(2) and more importantly, fail to allege – indeed fail to even mention – how the purported common questions of law or fact predominate over individual questions under Rule 23(b)(3) – a fatal flaw in their attempt to allege class status. *See Georgine,* 83 F.3d at 626-27. Moreover, the Complaint fails to allege

adequately that handling this matter as a class action is superior to other means of resolving PIP disputes.

**G.    Even If Plaintiffs Were To Amend Their Complaint In An Attempt To Satisfy The Pleading Requirements Of Rule 23, Their Class Action Allegations Should Be Dismissed Because The Class Action Criteria Under Rule 23(b)(3) Can Never Be Met As A Matter Of Law.**

Even assuming the truth of the allegations set forth in Plaintiffs' Complaint, Plaintiffs' claim of unlawful reduction and/or denial of PIP benefits is inappropriate for class action treatment as a matter of law because individual questions of law or fact will inevitably predominate over any questions common to the class. Moreover, handling this case as a class action will never be a superior and manageable method for the fair and efficient adjudication of the any controversy that may exist.

**1.    Individual Questions Will Predominate Over Any Common Questions As A Matter Of Law.**

Perhaps Plaintiffs' failure to even mention the predominance factor is their tacit acknowledgement that they can never satisfy that requirement in a case like this one. The predominance requirement of Rule 23(b)(3) turns on whether the common questions of law or fact predominate over questions affecting only individual members. *Avery v. State Farm. Mut. Auto. Ins. Co.* 216 Ill.2d 100, 835 N.E. 2d 801(2005), *reh'g denied,* 2005 Ill. Lexis 970 (Ill. Sept. 26, 2005), *cert. denied,* 126 S.Ct. 1470 ( 2006) (reversing a 1.1 billion dollar verdict and decertifying class because individual issues predominating over common issues); *Georgine,* 83 F.3d at 626. Under any theory of liability, issues of coverage, causation of injuries, reasonableness of medical bills and necessity of medical treatment must be addressed in each case. Likewise, inherent in the fraud and fraud-based claims is a requirement that Plaintiffs demonstrate reasonable reliance which can

29

only be established on an individual basis. Similarly, Plaintiffs' allegation in Count II that Defendants' actions deprived them of necessary medical care resulting in pain, suffering and exacerbation of their injuries also requires individual proof by each class member.

The burden is on a plaintiff to prove his or her entitlement to PIP benefits. *Ramsey v. State Farm Mut. Ins. Co., supra.* Thus, for putative class members to establish membership in the proposed class, as defined in the Complaint, would require evidence of the following:

- the claimant was actually involved in an accident;

- a valid, in-force automobile policy existed at the time of the accident;

- the claimant was covered under the no-fault provision of the policy;

- the claimant was injured as a result of the accident and/or incurred lost wages as a result of the accident;

- the claimant received necessary treatment for his or her injury;

- the treatment received was the type covered under the no-fault statute;

- the charges for the necessary treatment were reasonable;

- Defendants denied coverage for some part of that necessary treatment or paid less than those reasonable charges;

- the amount of bills submitted by the claimant was within the policy limits;

- the claimant incurred damages from Defendants' actions;

- the claimant reasonably relied upon false representations by Defendants and sustained damages as a result;

- the claimant was deprived of necessary medical care as a result of Defendants' actions which caused pain and suffering and resulted in exacerbation of the injury; and

- for any claimants whose claim denial would otherwise be barred by limitations, the claimant would have to establish that Defendants' fraud prevented the claimant from discovering of Defendants' breach or other actionable deeds.

Accordingly, in order to prevail under any legal theory, this highly individualized proof would be required for each separate claim. Put differently, since the submission of medical bills alone does *not* presumptively establish the reasonableness of those medical bills (*see, e.g., Watson v. Metropolitan Prop. & Cas. Ins. Co.*, 2003 WL 22290906 at 5-6), a case-by-case determination of reasonableness and necessity would have to be made for each class plaintiff. Each putative class plaintiff also would be required to produce expert testimony to show that he or she was treated for an injury sustained in an automobile accident, the treatment was medically necessary, and that each charge for that treatment was reasonable. Each plaintiff also would have to show that he or she incurred damages as a result of Defendants' refusal to pay for services or lost income.[14]

Plaintiffs have alleged various legal theories of liability including various actions for breach of contract, as well as fraud and fraud-related claims. Setting aside that these causes of action should be dismissed for Plaintiffs' failure to state a claim upon which relief can be granted, Plaintiffs theories of liability involve highly individualized questions of fact that must be answered. For example, Plaintiffs' claims for fraud and fraud-based statutory violations require highly individualized showings of reliance which, alone, renders the case unsuitable for class action treatment. *See Gaffin v. Teledyne, Inc.*, 611 A.2d 467 (Del. 1992) (decertifying a class of plaintiffs who sought damages for fraud because justifiable reliance must be proved for each class member, resulting in individual

---

[14] The PIP statute only mandates benefits be paid when an expense has been "incurred" by the claimant. *See* 21 Del. C § 2118(a)(2).

31

issues predominating over common ones); *Philip Morris, Inc. v. Angeletti*, 752 A.2d 200, 234-36 (Md. 2000) ("although having some common core, a fraud case may be unsuited for treatment as a class action if there was material variation in the representation made or in the kinds or degrees of reliance by the persons to whom they were addressed." Plaintiffs "must prove reliance and/or specific causation on an individual basis" and since "reliance will vary from plaintiff to plaintiff . . . [s]uch individual discrepancies obviously cannot be glossed over at trial on a class wide basis but must be allowed to be delved into . . . class member by class member.")

Accordingly, when the claims will **inherently and inevitably** produce individual issues that outweigh the common issues, class treatment is inappropriate as a matter of law. As discussed above, the class action allegations in this case should be dismissed because individual questions of law or fact will inevitably predominate over common questions of law or fact.

2. **Plaintiffs Cannot Satisfy As A Matter Of Law The Superiority and Manageability Requirements of Rule 23(b)(3).**

In addition to the predominance requirement, Rule 23(b)(3) requires that a class action is a superior to other available methods of the fair and efficient adjudication of the controversy. The Rule requires a court "to balance, in terms of fairness and efficiency, the merits of a class action against those of 'alternative available methods' of adjudication." *Georgine*, 83 F.3d at 632.

Plaintiffs assert that handling this case as a class action would be superior to other available methods and that such a proceeding would be manageable. Complaint at ¶39. As discussed above, however, there are individual issues that would require individual

determinations of liability and defenses for potentially thousands of cases. Not only would a trial require proof of Plaintiffs' individual claims and proof of Defendants' varying defenses but adjudicating this Plaintiffs' claims through a class trial would be inordinately time consuming, difficult and inefficient. *See In re LifeUSA Holding Inc.*, 242 F.3d at 148 (holding that the superiority requirement of Rule 23 (b)(3) was not satisfied because the action could not be fairly and efficiently conducted as a class action); *see also*, *Emig v. American Tobacco Co., Inc.*, 184 F.R.D. 379, 393 (D. Kan. 1998) (ruling that the trial plan would "not further judicial economy because it would necessarily require some type of individual trial for every class member and would greatly complicate the management of the class action"); *Kurczi v. Eli Lilly & Co.*, 160 F.R.D. 667, 681 (N.D. Ohio 1995) ("this action would very likely require an individual hearing for each plaintiff regarding choice of law, another individual hearing regarding causation, and still another regarding damages."). Accordingly, "[i]f it is not determinable **from the outset** that the individual issues can be considered in a manageable, time efficient, yet fair manner, then certification is not appropriate." *Southwestern Refining Co., Inc. v. Bernal*, 22 S.W. 3d 425, 435 (Tex. 2000) (emphasis added). It is clear from the outset that Plaintiffs will never be able to demonstrate that proceeding as a class action is a superior and manageable method for the fair and efficient adjudication of this action.

**H.     Plaintiffs Cannot Maintain A Class Action Under Rule 23(B)(1)(A) Or 23(B)(2).**

Without any specificity whatsoever in their Complaint, Plaintiffs assert that their class can be certified under Rule 23(b)(1) and 23(b)(2).

A class may be certified under subpart 23(b)(2) *only* if the predominant relief sought is injunctive or declaratory, as opposed to monetary. *See* Advisory Committee Note to Federal Rule 23(b)(2) ("the subdivision does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages"); *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 410 (5th Cir. 1998) (plaintiffs' claims for money damages predominated over their claims for non-monetary relief, making certification of the class inappropriate under 23(b)(2)); *Boughton v. Cotter Corp.*, 65 F.3d 823, 826 (10th Cir. 1995) ("the trial judge understood that injunctive relief was requested and that certification of a class under such circumstances was legally permissible under Rule 23(b)(2), but nevertheless decided that it was not appropriate to certify a class under that rule where the relief sought was primarily money damages. Refusal to certify for that reason was not an abuse of the trial court's discretion"); *Dieter v. Prime Computer, Inc.*, 681 A.2d 1068, 1074 (Del. Ch. 1996) (class could not be certified under Rule 23(b)(2) where primary relief requested was for monetary damages and secondary relief requested was for an injunction ordering defendant to issue stock to the class members, which itself was more compensatory than equitable); *O'Malley v. Boris*, 2001 WL 50204 at 7 (Del. Ch. Jan. 11, 2001) ("Rule 23(b)(2) class certification is not appropriate where the plaintiff is seeking primarily monetary relief").

Here, there is no question that the relief Plaintiffs seek is primarily monetary, *not* injunctive or declaratory. Indeed, the only purported request for injunctive relief is in Plaintiffs' prayer for relief which requests that the court declare the "parties' rights, duties, status or other legal relations under the disputed insurance contracts." (Complaint at ¶ 88b). Yet, Plaintiffs primary request is for monetary damages, specifically

34

compensatory damages, consequential damages, incidental damages, treble damages and punitive damages and attorneys' fees. (Complaint at ¶88c-o). Although Plaintiffs have included a request for declaratory relief, it is obvious that the relief they seek is primarily monetary.

Because the primary relief claimed is monetary, Plaintiffs also are unable to maintain a class action under Rule 23(b)(1)(A). Rule 23(b)(1)(A) is utilized to govern the conduct of the party against whom the class is imposed. The rule plainly has no bearing in this case in which Plaintiffs attempt to obtain money damages from Defendants. *See Green v. Occidental Petroleum Corp.*, 541 F.2d 1335 (9th Cir. 1976) (concluding that Rule 23 (b)(1)(A) is inapplicable to class action which seeks money damages). Accordingly, Plaintiffs also cannot maintain a class action, as a matter of law, under Rule 23(b)(1) or 23(b)(2).

## III. CONCLUSION

For the foregoing reasons, this Court should dismiss all the Counts of Plaintiffs' Complaint and the class allegations of Plaintiffs' Complaint.

OF COUNSEL:

George M. Church
Laura A. Cellucci
Miles & Stockbridge P.C.
10 Light Street
Baltimore, Maryland  21202
410-727-6464

*/s/ Gary Alderson*
Gary Alderson, Trial Bar No. 3895
Dawn L. Becker, Trial Bar No. 2975
Law Offices of Dawn L. Becker
Citizens Bank Center
919 Market Street
Suite 725
Wilmington, Delaware  19801

***Attorneys for Defendants***

35

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of June, 2006, a copy of the foregoing

was served electronically and/or by first class mail, postage prepaid, to:

Richard H. Cross, Jr., Esquire
Christopher P. Simon, Esquire
CROSS & SIMON, LLC
913 North Market Street
11th Floor
P.O. Box 1380
Wilmington, Delaware 19899-1380

Attorneys for Plaintiffs


*/s/ Gary Alderson*
Gary Alderson

36