## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

KERRY JOHNSON and )
SHARON ANDERSON, )
on behalf of themselves and all )
others similarly situated, )
               )
         Plaintiffs, )     C.A. No. 1:06-cv408 (JJF)
               )
v. )
               )     NON-ARBITRATION
GEICO CASUALTY COMPANY, )     TRIAL BY JURY DEMANDED
GEICO GENERAL INSURANCE )
COMPANY, and GEICO INDEMNITY )
COMPANY, )     CLASS ACTION
               )
         Defendants. )

## ANSWERING BRIEF IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS

Richard H. Cross, Jr. (No. 3576)
Christopher P. Simon (No. 3697)
Kristen Healey Cramer (No. 4512)
Kevin S. Mann (No. 4576)
CROSS & SIMON, LLC
913 North Market Street, 11th Floor
P.O. Box 1380
Wilmington, Delaware 19899-1380
(302) 777-4200
(302) 777-4224 facsimile

Attorneys for Plaintiffs

Dated: August 24, 2006

DOCKET NO. _____

DATE ___8/24/06___

# TABLE OF CONTENTS

TABLE OF CONTENTS................................................................................................i, ii

TABLE OF AUTHORITIES..............................................................iii, iv, v, vi, vii, viii

NATURE AND STAGE OF PROCEEDINGS.................................................................1

SUMMARY OF ARGUMENT...........................................................................................2

STATEMENT OF FACTS..................................................................................................3

     A.     Allegations Specific To Plaintiff Kerry Johnson ......................................5

     B.     Allegations Specific to Sharon Anderson.............................................8

ARGUMENT.....................................................................................................................11

     A.     Standard of Review.....................................................................................11

     B.     Pleading Standards under the Federal Rules...............................................11

     C.     The Delaware "PIP" Statute........................................................................12

     D.     Murphy Does Not Mandate Dismissal of Plaintiffs' Claims.......................15

     E.     Plaintiffs' Complaint States A Claim Upon Which Relief Can Be Granted......18

          1.     Count I: Declaratory Judgment...............................................18

          2.     Count II: Breach of Contract.....................................................19

          3.     Count III-IX: Fraud and Fraud-Based Actions..............................23

               i.     Count III – Bad Faith Breach of Contract.............................23

               ii.     Count IV – Breach of Duty of Fair Dealing.........................25

               iii.     Count V – Common Law Fraud......................................25

               iv.     Count VI – Consumer Fraud.........................................27

                v.     Count VII – Uniform Deceptive Trade Practices..........................28

               vi.     Count VIII – Unfair Practices in the Insurance Business...........30

               vii.     Count IX – Racketeering Activity......................................32

F.    Defendants' Motion to Dismiss for Plaintiff's Alleged Failure to Meet the
      Prerequisites of Class Certification Should be Denied as Premature..............33

G.    Alternatively, Defendants' Motion to Dismiss Should Be Denied Because
      Plaintiffs Have Alleged Sufficient Facts To Survive Dismissal Based on
      Rule 23........................................................................................35

      1.    Standard of Review for Dismissal of Class Certification.................35

      2.    Prerequisites to a Class Action Under Rule 23............................37

      3.    Plaintiffs' Definition of the Class Survives a Motion to Dismiss,
            and in Any Case, Plaintiffs May Amend the Definition..................38

      4.    Defendants' Motion to Dismiss for Plaintiffs' Alleged Failure
            to Satisfy the Four Requirements of Rule 23(a) Should be Denied......40

            i.    Defendants Do Not Challenge Numerosity............................40

            ii.   Defendants Do Not Challenge Commonality..........................41

            iii.  Defendants Do Not Challenge Typicality..............................41

            iv.   Defendants Motion to Dismiss for Lack of Adequacy of
                  Representation Should be Denied.......................................42

      5.    Defendants' Motion to Dismiss Based on the Requirements of
            Rule 23(b)(1) Should be Denied...............................................43

      6.    Defendants' Motion to Dismiss Based on the Requirements of
            Rule 23(b)(2) Should be Denied...............................................43

      7.    Defendants' Motion to Dismiss Based on the Requirements of
            Rule 23(b)(3) Should be Denied...............................................44

            i.    Defendants' Motion to Dismiss Based on the Predominance
                  Requirement of Rule 23(b)(3) Should be Denied........................45

            ii.   Defendants' Motion to Dismiss Based on the Superiority
                  Requirement of Rule 23(b)(3) Should be Denied........................48

CONCLUSION....................................................................................51

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

*Albanese v. Allstate Ins. Co.*,
1998 WL 437370 (Del. Super. 1998) ................................................................16, 24

*Allstate Ins.Co. v. Kaklamanos*,
843 So.2d 885 (Fla. 2003) .................................................................................22

*Barrett v. Avco Financial Services Management Co.*,
292 B.R. 1 (D. Mass. 2003) .................................................................................35

*Basic Inc. v. Levinson*,
485 U.S. 223 (1988) .................................................................................45, 46

*Brady v. Fallon*,
No. 96A-12-010-RRC, 1998 WL 283438, at *4 (Del. Super. 1998)............................29

*Brady v. Publishers Clearing House*,
787 A.2d 111 (Del. 2001) .................................................................................29

*Casson v. Nationwide Ins. Co.*,
455 A.2d 361 (Del. Super. 1982) ..........................................................................16

*Chiang v. Veneman*,
385 F.3d 256 (3d Cir. 2004)................................................................... 39, 40, 48

*Christidis v. First Pennsylvania Mortgage Trust*,
717 F.2d 96 (3d Cir. 1983) .................................................................................27

*Conley v. Gibson*,
255 U.S. 41, 78 S. Ct. 99, 2 L.Ed.2d 80 (1957) ...................................................11, 18

*Continuing Creditors' Committee of Star Telecommunications Inc. v. Edgecomb, et al.*,
385 F.Supp.2d 449 (D. Del. 2004) .........................................................................11

*Crowhorn v. Nationwide*,
2001 WL 695542 (Del. Super. 2001) .................................................................25, 26

*Duke v. Univ. of Texas at El Paso*,
729 F.2d 994 (5th Cir. 1984)................................................................................34

*Dutta v. State Farm Ins. Co.*,
769 A.2d 948 (Md. 2001) .................................................................................22

*Eames v. Nationwide*,
412 F.Supp.2d 431 (D. Del. 2006) ...............................................13, 24, 25, 27, 28

*Easton & Co. v. Mutual Benefit Life Insur. Co.*,
1993 WL 89146 (D.N.J. Feb. 98, 1993) ...................................................................46

*Eggleston v. Chicago Journeyman Plumbers*,
657 F.2d 890 (7th Cir. 1981).................................................................................37

*Eisen v. Carlisle and Jaquelin*,
417 U.S. 156 (1974) ...........................................................................................36

*Eisenberg v. Gannon*,
766 F.2d 770 (3d Cir. 1985)........................................................................36, 45, 46

*Emig v. The Am. Tobacco Co., Inc.*,
184 F.R.D. 379 (D. Kan. 1998) .............................................................................48

*Gaffin v. Teledyne*,
611 A.2d 467 (Del. 1988) ....................................................................................45

*Georgine v. Amchem Prods., Inc.*,
83 F.3d 610 (3d Cir. 1996) ..........................................................................40, 47, 49

*Gloria v. Allstate County Mut. Ins. Co.*,
No. SA-99-CA-676-PM (W.D. Tex. Sept. 29, 2000) ...........................................21, 22

*Grand Ventures, Inc. v. Whaley*,
632 A.2d 63 (Del. 1993)......................................................................................29

*Gulf Co. v. Bernard*,
452 U.S. 89 (1981) .............................................................................................36

*Guy v. Sills*,
1998 WL 409346 (Del. Ch. Ct. 1998) ....................................................................21

*Hallowell v. State Farm Mut. Auto. Ins. Co.*,
443 A.2d 925 (Del. 1982) ....................................................................................13

*Hishon v. King & Spalding*,
467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).............................................11, 18

*Hoxworth v. Blinder, Robinson & Co., Inc.*,
980 F.2d 912 (3d Cir. 1992).................................................................................47

*Hudson v. State Farm Mut. Ins. Co.*,
569 A.2d 1168 (Del. Supr. 1995) ...........................................................................13

*In re GM Corp*,
55 F.3d 768 (3d Cir. 1995) ..............................................................................36, 49

*In re LifeUSA Holding, Inc.*,
242 F.3d 136 (3d Cir. 2001)..........................................................................47, 48, 49

*In re NASDAQ Market-Makers Antitrust Litig.*,
169 F.R.D. 493 (S.D.N.Y. 1996) ........................................................................................41

*In re Prudential Ins. Co. of America*,
962 F. Supp. 450 (D.N.J. 1997) ........................................................................................41

*In re Tyson*,
2003 WL 22316548 (D. Del. 2003) ..............................................................................46, 49

*In re Warfarin Sodium Antitrust Litigation*,
212 F.R.D. 231 (D. Del. 2002)....................................................36, 41, 42, 44, 45, 46, 47, 49

*In re Westinghouse Sec. Litig.*,
90 F.3d 696 (3d Cir. 1996)................................................................................................12

*Jordan v. Fox, Rothschild, O'Brien & Frankel*,
20 F.3d 1250 (3d Cir. 1994)........................................................................................11, 18

*Kinnard v. Allstate Ins. Co.*,
No. 992-00812 (Mo. Cir. Ct. Nov. 15, 1999)....................................................................21, 22

*Kost v. Kozakiewicz*,
1 F.3d 176 (3rd Cir. 1993) ......................................................................................11, 17, 35

*Krauss v. State Farm Mutual Auto. Ins. Co.*,
No. 03C-08-252 RRC, 2004 WL 2830889 (Del. Super. 2004).....................................................31

*Kurczi v. Eli Lilly & Co.*,
160 F.R.D. 667 (D. Ohio 1995) .........................................................................................48

*Leatherman v. Tarrant County Narcotic Intelligence & Coordination Unit*,
507 U.S. 163 (1993)........................................................................................................12

*Lilligren v. Midwest Communications, Inc.*,
1989 WL 165241 (D. Minn. Oct. 25, 1989) ...........................................................................34

*Marian Bank v. Electronic Payment Serv., Inc.*,
1997 WL 811552 (D. Del. Dec. 30, 1997).....................................................................36, 41, 45

*McGill v. State Farm Mut. Auto. Ins. Co.*,
526 N.W.2d 12 (Mich. Ct. App. 1994) .............................................................................21, 22

*Mentis v. Del. Am. Life Ins. Co.*,
1999 WL 744430 (Del. Super. Ct. 1999)................................................................................28

*Merrill v. Crothall-American, Inc.*,
606 A.2d 96 (Del. 1992) ..................................................................................................25

*Muhammed v. Potter*,
2005 WL 1968448 (W.D. Missouri Aug. 16, 2005) ...................................................................34

*Murphy v. United Services Auto Assn., et al.,*
2005 WL 1249374 (Del. Super. 2005)................................................................15, 16

*Oxman v. WLS-TV,*
595 F. Supp. 557 (N.D. Ill. 1984) ..........................................................................34

*Philip Morris, Inc. v. Angeletti,*
752 A.2d 200 (Md. 2000) ........................................................................................45

*Puritt v. Allstate Ins. Co.,*
672 N.E.2d 353 (Ill. App. Ct. 1996) ............................................................22, 23, 45

*Ramsey v. State Farm Mut. Ins. Co.,*
869 A.2d 327 (Del. 2005) ........................................................................................17

*Relational Funding Corp. v. TCIM Servs., Inc.,*
No. Civ. A. 01-821-SLR, 2002 WL 655479 (D. Del. 2002)...............................11, 18

*Schmuck v. United States,*
489 U.S. 705 (1989)................................................................................................32

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,*
742 F.2d 786 (3d Cir. 1984)....................................................................................27

*Southwestern Refining Co. v. Bernal,*
22 S.W.3d 425 (Texas Ct. 2000)..............................................................................48

*Spark v. MBNA Corp.,*
178 F.R.D. 431 (D. Del. 1998)....................................................................36, 46, 48

*Stephenson v. Capano Development, Inc.,*
462 A.2d 1069 (Del. 1983) ...............................................................................26, 27

*Sterling v. Velsicol Chem. Corp.,*
855 F.2d 1188 (6th Cir. 1988).................................................................................40

*Stroik v. State,*
671 A.2d 1335 (Del. Supr. 1996).............................................................................32

*Sturm v. Clark,*
835 F.2d 1009 (3d Cir. 1987)............................................................................11, 18

*Tackett v. State Farm,*
653 A.2d 254 (Del. 1995) ..................................................................................24, 31

*Tillman v. Pepsi Bottling Group, Inc.,*
2005 WL 2127820 (D. Del. 2005) .....................................................................11, 18

*Trotter v. Perdue Farms, Inc.,*
2001 WL 1002448 (D. Del. 2001) ...........................................................................36

*Trueposition, Inc. v. Allen Telecom, Inc.,*
2003 WL 151227 (D. Del. 2003) ................................................................................ 12, 23, 33

*Uyeda v. J.A. Cambece Law Office, P.C.,*
2005 WL 1168421 (N.D. Cal. May 16, 2005) ......................................................................... 34

*Walker v. World Tire,*
563 F.2d 918 (8th Cir. 1977) .............................................................................................. 33, 34

*Watson v. Metropolitan Prop. & Casualty Ins. Co.,*
2003 WL 22290906 (Del. Super. Oct. 2, 2003) ....................................................................... 47

*Wilmington Firefighters Local 1590 v. City of Wilmington,*
109 F.R.D. 89 (D. Del. 1985) ............................................................................................. 41, 42

*Wright v. Pepsi Cola Co.,*
243 F.Supp.2d 117 (D. Del. 2003) ............................................................................ 11, 17, 18, 23

**Statutes**

6 Del. C. §§ 2513 .................................................................................................................... 1, 28
6 Del. C. § 2513(a) ........................................................................................................................ 27
6 Del. C. §§ 2532 ............................................................................................................................. 1
6 Del. C. § 2532(a)(9) .................................................................................................................... 28
6 Del. C. § 2532(a)(12) .................................................................................................................. 28
6 Del. C. § 2533(d) ........................................................................................................................ 29
18 Del. C. § 2301 ................................................................................................................ 1, 30, 31
18 Del. C. § 2304(1) ...................................................................................................................... 30
18 Del. C. § 2304(2) ...................................................................................................................... 30
18 Del. C. § 2304(16) .................................................................................................................... 30
21 Del. C. § 2118 ....................................................................... 1, 7, 10, 12, 13, 14, 17, 19, 28
21 Del. C. § 2118B ................................................................................................ 1, 4, 7, 10, 28
21 Del. C. § 2118(d) ...................................................................................................................... 13
21 Del. C. § 2904 .......................................................................................................................... 12
18 U.S.C. § 1341 ........................................................................................................................... 32
18 U.S.C. § 1961 ........................................................................................................................... 32
18 U.S.C. § 1961(a) ...................................................................................................................... 32
18 U.S.C. § 1961(4) ...................................................................................................................... 32
18 U.S.C. § 1962 ............................................................................................................................. 1
18 U.S.C. § 1962(a) ...................................................................................................................... 32

**Other Authorities**

Charles Alan Wright & Arthur R. Miller Federal Practice and Procedure § 1296 (1990) ............. 24

**Rules**

Fed. R. Civ. P. 8 ............................................................................................... 12, 17, 19, 24, 33
Fed. R. Civ. P. 8(a) ................................................................................................................ 11, 18

Fed. R. Civ. P. 9 ........................................................................................................ 12, 24, 27
Fed. R. Civ. P. 9(b) ........................................................................................ 23, 24, 29, 32, 33
Fed. R. Civ. P. 12 ............................................................................................................... 17
Fed. R. Civ. P. 12(b)(6) ...................................................................................................... 11
Fed. R. Civ. P. 23 ............................................................................ 33, 34, 36, 37, 44, 46, 50
Fed. R. Civ. P. 23(a) .......................................................................................... 37, 38, 40, 44
Fed. R. Civ. P. 23(a)(3) ...................................................................................................... 41
Fed. R. Civ. P. 23(a)(4) ...................................................................................................... 42
Fed. R. Civ. P. 23(b)(1) ......................................................................................... 37, 38, 43
Fed. R. Civ. P. 23(b)(1)(A) ................................................................................................ 43
Fed. R. Civ. P. 23(b)(2) .......................................................................................... 37, 38, 41, 44
Fed. R. Civ. P. 23(b)(3) ...................................................... 37, 38, 41, 44, 45, 46, 47, 48, 49, 50
Fed. R. Civ. P. 23 (c)(1)(c) ................................................................................................ 40

## NATURE AND STAGE OF PROCEEDINGS

On April 19, 2006, Plaintiffs filed this action seeking recovery of compensatory, punitive and treble damages, reasonable attorneys' fees, and declaratory and other relief arising from defendants' breaches of insurance contracts; bad faith breaches of insurance contracts; violations of 21 Del. C. §§ 2118 and 2118B, 6 Del. C. §§ 2513 and 2532, 18 Del. C. § 2301 *et seq.*, and 18 U.S.C. § 1962; common law fraud; and otherwise wrongful refusal to honor its contractual obligations arising under certain policies of automobile insurance issued by GEICO CASUALTY COMPANY, GEICO GENERAL INSURANCE COMPANY, and/or GEICO INDEMNITY COMPANY (collectively, "GEICO" or "Defendants"), to members and representatives of the Plaintiff class.

This is a class action brought on behalf of those of GEICO's Delaware policyholders who submitted covered claims for medical expenses or other benefits under Personal Injury Protection (or "PIP") coverage issued as part of GEICO's automobile insurance contracts, or who were otherwise entitled to GEICO's performance under such coverage; but who, owing to GEICO's unreasonable, unjustified, unfair, fraudulent, deceptive and otherwise wrongful conduct (as shown by the regular, routine and consistent pattern and practice of claims), were denied the benefits and performances to which they were entitled.

On June 27, 2006, Defendants filed a Notice of Removal to remove this case from the Superior Court for the State of Delaware to the United States District Court for the District of Delaware.

On June 30, 2006, Defendants filed a Motion to Dismiss (the "Motion") and Opening Brief in support of the Motion (the "Opening Brief"). This is Plaintiffs' response to the Motion.[1]

---

[1]    Concurrently with this answering brief, Plaintiffs filed a motion for leave to amend the Complaint. The proposed amended complaint seeks to add additional defendants, and address issues raised in the Motion.

1

## SUMMARY OF ARGUMENT

Plaintiffs have alleged, individually, and on behalf of all those similarly situated, that GEICO routinely and arbitrarily denies valid PIP claims in bad faith, and without any acceptable determination that a bill submitted under PIP is either unreasonable or unnecessary. Plaintiffs further allege that GEICO denies full payment of PIP benefits without an independent medical determination that PIP benefits are unreasonable or unnecessary. These allegations are serious, well-founded, detailed and should not be disposed of in a motion to dismiss. Plaintiffs' allegations, accepted as true, constitute valid claims that should proceed on the merits.

Additionally, Defendants' Motion to Dismiss based on Plaintiffs' supposed failure to allege or satisfy the prerequisites of class certification is premature because the action is in its infancy. This Court should consider this issue only in response to a motion for class certification, which is filed after Plaintiffs have been allowed to conduct discovery and introduce evidence to support class certification. Notwithstanding Defendants' contentions, Plaintiffs have sufficiently plead allegations to preserve this issue for certification at a later date.

## **STATEMENT OF FACTS**

GEICO is a prolific underwriter of automobile insurance policies issued in Delaware and nationwide; those policies include coverage for liability and first-party no-fault medical benefit protection for persons injured while driving or occupying motor vehicles. (Compl. ¶ 6.) In Delaware, such no-fault coverage is known as "personal injury protection" or "PIP." (*Id.*) For years, GEICO has sold PIP coverage to its customers, and it derives substantial revenues and profits from the sale of such insurance products in Delaware. (Compl. ¶ 7.) This proposed class action addresses GEICO's improper handling of PIP claims.

When an individual is injured in an automobile collision, a no-fault policy is intended to provide coverage for medical bills incurred and wages lost as a result of the accident. (Compl. ¶ 11.) Legislators have intended such policies – which are mandatory in Delaware – to provide financial security to injured motorists following an accident, regardless of who is at fault. (Compl. ¶ 18.) When an insurer such as GEICO mishandles or improperly fails to reimburse an insured for medical bills, the insured is responsible for making payment to his or her medical provider. (*Id.*)

When GEICO denies PIP benefits, in whole or in part, a PIP claimant may file a lawsuit with the Delaware Department of Insurance for relief. (Compl. ¶ 10.) In such cases, the Department of Insurance typically, if not always, orders GEICO to pay PIP benefits to the PIP claimant. (*Id.*) Notwithstanding repeated rulings by the Department of Insurance, however, GEICO continues to improperly deny, reduce and delay payments owed on bills. (*Id.*) GEICO's improper and illegal handling of PIP claims has caused individuals who are injured, in some cases through no fault of their own, to owe or pay money for medical expenses incurred as a result of an accident. If insureds do not pay medical bills submitted under their PIP policies, they are subjected to bill collectors, collection actions, negative credit ratings, and financial hardship. (Compl. ¶ 19.)

3

The Complaint details GEICO's fraudulent and illegal practices. GEICO has engaged in the systematic delay or denial of full PIP benefits to Delaware claimants in violation of their contractual obligations and the law, and without reasonable basis. (Compl. ¶ 13.) In its Notice of Removal, GEICO states that "Plaintiffs have alleged open-ended claims for such damages which, on their face appear viable." (Notice of Removal at 5.) GEICO continues:

> to put the "amount in controversy" in perspective, during the past five years alone, the three Defendants combined have paid PIP medical expenses totaling $19,762,596 to a total of 4,279 Delaware claimants. (See Affidavit of Tim Henderson, attached [to the Notice of Removal] and marked as Exhibit B.) As for the named Class Plaintiffs, Plaintiff Anderson submitted medical bills totaling $7,659 in connection with her claim, and GEICO has paid a total of $5,897. Plaintiff Johnson submitted medical bills totaling $16,720 in connection with his claim and GEICO has paid a total of $11,870.

(Notice of Removal at 6.)

In its Notice of Removal, GEICO theorizes that the amount of *compensatory* damages in this case is **$7,357,752**, based on their extrapolation of total claims paid to Delaware claimants multiplied by the percentage of claims Mr. Johnson and Ms. Anderson submitted to GEICO were actually paid by GEICO.[2] (*See* Notice of Removal at 6-7.)

By its own admission, GEICO routinely pays less than the full amount of bills submitted by its insureds under PIP (*See* Notice of Removal at 6-7.) Plaintiffs, on behalf of themselves and those similarly situated, have alleged that GEICO routinely and arbitrarily fails to pay full PIP claims in Delaware. (Compl. ¶ 14.) Additionally, GEICO routinely fails to pay PIP claims in Delaware within the thirty-day statutory period under 21 Del. C. § 2118B. (Compl. ¶ 15.)

GEICO has implemented a medical expense review system to process PIP claims. Under this "procedure," GEICO limits its payment of PIP-related expenses to "the usual and customary charges for [the claimant's] area." (Compl. ¶ 16.) GEICO does not provide an explanation for

---

[2]    GEICO qualifies this admission: "Of course, the extent of Plaintiffs' compensatory claim depends on whether reductions or denials by the Defendants were illegal or otherwise inappropriate under the statute and the insurance contracts. It also depends on whether the Johnson and Anderson claims are truly typical of the claims of putative class members." (Notice of Removal at 7.)

how they conduct a bill review, whether they, in fact, have performed an analysis of the "usual and customary charges" in Delaware, what factors they consider in making a determination of what is "usual and customary" in Delaware, how often they update their analysis, or whether the system is based on any generally accepted practice or theory. Plaintiffs allege that GEICO simply conducts an arbitrary bill reduction to benefit its bottom line. (Compl. ¶ 16.)

Additionally, GEICO wrongfully and arbitrarily denies PIP benefits without obtaining any independent medical or expert opinion justifying the termination of medical treatment for reasons of medical necessity or causation. (Compl. ¶ 19.) This denial of benefits is without regard to a determination of "usual and customary" charges in Delaware. It is a denial of benefits based on an "opinion" of the necessity of treatment that GEICO never formulated, by itself or with an expert. The denial of benefits based on necessity, in whole, or in part, without any credible medical basis is prohibited under Delaware law. (Compl. ¶ 19.)

A.    **Allegations Specific To Plaintiff Kerry Johnson**[3]

Plaintiff Kerry Johnson purchased GEICO insurance because he thought it would fully cover him in the event of an automobile accident. Mr. Johnson paid his insurance premiums to GEICO.

Plaintiff Kerry Johnson was injured in an automobile collision in New Castle County, Delaware on or about July 16, 2004. (Compl. ¶ 20.) As alleged above, Mr. Johnson was a named insured under a GEICO auto policy on the date of the accident. (*Id.*)

In connection with his claim for PIP benefits, Mr. Johnson has been subjected by GEICO to the systematic practices complained of above. (Compl. ¶ 21.) GEICO has delayed payment of covered PIP benefits to Mr. Johnson without reasonable justification. (Compl. ¶ 22.) By its own

---

[3]    Some of the factual statements contained in this section were not included in the Complaint. The allegations and supporting documentation are contained in the proposed First Amended Complaint. GEICO has conceded that it paid less than full amounts submitted by Mr. Johnson and Ms. Anderson. (*See* Notice of Removal.) These allegations provide additional detail on those reductions and denial of benefits.

admission, GEICO concedes that Mr. Johnson submitted medical bills totaling $16,720 in connection with his claim and GEICO has paid a total of $11,870. (*See* Notice of Removal at 6.)

Mr. Johnson received medical treatment from various providers including Family Practice Associates, P.A., Rehabilitation Associates, P.A., Delaware Neurosurgical Group, P.A., and Neurology Associates. Medical bills and medical records were provided to GEICO. These medical records documented the medical care providers' diagnosis, prognosis and treatment plan for Mr. Johnson. Dr. John Moore, Mr. Johnson's family doctor, ordered Mr. Johnson to undergo physical therapy as a result of the accident. (Plaintiffs' Appendix to Answering Brief at A.)[4] Dr. Barry Bakst, of Rehabilitation Associates, P.A., clearly wrote in his August 11, 2004 typed report that Mr. Johnson sustained exacerbated cervical spine pain, exacerbated lumbosacral spine pain, exacerbated anxiety/depression, myofacial pain, and thoracic strain as a result of the July 16, 2004 automobile accident. (Pl. App. at B, Dr. Bakst records). Further, Dr. Bakst states, "The initiation of rehab and chiropractic care and my treatment is 100 percent related to the motor vehicle accident of 7/16/04." (Pl. App. at B, p. 3-4).

GEICO was provided with both medical bills and medical records from Mr. Johnson. (Pl. App. at C, sample of correspondence from Mr. Johnson's attorney to GEICO). In addition, Mr. Johnson executed a medical authorization so that GEICO was able to request the records from the medical providers directly. (Pl. App. at D, completed authorizations).

Even though Mr. Johnson satisfied his burden of proof by submitting medical records detailing that his injuries and treatment were related to the July 16, 2004 accident and reasonable and necessary, GEICO refused to make full and prompt payment. For example, when Mr. Johnson submitted bills from Neurology Associates for services performed on November 17, 2004 for brachial neuritis and thoracic and lumbosacral neuritis, GEICO reduced payment on a cervical CAT scan by ten dollars. The bill was $731.00 and GEICO paid $721.00, providing the unjustified explanation that, "[t]he charge for the services exceeds an amount which would appear

---

[4]      References to Plaintiffs' Appendix shall hereafter be made as "Pl. App. at ___."

reasonable when compared to the charges of other providers in the same geographic area." (Pl. App. at E, GEICO explanation of benefit form received on February 18, 2005).    GEICO continued to use the same rationale to reduce payments for physical therapy: GEICO paid $52.31 of a $67.00 exercise bill; $37.00 of a $38.00 stimulation bill; $60.00 of a $62.00 manipulation bill; $60.00 of a $90.00 office visit; $94.00 of a $98.00 group therapy bill; $385.00 on a $536.00 bill for electromyography performed on September 16, 2004. (Pl. App. at F, GEICO explanation of benefit forms).

GEICO added another "explanation" for reducing payment on a bill for an office visit on August 11, 2004 to Rehabilitation Associates. GEICO paid $109.15 of a $214.00 office visit bill and provided the following reason: "The procedure billed exceeds the level of service required by the diagnosis given or the condition for which this patient is being treated." (Pl. App. at F, p. 6). This "explanation" is a medical conclusion that is absolutely disallowed without justification, absent reliance on an expert medical opinion. GEICO did not have such a medical expert until an "independent medical examination" ("IME") was performed in 2005.

GEICO has stated that if Mr. Johnson requests further consideration of any bill balances, a written response from the provider and the bill balance from the insured should be resubmitted. (Pl. App. at G, GEICO letter dated September 20, 2004).    As stated, Mr. Johnson routinely submitted medical records with the medical bills and the providers often submitted the bills as well.    GEICO still did not pay these bills in full.

Mr. Johnson and his personal injury attorney have been advised by a collection agency, Delaware Recovery Systems, Inc., on behalf of Rehabilitation Associates, that if said attorney does not provide a letter of protection promising to pay the balance, they will "take appropriate action to collect the balance." (Pl. App. at H, Letter from debt collector dated March 31, 2005).

Additionally, GEICO has, in bad faith and without justification, failed to pay or deny Mr. Johnson's claims for PIP benefits within thirty days of its receipt of the same, in violation of 21 Del. C. §§ 2118 and 2118B. (Compl. ¶ 25.)

7

**B.**    <u>Allegations Specific to Sharon Anderson[5]</u>

Plaintiff Sharon Anderson purchased GEICO insurance because she thought it would fully cover her in the event of an automobile accident. Ms. Anderson paid her insurance premiums to GEICO.

Ms. Anderson was injured in an automobile collision in New Castle County, Delaware on or about August 3, 2004. (Compl. ¶ 27.) As alleged above, Ms. Anderson was a named insured under a GEICO auto policy on the date of the accident. (*Id.*)

In connection with her claim for PIP benefits, Ms. Anderson has been subjected by GEICO to the systematic practices complained of above. (Compl. ¶ 28.) GEICO delayed payment of covered PIP benefits to Ms. Anderson without reasonable justification. (Compl. ¶ 29.) By its own admission, GEICO concedes that Ms. Anderson submitted medical bills totaling $7,659 in connection with her claim, and GEICO has paid a total of $5,897. (Notice of Removal at 6.)

GEICO has denied payment of covered PIP benefits to Ms. Anderson without reasonable justification. (Compl. ¶ 30.) GEICO denied payment of covered PIP benefits purportedly because it determined that Ms. Anderson's treatment "would provide no therapeutic benefit during the chronic period of the diagnosed conditions," notwithstanding the fact that GEICO conducted no medical examination of Ms. Anderson prior to making that determination. (Compl. ¶ 31.)

Ms. Anderson received medical treatment from Stoney Batter Family Medicine and Pro Physical Therapy for her injuries related to the August 3, 2004 accident. She treated for headaches, and neck and back pain. Dr. Horatio Jones, of Stoney Batter Family Medicine, ordered physical therapy, which she received at Pro Physical Therapy from July 19, 2005 through October 27, 2005. (Pl. App. at I.) Dr. Jones provided a detailed, typed report dated November 14, 2005 that states that as of Ms. Anderson's last visit on October 10, 2005, "she was left with

---

[5]    *See* fn. 4 *infra.*

8

mild neck pain and low back pain which may be exacerbated from time to time." (Pl. App. at I, Dr. Jones report). The report also explained that Ms. Anderson had prior low back pain, but "it is within a reasonable degree of medical probability that the accident which occurred on August 3, 2004 did exacerbate her low back condition." (Pl. App. at I, p. 2.).

Ms. Anderson received treatment at Stoney Batter Family Medicine on August 5, 2004, and GEICO paid $145.00 of a $145.00 bill. Strangely, on June 13, 2005, when Ms. Anderson had the same type of office visit and was charged $145.00, GEICO only paid $114.00. (Pl. App. at J, Stoney Batter Family Medicine Billing Summary). Ms. Anderson was informed by her provider that "Balance shown [$31.00] is patient's responsibility." (Pl. App. at J, p. 2).

From July 21, 2005 to October 27, 2005, Ms. Anderson treated at Pro Physical Therapy and GEICO routinely failed to pay her bills in full. For example, on July 21, 2005, GEICO paid $0 of a $35.00 stimulation bill and $0 of a $30.00 hot/cold pack treatment bill. (Pl. App. at K, p. 1.) GEICO provided the following "explanation": "The provider performed a physical medicine modality that would provide no therapeutic benefit during the chronic period of the diagnosed conditions." (Pl. App. at K, p. 2.) GEICO had not performed an IME and therefore had no medical expert basis for giving such an "explanation." It appears that GEICO continued to use a variation on that explanation to deny some physical therapy bills in full: "physical medicine modalities the [sic] provide no therapeutic benefit during the chronic period of the diagnosed condition are not reimbursable." (Pl. App. at K.)

With respect to bills for hot/cold pack treatment and stimulation on October 4, 2005, October 6, 2005, October 10, 2005, and October 12, 2005, GEICO denied payment based on a new "explanation": "Submit medical records so that we may determine the length of acute care based on the patient's age, diagnosis and medical intervention. The medical records must include positive, specific, objective findings to indicate the appropriate use of the physical modality as well as a progression to an active therapeutic exercise program with a decrease in passive modalities. If we are unable to validate ongoing acute care, we may seek independent medical

review." (Pl. App. at L, p. 3.) Ms. Anderson provided GEICO with relevant medical records. Although GEICO is not permitted to "determine the length of care" without a medical expert, which it did not have, GEICO denied payment. Ms. Anderson was left liable with a balance of $1,302.00. (Pl. App. at L, Pro Physical Therapy billing summary.)

As in Mr. Johnson's case, and all those similarly situated, GEICO failed to pay or deny Ms. Anderson's claims for PIP benefits within thirty days of its receipt of the same, in violation of 21 Del. C. §§ 2118 and 2118B. (Compl. ¶ 32.)

## ARGUMENT

### A.    Standard of Review

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of a complaint. *Wright v. Pepsi Cola Co.*, 243 F.Supp.2d 117, 120 (D. Del. 2003) (citing *Conley v. Gibson*, 255 U.S. 41, 45-46, 78 S. Ct. 99, 2 L.Ed.2d 80 (1957); *Sturm v. Clark*, 835 F.2d 1009, 1011 (3d Cir. 1987)).  The purpose of a motion to dismiss is not to resolve disputed issues of material facts or decide the merits of the case. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3rd Cir. 1993).  In reviewing a motion to dismiss for failure to state a claim, "all allegations in the complaint and all reasonable inference that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the non-moving party. *Wright*, 243 F.Supp.2d at 120 (citing *Sturm*, 835 F.2d at 1011; *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994)).  A court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Wright*, 243 F. Supp.2d at 120 (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Jordan*, 20 F.3d at 1261).

The moving party has the burden of persuasion. *Continuing Creditors' Comm. of Star Telecomm. Inc. v. Edgecomb et al.*, 385 F.Supp.2d 449, 456 (D. Del. 2004).

### B.    Pleading Standards under the Federal Rules

Fed. R. Civ. P. 8(a) requires "'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Tillman v. Pepsi Bottling Group, Inc.*, 2005 WL 2127820, at *6 (D. Del. 2005) (Pl. App. at M) (citing *Relational Funding Corp. v. TCIM Servs., Inc.*, No. Civ. A. 01-821-SLR, 2002 WL 655479, at *3 (D. Del. 2002) (Pl. App. at N)).  The statement need not contain detailed facts, but it requires that plaintiff give defendant fair notice of what the claim is and the grounds upon which it rests. *Id.* (citing *Conley*, 355 U.S. at 41.)  A plaintiff is not required to state precisely each element of the claim. *Id.* (citing *Relational Funding Corp.*, 2002 WL 655479, at *3.)

11

Rule 9 of the Federal Rules of Civil Procedure "requires that all pleadings of fraud or mistake 'be stated with particularity.'" *Trueposition, Inc. v. Allen Telecom, Inc.*, 2003 WL 151227, at *5 (D. Del. 2003) (Pl. App. at O.). "These averments, however, remain subject to the liberal pleading standard of Rule 8, which requires only a 'short and plain' statement of a claim or defense. *Id.* (citing *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 703 (3d Cir. 1996); *Leatherman v. Tarrant County Narcotic Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993) (holding that federal courts may not impose a more demanding standard of pleading beyond "the liberal system of 'notice pleading' set up by the Federal Rules")).

## C.   The Delaware "PIP" Statute

PIP coverage is required for all motor vehicles registered in Delaware. The purpose and intent of the Delaware PIP statute is important: that drivers and their passengers are promptly and efficiently covered for medical treatment and lost wages in the event of injury or incapacity following a collision. Legislators recognized that bills for medical treatment and recovery for lost wages must be immediate, and that issues of liability can resolve responsibility ultimately, without sacrificing expedient delivery of treatment or wages. While legislators imposed an obligation on drivers to purchase coverage, they also imposed a burden on the insurer to promptly pay medical bills and lost wage claims submitted by the insured. Plaintiffs allege that GEICO has reaped the benefits of guaranteed premiums while denying benefits.

The Delaware PIP statute – 21 <u>Del</u>. <u>C</u>. § 2118 – provides, in part, as follows:

(a) No owner of a motor vehicle required to be registered in this State, other than a self-insurer pursuant to § 2904 of this title, shall operate or authorize any other person to operate such vehicle unless the owner has insurance on such motor vehicle providing the following **minimum** insurance coverage:

(2) a. Compensation to injured persons for reasonable and necessary expenses incurred within 2 years from the date of the accident for:

1. Medical, hospital, dental, surgical, medicine, x-ray, ambulance, prosthetic services, professional nursing and funeral services. Compensation for funeral services, including all customary charges and the cost of a burial plot for 1 person, shall not exceed the sum of $5,000. Compensation may include

12

expenses for any nonmedical remedial care and treatment rendered in accordance with a recognized religious method of healing.

2. Net amount of lost earnings. Lost earnings shall include net lost earnings of a self-employed person.

21 Del. C. § 2118 (emphasis added).

21 Del. C. § 2118 imposes specific requirements on the handling of PIP claims. Subsection (c), for example, requires insurers to "promptly process" PIP claims, and to either pay or deny them within thirty days. It also requires that an insurer's denial of coverage be explained to the insured in writing.

21 Del. C. § 2118B(d) provides in part that if an insurer fails to pay covered PIP benefits within thirty days, and does so "in bad faith," the claimant is entitled to recover (in addition to the principal amount due) "an award for the costs of the action and the prosecution of the action, including reasonable attorney's fees...."

In interpreting the PIP statute, it is important for the court to recognize the public policy purpose of Delaware's no-fault insurance laws. Delaware's no-fault law is intended to protect the victims of automobile accidents in all situations, by providing immediate medical coverage and reimbursement for lost wages. *See Hudson v. State Farm Mut. Ins. Co.*, 569 A.2d 1168, 1171 (Del. 1995). In *Hudson*, the Delaware Supreme Court recognized the shift in public policy with respect to automobile liability insurance and applied that rationale to its analysis of the Delaware PIP statute. *Id.* at 1171-1172. In interpreting the PIP statute in the context of GEICO's motion, Plaintiffs urge this Court to consider the public policy issues inherent in the statute.

In interpreting PIP coverage in a contract, it is also important to understand the nature of insurance contracts, generally. Insurance contracts are adhesion contracts; as a general rule, adhesion contracts are construed strongly against the insurer, and in favor of the insured. *See Eames v. Nationwide*, 412 F.Supp.2d 431, 435 (D. Del. 2006); *Hallowell v. State Farm Mut. Auto. Ins. Co.*, 443 A.2d 925, 926 (Del. 1982).

13

When the Delaware General Assembly passed 21 Del. C. § 2118, it intended "to prevent the financial hardship and damage to personal credit ratings that can result from the unjustifiable delays of [PIP] payments." (Compl. ¶ 18.)  If an insurer does not pay a medical bill in part, or in full, the insured is obligated to pay any remaining balance.  (Compl. ¶ 18.)  Doctors in Delaware do not write off unpaid balances, and they will collect unpaid medical bills directly from the insured.  (Id.)  If bills are not promptly paid, Delaware doctors refer unpaid medical bills to collection agencies.  (Compl. ¶ 18.)    When GEICO withholds a portion of the treating physician's reasonable fee, without justification, it offers no protection to the insured, or the insured's personal credit ratings.  (Id.)

When an insured submits claims under PIP, it does so with the implicit requirement that it act in good faith, and the express requirement that it act under the law.  Typically, the insured's medical provider submits a bill directly to the insurer.  The insurer then typically obtains the medical records for the treatment that accompanies the bills.  In those medical records, the treating doctors, including general medical doctors as well as specialists, including neurologists, orthopedics, surgeons, and physical therapists, provide the doctor's notes, and the patient's diagnosis, prognosis, treatment and treatment plan.  In this case, Plaintiffs have alleged that they, and all others similarly situated, have submitted bills under the PIP statute for payment by GEICO, in the manner described above, and that, pursuant to the statute, the bills are submitted because they represented reasonable and necessary medical expenses.  (See Compl. ¶¶ 20-23.)

In its Notice of Removal, GEICO states that the total amount of medical bills submitted to the GEICO Casualty Company, GEICO General Insurance Company, and GEICO Indemnity Company by Delaware residents in the past five years alone is estimated at $27,120,348.  By its own admission, GEICO concedes that Ms. Anderson submitted medical bills totaling $7,659 in connection with her claim, and GEICO has paid only $5,897.  GEICO concedes that Mr. Johnson submitted medical bills totaling $16,720 in connection with his accident, but that it has paid only $11,870.  GEICO theorizes that the amount of *compensatory* damages to its Delaware insureds

14

could be as much as $7,357,752, based on their extrapolation of total claims submitted by Delaware claimants in the past five years multiplied by the percentage paid by GEICO of the total claims submitted by Mr. Johnson and Ms. Anderson.[6]  (*See* Notice of Removal at 6-7.)  If Plaintiffs' allegations (and reasonable inferences therefrom) are true – which this Court must accept for purposes of a motion to dismiss – GEICO routinely pays less than the full amount submitted by its Delaware insureds under PIP, and GEICO realizes a significant windfall with this arbitrary and illegal practice.  The statute that was intended by legislators to ensure the reasonably prompt processing and payment of sums owed by insurers to their policyholders and other persons covered by their policies, and to prevent the financial hardship and damage to personal credit ratings has been turned on its head by GEICO's fraudulent and illegal practice.

### D.    Murphy Does Not Mandate Dismissal of Plaintiffs' Claims

GEICO cites *Murphy v. United Services Auto Assn., et al.*, 2005 WL 1249374 (Del. Super. 2005) (Pl. App. at P.) for the proposition that Plaintiffs carry the burden of proof in a PIP case.  (*See* Def. Op. Brief at 4-5.)  In *Murphy*, the Superior Court for the State of Delaware dismissed causes of action brought by the plaintiffs on behalf of a class of plaintiffs, on *standing* issues, but allowed claims of the individual plaintiffs to proceed against the insurers under PIP.[7]  Plaintiffs respectfully submit that *Murphy*, while non-binding in precedent, does not stand for the proposition that a plaintiff must prove its case for recovery under PIP, and ancillary damages related thereto, in a **complaint**.  While *Murphy* discusses the burden a plaintiff might have in prosecuting a disputed claim under PIP on the merits, the court did not bar plaintiffs from seeking recovery under PIP without providing in the complaint testimony from medical experts as to the

---

[6]    GEICO qualifies this admission: "Of course, the extent of Plaintiffs' compensatory claim depends on whether reductions or denials by the Defendants were illegal or otherwise inappropriate under the statute and the insurance contracts.  It also depends on whether the Johnson and Anderson claims are truly typical of the claims of putative class members." (Notice of Removal at 7.)

[7]    For reasons set forth in this brief, issues relating to the Plaintiffs as a representative class will be addressed later.

reasonableness or necessity of the bills submitted to the insured. Further, *Murphy* did not address the defendants' burden in rebutting the allegation that an insurer is denying coverage arbitrarily, in bad faith, and without any reasonable determination that a bill is either unreasonable or unnecessary.

*Murphy* and other courts have expressly recognized that an insurer is permitted to investigate the reasonableness of expenses, the very practice that is at issue in the case at bar. *Murphy,* 2005 WL 1249374 at *2; *Albanese v. Allstate Ins. Co.*, 1998 WL 437370 (Del. Super. 1998) (Pl. App. at Q.); *see also,* Def. Op. Brief at 5-6. In *Albanese*, the Delaware Superior Court considered a motion by the defendant for partial summary judgment on the bad faith allegations in the complaint. *See Albanese*, 1998 WL 437370, at *1. The Court held that a determination of "bad faith" requires the plaintiff to show that the insurer's refusal to honor a claim was clearly without any reasonable justification. *Id.* at *2. The Court wrote that, "[t]he question to be asked is 'whether at the time the insurer denied liability, there existed a set of facts or circumstances known to the insurer which created a *bona fide* dispute and therefore a meritorious defense to the insurer's liability.'" *Id.* (citing *Casson v. Nationwide Ins. Co.*, 455 A.2d 361, 369 (Del. Super. 1982)).

Indeed, GEICO's "investigation" and the facts and circumstances of its conduct when presented with valid PIP claims is one of the central issues in this case. Plaintiffs have alleged, individually, and on behalf of all those similarly situated, that GEICO routinely and arbitrarily denies PIP claims in bad faith, and without any acceptable determination that a bill submitted under PIP is either unreasonable or unnecessary. Plaintiffs further allege that GEICO denies full payment of PIP benefits without an independent medical determination that PIP benefits are unnecessary, as occurred in both Mr. Johnson and Ms. Anderson's cases.

The allegations in the Complaint are premised on allegations that reasonable and necessary medical bills submitted to GEICO under PIP are denied, not because of an investigation into their reasonableness and necessity, but instead because GEICO acts in fraud, in

16

breach of its contracts, in bad faith and in violation of the law for its own financial gain. The facts and circumstances of these allegations should not be disposed of in a motion to dismiss. Plaintiffs' allegations, accepted as true, constitute valid claims that should proceed to adjudication on the merits.

GEICO concedes that a contest over the reasonableness or necessity of treatment and expenses is factual. (*See* Def. Op. Brief at 6.) At this juncture, a determination of this case on the merits is premature; the Court must accept Plaintiff's allegations as true. *Wright*, 243 F. Supp.2d at 120. Accepting all reasonable inferences and allegations in Plaintiffs' Complaint as true, and absent undisputed facts to the contrary, this Court should not find as a matter of law at this stage that no relief could be granted under any set of facts that could be proved consistent with the allegations. *See Wright*, 243 F. Supp.2d at 120.

GEICO also cites *Ramsey v. State Farm Mut. Ins. Co.*, 869 A.2d 327 (Del. 2005) to support its proposition that Plaintiffs must prove, ***at this juncture***, that claims for PIP benefits are reasonable and necessary. In *Ramsey*, the Delaware Supreme Court affirmed the factual findings of the Superior Court for the State of Delaware following cross motions for summary judgment for lost wage claims submitted by the insured. *Ramsey*, 869 A.2d at 327. The Court found that the insured offered no evidence that her lost earnings were "necessary" within the meaning of 21 Del. C. § 2118. Again, this case is inapplicable to the pleading standards required by Fed. R. Civ. P. 8, or the standard to dismiss a complaint under Fed. R. Civ. P. 12. Nor does *Ramsey* address the viability of claims that the insurer acted in bad faith, in fraud, or in violation of its contractual obligations and the law by systematically denying PIP benefits without any basis in law or fact.

Again, as GEICO recognizes in its own brief, the purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed issues of material facts or decide the merits of the case. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3rd Cir. 1993); *see also* Def. Op. Brief at 3. For the reasons set forth herein, this Court should not find as a matter of law that no relief could be granted under any set of facts that could be proved consistent with Plaintiffs' allegations. *See*

*Wright*, 243 F.Supp.2d at 120 (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Jordan*, 20 F.3d at 1261)).  Defendants' motion should be denied.

**E.    Plaintiffs' Complaint States A Claim Upon Which Relief Can Be Granted.**

GEICO is on sufficient notice to respond to the Complaint.  Taking all allegations in the Complaint and all reasonable inferences that can be drawn therefrom as true, and viewing in the light most favorable to the non-moving party, Plaintiffs have stated a claim for which relief can be granted.  *See Wright*, 243 F. Supp.2d at 120 (citing *Sturm*, 835 F.2d at 1011; *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994)).  Defendants have failed to demonstrate that no relief could be granted under any set of facts that could be proved consistent with Plaintiffs' allegations.  *Wright*, 243 F. Supp.2d at 120.

**1.    Count I: Declaratory Judgment**

Fed. R. Civ. P. 8(a) requires Plaintiffs to set forth "'a short and plain statement of the claim showing that the pleader is entitled to relief.'"  *Tillman v. Pepsi Bottling Group, Inc.*, 2005 WL 2127820, at *6 (D. Del. 2005) (Pl. App. at M) (citing *Relational Funding Corp. v. TCIM Servs., Inc.*, No. Civ. A. 01-821-SLR, 2002 WL 655479, at *3 (D. Del. 2002) (Pl. App. at N.)).  The statement need not contain detailed facts, but it requires that plaintiff give defendant fair notice of what the claim is and the grounds upon which it rests.  *Id.* (citing *Conley*, 355 U.S. at 41.)

Plaintiffs have put GEICO on notice that it routinely violates both its contractual obligations with its insureds, and that it routinely violates Delaware law governing claims submitted under the Delaware PIP statute.  (*See, e.g.*, Compl. ¶¶ 13, 14, 16, 18, 19-33.)  Plaintiffs seek a declaration as a matter of law that GEICO violates its contractual obligations and the PIP statute.  (*See* Compl. ¶¶ 42-48.)

To support this claim for declaratory relief, Plaintiffs allege, on behalf of themselves and members of the purported class, that:  Plaintiffs are insureds of GEICO (Compl. ¶¶ 2-4); that GEICO was required to pay PIP benefits under Delaware law and the insurance contracts (Compl.

¶¶ 42-48); and that GEICO wrongfully and arbitrarily denied full PIP benefits (Compl. ¶¶ 19, 26, 33). Plaintiffs seek a declaratory judgment that (i) GEICO's arbitrary bill denial and reduction violates 21 <u>Del. C.</u> § 2118 and that (ii) GEICO violated its contracts with its insureds by failing to pay claims submitted in accordance with Delaware's PIP statute. (Compl. ¶¶ 43-48; *see also*, Plaintiffs' general claims for relief, Compl. at 19.) Plaintiffs respectfully submit that their claim for declaratory relief is sufficient to satisfy the requirements of Rule 8.[8]

## 2. **Count II: Breach of Contract**

Plaintiffs have sufficiently pleaded a short and plain statement for relief for breach of contract. In the Complaint, Plaintiffs repeatedly allege that they, and all those similarly situated, entered contracts for insurance with GEICO Casualty Company, GEICO General Insurance Company, and/or GEICO Indemnity Company, defined collectively as "GEICO". (Compl. ¶¶ 3, 4, 6, 20, 27, 34.)[9] Plaintiffs repeatedly allege that GEICO denied PIP benefits expressly provided by these contracts. (Compl. ¶¶ 13, 14, 15, 16, 17, 22, 23, 25, 26, 28, 29, 30, 31, 32, 33.) As a result, Plaintiffs allege that GEICO has breached its contractual obligations to its insureds. (Compl. ¶ 50.) Plaintiffs, and all those similarly situated, have been harmed by GEICO's breaches. (Compl. ¶¶ 13, 18, 19, 34.)

Again, notwithstanding its purported lack of knowledge regarding these claims, GEICO has full and complete knowledge of the contracts at issue. The Plaintiffs are clearly identified. GEICO wrote the contracts with each of the Plaintiffs and all parties similarly situated. It has full and complete knowledge of Plaintiffs Johnson and Anderson, and the claims submitted by those parties under PIP. (*See* Notice of Removal at 6-7; *see also* Affidavit of Jaci Todd submitted in

---

[8]    Plaintiffs respectfully seek leave of this Court to amend any claim that the Court deems insufficiently plead.

[9]    Contemporaneously with this brief, Plaintiffs filed a Motion for Leave to Amend the Complaint seeking to add additional related entities who contracted with Delaware residents. Plaintiffs seek to amend the Complaint to name Government Employees Insurance Company and Criterion Insurance Agency, Inc. (Colonial County Mutual Ins.) as additional defendants, as those entities also appear on correspondence and contracts with Plaintiffs related to this matter, and on information belief, those entities contract with Delaware residents.

support of Notice of Removal). GEICO is sufficiently on notice to litigate claims for breach of contract for its Delaware insureds.

GEICO also argues that Plaintiffs fail to specifically identify which of the three Defendants were parties to the contract, or which section of the policy has been breached. Without citing any authority for dismissal, GEICO claims that "[a]t a minimum, in order to assert a breach of contract claim, the contracting parties must be identified." (Defendants' Motion to Dismiss at pg. 9).[10] First, Plaintiffs have provided GEICO with their names and each of the policy numbers. Second, Plaintiffs are unaware at this time which GEICO entities have contracted with which of their Delaware insureds. Notwithstanding, GEICO has already detailed for this Court the PIP coverage and claims of each of the named Plaintiffs, including the claim amounts, the amounts paid, and the claim numbers. (*See*, Notice of Removal at pg. 6; Affidavit of Jaci Todd, submitted in Support of Notice of Removal at ¶ 2.)

"GEICO Casualty Company," "GEICO General Insurance Company" and "GEICO Indemnity Company" appear on correspondence to the Plaintiffs regarding their claims submitted under PIP. According to GEICO's website, GEICO Casualty Company, GEICO General Insurance Company, and GEICO Indemnity Company are all affiliates of Government Employees Insurance Company and the "companies market collectively under the trade names GEICO and GEICO Direct." (*See* www.geico.com/legal.htm.) Since all three companies market their insurance products under the name GEICO, then all three companies should be included as defendants in this matter and as parties to the subject insurance contracts.[11]

GEICO further states that Plaintiffs have failed to allege that they have been harmed by its alleged breach of contract. As a result, GEICO claims Plaintiffs lack "standing" because they purportedly fail to plead an injury-in-fact or fail to state which of the three Defendants insured the

---

[10]    GEICO knows the identity of the Plaintiffs, has possession of the contracts and can easily identify the parties to the contract. Plaintiffs identified the policy numbers in the Complaint.
[11]    Plaintiffs intend to conduct discovery on the role of each entity with respect to the allegations set forth in the Complaint.

Plaintiffs. GEICO finally states that Plaintiffs have failed to identify which section of the insurance contracts Defendants breached.

In support of its position, GEICO cites *Guy v. Sills*, 1998 WL 409346 (Del. Ch. 1998) (Pl. App. at R.). However, the holding in *Guy* fails to define an injury-in-fact and is not relatable to the current case. Guy was a member of the Wilmington City Council who attempted to sue the Mayor of Wilmington for vetoing an ordinance that Guy sponsored. *Id.* at *1. The Court found that Mr. Guy's complaint failed to show how the councilman was injured by the Mayor's veto. *Id. Guy* is distinguishable; Plaintiffs are not disgruntled politicians seeking political retribution through the courts on a tenuous theory of damages. Here, Plaintiffs allege GEICO failed to fully pay their PIP benefits, a result that caused real harm. (Compl. ¶ 20-33.) As set forth herein (and in Plaintiffs' proposed First Amended Complaint), Plaintiffs show specific damages related to GEICO's failure to pay PIP benefits. GEICO admits that it failed to pay the Plaintiffs' PIP benefits in full. (*See* Notice of Removal.) Plaintiffs allege that, as a result of GEICO's practices, medical providers demand payment directly from the insureds, and refer unpaid accounts to collection agencies. (Compl. ¶ 5.) Additionally, Plaintiffs allege that they, and all others similarly situated, have been denied medical care as a result of GEICO's breach. (Compl. ¶ 2.) As set forth in the Complaint, the proposed First Amended Complaint, and this brief, Plaintiffs, and all those similarly situated, have sustained injuries that are tangible and real as a direct and proximate result of GEICO's breach.

GEICO cites several other cases (all outside of Delaware) that involve insurers' wrongful bill review and the issue of standing. These cases all hold that plaintiffs lack injury where they do not allege that they paid out-of-pocket expenses or were pursued for the balance. As an initial matter, none of the cases cited are binding on this Court. The *Kinnard* and *Gloria* cases are both unreported cases from other jurisdictions and the *McGill* case is based on Michigan law which provides for protection to insureds from non-economic injury. *See Kinnard v. Allstate Ins. Co.*, No. 992-00812 (Mo. Cir. Ct. Nov. 15, 1999) (Pl. App. at S.); *Gloria v. Allstate County Mut. Ins.*

21

*Co.*, No. SA-99-CA-676-PM (W.D. Tex. Sept. 29, 2000) (Pl. App. at T.); *McGill v. State Farm Mut. Auto. Ins. Co.*, 526 N.W.2d 12, 14 (Mich. Ct. App. 1994). Also, in *Kinnard*, the Missouri Circuit Court states that there was no allegation that the plaintiff had incurred out-of-pocket expenses or paid the bill in full, but these reasons are not explicitly stated as the reasons for dismissal. *Kinnard*, at 6. Instead, the Missouri Court based its ruling on the lack of relation between the damages and the actions of the insurance company. *Id.* Only an unreported Texas case holds that an insured lacks standing in a situation like that of Plaintiffs'. *See Gloria* at 17 - 18.

Other courts have recognized that plaintiffs need not show out-of-pocket losses when benefits have been denied. The Supreme Court of Florida has ruled, in a case with facts very similar to the current case, that "[a]n insured who incurs reasonable and necessary medical expenses on account of an automobile accident sustains losses and incurs liability for PIP and medpay benefits, whether or not the medical bills have been paid." *Allstate v. Kaklamanos*, 843 So.2d 885, 896 (Fla. 2003). Under *Kaklamanos*, an insured is entitled to sue a defaulting insurer for PIP benefits even if the insured did not pay any fees to the medical provider or has not been sued by the medical provider for collections. *Id.* at 893. Using principles similar to contract law, the insured has standing once the breach occurs and the breach occurs as soon as the insurance company refuses to pay on a claim. *Id.* at 892. The *Kaklamanos* Court also notes that several other state courts have come to the same conclusion, most notably in Maryland and Illinois. *Id.* at 893. *See Dutta v. State Farm Ins. Co.*, 769 A.2d 948 (Md. 2001) (holding that when the insured receives medical treatment, he becomes liable for medical expenses and therefore has standing); *Puritt v. Allstate Ins. Co.*, 672 N.E.2d 353 (Ill. App. Ct. 1996) (the insured incurs expenses when he becomes liable for them).

In *Puritt*, the Appellate Court of Illinois ruled that an injury does not have to be economic in nature to lead to standing. The Court also found that allowing doctors or collection agencies to pressure the insured to pay their bill threatens the doctor-patient relationship and invites the filing

of unnecessary collection lawsuits. *Puritt*, 672 N.E.2d at 355-6. The insured should not have to wait until a lawsuit is filed against him or collection agents show up on his doorstep to have standing. *Id.* at 356. Under this line of cases, the Plaintiffs do not need to show an economic injury-in-fact; the allegations that GEICO has failed to pay their reasonable and necessary medical expenses without reasonable justification are sufficient to give the Plaintiffs standing in this case. (Compl. ¶¶ 19, 26, 33.)

Notwithstanding GEICO's challenge, Plaintiffs have, in fact, plead that they have damages in that they "have been deprived of the benefit of the insurance coverage for which premiums were paid" and "deprived of necessary medical care, with resulting pain and suffering and exacerbation of injury." (Compl. ¶ 51.) Additionally, Plaintiffs allege that Delaware doctors seek to collect unpaid balances from insureds. (Compl. ¶ 18.) As stated above, Mr. Johnson and Ms. Anderson have had to pay unpaid balances themselves, and have been threatened by bill collectors.

Again, taking all allegations in the Complaint and all reasonable inferences that can be drawn therefrom as true, and viewing the allegations in the light most favorable to the non-moving party, Plaintiffs have stated a claim for breach of contract. *See Wright*, 243 F.Supp.2d at 120. Defendants have failed to demonstrate that no relief could be granted under any set of facts that could be proved consistent with Plaintiffs' allegations. *Wright*, 243 F.Supp.2d at 120.

### 3. Count III-IX: Fraud and Fraud-Based Actions

GEICO's Motion to Dismiss addresses Counts III through IX of Plaintiffs' Complaint together, as GEICO claims that those seven counts are all based on fraud. Each count will be addressed separately below.

### i. Count III – Bad Faith Breach of Contract

Plaintiffs contend that their claim of bad faith meets particularity requirements of Rule 9(b). Under Rule 9(b), pleadings must be sufficient to "apprise the other party of what is being alleged in a manner sufficient to permit responsive pleadings." *Trueposition*, 2003 WL 151227,

at *5 (quoting Charles Alan Wright & Arthur R. Miller Federal Practice and Procedure § 1296 (1990)). But even where the Rules command particularity, the spirit of Rule 8 still applies. *Id.* Although allegations of date, time, or place will satisfy the pleading requirement, those specifics are not required by Rule 9. *Id.* Furthermore, the purpose of the particularity requirement under Rule 9 is to give the defendants notice of the misconduct of which they are accused. *Eames v. Nationwide*, 412 F. Supp.2d 431, 438 (D. Del. 2006).

Under these conditions, Plaintiffs' pleadings alleging bad faith meet the requirements of Rule 9(b). A claim for bad faith breach of contract is viable under Delaware law when an insurer denies a claim without reasonable justification. *Tackett v. State Farm*, 653 A.2d 254, 265 (Del. 1995); *see also Albanese v. Allstate Ins. Co.*, 1998 WL 437370, *2 (Del. 1998) (Pl. App. at Q). Plaintiffs allege in the Complaint that GEICO has systematically denied "full PIP benefits to Delaware claimants in violation of law, and without reasonable justification" and that "GEICO conducts an arbitrary bill reduction." (Compl. ¶¶ 13, 16.) With respect to the two named Plaintiffs, the Complaint states that GEICO delayed or denied payment without reasonable justification. (Compl. ¶¶ 22, 23, 29, 30.) The Complaint details how GEICO denies its insureds benefits in an arbitrary way, without a medical review or any accepted process or procedure. (Compl. ¶¶ 2, 10, 13-16, 19.) Taking Plaintiffs' allegations that GEICO has engaged in a systematic and illegal scheme, without reasonable justification, and accepting that Plaintiffs, and all those similarly situated have been harmed as a result, Plaintiffs' claim for breach of contract should not be dismissed.

Notwithstanding its claim of ignorance, GEICO knows the identity of the Plaintiffs and those similarly situated. GEICO knows the claims submitted by the Plaintiffs and the money it paid for PIP claims. GEICO knows, or can readily discover the claims submitted by all parties similarly situated, and the money it paid for those claims. GEICO certainly knows its policies and procedures for dealing with PIP claims. Dismissal pursuant to Rule 9(b) is not appropriate in such a case.

### ii.  Count IV – Breach of Duty of Fair Dealing

Under Delaware law, an implied covenant of fair dealing underlies any contractual relationship. *Merrill v. Crothall-American, Inc.*, 606 A.2d 96, 101 (Del. 1992). In order to establish a violation of the implied covenant of fair dealing, a plaintiff must show that a defendant's act constitutes an aspect of fraud, deceit or misrepresentation. *Id.* Plaintiffs allege that GEICO has committed common law and statutory fraud by selling insurance and then systematically denying "full PIP benefits to Delaware claimants in violation of law, and without reasonable justification" and that "GEICO conducts an arbitrary bill reduction." (Compl. ¶¶ 13, 16.) Further, GEICO makes bill reductions based on "medical opinions" when it has not yet performed a medical evaluation of the insured. These allegations, if true, show that GEICO has refused to deal fairly with its customers. The purpose of the particularity requirement in Rule 9 is to put GEICO on notice of its alleged misconduct, and Plaintiffs respectfully submit that they have done that. *See Eames*, 412 F.Supp. at 438. As in the previous Count, GEICO has been put on notice by Plaintiffs' allegations and Plaintiffs' claims are plead with enough particularity to allow GEICO to respond. Therefore, the Court should not dismiss Plaintiffs' claim for breach of the duty of fair dealing.

### iii.  Count V – Common Law Fraud

Plaintiffs' Complaint succeeds in pleading with particularity all of the elements of common law fraud. In order to allege a claim for common law fraud, Plaintiffs must allege: (1) false statements by the defendant; (2) defendant knew that the statements were false; (3) defendants intended that the false statements be relied upon; (4) reliance by the plaintiffs on the false statement; (5) and damages resulting from that reliance. On this count, Plaintiffs' allegations are almost identical to the allegations made in *Crowhorn v. Nationwide,* 2001 WL 695542 (Del. Super. 2001) (Pl. App. at U), a case that involved similar issues to the case at bar. In *Crowhorn*, the Superior Court compared the fraud allegations in the complaint to the standard

in *Stephenson v. Capano Development, Inc.*, 462 A.2d 1069 (Del. 1983), and found that the

plaintiff had successfully plead a claim of fraud. The *Crowhorn* Court reasoned as follows:

> First, there must be a false representation of fact. In paragraphs 92-96 the
> complaint alleges that the insurance contract sold by Nationwide to *Crowhorn*
> contained representations of fact including that "covered PIP benefits would be
> paid." Second, a fraud claim must allege the defendant's knowledge or belief that
> the representation was false, or was made with reckless indifference to the truth.
> In paragraphs 97-100 Plaintiff alleges that Nationwide's representations were
> false, Nationwide knew they were false, Nationwide believed they were false and
> Nationwide made the statements with reckless indifference to the truth. Third, a
> fraud claim must allege an intent to induce the plaintiff to act or to refrain from
> acting. In paragraph 101 Plaintiff alleges that Nationwide made the subject
> representation with the intent to induce *Crowhorn* (and the proposed class
> members) to enter into insurance contract with Nationwide and pay premiums for
> such insurance. Fourth, a fraud claim must allege that the plaintiff's action or
> inaction was taken in justifiable reliance upon the representation. In paragraphs
> 102-104 plaintiff alleges that he justifiably relied upon Nationwide's false
> representation. Fifth, a fraud claim must allege that plaintiff was damaged as a
> result of such reliance. In paragraph 105 the plaintiff alleges injury stemming
> from Nationwide's action.

*Crowhorn,* 2001 WL 695542, at *5.

In the current case, Plaintiffs allege that GEICO made false representations of fact in

paragraphs 61 through 64 of the Complaint. To wit, Plaintiffs allege that under the insurance

contracts sold by GEICO to plaintiff Kerry Johnson and Sharon Anderson, PIP benefits would be

paid. Plaintiffs allege in paragraphs 65 through 67 of the Complaint that GEICO knowingly

made false representations to Plaintiffs. Plaintiffs allege in paragraph 68 of the Complaint that

GEICO intended Plaintiffs Johnson and Anderson as well as the other purported class members to

rely upon the false statements, enter into the disputed insurance contracts and make premium

payments to GEICO. Plaintiffs allege in paragraphs 69 and 70 that they entered into the contracts

with GEICO in reliance on the false statements. Paragraph 72 of the Complaint contains an

allegation that Plaintiffs have and will suffer injury as a result of GEICO's fraud.

Because Plaintiffs have specifically plead all of the elements of common law fraud,

Plaintiffs' claim should not be dismissed.

### iv.  **Count VI – Consumer Fraud**

The Delaware Consumer Fraud Act provides, in part:

> Any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby, is an unlawful practice.

6 <u>Del</u>. <u>C</u>. § 2513(a).

GEICO argues that the Plaintiffs' claim for relief under the Delaware Consumer Fraud Act fails to meet the particularity requirement of Rule 9.  Throughout its Motion to Dismiss, GEICO treats the particularity requirement under Rule 9 as though it were an ideal of specificity. Courts have warned against construing Rule 9 too narrowly, however.  *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786 (3d Cir. 1984), *cert. denied*, 469 U.S. 1211 (1985).  The Court in *Seville* ruled that "focusing exclusively on its 'particularity' language is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules."  *Id.* at 791 (quoting *Christidis v. First Pennsylvania Mortgage Trust*, 717 F.2d 96, 100 (3d Cir. 1983)).

While the Delaware Consumer Fraud Act derives from common law fraud, and might require particular pleading under Rule 9, courts have recognized that a claim under the Act departs from common law in the following ways: "(1)'a negligent misrepresentation is sufficient to violate the statute,' (2) a violation of the statute 'is committed regardless of actual reliance by the plaintiff,' and (3) the plaintiff need not show 'intent [by the defendant] to induce action or inaction by the plaintiff."  *Eames*, 412 F.Supp.2d at 437 (citing *Stephenson*, 462 A.2d at 1074).

In its Motion to Dismiss, GEICO focuses on the specific allegations in each count and ignores the totality of Plaintffs' averments.  The first allegation of Plaintiffs' claim for consumer fraud incorporates all previous allegations in the Complaint.  (*See* Compl. ¶ 73.)  Incorporating all 72 prior paragraphs in the Complaint, Plaintiffs allege that no-fault PIP coverage is mandatory in Delaware, and that GEICO sells insurance, including PIP coverage, to Plaintiffs, and all those

similarly situated, promising that claims for PIP would be paid fully and promptly in accordance with the law. (Compl. ¶¶ 12, 61-72.) Plaintiffs further allege that GEICO systematically denies or delays payment of PIP benefits in violation of the law. (Compl. ¶¶ 13-16, 19-33, 61-72). GEICO's false promises and misrepresentations fall directly into the unlawful practices proscribed by 6 Del. C. § 2513.

GEICO's second argument that consumer fraud only applies to merchandising is wholly unsupported by applicable case law. The Delaware Consumer Fraud Act provides a private cause of action for violations by an insurance company. *See Eames*, 412 F.Supp.2d at 437 (citing *Mentis v. Del. Am. Life Ins. Co.*, 1999 WL 744430, at *6 (Del. Super. Ct. 1999)(Pl. App. at V)). Plaintiffs' Complaint alleges that GEICO acted fraudulently in merchandising its products by falsely promising covered PIP benefits would be paid, in compliance with 21 Del. C. §§ 2118 and 2118B. (Compl. ¶¶ 61-64.) Because the allegations sufficiently place GEICO on notice of Plaintiffs' claim, Plaintiffs' consumer fraud Count should not be dismissed.

### v. **Count VII – Uniform Deceptive Trade Practices**

The Delaware Deceptive Trade Practices Act (the "DTPA") states that a defendant commits a deceptive trade practice when it engages in conduct which creates a likelihood of confusion or misunderstanding. 6 Del. C. §2532(a)(12). A party violates 6 Del. C. §2532(a)(9) when it "[a]dvertises goods or services with intent not to sell them as advertised." GEICO's practices violate these subsections of the DTPA and Plaintiffs specifically allege these violations in their Complaint.

GEICO claims that Plaintiffs fail to plead their claim with particularity pursuant to Rule 9(b), and that it has no way of determining which subsection of the DTPA statute it violated.

Plaintiffs have specifically plead throughout their Complaint that GEICO has systematically denied "full PIP benefits to Delaware claimants in violation of law, and without reasonable justification" and that "GEICO conducts an arbitrary bill reduction." (Compl. ¶¶ 13, 16.) Plaintiffs allege further that GEICO sells insurance with the representation that it provides

benefits to its insureds, and all benefits required under Delaware law, when it does not. (Compl. ¶ 77.)

Regardless of the particularity of Plaintiffs' claims, pleadings under the DTPA are not true fraud claims and thus should not be governed by the particularity requirements of Rule 9(b). *See Brady v. Publishers Clearing House*, 787 A.2d 111, 118 (Del. 2001). The DTPA does not incorporate the elements of common law fraud. *Id.* at 114. The *Brady* Court recognized that other cases have applied the Rule 9(b) particularity requirements to claims under the DTPA, but none have done so with a clear investigation as to whether particularity was required. *Id.* at 115. After a careful analysis, the Court concluded that Rule 9(b) is inapplicable to claims brought under the DTPA. *Id.* at 118.

GEICO's contention that the DTPA does not apply to a consumer claim is illusory. In discussing a consumer's standing to bring a claim under the DTPA, GEICO relies exclusively on *Grand Ventures, Inc. v. Whaley*, 632 A.2d 63 (Del. 1993). While it is true that in *Grand Ventures* the Delaware Supreme Court discussed at length the legislative history of the DTPA, the DTPA was subsequently amended by the General Assembly. *See Brady v. Fallon*, No. 96A-12-010-RRC, 1998 WL 283438, at *4 (Del. Super. 1998) (Pl. App. at W). By adding this subsection, the General Assembly made it clear that the DTPA redresses harm to "individual retail purchasers and consumers of goods, services or merchandise." 6 <u>Del</u>. <u>C</u>. § 2533(d). GEICO's assertion that the DTPA only applies to "horizontal" relationships between various business interests, is no longer applicable. *See Brady,* 1998 WL 283438, at *6. The *Brady* Court held that the lower court erred in "holding that the DTPA only addressed unreasonable or unfair interference with the 'horizontal' relationship between business interests." *Id.* Therefore, the DTPA applies to a dispute between a company (GEICO) and its customers (Plaintiffs). Plaintiffs' claim under the DTPA should not be dismissed.

### vi. <u>Count VIII – Unfair Practices in the Insurance Business</u>

Plaintiffs have sufficiently stated a claim for relief under 18 <u>Del</u>. <u>C</u>. § 2301 *et seq.*, which proscribe certain activities by insurers.  GEICO claims that Plaintiffs have failed to allege damages under this Act, that Plaintiffs have failed to allege claims with specificity, and that Plaintiffs do not have standing to bring a claim under this Act.

As set forth herein, as a direct result of GEICO's conduct, Plaintiffs "have been deprived of the benefit of insurance coverage for which premiums were paid" and "deprived of necessary medical care, with resulting pain and suffering and exacerbation of injury."  (Compl. ¶ 50.) Plaintiffs are liable for amounts due to their medical providers, amounts which their creditors intend to collect. (Compl. ¶ 18.)

The statutory provisions of 18 <u>Del</u>. <u>C</u>. § 2304(1) state that the following are defined as unfair or deceptive acts or practices in the business of insurance:

> No person shall make, issue, circulate or cause to be made, issued or circulated any estimate, circular, statement, sales presentation, omission or comparison which:  (a) Misrepresents the benefits, advantages, conditions or terms of any insurance policy....

18 <u>Del</u>. <u>C</u>. § 2304(2) prohibits an insurer from making or publishing any statement which is untrue, deceptive or misleading.  18 <u>Del</u>. <u>C</u>. § 2304(16) provides:

> No person shall commit or perform with such frequency as to indicate a general business practice any of the following: ... (b) Failing to acknowledge and act reasonably promptly upon communication with respect to claims arising under insurance policies; ... (d) Refusing to pay claims without conducting a reasonable investigation based upon all available information; (e) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed; ... (g) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds."

GEICO cites no case law that supports its contention that a plaintiff must plead with heightened specificity a basis for claims arising under the statute.  Plaintiffs have plead allegations sufficient to put GEICO on notice of its violations of the above-referenced code sections.  Plaintiffs have plead that GEICO routinely advertises and sells automobile insurance on

the premise that such coverage will be honored and is compliant with the law. Plaintiffs further allege that GEICO fails to act promptly with respect to claims (Compl. ¶¶ 13, 15, 22, 29, 46, 50), that GEICO denies claims without justification and without conducting a reasonable investigation (Compl. ¶¶ 14, 16, 19, 24, 31, 53), that GEICO has failed to pay claims within a reasonable time (Compl. ¶¶ 13, 15, 22, 29, 46, 50), and that GEICO's actions have compelled Plaintiffs to file suit to recover amounts due under their contracts (Compl. ¶ 10).

GEICO also claims that Title 18, Chapter 23 does not provide a private cause of action against an insurer. Plaintiffs are unaware of any case law controlling on this issue. In *Krauss v. State Farm Mutual Auto. Ins. Co.*, No. 03C-08-252 RRC, 2004 WL 2830889 (Del. Super. 2004) (Pl. App. at X), the Court did not reject a consumer's cause of action against an insurer under Chapter 23. In *Krauss*, an individual brought a claim under 18 Del. C. § 2301 *et seq.* seeking *inter alia* PIP benefits and damages under the Unfair Practices in Insurance Act. *Id.* at *1. Krauss' complaint was eventually dismissed, but on the grounds that his complaint failed to adequately plead that the "insurance company withheld benefits 'clearly without any reasonable justification.'" The Court did not dismiss the complaint on the grounds that no private cause of action exists under the statute. *Id.* at *9 (quoting *Tackett v. State Farm Mutual Fire and Casualty Ins. Co.*, 653 A.2d 264 (Del. 1994)). The holding in *Krauss* implies that if a plaintiff alleges that the insurance company withheld benefits without reasonable justification, then a claim can move forward under 18 Del. C. § 2301. Here, Plaintiffs have alleged that their PIP benefits were completely or partially withheld by GEICO arbitrarily and without reasonable justification. (Compl. ¶¶ 13-19, 22-26, 29-33, 45-46, 53-54, 62.)

For the reasons stated above, the Court should allow Plaintiffs to move forward with their claim for relief under 18 Del. C. § 2301 *et seq.*

#### vii.    Count IX – Racketeering Activity

Plaintiffs have successfully brought a claim against GEICO for racketeering activity. GEICO's argument in support of dismissing Plaintiffs' racketeering claim again relies on the specificity requirements of Rule 9(b).

Proscribed racketeering activity is governed by 18 U.S.C. § 1961 *et seq*. Under 18 U.S.C. § 1962(a), it is unlawful for any entity to receive income from a pattern of racketeering activity and to use that income to operate an enterprise which is engaged in activities that affect interstate commerce. Under 18 U.S.C. § 1961(4), an enterprise includes a corporation or other legal entity. Under 18 U.S.C. § 1961(a) any act that is indictable under 18 U.S.C. § 1341 (mail fraud) is considered a racketeering activity. The elements of mail fraud are, "(1) having devised or intending to devise a scheme to defraud (or to perform specified fraudulent acts), and (2) use of the mail for the purpose of executing, or attempting to execute, the scheme (or specified fraudulent acts)." *Schmuck v. United States*, 489 U.S. 705, 721 (1989). Plaintiffs have alleged that GEICO is an enterprise that affects interstate commerce by its sale of automobile insurance products in Delaware. (Compl. ¶ 82.) GEICO has systematically denied "full PIP benefits to Delaware claimants in violation of law, and without reasonable justification" and that "GEICO conducts an arbitrary bill reduction." (Compl. ¶¶ 13, 16.) GEICO has used the United States mails, on many occasions, to forward its scheme of unlawfully denying full PIP benefits. (Compl. ¶¶ 85, 86.) Plaintiffs have alleged throughout their Complaint that GEICO has devised a systematic pattern of fraudulent activities with its arbitrary and unreasonable bill reductions.

An "enterprise" is demonstrated when it is proven that the enterprise is an ongoing organization with some kind of framework, that the various associates function as a continuing unit, and that the enterprise is separate and apart from the pattern of activity in which it engages. *Stroik v. State*, 671 A.2d 1335, 1341 (Del. Supr. 1996). Here, Plaintiffs have alleged that GEICO is an ongoing organization (Compl. ¶ 83), that GEICO operates in a continuous manner (Compl. ¶

83), and that GEICO has acted in other capacities outside of its pattern of fraudulent activity (Compl. ¶ 84). Taking Plaintiffs' allegations as true, GEICO has operated as an enterprise.

As stated above, the pleading requirements of Rule 9(b) must be sufficient to "apprise the other party of what is being alleged in a manner sufficient to permit responsive pleadings." *Trueposition, Inc.,* 2003 WL 151227 at *5. But even where the Rules command particularity, the spirit of Rule 8 still applies. *Id.* Under these conditions, Plaintiffs' pleadings as discussed above certainly meet the requirements of Rule 9(b).

Notwithstanding its claim of ignorance, GEICO is on sufficient notice of the facts giving rise to Plaintiffs' racketeering claims. In its Notice of Removal, GEICO states that, during the past five years alone, the three Defendants have paid PIP medical expenses to 4,279 Delaware claimants. (*See* Notice of Removal at 6.) GEICO regularly uses the United States mail in marketing its insurance products, collecting premiums from its customers, and dealing with claims. GEICO knows the identity of the Plaintiffs and those similarly situated. GEICO knows the issues related to PIP. GEICO knows that it routinely denies PIP benefits to its insureds. (*See* Notice of Removal at pp. 6-7.)

Taking all of Plaintiffs' allegations as true and adding to that the actual knowledge that GEICO demonstrates in its Notice of Removal, it is clear that Plaintiffs have adequately plead a cause of action under RICO. GEICO has engaged in a systematic scheme of deception with its contractual assurance of PIP benefits and has used the United States mails to advance its scheme. Plaintiffs have adequately plead that GEICO is in violation of RICO.

F.    **Defendants' Motion to Dismiss for Plaintiffs' Alleged Failure to Meet the Prerequisites of Class Certification Should be Denied as Premature.**

Defendants' Motion to Dismiss based on Plaintiffs' supposed failure to allege or satisfy the prerequisites of class certification under Fed. R. Civ. P. 23 is premature because the action is in its infancy. "The propriety of class action status can seldom be determined on the basis of the pleadings alone." *Walker v. World Tire,* 563 F.2d 918, 921 (8th Cir. 1977) (citing 5th and 6th

Circuit cases). Rather, a court should consider a motion such as Defendants' only in response to a motion for class certification, which is filed after Plaintiffs have been allowed to conduct discovery on class certification. *See, e.g., Duke v. Univ. of Texas at El Paso,* 729 F.2d 994, 996 (5th Cir. 1984) (holding that district court erred in restricting discovery pertaining to plaintiff's class allegations before class certification hearing); *Muhammed v. Potter,* 2005 WL 1968448, at *3 (W.D. Mo. 2005) (Pl. App. at Y) (denying motion to strike class allegations as premature and allowing parties to continue to conduct discovery on class certification issue); *Uyeda v. J.A. Cambece Law Office, P.C.,* 2005 WL 1168421, at *5-6 (N.D. Cal. 2005) (Pl. App. at Z) (refusing to address defendant's motion to dismiss because an opposition to a motion for class certification is the proper vehicle to attack class certification where plaintiff had not yet filed a motion for class certification); *Lilligren v. Midwest Communications, Inc.,* 1989 WL 165241 (D. Minn. 1989) (Pl. App. at AA) (denying motion to dismiss as premature and allowing plaintiff to conduct discovery on class certification); *Oxman v. WLS-TV,* 595 F. Supp. 557, 561-62 (N.D. Ill. 1984) (determining that defendant's motion to dismiss class allegations was premature where defendant had not filed an answer and plaintiff had just begun discovery to substantiate his class action); *see also Walker,* 563 F.2d at 921 ("Where . . . the pleadings themselves do not conclusively show whether the Rule 23 requirements are met, the parties must be afforded the opportunity to discover and present documentary evidence on the issue.").

In this case, Plaintiffs filed a Complaint in the Superior Court of the State of Delaware on April 19, 2006, Defendants removed the case to this Court on June 27, 2006 and Defendants moved to dismiss the action on June 30, 2006. Although Plaintiffs provided notice of the class action in their Complaint through Class Certification Allegations (*see* Compl. ¶¶ 34-40), Plaintiffs have not filed a motion for class certification and have conducted no discovery on the class certification issue. Accordingly, Defendants' Motion to Dismiss for Plaintiffs' alleged failure to meet class certification requirements should be denied as premature and Plaintiffs

should be afforded the opportunity to conduct discovery and present evidence on the class certification issue.

**G.    Alternatively, Defendants' Motion to Dismiss Should Be Denied Because Plaintiffs Have Alleged Sufficient Facts To Survive Dismissal Based on Rule 23.**

**1.    Standard of Review for Dismissal of Class Certification**

The issue before the Court at this time is not whether the class should be certified, but whether the class allegations in Plaintiffs' Complaint should be dismissed. As discussed in Section A above, the purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed issues of material facts or decide the merits of the case. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3rd Cir. 1993). As the District of Massachusetts noted in a similar situation involving a motion to strike class certification allegations in *Barrett v. Avco Financial Services Management Co.*:

> [Defendant] argues that . . . Plaintiff's class action claims do not satisfy the requirements of commonality, typicality and predominance. In the court's view, this argument, made prior to the establishment of a discovery schedule, is premature.
>
> "The present question before the Court . . . is not whether the class should be certified, but whether the class allegations in the complaint should be stricken. At this stage, the burden is not on the party seeking class certification[;] rather, as the non-moving party, all reasonable inferences must be construed in his favor." . . . Here . . . Plaintiff has alleged sufficient facts in the complaint to survive [Defendant's] motion to strike . . . .

292 B.R. 1, 11-12 (D. Mass. 2003) (internal citations omitted).

The fact that Plaintiffs have not yet moved for class certification highlights how preposterous and premature Defendants' Motion to Dismiss is, for it is not proper for the Court to evaluate the class issue without a proper motion with appropriate evidence before it. *See infra* Section F. Defendants are forcing Plaintiffs to argue for class certification prematurely and without any discovery. Notwithstanding the fact that the Court must evaluate Defendants' Motion as a motion to dismiss and not a motion for class decertification or an opposition to class certification, even the standard for determining whether class action prerequisites are met is

"lenient."[12] *See Trotter v. Perdue Farms. Inc.*, 2001 WL 1002448, *2 (D. Del. 2001) (Pl. App. at

BB); *Spark v. MBNA Corp.*, 178 F.R.D. 431, 435 (D. Del. 1998). Moreover, a district court has

broad discretion in determining whether to certify a class action. *See Eisenberg v. Gannon*, 766

F.2d 770, 785 (3d Cir. 1985).

The U.S. Supreme Court recognizes that class actions serve an important function and the

Third Circuit looks upon class actions favorably. *See Gulf Co. v. Bernard*, 452 U.S. 89 (1981);

*Eisenberg*, 766 F.2d at 785. Indeed, "in a doubtful case . . . any error, if there is to be one, should

be committed in favor of allowing a class action." *Eisenberg,* 766 F.2d at 785. Further, a court

should determine only whether the plaintiffs meet the Rule 23 standard in ruling on a motion for

class certification; it should not evaluate the merits of the plaintiffs' case. *See In re Warfarin*

*Sodium Antitrust Litigation,* 212 F.R.D. 231, 247 (D. Del. 2002) (citing *Eisen v. Carlisle and*

*Jaquelin*, 417 U.S. 156, 177 (1974)); *Trotter*, 2001 WL 1002448, at *2; *Spark*, 178 F.R.D. at 435.

Indeed, the purpose of the class action would be defeated if this case was dismissed per

Defendants' request:

> One of the paramount values of this system is efficiency. Class certification
> enables courts to treat common claims together, obviating the need for repeated
> adjudications of the same issues. [] . . . Class actions achieve "the protection of
> the defendant from inconsistent obligations, the protection of the interests of
> absentees, the provisions of a convenient and economical means for disposing of
> similar lawsuits, and the facilitation of spreading litigation costs among
> numerous litigants with similar claims."

*Marian Bank v. Electronic Payment Serv., Inc.,* 1997 WL 811552, at *13 (D. Del. Dec. 30, 1997)

at *13 (Pl. App. at CC) (citing *In re GM Corp*, 55 F.3d 768, 783-84 (3d Cir. 1995)). In

considering Defendants' Motion to Dismiss, this Court should also be mindful that "[i]t is often

the defendant, preferring not to be successfully sued by anyone, who supposedly undertakes to

---

[12]    Plaintiffs submit that given the prematurity of Defendants' Motion, this argument on the
standard for class certification is unnecessary, but Plaintiffs have responded in an abundance of
caution. Plaintiffs' response to Defendants' Motion to Dismiss for lack of class certification in no
way serves as or is a substitute for a motion for class certification. Plaintiffs reserve the right to
file a motion for class certification at the appropriate time after Plaintiffs have had the
opportunity to conduct discovery and present evidence on the issue.

assist the court in determining whether a putative class should be certified . . . [This] is a bit like permitting a fox, although with pious countenance, to take charge of the hen house." *Id.* at *19 n.17 (quoting *Eggleston v. Chicago Journeyman Plumbers*, 657 F.2d 890, 895 (7th Cir. 1981)). In this case, the fox has disguised its motion to decertify the class as a motion to dismiss, and has obfuscated the proper standard in doing so.

Construing all allegations and reasonable inferences in this case in Plaintiffs' favor, Plaintiffs have alleged sufficient facts in satisfaction of Rule 23 to survive Defendants' Motion to Dismiss. Plaintiffs have more than satisfied the pleading requirements to provide notice to Defendants that Plaintiffs intend to seek class certification under Rule 23. *See infra* Section B. The Court should err on the side of not dismissing the action, deny Defendants' Motion, and should allow Plaintiffs to conduct discovery on and move for class certification.

### 2. Prerequisites to a Class Action Under Rule 23

At the time when Plaintiffs actually move for class certification under Rule 23, Plaintiffs must satisfy the four criteria under Rule 23(a), and in addition, satisfy the criteria under **one** of Rule 23(b)(1), 23(b)(2) or 23(b)(3). Specifically, Rule 23 states:

**(a) Prerequisites to a Class Action.**

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

**(b) Class Actions Maintainable.**

An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Plaintiffs have sufficiently plead the four requirements for class certification under Rule 23(a) and the class maintenance requirements under Rule 23(b)(1), 23(b)(2) or 23(b)(3), and therefore Defendants' Motion to Dismiss should be denied. If the Court disagrees, Plaintiffs submit that dismissal is not the appropriate course of action. Rather, Plaintiffs should be afforded the opportunity to conduct discovery on and move for class certification.

### 3. <u>Plaintiffs' Definition of the Class Survives a Motion to Dismiss, and in Any Case, Plaintiffs May Amend the Definition</u>

Plaintiffs defined the proposed class as:

All of GEICO's Delaware insureds who, during the period GEICO has issued insurance in Delaware, submitted covered claims for medical expenses or other benefits under PIP coverage issued as part of GEICO's insurance contracts; but who, owing to GEICO's unreasonable, unfair, fraudulent, deceptive and otherwise wrongful conduct (as shown by the regular, routine and consistent pattern and practice of claims alleged above), were denied the benefits and performances to which they were entitled, or otherwise subjected to injury.

(Compl. ¶ 34.) Defendants' argument that Plaintiffs fail to set forth an adequate class definition because the use of the term "covered" renders the definition subjective and would necessitate a case by case determination is disingenuous. Indeed, Defendants' Motion for Removal demonstrates that Defendants know exactly who the class includes and what the stakes are under the class definition:

38

[D]uring the past five years alone, the three Defendants combined have paid PIP medical expenses totaling $19,762,596 to a total 4,279 Delaware claimants. . . . As for the named Class Plaintiffs, Plaintiff Anderson submitted medical bills totaling $7,659 in connection with her claim, and GEICO has paid a total of $5,897. Plaintiff Johnson submitted medical bills totaling $16,720 in connection with his claim and GEICO has paid a total of $11,870. . . . [F]or whatever reasons, GEICO reduced or denied Johnson's claimed medical bills by $4,850. Likewise, Anderson's $7,659 medical claim was reduced by $1,762 down to $5,897. . . . Combining these two "typical claims," the total medical expenses paid by GEICO ($17,767) was 72.87% of the $24,379 in bills submitted. Extrapolating this percentage over the five year claims data . . . , the total amount of medical bill submitted to the three Defendants is estimated at $27,120,348 ($19,762,596÷72.87%). . . . It is the difference between the submitted bills and paid bills, or $7,357,752, which is, presumably, the amount of compensatory damages Plaintiffs would be seeking if their claims only go back five years.

(Def. Mot. for Removal at 6-7.)

Moreover, the term "covered" is superfluous because under Plaintiffs' definition, the class seeks "the benefits and performances to which they were entitled," which is based on the premise that the claims were "covered." The Third Circuit has held that such "surplusage" terms are irrelevant at the certification stage and declined to modify a class definition containing such a term. *See Chiang v. Veneman*, 385 F.3d 256, 271 (3d Cir. 2004) (holding that putative class members' "belief" that they were discriminated against was "irrelevant" at the class certification stage where defendants' argument that "belief" introduced a subjective criterion into an objective evaluation was a red herring and "belief" was "mere surplusage").

The mechanics of the conduct at issue further belies Defendants' claim that the class definition is too subjective because "covered" requires an inquiry into issues such as causation, fraud, the statute of limitations, the status of the policy, and the damages. For example, GEICO sells automobile insurance to an individual that, by law, must include PIP coverage, the individual is in an automobile accident and submits a PIP claim to GEICO, and GEICO arbitrarily and unlawfully denies payment in full. In the two representative Plaintiffs' cases, GEICO admittedly paid 72.87% of the claims, so there obviously was no issue with causation, fraud, the

statute of limitations,[13] or the status of the policies, and although the amount of damages suffered by each individual may differ, once a determination of the most basic issue is determined -- that GEICO's conduct of denying full PIP benefits was fraudulent and improper -- each individual's damages are easily calculated and are in no way subjective. *See Georgine v. Amchem Prods., Inc,.* 83 F.3d 610, 629 (3d Cir. 1996) (noting that common issues can be decided for the class while individual issues can be tried for small groups of plaintiffs) (citing *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988) ("[I]ndividual members of the class still will be required to submit evidence concerning their particularized damage claims in subsequent proceedings.")).

Even if Plaintiffs' class definition is subjective or otherwise deficient, when viewed in a light most favorable to Plaintiffs, the definition survives a motion to dismiss. Further, Plaintiffs can amend the class definition or the Court may amend the definition on its own. *See, e.g. Chiang,* 385 F.3d at 262 & 272 (modifying the class on its own and granting plaintiffs leave to seek to amend the class definition on remand to the district court); Fed. R. Civ. P. 23(c)(1)(c) (allowing court to modify certification order before final judgment). Accordingly, the Court should deny Defendants' Motion to Dismiss, or should at least provide Plaintiffs with the opportunity to conduct discovery on the class issue and modify the class definition if necessary at a later date.

### 4.    Defendants' Motion to Dismiss for Plaintiffs' Alleged Failure to Satisfy the Four Requirements of Rule 23(a) Should be Denied

#### i.        Defendants Do Not Challenge Numerosity

Defendants do not challenge the numerosity requirement. The proposed class includes over 1,000 members (Compl. at ¶ 35; *see also* Notice of Removal at 6 (noting that the three Defendants have received 4,579 Delaware claims in the past five years)).

---

[13]    Note that the Third Circuit concluded that the timeliness issue is not a class definition issue but one that goes to the merits of the case, and refused to "prejudge" the claims' simple math and deny certification. *See Chiang,* 385 F.3d at 269.

### ii.        Defendants Do Not Challenge Commonality

Commonality, which requires only that the class members share a single common issue, is easily met. *See Wilmington Firefighters Local 1590 v. City of Wilmington*, 109 F.R.D. 89, 92 (D. Del. 1985). As set forth in the Complaint, class members share numerous issues, including the fundamental issue of whether Defendants denied them the benefits to which they were entitled under PIP coverage. (*See, e.g.*, Compl. ¶ 36.) Moreover, Defendants do not appear to contest commonality, but instead focus on the more rigorous predominance requirement under Rule 23(b)(3), addressed below.

### iii.        Defendants Do Not Challenge Typicality

The claims and defenses of the class representatives must be typical of the claims or defenses of the class under the typicality requirement of Rule 23(a)(3), such that the interest of the representatives and members are aligned and the goals of the class are pursued as the representatives pursue their goals. *See Warfarin*, 212 F.R.D. at 250; *Wilmington Firefighters*, 109 F.R.D. at 93. There should be "a strong similarity of legal theories" or "the claims of the class representatives and the class members [should] arise from the same alleged course of conduct by the defendant." *Warfarin*, 212 F.R.D. at 250 (quoting *In re Prudential Ins. Co. of America*, 962 F. Supp. 450, 518 (D.N.J. 1997)). Thus, the typicality prerequisite is not met if the legal theories of the representative plaintiffs conflict with those of the absentee members. *See Marian Bank*, 1997 WL 811552, at *15. A difference between the amount of damages the class representatives suffered and the unnamed members suffered does not render the plaintiffs' claims atypical. *See Warfarin*, 212 F.R.D. at 250 (citing *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 510 (S.D.N.Y. 1996)).

For good reason, the Defendants do not appear to contend that Plaintiffs fail to allege or meet the typicality requirement. Plaintiffs' claims are typical of the members of the proposed class in that the named Plaintiffs are GEICO insureds with pending PIP claims that GEICO has failed to pay, has reduced arbitrarily and without justification, or has paid in an untimely manner.

All members of the proposed class have been subjected to GEICO's systemic practice of denying benefits to which its insureds are entitled and have been injured thereby. (Compl. ¶ 37.) Based on these facts as set forth in the Complaint and viewed in Plaintiffs' favor, and erring on the side of certification, the Court should deny Defendants' Motion to Dismiss.

### iv.        Defendants' Motion to Dismiss for Lack of Adequacy of Representation Should be Denied

The adequacy requirement of Rule 23(a)(4) involves an examination of the qualifications of counsel representing the class[14] and any conflicts of interest between class representatives and class members. *See Warfarin*, 212 F.R.D. at 250; *Wilmington Firefighters*, 109 F.R.D. at 93. (*See, e.g.,* Compl. ¶¶ 36-38 and Plaintiffs' claims for relief.) In assessing a potential conflict, this Court has examined whether the representatives "share a strong interest in establishing the liability of the defendant and seek[] the same type of damages. . . for the same type of injury." *Warfarin*, 212 F.R.D. at 251.

Although Defendants claim that Plaintiffs fail to allege how the Defendants adequately represent the interests of the class, they posit no potential conflicts of interest between the named Plaintiffs and putative class members and offer no explanation of why the Plaintiffs are inadequate. Indeed, as Plaintiffs alleged in their Complaint, all class members have an interest in establishing that Defendants deprived them of the benefits and performances to which they were entitled from Defendants under PIP coverage and they all seek compensatory, consequential, incidental, and punitive damages for Defendants' wrongful, systemic practices. In accepting the allegations of the Complaint as true and erring on the side of certifying a class action as it is required to do, this Court should deny Defendant's Motion to Dismiss.

---

[14]        Defendants do not challenge the adequacy of counsel.

5.    **Defendants' Motion to Dismiss Based on the Requirements of Rule 23(b)(1) Should be Denied**

Defendants' claim that Plaintiffs cannot maintain an action under Rule 23(b)(1)(A) is simply incorrect and again ignores the allegations in Plaintiffs' Complaint. Defendants contend that because Rule 23(b)(1)(A) governs the conduct of the Defendant, it "has no bearing in this case" because Plaintiffs allegedly seek monetary damages. (Motion to Dismiss at 35.) This argument entirely ignores Plaintiffs' Declaratory Judgment Count and Plaintiffs' prayer that the Court "declare[e] the parties' rights, duties, status or other legal relations under the disputed insurance contracts." (Compl. ¶¶ 12, 18.)

Rule 23(b)(1)(A) only requires that "the prosecution of separate actions by or against individual members of the class would create a risk of . . . inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class." Plaintiffs specifically alleged this in paragraph 40a of their Complaint; in construing all inferences in Plaintiffs' favor and erring on the side of certifying the class, this Court must deny Defendants' Motion to Dismiss on Rule 23(b)(1)(A) grounds.

6.    **Defendants' Motion to Dismiss Based on the Requirements of Rule 23(b)(2) Should be Denied**

Defendants similarly contend that certification under Rule 23(b)(2) is improper because this section requires that Plaintiffs predominantly seek injunctive or declaratory relief, and allege that Plaintiffs seek primarily monetary relief. (Motion to Dismiss at 34.) Again, although Plaintiffs do seek various forms of monetary relief for Defendants' violations of common and statutory law in its Prayer for Relief, Defendants ignore the fact that Plaintiffs also include a count for declaratory relief in their Complaint and pray that the Court "declare[e] the parties' rights, duties, status or other legal relations under the disputed insurance contracts." (Compl. ¶¶ 12, 18.)

43

Plaintiffs also allege in paragraph 40b of the Complaint that "GEICO has acted or refused to act on grounds generally applicable to the class, thereby making appropriate declaratory relief with respect to the class as a whole." In viewing the allegations in a light most favorable to Plaintiffs and erring on the side of certifying the class, this Court must deny Defendants' Motion to Dismiss on Rule 23(b)(2) grounds.

### 7.    Defendants' Motion to Dismiss Based on the Requirements of Rule 23(b)(3) Should be Denied

In addition to the class certification requirements of Rule 23(a), Rule 23(b)(3) requires the plaintiff seeking class treatment to demonstrate that the class action is maintainable by meeting two additional requirements: "(a) common questions must predominate over any questions affecting only individual members; and (b) class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23; *Warfarin*, 212 F.R.D. at 247. Pursuant to the Rule, a court assesses the following four factors in evaluating the predominance and superiority criteria:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

At the certification stage, the predominance requirement is more demanding than, and indeed incorporates, the commonality requirement of Rule 23(a), and requires that "common issues predominate over issues affecting only individuals." *See Warfarin*, 212 F.R.D. at 247. Although, as Defendants contend,[15] a consideration of the merits of the case in improper in determining whether to certify a class (which, as explained above, is not even the issue before this Court), the Court should examine the issues required to establish liability at the appropriate time, where "predominance is established if the resolution of certain common issues significantly

---

[15]    Curiously, Defendants cite cases from state courts in Texas throughout their argument on a proper class definition, which are not binding on this Court. *See* Motion to Dismiss at 26-27.

advances the litigation 'even if their resolution alone does not establish liability.'" *Marian Bank*, 1997 WL 811552, at *20 (concluding that common issues predominate in an antitrust action and rejecting defendants' assertion that the required elements of coercion and damages could only be evidenced on an individualized basis).

The superiority requirement, meanwhile, involves determining whether the class action is a superior method of adjudicating the claims, and often centers on whether members would pursue an individual claim when the claim amount is small relative to the cost of litigating it. *See Warfarin*, 212 F.R.D. at 251.

### i.    Defendants' Motion to Dismiss Based on the Predominance Requirement of Rule 23(b)(3) Should be Denied

Defendants contend that Plaintiffs fail to set forth common questions of law or fact and cannot meet the predominance requirement of 23(b)(3) because individual issues, such as reliance[16] or damages, allegedly predominate over common questions of law or fact. In doing so, Defendants ignore the procedural posture of the case and the allegations in Plaintiffs' Complaint, as well as the principle that at the certification stage, the need for individualized proof or the separate adjudication of multiple claims do not preclude certification of a class where common issues predominate. *See, e.g., Basic Inc. v. Levinson*, 485 U.S. 223, 242 (1988); *Eisenberg*, 766 F.2d at 786; *Puritt v. Allstate Ins. Co.*, 672 N.E2d 353, 357 (Ill. App. 1996).

---

[16]    Defendants cite *Gaffin v. Teledyne*, non-binding precedent from the Delaware Supreme Court, for the proposition that a showing of reliance renders the case unsuitable for class action treatment (Motion to Dismiss at 31). Not only do later cases of this Court and the Third Circuit call this proposition into question, as explained below, but the Delaware Supreme Court in *Gaffin* expressly distinguished cases of pure common law equitable fraud from cases certified by federal courts that involved federal securities claims and pendant common law fraud claims based on the same conduct. *See Gaffin*, 611 A.2d 467, 475 & n.8 (Del. 1988). As evidenced by the multiple Counts in Plaintiffs' Complaint, this case is not a pure common law case. Further, Defendants cite to *Philip Morris, Inc. v. Angeletti*, 752 A.2d 200, 234-36 (Md. 2000), another non-binding case relating to tobacco use that involved extensive choice of law issues and an inquiry into each individual plaintiff's reliance on Defendants' communications about their products. *See id.* at 235-6. Individualized issues regarding specific communications to each plaintiff and choice of law issues are not factors in the case at bar.

For example, in assessing the predominance requirement against the need for individualized proof of each plaintiff's reliance on a credit card advertisement when certifying a class, this Court noted in *Spark v. MBNA Corp*, 178 F.R.D 431, 435 (D. Del. 1998), that the Supreme Court and the Third Circuit have concluded that individual reliance issues do not preclude certification. To the contrary, reliance is presumed when logical:

> The [Supreme] Court specifically found [in *Basic Inc. v. Levinson*, 485 U.S. 224, 242 (1988)] that the district court had properly certified a class by using a presumption of reliance, and that this method provided "a practical resolution to the problem of balancing the substantive requirement of proof of reliance . . . against the procedural prerequisites of Federal Rule of Civil Procedure 23. . . ." Moreover, the Third Circuit has specifically concluded that the "presence of individual questions as to the reliance of [each] plaintiff does not mean that the common questions of law and fact do not predominate over questions affecting individual members as required by Rule 23(b)(3). *Eisenberg*, 766 F.2d at 786. *See also Easton & Co. v. Mutual Benefit Life Insur. Co.*, 1993 WL 89146 at *5 (D.N.J. Feb. 98, 1993) (Pl. App. at DD) (explaining that "**it is well settled in this Circuit that the individual issues as to reliance or damages do not negate predomination under Rule 23(b)(3).**") . . . . **Generally, the court may presume reliance where it is logical to do so.**

*Spark*, 178 F.R.D. at 435 (emphasis added) (noting that it was logical for most individuals who opened credit card accounts with defendant did so because of the defendant's advertisement and specifically because of the low APR); *see also In re Tyson*, 2003 WL 22316548, at *4 (D. Del. 2003) (Pl. App. at EE) ("[I]t is settled law that issues of individual reliance will not defeat class certification."). Similarly, this Court and the Third Circuit have concluded that the need for individual damage calculations does not preclude certification where common issues on liability predominate. *See Sparks*, 178 F.R.D. at 435 (citing *Easton & Co. v. Mutual Beneficial Life Ins. Co.*, 1993 WL 89146, at *5 (D.N.J. 1993)); *see also Warfarin*, 212 F.R.D. at 231; *In re Tyson*, 2003 WL 22316548, 1993 WL 89146 at *5 (D.N.J. 1993). ("[W]hile there may be individualized issues that speak to both defenses and damages, the plaintiff class is united by claims under the same laws and based on the same conduct by defendants.")

Plaintiffs' claims focus on the systemic and unlawful conduct of Defendants in arbitrarily and improperly refusing to pay reasonable and necessary PIP benefits in full, and not on the

conduct of individual class members.[17]   Plaintiffs state with particularly in the Complaint at

paragraph 36, specific questions of law or fact common to Plaintiffs and all those similarly

situated.

The allegations in the Complaint involve issues concerning Defendants' common course

of conduct and resulting harm to Plaintiffs that predominate over individual issues.  As for

reliance, it is logical to assume that Plaintiffs, having obtained automobile insurance and having

paid their insurance premiums, would reasonably expect the insurance company to pay their

submitted PIP claims in full.

Issues of reasonableness and necessity, like damages, also do not predominate common

issues.   Although Defendants claim that each putative class member must produce expert

testimony that treatment was reasonable and medically necessary (Motion to Dismiss at 31), they

cite no authority for the proposition.  Defendants also overstate the meaning of *Watson v.*

*Metropolitan Prop. & Casualty Ins. Co.*, 2003 WL 22290906 (Del. Super. Oct. 2, 2003) (Pl. App.

at FF), which simply states the reasonableness of bills is a factual inquiry for the Court.  *See*

*Watson*, 2003 WL 22290906, at *5.  Reasonableness, like damages and reliance, is predominated

by the common issue of Defendants' systemic, wrongful conduct, and any individual issues can

be addressed after a class determination of Defendants' liability.

Defendants also appear to raise individualized statute of limitation issues as a bar to

certification, but such individualized issues do not prevent certification given "a sufficient

nucleus of common questions."  *Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 924

---

[17]    Defendants' reliance on *In re LifeUSA Holding, Inc.*, 242 F.3d 136 (3d Cir. 2001) is
therefore misplaced.   In *In re LifeUSA*, the liability depended on defendants' specific
communications made to individual class members and each class member's reliance on that
communication.  Similarly, *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610 (3d Cir. 1996), cited
by Defendants for the proposition that the class should not be certified under 23(b)(3), is
distinguishable because *Georgine* was an enormous asbestos class action that involved a conflict
between those who were injured and those who would be injured in the future, and involved not
only individualized issues but also choice of law issues, which are not a factor in the case at bar.
*See Warfarin*, 212 F.R.D. at 249 n.19.

(3d Cir. 1992); *see also Chiang*, 385 F. 3d at 269 (determining that a statute of limitations issue did not defeat class certification).

In viewing the allegations of the Complaint in a light most favorable to Plaintiffs and in erring on the side of certification, this Court must deny Defendants' Motion to Dismiss. Indeed, even if the case was at the class certification stage procedurally, for all of the above reasons, Defendants' arguments that individual issues such as reliance and damages predominate common questions of law or fact concerning the liability of Defendants fail as a matter of law and fact. Moreover, even if there are individual issues that need to be addressed, any atypical elements can be treated by severance or use of subclasses. *See Sparks*, 178 F.R.D. at 436. Thus, the Court must deny Defendants' Motion.

### ii.    Defendants' Motion to Dismiss Based on the Superiority Requirement of Rule 23(b)(3) Should be Denied

Defendants' premature contention that a class action is not the superior method of adjudicating Plaintiffs' claims because liability and defense issues are allegedly too individualized is without merit for the reasons stated above with respect to predominance. Notably, Defendants cite only one precedential case in support of their claim that the superiority requirement of Rule 23(b)(3) is not met, and this case, *In re LifeUSA*, is distinguishable.[18]  In concluding that a class action was not superior in *In re LifeUSA*, the Third Circuit noted that the size of the class was an issue, for it involved 280,000 annuities issued to class members by 30,000 separate agents. *See In re LifeUSA*, 242 F.3d at 145-146, 148. Plaintiffs anticipate the proposed class in this case numbers in the thousands, and Defendants stated that they gave paid PIP

---

[18]    Other, non-precedential cases are distinguishable, *Emig v. The Am. Tobacco Co., Inc.*, 184 F.R.D. 379 (D. Kan. 1998), involved individual claims in excess of $75,000. In this case, the individual stakes are significantly lower and the motivation to make individual decisions is virtually non-existent. *Kurczi v. Eli Lilly & Co.*, 160 F.R.D. 667 (D. Ohio 1995) involved 430,000 plaintiffs, possible choice of law issues, and problems associated with the fact that defendants included manufacturers and distributors of a drug alleged to have damaged plaintiffs, and parents and successors thereto. Finally, *Southwestern Refining Co. v. Bernal*, 22 S.W.3d 425 (Texas 2000) is a Texas state court case involving a mass accident – a slop tank explosion – and the resulting claims of 900 nearby residents. The issues in mass accidents differ from the statutory and contract-based issues in this case.

benefits to 4,279 claimants in the past 5 years (Motion for Removal at 6). In either case, the class numbers are well below the numbers in *In re LifeUSA*. Further, unlike the case at bar, which involves only Delaware law, *In re LifeUSA* involved differing state laws, which made class action treatment less attractive. *See id.* at 148 n.13.

As the Supreme Court noted in *Amchem* and as this Court recognized in *Warfarin*, the primary purpose for certifying Rule 23(b)(3) cases is "to vindicate the rights of people who would be without the strength to bring their opponents into court; it overcomes the problem of small recoveries, which do not provide enough incentive for individual actions to be prosecuted." *Warfarin*, 212 F.R.D. at 247 (citing *Amchem*, 521 U.S. at 617.). A class action is superior in cases such as this case, where consumers have small claims in comparison to the cost of suing because it "facilitates spreading of litigation costs among numerous litigants and encourages private attorney general enforcement of statutes." *Warfarin*, 212 F.R.D. at 252 (citing *In re GM*, 55 F.3d at 784); *see also Tyson*, 2003 WL 22316548, at *7 ("There are potentially thousands of claimants with varying degrees of injury. 'The class action device is especially appropriate in securities fraud cases . . . wherein there are many individual plaintiffs who suffer damages too small to justify a suit against a large corporate defendant.'").

The present action embodies the intent of Rule 23(b)(3). Defendants' state that Plaintiff Johnson's claim is for $4,850, while Plaintiff Anderson's claim is for $1,762. For the named Plaintiffs (and other similarly situated unnamed Plaintiffs with relatively small claims) to pursue such claims against GEICO individually makes little sense economically. As alleged in paragraph 39 of the Complaint, class relief under Rule 23(b)(3) affords them vindication of their rights and is exactly the type of class action this provision intended to allow.

Although Defendants have alleged that Plaintiffs have not met the superiority requirement because of allegedly individual issues, Defendants have also failed to sufficiently demonstrate that any of the four factors of Rule 23(b)(3) stated above weigh against certification.

On a Motion to Dismiss, the Court must construe all reasonable inferences in favor of the Plaintiff and place the burden on Defendants to prove that the Complaint should be dismissed. Defendants simply have not met their burden, and Plaintiffs have alleged facts as to superiority, as well as to the other requirements under Rule 23, that are sufficient to survive Defendants' Motion to Dismiss. Accordingly, for the reasons above, and in satisfying the letter and purpose of Rule 23(b)(3), the Court must deny Defendants' Motion to Dismiss.

# CONCLUSION

For the reasons set forth herein, Plaintiffs, on behalf of themselves and all those similarly situated, respectfully request that the Court deny Defendants' Motion to Dismiss.

Dated:  August 24, 2006
Wilmington, Delaware

CROSS & SIMON, LLC

By:_____
Richard H. Cross, Jr. (No. 3576)
Christopher P. Simon (No. 3697)
Kristen Healey Cramer (No. 4512)
Kevin S. Mann (No. 4576)
913 North Market Street, 11th Floor
P.O. Box 1380
Wilmington, Delaware  19899-1380
(302) 777-4200
(302) 777-4224 facsimile

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of August 2006, a true and correct copy of the

foregoing Answering Brief in Opposition to Defendants' Motion to Dismiss was served on the

following counsel of record in the manner indicated:

### BY HAND DELIVERY

Dawn L. Becker, Esquire
Gary Alderson, Esquire
LAW OFFICES OF DAWN L. BECKER
Citizens Bank Center
919 Market Street, Suite 725
Wilmington, DE 19801

### BY FIRST CLASS MAIL

George M. Church, Esquire
Laura A. Cellucci, Esquire
MILES & STOCKBRIDGE P.C.
10 Light Street
Baltimore, Maryland  21202

_____
Christopher P. Simon (No. 3697)