# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KERRY JOHNSON, et al. | * | |
| Plaintiffs | * | |
| v. | * | Civil Action No.  1:06-cv-408 |
| GEICO Casualty Company, et al. | * | |
| Defendants | * | **CLASS ACTION** |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## REPLY TO PLAINTIFFS' OPPOSITION TO
## MOTION TO DISMISS OF DEFENDANTS GEICO CASUALTY COMPANY,
## GEICO GENERAL INSURANCE COMPANY AND
## GEICO INDEMNITY COMPANY

/s/ Gary Alderson
Gary Alderson, Trial Bar No. 3895
Dawn L. Becker, Trial Bar No. 2975
Law Offices of Dawn L. Becker
Citizens Bank Center
919 Market Street
Suite 725
Wilmington, Delaware  19801
302-778-5786
**Attorneys for Defendants**

/s/ George M. Church
George M. Church
Laura A. Cellucci
Miles & Stockbridge P.C.
10 Light Street
Baltimore, Maryland 21202
410-727-6464

**Attorneys for Defendants
Admitted Pro Hac Vice**

Dated:  September 28, 2006

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................... i

I. INTRODUCTION ............................................................... 1

    A. Interplay Between Pending Motion to Dismiss and Plaintiffs' Motion for Leave to File Amended Complaint....................................... 1

    B. Overview of Defendants' Reply to Plaintiffs' Opposition to Defendants' Motion to Dismiss. ............................................... 2

II. PIP LAW REVISITED ............................................................... 3

    A. Plaintiffs' PIP Misperceptions. ............................................... 3

III. PLAINTIFFS' CLASS ALLEGATIONS............................................ 5

    A. Rule 12(b)(6) Is an Appropriate Mechanism to Address Plaintiffs' Class Allegations ....................................... 5

    B. Plaintiffs' Class Allegations Should Be Dismissed Because Plaintiffs Can Never Satisfy the Rule 23(b)(3) Requirements as a Matter of Law ........................................... 9

    C. Plaintiffs' Amended Complaint Demonstrates They Cannot Meet the Requirements of Rule 23(a) ......................... 17

        i) Kerry Johnson ............................................... 18

        ii) Sharon Anderson............................................... 19

IV. PLAINTIFFS' INDIVIDUAL CLAIMS ..................................... 20

    A. Count I – Declaratory Judgment ......................................... 21

    B. Count II – Breach of Contract............................................ 22

    C. Counts III and IV – Bad Faith Breach of Contract and Breach of Duty of Fair Dealing....................................... 23

    D. Counts V and VI- Common Law Fraud and Consumer Fraud ............................................................ 24

**Page**

    E.     Count VII-Uniform Deceptive Trade Practices ...................................... 26

    F.     Count VIII- Unfair Practices in the Insurance Business ........................ 28

    G.    Count IX – Racketeering Activity ........................................................... 30

V.    CONCLUSION          ............................................................................ 33

## **TABLE OF AUTHORITIES**

**Page**

*Aetna Cas. & Sur. Co. v. Cantrell*, 399 S.E.2d 237 (Ga. 1991)...................................... 12

*Albanese v. Allstate Ins. Co.*, 1998 WL 437370
    (Del. Super. Ct. July 7, 1998) ................................................................ 5

*Amchem Products Inc. v. Windsor*, 521 U.S. 591 (1997) ................................................ 16

*Ammons v. Am. Family Mut. Ins. Co.*, 897 P.2d 860
    (Colo. Ct. App. 1995)    ................................................................ 12

*Antoine v. Allstate Insurance Co.*, No. 214453
    (Md. Cir Ct. Dec. 5, 2001)    ............................................................... 7, 12

*Avery v. State Farm. Mut. Auto. Ins. Co.*, 835 N.E. 2d 801(2005)
    *reh'g denied*, 2005 Ill. Lexis 970
    (Ill. Sept. 26, 2005), *cert. denied*, 126 S.Ct. 1470 (2006)................................. 16

*Brady v. Fallon*, 1998 WL 283438 (Del. Super. Feb. 27, 1998) ................................... 26, 27

*Cook County College Teachers Union v. Byrd*,
    456 F.2d 882 (7th Cir. 1972) ................................................................ 6

*Cotton v. State Farm Mut. Auto. Ins. Co.*, No. 213503
    (Md. Cir. Ct. March 4, 2002) ............................................................... 12

*DeAngelis v. Salton/Maxim Housewares, Inc.*, 641 A.2d 834
    (Del. Ch. 1993)    ........................................................................ 8

*First Nationwide Mortgage Corp. v. Fisi Madison, LLC*,
    219 F. Supp. 2d 669 (D. Md. 2002)........................................................ 22

*Florists Transworld Delivery, Inc. v. Fleurop-Interflora*,
    261 F. Supp. 2d 837 (D. Mich. 2003)...................................................... 22

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce,*
    *Fenner & Smith, Inc.*, 903 F.2d 176 (2d Cir. 1990)........................................ 17

**Page**

*General Telephone Co. v. Falcon*, 457 U.S. 147 (1972) .................................................. 6, 15

*Georgine v. Amchem Prods. Inc.*, 83 F.3d 610 (3d Cir. 1996) ....................................... 17

*Gloria v. Allstate County Mur. Ins. Co.*, No. SA-99-CA-676-PM
    (W.D. Tex. Sept. 29, 2000) ................................................................. 7

*Grand Ventures, Inc. v. Whaley*, 632 A.2d 63 (Del. 1993).............................................. 26, 27

*Hamilton v. AAA Michigan*, 639 N.W.2d 837 (Mich. 2002) ......................................... 13

*Hayes v. Motorists Mut. Ins. Co.*, 537 A.2d 330
    (Pa. Super. Ct. 1988) ................................................................. 13

*Hylaszek v. Aetna Life Ins. Co.*, 1998 WL 381064
    (N.D. Ill. July 1, 1998) ................................................................. 11, 12

*In re Rockefeller Center Properties, Inc. Sec. Litig.*,
    311 F.3d 198 (3d Cir. 2002) ................................................................. 30

*Krauss v. State Farm Mutual Auto Ins. Co.*, 2004 WL 2830889
    (Del. Super. 2004) ................................................................. 30

*Lewis v. Government Employees Ins. Co.*, Case No. CAL99-18694
    (Md. Cir. Ct. September 11, 2001) ....................................................... 12

*Lony v. E.I. DuPont deNemoirs & Co.*, 821 F. Supp. 956 (D. Del. 1993).................... 27

*Lumpkin v. E.I. Du Pont De Nemours & Co.*, 161 F.R.D. 480
    (M.D. Ga. 1995) ................................................................. 6

*MacDonald v. Prudential Ins. Co.*, 1999 WL 102796
    (N.D. Ill. Feb. 19, 1999) ................................................................. 11

*Murphy v. United Services Auto Assn.*, 2005 WL 1249374
    (Del. Super. Ct. May 10, 2005)........................................................... 3, 4, 9

**Page**

*Muttart v. American Mortgage & Guaranty Co.* 1998 WL 110067
(Del. Super. Ct. Feb. 9 1998) *appeal refused, Muttart v. Greenwood
Trust Co.,* 1998 WL 109820 (Del. Super. Ct. March 10, 1998) ...................... 8

*Mutual Benefit Ins. Co. v. Lorence*, 189 F. Supp. 2d 298 (D. Md. 2002)..................... 22

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) ............................................. 16

*Ostrof v. State Farm Mut. Auto. Ins. Co.*, 200 F.R.D. 521
(D. Md. 2001) ...................................................... 9, 10, 11

*Prezant v. DeAngelis*, 636 A.2d 915 (Del. Super. Ct. 1994) ......................... 8

*Ramsey v. State Farm Mut. Auto. Ins. Co.*, 869 A.2d 327 (Del. 2005)........................ 3, 4

*Rose v. Bartle*, 871 F.2d 331(3d Cir. 1989) .................................... 32

*Rose v. Medtronics*, 107 Cal. App. 3d 150 (1980)........................................... 8

*Ross-Randolph v. Allstate Insurance Co.*, No. 99-3344
(D. Md. May 11, 2001) ...................................................... 6, 7, 11

*S&R Associates v. Shell Oil Co.*, 725 A.2d 431 (Del. Super. Ct. 1998) ...................... 27

*Scott v. Ambassador Ins. Co.*, 426 N.E. 2d 952 (Ill. App. Ct. 1981) ...................... 12

*Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162 (3d Cir. 1989)............................ 32

*Southeast Physical Therapy Serv., Inc. v. Healthcare Value Mgmt., Inc.*,
2000 WL 1298760 (Mass. Super. Ct. March 27, 2000).................................... 13

*Stephenson v. Capano Dev. Co.*, 462 A.2d 1069 (Del. 1983) ........................................ 25

*Toner v. Allstate Insurance Company*, 821 F. Supp. 276 (D. Del. 1993).................... 23, 24

*Watson v. Metropolitan Prop. & Cas. Ins. Co.*, 2003 WL 22290906
(Del. Super Ct. Sept. 12, 2003).......................................................... 4

## STATUTES AND OTHER AUTHORITIES

**Page**

Fed. R. Civ. P. 8 ................................................................... 23, 29

Fed. R. Civ. P. 9 ................................................................... *passim*

Fed. R. Civ. P. 12(b)(6) ....................................................... 5, 6, 8

Fed. R. Civ. P. 23 ................................................................. *passim*

Fed. R. Civ. P. 57 ................................................................. 21

6 Del. C. §2513 ................................................................... 25

6 Del. C. §2533 ................................................................... 26, 27, 30

18 Del. C. §2304 ................................................................. 28

21 Del. C. §2118 ................................................................. 3, 21, 22

23 Del. C. §2306 ................................................................. 29

23 Del. C. §2307 ................................................................. 29

23 Del. C. §2308 ................................................................. 29

23 Del. C. §2309 ................................................................. 29

28 U.S.C. §2201 ................................................................. 21

18 U.S.C. §1962(a) ............................................................. 30, 31, 32, 33

18 U.S.C. §1341 ................................................................. 31

Md. Code. Ann., Ins. §19-505(b)(2)(i) ................................. 10

State of Delaware, Department of
    Insurance, Auto Bulletin No. 10 ........................................ 4

11A Charles Alan Wright & Arthur R. Miller,
    Federal Practice & Procedure §2948, et seq.
    (2d ed. 1995) ................................................................... 27

# I.    INTRODUCTION

## A.    INTERPLAY BETWEEN PENDING MOTION TO DISMISS AND PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINT.

Defendants' Motion to Dismiss addresses what are perceived to be pleading deficiencies in Plaintiffs' Class Action Complaint. Defendants challenge the sufficiency of pleadings with respect to the nine causes of action asserted, contest the lack of specificity relating to the fraud and fraud-based claims and argue that the proposed class could never be certified.

In response to Defendants' Motion, the Plaintiffs filed a 51-page Opposition Brief and, at the same time, filed a Motion for Leave to File an Amended Complaint along with a proposed First Amended Complaint (hereinafter referred to as "Amended Complaint") which includes substantial additional detail regarding the nature of Plaintiffs' claims. Indeed, Plaintiffs rely upon the allegations set forth in the Amended Complaint throughout their Opposition to the Motion to Dismiss. Defendants anticipate the Motion for Leave to Amend will be granted, at least insofar as the factual amendments are concerned. Thus, Defendants will reference, as necessary, the Amended Complaint in this Reply Brief.

In addition to the factual amendments, the Amended Complaint now recognizes that Plaintiff Kerry Johnson is insured with Defendant GEICO Indemnity Company and Plaintiff Sharon Anderson is insured with Government Employees Insurance Company, which, at present, is not a party. The Amended Complaint adds Government Employees Insurance Company as an additional Defendant and attempts to add Criterion Insurance Agency, Inc. and Colonial County Mutual Insurance as well. In their response to

Plaintiffs' Motion for Leave to File Amended Complaint, filed contemporaneously with this Reply Brief, Defendants do not oppose joinder of Government Employees Insurance Company, since there is a contractual relationship between that corporation and one of the Plaintiffs. Based on a review of the Amended Complaint, however, neither Plaintiff is insured with nor has a contractual relationship with GEICO Casualty Company, GEICO General Insurance Company, Criterion Insurance Agency, Inc. or Colonial County Mutual Insurance. Accordingly, Defendants oppose the joinder of Criterion Insurance Agency, Inc. and Colonial County Mutual Insurance to the lawsuit and also are requesting that GEICO Casualty Company and GEICO General Insurance Company be dismissed from the lawsuit. *See* Defendants' Response to Plaintiffs' Motion to Amend Complaint being filed contemporaneously with this Reply Brief.

**B.    OVERVIEW OF DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS.**

In this Reply Brief, Defendants will clarify certain issues regarding Delaware PIP claims, including the statutory and contractual requirement that insurers need only pay reasonable amounts for necessary treatment and reiterating that the burden of proof rests with the Plaintiffs. As for the individual causes of action, Defendants will address the impact of the additional factual allegations contained in the Amended Complaint on the sufficiency of pleadings and will confront certain misstatements of law and fact found in Plaintiffs' Opposition.

Finally, as for Plaintiffs' class action allegations, Defendants completely agree with Plaintiffs' assertion that Defendants' Motion to Dismiss is <u>not</u> a Motion Opposing Class Certification. Rather, Defendants' Motion raises the threshold question of whether this case could <u>ever</u> be certified as a class. The issues raised in Defendants' Motion, as

2

clarified herein, address the sufficiency of the class action allegations only and request the class action allegations be dismissed as failing to state a claim for which class status could ever be found.

## II.    PIP LAW REVISITED

### A.    PLAINTIFFS' PIP MISPERCEPTIONS.

In their discussion of Delaware PIP claims, Plaintiffs infer that if a medical bill is submitted to a PIP insurer, the burden of establishing reasonableness and necessity is presumptively met. In discussing Mr. Johnson's claim, for example, they assert that "GEICO was provided with both medical bills and medical records from Mr. Johnson," and, as a result, ". . . Mr. Johnson satisfied his burden of proof . . . ." Plaintiffs' Opposition at 6. Plaintiffs further assert that by enacting §2118, the legislature "imposed a burden on the insurer to promptly pay medical bills and lost wage claims submitted by the insured." *Id.* at 12. Conspicuously absent from that assertion is recognition by Plaintiffs that the requirement for prompt payment only arises once a plaintiff submits satisfactory proof that the amount of the bill submitted is reasonable and the treatment rendered was necessary. Mere submission of a bill is not proof that the amount is reasonable. Likewise, submission of a medical record is not proof that the treatment was necessary. When a plaintiff fails to submit such proof, payment is not required. *See* 21 Del. C. §2118 (a) (2); *see also, Ramsey v. State Farm Mut. Auto. Ins. Co.*, 869 A.2d 327 (Del. 2005); *Murphy v. United Services Auto Assn.*, 2005 WL 1249374 (Del. Super. Ct. May 10, 2005).[1]

In *Ramsey*, the Supreme Court of Delaware reviewed a plaintiff's claim for lost wages under a PIP policy. The plaintiff lost time from work to undergo medical

---

[1] A compendium of the unreported cases cited herein is attached to Defendants' Reply Brief.

treatment.  No evidence was submitted by the plaintiff to prove that the lost time was "unavoidable."  The Court held that:

> [t]he PIP statute provides recovery only for 'reasonable and necessary' expenses.  In order to satisfy that requirement, Ramsey had to establish that her lost wages were unavoidable.  Since she offered no evidence on that point, she failed to establish her entitlement to PIP benefits.

869 A.2d at 327.

In *Murphy*, the Superior Court of Delaware was confronted with plaintiffs' PIP claims for unpaid medical expenses.  The Court ruled that "[a]s a matter of law, the burden lies on the plaintiff, not the insurer, to show the expenses were 'reasonable and necessary.'"  *Id.* at 4; *see also, Watson v. Metropolitan Prop. & Cas. Ins. Co.*, 2003 WL 22290906 at 7 (Del. Super Ct. Sept. 12, 2003)("[a]s a preeminent treatise on the subject has recognized, '[a] claimant to medical expense benefits [under a relevant no-fault statute] bears the burden of proof to establish by a preponderance of the evidence that the medical services received were necessary and that the bills or charges for such services were reasonable.'").  Relying on *Ramsey*, the *Murphy* Court rejected plaintiffs' theory "that section 2118 and public policy require full payment of benefits until an adverse judgment is obtained."  *Id.* at 5.

Plaintiffs' assertion that the Delaware Department of Insurance repeatedly rules against GEICO regarding PIP denials ignores the Department's Bulletin No. 10 which requires that an insurer pay PIP expenses "**if** those costs are **reasonable** and pertain to services that are **necessarily** required for the care of the insured." State of Delaware, Department of Insurance, Auto Bulletin No. 10, Personal Injury Protection ("PIP")(Oct. 15, 1998). Reasonableness and necessity are determined by the individual

facts of each case and in order to establish a bad faith denial of benefits, a plaintiff "must show that the insurer's refusal to honor [the claim] was clearly <u>without any reasonable justification</u>." *Albanese v. Allstate Ins. Co.*, 1998 WL 437370 at 2 (Del. Super. Ct. July 7, 1998)(emphasis added).

In short, an insured cannot meet his burden to establish a right to PIP benefits merely by submitting bills. Moreover, a PIP insurer has no burden to disprove reasonableness and necessity and is entitled to utilize independent medical evaluations, medical record peer review or computer bill review databases to assist it in making payment decisions.

## III.   PLAINTIFFS' CLASS ALLEGATIONS

### A.   RULE 12(B)(6) IS AN APPROPRIATE MECHANISM TO ADDRESS PLAINTIFFS' CLASS ALLEGATIONS.

Plaintiffs contend that Defendants' Motion to Dismiss is premature because Plaintiffs have not yet moved for class certification. Plaintiffs' Opposition at 34-35. Plaintiffs assert that Defendants are forcing Plaintiffs to argue for class certification prematurely and without any discovery. *Id.* Plaintiffs further contend that this Court should consider Defendants' Motion only in response to a motion for class certification. *Id.* As discussed below, Defendants' Motion is not premature, as other courts have determined that such motions are proper mechanisms to dismiss class allegations at the pleading stage when class allegations are insufficient or when the proposed class is not able to meet the class action requirements.

Defendants' Motion to Dismiss is not an opposition to class certification. Rather, Defendants' Motion is based on the simple premise that Plaintiffs' class action claims must be dismissed because the nature of those claims is not appropriate for class action

treatment as a matter of law.  As set forth in the Motion, Defendants contend that even assuming the truth of all well-pleaded allegations in Plaintiffs' Complaint and Amended Complaint, Plaintiffs can never maintain this action as a class action because of the inherent individualized nature of PIP claims.  A motion to dismiss is the proper mechanism for dismissing class allegations.  Indeed, federal courts, and Delaware's Superior Courts, have used Rule 12(b)(6), or its equivalent, to dismiss class allegations at the pleading stage.

In *Ross-Randolph v. Allstate Insurance Co.*, No. 99-3344 at 16 (D. Md. May 11, 2001), the United States District Court for the District of Maryland granted defendant's motion to strike the class allegations in plaintiffs' complaint where plaintiffs alleged the wrongful denial of PIP benefits.  The defendant also moved to stay discovery pending the court's ruling on its motion to dismiss. The *Ross-Randolph* Court stated that "[i]n determining whether a party complies with Rule 23, a court does not have to wait until class certification is sought." *Id.* at 10, *citing Cook County College Teachers Union v. Byrd*, 456 F.2d 882, 885 (7th Cir. 1972).  The Court explained that if a plaintiff fails to allege sufficient facts to meet the requirements under Rule 23, that pursuant to Rule 23(d)(4), the court can order that the "pleadings be amended to eliminate allegations regarding the representation of absent persons . . . ." *Id.* at 11, *citing General Telephone Co. v. Falcon*, 457 U.S. 147, 160 (1972)("it at times may be clear from the pleadings alone 'whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim'"); *Lumpkin v. E.I. Du Pont De Nemours & Co.*, 161 F.R.D. 480, 481 (M.D. Ga. 1995)("granting defendant's motion to strike class allegations before the defendant responded to plaintiff's discovery requests, as it was clear that Rule 23

requirements were not met"). As set forth in more detail below, the *Ross-Randolph* Court granted defendant's motion to strike the class allegations holding that "it is apparent from the pleadings that individual factual determinations will constitute a significant part of this action . . . . Plaintiffs' claims are riddled with individual inquiries which makes this action inappropriate for class certification." *Id.* at 23-24. With regard to plaintiffs' request for discovery, the Court found that "discovery will not aid plaintiffs in showing that class action status is appropriate." *Id.* at 25.

In *Gloria v. Allstate County Mur. Ins. Co.*, No. SA-99-CA-676-PM at 23 (W.D. Tex. Sept. 29, 2000), the United States District Court for the Western District of Texas granted defendant's motion to strike the class allegations in plaintiffs' complaint. Plaintiffs alleged that the defendant had wrongfully reduced medical bills under their PIP and medical payment coverage through the use of an improper medical bill review system. In dismissing the class action allegations, the *Gloria* court stated:

> Conclusory class allegations, such as those pleaded by plaintiffs here, **have been deemed suitable for dismissal early in the case.** When plaintiffs' allegations are analyzed in light of the prerequisites of Rule 23, plaintiffs have not alleged common issues that predominate. Instead, issues such as whether a particular provider's charge was reasonable and/or necessary for a particular treatment for a particular injury in a particular location must be determined on an individualized basis. **Each putative plaintiff would be required to prove entitlement to benefits under the terms of the policy and that the medical expenses were reasonable and the services were necessary. Moreover, even if plaintiffs prove the computerized evaluation of the PIP claims was flawed the parties and the court still will need to analyze each charge on every claim for reasonableness and necessity.**

*Id.* at 23 (emphasis added); *see also, Antoine v. Allstate Insurance Co.*, No. 214453 (Md. Cir Ct. Dec. 5, 2001)(granting defendant's motion to dismiss class allegations because

individual inquiries would predominate over common questions and the necessity for such individual inquires would make the class action unmanageable).

Delaware's Superior Court has also dismissed class allegations pursuant to Rule 12(b)(6).[2] In *Muttart v. American Mortgage & Guaranty Co.* 1998 WL 110067 (Del. Super. Ct. Feb. 9 1998), *appeal refused, Muttart v. Greenwood Trust Co.,* 1998 WL 109820 (Del. Super. Ct. March 10, 1998), the plaintiffs filed a class action complaint alleging that they sustained various injuries as a result of the alleged toxic conditions in the building in which they worked.  The defendants moved to dismiss the class action allegations pursuant to Rule 12(b)(6) on the grounds that plaintiffs' claims could never satisfy the requirements of Rule 23(b)(3).  In granting defendants' motion to dismiss, the Court concluded that "Rule 12(b)(6) is an appropriate vehicle for dismissing a class action suit. Courts have found Rule 12, or its equivalent, appropriate for dismissing class action claims." *Id.* at 3, *citing Rose v. Medtronics*, 107 Cal. App. 3d 150 (1980)("'when the complaint on its face fails to contain sufficient allegations of fact to establish a class interest, the class issue may be properly disposed of by demurrer'"); *DeAngelis v. Salton/Maxim Housewares, Inc.*, 641 A.2d 834 (Del. Ch. 1993) *rev'd on other grounds, Prezant v. DeAngelis*, 636 A.2d 915 (Del. Super. Ct. 1994)("plaintiff's complaint was vulnerable to a motion to dismiss because state common law fraud claims are not maintainable as claims in a class action").

The *Muttart* court determined, based on the face of the complaint and without any discovery, that plaintiffs could not satisfy, as a matter of law, the requirements of Rule 23(b)(3). Specifically, the court held that:

---

[2] Delaware's Rules 12 and 23 are virtually identical to the corresponding Federal Rules.

> [I]ndividual issues will inevitably dominate over issues
> common to the class.  Class members allegedly shared the
> common experience of exposure to contaminants in the . . .
> building.  The extent of their commonality ceases to exist
> after that point however.  The nature of the allegations by
> the Plaintiffs inevitably will contain individual issues of
> causation, as they relate to varying exposure to the
> building, contaminants, and issues of pre-existing medical
> conditions.  Moreover, individual Plaintiffs may be subject
> to statutory defenses such as statute of limitations or
> assumption of the risk.  **These individual issues preclude
> a finding that plaintiffs have met their Rule 23(b)(3)
> burden.**  This is simply not a case where a specific tortious
> act causes a common injury.

*Id.* at 4-5 (emphasis added); *see also, Murphy, supra.*

As discussed below, dismissal of the class allegations is warranted because the weight of authority throughout the country supports Defendants' position that in cases involving payment of PIP benefits, individual questions will predominate over any common questions that exist and therefore, Plaintiffs' complaint can never be certified as a class action.  Contrary to Plaintiffs' argument, Defendants' motion is a proper mechanism for making this determination at this stage.

> **B.      PLAINTIFFS' CLASS ALLEGATIONS SHOULD BE DISMISSED BECAUSE PLAINTIFFS CAN NEVER SATISFY THE RULE 23(B)(3) REQUIREMENTS AS A MATTER OF LAW.**

As the United States District Court for the District of Maryland stated in *Ostrof v. State Farm Mut. Auto. Ins. Co.*, 200 F.R.D. 521, 531 (D. Md. 2001), a case virtually identical to this one, PIP insurance claims "tend to be of a <u>highly individualized nature</u>." (emphasis added).  The "highly individualized nature" of PIP claims is precisely why the overwhelming majority of courts throughout the country have denied class certification in cases involving allegations of denial and/or refusal of PIP payments.  Whether the parties to this action conduct discovery and brief class certification issues, the end result will be

9

the same – the highly individualized nature of PIP claims will predominate over any common questions rendering class action treatment inappropriate and unmanageable. Accordingly, as Plaintiffs will never be able to meet the requirements of Rule 23(b)(3), Defendants are requesting the dismissal of the class allegations at the initial pleading stage.

At least two federal courts have denied class certification or dismissed class allegations in cases involving the reduction and/or denial of PIP benefits on the basis that individual questions predominate over common questions. In *Ostrof, supra,* the Court refused to certify for class treatment a suit in which plaintiffs alleged that the defendant had wrongfully denied payment of PIP benefits by using computer systems to arbitrarily determine the amount paid and by using hired consultants to consistently deny benefits.[3] In denying plaintiffs' motion for class certification, the Court explained:

> **[I]t is impossible to avoid the conclusion urged by State Farm that the case is rife with individualized inquiries. Fundamental questions necessarily apply to each and every claimant.** Was there in fact an accident? Was the claimant injured? Was the event adequately documented? Was review of the claim based on computer review alone? Utilization review alone? Medical review alone? On some combination of these? Did the claimant have a pre-existing medical condition? Was the treatment prescribed for the claimant necessary? Was it excessive? Were the health care provider's bills reasonable? Was there duplication in billing? Was fraud involved? Did the individual claimant actually have to pay the amount State Farm denied? Has the claimant been sued for the fee? And so the litany proceeds. Common sense, no less than due process, makes such inquiries relevant.

---

[3] As in Delaware, Maryland's PIP statute also provides coverage for "all reasonable and necessary expenses that arise from a motor vehicle accident . . . for necessary [medical care]. Md. Code. Ann., Ins. §19-505(b)(2)(i).

*Id.* at 529 (emphasis added). These same questions, and others,[4] would necessarily need to be answered for each putative class member here as well.

In *Ross-Randolph, supra,* the Court reached the same conclusion as the *Ostrof* court when it granted defendant's motion to strike the class allegations:

> [T]he issues that vary in this case do not merely involve degrees of damages. They involve, among other things, whether and to what extent a claimant had a right to PIP benefits at all . . . **this inquiry will necessarily require that the fact finder make individual determination on a number of issues as to each purported class member.**
>
>      \*         \*         \*
>
> Plaintiffs' claims are riddled with individual inquiries, which makes this action inappropriate for class certification. **To grant any relief in this case, the court will have to inquire into each class member's individual claim to determine whether any medical procedure was necessary, expense was reasonable, and benefits were due. Maryland law requires such inquiries.**

*Id.* at 22, 24-25 (emphasis added).

Thus, even without the necessity of discovery or a full-blown briefing on class certification issues, the *Ross-Randolph* Court determined that plaintiffs' claims could <u>never</u> be certified as a class action because the claims, by their very nature, were "riddled with individual inquiries" making them inappropriate for class action treatment.

Numerous state courts also have refused to certify class actions involving allegations of wrongful denial and/or reduction of PIP benefits. *MacDonald v. Prudential Ins. Co.,* 1999 WL 102796 (N.D. Ill. Feb. 19, 1999)(refusing to certify a class action against an insurer where reasonableness and medical necessity would have to be determined on a case by case basis); *Hylaszek v. Aetna Life Ins. Co.,* 1998 WL 381064

---

[4] *See* Defendants' Motion to Dismiss at 30 for additional questions that would have to be answered for each putative class member.

(N.D. Ill. July 1, 1998)(denying class certification because the commonality and manageability requirements were not satisfied as the court would be required "to conduct a series of mini-trials to examine numerous factual issues, including . . . the medical necessity of treatment in each individual case"); *Ammons v. Am. Family Mut. Ins. Co.*, 897 P.2d 860 (Colo. Ct. App. 1995)(denying class certification in a lawsuit to recover reasonable and necessary expenses incurred for treatment of injuries arising from an automobile accident because "what is 'reasonable and necessary' may depend on the particular circumstances of the individual case."); *Aetna Cas. & Sur. Co. v. Cantrell*, 399 S.E.2d 237 (Ga. 1991)(reversing the trial court's certification of class action in PIP case where the issues presented for review would have to be considered on a contract by contract basis making the resolution of individual issues an "integral part in the determination of liability"); *Scott v. Ambassador Ins. Co.*, 426 N.E. 2d 952, 954 (Ill. App. Ct. 1981)("adjudication of the named plaintiffs' claim [sic] would not establish a right to recovery in any of the other purported class members" because of the "necessity of making individual factual determinations as to whether each class member was 'legally entitled' to damages from an uninsured motorist for bodily injuries sustained"); *Cotton v. State Farm Mut. Auto. Ins. Co.*, No. 213503 (Md. Cir. Ct. March 4, 2002)(denying class certification in a PIP lawsuit concluding that each individual claimant's case would necessarily "involve different questions leading to different conclusions"); *Antoine v. Allstate Ins. Co.*, No. 214453 (Md. Cir. Ct. Dec. 5, 2001)(denying class certification of a PIP lawsuit concluding that common issues did not predominate); *Lewis v. Government Employees Ins. Co.,* Case No. CAL99-18694 (Md. Cir. Ct. September 11, 2001)(denying class certification because plaintiffs had failed to satisfy the predominance, superiority

and manageability requirements holding that individual determinations are the essence of PIP claims and the entitlement to particularized damages cannot be tried as an issue common to an entire class); *Southeast Physical Therapy Serv., Inc. v. Healthcare Value Mgmt., Inc.*, 2000 WL 1298760 (Mass. Super. Ct. March 27, 2000)(denying class certification in a PIP case because plaintiffs failed to demonstrate that common questions of law or fact exist where the court would have to "undertake an individualized damage analysis for each provider as to the amount billed, medical specialty, geographic location, and the date of service"); *Hamilton v. AAA Michigan*, 639 N.W.2d 837 (Mich. 2002)(overturning class certification in a PIP case because the "requisite 'commonality' for certification" was not established by plaintiffs); and *Hayes v. Motorists Mut. Ins. Co.*, 537 A.2d 330 (Pa. Super. Ct. 1988)(denying class certification in a PIP case because plaintiffs failed to meet the commonality and typicality requirements for class certification).

Given the inherently individualized nature of PIP claims, it is not surprising that these courts have determined, either at the pleading stage, or when considering a motion for class certification, that a class action is inappropriate in cases involving allegations of wrongful denial of PIP benefits. There is no denying that the central theme of these cases is that individual inquiries must be made as to each putative class members' claim. Because no two class members will have received identical injuries or treatment, these and other unique factual considerations will combine in different ways for each class member, thereby necessitating individual mini-trials where putative class members would be put to their burden of proving the reasonableness and necessity of their individual PIP claims.

The exhibits attached to Plaintiffs' Amended Complaint fully demonstrate this point. Even assuming that both Plaintiffs were involved in accidents and that they sustained injuries as a result, (two of many issues that every putative class member must prove), a jury would then need to review each and every entry of Plaintiffs' medical bills and records to determine the nature of the treatment rendered, the amount charged for each treatment, whether the charge was paid in full or whether it reduced or denied, and if so, the reason therefore and the method (i.e. independent medical examination, computer review, combination of both, etc.) by which each reduction or denial was justified. Proof of these matters would inevitably require expert testimony.

Based just on the medical bills submitted as exhibits to the Amended Complaint, in Mr. Johnson's case, there are approximately 35 individual medical bill entries and in Ms. Anderson's case there are well over 100 medical bill entries that a jury would need to evaluate. In Mr. Johnson's case, most of the medical treatment was paid in full; however, some charges for treatment were reduced because the amount charged was unreasonable and some were reduced/denied because the amount billed exceeded the level of services required given Plaintiff's diagnosed conditions. *See* Exhibit F of Amended Complaint. In contrast, Plaintiff Anderson's treatment was reduced and/or denied for different reasons, specifically because certain treatment was determined to be unnecessary because it provided no therapeutic benefit. Exhibit K and L. Individualized proof of

14

reasonableness and/or necessity for each disputed item would be required – and not just for Plaintiffs Anderson and Johnson, but for all putative class members.[5]

After each medical bill entry, the jury would then need to determine whether each Plaintiff had any out of pocket damages as a result of the reduction and/or denial. Finally, after that determination is made, the jury would need to address any defenses raised by Defendants. For example, Plaintiffs assert that any applicable statute of limitations has been tolled by Defendants' alleged fraudulent concealment of their claims handling practices. Amended Complaint at ¶60. However, in order to avoid a limitations defense on claims older than three years, Plaintiffs would have to show misrepresentations by Defendants that somehow prevented Plaintiffs from discovering their claims. Additionally, a variety of other defenses may be raised on a case by case basis. Such an outcome is utterly incompatible with the predominance and the superiority requirements of Rule 23(b)(3) as recognized in the cases cited above.

Plaintiffs argue that class actions should be looked upon favorably and in a doubtful case, any error should favor class certification. In support of their argument, however, Plaintiffs rely on outdated class action jurisprudence. Plaintiffs' Opposition at 36. As discussed more fully in Defendants' Motion to Dismiss, the United States Supreme Court has held that a class action "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites [for class certification] have been satisfied." *General Telephone Co. v. Falcon*, 457 U.S. 147, 161 (1982)(emphasis added).

---

[5] Furthermore, Plaintiffs have asserted that Defendant have failed to pay PIP claims in a timely manner in accordance with the PIP statute. Amended Complaint at ¶¶ 22, 30, and 44. Accordingly, to determine whether Defendants made timely payments, a jury would have to review when each individual medical bill was submitted, whether and when satisfactory proof supporting the necessity of treatment was submitted, and then determine when Defendants made payments on each medical bill. These inquires would be necessary for every bill submitted by every putative class member.

Toward the end of the 1990s, the Supreme Court validated and reinforced the requirement that courts must carefully scrutinize proposed class actions. *Amchem Products Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999). Under these cases, there is no dispute that federal courts must pay "heightened attention" to the class certification requirements plaintiffs are required to meet under Rule 23. The recent emphasis on a more stringent approach to class certification has resulted in a greater reluctance by trial courts to certify classes (*see* cases cited *supra*), and a greater trend by appellate courts to decertify classes when a rigorous analysis does not support certification. *See Avery v. State Farm. Mut. Auto. Ins. Co.,* 835 N.E. 2d 801 (2005)*, reh'g denied,* 2005 Ill. Lexis 970 (Ill. Sept. 26, 2005), *cert. denied*, 126 S. Ct. 1470 (2006)(reversing a $1.1 billion dollar verdict and decertifying class primarily because individual questions predominated over common questions). Thus, the suggestion that there exists an automatic presumption in favor of class certification is patently wrong.

As stated at the outset, Defendants' position is simple: Plaintiffs' Complaint based on allegations of wrongful reduction and/or denial of PIP benefits can never be certified as a class action because the individual issues inherent in PIP claims will always predominate over any common questions, thus making the claims unsuitable and unmanageable for class action treatment. No amount of discovery or briefing of the issue will change this fact.

### C.    PLAINTIFFS' AMENDED COMPLAINT DEMONSTRATES THEY CANNOT MEET THE REQUIREMENTS OF RULE 23(A).

In Defendants' Motion to Dismiss, Defendants specifically stated that in addressing certain requirements of Rule 23, they did not waive any argument as to any other class action requirements, such as numerosity, commonality[6] or typicality. *See* Motion to Dismiss at 22, n. 7. Moreover, given the lack of specificity in Plaintiffs' original Complaint, Defendants were unable to address certain class action requirements such as typicality. In response to Defendants' Motion to Dismiss, Plaintiffs have moved to file an Amended Complaint, tacitly acknowledging that their original Complaint was factually deficient. The Amended Complaint provides additional information to Defendants upon which they can now address the typicality requirement of Rule 23(a).[7] The Amended Complaint, however, fails to demonstrate typicality among the class representatives and among the putative class members.

Typicality requires that "the claims or defense of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Class certification is inappropriate where a putative class representative is subject to unique defenses, which threaten to become the focus of the litigation." *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990).

---

[6] With regard to the commonality requirement of Rule 23 (a), because the predominance requirement of 23(b)(3) incorporates the commonality requirement, under class action jurisprudence, these elements are treated together. *Georgine v. Amchem Prods. Inc.*, 83 F.3d 610, 626 (3d Cir. 1996). Accordingly, Defendants' discussion of the predominance requirement of Rule 23(b)(3) is applicable to the commonality requirement of Rule 23(a)(2) as well.

[7] Plaintiffs' Amended Complaint does not set forth any changes to Plaintiffs' proposed class definition, nor does it add any facts that would lend further support to the adequacy of class representatives Johnson and Anderson. Accordingly, Defendants' refer the Court to the arguments in their Motion to Dismiss as to the insufficiency of the class definition and the adequacy of class representatives.

Based on the allegations in the Amended Complaint, Plaintiffs Anderson and Johnson cannot fulfill the typicality requirement as their claims and the defenses thereto are distinct and not typical of each other or of the claims and defenses of the proposed class members.

        **i)**     **KERRY JOHNSON**

Plaintiff Johnson was allegedly injured in an automobile accident on July 16, 2004. Amended Complaint at ¶28. At the time, he was insured under an automobile insurance policy issued by Defendant GEICO Indemnity Company. Plaintiff Johnson contends that he exacerbated injuries to his cervical spine and lumbosacral spine, that he exacerbated pre-existing conditions of anxiety and depression, and that he developed myofacial pain and thoracic strain. *Id.* at 6. Plaintiff Johnson received medical treatment from numerous providers. *Id.* He began physical therapy and/or chiropractic treatment approximately one month after the accident. Exhibit F to Amended Complaint. According to the August 11, 2004 report of Dr. Bakst, Plaintiff Johnson has been unemployed since 1999. Exhibit B to Amended Complaint. The report notes that Plaintiff is "anxious and depressed" and was referred to Dr. Irene Fisher for those issues. *Id.* In the report, there is no mention of a wrist injury, nor is a wrist injury diagnosed by Dr. Bakst. Yet, Dr. Bakst recommended a left wrist splint and Plaintiff Johnson received treatment for carpal tunnel syndrome. Exhibit F. Plaintiff Johnson had prior cervical spine surgeries in 1992 and 2002. Exhibit B. On March 14, 2005, Dr. Willie Thompson performed an independent medical evaluation. Plaintiffs' Opposition at 7 and Exhibit C to Amended Complaint. Some medical bills submitted by Plaintiff were reduced because the amounts charged were determined to be unreasonable as compared

to charges of other providers in the same geographic area and/or the treatment for which bills were submitted exceeded the level of services required given Plaintiff's diagnosed conditions. Exhibit E and F. Yet, the vast majority of bills were paid in full.[8]

  **ii)** **SHARON ANDERSON**

  Plaintiff Anderson was allegedly injured in an automobile accident on August 3, 2004. Amended Complaint at ¶42. Plaintiff Anderson had an automobile insurance policy with Government Employees Insurance Company, an entity which is not yet a party to this action. According to the exhibits attached to the Amended Complaint, Plaintiff Anderson had three doctor visits on August 5, 2004, June 13, 2005 and October 10, 2005. Exhibits I and J. Plaintiff Anderson complained of neck and back pain as a result of the accident. Exhibit I. She has a prior history of low back pain. *Id.* According to Dr. Horatio Jones' report, Plaintiff Anderson was instructed during her August 5, 2004 visit, to return to his office in approximately two weeks if her symptoms did not resolve. Exhibit I. Yet, according to the exhibits, she sought no further treatment from Dr. Jones until 10 months later on June 13, 2005. And unlike Plaintiff Johnson, who sought physical therapy treatment shortly after his accident, Plaintiff Anderson did not undergo any physical therapy until July 19, 2005, almost one year after her accident. Exhibit K. Thus, unlike in Plaintiff Johnson's case, the records in Plaintiff Anderson's case demonstrate a significant gap in treatment. Once therapy was initiated, Plaintiff Anderson had 3 months of physical therapy and was discharged on October 27, 2005, "after it was determined that physical therapy treatment would not benefit [her] any further." Exhibit I. The medical bills submitted by Plaintiff were reduced and/or denied

---

[8] Plaintiffs have seen fit to attach Defendants' explanation of benefits for only a small fraction of the total bills submitted to and paid by Defendants.

for reasons entirely different than in Plaintiff Johnson's case.   Specifically, certain treatment rendered to Plaintiff Anderson in 2005, more than one year after the accident, was determined to be unnecessary because it provided no therapeutic benefit.   Exhibit K and L.

A review of the exhibits attached to Plaintiffs' Amended Complaint demonstrates that the claims of Plaintiffs Johnson and Anderson are factually and legally distinct from each other.   Plaintiffs Johnson and Anderson were involved in separate accidents and they were treated by different physicians.   They had different injuries and each has separate issues regarding the extent of pre-existing conditions and the effect of those conditions on the necessity of treatment following their accidents.   The course of their treatments varied significantly, with Plaintiff Anderson having significant gaps in her treatment.   And because of the unique circumstances of each case, the PIP claims were reduced or denied for different reasons. Each of these factual differences gives rise to numerous possible individual defenses to each of these claims.   Simply put, neither Plaintiff's claims are typical of each other's or the other putative class members and the exhibits attached to the Amended Complaint demonstrate why those PIP claims are not appropriate for handling as a class action.

## IV.    PLAINTIFFS' INDIVIDUAL CLAIMS

Notwithstanding the additional factual averments contained in Plaintiffs' Amended Complaint, Plaintiffs still fail to state claims upon which relief can be granted as to the following counts.

## A.    COUNT I – DECLARATORY JUDGMENT

A declaratory judgment is appropriate when there is an actual justiciable controversy between the parties that requires the resolution and determination of the parties' legal rights. 28 U.S.C. §2201. Here, Plaintiffs generally allege that GEICO was "required to pay covered claims" with "reasonable promptness" and failed to do so. Amended Complaint at ¶¶62-65. Plaintiffs then allege, without explanation, that "declaratory relief . . . will terminate some or all of the existing controversy between the parties." *Id.* at ¶67. Finally, they request a blanket declaration that GEICO violated 21 Del. C. §2118 and that GEICO generally breached its contracts by failing to pay claims in accordance with the PIP statute.

Given the allegations in the Amended Complaint, Plaintiffs' count for declaratory judgment is superfluous and is subsumed into the substantive Counts that follow. While Federal Rule of Civil Procedure 57 provides that "[t]he existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate," federal courts have traditionally held that exercising discretion to entertain claims for declaratory judgment is not required when an alternative remedy is better or more effective. Here, Plaintiffs are seeking declaratory relief for acts that have already occurred. Yet, Plaintiffs' Amended Complaint alternatively seeks compensatory and punitive damages, treble damages, and attorneys' fees and costs under a variety of other theories including breach of contract, bad faith breach of contract, breach of good faith,

breach of duty of fair dealing and various statutory claims, any one of which would provide an adequate remedy at law.[9]

Plaintiffs request declarations on behalf of a class that "GEICO violated 21 Del. C. §2118" and that "GEICO breaches its contracts with its insured." Such blanket declarations would do nothing to advance this litigation, as a determination of whether Defendants violated the statute or breached their contracts would necessarily require a case by case analysis. The entire dispute between the parties will be settled by an adjudication of Plaintiffs' claims on the merits, and a declaratory judgment, even if one could be entered in accordance with the Plaintiffs' request, would add nothing to the final resolution of the case. The Court should exercise its discretion to dismiss the Count for declaratory judgment as any dispute between the parties will otherwise be decided fully and completely by adjudication on the merits.

### B.    COUNT II – BREACH OF CONTRACT

In response to Defendants' Motion to Dismiss Count II of Plaintiffs' Complaint, Plaintiffs argue that they have damages in this matter because Plaintiffs "have had to pay unpaid balances themselves and have been threatened by bill collectors." Plaintiffs' Opposition at 23. However, nowhere in the Amended Complaint, nor in the exhibits attached to the Amended Complaint, do Plaintiffs identify any medical bills they have in fact paid. Indeed, none of the exhibits attached to Plaintiffs' Amended Complaint

---

[9] *See Florists Transworld Delivery, Inc. v. Fleurop-Interflora*, 261 F. Supp. 2d 837 (D. Mich. 2003) (declaratory relief was redundant to relief sought by plaintiff on breach of contract where the dispute had existed for a period of years, and plaintiff was seeking or would seek monetary or injunctive relief regardless of whether the court entered a declaratory judgment ruling. Such relief was a better or more effective relief.); *Mutual Benefit Ins. Co. v. Lorence*, 189 F. Supp. 2d 298 (D. Md. 2002)(court refused to entertain action for declaratory judgment where administrative proceedings were pending before the Maryland Insurance Commissioner concerning insurer's underwriting procedures); *First Nationwide Mortgage Corp. v. Fisi Madison, LLC*, 219 F. Supp. 2d 669 (D. Md. 2002)(federal court dismissed declaratory action requesting finding that defendant had breached the contract where litigation was pending in Tennessee which provided a broader and more comprehensive forum for resolving the entire dispute.)

demonstrate that Plaintiffs have paid any out-of-pocket expenses either to medical providers or bill collectors. Accordingly, even when considering the allegations in the Amended Complaint, as supplemented by the inclusion of medical bills and explanations of benefits, Plaintiffs have failed to show that they have sustained any damages as a result of Defendants' alleged breach. Thus, Defendants continue to rely on the authority cited in their Motion to Dismiss which require that their claims be dismissed unless Plaintiffs can allege and demonstrate <u>actual damages</u> flowing from Defendants' alleged breach.

### C.    COUNTS III AND IV – BAD FAITH BREACH OF CONTRACT AND BREACH OF DUTY OF FAIR DEALING

Plaintiffs claim they have alleged sufficient facts to support their claims for Bad Faith Breach of Contract and Breach of Duty of Fair Dealing. Plaintiffs argue that "[n]otwithstanding its claim of ignorance, GEICO knows the identity of the Plaintiffs and those similarly situated. GEICO knows the claims submitted by the Plaintiffs and the money it paid for PIP claims . . . and can readily discover all claims submitted by all parties similarly situated, and the money it paid for those claims." Plaintiffs' Opposition at 24. Plaintiffs' argument misses the mark. The issue is not what Defendants know or what they can discover. Rather, Defendants question whether Plaintiffs have met their obligation under Federal Rules of Civil Procedure 8 and 9 to apprise Defendants of what specific claims were denied arbitrarily and without reasonable justification and whether they have pled facts to support their allegation that GEICO knowingly and intentionally violated its contracts and applicable law. This precise issue was addressed by this Court in *Toner v. Allstate Insurance Company*, 821 F. Supp. 276, 285 (D. Del. 1993), where the Court held that the plaintiffs' complaint failed to meet the specificity requirements under Rule 9 in pleading an action for breach of implied duty of good faith and fair dealing.

In *Toner*, plaintiffs were employed as insurance agents with Allstate. They were offered and accepted a new employment relationship with Allstate. *Id.* at 278. At the time Allstate proposed the new arrangement, reimbursement of any overhead expenses incurred by plaintiffs was to be based in part on the plaintiffs' ability to generate new business. *Id.* Plaintiffs alleged that when the new proposal was offered, Allstate knew it was going to alter its business policies to make it more difficult for plaintiffs to generate new business – a fact not made known to plaintiffs. The Court ultimately concluded that plaintiffs' allegation that Allstate intentionally and wrongfully induced the plaintiffs to accept the new employment relationship without disclosing its new business policies fell short of the pleading specificity required under Rule 9(b). *Id.* at 285. The Court stated that the plaintiffs had failed to set forth specific facts as to the defendant's alleged failure to disclose. The specifics in the *Toner* complaint far exceed the allegations here. Just as in *Toner*, Plaintiffs have failed to set forth facts supporting their claim that Defendants knowingly and intentionally violated their contracts. Absent the required specificity, Counts III and IV should be dismissed.

### D.    COUNTS V AND VI- COMMON LAW FRAUD AND CONSUMER FRAUD

Even with the additional facts alleged in Plaintiffs' Amended Complaint, Plaintiffs still have failed to plead a cause of action for common law fraud and consumer fraud. To satisfy the pleading requirements of common law fraud, Plaintiffs must allege with specificity the following elements: (1) a false statement made by the defendant; (2) knowledge by the defendant that the statement was false at the time it was made; (3) intent by the defendant that the false statement be relied upon by plaintiff; (4) reasonable reliance on the false statement to plaintiff's detriment; and (5) damages

resulting therefrom. *Stephenson v. Capano Dev. Co.*, 462 A.2d 1069, 1974 (Del. 1983). Like common law fraud, the Consumer Fraud Act of 6 Del. C. §2513(a), requires that Plaintiffs show a deception, fraud, misrepresentation or concealment of a material fact with the intent that others rely upon it in connection with the sale, lease, or advertisement of any merchandise. *See* 6 Del. C. §2513(a).

The only place in the Amended Complaint where Plaintiffs even come close to asserting facts which describe the elements of fraud under either common law fraud or consumer fraud is their allegation that Defendants sold policies to their insureds "with the express promise that its policies would save its insured money and that its policies would cover reasonable and necessary claims submitted under PIP." Amended Complaint at ¶19. Plaintiffs also assert that "individuals purchased policies from GEICO believing that GEICO would honor its obligations under the policies and Delaware law." *Id.* These bald and conclusory allegations, however, fail to satisfy the specificity required under Rule 9(b). There is no mention of who made the allegedly false promises, or when they were made.

As for Defendants' claims handling procedures, simply allege that they are "fraudulent" does not establish fraud and false far short of the specificity required under Rule 9(b). Even if Defendants were found to "arbitrarily" reduce a medical bill or deny a PIP claim, in order to allege fraud, there still must be a misrepresentation of fact, made with the intention that plaintiffs detrimentally rely on that statement. These allegations, which must be made with the specificity required under Rule 9(b), simply do not exist in Plaintiffs' Amended Complaint. Accordingly, Plaintiffs' claims for common law fraud and consumer fraud in Counts V and VI should be dismissed.

### E.    COUNT VII-UNIFORM DECEPTIVE TRADE PRACTICES

In their Motion to Dismiss, Defendants argued that the Uniform Deceptive Trade Practices Act only provides remedies to parties injured in horizontal relationships between businesses.  Indeed, the Supreme Court of Delaware in *Grand Ventures, Inc. v. Whaley*, 632 A.2d 63 (Del. 1993) distinguished between the Deceptive Trade Practices Act ("DTPA") and the Consumer Fraud Act ("CFA"), holding that CFA provides remedies for violations of the vertical relationship between a consumer and a seller while under the DTPA, a litigant has standing "only when such person has a business or trade interest at stake which is the subject of interference by the unfair or deceptive trade practices of another." *Id*. at 70.  In 1993, the legislature amended §2533 of the DTPA by including a new subsection "d" which provided as follows:

> The **Attorney General** shall have standing to seek, on behalf of the state, any of the remedies enumerated in this section for violations of §2532 of this Title against affected persons including but not limited to consumer purchasers.

6 Del. C. §2533(d)(emphasis added).

Relying on *Brady v. Fallon*, 1998 WL 283438 (Del. Super. Feb. 27, 1998), Plaintiffs argue that the 1993 amendment creates a cause of action between a consumer and a seller under the DTPA.  Plaintiffs' reliance on *Brady* is misplaced.  *Brady* was not an action between a consumer and a seller.  Rather, *Brady* was a case prosecuted by M. Jane Brady, the Attorney General of the State of Delaware.  As the plain language of subsection "d" reveals, only "the Attorney General" has standing to seek remedies under the DTPA related to consumer purchases."  After evaluating the legislative history of the new section, the *Brady* court concluded that the new subsection "now allows the Attorney General potentially to maintain a cause of action under the DTPA for violations

26

committed against consumers as well as against business." *Id*. at 5.    Neither the legislative history nor the plain language of the statute nor the holding in *Brady* provides consumer with a private cause of action under the DTPA.    In short, there is nothing in the statute which alters the Supreme Court's prior holding in *Grand Ventures* that the DTPA applies only to horizontal relationships between businesses, except where the Attorney General prosecutes a claim on behalf of consumers.    Because the Attorney General is not a party to this action, the Plaintiffs' claim under the DTPA should be dismissed.    *See S&R Associates v. Shell Oil Co.,* 725 A.2d 431 (Del. Super. Ct. 1998)(a case decided <u>after</u> the amendment to §2533(d), where summary judgment was granted to defendant on DTPA claim because plaintiff was "a consumer, not a competing business" and thus, lacked standing to pursue the claim).

The DTPA also provides, and Delaware courts have held, that the provisions of the DTPA may only be invoked where a plaintiff has pled and can demonstrate entitlement to injunctive relief regarding the acts in question.    Indeed, the primary relief available under the DTPA is injunctive relief.    *See* 6 Del. C. §2533(a); *Lony v. E.I. DuPont deNemoirs & Co.*, 821 F. Supp. 956 (D. Del. 1993); G*rand Ventures, Inc., supra*. Here, Plaintiffs did not request injunctive relief in Count VII of the Amended Complaint or in their prayer for relief.    Moreover, Plaintiffs did not plead acts that would entitle them to injunctive relief, namely: i) irreparable harm; ii) balancing the hardship between the parties; iii) demonstrating the probability of success on the merits; and iv) a determination whether granting or denial of an injunction will affect the public interest. 11A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure §2948, et

27

seq. (2d ed. 1995). None of the required elements have been pled and injunctive relief has not even requested. For that reason as well the DTPA does not apply to these claims.

**F.    COUNT VIII- UNFAIR PRACTICES IN THE INSURANCE BUSINESS**

In the original Complaint, Plaintiffs merely alleged that the Defendants violated the Unfair Practices in the Insurance Business Act ("UPIB") but failed to specify which particular sections of the Act were violated, how they were violated or how Plaintiffs were damaged as a result. In the Motion to Dismiss, Defendants challenged the total lack of any factual detail in support of this Count.

In the Amended Complaint, and in their Opposition to Defendants' Motion to Dismiss, Plaintiffs have now alleged that Defendants specifically violated 18 Del. C. §§2304(1), (2), and (16). Essentially, the allegations in the Amended Complaint are nothing more than a regurgitation of the statutory language followed by assertions that Defendants violated those sections. Simply quoting statutes and alleging violations falls short of the specificity required under Rule 9(b). Plaintiffs have failed to allege facts to offer any explanation of how the Defendants violated the statutory provisions. Rather, Plaintiffs make only bald and conclusory assertions. There is nothing to establish a link between the claims of Plaintiffs Anderson or Johnson to the generic violations alleged against Defendants. It is this continued lack of specificity that requires this Count VIII to be dismissed.

Plaintiffs also argue that "GEICO cites no case law that supports its contention that a plaintiff must plead with heightened specificity a basis for claims arising under the statute." Plaintiffs' Opposition at 30. However, the claim under §2304(1) alleges that GEICO "misrepresents" the benefits, advantages, conditions or terms of its insurance

policies.[10]  A claim of misrepresentation is precisely the type of claim included within the domain of fraud-like claims.  Just as "fraud lies at the core" of claims for bad faith breach of contract, breach of duty of fair dealing, common law fraud, consumer fraud, etc., the same is true where Plaintiffs allege violations of UPIB.  When prosecuting a claim under UPIB for misrepresentation, Rule 9(b) requires such claim to be plead with specificity as well.  In the absence of any specific allegations as to how Defendants violated the Act, neither Rule 9(b) nor Rule 8, are satisfied.  Count VIII should be dismissed.

In their Motion, Defendants also challenged whether the UPIB provides for a private cause of action.  Plaintiffs argue that it does.  Yet, neither side has been able to cite any case law to support their respective positions.  However, the Act itself, after describing numerous prohibited actions, empowers the Insurance Commissioner to "determine whether [an insurer] has been or is engaged in any unfair method of competition or in any unfair or deceptive act or practice prohibited in the Act."  23 Del. C. §2306.  Section 2307 provides the Commissioner with the means and procedures to prosecute violations of the Act, to hold hearings, to issue cease and desist orders, to seek injunctive relief, to subpoena witnesses, etc.  The Commissioner also has the authority under §2308 to also assess monetary penalties against anyone violating the Act and to suspend or revoke the violator's license to engage in the insurance business.  Orders issued by the Commissioner are subject to judicial review under §2309.  Nowhere in the statute is there any affirmative provision for a private cause of action, nor is there any indication that private remedies are available to aggrieved parties.  Had the legislature intended to create a private cause of action under UPIB, it could have done so just as it

---

[10] This allegation of facts (¶ 103 of the Amended Complaint) is, actually, just a quote from the statute itself and contains no factual support whatsoever.

did in the Deceptive Trade Practices Act where injunctive relief, costs, attorney's fees and treble damages are sanctioned. *See* 6 Del. C. §2533(a), (b), and (c). No such similar provisions are included in UPIB.

Plaintiffs rely on *Krauss v. State Farm Mutual Auto Ins. Co.*, 2004 WL 2830889 (Del. Super. 2004) to support their claim that a private cause of action is permitted under the Act. Yet, in *Krauss*, the Court dismissed Plaintiffs' claim under UPIB on its merits. Apparently, neither party nor the Court, *sua sponte,* raised the issue of whether a private cause of action is permitted under the Act and therefore, the issue was never addressed by the Court. *Krauss* is of no precedential value. In the absence of specific remedies made available to litigants under the Act, Plaintiffs' claim under UPIB must be dismissed.

### G.    COUNT IX – RACKETEERING ACTIVITY

Without any legally sufficient factual basis, Plaintiffs have charged Defendants with engaging in racketeering activity under 18 U.S.C. §1962(a). To properly plead a violation of §1962(a), a plaintiff must specifically allege (1) the "person", (2) the "pattern" of racketeering activity, (3) receipt of "income", (4) how the income was derived from the pattern, (5) the "enterprise", (6) the use or investment of that income in the enterprise and (7) the manner in which the injury was caused. 18 U.S.C. §1962(a).[11] Additionally, Federal Rule 9(b) applies to RICO claims based on allegations of fraud. *See In re Rockefeller Center Properties, Inc. Sec. Litig.*, 311 F.3d 198 (3d Cir. 2002). Accordingly, Rule 9(b) requires that Plaintiffs support their allegations of RICO

---

[11] 18 U.S.C. §1962(a) provides in pertinent part: "It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the process of such income, in acquisition of any interest in, or the establishment or operation of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

violations with all the essential, factual background – that is "who, what, when, where and how" of the events at issue. *Id.* at 217. To support their allegation of a §1962(a) violation, Plaintiffs allege that Defendants have committed mail fraud, one of the "predicate" acts or offenses identified in the RICO act as constituting racketeering activity. *See* 18 U.S.C. §1341. As discussed below, Plaintiffs have failed to state a claim upon which relief can be granted under RICO.

Even accepting as true the additional information set forth in Plaintiffs' Amended Complaint, Plaintiffs have not and cannot state a claim for racketeering. First, pursuant to §1341,[12] an allegation of mail fraud requires proof that Defendants devised or intended to devise a scheme to defraud them of money by false or fraudulent pretenses, representations or promises. Plaintiffs have not alleged these elements. Plaintiffs state that Defendants have arbitrarily and without reasonable justification denied full PIP benefits. Plaintiffs' Opposition at 32. Yet arbitrary or unreasonable denial of benefits hardly constitutes "fraudulent pretenses, representations or promises." As admitted in Plaintiffs' Opposition and their Amended Complaint, the GEICO Defendants provided explanations for each bill reduction and/or denial. There is no allegation in Plaintiffs' Amended Complaint that Defendants' explanations for the reductions/denials are themselves fraudulent representations. Even if true, Plaintiffs' allegations of arbitrary bill reduction or denial amount to, at best, a breach of contract and the injury about which they complain is the dispute over the necessity of treatment and the "reasonable" amount

---

[12] 18 U.S.C. § 1341 provides in pertinent part: "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises . . . for the purpose of executing such scheme or artifice or attempting so to do . . . knowingly causes to be delivered by mail according to the direction thereon or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both."

to pay for the alleged covered injury.  Nowhere in the Amended Complaint do Plaintiffs suggestion that Defendants' payment decisions regarding PIP claims constitutes fraud.

Additionally, §1962(a) focuses on the use or investment of the income derived from a pattern of racketeering activity in an enterprise.  Therefore, in order to violate §1962(a), a person must first commit the racketeering act forming a pattern, then receive income from those acts, then invest or use that income in the operation of an enterprise. Moreover, to properly plead a claim for damages under §1962(a), a plaintiff must allege damages resulting from the underline income derived from the pattern of racketeering activity.  Here, Plaintiffs have failed to plead any of these elements with the specificity required under Rule 9(b).  Moreover, with regard to allegations of injury causation, the majority of courts, including the Third Circuit, require that a plaintiff plead facts to show that he was injured by the investment or use of racketeering income or proceeds.  *See Rose v. Bartle*, 871 F.2d 331, 357-58 (3d Cir. 1989)(holding that "requiring the allegation of income use or investment injury is consistent with both the literal language and the fair import of the language [of section 1962(a)].  Since the plaintiffs' complaints do not contain such allegations either facially or by reasonable inference, they are insufficient to maintain a claim under section 1962(a)."); *Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162 (3d Cir. 1989)(holding that plaintiff failed to plead injury resulting from defendants' violations of section 1962(a) because the investment of the unlawfully collected fees did not cause plaintiff's injury).  Thus, it is not sufficient to plead only that Plaintiffs were injured as a result of the underlying predicate act of mail fraud; rather Plaintiffs must show that the proximate cause of their damages arose from the investment or use the ill-gotten income derived from the

32

predicate act. Here, Plaintiffs have not alleged, nor can they, that any alleged investment of proceeds by Defendants caused Plaintiffs any harm. Accordingly, Plaintiffs have failed to state a claim under §1962(a) for which relief can be granted.

## V.    CONCLUSION

For the foregoing reasons, Defendants request this Court to dismiss the class action allegations and each and every count of Plaintiffs' Complaint and Amended Complaint.


*/s/ Gary Alderson*
Gary Alderson, Trial Bar No. 3895
Dawn L. Becker, Trial Bar No. 2975
Law Offices of Dawn L. Becker
Citizens Bank Center
919 Market Street
Suite 725
Wilmington, Delaware 19801
302-778-5786
**Attorneys for Defendants**

*/s/ George M. Church*
George M. Church
Laura A. Cellucci
Miles & Stockbridge P.C.
10 Light Street
Baltimore, Maryland 21202
410-727-6464

**Attorneys for Defendants**
**Admitted Pro Hac Vice**

Dated: September 28, 2006

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of September, 2006, a copy of the foregoing was served electronically and/or by first class mail, postage prepaid, to:

Richard H. Cross, Jr., Esquire
Christopher P. Simon, Esquire
CROSS & SIMON, LLC
913 North  Market Street
11th Floor
P.O. Box 1380
Wilmington, Delaware  19899-1380

Attorneys for Plaintiffs


*/s/ Gary Alderson*_____
Gary Alderson

# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

KERRY JOHNSON, et al.                    *

      Plaintiffs                    *

v.                                       *        Civil Action No. 1:06-cv408

GEICO Casualty Company, et al.           *

      Defendants                    *        **CLASS ACTION**

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## <u>APPENDIX IN SUPPORT OF DEFENDANTS' REPLY<br>TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS</u>

*/s/ Gary Alderson*
Gary Alderson, Trial Bar No. 3895
Dawn L. Becker, Trial Bar No. 2975
Law Offices of Dawn L. Becker
Citizens Bank Center
919 Market Street
Suite 725
Wilmington, Delaware  19801
302-778-5786
**Attorneys for Defendants**

*/s/ George M. Church*
George M. Church
Laura A. Cellucci
Miles & Stockbridge P.C.
10 Light Street
Baltimore, Maryland 21202
410-727-6464

**Attorneys for Defendants
Admitted Pro Hac Vice**

# APPENDIX

| **CASE CITATION** | **EXHIBIT** |
|---|---|
| *Albanese v. Allstate Ins. Co.*<br>1998 WL 437370 (Del. Super. Ct. July 7, 1998) | A |
| *Antoine v. Allstate Insurance Co.*<br>No. 214453 (Md. Cir. Ct. Dec 5, 2001) | B |
| *Cotton v. State Farm Mut. Auto. Ins. Co.,* No. 213503<br>(Md. Cir. Ct. March 4, 2002) | C |
| *Gloria v. Allstate County Mut. Ins. Co.*<br>No. SA-99-CA-676-PM (W.D. Tex. Sept. 29, 2000) | D |
| *Hylaszek v. Aetna Life Ins. Co.*<br>1998 WL 381064 (N.D. Ill. July 1, 1998) | E |
| *Lewis v. Government Employees Ins. Co.*<br>Case No. CAL99-18694<br>(Md. Cir. Ct. September 11, 2001) | F |
| *McDonald v. Prudential Ins. Co.*<br>1999 WL 102796 (N.D. Ill. Feb. 19, 1999) | G |
| *Murphy v. United Services Auto Assn.*<br>2005 WL 1249374 (Del. Super. Ct. May 10, 2005) | H |
| *Muttart v. American Mortgage & Guaranty Co.*<br>1998 WL 110067 (Del. Super. Ct. Feb. 9, 1998)<br>Appeal refused, *Muttart v. Greenwood Trust Co.*<br>1998 WL 109820 (Del. Super. March 10, 1998) | I |
| *Ross-Randolph v. Allstate Insurance Co.*<br>No. 99-3344 (D. Md. May 11, 2001) | J |
| *Southeast Physical Therapy Serv., Inc. v.*<br>*Healthcare Value Mgmt, Inc.,*<br>2000 WL 1298760 (Mass. Super. Ct. March 27, 2000) | K |
| *Watson v. Metropolitan Prop. & Cas. Ins. Co.*<br>2003 WL 22290906 (Del. Super. Ct. Sept. 12, 2003) | L |

# EXHIBIT   A

Westlaw.

Not Reported in A.2d
1998 WL 437370 (Del.Super.)
(Cite as: 1998 WL 437370 (Del.Super.))

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.

Superior Court of Delaware.

Alexander ALBANESE
v.
ALLSTATE INSURANCE COMPANY

No. 97C-08-191-WTQ.

July 7, 1998.

Letter Opinion and Order on Defendant's Motion
for Partial Summary Judgment-- Motion Granted.

James A. Erisman, Esquire, Daley Erisman &
vanOgtrop, Wilmington.

Arthur D. Kuhl, Esquire, Dennis D. Ferri, P.A.,
Wilmington.

QUILLEN, J.

*1 Gentlemen:

This is the Court's opinion on Defendant Allstate
Insurance Company's Motion for Partial Summary
Judgment. The Motion requests dismissal of Count
II of Plaintiff Alexander Albanese's Complaint.
Count II alleges bad faith on the part of the
Defendant in its denial of personal injury protection
("PIP") benefits under Delaware's no-fault law. For
the following reasons, Defendant's Motion for
Partial Summary Judgment is GRANTED.

FACTS

This action arises out of a November 25, 1995
motor vehicle accident ("the accident") during
which Plaintiff sustained injuries. At the time of the
accident, Plaintiff was insured under an automobile
insurance policy issued by the Defendant that
provided for reasonable and necessary medical
expenses incurred by the Plaintiff as a result of the
accident. Plaintiff alleged that he sustained bilateral
carpal tunnel syndrome as a result of the accident.
He obtained surgery for carpal tunnel syndrome and
submitted his medical bills to the Defendant for
payment on December 5, 1996 and January 27,
1997. Because Plaintiff's surgery had already been
performed, Dr. Daniel Gross conducted a review of
Plaintiff's medical records on behalf of the
Defendant. Dr. Gross did not see or talk to the
Plaintiff. Dr. Gross agreed that Plaintiff had carpal
tunnel syndrome, but opined on April 17, 1997 that
the carpal tunnel syndrome was not related to the
accident. As a result, Defendant denied payment of
Plaintiff's surgery expenses. Plaintiff filed suit on
August 20, 1997 seeking PIP benefits for his
medical expenses and alleged "bad faith" by
Defendant for failure to reimburse him for the cost
of his surgery. Defendant moved for partial
summary judgment on February 27, 1998 seeking a
dismissal of the bad faith allegations in Count II of
Plaintiff's Complaint.

STANDARD ON SUMMARY JUDGMENT

When considering a Motion for Summary
Judgment under Superior Court Civil Rule 56, the
Court's function is to examine the record to
determine whether genuine issues of material fact
exist. *Oliver B. Cannon & Sons, Inc. v.
Dorr-Oliver, Inc.,* Del.Super., 312 A.2d 322, 325
(1973). If after reviewing the record in a light most
favorable to the non-moving party the Court finds
there are no genuine issues of material fact,
summary judgment is appropriate. *Id.* The Court's
decision must be based only on the record
presented, including all pleadings, affidavits,
depositions, admissions, and answers to
interrogatories, and not on what evidence is
"potentially possible." *Rochester v. Katalan,*

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
1998 WL 437370 (Del.Super.)
(Cite as: 1998 WL 437370 (Del.Super.))

Del.Supr., 320 A.2d 704 (1974). All reasonable inferences must be drawn in favor of the non-moving party. *Sweetman v. Strescon Indust.,* Del.Super., 389 A.2d 1319 (1978). Summary Judgment will not be granted if the record indicates that a material fact is in dispute or if it seems desirable to inquire more thoroughly into the facts in order to clarify the application of the law to the circumstances. *Ebersole v. Lowengrub,* Del.Supr., 180 A.2d 467 (1962).

## DISCUSSION

*2 The issue before the Court is whether Defendant's denial of PIP benefits to Plaintiff for carpal tunnel syndrome surgery could constitute bad faith. "[I]n order to establish 'bad faith' the plaintiff must show that the insurer's refusal to honor [the claim] was clearly without any reasonable justification." *Casson v. Nationwide Ins. Co.,* Del.Super., 455 A.2d 361, 369 (1982); *Tackett v. State Farm Fire & Cas. Ins.,* Del.Supr., 653 A.2d 254, 264 (1996). The question to be asked is "whether at the time the insurer denied liability, there existed a set of facts or circumstances known to the insurer which created a *bona fide* dispute and therefore a meritorious defense to the insurer's liability." *Casson,* 455 A.2d at 369. "[T]he question of bad faith refusal to pay should be submitted to the jury unless it appears that the insurer did not have reasonable grounds for relying upon its defense to liability." *Id.*

In the case at bar, Defendant says Plaintiff was not examined by Defendant's doctor because his surgery for carpal tunnel syndrome had already occurred. Instead, Defendant submitted Plaintiff's medical records to Dr. Gross for a peer review. Dr. Gross examined some of Plaintiff's 1985 through 1995 medical records to determine if the carpal tunnel syndrome surgery was related to the accident. The medical records reviewed were specifically listed in Dr. Gross' report of April 17, 1997. His review of the records presented to the Defendant failed to find any documented evidence of complaints or treatment compatible with carpal tunnel syndrome until at least five months following the accident. Further, Dr. Gross determined that this time interval between the injury and treatment is not usual and customary for the diagnosis of carpal tunnel syndrome. *See* Dkt. No. 14, Ex. A.

At oral argument, counsel for Plaintiff made an argument not emphasized in his brief. Plaintiff alleged that Dr. Gross' conclusion regarding the causation of Plaintiff's carpal tunnel injury to the accident was totally inconsistent with the records relied upon in Dr. Gross' peer review. [FN1] Plaintiff in his supplement to the record states that Plaintiff's medical record document complaints concerning his medical history, indicating that he suffered symptoms of carpal tunnel syndrome immediately after the accident. Plaintiff submitted the medical report of Dr. Wesley Young dated December 18, 1995. In this report, Dr. Young indicates that Plaintiff's "wrists hurt--had carp[al] tunnel in past but not as bad as now." While this record shows that there was documentation of complaints by Plaintiff involving his hands a month after the accident, this particular record was not in the records relied upon by Dr. Gross in his peer review. *See* Dkt. No. 19, Ex. C. Moreover, there is no allegation by Plaintiff that the record was submitted to Defendant.

> FN1. Since this argument was raised for the first time at oral presentation of the Motion, the Court allowed Plaintiff to supplement the record. The Court wanted to make certain that the conclusion reached by Dr. Gross was within the bounds of reason in light of the medical records upon which he relied. The Court is concerned with the possibility of insurance companies having medical doctors on retainer to issue reports favoring the insurance company without medical examinations.

Plaintiff also relies on medical records listed as 5 and 8 of Dr. Gross' peer review to bolster his argument that there existed documented complaints concerning his hands shortly after the accident. Record 5, as listed in Dr. Gross' peer review, states" "Admission, Medical Center of Delaware, October 1996, for release of right carpal tunnel with symptoms of one year (Dr. Sowa)." Record 8 of Dr. Gross' peer review states: "Records of Dr. Sowa of May 1996 and June 1996, indicate a six month history of symptoms of carpal tunnel syndrome with a positive bilateral EMG and positive Tinel's signs." Dkt. No. 14, Ex. A. These records at best suggest

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
1998 WL 437370 (Del.Super.)
(Cite as: 1998 WL 437370 (Del.Super.))

Page 3

that in May, June, and October of 1996, Dr. Sowa opined that Plaintiff had experienced symptoms of carpal tunnel syndrome from the time of the accident. Dr. Sowa first treated Plaintiff three months after the accident, on February 20, 1996, and there was no documented record of any hand injuries. It is not until May 1996, five months after the accident, that Dr. Sowa made his determination that Plaintiff suffered from carpal tunnel syndrome. According to Dr. Gross, five months is too long an interval from the time of the accident to causally connect Dr. Sowa's diagnosis of Plaintiff's carpal tunnel syndrome to the accident. Obviously, the opinions of Dr. Sowa and Dr. Gross might have been better coordinated, but it certainly cannot be said that the insurer "was clearly without any reasonable justification."

*3 The other reports relied on by Plaintiff merely list the opinions of various experts, none of which Dr. Gross examined in his peer review, stating that Plaintiff developed carpal tunnel syndrome from the accident. [FN2] While diametrically opposed to the findings of Plaintiff's experts, Dr. Gross' conclusion presented a *bona fide* dispute as to whether Plaintiff's need for carpal tunnel surgery was related to the accident. The record presented in this matter does not support Plaintiff's allegation that Defendant had no reasonable justification in denying payment of PIP benefits in 1997 and thus there was no basis for a bad faith claim against Defendant. Plaintiff's claim of bad faith should not go to a jury. *See Casson,* 455 A.2d at 369. The underlying issue of Defendant's obligation to pay for Plaintiff's carpal tunnel surgery expenses remains to be resolved. It seems to the Court that it would certainly be appropriate for the Defendant to review the current record to determine whether the treatment is compensable.

> FN2. The medical records of Dr. Wesley Young dated August 23, 1996 state in pertinent part: "main complaints revolve around [Plaintiff's] wrists--They hurt from the accident and now has been diagnosed as carp[a]l tunnel. Needs to get them fixed." *See* Dkt. No. 22, Ex. D. The narrative report of Dr. David T. Sowa dated August 7, 1997 states in pertinent part: "it is my opinion, within reasonable

medical probability, that the patient developed bilateral carpal tunnel symptoms after his November 25, 1995 motor vehicle accident. He reports having gripped the steering wheel at the time of impact." *Id.* at Ex. E. The narrative report of Dr. David T. Sowa dated November 12, 1997 states in pertinent part: "The next hand written note I have from Dr. Young, dated 11/29/95, indicated that Mr. Albanese was involved in a motor vehicle accident on 11/25/96. As a result of that accident he developed bilateral hand pain. When Dr. Young next saw Mr. Albanese on 12/18/95 the patient, again, complained that his wrists hurt.... Based on the history obtained from the patient and based on the medical records I have in my possession, I do not believe that Mr. Albanese would have come to surgery but for the 11/25/95 motor vehicle accident." *Id.* at Ex. F.

Accordingly, Defendant's Motion for Partial Summary Judgment is GRANTED. IT IS SO ORDERED.

1998 WL 437370 (Del.Super.)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

# E X H I B I T    B

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

ALERTE ANTOINE,                    *

    Plaintiff,                  *

vs.                                *        Civil No. 214453

ALLSTATE INSURANCE COMPANY,        *

    Defendant.                  *

## OPINION AND ORDER

    This matter comes before the Court on the Defendant's motion to dismiss or in the alternative to strike the Plaintiff's class action allegations[1]. Before the Court as well is the Plaintiff's opposition thereto, the Defendant's reply to that opposition and the Plaintiff's supplemental opposition. Following a hearing on the motion on July 20, 2001, the Court took the matter under advisement to consider its decision. With apologies for the long delay, for reasons set out hereinafter, the Court will grant the Defendant's motion to dismiss and/or strike the Plaintiff's class action allegations.

---

[1] The Defendants' motion to strike, in addition to addressing the request for class certification, asks the Court to dismiss the Plaintiff's claims of a breach of fiduciary duty and a breach of an obligation of good faith and fair dealing. The Plaintiff in their opposition responds that the only claim they are bringing is one for breach of contract. In light of the Plaintiff's concession, that portion of the Defendant's motion is moot.

# FACTS

The facts set forth in the Complaint which the Court accepts for purposes of this motion as true are summarized as follows.

The Defendant, Allstate Insurance Company, (hereinafter: Allstate), is an Illinois corporation, with numerous offices in Maryland. Allstate provides policies of insurance to owners and operators of automobiles. Personal injury protection coverage or PIP coverage is a standard feature of these policies. That feature provides coverage to an insured who suffers a bodily injury as a result of a motor vehicle accident for "reasonable and necessary" medical expenses. The expense must be incurred within three years of the accident.

For purposes of the class allegations, the Plaintiff seeks to include within the class the following persons:

> "All natural persons (excluding Defendant, its directors, officers and employees, and governmental entities) in the State of Maryland who, from January 1, 1994 to present, have or had an automobile insurance policy issued by Defendant, who timely submitted a PIP claim under the policy, and whose claims were reduced or denied, or delayed, based on generalized criteria not specific to the individual class member's injuries."

Complaint at p. 5.

The Plaintiff alleges that Allstate breached the contract with its insureds by improperly denying or limiting payment for "reasonable and necessary" medical expenses. To support the reduction in payments, Allstate used a database and software that compares the fees claimed to a purported "schedule of reasonable fees" for similar services. This comparison has the known and intended effect of unfairly reducing the claims paid below the amount that

2

health care providers actually charge for comparable medical services in the relevant community.

As a result of Allstate's breach of contract, class members have paid excessive amounts for PIP coverage and have had to pay the medical providers the unpaid balance of their bills. The Plaintiff requests a declaration that Allstate's claim settlement practices violate the agreements set out in the insurance policies. Further, the Plaintiff requests disgorgement of Allstate's ill-gotten gains and compensatory damages.

## LAW

The party seeking class certification bears the burden of establishing the requirements for certification as set out in Maryland Rule 2-231.

The Plaintiff must first satisfy the four prerequisites set out in Rule 2-231(a). They are referred to as: numerosity, commonality, typicality, and adequacy of the representation. Even if the Plaintiff can satisfy those prerequisites, unless the Plaintiff can also satisfy the requirements of one of three subsections of Rule 2-231(b), the Court may not certify the class. The Plaintiff here seeks certification pursuant to Rule 231(b)(3), or in the alternative, (b)(1), (2).

Pursuant to Rule 231(b)(3), the plaintiff must demonstrate that common questions of law or fact predominate over questions affecting only individual members and that a class action is the superior method for the fair and efficient handling of the claim. These criteria are referred to as predominance and superiority. Factors relevant to an examination of those criteria include the following: (1) the interest of the individual members in controlling the prosecution or defense of their case; (2) the extent and nature of other litigation already

3

commenced involving the parties; (3) the desirability of concentrating the claims in the particular forum; (4) difficulties likely to be encountered in management of the case. The list is not intended to be exhaustive.

Where certification is sought pursuant to Rule 2-231(b)(1)(A), the moving party must establish that separate actions create the risk of "establishing incompatible standards of conduct for the party opposing the class". Under Rule 2-231(b)(2), the moving party must establish that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

Unlike Rule 2-231(b)(3) class members, (b)(1) and (2) class members "... are bound by any resulting judgment given that they are not afforded any opt-out mechanism. Courts have consequently mandated as a condition precedent to certifying an equitable relief class action that it exhibit 'cohesiveness', a requirement similar to Rule 2-231(b)(3)'s prerequisite of predominance, yet one that is even more demanding and difficult to satisfy." *Phillip Morris* v. *Angeletti*, 358 Md. 689, 785 (2000). A plaintiff who cannot satisfy the predominance requirement *a fortori* cannot satisfy the cohesiveness requirement.

Without conceding that the Plaintiff could meet the requirements of Rule 2-231(a), the Defendant here limits his argument to the Plaintiff's inability to meet the requirements of Rule 2-231 (b).

## ANALYSIS

1. The motion is premature.

Initially, the Plaintiff responds that the Defendant's motion to dismiss or strike is premature. While there is no controlling Maryland authority, they argue that the majority of federal courts who have addressed this issue have concluded that it is inappropriate to dismiss a complaint seeking relief as a class action based solely upon the pleadings. Only after the parties have had a chance to conduct discovery with respect to the class certification issues should the Court consider whether such an action is appropriate.

The Defendant responds that federal courts routinely dismiss such claims on the pleadings. Citing Charles Allen Wright and Arthur R. Miller, Federal Practice and Procedure, Civil Section 1785 (2nd Edition 1982), they argue that a "... court should not delay its ruling on the validity of the class action claims simply because discovery is requested, but only if the sought after discovery would be useful or necessary in making that determination." The Court concludes that there is no prohibition on deciding the question of whether class action certification is appropriate based solely upon the pleadings. In cases where it is desirable or necessary to take discovery to decide the relevant issues, discovery should be permitted. However, the Court does not believe that discovery in this case is useful or necessary to resolving the issues now before the Court.

The Court will turn to an analysis of those issues in the order in which the Defendant has raised them.

2. Rule 2-231(b)(3): Predominance and Superiority.

(a) Predominance.

The main thrust of Allstate's motion to strike is that individual issues predominate in the Plaintiff's Complaint. The Plaintiff's Complaint alleges a breach of contract. Under the

terms of that contract, the Defendant is obligated to pay only the "reasonable and necessary" medical charges incurred by its policyholders. Citing *Sabatier v. State Farm Mutual Automobile Ins. Co. (Sabatier II)*, 327 Md. 296, 609 A.2d 307, Allstate asserts that, in each instance where the company failed to pay a medical charge, the Plaintiff will be required to establish that the charge was both "reasonable and necessary". In *Sebatier*, the Court of Appeals held that a trial court is required to determine on a case-by-case basis whether a medical expense is necessary and therefore reasonable for purposes of PIP coverage.

The Plaintiff responds that common, not individual, issues predominate. In their opposition, they identify ten such issues. They argue that in order to satisfy the test of predominance, common questions need not be dispositive of the entire action. Rather, "the question is whether there exists common issues, the resolution of which 'will so advance the litigation that they may fairly be said to predominate,' " citing *In Re: School Asbestos Litigation*, 789 F.2d at 1010. (Plaintiff's Opposition at p. 9). Accepting the Plaintiff's statement of the test of predominance as accurate, the Court finds that common issues do not predominate. At the heart of many of the "common issues" identified by the Plaintiff is the "individual" issue of whether or not a particular medical charge claimed was fair and reasonable. While the Court agrees that there are a number of common issues affecting all members of the putative class, the resolution of those issues is not likely to advance the litigation because the reasonableness and necessity of the charges cannot be determined without an individual inquiry. The question of the appropriate measure of damages is also problematic, assuming liability.

(b) Superiority.

In addition to predominance, the Defendant argues that the Plaintiff's claim for class

6

action treatment must fail because a class action is not the "superior" or most efficient means of litigating these claims. This issue requires a consideration of at least four factors:

(1) the interest of the class members in individually controlling the prosecution,

(2) the extent and nature of any litigation concerning the controversy already commenced,

(3) the desirability of concentrating the litigation in any particular forum, and finally,

(4) the difficulty the court is likely to encounter in managing the case.

In light of the second factor, the Defendant asserted that a class action lawsuit seeking to raise similar claims on behalf of these same plaintiffs, as well as others, had been brought in the United States District Court for the District of Maryland, *Ross Randolph v. Allstate Insurance Company*, Civil Action No. DKC 99-3344.

On May 11, 2001, Judge Chasanow issued an opinion denying the plaintiffs' class certification claims. (Exhibit B to Plaintiffs' Supplemental Memorandum of Law in Opposition to Defendant's Motion to Strike Class Certification Allegations). The plaintiffs in *Ross Randolph* sought to bring a class action against Allstate alleging breach of contract, fraud and related claims. Sought to be included within the class were Maryland residents who purchased or were covered under Allstate's policies of insurance that contained PIP coverage.

In support of their claims, the plaintiffs alleged that after submitting covered claims, Allstate fraudulently denied them in whole or part by using a computer program to generate a fee schedule that was biased in the defendant's favor and did not reflect "reasonable" fees. Further, the plaintiffs alleged that the defendant obtained independent medical exam reports

that were not independent but instead unfairly biased in defendant's favor. The defendant's motion to dismiss was based in significant part upon the Plaintiff's alleged failure to meet the requirements of commonality, predominance, and manageability.

With reference to the lack of common questions, the court concluded that the "commonality requirement" demands that "...a determinative critical issue overshadows all others. Questions that are not dispositive but that merely propel a suit into a posture where judicial scrutiny is necessary for just adjudication fall short of establishing the commonality prong. (Citations omitted)."[2] Opinion, at p. 15.

The court explained that while the plaintiffs in *Ross Randolph* presented claims that involve numerous questions common to all members of the class, insofar as the complaint for breach of contract, the defendant would only be liable to those plaintiffs who could establish that their claims were "fair and reasonable". Citing *Sebatier v. State Farm*, 327 Md. 296 (1992), Judge Chasanow held that this was a factual inquiry that would have to be made in each and every case. Therefore, the Plaintiffs could not meet the "commonality" prong of the test for class certification.

For similar reasons, the court concluded that the plaintiffs could not meet the predominance and superiority requirement. In analyzing this requirement, the court first noted that normally courts should not decide these issues on these grounds without permitting the plaintiffs to conduct some discovery. However, the court concluded that such discovery in *Ross Randolph* would be futile since the plaintiffs must concede that no matter the common

---

[2] The Court recognizes that this is a much more rigid test than that established by the Court of Appeals in *Phillip Morris v. Angeletti*, 358 Md. 689 (2000). There the court held that the "predominance test", which is stricter than the "commonality test", ... does not require that common issues be dispositive of the action or determinative of the liability issue." at 743. Despite the different standards, Judge Chasanow's analysis of the issues presented by the complaint is instructive.

issues, individual factual inquiries would have to be made to determine a number of other issues raised, including liability. The necessity for such individual inquiries would make the case completely unmanageable as a class action.

Although there are some significant differences, the Plaintiff's attempt to distinguish *Ross Randolph* fails. Unlike the Plaintiff here, the plaintiffs in *Ross Randolph* make additional claims of fraud and sought only monetary damages. However, those differences are immaterial to Judge Chasanow's rationale in denying class certification of the breach of contract claims. The breach of contract claims asserted in *Ross Randolph* are almost identical to the claims asserted herein. The rationale employed by Judge Chasanow concerning the need for individual inquiries applies with equal force to the breach of contract claims in the instant case. The need for individual inquiries would render this case completely unmanageable as a class action.

As part of the superiority test, this Court also considers the availability of other remedies. As Judge Messitte recently held in the case of *Ostroff v. State Farm*, No. PJM 99-2988 (D. Md., May 21, 2001), particularly where the Plaintiff seeks declaratory and/or injunctive relief, the availability of administrative remedies can be a further reason not to certify the class. Typically such agencies have extensive experience in the relevant area and offer the litigants substantial cost savings. Where such an agency exists, an administrative forum is often deemed superior to aggregating the claims in a class action. While such an agency cannot award damages, they can direct the insurance company to cease and desist engaging in activities that might be described as consumer fraud. Here, the counsel for the Plaintiff conceded they could obtain the relief they seek, except for monetary damages, through the Maryland Insurance Administration.

3. Rule 2-231 (b) (1) (A)[3]: Risk of creating incompatible standards.

Allstate next argues that the Plaintiff cannot meet the requirements of (b) (1) (A) because that form of class action is for the benefit of the party opposing the class. Allstate asserts they would not be prejudiced if the Court did not certify the class. In fact, they argue it is impossible to establish a standard applicable to the entire class because each case must be evaluated on its own merits.

The Plaintiff responds that the law of Maryland does not require the party affected by the potentially inconsistent standard to consent to class certification under 2-231 (b) (1) (A). In support, he cites a leading treatise on class actions. "The needs of the judicial system to avoid inconsistent adjudications in a single controversy must be respected, despite the willingness of a litigant to assume the risk." 1 Newberg on Class Actions, § 4.07 at 4-25.

The Court agrees that certification under this section does not require the consent of the party potentially adversely affected. Nevertheless, because of the individual factual inquiry necessary to establish liability, there is little or no likelihood of creating incompatible standards of conduct for Allstate. Further, to the extent that Allstate's conduct might be considered to violate certain statutory obligations, the Maryland Insurance Administration is available to establish, subject to judicial review, a uniform standard of conduct. Finally, Rule 2-231 (b) (1) (A) provides for mandatory non-opt out class actions. Since such actions bind absent and even unwilling class members, they must meet the cohesiveness requirement which is stricter than the predominance requirement. Since the Court has already determined

---

[3]"The prosecution of separate actions by or against individual members of the class would create a risk of 'inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for the party opposing the class.' " Rule 2-231(b) (1) (a) (emphasis supplied).

that the Plaintiffs cannot meet that less demanding requirement, *a fortori* they cannot meet the cohesiveness requirement.

For the above reasons, the Plaintiff cannot make out a case for class certification under Rule 2-231 (b) (1) (A).

### 4. Maryland Rule 2-231 (b) (2): Injunctive Relief.

Under Rule 2-231 (b) (2), the Court may certify a class when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." The Defendant argues that (b) (2) is inapplicable here because the primary relief sought by the Plaintiff is money damages, not injunctive relief. "Certification under section (b) (2) is appropriate only where injunctive relief is the sole or primary relief sought. It does not extend to cases in which the relief prayed relates exclusively or predominantly to money damages." (Internal citations omitted). *Phillip Morris v. Angeletti*, 358 Md. 689, 782 (2000). In *Angeletti*, in addition to "restitution and disgorgement of profits", the plaintiffs sought medical monitoring of claims covered by the class action. Notwithstanding that request for partial injunctive relief, the Court held that the complaint was for damages and certification under (b) (2) was inappropriate.

The Plaintiff responds with citation to various federal cases in Maryland, that certification under (b) (2) cannot be rejected simply because compensatory damages are sought in addition to declaratory and injunctive relief. They cite Wright & Miller for the proposition that the court should not concern itself with whether declaratory relief is the principal relief sought when both declaratory and monetary relief are sought. 7A Charles

Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 1775 at 23 (2d ed. 1982). They conclude, because the acts complained of here involve the policy or procedure for processing claims, this case is ideally suited to certification under 231 (b) (2).

Notwithstanding the citation to Wright & Miller, *Angeletti* makes clear that the courts must consider whether the complaint is one primarily for injunctive as opposed to monetary relief. Further, while the Plaintiff suggests that disgorgement might be viewed as equitable relief, *Angeletti* makes clear that such a request is a claim for monetary relief. It is apparent to the Court from a review of the complaint and the arguments of counsel that while the Plaintiff in good faith seeks declaratory and injunctive relief, the primary relief sought is monetary. Therefore, certification under (b)(2) is inappropriate.

As with Rule 2-231 (b)(1)(A), because of the lack of an opt-out provision, the class must exhibit "cohesiveness". *Angeletti*, 358 Md. at 785. A plaintiff who cannot satisfy a predominance requirement *a fortori* cannot satisfy the cohesiveness requirement. For this reason as well, certification under (b) (2) must be denied.

For the reasons foregoing, the Defendant's motion to dismiss the Plaintiff's claim for class action certification shall be granted.

MICHAEL D. MASON, JUDGE
Circuit Court for Montgomery County, MD.

Date: 12/5/01

# E X H I B I T   C

ORIGINAL

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

GAYLE COTTON                         :
and
CAROLYN SMITH, on behalf of          :
themselves and all others
similarly situated                   :

    Plaintiffs                    :

vs.                                  :     Civil No. 213503
                                           Judge Rowan
STATE FARM MUTUAL AUTOMOBILE         :
INSURANCE COMPANY
and                                  :
STATE FARM FIRE & CASUALTY
COMPANY                              :

    Defendants                    :

**ENTERED**

MAR 0 4 2002

Clerk of the Circuit Court
Montgom___ County, Md.

<u>MEMORANDUM OPINION AND ORDER</u>

This matter comes before the Court on the Motion of the Defendants to dismiss and strike certain portions of the Plaintiffs' Complaint. Specifically, the Defendants move to dismiss Count II (breach of implied covenant of good faith and fair dealing), Count III (breach of fiduciary duty), Plaintiffs' prayer for disgorgement of premiums, and further to dismiss all claims against State Farm Fire and Casualty Company because of the lack of any allegation against it. Further, the Defendants move to strike from the Plaintiffs' Complaint the Plaintiffs' class allegations because of lack of compliance with Maryland Rule 2-231. The Court has before it Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss and to Strike Class Allegations of the Plaintiffs' Complaint and the Defendants' Reply in Support of Motion to Dismiss and Strike Class Allegations. In their papers Plaintiffs consent to dismissal of Counts II and III. Plaintiffs further consent to the dismissal

of State Farm Fire & Casualty Company as a Defendant in this case. Thus, the Defendants' Motion is moot as to these issues. Remaining before the Court is the Defendants' Motion to Dismiss Plaintiffs' prayer for disgorgement of premium and to strike Plaintiffs' class allegations as being insufficient under Maryland Rule 2-231.

This matter was argued in open Court on the 22nd day of February, 2002. The papers and arguments were excellent. The matter was taken under advisement.

<u>FACTS</u>

The facts set forth in the Complaint which the Court accepts for the purposes of this Motion as true are summarized as follows:

Plaintiffs, insureds under automobile insurance policies purchased from State Farm Mutual Automobile Insurance Company ("State Farm"), on behalf of a putative class, allege that the Defendant State Farm unlawfully used a biased computerized fee-review system ("Medicode") to systematically reduce first-party medical claims submitted under "personal injury protection" ("PIP") benefits. Plaintiffs allege that State Farm breached its contract with its insured by reducing their PIP benefits solely by the use of Medicode, leaving its insureds liable for the balance of the medical bills that State Farm was obligated to pay.

Both Plaintiffs Gayle Cotton and Carolyn Smith allege that they were State Farm insureds entitled to State Farm PIP insurance coverage. Both were involved in motor vehicle

2

accidents and suffered physical injuries resulting in medical expenses. Upon submission of medical bills and State Farm's use of Medicode as a "measuring stick" of customary and usual charges, Plaintiff Cotton alleges that State Farm reduced her bills by $77.61; and Plaintiff Smith alleges State Farm reduced her medical bills by $586.61. Plaintiffs allege that Medicode consistently recommended payment of medical fees less than prevailing market rates. Plaintiffs claim that after reduction of the particular medical bill and complaint thereof, State Farm would answer that Medicode is an "independent" source of information about prevailing fees in the market place. Plaintiffs further allege that Medicode does not take into account the nature or severity of the injury, or the experience, skill level or success rate of the medical health care provider administering the treatment.

The claim is also brought as a class action under Maryland Rule 2-231 on behalf of the named Plaintiffs and the proposed class.

For purposes of class allegations, the Plaintiffs seek to include within the class the following persons:

> "All natural persons (excluding Defendant, its directors, officers, employees, and governmental entities) in the State of Maryland who, from January 1, 1994, to the present, have or had an automobile insurance policy issued by Defendant, who submitted a PIP claim under the policy, and whose claims were reduced or denied, or delayed based on generalized criteria not specific to the individual class member's injuries."

**ENTERED**

IMAR 0 4 2002

Clerk of the Circuit Court
Montgo--- County, Md.

3

Plaintiffs seek class certification pursuant to Maryland Rule 2-231(b)(1),(b)(2), and (b)(3).

Maryland's PIP statute requires that an insurer pay, up to the limits of an insured's policy, the "reasonable and necessary expenses (for specified medical services) that arise from a motor vehicle accident and that are incurred within three years after (that) accident", Maryland Insurance Code, Section 19-505(b)(2)(i), as well as "85% of income lost" as a result of such an accident, Maryland Insurance Code, Section 19-505(b)(2)(ii). State Farm's contract with its insureds who obtained PIP coverage specifies that State Farm will pay reasonable charges incurred within three years after the date of the accident for necessary medical services specified by the statute.

In its Motion to Dismiss, State Farm described by Affidavit that the Medicode computer data base fee review system began in Maryland in 1996 and continued until March, 2000, when it was stopped for reasons unrelated to the filing of this lawsuit. State Farm said that Medicode is a tool to assess whether a fee is "reasonable" by comparing that fee to the usual and customary charges for the same service by other medical providers in the same geographical area. The Medicode program does not assess the medical necessity of the treatment. Whenever the Medicode database flags a charge as out-of-line (exceeds above 85% of other fees charged for the same service) with prevailing charges in the local geographical area, it was State Farm's practice to notify both the health care provider and policy holder and to

**ENTERED**

I MAR 0 4 200_

4

Clerk of the Circuit Court
Montgom_ _ounty, Md.

invite them to submit additional information if they deemed State
Farm's reduction of the charge to be unreasonable.

State Farm alleges it also notified the policy holder that
State Farm would indemnify and defend him or her in the event the
health care provider sought to recover directly from the policy
holder the fees that State Farm had determined were excessive.
See Affidavit of Kelly Sell, Ostrof vs. State Farm Mutual
Automobile Insurance Company, Supra, Exhibit A to State Farm's
Motion to Dismiss. This Court can go beyond the bare allegations
of the Complaint for a better understanding of the issues at
hand. See Philip Morris vs. Angeletti, 358 Md. 689, 727.

State Farm's core defense postulates that even assuming
State Farm's improper use of a biased claim process by the
vehicle of Medicode medical bill reduction, the case is "swamped"
by the necessity of each member of the class proving that his or
her payments were inadequate involving a host of issues specific
to that insured's accident and medical treatment. Was the
insured involved in a covered accident resulting in injury? Was
each treatment necessary? Did the insured properly document his
or her claim as required by the insurance contract? Were the
bills submitted within the policy limits? In each case did State
Farm unlawfully withhold monies that should have been paid?
State Farm argues that the necessitated inquiry will mandate a
series of mini-trials so that the dispute cannot be tried one
time with the result applied to class members with similar
claims-all of which point to a denial of class certification.

**ENTERED**

[MAR 0 4 2002]

Clerk of the Circuit Court
Montgom    County, Md.

5

As a result of State Farm's reduction of Plaintiff Cotton's medical bills by $77.61 and Plaintiff Smith's medical bills by $586.61 by relying on the Medicode database payment system, Plaintiffs allege a breach of State Farm's insurance contract and seek, as remedies, a declaration that State Farm's implementation of biased claim settlement practices constitutes a violation of State Farm's automobile insurance policies, a disgorgement by State Farm of its ill-gotten gains, and compensatory damages in an amount sufficient to remedy the damages sustained by Plaintiffs and the class.

<u>L A W</u>

The party moving for class certification bears the burden of establishing the requirements for certification pursuant to Maryland Rule 2-231.

The Plaintiff must satisfy not only the four prerequisites set forth in Rule 2-231(a), (Numerosity, Commonality, Typicality, and Adequacy of Representation), but also the requirements of one of the three subsections of Rule 2-231(b).    Unless these prerequisites and requirements are met, the Court may not certify the class.

State Farm attacks class certification arguing that even assuming the validity of Plaintiffs' argument that the use of Medicode was a biased claim processing tool, the Plaintiffs still cannot fulfill the "commonality" requirement of Rule 2-231(a)(2), and that this case is inappropriate for class certification under Rule 2-231(b)(1), (2), or (3).    Plaintiffs answer by arguing that this class action satisfies the four prerequisites set out in

ENTERED
MAR 0 4 2002
Clerk of the Circuit Court
Montgomery County, MD

Maryland Rule 2-231(a), (numerosity, commonality, typicality and adequacy of representation). Plaintiffs argue that the class action satisfies the requirements of Rule 2-231(b)(3), the common questions of law or fact predominate over questions effecting individual members and that a class action can be the superior method for the fair and efficient handling of the claim. Plaintiffs limit their argument to the requirements of Rule 2-231(a)(2) (commonality), and Rule 2-231(b)(3) (predominance and superiority), discussing these requirements together because the "commonality" requirement of Rule 2-231(a) is readily subsumed into the "predominance" requirement of Rule 2-231(b)(3).

### RULE 2-231(a)(2) (Prerequisite of Commonality)

State Farm says that under Rule 2-231(a) that "issues of law or fact should be deemed 'common' only to the extent its resolution will advance the litigation of the entire case" (Philip Morris vs. Angeletti, Supra, at p. 736; and that the common determination of the propriety of State Farm's use of Medicode to reduce PIP payments would not advance the litigation of the entire case. Although a lower Court Opinion, State Farm argues that Ostrof vs. State Farm Mutual Automobile Insurance Company, 200 F.R.D. 521 (D. Md. 2001), provides a road map to issues that are virtually identical in this case. State Farm points out that in Ostrof vs. State Farm Mutual Automobile Insurance Company, Supra, 529, Judge Messitte of the United States District Court of Maryland found that the common question of whether State Farm had used biased claims tools, including Medicode, would not significantly advance the litigation because

ENTERED

MAR 0 4 2002

Clerk of the Circuit Court
Montgomery County, Md.

the added necessity of individual inquiry in each case of whether the particular Plaintiff incurred reasonable and necessary expenses arising from a motor vehicle accident.

Plaintiffs answer this argument by stating that the pending case is different from Ostrof, Supra, and Ross-Randolph vs. Allstate Insurance Company, No. DKC99-3344, Mem. Op. (D.Md., May 11, 2001), where the Court granted Defendant's Motion to Strike Plaintiff's class allegations under similar reasoning to the Ostrof decision.

Plaintiff argues that in this case medical necessity was essentially conceded by State Farm, but it "shaved" the amount of medical reimbursement.

State Farm responds that first there is no language in the insurance contract restricting State Farm's use of Medicode, and more importantly, that even assuming inquiry into the common "propriety" of Medicode use, the inquiry would still move to whether the insurer's use of Medicode resulted in an underpayment of the sums contractually owed to the Plaintiff. Such an inquiry into underpayment requires an individualized examination of the reasonableness, necessity and accident-relatedness of every single medical expense submitted by a class member resulting in a case-by-case adjudication that would dominate any trial. State Farm points out that a "waiver" argument only applies to technical trial defenses (i.e., did the claimant file a timely proof of loss), but does not apply to defenses founded upon a lack of coverage under the policy, such as the definition of coverage services which in this case limits PIP coverage to

ENTERED

MAR 0 4 2002

Clerk of the Circuit Court
Montgomery County, Md.

8

expenditure for reasonable and necessary medical treatment. See
Government Employees Insurance Company vs. Group Hospitalization
Medical Services, 322 Md. 645, 650.

Whether or not the State Farm use of Medicode was or was not
appropriate, the Messitte analysis of the required investigation
of each Plaintiff's individual case is exactly the same in the
present case.

> "Quite simply, it is impossible to
> avoid the conclusion urged by State
> Farm that the case is rife with
> individualized inquiries.
> Fundamental questions necessarily
> apply to each and every claimant.
> Was there in fact an accident? Was
> the claimant injured? Was the
> event adequately documented? Was
> review of the claim based on
> computer review alone? Utilization
> review alone? Medical review
> alone? Or some combination of
> these? Did the claimant have a
> pre-existing medical condition?
> Was the treatment prescribed for
> the claimant necessary? Was it
> excessive? Were the health care
> provider's bills reasonable? Was
> there duplication in billing? Was
> fraud involved? Did the individual
> claimant actually have to pay the
> amount State Farm denied? And so
> the litany proceeds. Common sense,
> no less due process, makes such
> inquiries relevant." See Ostrof
> vs. State Farm Mutual Automobile
> Insurance Company, Supra, at p.
> 528. (Emphasis supplied).

ENTERED
(MAR 0 4 2002)
Clerk of the Circuit Court
Montgomery County, Md.

Even a partial Messitte analysis reflects that a decision on
the common question of the alleged wrongful and biased use of
Medicode still requires an individual examination of each claim
to determine if the particular PIP claimant's medical expenses
were justified, reasonable and covered. State Farm cites a

series of cases holding that individual investigation of each Plaintiff's claim reflect a lack of "commonality" and certification should be denied.  See <u>Broussard vs. Meinke Disc. Muffler</u>, 155 F.3rd, 331, 344; <u>People vs. Wendover Funding</u>, 179 F.R.D. 492, 498; <u>Bostron vs. Apfel</u>, 182 F.R.D. 188, 194; <u>Sprague vs. General Motors Corp.</u>, 133 F.3rd, 388, 397; <u>Antoine vs. Allstate Insurance Company</u>, No. 214453, Mem. Op., Circuit Court for Montgomery County, December 5, 2001; <u>Louis vs. Geico</u>, No. CAL99-18694, Mem. Op., Circuit Court for Prince George's County, September 19, 2001, (class certification denied in both lower Court cases in PIP/computer fee review).

Having said that, <u>Angeletti</u> cautioned "restraint" on the less demanding prerequisite of commonality in Rule 2-231(a) "because it 'is necessarily subsumed in the more exacting requirement of predominance of common issues over individual questions, found in Rule 2-231(b)(3).  See <u>Philip Morris vs. Angeletti</u>, Supra, at p. 737.

<u>Rule 2-231(b)(1)(A) and (B) (Class Actions Maintainable)</u>

Besides meeting the requirements of 2-231(a), the proposed class must satisfy one of the three subsections of Rule 2-231(b).

State Farm contends that Plaintiffs' class cannot satisfy any of the requirements of Rule 2-231(b).  Rule 2-231(b)(1)(A) allows for class certification when the suits by individuals and members of the class would create risk that each individual suit "would establish incompatible standards of conduct for the party opposing the class".  Whether State Farm was right or

ENTERED
MAR 0 4 2002
Clerk of the Circuit Court
Montgomery County, Md.

wrong in failing to fully or partially pay a particular bill because of Medicode review does not establish conflicting standards for the next case where the medical bill, or the amount thereof, is in contest because the circumstances vary on a case to case examination.

Additionally, the decision as to whether State Farm was or was not correct in its medical bill payment in one case does not dispose of the next case in line under Rule 2-231(b)(1)(B). Because again the circumstances vary on a case to case basis, whether a Plaintiff is or is not a member of the class. As State Farm points out, because a particular bill for medical services might be "reasonable" in one context and "unreasonable" in another, depending upon the severity of the injuries, a finding that State Farm underpaid one insured says nothing about the adequacy of its payment to another insured. Thus, Rule 2-231(b)(1)(A) and (B) is not satisfied.

### Rule 2-231(b)(2)

Under Rule 2-231(b)(2), if the complaint is primarily for money damages and not injunctive relief, certification is inappropriate. "Certification under subtitle (b)(2) is appropriate only where injunctive relief is the sole or primary relief sought.... It does not extend to cases in which the relief prayed relates exclusively or predominantly to money damages." See Philip Morris vs. Angeletti, Supra, at p. 782. Although Plaintiffs seek a declaration that State Farm's implementation of biased claims settlement practices constitutes a violation of State Farm's automobile insurance

ENTERED

MAR 0 4 2002

Clerk of the Circuit Court
Montgomery County, Md.

11

policies, here Plaintiffs primarily seek reimbursement for medical bills allegedly unpaid or partially paid because of failing to meet the criteria built into the Medicode program - a relief that is obviously monetary in nature. Thus, certification is inappropriate.

### Rule 2-231(b)(3)

Finally, State Farm says that as to Rule 2-231(b)(3) the Court cannot find under the factual scenario present that "the questions of law and fact common to the members of the class <u>predominate</u> over any questions affecting only individual members and that a class action is <u>superior</u> to the other available methods for fair and efficient adjudication of the controversy."

"To satisfy the predominance test, common issues must constitute a significant part of the individual cases." See <u>Philip Morris vs. Angeletti</u>, Supra, at p. 743. Common issues must predominate over individual issues.

The Messitte analysis of the necessary examination of each individual claimant's case points to the conclusion that each case will involve different questions leading to different conclusions. Whether or not common questions exist concerning State Farm's alleged use of a biased or weighted Medicode, State Farm's liability to potential PIP claimants still depends on answering the individual Messitte questions concerning were there pre-existing conditions, was the treatment necessary, was it excessive-"and so the litany proceeds". See <u>Ostrof vs. State Farm Mutual Automobile Insurance Company</u>, 200 FRD 521,

ENTERED
MAR 0 4 2002
Clerk of the Circuit Court
Montgomery Cty., Md.

529.    In short, individual issues predominate over common issues.  Thus, class certification is denied.

State Farm also argues that resolving the issues in this case would render the class action unmanageable; and would not be "superior" as mandated under Rule 2-231(b)(3) to other available methods to fairly and effectually resolve the controversy.  Plaintiffs, in a general way, suggest referring the matter to a Master or "expert" claims examiner for "reprocessing" the PIP claims without Medicode.  But it is not the Court's burden to map out a workable plan to resolve the Plaintiffs' claim and the Defendants' defenses prior to class certification.  See Chin vs. Chrysler Corporation, 182 FRD 448, 449.  Philip Morris vs. Angeletti, Supra, at p. 765, pointed out that the trial Court should examine the manageability of the lawsuit as a class action.    Citing Eisen vs. Carlisle and Jacquelin, 417 US 156, 164, 94 S.C. 2140, 2146, Angeletti noted that the Supreme Court said:

> "This consideration encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit."

The Messitte analysis, previously discussed, correctly notes that "numerous individual issues as compared to class issues obviously make a case much more difficult to manage".  See Ostrof vs. State Farm Mutual Automobile Insurance Company, Supra, at p. 531.    This Court agrees with the State Farm argument that each Plaintiff would have to prove their individual PIP claim as to reasonableness and necessity of the

13

particular medical bill in question; and State Farm could present the appropriate defenses to each claim. This would result in a multitude of mini trials. As Angeletti said: "Such a trial plan hardly promotes judicial economy. Instead, it renders the presently proposed class litigation unmanageable...." See Philip Morris vs. Angeletti, Supra, at p. 765. Having accepted the Defendant's argument in substantial part regarding the necessity for individual inquiries under the Messitte analysis, the Court concludes that the trial of this matter would involve a multitude of mini trials and would be completely unmanageable. "Class action status should not be conferred upon cases that 'would degenerate in practice into multiple lawsuits separately filed'...." See Philip Morris vs. Angeletti, Supra, at p. 728. As a part of the manageability/superiority examination, this Court also considers the availability of other remedies. The Court is well-aware of the realities of the suggestion that the insured can hire a lawyer and sue for the wrongful withholding of a $77.00 medical bill. But, as Ostrof vs. State Farm, Supra, at p. 521, pointed out the availability of administrative remedies to the Plaintiffs or any particular class member can be a further reason not to certify the class. Typically, such agencies have extensive experience in the relevant area and offer the litigants substantial cost savings. Where such an agency exists, as it does in this case, an administrative forum is often deemed superior to aggregating the claims in a class action. While such an agency cannot

14

award damages, they can direct State Farm to pay restitution to those policy holders who have suffered actual damage and award penalties against the insurer. See <u>Antoine vs. Allstate Insurance Company</u>, Supra; see also Maryland Insurance Code, Sections 27-301 to 27-305.

Accordingly, for all of the reasons expressed, class certification is denied.

<u>Disgorgement of Premiums</u>

Next, State Farm moves to dismiss Plaintiffs' prayer for disgorgement of premiums (paragraph 51(b) of the Complaint) on the basis of insurance law and Maryland statute. Defendant argues that "once the risk attaches", "an insured may not have any part of his or her premium returned" - absent a contrary contractual provision or statute. See 5 <u>Couch on Insurance</u>, Section 79.7 (Third Edition). Plaintiffs point to Section 79.43 of Couch. But this is not a case of contract repudiation. Rather, it is a contractual dispute over the amount due under automobile personal injury insurance protection ("PIP") coverage on certain medical bills.

Moreover, the Maryland Insurance Code prohibits retroactive insurance premium alteration unless provided for by the Maryland Insurance Commission. Maryland Insurance Code, Section 27-212(b)(1) provides, "....An insurer...may not pay, allow, give, or offer to pay, allow, or give directly or indirectly...a rebate, discount, abatement, credit or reduction of the premium stated in the policy." The Court finds the prayer for disgorgement of premium is barred by insurance law

15

and Maryland statute and strikes the prayer for disgorgement from the Complaint.

## O R D E R

For the above stated reasons, it is this 29 day of February, 2002, by the Circuit Court for Montgomery County, Maryland,

ORDERED that:

1. Counts II and III of the Complaint are hereby dismissed with prejudice.

2. Plaintiffs' prayer for disgorgement (Complaint, paragraph 51(b)) is hereby dismissed with prejudice.

3. Plaintiffs' class allegations (Complaint, paragraphs 10-20) are hereby struck from the Complaint.

4. Defendant State Farm Fire and Casualty Company is hereby dismissed with prejudice from this litigation.

JUDGE WILLIAM J. ROWAN, III

ENTERED

MAR 0 4 2002

Clerk of the Circuit Court
Montgomery County, Md.

16

# EXHIBIT   D

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**FILED**

SEP 2 9 2000

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
        DEPUTY CLERK

| | | |
|---|---|---|
| PETER GLORIA and DAVID PEREZ, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | |
| | § | CIVIL ACTION NO. SA-99-CA-676-PM |
| ALLSTATE COUNTY MUTUAL | § | |
| INSURANCE COMPANY and | § | |
| ALLSTATE PROPERTY AND | § | |
| CASUALTY COMPANY, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Pursuant to the consent of the parties in the above-styled and numbered cause of action to trial by the undersigned United States Magistrate Judge and consistent with the authority vested in the United States Magistrate Judges under the provisions of 28 U.S.C. § 636(c)(1) and Appendix C, Rule 1(I) of the Local Rules for the Assignment of Duties to United States Magistrates, in the Western District of Texas, the following order is entered.

### I. JURISDICTION

The Court has jurisdiction under 28 U.S.C. §§ 1331 and 1367.

### II. PROCEDURAL HISTORY

Plaintiffs Peter Gloria and David Perez commenced this class action in the 57th District Court of Bexar County, Texas against defendant Allstate County Mutual Insurance Company on June 4, 1999, alleging violations under the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq., the Texas Insurance Code art. 21.21, and the Texas

1

64

Deceptive Practices Act ("DTPA") as well as breach of contract and fraud.[1]  Because of the RICO claim, defendant removed the case to the District Court on June 25, 1999.[2]  Defendant subsequently moved to dismiss the case because plaintiffs lacked standing.[3]  Alternatively, defendant moved to transfer the case, under the first-to-file doctrine, to the Circuit Court of Cook County, Illinois, County Department, Chancery Division, where two substantially similar consolidated cases had previously been filed, or to stay the proceeding pending the outcome of a motion for nationwide class certification in the Illinois cases.[4]  The parties then filed and the District Court granted a joint motion to stay proceedings until the Illinois cases were resolved.[5]  On March 16, 2000, the District Court denied as moot defendant's motion to dismiss or in the alternative to transfer or stay.[6]  Upon notice that the proceedings in Illinois had been resolved,[7] the District Court on April 13, 2000, ordered the stay lifted.[8]  Defendant then moved for reconsideration of its motion to dismiss and the District Court Clerk received defendant's motion

---

[1] Docket no. 1, attachment (Original Complaint).

[2] Docket no. 1.

[3] Docket no. 2.

[4] Id.

[5] Docket nos. 4 and 6.

[6] Docket no. 7.

[7] See docket no. 10, exhibit 1.  On March 21, 2000, the Illinois state court denied the motion for nationwide class certification in the consolidated cases, certifying instead only an Illinois class of Allstate insureds alleging essentially the same complaints as are at issue in this case.

[8] Docket no. 9.

2

to dismiss and/or strike the class allegations.[9]  Plaintiffs responded to these motions and
defendant replied.[10]

On May 8, 2000, plaintiffs filed their motion to certify a class action and the District
Court Clerk received plaintiffs' first amended complaint which added factual allegations in
support of their claims and which abandoned the fraud claim.[11]  On May 16, 2000, defendant
moved to stay the class certification proceedings pending a ruling on the motions to dismiss.[12]
The parties stipulated that defendant's motions to dismiss the original complaint would apply to
the first amended complaint.[13]

Plaintiffs' second amended complaint was filed on July 7, 2000,[14] and proceedings on
defendant's pending motions to dismiss the original and first amended complaints were ordered
stayed pending the filing of a motion to dismiss plaintiffs' second amended complaint.[15]  The
second amended complaint added defendant Allstate Property and Casualty Company[16] and

---

[9]  Docket nos. 10 and 13, attachment.  Defendant's motion to dismiss or to strike the
class action was ordered filed on September 9, 2000.

[10]  Docket nos. 14, 15, and 19.

[11]  Docket nos. 16 and 15, attachment, respectively.  Plaintiffs' first amended complaint
was ordered filed on September 5, 2000.

[12]  Docket no. 20.

[13]  Docket no. 24.

[14]  Docket no. 29.

[15]  Docket no. 28.

[16]  The defendants will be referred to collectively as "Allstate."

3

antitrust claims pursuant to 15 U.S.C. §§ 1 and 13.[17] On August 2, 2000, Allstate moved to dismiss the second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(1)[18] and 12(b)(6)[19] and to strike or dismiss the class action allegations pursuant to 12(f).[20] Plaintiffs have responded to these motions[21] and Allstate has replied.[22] On September 5, 2000, the Court entered an order which provided that further consideration of plaintiffs' motion to certify a class would not be undertaken until after resolution of the pending motions to dismiss.[23] On September 12, 2000, the parties filed a stipulation stating that Allstate's motions to dismiss the second amended complaint filed on August 2, 2000, are the motions the Court should address and that all motions to dismiss filed prior to August 2 should be considered moot.[24] The stipulation further provides that the, "Parties agree the Sherman antitrust violations alleged are limited to violations of Section 1" and "that the Robinson-Patman Act does not apply."[25]

---

[17] Docket no. 29.

[18] Docket no. 34.

[19] Docket no. 32.

[20] Docket no. 36.

[21] These responses and one joint appendix originally were tendered to the Court with a joint motion to seal. On September 22, 2000, the Court entered an order, docket no. 54, which sealed portions of the responses and appendix and required plaintiffs to file redacted copied for the public record "within seven (7) calendar days" of the date of the Order. The Court has reviewed the unredacted copies -- tendered in the sealed record -- in preparing this Order.

[22] Docket nos. 61, 62, 63.

[23] Docket no. 43.

[24] Docket no. 50.

[25] Id. The Sherman antitrust violation alleged is pursuant to 15 U.S.C. § 1. The abandoned claim was an alleged violation of 15 U.S.C. § 13.

4

In sum, the pleadings for the Court's consideration are plaintiffs' second amended complaint,[26] Allstate's motions to dismiss pursuant to Rules 12(b)(1), 12(b)(6), and 12(f),[27] and plaintiffs' responses.[28] The claims remaining at issue are those alleging violations of RICO; the Sherman antitrust Act, 15 U.S.C. §1; the Texas Insurance Code art. 21.21; and the DTPA; as well as the claim for breach of contract.

## III. FACTUAL BACKGROUND

As will be discussed more completely in Section V, when considering motions to dismiss pursuant to FED. R. CIV. P. 12(b)(1) and (6), the Court is required to construe plaintiffs' factual allegations as true. Rule 12(b)(1) and (6) motions admit all well-pleaded facts in the complaint which it challenges.[29] Thus, in the spirit of Rules 12(b)(1) and (6), the Court sets forth the following narration of facts which are taken as true or admitted. The policy at issue provides:

Plaintiffs allege that at times during 1997 and 1998, they were provided personal injury protection ("PIP") and medical payments ("Medpay") coverage under their Texas personal automobile insurance policies issued by Allstate.[30] Allegedly, the PIP and Medpay coverage entitled plaintiffs to payment of the full amount of their medical expenses.[31] However, plaintiffs

---

[26] Docket no. 29.

[27] Docket nos. 34, 32, and 36, respectively.

[28] See note 21 above.

[29] Crowe v. Henry, 43 F.3d 198, 203 (5th Cir. 1995); Warfield v. Fidelity & Deposit Co., 904 F.2d 322, 326 (5th Cir. 1990).

[30] Docket no. 29 at 2.

[31] Id.

5

also allege that the PIP and Medpay provisions provide that the insureds would be paid their "reasonable expenses" incurred for "necessary medical treatment."[32] The policies at issue provide in relevant part that:

## PART B1-MEDICAL PAYMENTS COVERAGE

### INSURING AGREEMENT

A.    We will pay reasonable expenses incurred for necessary medical and funeral services because of bodily injury:

      1.    Caused by accident and
      2.    Sustained by a covered person.

## PART B2-PERSONAL INJURY PROTECTION COVERAGE

### INSURING AGREEMENT

A.    We will pay Personal Injury Protection benefits because of bodily injury:

      1.    resulting from a motor vehicle accident and
      2.    sustained by a covered person.

Our payment will only be for losses or expenses incurred within three years from the date of the accident.

B.    Personal Injury Protection benefits consist of:

      1.    Reasonable expenses incurred for necessary medical and funeral services.[33]

---

[32] Id.

[33] Docket no. 29, exhibit, Texas Personal Auto Policy at 314, 316. The Court notes that unless rejected by the insured, the PIP coverage set forth above is required by the Texas Insurance Code which provides:

"Personal injury protection" consists of provisions of a motor vehicle liability policy which provide for payment to the named insured in the motor vehicle liability policy and members of the insured's household, any authorized operator or passenger of the named insured's motor vehicle including a guest occupant, up to an amount of $2,500 for each such person for payment of all reasonable

The policy also provides that for each of these coverages the "liability shown in the Declarations for this coverage is our maximum limit of liability."[34]

Plaintiffs allege that at various times during 1997 and 1998, they have submitted medical expenses to Allstate for payment under their PIP coverage.[35] According to plaintiffs' allegations, Allstate wrongfully reduced the medical bills to an amount lower than 100% of the expenses actually charged.[36] Allegedly, Allstate accomplished this reduction by using a computerized cost-containment program which included an inaccurate fee schedule to reduce the medical expenses on a systematic basis.[37] Plaintiffs allege that this conduct was designed to reduce the insureds' PIP and Medpay benefits.[38] Allstate allegedly uses an internal fee schedule code (AI or other similar code) "which is a designation that a medical charge exceeds the reasonable amount for the procedure in the region where the service was provided."[39]

Plaintiffs further allege that Allstate through the use of a computer data base developed by National Biosystems -- also known as ADP Integrated Medical Solutions, Inc. or IMS -- systematically reduces medical charges to "the 85th percentile" without considering the condition

---

expenses arising from the accident and incurred within three years from the date thereof[.] TEX. INS. CODE ANN. art. 5.06-3(b) (Vernon 1981).

[34] Id. at 315, 317. The Declarations showing liability limits are not part of the record.

[35] Docket no. 29 at 2.

[36] Id.

[37] Docket no. 29 at 2.

[38] Id.

[39] Id. at 2-3.

7

or age or the patient or the special certifications or qualifications of the provider.[40] Plaintiffs contend that Allstate has made such reductions without utilizing any relevant or legitimate data with which to compare medical charges in the region where the services were provided and that Allstate does not consider the usual and customary fees of similar medical providers in the geographic area.[41] Plaintiffs allege Allstate has not disclosed that it relies on a third party service for an internal medical fee schedule by which to evaluate the reasonableness of medical charges.[42]

Allstate allegedly refuses to explain the rationale for the reductions and will not disclose its criteria for determining the reductions.[43] According to plaintiffs' allegations, Allstate's position that a charge is not reasonable or customary may be stated in an explanation of benefits or in a letter sent to the insured.[44] One such letter written to plaintiffs' counsel regarding a claim from plaintiff Peter Gloria provides:

> I recently received a medical bill from CRAIG HONER for treatment your client received following the auto accident that occurred on the date shown above. Based on our review of the information submitted, I have sent a check to the health care provider for an amount less than the billed charges along with an Explanation of Benefits. Enclosed is a copy for your records.[45]

> Your client's policy provides benefits for reasonable expenses for necessary

---

[40] Id. at 3.

[41] Id.

[42] Id.

[43] Id. at 4.

[44] Docket no. 29 at 4.

[45] The Explanation of Benefits is not part of the record.

8

medical and funeral services because of bodily injury caused by an auto accident.
We review all bills to ensure that the treatment and charges meet these criteria.
Based on our review of information available to us, not all of the treatment or
charges appear to meet these requirements.

We are committed to the protection of our customers' interests. The provider may
seek further review with us should there be disagreement with out evaluation. In
the event that we are unable to reach an agreement with the provider, we intend to
defend and, if necessary, indemnify our customer up to policy limits against
actions that health care providers may take. We will also consider any other
appropriate measures to protect our customer should the health care provider
decide to pursue collection efforts for the unpaid portion of the bill that is causally
related to the accident.[46]

Plaintiffs allege that this letter is an example of Allstate's intentionally vague and deceptive

representations and that insureds are deceived into believing that Allstate is complying with the

Texas Personal Automobile Policy and the Texas Department of Insurance when it is not.[47]

Plaintiffs contend they believe, to the best of their knowledge as lay persons, that the

treatment by their providers and the resulting charges were necessary and reasonable.[48]  Plaintiffs

further contend that they agreed to compensate their doctors for all medical treatment rendered to

them arising out of their accidents and that they are subject to liability for the unpaid balance of

their bills.[49]  According to plaintiffs' allegations, Allstate's practice of reducing medical charges

"interferes and conflicts with the physician-patient relationship and places the patient in a tug-of-

war between the insurance company and the medical provider."[50]  Allegedly, Allstate's practice

---

[46] Docket no. 29, exhibit letter from Veronica McCullough.

[47] Id. at 5.

[48] Docket no. 29 at 5.

[49] Id.

[50] Id.

9

also causes Texas insureds to be subject to credit damage.[51]

Specifically, plaintiffs allege that plaintiff Gloria presented Allstate with allegedly reasonable medical charges of $5,849.50 and that Allstate allegedly reduced these charges by $334.40.[52] Gloria admits that he received from Allstate the full PIP coverage of $2,500.[53] Plaintiffs also contend that plaintiff Perez presented Allstate with allegedly reasonable medical charges of $2,241.00 and that Allstate allegedly reduced these charges by $65.[54] Plaintiffs allege that Allstate reduced the presented medical charges because the amounts were unreasonably high for plaintiffs' geographical region which Allstate did not identify.[55]

Plaintiffs have brought this class action, individually and on behalf of all similarly situated Allstate insureds, alleging that Allstate systematically, wrongfully, and improperly reduced medical bills for services provided to the insureds covered under the PIP and Med-Pay provisions of their personal automobile insurance policies.[56] As stated above plaintiffs federal claims allege violations of RICO and of the Sherman antitrust Act; their state claims allege violations of Texas Insurance Code and the DTPA as well as breach of contract.

Allstate has moved to dismiss pursuant to Rule 12(b)(1) arguing that the Court lacks

---

[51] Id.

[52] Docket no. 29 at 8.

[53] Id.

[54] Id.

[55] Id.

[56] Docket no. 29 at 1.

10

jurisdiction because plaintiffs have no standing to bring their claims.[57] In addition, Allstate has moved to dismiss plaintiffs' antitrust claim pursuant to Rule 12(b)(6) arguing that plaintiff has failed to state a claim against Allstate for antitrust violations.[58] Finally, Allstate has moved to strike or dismiss plaintiffs' class action allegations pursuant to Rule 12(f) arguing that plaintiffs' claims are "inherently unsuitable" for a class action.[59]

## IV. ISSUES

1.  Whether plaintiffs have standing to assert their claims.

2.  Whether plaintiffs have state a cause of action for antitrust violations.

3.  Whether plaintiffs allegations are inherently unsuitable for class action treatment.

## V. STANDARDS FOR MOTIONS TO DISMISS

A.   Fed. R. Civ. P. 12(b)(1)

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure permit a party to challenge the subject matter jurisdiction of the district court to hear a case.[60] Lack of subject matter jurisdiction may be found in one of three instances: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."[61] The burden of

---

[57] Docket no. 34.

[58] Docket no. 32.

[59] Docket nos. 36 and 37.

[60] FED.R.CIV.P. 12(b)(1).

[61] Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir.), cert. denied 454 U.S. 897 (1981); see Barrera-Montenegro v. United States, 74 F.3d 657, 659 (5th Cir. 1996).

11

proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction.[62] Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist.[63]

A facial attack on subject matter jurisdiction requires the court to decide if the plaintiff has correctly alleged a basis for subject matter jurisdiction.[64] Such an attack is valid if from the face of the pleadings, the court can determine it lacks subject matter jurisdiction.[65] In examining a Rule 12(b)(1) motion, the district court is also empowered to consider undisputed matters of fact reflected in the record.[66] Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his or her claim that would entitle him or her to relief.[67] "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."[68]

When a Rule 12(b)(1) motion is filed with a Rule 12(b)(6) motion, the court should always consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the

---

[62] McDaniel v. United States, 899 F.Supp. 305, 307 (E.D. Tex. 1995), aff'd, 102 F.3d 551 (5th Cir. 1996).

[63] Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir.), cert. denied 449 U.S. 953 (1980).

[64] Venture I, Inc. v. Orange County, Tex., 947 F.Supp. 271, 276 n. 7 (E.D. Tex. 1996).

[65] Id.

[66] Williamson, 645 F.2d at 413.

[67] Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss., 143 F.3d 1006, 1010 (5th Cir. 1998).

[68] Id. (quoting Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1187 (2d Cir.1996)).

merits.[69] This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice. The court's dismissal of a plaintiff's case because the court lacks subject matter jurisdiction is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction.[70] A motion to dismiss pursuant to Rule 12(b)(1) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6).[71]

**B.    Fed. R. Civ. P. 12(b)(6)**

Under Rule 12(b)(6), Fed. R. Civ. P., plaintiff must state a claim upon which relief can be granted or the complaint may be dismissed with prejudice as a matter of law. A motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely granted."[72] When considering a motion to dismiss for failure to state a claim, all factual allegations in the complaint must be taken as true and construed favorably to the plaintiff.[73] The United States Supreme Court has elaborated:

Nothing in Rule 12(b)(6) confines its sweep to claims of law which are obviously

---

[69] Hitt v. Pasadena, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam).

[70] Id.

[71] Home Builders Ass'n of Miss., 143 F.3d at 1010.

[72] Kaiser Aluminum & Chem. Sales, Inc. v. Avondale, 677 F.2d 1045, 1050 (5th Cir.), cert. denied, 459 U.S. 1105, 103 S.Ct. 729 (1982) (quoted in Capital Parks, Inc. v. Southeastern Advertising & Sales Sys., Inc., 864 F.Supp. 14, 15 (W.D. Tex. 1993), affirmed, 30 F.3d 627 (5th Cir. 1994)).

[73] Fernandez-Montez v. Allied Pilots Assoc., 987 F.2d 278, 284 (5th Cir. 1993). See Capital Parks, Inc., 30 F.3d at 629 ("A court's decision to dismiss for failure to state a claim may be upheld 'only if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations,' Baton Rouge Bldg. & Constr. Trades Council AFL-CIO v. Jacobs Constructors, Inc., 804 F.2d 879, 881 (5th Cir. 1986).") See also O'Quinn v. Manuel, 773 F.2d 605, 608 (5th Cir. 1985).

13

insupportable. On the contrary, if as a matter of law "it is clear that no relief could be proved consistent with the allegations," a claim must be dismissed, without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one.[74]

A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.[75] Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.[76] This is a rigorous standard, but subsumed within it is the requirement that a plaintiff state its case with enough clarity to enable the court and the opposing party to determine whether a claim is alleged.[77]

C.    Fed. R. Civ. P. 12(f)

Rule 12(f) provides that a party may move to have stricken from pleadings " any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."[78] As with other Rule 12 motions to dismiss, a Rule 12(f) motion to strike is generally disfavored.[79] When considering a Rule 12(f) motion to strike, the Court construes all factual allegations opposed as

---

[74] Neitzke v. Williams, 490 U.S. 319, 327, 109 S. Ct. 1827, 2232 (1989) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232 (1984)).

[75] Conley, 355 U.S. at 45-46, 78 S.Ct. at 102.

[76] Jefferson v. Lead Indus. Ass'n. Inc., 106 F.3d 1245, 1250 (5th Cir. 1997); Tuchman v. DSC Communications Corp., 14 F.3d 1061, 1067 (5th Cir. 1994); Fernandez-Montes, 987 F.2d at 284.

[77] Elliott v. Foufas, 867 F.2d 877, 880 (5th Cir. 1989).

[78] FED. R. CIV. P. 12(f).

[79] Kaiser Aluminum, 677 F.2d at 1057.

14

true.[80]

## V. ARGUMENTS AND CONCLUSIONS OF LAW

A.    Plaintiffs' standing to bring their federal claims

Plaintiffs have alleged that Allstate violated 18 U.S.C. § 1962(c) by unlawfully

participating in an association-in-fact enterprise with IMS through a pattern of racketeering

activity in the form of mail and wire fraud, subjecting plaintiffs to liability for unpaid medical

bills.[81] Plaintiffs also allege that Allstate violated the antitrust laws, specifically 15 U.S.C. § 1,

by conspiring and/or contracting with IMS to illegally fix or restrain the amounts Allstate would

pay as reimbursement for health care expenses incurred by its insureds.[82] Relying on Rule

12(b)(1), Defendants have moved to dismiss the RICO and Sherman antitrust claims arguing that

plaintiffs failed to invoke the Court's jurisdiction because they lack standing to bring their

claims. In particular, Allstate argues that plaintiffs have not alleged any actual or threatened

injury resulting from Allstate's alleged conduct.

Standing is jurisdictional under Article III of the Constitution, and plaintiffs lacking

standing may not litigate their claims in federal court.[83] The constitutional minimum of standing

includes three elements: (1) an injury-in-fact; (2) a causal connection between the injury and the

conduct complained of; and (3) the likelihood that the injury will be redressed by a favorable

---

[80] See id at 1047, 1060.

[81] Docket no. 29 at 15-17.

[82] Docket no. 29 at 13-15.

[83] Meadowbriar Home for Children v. Gunn, 81 F.3d 521, 529 (5th Cir. 1996).

15

decision.[84]  The party invoking federal jurisdiction bears the burden of establishing these elements.[85]  "The litigant must clearly and specifically set forth facts sufficient to satisfy these Article III standing requirements."[86]  Each element should be supported in the same manner as any other matter on which the plaintiff has the burden of proof.[87]  Thus, "[a]t the pleading stage, general factual allegations of injury resulting from defendant's conduct may suffice, for on a motion to dismiss we 'presume that general allegations embrace those specific facts that are necessary to support the claim.'"[88]  However, dismissal is appropriate at the pleadings stage "if the complaint itself shows a bar to relief -- when this happens it is 'beyond doubt' that no set of facts will allow plaintiff to prevail."[89]

"Injury-in-fact" is an invasion of a legal right that is "(a) concrete and particularized, and (b) actual or imminent, not 'conjectural' or 'hypothetical.'"[90]  "Particularized" means the injury affects the plaintiff in an individual and personal way.[91]  "Allegations of possible future injury do not satisfy the standing requirement of Article III.  A threatened injury must be 'certainly

---

[84] Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136 (1992).

[85] Lujan, 504 U.S. at 561, 112 S.Ct. at 2136.

[86] Whitmore v. Arkansas, 495 U.S. 149, 155, 110 S.Ct. 1717, 1723 (1990).

[87] Id.

[88] Lujan, 504 U.S. at 561, 112 S.Ct. at 2137 (quoting Lujan v. National Wildlife Federation, 497 U.S. 871, 889, 110 S.Ct. 3177, 3189 (1990)).

[89] Mahone v. Addicks Util. Dist. of Harris County, 836 F.2d 921, 926 (5th Cir. 1988) (citing Clark v. Amoco Prod. Co., 794 F.2d 967, 970 (5th Cir. 1986)).

[90] Lujan, 504 U.S. at 560, 112 S.Ct. at 2136.

[91] Id., 504 U.S. at 561 n.1, 112 S.Ct. at 2136 n.1.

16

impending' to constitute injury-in-fact."[92]

Even accepting plaintiffs' allegations in the second amended complaint as true, the Court concludes that plaintiffs have failed to state an injury-in-fact. Plaintiffs contend that because of Allstate's allegedly illegal RICO conduct, plaintiffs "have suffered damages and liability to the extent of their unpaid bills plus interest."[93] Plaintiffs also have pleaded that they "are subject to legal liability for the unpaid balance of their bills."[94] What plaintiffs have pleaded is the possibility that at some time in the future their "property" will be injured by Allstate's determination of reasonable medical expenses.[95] That the harm is not imminent or actual is

---

[92] Whitmore, 495 U.S. at 158, 110 S.Ct. at 1724-25 (quoting Babbitt v. Farm Workers, 442 U.S. 289, 298, 99 S.Ct. 2301, 2308-09 (1979) (citations omitted)). To have standing under Sherman antitrust and RICO laws, a private plaintiff must be "injured in his business or property." 15 U.S.C. § 15(a) (1997); 18 U.S.C. § 1964(c) (2000). Under the Sherman antitrust laws, a private plaintiff must also establish that the injury is an antitrust injury. Doctor's Hosp. of Jefferson, Inc. v. Southeast Medical Alliance, 123 F.3d 301, 305 (5th Cir. 1997.

[93] Docket no. 29 at 16.

[94] Docket no. 29 at 5.

[95] The parties have cited several state court decisions in support of their arguments. LaMothe v. Auto Club Ins. Ass'n, 543 N.W.2d 42, 44 (Mich. App. Ct. 1995, pet. denied) and McGill v. Automobile Ass'n of Mich., 526 N.W.2d 12, 14 (Mich. App. Ct. 1994), cited by Allstate, support the conclusions reached here. In each of these cases, the insurance company reduced the medical charges to what the company determined was a reasonable rate and agreed to defend, indemnify, and/or protect the insureds from future liability because of the reductions. The Michigan Appeals Court found that because the plaintiffs failed to assert factual allegations of actual or threatened injury, they failed to plead a case or controversy. Plaintiffs rely on Puritt v. Allstate, 672 N.E.2d 353, 356 (Ill. App. Ct. 1996, pet. denied) in which the Illinois Appeals Court reversed a finding that the insureds lacked standing. The court concluded the insureds did not have to wait for lawsuits to be filed or collection attempts to be made before there was injury-in-fact. However, the Illinois state law action in Puritt is factually distinct from the case at issue because Puritt alleged that he paid the balance not paid by Allstate. Id. at 354. In addition, a health care provider, who was not paid the full amount charge for the services provided, was included as a plaintiff. Id.

17

particularly obvious in light of plaintiffs' allegations that Allstate's allegedly illegal conduct occurred in 1997 and 1998 and, even though the fact that plaintiffs' twice amended their complaint, the amended complaint contains essentially the same general allegations regarding possible injury as the original complaint filed in June 1999. There are no allegations that a health care provider who was not fully reimbursed by Allstate has challenged the determination of what are reasonable expenses, billed plaintiffs for balance, threatened to sue for the balance, or threatened to resort to a collection agency for payment of the balance. Moreover, plaintiffs do not allege that Allstate has failed to fulfill its promise to defend and indemnify plaintiffs in the event of any legal action brought against them or that Allstate failed to protect plaintiffs from collection attempts. As to plaintiff Gloria, the Court is particularly puzzled by the apparent lack of injury. It appears from the second amended complaint that, in addition to making assurances to defend, Allstate paid Gloria the maximum PIP benefits due under the policy. Even if Gloria were correct that Allstate's method of calculating payment is incorrect, Gloria's PIP benefits would still not exceed $2,500. In sum, because plaintiffs have alleged speculative rather than actual or threatened liability for the unpaid balance of their medical bills, plaintiffs lack standing to bring their RICO claims.[96]

---

[96] See Price v. Pinnacle Brands, Inc., 138 F.3d 602, 606 (5th Cir. 1998) (because pleadings failed to show tangible financial loss to plaintiffs, "plaintiffs' conclusory allegations, unaccompanied by assertions of even general fact to show injury, fail to satisfy the RICO standing requirement); In Re Taxable Mun. Bond Sec. Litig., 51 F.3d 518, 522 (5th Cir. 1995) (no standing because plaintiff failed to establish eligibility for loan program); see also Maio v. Aetna, Inc., 221 F.3d 472, 475 (3rd Cir. 2000) (no RICO injury when "predicated exclusively on the possibility that future events might occur, rather than on the actual occurrence of those events and their present effect on the value of the health care insurance appellants received"); Mira v. Nuclear Measurements Corp., 107 F.3d 466, 474 (7th Cir. 1997) ("plaintiffs have failed to establish that they or the plan suffered an injury (i.e., economic loss) as a result of the defendant's conduct).

As to plaintiffs' antitrust claims, plaintiffs allege that Allstate's conduct limited reimbursement that would be paid for covered medical services, limited the type of medical services that would be covered, and discouraged insureds from seeking needed medical services that were unaffordable other than through the insurance policy with Allstate.[77] With respect to limiting reimbursement to reasonable charge for necessary medical services, the foregoing discussion of plaintiffs' failure to allege injury-in-fact in their RICO claim applies as well to the antitrust claim. Plaintiffs have not alleged that they suffered an actual or threatened injury because of Allstate's limited reimbursement of medical charges. With respect to plaintiffs' other alleged antitrust injuries -- limiting medical services and discouraging insureds from seeking needed medical service -- plaintiffs generally allege only that Allstate's conduct "interferes and conflicts with the physician-patient relationship and places the patient in a tug-of-war between the insurance company and the medical provider."[78] There are no specific factual allegations suggesting that either plaintiff received limited medical services, did not seek medical services, or suffered any conflict or interference in a relationship with their health care provider because of Allstate's conduct. Thus, plaintiffs have failed to allege an actual or threatened injury that would entitle them to bring a Sherman antitrust claim against Allstate.

In sum, plaintiffs have failed to state an injury-in-fact. Although plaintiffs generally allege that they have been injured and suffered damages, their supporting allegations which describe the injury and harm set forth a possible injury they could suffer in the future and not a

---

[77] Docket no. 29 at 14.

[78] Id. at 5.

19

"certainly impending" injury or an actual injury already suffered.[99]  Therefore, Allstate's Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is <u>granted</u>, and plaintiffs' federal RICO and Sherman antitrust claims are <u>dismissed</u>.

**B.    Have plaintiffs stated a Sherman antitrust claim**

Allstate has moved to dismiss plaintiffs' Sherman antitrust claim pursuant to Rule 12(b)(6).[100]  In particular, Allstate argues that plaintiffs have failed to state an antitrust injury, an essential element of an antitrust claim.[101]

To pursue an antitrust claim, plaintiff must show: "(1) injury in fact, an injury to the plaintiff proximately caused by the defendant's conduct; (2) antitrust injury; and (3) proper plaintiff status, which assures that other parties are not better situated to bring suit."[102]  An antitrust injury is an

> injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful.  The injury <u>should reflect the anticompetitive effect either of the violation or the anticompetitive acts made possible by the violation.</u>  It should in short be "the type of loss that the claimed

---

[99]  <u>See Lewis v. Casey</u>, 518 U.S. 343, 357, 116 S.Ct. 2174, 2183 (1996) ("That a suit may be a class action ... adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.' " Citing <u>Simon v. Eastern Ky. Welfare Rights Org.</u>, 426 U.S. 26, 40, n. 20, 96 S.Ct. 1917, 1925, n. 20 (1976), quoting <u>Warth v. Seldin</u>, 422 U.S. 490, 502, 95 S.Ct. 2197, 2207 (1975)).

[100]  Docket no. 32.

[101]  Docket no. 33 at 2-4.

[102]  <u>Doctor's Hosp.</u>, 123 F.3d at, 305.

20

violations . . . would be likely to cause.[103]

The Supreme Court in Blue Shield of Virginia, v. McCready,[104] discussed allegations that

set forth a private cause of action for antitrust violations.  The Court explained

> McCready charges Blue Shield with a purposefully anticompetitive scheme.  She
> seeks to recover as damages the sums lost to her as the consequence of Blue
> Shield's attempt to pursue that scheme.  She alleges that Blue Shield sought to
> induce its subscribers into selecting psychiatrists over psychologists for the
> psychotherapeutic services they required, and that the heart of its scheme was the
> offer of a Hobson's choice to the subscribers.  Those subscribers were compelled
> to choose between visiting a psychologist and forfeiting reimbursement, or
> receiving reimbursement by forgoing treatment by the practitioner of their
> choice.[105]

The Court further noted that "[a]lthough McCready was not a competitor of the conspirators, the

injury she suffered was inextricably intertwined with the injury the conspirators sought to inflict

on psychologists and the psychotherapy market.[106]

Assuming for argument's sake that plaintiffs have alleged injury from Allstate's conduct,

plaintiffs have not alleged any anticompetitive effect of Allstate's acts or how any

anticompetitive acts were made possible by Allstate's conduct.  As stated above Plaintiffs' allege

that Allstate's conspiracy and/or contract with IMS was a scheme to fix or restrain the amount of

reimbursement due for medical services, limit the type of medical services, and discourage the

use of needed medical services.  These allegations do not specify any specific market that

---

[103]   Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489, 97 S.Ct. 690, 697 (1977) (quoting Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 125, 89 S.Ct. 1562, 1577 (1969)) (emphasis added).

[104]   457 U.S. 465, 483, 102 S.Ct. 2540, 2550 (1982).

[105]   Id.

[106]   McCready, 457 U.S. at 484, 102 S.Ct. at 2551.

21

Allstate targeted for injury by its relationship with IMS or that plaintiffs were in someway injury by any anticompetitive acts targeted at some market. Plaintiffs do not allege that they were required to forego treatment by any specific health care provider in favor of another. Their allegations merely state that Allstate reviewed their medical expenses and reduced them to what Allstate determined was a reasonable rate. If a health care provider concluded that Allstate's decision was incorrect, it would be free to pursue collection efforts against the policy holder -- which Allstate would then defend -- or against Allstate directly. Plaintiffs have not alleged either has occurred.

Therefore, because plaintiffs failed to allege an antitrust injury, they have not stated a cause of action under the Sherman Antitrust Act. Allstate's Rule 12(b)(6) motion to dismiss is granted and plaintiffs' Sherman antitrust claim is dismissed.

## C.     Should plaintiffs' class action allegations related to federal claims be stricken

Defendants have moved under Rule 12(f) to strike plaintiffs' class action allegations arguing that plaintiffs have not pleaded facts sufficient to demonstrate that the prerequisites of Federal Rule of Civil Procedure 23 are met.[107] Rule 23 requires that the representatives must suffer the same injuries as the class members they seek to represent.[108] Because plaintiffs allege only that they wish to represent other similar to them and in light of the Court's conclusion that plaintiffs lack standing to bring the federal claims because they have not alleged injury-in-fact, the proposed class would appear to lack standing as well since "similar" class members would

---

[107] Docket nos. 36 and 37 at 2.

[108] Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 625-26, 117 S.Ct. 2231, 2251 (1997) (quoting East Tex. Motor Freight Sys., Inc. v. Rodriguez, 431 U.S. 395, 403, 97 S.Ct. 1891, 1896 (1977)).

22

not have suffered actual injury.

Conclusory class allegations, such as those pleaded by plaintiffs here, have been deemed suitable for dismissal early in the case.[109] When plaintiffs' allegations are analyzed in light of the prerequisites of Rule 23, plaintiffs have not alleged common issues that predominate. Instead, issues such as whether a particular provider's charge was reasonable and/or necessary for a particular treatment for a particular injury in a particular location must be determined on an individualized basis. Each putative plaintiff would be required to prove entitlement to benefits under the terms of the policy[110] and that the medical expenses were reasonable and the services were necessary.[111] Moreover, even if plaintiffs prove the computerized evaluation of the PIP claims was flawed the parties and the Court still will need to analyze each charge on every claim for reasonableness and necessity. Finally, courts have found that class actions are not appropriate in antitrust or RICO cases when individualized questions of injury predominate.[112]

---

[109] See In Re Am. Med. Sys., Inc., 75 F.3d 1069, 1079 (6th Cir. 1996) ("Mere repetition of the language of Rule 23(a) is not sufficient. There must be an adequate statement of the basic fact to indicate that each requirement of the rule is fulfilled."); Cook County College Teachers Union v. Byrd, 456 F.2d 882, 885 (7th Cir.) ("[The Union] was obliged in its complaint to allege facts bringing the action within the appropriate requirements of the Rule"), cert. denied, 409 U.S. 848 (1972); Minority Police Officers Ass'n v. city of South Bend, 555 F.Supp. 921, 924 (N.D. Ind.) ("Specific facts must be alleged sufficient to meet the requirements of the Rule, as mere repetition of the rule or loosely defined classwide allegations are insufficient"), aff'd in part, appeal dismissed on other grounds, 721 F.2d 197 (7th Cir. 1983); see also Doctor v. Seaboard Coast Line R.R. Co., 540 F.2d 699, 706-10 (4th Cir. 1976) (denying class certification because plaintiff provided no facts about the existence of alleged class);.

[110] Western Alliance Ins. Co. v. Northern Ins. Co., 176 F.3d 825, 828 (5th Cir. 1999).

[111] TEX.INS.CODE art. 5.06-3(b)..

[112] See Alabama v. Blue Bird Body, 573 F.2d 309, 327-28 (5th Cir. 1978) (fact that each putative plaintiff had to prove conspiracy in particular geographical area and payment of "supracompetive" price which depended on quality and price of bus precluded antitrust class

In sum, plaintiffs are not adequate class representative because they lack standing and have no cause of action. In addition, their class allegations do not allege facts suggesting that common issues, other than Allstate's allegedly flawed computerized reductions in medical expenses, predominate. Therefore, to the extent the Court has jurisdiction to address plaintiffs' class allegations, when plaintiffs' lack of standing -- and when the purported class would appear to lack standing as well -- Allstate's motion to strike the class allegations is granted as to the federal claims and the class allegations as to the federal claims are stricken.

## VI. STATE CLAIMS

Having determined that the Court lacks jurisdiction over plaintiffs' federal claims because plaintiffs lack standing to bring them, the Court must now determine how to dispose of plaintiffs' state law claims. The 28 U.S.C. §1367 provides:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that the form part of the same case or controversy under Article III of the United States Constitution.[113]

In this case, the Court dismisses plaintiffs' federal claims for lack of standing, requisite of

---

action); Windham v. American Brands, Inc., 565 F.2d 59, 65 (4th Cir. 1977) (crux of antitrust action "is injury, individual injury. While a case may present a common question of violation, the issues of injury and damage remain the critical issues in such a case and are always strictly individualized."), cert. denied, 435 U.S. 968 (1978); In Re Beef Indust. Antitrust Litig., 1986 WL 8890, at *1 (S. D. Tex. June 3, 1986) ("critical issues of injury and damage are inherently individualized" unless subject to mechanical or formula calculation); Abernathy v. Baush & Lomb, Inc., 97 F.R.D. 470, 474-75 (N.D. Tex. 1983) (because proof of actual anticompetitive injury in private antitrust cases is highly individualistic, courts generally find antitrust " claims ill-suited for maintenance as class actions") (citations omitted); Kahler v. Firstplus Fin, Inc., 248 B.R. 60, 77 (Bankr. N. D. Tex. 2000) (RICO class action not proper because "each member would have to prove legal causation").

[113] 28 U.S.C. 1367(a).

24

jurisdiction under Article III. Therefore, because the Court did not have original jurisdiction over plaintiffs' federal claims, it may not exercise the supplemental jurisdiction provided by section 1367. Thus, plaintiffs' state claims, including the allegations for a state class action, under the Texas Insurance Code article 21.21 and the DTPA as well as the claim for breach of contract are dismissed without prejudice to filing in state court.

## VII. CONCLUSION

Because plaintiffs lack standing to bring their federal claims such that the Court lacks jurisdiction, Allstate's Rule 12(b)(1) motion[114] is **GRANTED** and plaintiffs' RICO and Sherman antitrust claims are **DISMISSED**. Assuming that plaintiffs' second amended complaint alleges injury and standing, Allstate's Rule 12(b)(6) motion to dismiss plaintiffs' Sherman antitrust claim[115] is **GRANTED** on the ground that plaintiffs have failed to state a claim upon which relief may be granted and their antitrust claim is **DISMISSED**. As plaintiffs have failed to adequately allege the prerequisites of a federal class action, Allstate's Rule 12(f) motion to strike the federal class action allegations[116] is **GRANTED** and plaintiffs' class action allegations related to RICO and Sherman antitrust violations are **STRICKEN**. In light of the Court's disposition of plaintiffs' federal class action allegations, plaintiffs' motion to certify a class action[117] are **DISMISSED** as moot.

Because no federal claim remains in this lawsuit, plaintiffs' state claims under the Texas

---

[114] Docket no. 34.

[115] Docket no. 32.

[116] Docket no. 36.

[117] Docket no. 16.

25

Insurance Code article 21.21 and the DTPA as well as the claims for breach of contract are DISMISSED without prejudice to re-filing in state court, as may be permitted by state law and procedure. Plaintiffs' class action allegations related to the state claims are also DISMISSED without prejudice to re-filing in state court.

The Clerk shall enter judgment accordingly and providing that each side shall bear its own costs.

IT IS SO ORDERED.

SIGNED and ENTERED this 29 day of September, 2000.

Pamela A. Mathy
United States Magistrate Judge

26

# E X H I B I T   E

Westlaw.

Not Reported in F.Supp.                                                          Page 1

Not Reported in F.Supp., 1998 WL 381064 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

☞
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois.
George and Nancy HYLASZEK, individually and
on behalf of all others similarly situated, Plaintiff(s),
v.
AETNA LIFE INSURANCE CO., Defendant.
**No. 94 C 5961.**

July 1, 1998.

*MEMORANDUM OPINION AND ORDER*

WILLIAMS, J.
**\*1** Plaintiffs George and Nancy Hylaszek ("the
Hylaszeks") brought this suit under the Employee
Retirement Security Act, 29 U.S.C. § 1001 *et seq.* (
"ERISA") to recover medical expenses that
defendant Aetna Life Insurance Company ("Aetna")
refused to pay. The Hylaszeks allege that Aetna
wrongfully denied claims for benefits in connection
with sclerotherapy treatments received by Nancy
Hylaszek for her varicose veins. The Hylaszeks
sued Aetna both individually and on behalf of
similarly situated individuals pursuant to Rule 23 of
the Federal Rules of Civil Procedure. Pursuant to
Rule 12(c) of the Federal Rules of Civil Procedure,
Aetna moves for judgment on the class allegations
contained in the Hylaszeks' complaint.
Alternatively, Aetna moves to strike the class
allegations pursuant to Rule 12(f) of the Federal
Rules of Civil Procedure. For the reasons stated
below, the court grants Aetna's motion for judgment
on the pleadings and holds that the Hylaszeks
cannot maintain this case as a class action.

*Background*

Plaintiff George Hylaszek participated in a group
medical benefit plan ("the plan") sponsored by his
employer. (Pls.' Compl. at ¶ 3.) George Hylaszek's

medical plan also covered his wife, Nancy
Hylaszek. (*Id.*) Defendant Aetna Life Insurance
Company ("Aetna") served as "claims administrator
" for the plan. (*Id.* at ¶ 4.) In addition to
specifically mentioned items, the plan covered
medical services and supplies that are medically
necessary for the treatment of sickness or injury
recommended and approved by a physician. (*Id.* at
¶ 8.)

On May 15, 1993, Nancy Hylaszek underwent
sclerotherapy for treatment of varicose veins in her
legs. (*Id.* at ¶ 10.) Plaintiffs George and Nancy
Hylaszek subsequently sought a $2,300 payment
from the plan for this sclerotherapy treatment. (*Id.*
at ¶ 12.) As claims administrator, Aetna told the
Hylaszeks that the plan would cover approximately
$500 for testing, but would not cover $1,800 for
treatment. Aetna continues to refuse to reimburse
the Hylaszeks for Nancy Hylaszek's sclerotherapy
on the grounds that her treatment was not medically
necessary. (*Id.* at ¶ 13.)

After receiving a letter from Aetna explaining the
denial of Nancy's request for sclerotherapy
coverage, the Hylaszeks filed this lawsuit. The
Hylaszeks' class action complaint for declaratory
and injunctive relief and damages seeks to certify a
class of similarly situated individuals who have
received sclerotherapy treatment for varicose veins
and who have been wrongfully denied
reimbursement for such treatment by Aetna. The
Hylaszeks assert that Aetna has denied at least
10,000 claims similar to Nancy Hylaszek's claim. (
*Id.* at ¶ 19.) In their class action complaint, the
Hylaszeks cite seven common questions of law and
fact which they claim predominate over any
question of law or fact affecting individual members
only. (*Id.* at ¶ 26.)

Aetna now moves for judgment on the class
certification allegations pursuant to Rule 12(c) of
the Federal Rules of Civil Procedure. Alternatively,
Aetna moves to strike the class certification

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                              Page 2

Not Reported in F.Supp., 1998 WL 381064 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

allegations pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. Aetna essentially argues that the Hylaszeks are not entitled to class certification because they do not satisfy the requirements of Rule 23.

*Analysis*

I. *Timeliness of Defendant's Motion*

**\*2** The Hylaszeks first argue that the court should deny Aetna's motion as untimely because the Hylaszeks have not yet filed a motion for class certification. (Pls.' Resp. at 2.) The court disagrees. Rule 23(c)(1) provides that, "[a]s soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained." Fed.R.Civ.P. 23(c)(1). The party opposing a class action may move for an order determining that the action may not be maintained as a class suit. *Cook Cty. College Teachers Union v. Byrd,* 456 F.2d 882, 884 (7th Cir.1972); *Sample v. Aldi, Inc.,* No. 93 C 3094, 1994 WL 48780, at *16 n. 1 (N.D.Ill. Feb. 15, 1994); 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure,* § 1785, p. 89 (2d ed.1986).

Even though the Hylaszeks have not yet filed a motion for class certification, they brought this suit as a class action. Aetna now moves for an order determining that the Hylaszeks may not maintain their suit as a class action. Because either party can move for an order determining that a lawsuit may not be maintained as a class action, Aetna's motion is properly before the court. Therefore, the court holds that Aetna's motion is procedurally timely and it is appropriate for the court now to address the class certification issue. [FN1]

> FN1. Because the court grants Defendant's 12(c) motion for judgment on the pleadings, the court does not address Defendant's 12(f) motion to strike. Rule 12(c) is an appropriate means by which to adjudicate the Hylaszeks' class allegations.

*See Angel Music, Inc. v. ABC Sports, Inc.,* 112 F.R.D. 70, 71 (S.D.N.Y.1986). The court also notes that the Hylaszeks attached additional evidentiary materials to their response to Aetna's Rule 12(c) motion for judgment on the pleadings. If the court would have considered that material, Aetna's motion would have to be converted to a motion for summary judgment. Fed.R.Civ.P. 12(c). The court did not, however, consider that material when resolving Aetna's motion.

II. *Rule 23 Requirements for Class Certification*

In deciding whether a party is entitled to class certification, the court must assume that the supporting allegations are true and the court must refrain from evaluating the merits of the case. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177-78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 598 (7th Cir.1993); *Spencer v. Central States, Southeast and Southwest Areas Pension Fund,* 778 F.Supp. 985, 989 (N.D.Ill.1991). The plaintiff bears the burden of proving that the requirements of class certification have been met. *General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *Retired Chicago Police,* 7 F.3d at 596; *Spencer,* 778 F.Supp. at 989. Thus, the Hylaszeks' complaint must allege facts bringing the action within the appropriate requirements of Rule 23. *Byrd,* 456 F.2d at 885.

Rule 23 establishes a two-step procedure for determining whether a class action suit is appropriate. The court must first consider whether the proposed class meets the preliminary requirements of Rule 23(a). *Spencer,* 778 F.Supp. at 989. For the purposes of this motion, Aetna concedes that the Hylaszeks have established the requirements of Rule 23(a). [FN2] Therefore, assuming that the Hylaszeks have met the requirements of Rule 23(a), the court turns to the second step of the Rule 23 inquiry.

> FN2. Aetna, however, reserves the right to argue that the Hylaszeks cannot meet the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                Page 3

Not Reported in F.Supp., 1998 WL 381064 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

requirements of Rule 23(a) if necessary at
a later stage of this litigation.

In addition to fulfilling the Rule 23(a) requirements,
the Hylaszeks must show that their proposed class
meets the requirements of Rule 23(b). The
Hylaszeks argue that their action may be certified
pursuant to either Rule 23(b)(3) or Rule 23(b)(1).
Furthermore, the Hylaszeks claim that in the event
that class certification under Rule 23(b) is
inappropriate, the court may certify a class pursuant
to Rule (23)(c)(4). For the reasons stated below,
this court holds that the Hylaszeks do not meet the
requirements of any of these three subsections of
Rule 23.[FN3]

> FN3. Plaintiffs do not seek class
> certification under Rule 23(b)(2). (Pls.'
> Resp. at 7.)

### A. Rule 23(b)(3)

**\*3** To qualify for certification under Rule 23(b)(3),
the Hylaszeks must establish that "questions of law
or fact common to the members of the class
predominate over any questions affecting only
individual members and that a class action is
superior to other available methods for the fair and
efficient adjudication of the controversy."
Fed.R.Civ.P. 23(b)(3); *Peachin v. Aetna Life Ins.
Co.,* No. 92 C 2739, 1996 WL 22968, at *4
(N.D.Ill. Jan. 19, 1996); *Fietsam v. Connecticut
Gen. Life Ins. Co.,* No. 93 C 916, 1994 WL 323313
at *5 (N.D. Ill. June 27, 1994); *Doe v. Guardian
Life Ins. Co. of Am.,* 145 F.R.D. 466, 475
(N.D.Ill.1992).

The predominance question under Rule 23(b)(3)
requires the court to consider whether the group
seeking class certification seeks to remedy a
common legal grievance. *Doe,* 145 F.R.D. at 475.
Common questions of law or fact will predominate
when there is a common course of conduct that
leads to injury of all the class members. *Fietsam,*
1994 WL 323313, at *5. The common issues need
not, however, be dispositive of the entire litigation.
*Doe,* 145 F.R.D. at 475; *Riordan v. Smith Barney,*
113 F.R.D. 60, 65 (N.D.Ill.1986). The superiority

inquiry under Rule 23(b)(3) requires the court to
consider whether a class action is superior to other
methods of adjudication. The underlying purpose of
the predominance and superiority requirements is to
evaluate whether class certification will have
practical utility in the suit. *Doe,* 145 F.R.D. at 474;
*Peachin,* 1996 WL 22968, at *4. The court must
consider:
(A) the interest of members of the class in
individually controlling the prosecution or defense
of separate actions; (B) the extent and nature of any
litigation concerning the controversy already
commenced by or against members of the class; (C)
the desirability or undesirability of concentrating
the litigation of the claims in the particular forum;
and (D) the difficulties likely to be encountered in
the management of a class action.

Fed.R.Civ.P. 23(b)(3).

The court holds that the Hylaszeks are not entitled
to class certification pursuant to Rule 23(b)(3). The
Hylaszeks' cause of action is based on ERISA.
Because this case arises under ERISA, several
issues necessarily arise which will be unique to each
individual member of the proposed class. Each of
these issues requires the court to perform an
individualized assessment as to each specific
member of the proposed class. Because these
individual issues predominate over any issues
common to the entire class, a Rule 23(b)(3) class is
inappropriate.

In the Seventh Circuit, trial courts have the
discretion of applying the exhaustion doctrine in
cases brought under ERISA and requiring a
claimant to exhaust administrative remedies prior to
bringing a suit. *Kross v. Western Elec. Co.,* 701
F.2d 1238, 1244-45 (7th Cir.1983). The Hylaszeks
allege that "Aetna has denied at least 10,000 claims
similar to Plaintiffs [sic] nationwide ." (Pls.' Compl
at ¶ 19.) To proceed with the Hylaszeks' lawsuit as
a Rule 23(b)(3) class action, the court would first
have to make an exhaustion determination for every
member of the proposed class. Such an undertaking
would be an immense task that would entail
discovery, briefing, and hearings on each individual
claim. This case by case assessment would
compromise the efficiency-enhancing purpose of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                        Page 4

Not Reported in F.Supp., 1998 WL 381064 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

Rule 23.

**\*4** ERISA also requires that the court analyze each plan's language to determine the standard by which the court must review a plan administrator's decision to deny benefits. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Generally, courts review a denial of benefits under a *de novo* standard. *Id.* at 115; *Ramsey v. Hercules, Inc.,* 77 F.3d 199, 202 (7th Cir.1996). However, if the ERISA benefit plan gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, the appropriate standard of review of denial of benefits is the more deferential " arbitrary and capricious" standard. *Firestone,* 489 U.S. at 111; *Ramsey,* 77 F.3d at 202. The arbitrary and capricious standard allows the reviewing court to make the necessary adjustments for possible bias in the trustee's decision. The arbitrary and capricious standard is a sliding scale standard that should be more penetrating the greater is the suspicion of partiality, less penetrating the smaller that suspicion is. *Donato v. Metro. Life Ins.,* 19 F.3d 375, 380 (7th Cir.1994); *Van Boxel v. Journal Co. Employees Pension Trust,* 836 F.2d 1048, 1053 (7th Cir.1987); *Couri v. Guaridan Life Ins. Co. of Am.,* 953 F.Supp. 212, 215 (N.D.Ill.1996). As noted, the Hylaszeks allege that Aetna has denied at least 10,000 claims similar to the Hylaszeks' (Pls.' Compl. at ¶ 19.) Because the determination of the standard of review is crucial to each member of the proposed class, the court would have to conduct a series of mini-trials to evaluate each potential claimant's plan language and determine the appropriate standard of review for each claimant. This would be very time-consuming and would undermine Rule 23's goal of efficiency.[FN4]

> FN4. The Hylaszeks argue that they can organize a class for which the standard of review for all claims will be identical and the court would therefore not have to review each claimant's plan. Even if the Hylaszeks could achieve this unlikely goal, this would not alleviate the court's burden of determining whether each plaintiff has exhausted administrative remedies or

determining the medical necessity of each plaintiff's sclerotherapy treatment. Accordingly, a Rule 23(b)(3) class would still be inappropriate.

Finally, even if the court agreed to expend vast amounts of time and resources determining whether each individual class member had properly exhausted administrative remedies and that the same standard of review applies to each class member's claim, the court would still bear the additional burden of evaluating the merits of Aetna's denial of each individual claim. Because the Hylaszeks allege that Aetna denied sclerotherapy to the purported class on the grounds of medical necessity, the court would have to assess each individual's medical condition and determine whether sclerotherapy for that person was medically necessary. Such a review would require the court to conduct a series of mini-trials to examine numerous factual issues, including the accuracy of the varicose vein diagnoses and the medical necessity of sclerotherapy treatment in each individual case.

The need to address numerous individual issues also prevents this court from concluding that a class action provides the most superior way of resolving the claims in this case. The difficulties likely to be encountered in managing the proposed class action substantially outweigh any possible benefits derived from consolidating the proposed class's claims. A significant number of distinct legal and factual issues would have to be addressed with respect to each plaintiff in this proposed class. The three issues identified above demonstrate the great potential for confusion and inefficiency that would result if this case proceeded as a Rule 23(b)(3) class action. A class action would therefore neither be superior nor an efficient way to adjudicate the controversy. Therefore, the Hylaszeks are not entitled to class certification under Rule 23(b)(3).

**\*5** The court notes that the conclusion in this case is consistent with similar decisions previously authored by this court. *See Doe v. Guardian Life Ins. Co. Of Am.,* F.R.D. 466 (N.D.Ill.1992) (Williams, J.) (refusing to certify ERISA class under Rule 23(b)(3) because the common issue of whether bipolar affective disorder should be

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                    Page 5

Not Reported in F.Supp., 1998 WL 381064 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

considered a mental or physical illness did not predominate over other issues); *Peachin v. Aetna Life Ins. Co.,* No. 92 C 2739, 1996 WL 22968 (N.D.Ill., Jan.16, 1996) (Williams, J .) (refusing class certification under Rule 23(b)(3) where individual questions of reliance predominated over the common question of defendant's duty under ERISA, and thus a class action would neither be superior nor an efficient way to adjudicate controversy.); *Fietsam v. Connecticut Gen'l Life Ins. Co.,* No. 93 C 916, 1994 WL 323313 (N.D.Ill. June 27, 1991) (Holderman, J.) (plaintiffs suing under ERISA to recover expenses for chiropractic treatments were not entitled to class certification under Rule 23(b)(3) where the court would need to evaluate the medical necessity of such treatments for each claimant on a case-by-case basis.)

Notwithstanding the individual issues identified above, the Hylaszeks claim that Aetna's internal standard for reviewing all sclerotherapy claims constitutes a common issue which predominates over the individual issues. The Hylaszeks believe that class discovery will demonstrate that Aetna's standard for review of sclerotherapy claims is based on Aetna's financial interests. (Pls.' Resp. at 5.) Plaintiffs suggest that basing a standard for review on financial interests is sufficient to render such a standard per se "arbitrary and capricious." (*Id.* at 5.) Therefore, all plaintiffs who have had sclerotherapy claims denied will be entitled to recovery under their insurance policies or on claims where Aetna is a fiduciary. (*Id.*)

The court rejects this argument for two reasons. First, contrary to the Hylaszeks' argument, the Seventh Circuit has expressly held that an insurer's financial interest in the outcome of a claim does not render the insurer's decisions per se "arbitrary and capricious ." *Donato v. Metropolitan Life Ins. Co.* 19 F.3d 375, 380 (7th Cir.1994); *Van Boxel v. Journal Co. Employees Pension Trust,* 836 F.3d 1048, 1052 (7th Cir.1987); *Couri v. Guardian Life Ins. Co. of Am.* 953 F.Supp. 212, 215 (N.D.Ill.1996) ; *Mers v. Mariott Int'l Group Accidental Death and Dismemberment Plan,* 949 F.Supp. 1323, 1329 (N.D.Ill.1996). Although the decision of the insurer may be subject to heightened scrutiny, the court must still conduct a review of the insurer's denial of

benefits and uphold the administrator's decision if it is reasonable. *Id.*

Second, as defendant correctly observes, Aetna did not categorically prohibit the payment of benefits for sclerotherapy. Rather, Aetna simply distinguished those cases of varicose veins which require treatment as a medical necessity from those which were not medically necessary. Under ERISA, in determining whether Aetna's denial of benefits was wrongful, the court must not review only Aetna's policy, but also Aetna's application of that policy to the Hylaszeks and other claimants. ERISA requires the court to base this determination on a review of individual claims, files, and plans. This individualized assessment precludes class certification under Rule 23(b). Therefore, Aetna's denial of benefits for sclerotherapy treatment does not constitute a common issue warranting class certification pursuant to Rule 23(b)(3).

### B. Rule 23(b)(1)

**\*6** The existence of numerous individual issues in this case also leads the court to conclude that the Hylaszeks cannot properly certify a class under Rule 23(b)(1). A class action may be maintained under Rule 23(b)(1) if the prosecution of separate actions by individual class members would create a risk of:
(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests ...

Fed.R.Civ.P. 23(b)(1). It is fundamental that adjudications cannot be regarded as inconsistent where the facts are distinguishable from individual to individual. *Peachin,* 1996 WL 22968, at *6; *Riordan v. Smith Barney,* 113 F.R.D. 60, 65 (N.D.Ill.1986). Thus, certification "under Rule 23(b)(1) should be confined to those cases where

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                            Page 6

Not Reported in F.Supp., 1998 WL 381064 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

there are no, or few, individual questions." *Peachin,* 1996 WL 22968, at *6; *Guardian Life Ins. Co.,* 145 F.R.D. at 477. In this case, the presence of individualized issues that the court has discussed precludes the possibility of varying adjudications in different lawsuits and incompatible standards to govern defendants' conduct. *See Horowitz v. Pownall,* 105 F.R.D. 615, 618 (D.Md.1985). Therefore, certification as a class action under Rule 23(b)(1) is not appropriate in this case.

### C. Rule 23(c)(4)

Finally, the court holds that the Hylaszeks are not entitled to class certification pursuant to Rule 23(c)(4). Under Rule 23(c)(4), "when appropriate, (A) an action may be brought or maintained as a class action with respect to particular issues, or (B) a class may be divided into subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and applied accordingly. " Fed.R.Civ.P. 24(c)(4). While the burden is generally on the plaintiff to submit such a proposal, a court may also choose to take this step on its own. *See United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 408, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980). The Hylaszeks did not submit such a proposal in their complaint, but they claim that class certification under Rule 24(c)(4) is appropriate in their response to Aetna's motion for judgment on the pleadings. (Pls.' Resp. at 7-8.)

Specifically, the Hylaszeks have proposed two ways in which they are entitled to certification under Rule 24(c)(4). First, pursuant to Rule 23(c)(4)(A), the Hylaszeks proposed as a class issue the sclerotherapy policy under which Aetna denied benefits to the Hylaszeks and other insureds and beneficiaries. This suggestion fails because, as the court already explained, ERISA requires the court to determine the reasonableness of the denial of benefits on a case-by-case basis. Therefore, Aetna's sclerotherapy guidelines do not constitute an issue suitable for class adjudication and the Hylaszeks are not entitled to class certification pursuant to Rule 23(c)(4)(A).

*7 Second, pursuant to Rule 23(c)(4)(B), the

Hylaszeks proposed a sub-class of individuals whose plans contain language identical to the language at issue in the Hylaszeks' plan. However, certifying such a class would not eliminate the need for individual determinations of ERISA's exhaustion requirements and the medical necessity of each member's sclerotherapy. The court therefore concludes that the Hylaszeks are not entitled to class certification pursuant to Rule 23(c)(4)(B).

### Conclusion

The court grants Aetna's motion for judgment on the pleadings and holds that the Hylaszeks' lawsuit cannot be certified as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. The court denies Aetna's motion to strike the class certification allegations as moot. The court instructs the parties to discuss settlement before the next court date.

N.D.Ill.,1998.
Hylaszek v. Aetna Life Ins. Co.
Not Reported in F.Supp., 1998 WL 381064 (N.D.Ill.)

Briefs and Other Related Documents (Back to top)

• 1:94cv05961 (Docket) (Sep. 29, 1994)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**E X H I B I T    F**

IN THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY, MAYRLAND

GEORGE LEWIS, et al.                      *
      Plaintiffs                          *
                                          *
v.                                        *        **CAL99-18694**
                                          *
GOVERNMENT EMPLOYEES                      *
INSURANCE COMPANY                         *
      Defendant.                          *
                                          *
                                          *

CHURCH & HOUFF PA

SEP 1 9 2001

RECEIVED

## MEMORANDUM OPINION OF THE COURT

    Several policy holders of the Government Employees Insurance Company ("GEICO" or "Defendant") filed a Bill of Complaint with this court alleging causes of actions based upon GEICO's processing of Personal Injury Protection ("PIP") provisions of their automobile insurance policies.  The Plaintiffs allege that GEICO improperly reduced or denied their claims through a systematic pattern of wrongful conduct by using arbitrary and deceitful methods.  They further allege that GEICO's physicians routinely rejected treatments as unreasonable or not necessary and used computer programs that automatically reduced any PIP benefits.[1]  The Plaintiffs are seeking compensatory and punitive money damages from GEICO.  Moreover, Plaintiffs have asserted that GEICO's actions are so pervasive that it is appropriate that this matter be certified as a class action.

---

[1] Though it varies by State, PIP generally covers cost of medical treatment and other economic losses suffered by policyholders injured in an automobile accident, regardless of fault.  PIP coverage is statutorily mandated in this jurisdiction by the MD Ins. Code Ann. §19-505 et. sqq (1997).

1

# I.    FACTS

Although the Defendant will, at trial, dispute the facts as articulated by the Plaintiff, for the purposes of this class certification motion, the Court accepts the Plaintiffs' version. Prior to January 12, 1998, Plaintiff George Lewis had in full force and effect, a motor vehicle liability insurance contract with the Defendant in which the Defendant agreed to provide PIP coverage in the amount of $7,500.00. Plaintiff Lewis incurred medical bills from injuries relating to a motor vehicle accident. Upon submission of a PIP claim, the Defendant refused to pay approximately $3,028.00 of the incident-related medical bills. Prior to November 15, 1996 Plaintiff Eloisa Hurtado had insurance coverage with the Defendant which also contained PIP coverage but in the amount of $10,000.00. After being injured in a motor vehicle accident, incurring medical expenses, and timely submitting a claim for PIP benefits of healthcare providers, Plaintiff Hurtado was denied payment of at least $13.20 of the incident related medical bills. Prior to August 16, 1996, Plaintiff Sandra Glenn was also provided coverage for which Defendant agreed to provide PIP coverage. Subsequent to being injured in an accident, Plaintiff Glenn submitted claims for PIP benefits to cover medical expenses and she was denied payment of at least $1,329.00 of her incident-related medical bills.

On August 18, 1999 the Plaintiffs, George Lewis, Eloisa Hurtado, and Sandra Glenn filed this action on behalf of themselves and a class of those who are similarly situated pursuant to *Md. Rule* 2-231(b)(1), (2) and (3). It is believed that the class is so numerous that joinder of all members in a single action would be impracticable as member numbers are said to be in the thousands. The Class Action Complaint alleges that the action was filed on behalf of those thousands of individuals who at all relevant times, either had a motor vehicle liability insurance contract with the Defendant or were covered under the terms of said contract. Plaintiffs assert

that the Defendant negligently and intentionally denied the claims or refused to provide, in whole or in part, the PIP benefits required by statute and contract. In so doing, the Defendant is alleged to have concealed the existence of a common and fraudulent plan, scheme, or practice, that it was using while processing PIP claims. Plaintiffs bring this action on behalf of themselves and ask the Court to certify the following class:

> All individuals who were injured in an accident or incident arising out of the ownership, maintenance, or use of a motor vehicle, who (a) timely and properly submitted in accordance with GEICO's insurance policies and/or Maryland law, a claim for personal injury protection and/or medical payments benefits to Defendant GEICO, under a motor vehicle liability insurance policy issued by GEICO and governed by Maryland law, which claim was denied, in whole or in part, on or after August 19, 1989, based on use of computerized fee review schedules or medical record reviews (conducted by consultants retained and paid by GEICO), and who (b) received or were tendered an amount of benefits which was less than the stated PIP policy limits and the amount claimed.

A hearing on Class Certification was held on April 6, 2001, during which time the Court heard oral argument in support of and in opposition to the Plaintiffs' motion.

## II.    ISSUES

There is one salient issue pertaining to the Motion for Class Certification before this court for consideration:

> Whether the named Plaintiffs have sufficiently established that class certification is appropriate and maintainable pursuant to Rule 2-231 and that the named Plaintiffs are suitable class representatives.

## III.    STANDARD OF REVIEW

Section 19-505 of the *Insurance Article of the Maryland Code* requires that any motor vehicle liability insurance policy issued, sold, or delivered in Maryland must contain, unless waived, coverage for medical, hospital, and disability benefits, including lost income. PIP coverage provides for the payment of all reasonable and necessary medical expenses and 85% of lost income which arise out of an accident involving the use or maintenance of a motor vehicle and which are incurred within 3 years after the accident or incident. The coverage applies

3

regardless of whether the insured was at fault in causing the accident giving rise to the medical expenses and lost income. The purpose of the coverage is to permit the speedy recovery of monies without the delays of tort litigation and to permit an injured individual to recover without regard to fault.

The Plaintiffs argue that the general requirements for Maryland Class Actions according to the provisions of Rule 2-231 are satisfied. To determine if class certification is proper under the facts presented, the court must first review the Rule itself. *Maryland Rule* 2-231 "is patterned after *Federal Rule of Civil Procedure* 23 with minor changes," and therefore, the "body of the law which has developed in federal courts" will be applied. See *Pollokoff v. Maryland National Bank*, 44 Md. App. 188, 407 A.2d 799 (1979); aff'd. 288 Md. 485, 491, 418 A.2d 1201 (1980) (stating that "[a] large body of decisional law has been developed in the federal courts interpreting the federal standard, which while not binding, is a logical reference.") Accordingly, the pertinent parts of Maryland Rule 2-231 provides:

> (a) **Prerequisites to a Class Action**. One or more members of a class may sue…as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

> (b) **Class Actions Maintainable**. Unless justice requires otherwise, an action may be maintained as a class action if the prerequisites of section (a) are satisfied, and in addition:

> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions, (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class (C) the desirability or underdesirability of concentrating the litigation of the claims in the particular forum, and (D) the difficulties likely to be encountered in the management of a class action.

The Plaintiffs are seeking class certification, therefore they bear the burden of establishing that each of the prerequisites for class certification has been satisfied. *McKernan v. United Tech., Corp.,* 120 F.R.D. 452, 453 (D. Conn. 1988); See also *Windham v. American Brands, Inc.,* 565 F.2d 59, 674 n.6 (4th Cir. 1977), cert. denied, 435 U.S. 968, 56 L. Ed. 2d 58, 98 S.Ct. 1605 (1978) (stating that the burden of establishing class certification rests with the moving party) and *J. MOORE, MOORE'S FEDERAL PRACTICE* (Mathew Binder) § 23.02-002 (2d ed. 1993). Thus, to succeed under the Maryland Rule, the Plaintiffs must establish that the case (1) conforms to the four requirements of paragraph (a) and (2) fits into one of the categories in Rule 2-231(b).

The scope of the court's analysis when deciding certification is not limited to the pleadings. "Going beyond the pleadings is necessary, as a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues." *Castano v. Am. Tobacco Co.,* 84 F.3d 734, 744 (5th Cir. 1996). As the Supreme Court instructed in *General Tel. Co., v. Falcon,* 457 U.S. 147, 161, 72 L.Ed. 2d 740, 102 S.Ct. 2364 (1982), the courts must conduct a "rigorous analysis" into whether the prerequisites of Rule 23 are met before certifying a class. Each class action must be decided on it own facts, on the basis of the "practicalities and prudential considerations." *United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 406 n.11, 63 L. Ed. 2d 479, 100 S.Ct. 1202 (1980).

# IV.    DISCUSSION

This Court will deny Plaintiffs motion for class certification as it does not

satisfy the predominance, superiority, or manageability elements of the inquiry and as such are

not certifiable.

Plaintiffs allege that they, as well as members of their class, either purchased PIP

coverage through GEICO as part of their own motor vehicle liability insurance contract or were

covered under a GEICO policy which contained PIP coverage; that they and their class were

involved in an accident during the use or maintenance of a motor vehicle and incurred reasonable

and necessary medical expense and/or lost income as a result of injuries sustained in the accident

or incident; and that they and their class timely submitted claims to GEICO for PIP benefits

under the aforesaid contracts which the Defendant wrongfully denied in whole or in part.

Plaintiffs contend that the Defendant deliberately engaged in a course of deceptive

conduct as to them and each member of their class.  The Defendant, they say, urged them to

accept PIP coverage, suggesting it would evaluate PIP claims fairly, objectively, thoroughly,

promptly, and in accordance with Maryland law, but at the same time concealed from them the

existence of a "common and fraudulent plan, scheme, or practice" that made each of those

representations false.  Among GEICO's allegedly deceptive and unfair practices were: (1) the

use of computer programs with databases that arbitrarily determined that the bills of Plaintiffs

and the class exceeded hypothetical amounts charged by hypothetical providers in hypothetical

geographical regions; (2) the extent that Defendant occasionally required Plaintiffs or members

of the class to submit to medical examinations, and (3) the engagement of physicians who

routinely provided reports which GEICO used to deny payment in whole or in part of Plaintiffs'

and the class's medical bills.   In all these instances, GEICO was allegedly aware of the inadequacy and lack of objectivity of its investigation and review of the PIP claims.

Since the Maryland Rule is *in pari materia* with *Federal Rule of Civil Procedure* 23, ("The Rule") the court's analysis will proceed on the basis of the federal rule.  All class actions in federal court must satisfy the following conditions of *Fed. R. Civ. P.* 23(a):

1) **Numerosity**:  The claim must be so numerous that joinder of all individual members is "impracticable" (23(a)(1));

2) **Commonality**:  There must be questions of law and fact common to the class (23(a)(2));

3) **Typicality**:  The claims of the class representatives must be typical of the claims of the class (23(a)(3)); and

4) **Adequacy of Representation**: The proposed class representatives must be able to fairly and adequately protect the interests of the class members (23(a)(4)).

In addition to meeting the requirements of section (a) of "The Rule", a proposed class representative must meet one of the several grounds for maintaining the cause of action set out in section (b).  Plaintiffs have opted to proceed principally under the Maryland provision that is similar to section (a)(1) of "The Rule", which requires that they demonstrate that joinder of all potential class members is impractical.[2] This court supports the precept that class actions facilitate judicial economy by avoiding multiple lawsuits involving the same subject matter, providing feasible means for asserting the rights of those who might not otherwise attempt to redress their grievances, and deterring inconsistent results by assuring a singular determination

---

[2] In the hearing on Class Certification dated April 6, 2001 Plaintiffs asserted that a class action suit would aggregate the paltry results of one person bringing an action for the recovery of approximately $13.00, as such would not lead to proper adjudication.

of liabilities. *Buford v. H&R Block, Inc.*, 168 F.R.D. 340, 346 (S.D. Ga. 1996) (citing 1 *H.*

*NEWBURG & A.CONTE, NEWBURG ON CLASS ACTIONS*, § 7540 (3d ed. 1992)). Plaintiffs contend

that GEICO has thousands of policyholders in Maryland who would qualify for the class if it is

certified. This large a number would be considered inconvenient and thus satisfies the

numerosity requirement. Such a requirement poses a rudimentary question about the

appropriateness of the case as a class action. "The numerosity requirement requires examination

of the specific facts of each case and imposes no absolute limitations." *General Tel. Co. v.*

*EEOC,* 446 U.S. 318, 330, 64 L.Ed.2d 319, 100 S.Ct. 1698 (1980). The numerosity requirement

is usually satisfied by the numbers alone when the class reaches substantial size. 1 *NEWBERG*,

*supra*, §3.05 at 3-26; *See Fitzgerald v. Schweiker,* 538 F.Supp. 992, 1000 (D. Md. 1982)

(explaining that the precise number of the putative class is not necessary); *Ashe v. Bd. Of*

*Elections in the City of NY*, 124 F.R.D. 45, 47 (E.D.N.Y. 1989) (stating that commonsense

estimates made in good faith satisfy the requirement); *Weiss v. New York Hosp.*, 745 F.2d 786,

808 (3d Cir. 1984) (holding that a class composed of less than one hundred members renders

joinder impracticable). In the Court of Appeals of Maryland's recent examination of the issue of

class actions, the numerosity requirement was reasoned such that this requirement was met

regardless of the existence of claims for breach of contract where the litigation would have likely

impacted the claims of potentially hundreds of thousands of Maryland residents. *Philip Morris*

*Incorporated, et al, v. The Honorable Edward J. Angeletti*, 358 Md. 689, 752 A.2d 200 (2000).

When asked at the Class Action Hearing of the case *sub judice*, about how numerous the class

was, Plaintiffs' counsel stated that 10% of PIP claims that have a good faith estimate could bring

a claim and this would be approximately 24,000 people. Plaintiffs estimate that individual

claimants could number in the hundreds if not the thousands. The Defendant contests

numerosity, asserting that Plaintiffs are leaving the burden on it to determine an actual number. Defendant argues that this endeavor is too overwhelming for it to attempt to supply. The court finds that based on the Plaintiffs fortuitous estimates at best, there has not been a specific enough showing as to how many claimants would be included in the class number. While the threshold is not high the burden rests with the Plaintiffs (not the Defendant) and this requirement has not been satisfied.

As for commonality, the Plaintiffs cite the "common course of deceptive conduct" on the part of GEICO, as well as several characteristics they say they share with the proposed class, namely (a) PIP contracts and coverage; (b) the occurrence of accidents or incidents; (c) timely submission of claims; (d) the failure of GEICO to undertake an objective review of their claims, and the arbitrary denial or reduction of those claims based on computer analyses; and (e) fraudulent representations by GEICO that claims would be paid regardless of fault based on an objective review in compliance with the law, together with concealment of this common scheme or plan to wrongfully deny or reduce the PIP claims.

Maryland Rule 2-231(a)(2) requires that there be questions of law or fact common to the class" The Plaintiffs argue that the "threshold of 'commonality' is not high." *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468 (5th Cir. 1986). Specifically Plaintiffs contend that the commonality prong merely requires that a significant question of law or fact is common among all or a substantial number of class members. To the contrary, Defendant argues that an issue is common only when it is "applicable in the same manner to each member of the class." *Califano v. Yamasaki*, 442 U.S. 682, 701 61 L.Ed.2d 176, 99 S.Ct. 2545 (1979). Further, the Defendant argues that Plaintiffs have not supplied a class definition. Citing *Buford, v. H & R Block, 168*

*F.R.D. at 340*,    Defendant asserts that the class must be capable of ready identification. Inadequate group definition alone is insufficient to certify a class.

This Court finds that the commonality prong of "The Rule" is "qualitative rather than quantitative – that is, there need be only a single issue common to all members of the class." 1. *H. NEWBERG & A. CONTE, NEWBERG ON CLASS ACITONS*, § 3.10 at 3-50 (3d. ed. 1992) (citations omitted; *Amchem Products Inc. v. Windsor*, 521 U.S. 591, 138 L.Ed.2d 689, 117 S.Ct. 223 (June 25, 1997) (arguing that the "commonality requirement is subsumed under or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class 'predominate over' other questions."). "Therefore the requirement is easily met in most cases." *Id*. The mere factual connection between and among members having all been recipients of PIP coverage, satisfies the commonality requirement.

Unlike the first two prerequisites of Maryland Rule 2-231, which focus on the characteristics of the class, the second two prerequisites, typicality and adequate representation, focus on the characteristics of the class representatives to assure that representation of the passive class members will be good enough to make it fair to bind them by the result of the case. Rule 2-231(a)(3) provides that a class action may be maintained only if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Professor Newberg explained in his treatise that the prerequisite of typicality,

> Determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct. In other words, when such a relationship is shown, a plaintiff's injury arises from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff. Thus, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory. When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims.

1 *NEWBERG, supra,* § 3.10 at 3-76 to 3-77 (3d. ed. 1992) (emphasis added). *See also General Tel Col, v. EEOC,* 446 U.S. 318, 330, 64 L.Ed.2d 319, 100 S.Ct. 1698 (1980) (stating that the "typicality requirement is said to limit the class claims to those fairly encompassed by the named plaintiff's claims"); *Senter v. General Motors Corp.,* 532 F.2d 511, 525 n.31 (6th Cir. 1976) (holding that "to be typical, a representative's claim need not always involve the same facts or law, provided there is a common element of fact or law").

In the case *sub judice,* the Plaintiffs argue that they share the common characteristics of the class and, therefore, can substantiate the typicality of their claims. The proposed class representatives, as well as other potential class members who are PIP insureds with GEICO, were injured as a result of accidents or incidents. They submitted timely claims, and were denied payments based on the same alleged wrongful course of conduct by GEICO, i.e., its practice of arbitrarily reducing or denying PIP claims by using computer programs and hired-gun consultants. Defendant contends however that typicality does not exist in that the claims of the class representatives have to be squarely aligned with the interests of those not present and this information cannot be reasonably ascertained without depositions, medical records...etc. Defendant specifically speaks to Plaintiff George Lewis. Since 1997 Defendant Lewis has been receiving treatment for a bad back, however it is alleged that February 21, 1998 was the first time he received treatment for the accident occurring in 1997. Defendant contends that his is not a typical claim because of the possibility of intervening actions. Defendant GEICO also proffers that Plaintiff Eloisa Hurtado and Plaintiff Sandra Glenn's claims of fraud, were atypical of what was alleged in the Complaint. Defendant has highlighted the individualized questions that exist because of the factual differences between putative class members. Nevertheless, the court finds that the Plaintiffs have met their burden under "The Rule" by alleging a common course of

conduct in reducing the PIP claims.[3] *See Jenkins v. Raymark Indus. Inc.*, 782 F.2d 468, 472 (5th Cir. 1986) (stating that factual differences will generally not render a claim atypical if a representative's claim arises from the same course of conduct that gives rise to the claims of the class and is based on the same legal and remedial theory).

Maryland Rule 2-231(a)(4) provides that a class action may be maintained only if "the representative parties will fairly and adequately protect the interests of the class." *Hansberry v. Lee*, 311 U.S. 32, 61, 85 L.Ed. 2d 22, 61 S.Ct. 115 (1940) (explaining that due process requires this prerequisite since a final judgment is binding on all class members). *See also Smith v. Babcock*, 19 F.3d 257, 265 (6th Cir. 1994) (stating that "no class should be certified where the interest of the members are antagonistic, because the preclusive effect of the verdict may deprive unnamed class members of their right to be heard"). In other words, the rule requires a demonstration that both the named Plaintiffs and their attorneys are and will continue to be adequate representatives of the class. In that regard, two factors must be satisfied: (1) that the representative party's attorney be qualified, experienced, and generally able to conduct litigation; and (2) that the suit not be collusive and Plaintiffs must not have interests antagonistic to the class. *Jenkins,* 782 F.2d at 472; *In re Asbestos School Litigation*, 104 F.R.D. 422, 430 (E.D. Pa. 1984). *See also Twyman v. Rockville Housing Auth.* 99 F.R.D. 314 (D. MD. 1979); *Cross v. National Trust Life Ins. Co.,* 553 F.2d 1026, 1031 (6th Cir. 1997) (stating that adequacy tests the "experience and ability of counsel for the Plaintiffs and whether there is any antagonism between the interest of Plaintiffs and other members of the class they seek to represent").

Although counsel for Plaintiffs assume there is no challenge to their qualifications to serve as class counsel and focused primarily on the adequacy of the proposed class

---

[3] This court will not address at this time the nature of such common practices.

representatives, they did provide the court with their *curriculum vitae* which the court is prepared to accept as representative of their adequacy. In support of the adequacy of the proposed class representatives, Plaintiffs focus on the mutuality of interests of the class and of the proposed class members. Because of their "common and obvious interest," Plaintiffs submit that they will actively seek vindication of the class members' rights. In regard to the named Plaintiffs, this court has no information that suggests they would not adequately protect the interests of the class. The Plaintiffs are said to be similarly situated because they all seek to establish GEICO's common course of deceptive conduct. All three class representatives are claiming that their benefits were improperly denied or reduced, this alleged wrong being the nexus between the representatives and the proposed class. Contrary to the Defendant's contentions, Plaintiffs assert that they have fully participated in discovery and attended two depositions. Defendant primarily argues that, as emphasized in *Buford*, 168 F.R.D. at 346, Courts have consistently held that class representatives should have their own understanding, participation, and involvement in the case rather than having the attorneys become class representatives. Defendant asserts that proposed class representatives have not met such criteria as they had not been to one in court proceeding prior to the April 6, 2001, hearing on class certification. While the Defendant questions the good faith representation of the class representatives, this Court finds that the involvement of Plaintiffs George Lewis, Sandra Glenn, and Eloisa Hurtado has been sufficient to satisfy the adequacy component.

Plaintiff also argues that their case satisfies both the predominance and superiority requirements of section (b)(3) of "The Rule": the former by reason of the "overriding common liability issues in this case," the latter primarily because of the relatively easy manageability of the proceeding. Defendant opposes Plaintiffs' allegations. It disputes that there is a commonality

of law or fact issue shared by members of the proposed class, that the claims of the putative class representatives are typical of those of the proposed members, or that the putative representatives can adequately represent the class.

Maryland Rule 2-231(b)(3) requires the court to find "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Similar to the commonality requirement in subdivision (a)(2), however, (b)(3) is more stringent because common issues must "predominate" over individual issues. 1 *NEWBERG*, supra, §4.22 at 4-78; *See also Amchem Products, Inc., v. Windsor,* 521 U.S.591, 138 L.Ed.2d 689, 117 S.Ct. 2231 (June 25, 1997). In other words, the presence of common issues of law or fact does not necessarily mean that those common issues predominate. *Id.*

> A major goal in drafting the class action rule was judicial economy. The *Advisory Committee Notes* for Rule 23 explan: Subdivision (b)(3) encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated,without sacrificing procedural fairness or bringing about other undesirable results.
> The court is required to find, as a condition of holding that a class action may be maintaned under this subdivision, that the questions common to the class predominate over the questions affecting individual members. It is only where this predominance exists that economies can be achieved by means of a class action.

*Id.* at 4079-80 (citation omitted.)

GEICO denies that common issues predominate or that, on balance, class certification would be superior to other methods under "The Rule."

In order for the common issues to "predominate, common issues must constitute a significant part of the individual cases." *Jenkins v. Raymark Indust. Inc.,* 782 F.2d 468, 473 (5th Cir. 1986). Above all, GEICO denies that it has engaged in a common scheme of deception

relative to the processing of PIP claims. While it concedes that PIP insureds in Maryland are entitled to recover reasonable expenses for necessary treatment of accident-related injuries, it argues that in practice a significant number of such claimants seek reimbursement for fees that are either not accident-related or, if they are so related, then the fees are not necessary or reasonable. Accordingly, GEICO believes that fairness entitles it to employ a variety of measures to verify those claims, an effort they contend that actually benefits insureds by keeping their premiums low.

Such verification measures used are an individualized review of a claim by a claims representative, followed by computer reviews, utilization reviews, and/or medical examinations. In the locality where the service is rendered, these methods are all designed to check the claimed costs against usual and customary costs. Computer reviews involve the use of a database which compiles information regarding fees provided for a wide array of services in a particular geographic area. By comparing a proposed charge with the customary charge for the same service in the given area as established by the database, GEICO contends it is able to determine how the charge measures up. If, under all the circumstances, the charge is deemed unreasonable, reimbursement for the PIP claim is denied. During the time that GEICO used the computerized review method in Maryland,[4] its computer program flagged any charges above a certain percentile of charges for the same service in the particular area where it was rendered and then – subject to giving the requesting health care provider an opportunity to justify the higher fee – conditionally reduced the fee to the maximum customary charge. Further GEICO states that

---

[4] GEICO concedes that in April 2000, the Maryland Insurance Administration (MIA) issued a bulletin addressing the issue of computer fee review programs. In it, the MIA stated that insurance companies ought not rely on such programs as the sole method of assessing the reasonableness of fees but pointed out that "in and of itself, … it is not unlawful for a PIP insurer to apply and utilize a fee review schedule" generated by computer program. Further GEICO proffers to the court that the computer data system used in the bulletin is not the same system used by GEICO and thus the bulletin has no substantive effect on the case.

medical examinations by private practice physicians are conducted to verify the insured's physical condition, the causal relationship between automobile accident and injuries, and the propriety of the prescribed treatment. Rejecting the characterization of these methods as part of a deceptive course of conduct, GEICO regards them as a wholly appropriate means to prevent unreasonable claims, whether fraudulent or merely unnecessary or excessive. The court finds the Defendant's arguments persuasive in this regard.

Additionally, insofar as the Plaintiffs and the proposed class's propounding of a theory of recovery sounding in fraud, GEICO argues that each claimant would have to show that he or she reasonably relied upon a knowing misrepresentation by GEICO about the extent of its PIP coverage. Further Plaintiff have stated that they want GEICO to stop using its alleged fraudulent methodology, but their Complaint doesn't ask for a change of conduct rather it seeks monetary damages. Based on the damages Plaintiffs have claimed in their pleadings, inherently individualized inquiries pertaining to damages would have to be made.

Given this court's non-comprehensive knowledge of the insurance company protocol with reference to motor vehicle coverage, it agrees with the Defendant's assertion that individual determinations are the essence of PIP claims and the entitlement to particularized damages cannot be tried as an issue common to an entire class. Here, the issue is not the existence of the PIP benefit generally, but an individual's entitlement to it specifically. Such a determination requires *inter alia* a review of the insured's prior medical history, the details of the collision, length of treatment, charges by medical care providers, and the need for an independent medical examination. These are but a few of the inquiries necessary but it seems implausible that the answer to any of the inquiries will be the same.

16

In addition to the aforementioned requirements, Rule 2-231(b)(3) also requires that the court find that the class action is the superior method available for the fair and efficient adjudication of the case. Compare *Jenkins v. Raymark Indust.*, 782 F.2d 468 (5th Cir. 1986) (upholding certification after examining alternatives proposed by defendants) with *Mertens v. Abbott Laboratories*, 99 F.R.D. 38 (D.N.H. 1983) (denying certification). To aid in resolving this issue, Rule 2-231(b)(3) identifies four considerations:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions, (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class, (C) the desireability of the claims in the particular forum, (D) the difficulties likely to be encountered in the management of a class action.

This court addresses the superiority inquiry by determining whether the class members would be better off handling their own lawsuits, whether existing litigation is so fruitful that it would defeat the purpose of the class action, whether all litigants should be forced into this court, and whether the litigation is manageable as a class action. The Defendant in this case has submitted that the proposed class Plaintiffs have failed to present a workable plan for managing this case and the court agrees. While it well may be efficient to eliminate the requirement that members of the Plaintiff Class adduce evidence in support of each element of their claims, GEICO asserts that the consequence would be to deprive it of the opportunity to present individualized evidence and raise individualized defenses. Further GEICO opines, and this Court agrees, that any economy of time, effort, and expense achieved by proceeding as a class action would necessarily sacrifice procedural fairness in derogation of its due process rights.

Another factor to be considered by the court in deciding the superiority requirement is "fairness." Although only persuasive, it is "well settled in the Fourth Circuit[5] that the proponent

---

[5] The United States Fourth Circuit Court of Appeals reviews Federal cases arising in Maryland, North Carolina, South Carolina, West Virginia and Virginia.

of class certification has the burden of establishing the right to such certification," "The Rule." *Bostron v. Apfel,* 182 F.R.D. 188, 192, n.6 (D. Md. 1998). There is no presumption in favor of such certification as "would operate to remove the burden of establishing a right to class-aciton treatment from the plaintiff and impose it on the defendant or defendants," *Windham v. American Brands, Inc.*, 565 F.2d 59, 65, n.6 (4th Cir. 1997) (en banc), *See also In Re A.H. Robins Co.*, 880 F.2d 709, 728 (4th Cir. 1989) (abrogated on other grounds by *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 138 L.Ed.2d 689, 117 S.Ct. 2231 (1997)). The Plaintiffs, while offerring a persuasive argument as to class certification being a means of justice for PIP recipients alleging fraudulent reductions, fail to advance a formula for the manageability of the case in such a posture. Without exacting a means of managing the case as a class action, the superiority criteria is rendered moot.

## CONCLUSION

In accordance with this Opinion, the court finds that the arguments and evidence presented for the limited purpose of class certification, supports a finding that certification is improper. The Court is not persuaded that class litigation of the issues presented will achieve significant savings of judicial resources. Nonetheless, the decision not to certify the class as defined by the Plaintiffs may be altered or amended at anytime before a decision on the merits pursuant to *Md.. Rule* 2-231(c).

For the reasons set forth, the Motion for Class Certification will be DENIED. The Order reflecting this decision is attached.

William D. Missouri
Administrative Judge
Seventh Judicial Circuit

18

EXHIBIT   G

Westlaw.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 1999 WL 102796 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 1

C

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
   United States District Court, N.D. Illinois, Eastern
                        Division.
   Alexander McDONALD and Randa McDonald and
   Jason Richards, individually and on behalf of all
         others similarly situated, Plaintiffs,
                           v.
   THE PRUDENTIAL INSURANCE COMPANY
      OF AMERICA, a New Jersey Corporation
                       Defendant.
                   **No. 95 C 5186.**

                    Feb. 19, 1999.

       MEMORANDUM OPINION AND ORDER
MAROVICH, District J.
**\*1** Plaintiffs Alexander McDonald, Randa
McDonald and Jason Richards ("Plaintiffs") have
filed the present putative class action against The
Prudential Insurance Company of America ("
Prudential") alleging that Prudential violated the
Employee Retirement Income Security Act of 1974,
29 U.S.C. § 1001 *et seq.,* by failing or refusing to
authorize and/or pay for certain medical care in the
treatment of varicose veins. Plaintiffs now move for
class certification pursuant to Fed.R.Civ.P. 23. For
the reasons set forth below, this Court denies
Plaintiffs' motion.

                BACKGROUND [FN1]

> FN1. In considering a motion for class
> certification, the Court accepts as true all
> well pleaded factual allegations. *See
> Hardin v.. Harshbarger,* 814 F.Supp. 703,
> 706 (N.D.Ill.1993) ("the allegations made
> in support of certification are taken as true"
> ); *Allen v. City of Chicago,* 828 F.Supp.
> 543, 550 (N.D.Ill.1993) (same). The Court

> has limited its background to the specific
> allegations relevant to the class
> certification motion.

This matter arises out of Prudential's handling
practices regarding claims for insurance and
benefits out of group health plans administered or
insured by Prudential. Plaintiffs are individuals who
had a varicose vein condition treated through a
procedure known as injection compression
sclerotherapy ("ICS") using ultrasound mapping
and guidance.[FN2]

> FN2. Plaintiffs state that physicians use
> ultrasound guidance in ICS procedures to
> treat deep veins which are not visible on
> the outside of a patient's leg. The
> ultrasound process in ICS creates a picture
> of the flow of the blood through the venous
> system and allows the physician to guide
> the needle into the vein in the patient's leg.
> Plaintiffs claim that ICS treatment
> involving ultrasound guidance is much
> more complex and time consuming than
> ICS not utilizing ultrasound treatment.

Plaintiffs allege that Prudential had a policy of
denying claims for ultrasound guidance procedures
when used in connection with ICS, finding such
treatment not medically necessary. Plaintiffs
additionally allege that Prudential reduced the
payment made on claims they submitted, asserting
that the charges made by the physicians exceeded
what Prudential determined was the usual and
prevailing charge in the community for similar
services and procedures.

Plaintiffs seek to certify the following two classes in
conjunction with this action:

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                      Page 2

Not Reported in F.Supp.2d, 1999 WL 102796 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

Class I:          All beneficiaries of health plans insured or
                  administered by Prudential who have had claims for
                  ultrasound or duplex ultrasound guided injection
                  compression sclerotherapy for deep vein disease
                  denied in whole or in part as not medically necessary
                  between 1990 and the present.

Class II:         All beneficiaries or insured under Prudential plans
                  who have had claims for ultrasound or duplex
                  ultrasound guided injection sclerotherapy reduced
                  because Prudential claimed the charges were in excess
                  of the usual and prevailing charge in the community
                  between 1990 and the present.

## II. *Rule 23(b)(2)*

**\*2** Rule 23(b)(2) requires a showing that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Importantly here, "[a]s a general matter, Rule 23(b)(2) is invoked in cases where injunctive or declaratory relief is the primary or exclusive relief sought." *Buycks-Robertson v. Citibank Fed. Sav. Bank,* 162 F.R.D. 322, 335 (N.D.Ill.1995). Therefore, "the primary limitation on the use of Rule 23(b)(2) is the requirement that injunctive or declaratory relief be the predominant remedy requested for the class members." *Doe v. Guardian Life Ins. Co. of Am.,* 145 F.R.D. 466, 477 (N.D.Ill.1992).

In this case, the parties disagree regarding whether Plaintiffs are predominantly seeking injunctive or monetary relief. Prudential asserts that Plaintiffs' primary remedy for class members is monetary relief and that Plaintiffs' request for "declaratory" relief is nothing more than a request for a declaration that Plaintiffs be awarded the monetary relief they seek. (Def. Resp. at 11.) Plaintiffs, on the other hand, deny that they are essentially seeking monetary recovery, asserting that they also have an " interest that future claims and proceeds will be handled appropriately." (Pls. Mem. at 14.)

Upon review, the Court agrees with Prudential that Plaintiffs are primarily seeking monetary damages

## DISCUSSION

### I. *Standards for Class Certification*

Rule 23 of the Federal Rules of Civil Procedure governs class certification. The plaintiff has the burden of proving that the requirements of class certification have been met. *General Tel. Co. of S.W. v. Falcon,* 457 U.S. 147, 161 (1982). A plaintiff seeking class certification must prove that the action satisfies the four prerequisites of Rule 23(a) and one of the sections of Rule 23(b). *Trotter v. Klincar,* 748 F.2d 1177, 1184 (7th Cir.1984); *Alliance to End Repression v. Rochford,* 565 F.2d 975, 977 (7th Cir.1977). Even if the prerequisites of Rule 23 are satisfied, the Court remains free to reevaluate and modify its certification order in light of subsequent developments in the litigation until there is a decision on the merits. *See* Fed.R.Civ.P. 23(c)(1).

Here, Prudential "focuses on the requirements of Rule 23(b)" and, therefore, the Court will also direct its attention towards Rule 23(b). Plaintiffs contend that their classes satisfy the requirements of Rule 23(b)(2) or Rule 23(b)(3). Alternatively, Plaintiffs assert that their classes may be certified pursuant to Rule 23(c)(4)(A). The Court considers these arguments in turn.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 3

Not Reported in F.Supp.2d, 1999 WL 102796 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

in this case. Although "Rule 23(b)(2) does not preclude monetary damages when it is 'either part of the equitable relief granted or is secondary or ancillary to the predominant injunctive or declaratory relief sought," ' *Orlowski v. Dominick's Finer Foods, Inc.,* 172 F.R.D. 370, 375 (N.D.Ill.1997) (quoting *Edmondson v. Simon,* 86 F.R.D. 375, 383 (N.D.Ill.1980)), it is clear that monetary relief is the primary relief sought by Plaintiffs and is not "secondary or ancillary." Indeed, as part of the declaratory relief, Plaintiffs seek a declaration "that Prudential must pay all medical expense claims ... for sclerotherapy procedures recommended by physicians." (Cmplt.¶ 35(e).) Given the circumstances here, the Court finds that certification under Rule 23(b)(3) is inappropriate. *See Doe,* 145 F.R.D. at 477; *Fietsam v. Connecticut Gen. Life Ins. Co.,* No. 93 C 916, 1994 WL 323313, at *5 (N.D. Ill. June 27, 1994). [FN3]

> FN3. Plaintiffs' argument that they "have an interest that future claims ... will be handled appropriately" does not alter this result. For reasons explained *infra,* this Court cannot properly consider "future" claims under the circumstances here because, in determining whether Prudential properly handled reimbursement claims for ICS ultrasound treatment, this Court must assess numerous individual issues, many of which cannot appropriately be resolved with respect to "future" claims.

### III. *Rule 23(b)(3)*

Plaintiffs additionally assert that they satisfy the requirements for class certification under Rule 23(b)(3). To qualify for certification under Rule 23(b)(3), plaintiffs must establish that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

The predominance question under Rule 23(b)(3)

requires the Court to consider whether the group seeking class certification seeks to remedy a common legal grievance. *Doe,* 145 F.R.D. at 475. Common questions of law or fact will predominate when there is a common course of conduct that leads to injury of all the class members. *Fietsam,* 1994 WL 323313, at *5.

*3 The superiority inquiry under Rule 23(b)(3) requires the Court to consider whether a class action is superior to other methods of adjudication. The underlying purpose of the predominance and superiority requirements is to evaluate whether class certification will have practical utility in the suit. *Doe,* 145 F.R.D. at 474; *Peachin v. Aetna Life Ins. Co.,* No. 92 C 2739, 1996 WL 22968, at *4 (N.D.Ill. Jan. 19, 1996). The Court must consider: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3).

Here, Plaintiffs assert that common issues predominate in both of their proposed classes. Plaintiffs assert that common issues predominate in Class I-individuals who had ICS claims involving ultrasound treatment denied as not medically necessary-because Prudential applied uniform medical necessity guidelines from policy to policy and class member to class member. Plaintiffs additionally contend that common issues predominate in Class II-individuals who had ICS claims involving ultrasound treatment reduced as exceeding the usual and prevailing charge for the service-because there is a common question of fact as to whether Prudential should have separately classified the ICS procedure utilizing ultrasound to account for the extra time and personnel necessary for that treatment technique.

Prudential directs this Court to a number of decisions from this district declining to certify

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 4

Not Reported in F.Supp.2d, 1999 WL 102796 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

classes in ERISA actions similar to this where individual issues predominated over common issues of the class. For example, in *Hylaszek v. Aetna Life Ins. Co.,* No. 94 C 5961, 1998 WL 381064 (N.D.Ill. July 1, 1998), plaintiffs sought to certify a class of individuals whose insurer had allegedly wrongfully denied reimbursement for varicose vein sclerotherapy treatment. The *Hylaszek* court declined to certify a proposed class, because there were a number of individualized issues which predominated over any issues common to the entire class. *Id.* at *3.

Initially, the *Hylaszek* court noted that it would need to make individual determinations regarding whether each member of the proposed class exhausted his or her administrative remedies prior to bringing suit. *See Hylaszek,* 1998 WL 381064, at *3 (citing *Kross v. Western Elec. Co.,* 701 F.2d 1238, 1244-45 (7th Cir.1983)). Moreover, the *Hylaszek* court noted that it would need to analyze each relevant plan's language to determine the standard by which the court would review the plan administrator's decision to deny benefits.[FN4]

> FN4. Generally, courts review a denial of benefits under a de novo standard. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989). However, if the ERISA benefit plan gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, the appropriate standard of review of denial of benefits is the more deferential "arbitrary and capricious" standard. *Id.* at 111. *See also Ramsey v. Hercules, Inc.,* 77 F.3d 199, 202 (7th Cir.1996).

Finally, the *Hylaszek* court determined that the consideration of whether claims were properly denied as not "medically necessary" would necessitate a claim-by-claim analysis. In considering this issue, the court noted that:
*4 because the [plaintiffs] allege that [defendant insurer] denied sclerotherapy to the purported class on the grounds of medical necessity, the court would have to assess each individual's medical condition and determine whether sclerotherapy for that person was medically necessary. Such a review would require the court to conduct a series of mini-trials to examine numerous factual issues, including the accuracy of the varicose vein diagnoses and the medical necessity of sclerotherapy treatment in each individual case.

*Id.* at *4.

Similarly, in *Fietsam v. Connecticut Gen'l Life Ins. Co.,* No. 93 C 916, 1994 WL 323313 (N.D. Ill. June 27, 1994), the plaintiff sought to certify a class, asserting that his insurer engaged in a systematic practice of wrongfully denying claims for chiropractic services on the basis that the medical expenses were not essential for "necessary care and treatment." Although noting that "a practice or policy of wrongfully denying claims by the insurer would be more global in impact," the *Fietsam* court declined to certify a class, because "a finding that chiropractic claims are covered would not materially advance the litigation as each individual claim may well have to be individually evaluated for its medical appropriateness." *Id.* at *5,6. In sum, the court determined that "evaluating the medical necessity of an individual claim would require a more time consuming procedure" and, therefore, class certification pursuant to Rule 23(b)(3) was inappropriate. *Id.* at *6.

Plaintiffs, not surprisingly, attempt to distinguish their case from the above cases. The Court, however, finds that the cases discussed above are on point and persuasive authority militating against certifying Plaintiffs' proposed claims pursuant to Rule 26(b)(3). Class I, similar to the proposed classes in *Hylaszek* and *Fietsam,* identifies a class of beneficiaries who had their claims "denied in whole or in part as not medically necessary." Plaintiffs assert that a medical necessity determination would not need to be undertaken on a case-by-case basis because Prudential uses the same medical necessity standard from policy to policy and, therefore, the issue is whether Prudential's uniform standard is proper or improper. But, like the *Fietsam* court, this Court rejects Plaintiffs' argument that uniform application of Prudential's medical necessity standards would preclude

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 5

Not Reported in F.Supp.2d, 1999 WL 102796 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

individual evaluation of the medical appropriateness of each claim. Like in *Hylaszek* and *Fietsam,* the Court finds that the individualized "medical necessity" assessment makes class certification of Class I inappropriate under Rule 23(b)(3).[FN5]

> FN5. Plaintiffs, predominately in their reply brief, assert that individualized determinations are unnecessary here because Prudential "concedes that the treatments and services provided were medically necessary for each and every class member." (Pls. Reply at 8.) From the record before the Court, the Court is not satisfied that Prudential has made that "concession." Indeed, Prudential maintains that "in determining whether duplex ultrasound guided [ICS] was medically necessary," it "reviewed each claim on a case-by-case basis." (Def. Resp. at 6.) In the event that the future demonstrates otherwise, this Court may, if necessary, revisit its class certification determination.

The situation is the same with respect to Plaintiffs' proposed Class II. Plaintiffs contend that they are attacking the "formulation" used to determine the usual and prevailing rate for ICS treatment. As noted by Prudential, however, usual and prevailing rate calculations are not only procedure-specific but are specific to geographic areas.[FN6] Thus, the Court would need to make an individual assessment on a claim by claim basis regarding whether the usual and prevailing rate was proper with respect to each particular procedure in reference to the appropriate geographical area. Again, such an individualized assessment precludes class certification of Class II under Rule 23(b).

> FN6. Prudential asserts that it calculates its usual and prevailing rates by dividing the country into 242 population areas based on demographic and economic characteristics. (Def. Resp. at 6-7.)

**\*5** Moreover, as in *Hylaszek,* potential individual determinations regarding exhaustion of administrative remedies and standard of review of plans factor against certification. With respect to exhaustion, Plaintiffs identify approximately 118 individuals for their proposed Class I and suggest that their proposed Class II could have hundreds or thousands of members. The burden, if necessary, of determining whether each of these members exhausted his or her administrative remedies would be substantial.[FN7] And, like in *Hylaszek,* this Court, in reviewing the decision to deny benefits, would likely need to determine what discretionary authority each ERISA plan gives the plan administrator on a case-by-case basis.

> FN7. Plaintiffs claim they are in a "classic catch 22" because "[h]ad Prudential properly applied its coverage positions to Plaintiffs and putative class plaintiffs' claims, there would have been no denial at all and thus no need to exhaust administrative remedies." (Pl. Reply at 6-7.) Plaintiffs have not explained how the fact that Prudential may have improperly applied its coverage position excuses Plaintiffs from exhausting any administrative remedies, and, therefore, the Court rejects that argument.

For the reasons explained above, the Court also finds that a class action is not a "superior" way of resolving the claims in this case. Like in *Hylaszek* and *Fietsam,* the potential difficulties in managing the proposed class action substantially outweigh any possible benefits derived from consolidating the proposed class claims. The significant number of distinct legal and factual issues which would have to be addressed with respect to each plaintiff in this proposed class prevent a class action from being a superior or an efficient way to adjudicate the controversy. *See also Doe,* 145 F.R.D. at 476.

In sum, because there are numerous issues here which would require the Court to perform an individualized assessment as to each specific member of the proposed class, and these individual issues predominate over any issues common to the entire class, the Court finds that certifying a class pursuant to Rule 23(b)(3) class would be

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                     Page 6

Not Reported in F.Supp.2d, 1999 WL 102796 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

inappropriate.

### IV. *Rule 23(c)(4)*

Finally, Plaintiffs argue that class certification is appropriate pursuant to Rule 23(c)(4)(A). Rule 23(c)(4) states that, "when appropriate, (A) an action may be brought or maintained as a class action with respect to particular issues, or (B) a class may be divided into subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and applied accordingly."

Here, Plaintiffs identify two issues they claim are appropriate for class certification under 23(c)(4)(A): (1) whether the services provided to Plaintiffs fall within the guidelines required for medically necessary treatment, and (2) the determination of the usual and prevailing rate charge. However, for the reasons explained above, both of these determinations involve individualized issues which militate against class certification. First, as noted above, a determination of whether services provided to Plaintiffs were medically necessary would require the Court to consider the reasonableness of Prudential's decision to deny benefits on a case-by-case basis. *See also Hylaszek,* 1998 WL 381064, at *6 ("sclerotherapy guidelines do not constitute an issue suitable for class adjudication ... pursuant to Rule 23(c)(4)(A)"). In addition, determining the usual and prevailing rate charge for ICS involving ultrasound would involve a case-by-case assessment of the charges taking into account the varied economic conditions of different geographical areas. As such, certification pursuant to Rule 23(c)(4)(A) is inappropriate.

### CONCLUSION

**\*6** For the foregoing reasons, the Court denies Plaintiffs' motion for class certification.

N.D.Ill.,1999.
McDonald v. Prudential Ins. Co. of America
Not Reported in F.Supp.2d, 1999 WL 102796 (N.D.Ill.)

Briefs and Other Related Documents (Back to top)

• 1:95cv05186 (Docket) (Sep. 11, 1995)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT  H

Westlaw.

Not Reported in A.2d

Not Reported in A.2d, 2005 WL 1249374 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

Page 1

**C**
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.
Superior Court of Delaware.
Melissa MURPHY, et al., Plaintiffs,
v.
UNITED SERVICES AUTO ASSN., et al.,
Defendants
**No. Civ.A. 04C-07-003RFS.**

Argued April 28, 2005.
Decided May 10, 2005.

*ORDER*

STOKES, J.
**\*1** Upon careful review of the filings in the above
captioned matter, Defendants' Motion to Dismiss
for Lacking of Standing is granted, and Certain
Defendants' motion to Dismiss is granted as to the
Class Claims. It appears to the Court that:

Plaintiffs Melissa Murphy ("Murphy") and Peter
Galley ("Galley") have brought suit for themselves
and as representatives of a class of persons who
have purchased no-fault auto insurance pursuant to
21 *Del. C.* § 2118. They are suing Progressive
Northern Insurance Company ("PNIC") and
GEICO Indemnity Insurance Company ("GEICO"),
their providers, respectively, and fifteen other
insurance companies who provide no-fault
insurance in Delaware, as a defendant class [FN1]
Plaintiffs allege that the Defendants are engaged in
an industry-wide practice that unfairly denies full
payment for medical expenses. [FN2]

> FN1. The other insurance companies are
> United Services Auto Association, State
> Farm Mutual Automobile Insurance
> Company, The Peninsula Insurance
> Company, Allstate Ins. Co., Hartford
> Underwriters Ins. Co., Nationwide Mut.

Ins. Co., Nationwide Assurance, Keystone
Ins. Co., Encompass Ins., Pawtucket Mut.
Ins. Co ., Liberty Mut. Ins. Co., Westfield
Ins. Co., Montgomery Mut. Ins. Co .,
Harleysville Mut. Ins. Co., The Travelers
Indemnity Co.

> FN2. [P]laintiffs .... allege that Defendants
> have unlawfully denied payment of some
> or all of their benefits, relying on medical
> opinions Defendants have procured or
> because of self-serving reviews based on
> criteria orchestrated by the Defendants, or
> on evaluations by an untrained insurance
> adjuster's unsubstantiated opinion of
> coverage, necessity and/or reasonableness
> of costs. They also allege that many such
> determinations are made before there is
> sufficient treatment to make a fair
> assessment. They allege an industry wide
> practice of unfair denials or partial
> payments.
> Pl.'s Compl. at 1.

They are seeking monetary damages in the amount
of $1,606.00 for Murphy and $1,633.60 for Galley.
In addition, they seek monetary damages for the
amounts each class plaintiff has had to pay for
medical expenses as a result of this practice, and
they seek punitive damages.[FN3] The Plaintiffs also
have requested a declaratory judgment that the
practice violates the public policy of Delaware and
undermines the intent of the No Fault Law.
Specifically, they ask for "an order declaring
denials based on the insurers' medical reports,
unauthorized and illegal, an order declaring the
practice of unilateral reductions in medical expense
payments unauthorized and illegal ..." Pl.'s Compl.
at 6. A motion for Class Certification has not yet
been made.

> FN3. This is an action seeking recovery of
> amounts the Plaintiff and the Class have

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d

Page 2

Not Reported in A.2d, 2005 WL 1249374 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

paid for health care expenses or have lost earnings because they were injured in auto accidents and their contractual and statutory benefits were denied based on [the practice in n.2] ...

1. The amounts to be recovered are the sums paid by all who were forced to meet the expenses or losses which should have been met or paid by the Defendants.

Pl.'s Compl. at 1.

The Defendants (other than GEICO and PNIC) have filed a motion to dismiss under Rule 12(b)(6), claiming the representative Plaintiffs lack standing to bring suit against them. PNIC has adopted the reasoning of and joined in a limited capacity the Defendants Motion to Dismiss for Lack of Standing. It claims that Galley and other non-PNIC policy holders have no standing to sue it, for the same reasons they have no standing to sue the other insurance companies.

GEICO and PNIC have also filed a Rule 12(b)(6) motion to dismiss, alleging that the Plaintiffs have failed to sufficiently plead the Superior Court Civil Rule 23 class action criteria, and for failure to state a claim upon which relief can be granted. They have been joined in this motion by the other fifteen defendants. More specifically, GEICO and PNIC claim that Plaintiffs 1) have failed to adequately define their class; 2) have not shown how common questions of law or fact predominate over individual questions; 3) have failed to allege how the representative Plaintiffs, Murphy's and Galley's, claims are typical of those of the class members; 4) have not proved that the representative Plaintiffs are adequate to represent the interests of the class members; and, 5) did not allege in their complaint that handling the case as a class action is superior to other means of resolving these disputes. Moreover, these two Defendants argue that even if Plaintiffs had pleaded those Rule 23 requirements, they would not, as a matter of law, be able to meet them. In addition, GEICO and PNIC allege that the Plaintiffs cannot maintain a class action because the relief they seek is primarily monetary. They also claim that the Complaint is not clear enough under Superior Court Rule 8 to give Defendants notice of the nature of the claim (and, in a footnote, that it is

prolix, in violation of Rule 8's mandate that a Complaint be "simple, concise and direct")

## DISCUSSION

**\*2** The Plaintiffs, Murphy and Galley do not have standing to sue the Insurance Company Defendants from which they have not purchased no-fault insurance. The Delaware Supreme Court has stated that the law in Delaware is based upon the Supreme Court's interpretation in *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), as it was summarized by the Third Circuit:

(1) the plaintiff must have suffered an injury in fact-an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of-the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision

*Dover Historical Soc'y,* 838 A.2d at 1110, *citing, Soc'y Hill Towers Owners' Ass'n v. Rendell,* 210 F.3d 168, 175-76 (2000).

A plaintiff must establish injury to himself by the parties he wishes to sue. *See Weiner v. Bank of King of Prussia,* 358 F.Supp. 684, 690 (E.D.Pa.1973) ( " It is a fundamental principle of law that a plaintiff must demonstrate injury to himself by the parties whom he sues before that plaintiff can successfully state a cause of action."). Here, the Plaintiffs have failed to demonstrate that they were injured by any of the fifteen insurance companies they are attempting to sue as a class "A plaintiff may not use the procedural device of a class action to boot strap himself into standing he lacks under the express terms of the substantive law." *Id.* at 694.[FN4] Because Plaintiffs Murphy and Galley suffered no injury at the hands of the fifteen Defendants other than PNIC and GEICO, those Defendants are dismissed from this case for lack of standing.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                           Page 3

Not Reported in A.2d, 2005 WL 1249374 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

FN4. There are no Delaware class action cases which specifically address the issue of a plaintiff's standing to sue a defendant class or a group of defendants. Sections (a) and (b) of Superior Court Civil Rule 23 are identical to the Federal Rule. The Court has reviewed extensively the Federal law regarding standing and discovered that there is a difference of opinion as to how the issue should be addressed. *See, e.g., State ex rel. Erie Fire Ins. Co. v. Madden,* 204 W.Va. 606, 515 S.E.2d 351, 355 n. 6 (W.Va.Supr.1998) for a discussion of the Federal Courts' views. The question is whether a Court should address the class certification requirements under Federal Rule of Civil Procedure 23 before considering standing or vice versa. If a class is certifiable, then the question becomes whether standing should be addressed to the plaintiff or defendant class as a whole, or examined from each plaintiff to each defendant. *See Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 830-31, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999), *Amchem Prods., Inc.,* 521 U.S. 591, 612-13, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *Rivera v. Wyeth-Ayerst Labs.,* 283 F.3d 315, 319 (5th Cir.2002), *Payton v. County of Kane,* 308 F.3d 673, 678-82 (7th Cir.2002) *cert. denied sub nom. Carroll County, III v. Payton,* 540 U.S. 812, 124 S.Ct. 61, 157 L.Ed.2d 26 (2003), *Fallick v. Nationwide Mut. Ins. Co.,* 162 F.3d 410, 423 (6th Cir.1998), *La Mar v. H & B Novelty & Loan Co.,* 489 F.2d 461 (9th Cir.1973); *In re Eaton Vance Corp. Sec. Litig.,* 220 F.R.D. 162 (D.Mass.2004); *Weiner v. Bank of King of Prussia,* 358 F.Supp. 684 (E.D.Pa.1973).

Standing is an issue of state subject matter jurisdiction, however, and under Delaware law, it is not subject to the same Constitutional limitations inherent in a Federal Court's Article III standing analysis. *See Dover Historical Soc'y v. City of Dover Planning Comm'n,* 838 A.2d 1103, 1111 (Del.2003) ("Unlike the federal courts, where standing may be subject to stated constitutional limits, state courts apply the concept of standing as a matter of self-restraint to avoid the rendering of advisory opinions at the behest of parties who are 'mere intermeddlers.' "); *Cedar Crest Funeral Home, Inc., v. Lashley,* 889 S.W.2d 325 (Tx.Ct.App.1993) (declining to follow the reasoning applied to class standing in *Weiner,* 358 F.Supp. 684, because it conflicted with the procedural requirements for subject matter jurisdiction under Texas law).

Other Delaware Courts have interpreted Chancery Rule 23, which is essentially the same as Superior Court Civil Rule 23, as being procedural in nature, and not jurisdictional. *See Wilmington Trust Co. v. Schneider,* 320 A.2d 709, 710-11 (Del.1974) (stating that Chancery Rule 23 is procedural and not jurisdictional such that it could not confer jurisdiction upon an equity court for a case which should have been brought in a law court); *Delaware Bankers Ass'n v. Div. of Revenue of the Dep't of Finance,* 298 A.2d 352, 357 (Del.Ch.1972) (finding Chancery Rule 23 could not be " 'construed to extend or limit the jurisdiction of the Court of Chancery." ' (citation omitted)). It follows that Superior Court Civil Rule 23 is also procedural in nature, and made not be used to expand the Court's jurisdiction through the creation of a class of defendants or plaintiffs, if standing does not otherwise exist. Furthermore, Superior Court Civil Rule 82 states: "These Rules shall not be construed to extend or limit the jurisdiction of the Superior Court or to affect the venue of actions therein." *Cf. Delaware Bankers Ass'n,* 298 A.2d at 357 (citing Chancery Court Rule 82 in support of the Court's decision that Chancery Rule 23 could not extend the Court's jurisdiction). In sum, despite the nuances at the federal level, this Court will address standing before issues of class certification.

Even if the Court were to find standing, it would

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                          Page 4

Not Reported in A.2d, 2005 WL 1249374 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

still dismiss this class action. The Plaintiffs are seeking a hundred percent return on all of their applicable expenses, stating: "Once an insurer has accepted responsibility for injuries arising from an accident, prompt payment should be made until such time as there is an adjudication adverse to the insured...." Pl.'s Compl. ¶ 36. They claim:
The medical bills and 'no work' directions of the health care providers for the Class, are *prima facie* evidence of reasonableness and necessity. The IMEs and cost reduction opinions merely dispute the reasonableness and necessity of the treatment and opinions of the health care providers and the burden of proof should be on the insurers under the stated public policy for No Fault, prompt payment without the necessity for suit.

Pl.'s Compl. ¶ 35.

The Plaintiffs have failed to state a cause of action upon which relief can be granted. As a matter of law, the burden lies on the Plaintiff, not on the insurer, to show the expenses were "reasonable and necessary." 21 *Del C.* § 2118(a) requires that every owner of a motor vehicle have personal injury insurance providing coverage "for reasonable and necessary expenses incurred within 2 years from the date of the accident." [FN5] The words "reasonable and necessary" qualify the scope of the delineated benefits that an insurance company must pay. In fact, section 2118 has been interpreted as "fix[ing] a statutory minimum rather than a maximum standard of protection." *Casson v. Nationwide Ins. Co.,* 455 A.2d 361, 366 (Del.Super.Ct.1982) (finding that, regarding lost earnings, "reasonable" referred to the amount, while "necessary" meant "those lost earnings which were 'unavoidable' or inescapable' "). Delaware has consistently permitted insurers to investigate the reasonableness of expenses. [FN6]

FN5. 21 *Del. C.* § 2118(a)(2)a specifically provides:
(a) No owner of a motor vehicle required to be registered in this State, other than a self-insurer pursuant to § 2904 of this title, shall operate or authorize any other person to operate such vehicle unless the owner has insurance on such motor vehicle

providing the following minimum insurance coverage:
(2)a. Compensation to injured persons for reasonable and necessary expenses incurred within 2 years from the date of the accident for:
1. Medical, hospital, dental, surgical, medicine, x-ray, ambulance, prosthetic services, professional nursing and funeral services. Compensation for funeral services, including all customary charges and the cost of a burial plot for 1 person, shall not exceed the sum of $5,000. Compensation may include expenses for any nonmedical remedial care and treatment rendered in accordance with a recognized religious method of healing.
2. Net amount of lost earnings. Lost earnings shall include net lost earnings of a self-employed person.
3. Where a qualified medical practitioner shall, within 2 years from the date of an accident, verify in writing that surgical or dental procedures will be necessary and are then medically ascertainable but impractical or impossible to perform during that 2-year period, the cost of such dental or surgical procedures, including expenses for related medical treatment, and the net amount of lost earnings lost in connection with such dental or surgical procedures shall be payable. Such lost earnings shall be limited to the period of time that is reasonably necessary to recover from such surgical or dental procedures but not to exceed 90 days. The payment of these costs shall be either at the time they are ascertained or at the time they are actually incurred, at the insurer's option.
4. Extra expenses for personal services which would have been performed by the injured person had they not been injured.
5. "Injured person" for the purposes of this section shall include the personal representative of an estate; provided, however, that if a death occurs, the "net amount of lost earnings" shall include only that sum attributable to the period prior to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                        Page 5

Not Reported in A.2d, 2005 WL 1249374 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

the death of the person so injured.

> FN6. In fact, an insured who wants to challenge an insurer's denial of benefits because of the insurer's belief that they were not reasonable and necessary must bring a claim of bad faith denial of benefits against the insurer. *See Albanese v. Allstate Ins. Co.,* 1998 WL 437370 (Del.Super.Ct.); *Watson v. Metro. Prop. & Cas. Ins. Co.,* 2003 WL 22290906 (Del.Super.Ct.) (bringing claims of bad faith to challenge denials of benefits that the insurers found not to be reasonable and necessary). In order to establish bad faith, a plaintiff "must show that the insurer's refusal to honor [the claim] was clearly without any reasonable justification." *Albanese,* 1998 WL 437370, at *2.

**\*3** Furthermore, in *Ramsey v. State Farm Mut. Ins. Co.,* 869 A.2d 327 (Table), 2005 WL 528846, at *1 (Del.) the Supreme Court, in adopting the reasoning of *Casson,* 455 A.2d 361, stated, "[t]he PIP statute provides recovery only for 'reasonable and necessary' expenses. In order to satisfy that requirement, Ramsey had to establish that her lost wages were unavoidable. Since she offered no evidence on that point, she failed to establish her entitlement to PIP benefits." This ruling directly contradicts the claims of the Plaintiffs that the burden of proof should be on the insurers, and that section 2118 and public policy require full payment of benefits until an adverse judgment is obtained. [FN7]

> FN7. With appropriate candor, Plaintiffs' Counsel acknowledged the vulnerability of his position should an insured have the burden to show reasonable and necessary expenses. He brought the *Ramsey* case to the Court's attention at oral argument. Mr. Davis is a well-respected member of the Bar and has once again acted in a professionally exemplary manner.

In sum, the causes of action brought by Murphy and Galley on behalf of a class of plaintiffs and against the fifteen Defendants and against PNIC and GEICO must be dismissed. The individual claims of Murphy and Galley against PNIC and GEICO survive dismissal, however, because they may have a contract claim against their respective insurance companies. In this regard, their claims must be severed as each only has standing against the company which issued his or her no fault insurance policy. In addition, in response to the Defendants' Motion to Dismiss for the reason that the Complaint is not sufficiently clear under Superior Court Civil Rule 8, pursuant to Superior Court Civil Rule 12(e), the Plaintiffs are required to provide a more definite statement of their respective claims against PNIC and GEICO within thirty days.

Because the class action claims have been dismissed for lack of standing and for failure to state a claim upon which relief can be granted under Rule 12(b)(6), the Court need not address the Defendants' other contentions regarding the Superior Court Civil Rule 23 class certification requirements.

CONCLUSION

Considering the foregoing, Defendants' Motion to Dismiss for Lack of Standing is granted Plaintiffs Murphy' and Galley's claims are dismissed against the Defendants United Services Auto Association, State Farm Mutual Automobile Insurance Company, The Peninsula Insurance Company, Allstate Ins. Co., Hartford Underwriters Ins Co., Nationwide Mut. Ins. Co., Nationwide Assurance, Keystone Ins. Co., Encompass Ins., Pawtucket Mut. Ins. Co., Liberty Mut. Ins. Co., Westfield Ins. Co., Montgomery Mut. Ins Co., Harleysville Mut. Ins. Co., and The Travelers Indemnity Co. The Class allegations of Plaintiffs Murphy and Galley are also dismissed against GEICO and PNIC. All that remains is each Plaintiff's claim against the individual's carrier. The Plaintiffs have thirty days to provide a more definite statement of those claims

*IT IS SO ORDERED.*

Del.Super.,2005.
Murphy v. United Services Auto Ass'n

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                      Page 6

Not Reported in A.2d, 2005 WL 1249374 (Del.Super.)
**(Cite as: Not Reported in A.2d)**


Not Reported in A.2d, 2005 WL 1249374
(Del.Super.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT  I

Westlaw.

1998 WL 110067
1998 WL 110067 (Del.Super.)
(Cite as: 1998 WL 110067 (Del.Super.))

**H**
Only the Westlaw citation is currently available.

Superior Court of Delaware.

Hillard G. MUTTART, Linda Brennan, and Brenda Minner
v.
AMERICAN MORTGAGE & GUARANTY COMPANY and EMORY HILL MANAGEMENT COMPANY, INC.
v.
GREENWOOD TRUST COMPANY

No. C.A. 96C-09-263.

Feb. 9, 1998.

Letter Opinion And Order On Third-Party Defendant Greenwood Trust Company's Motion To Dismiss For Failure To State A Class Claim Upon Which Relief Can Be Granted--Motion Granted.

Robert Jacobs, Esquire, Jacobs & Cumplar, P.A., Wilmington.

Vincent A. Bifferato, Jr., Esquire, Bifferato, Bifferato & Gentilotti, Wilmington.

Donald E. Marston, Esquire, Sullivan & Marston, P.A., Wilmington.

Paul M. Lukoff, Esquire, David E. Brand, Esquire, Prickett, Jones, Elliott, Kristol & Schnee, Wilmington.

John Parker Sweeney, Esquire, Miles & Stockbridge, Baltimore, MD.

QUILLEN, J.

*1 Gentlemen:

Pending before the Court is Third-Party Defendant's Motion to Dismiss, in which the two Defendants join, requesting that the class action feature of Plaintiffs' Amended Complaint be dismissed pursuant to Delaware Superior Court Civil Rule 12(b)(6), for failure to state a claim upon which relief can be granted. For the following reasons, the Motion is GRANTED.

FACTS AS ALLEGED

Third-Party Defendant Greenwood Trust ("Greenwood") leases the property and building located at 12 Reads Way, New Castle Corporate Commons, New Castle, Delaware ("Reads Way"), from Defendant American Mortgage & Guaranty Company ("AMGC"). Defendant Emory Hill Management Company ("Emory Hill") performs maintenance on the property and building. As a result of the alleged conditions in the Reads Way building, several of Greenwood's employees have contracted various illnesses. Three of Greenwood's employees, Linda Brennan, Brenda Minner, and Hillard Graydon Muttart ("Plaintiffs"), have each filed separate Complaints against AMGC for personal injuries allegedly sustained as a result of the conditions at 12 Reads Way [FN1] and Brennan and Minner have now joined this action as part of the pleading amendment seeking class action relief, C.A. No. 96C-09-263-WTQ.

> FN1. Plaintiffs are prohibited from suing Greenwood directly under Delaware's workers' compensation statute.

Plaintiff Muttart filed a Complaint against AMGC on September 27, 1996. AMGC filed an Answer and Third-Party Complaint against Greenwood for indemnity on February 18, 1997. On April 25, 1997, Plaintiff Muttart moved to amend his Complaint to pursue a class action pursuant to Delaware Superior Court Civil Rule 23(b)(3). (Dkt.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1998 WL 110067
1998 WL 110067 (Del.Super.)
(Cite as: 1998 WL 110067 (Del.Super.))

No. 38). The three Plaintiffs seek class representative status for a class of approximately 200 of their fellow employees allegedly suffering from conditions similar to theirs including chronic fatigue syndrome, sinus infections, upper respiratory ailments and memory loss, all allegedly stemming from contaminated air caused by chemical pollution at 12 Reads Way. This Court granted the Motion to Amend on May 16, 1997. (Dkt. No. 41). This Court specifically noted that the "granting of this Motion shall not affect the right of any party to assert a defense that this action should not be maintained as a class action." (Dkt. No. 41). On June 5, 1997, Greenwood Trust filed and the two Defendants joined in the Motion to Dismiss the class action aspect of Plaintiffs' Complaint pursuant to Superior Court Civil Rule 12(b)(6). [FN2] (Dkt.Nos.45, 44).

> FN2. Plaintiffs have not moved for class certification as of yet. Superior Court Civil Rule 23(c).

### STANDARD OF REVIEW

In evaluating a Motion to Dismiss under Superior Court Civil Rule 12(b)(6), the Court must assume all well-pleaded facts in the Complaint to be true. *Nix v. Sawyer,* Del.Super., 466 A.2d 407, 410 (1983) (quoting *Laventhol, Krekstein, Horwath & Horwath v. Tuckman,* Del.Super., 372 A.2d 168 (1976)). A Complaint will not be dismissed unless the Plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof. *Id.* (quoting *Diamond State Tel. Co. v. University of Del.,* Del.Supr., 269 A.2d 52 (1970)). A Complaint may not be dismissed unless it is clearly without merit. *Diamond State Tel. Co.,* 269 A.2d at 58. With respect to the dismissal of class actions, the question is not whether the Plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the Superior Court Civil Rule 23 class action requirements are met. *Eisen v. Carlise & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). As will appear *infra,* if, on the face of the Complaint, such requirements cannot be met as a matter of law, dismissal of the class action claims is appropriate.

### DISCUSSION

*2 A party seeking class certification has the burden of demonstrating to the Court that it has satisfied the requirements of Rule 23. The Plaintiffs in the case at bar have amended their Complaint to add a class allegation pursuant to Rule 23(b)(3). The issues before this Court on Greenwood's Motion to Dismiss are: (1) whether this Court's allowance of Plaintiffs' amendment to include a class allegation precludes Greenwood from now attacking the class allegation by way of a Rule (12)(b)(6) Motion; (2) whether a Rule 12(b)(6) Motion is the appropriate vehicle by which to attack Plaintiff's class certification; and (3) whether, as a matter of law, Plaintiffs cannot meet the predominance requirement of Rule 23(b)(3).

*I. Whether the Amendment to the Complaint Adding Class Allegation Bars Subsequent Attack by a Motion to Dismiss*

Plaintiffs argue that Greenwood and the two Defendants are precluded from moving to dismiss the class action claim because the Court permitted the amendment to the Complaint. While it is true that this Court may use its discretion in not allowing a motion to amend on a meritless Complaint, the allowance of the amendment does not establish that the Complaint cannot thereafter be challenged by a Motion to Dismiss. Moreover, regardless of any general authority, this Court, in allowing the Motion to Amend in this case, specifically preserved "the right of any party to assert a defense that this action shall not be maintained as a class action." (Dkt. No. 41). I distinctively signed the order with that understanding. As a result, Greenwood and the two Defendants cannot be estopped from arguing the inappropriateness of a class action. Not only was the issue never fully and fairly litigated, it was never litigated at all. [FN3]

> FN3. In retrospect, given the holding herein, it might have been better to have the current argument on the Motion to Amend. The record might have been cleaner if the Court had directed briefing and argument on the Motion to Amend.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1998 WL 110067
1998 WL 110067 (Del.Super.)
(Cite as: 1998 WL 110067 (Del.Super.))

*2. Whether Rule 12(b)(6) is the Appropriate Vehicle by Which to Dismiss a Class Action Allegation in a Complaint*

This Court finds that Rule 12(b)(6) is an appropriate vehicle for dismissing a class action suit. Courts have found Rule 12, or its equivalent, appropriate for dismissing class action claims. *See Rose v. Medtronics,* Cal.App., 107 Cal.App.3d 150, 166 Cal.Rptr. 16, 18 (1980) (finding that "when the complaint on its face fails to contain sufficient allegations of fact to establish a class interest, the class issue may be properly disposed of by demurrer"); *DeAngelis v. Salton/Maxim Housewares, Inc.,* Del. Ch., 641 A.2d 834 (1993), *rev'd on other grounds, Prezant v. DeAngelis,* Del.Supr., 636 A.2d 915 (1994) (finding that Plaintiff's complaint was vulnerable to a motion to dismiss because state common law fraud claims, are not maintainable as claims in a class action). Further, in *Reilly v. Gould Inc.,* M.D.Pa., 965 F.Supp. 588, 593 (1997), the District Court dismissed a class action pursuant to Rule 12(b)(6). The Plaintiffs in *Reilly* argued that because Rule 12(b)(6) is used to challenge the sufficiency of claims, it should not be used to challenge class certification because a class action is a procedural device and not a claim. *Id.* The Plaintiffs relied on *Eisen v. Carlise & Jacquelin* as their authority. The District Court, also relying on *Eisen,* found that "[i]n determining the propriety of a class action, the question is not whether the plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Id.* quoting *Eisen,* 417 U.S. at 178. Rule 12(b)(6) may e sparingly used in these circumstances but it is not inappropriate.

*3. Rule 23(b)(3): Predomination of Common Questions and Superiority of Class Action*

*3 There appears to be no genuine issue concerning Plaintiffs' failure to satisfy the requirements of Rule 23(a) [FN4]. Nor is there any genuine claim that the factors in Rule 23(b)(1) and (2) are present. The precise issue facing the Court is whether, as a matter of law, Plaintiffs cannot satisfy the requirements of Rule 23(b)(3). This consideration will not engage the Court in an analysis of the merits of the case. Instead the Court will assume all pleaded facts to be true and determine whether a tort action *of this nature* can meet the requirements of Rule 23(b)(3).

FN4. The Superior Court Civil Rule 23(a) establishes four requirements before an action may be maintained as a class action: One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and/or fact common to the class members; (3) the claims and/or defenses asserted by the representative party are claims and/or defense typical to the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

In addition to Rule 23(a)'s requirements, Rule 23(b) requires the presence of at least one of four additional factors:

An action may be maintained as a class action if the prerequisites of paragraph (a) are satisfied, and in addition:

(1) The prosecution of separate actions by or against individual members of the class would create a risk of:

(A) Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) Adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) The party opposing class certification has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) The Court finds that the common questions of law and/or fact predominate over the claims affecting only individual members, and that a class action is superior to other, available methods for

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1998 WL 110067
1998 WL 110067 (Del.Super.)
(Cite as: 1998 WL 110067 (Del.Super.))

Page 4

fairly and efficiently deciding the controversy. The matter pertinent to the findings include:
(A) The interest of members of the class in individually controlling the prosecution or defense of separate actions;
(B) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) The desirability or undesirability of concentrating the litigation of the claims in the particular forum;
(D) The difficulties likely to be encountered in the management of a class action.

The predominance element of Rule 23(b)(3) turns on whether the common questions of law or fact predominate over questions affecting only individual members, and on whether a class action is superior to other available methods for resolving the controversy. Rule 23(b)(3) is used primarily for class-wide suits seeking money damages. *Prezant,* 636 A.2d at 921. The subsection encompasses "those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Nottingham Partners v. Dana,* Del.Super., 564 A.2d 1098, 1096 (1989) (citation omitted). The fact that there is some variation in the relief sought by particular class members will not necessarily prevent class certification. *Id.* at 1096 n. 11 (citation omitted). Class members have the ability to opt out. *Prezant,* 636 A.2d at 921. They are also entitled to notice in every case. *Fins v. Pearlman,* Del.Super., 424 A.2d 305, 311 n. 6 (1980)

Greenwood argues that even assuming the truth of all allegations set forth in Plaintiff's Complaint, the Amended Complaint fails to state a claim upon which relief can be granted because the type of claims asserted in Plaintiffs' Amended Complaint are inappropriate for class action treatment as a matter of law. (Dkt.No.61). They maintain that individual issues of law or fact will inevitably dominate over issues common to the class.
Plaintiffs respond that the issue of liability of the

entire class predominates over the individual issues of causation and damages.

This Court finds that the Plaintiffs' Amended Complaint fails to state a proper claim upon which class relief can be granted. In order to satisfy Rule 23(b)(3), questions common to the class must "predominate over" other questions. Superior Court Civil Rule 23(b)(3). Courts historically have been reluctant to certify class actions involving mass torts. In fact, the Commentary to the corresponding Federal Rule of Civil Procedure warns against certifying classes involving mass tort accidents. *See,* Adv. Comm. Notes, Fed.R.Civ.P. 23, 28 U.S.C.A. 385-86.

The United States Supreme Court in *Amchem Products, Inc., v. Windsor,* 521U.S. 591, ----, 117 S.Ct. 2231, 2249, 138 L.Ed.2d 689 (1997), relying on the legislative history of Rule 23, affirmed the Third Circuit's decision in *Georgine v. Amchem Products, Inc.,* 83 F.3d 610 (1996), decertifying a class exposed to asbestos-containing products, organized pursuant to Rule 23(b)(3), for failure to meet the Rule's predominance requirement. The District Court certified the class, holding the members of the class have all been exposed to asbestos products supplied by the Defendants and all share an "interest in receiving prompt and fair compensation for their claims, while minimizing the risks and transaction costs inherent in the asbestos litigation process as it occurs presently in the tort system." *Georgine v. Amchem Products, Inc.,* E.D. Pa., 157 F.R.D. 246, 316 (1994).

*4 The Supreme Court found that the predominance requirement of Rule 23(b)(3) is more demanding than that of the commonality requirement of Rule 23(a) and cannot be satisfied simply by the shared experience of the class, in that they were all exposed to asbestos products supplied by the Defendants. *See Amchem Products,* 521 U.S. at ---- - ----, 117 S.Ct. at 2249-50. As outlined by the Third Circuit:
  Class members were exposed to different asbestos-containing products, for different amounts of time, in different ways, and over different periods. Some class members suffer no physical injury or have only asymptomatic pleural changes, while others suffer from lung cancer, disabling asbestosis, or from mesothemlioa....

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1998 WL 110067
1998 WL 110067 (Del.Super.)
(Cite as: 1998 WL 110067 (Del.Super.))

Each has a different history of cigarette smoking, a factor that complicates the causation inquiry.

*Georgine,* 83 F.3d at 626.

The Supreme Court found that the predominance test is readily met in certain cases such as consumer or securities fraud or violations of the antitrust laws. *Amchem Products,* 521 U.S. at ----, 117 S.Ct. at 2249. It further noted that some mass tort cases arising from a common cause or disaster may satisfy the predominance requirement of Rule 23(b)(3). *Id.* The Court cautioned, however, that mass accident cases are not " 'ordinarily appropriate' for class treatment because such cases are likely to present significant questions, not only of damages but of liability and defenses of liability, ... affecting the individuals in different ways." *Id.* Moreover, a number of courts have applied the Supreme Court's holding in *Amchem Products* to the issue of class action treatment of mass tort cases. *See In re Forty-Eight Insulations,* Bankr.N.D. Ill., No. 85 B 05061, 1997 WL 618699 (Sept. 23, 1997) (holding trustee entitled to judgment as a matter of law against plaintiffs seeking certification of a class of persons exposed to maritime asbestos who could not, under *Amchem Products,* satisfy the predominance requirement of Rule 23(b)(3)); *Connerwood Healthcare v. Herron,* Ind. Ct.App., 683 N.E.2d 1322 (1997) (finding class of nursing home residents allegedly injured by food poisoning to have satisfied predominance requirement of Rule 23(b)(3) under *Amchem Products* and affirming class certification as appropriate for single-accident mass tort); *In re Dow Corning,* Bankr.E.D. Mich., 211 B.R. 545 (July 29, 1997) (observing that class action treatment of thousands of tort claims against debtor-manufacturer of silicone gel breast implants was untenable because satisfying the predominance requirement of Rule 23(b)(3) "could prove to be particularly problematic" in light of *Amchem Products* ).

This Court finds here the Plaintiffs' case involves a non-discrete mass tort where individual issues will inevitably dominate over issues common to the class. Class members allegedly shared the common experience of exposure to contaminants in the Reads Way building. The extent of their commonality ceases to exist at that point, however. The nature of the allegations by the Plaintiffs

inevitably will contain individual issues of causation, as they relate to varying exposure to the building contaminants, and issues of pre-existing medical conditions. Moreover, individual Plaintiffs may be subject to statutory defenses such as statute of limitations or assumption of the risk. These individual issues preclude a finding that Plaintiffs have met their Rule 23(b)(3) burden. This is simply not a case where a specific tortious act causes a common injury. Indeed, it is not clear what precise deficiency is being alleged and who may be ultimately responsible for the deficiency. The Court finds the case is clear, a class action is inappropriate and there is no reason to delay so ruling. [FN5]

> FN5. This ruling moots the need to discuss whether "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Suffice it to say that proposition as well would be a difficult row to hoe in this situation.

## CONCLUSION

*5 For all of the foregoing reasons, the Motion to Dismiss of Third-Party Defendant Greenwood Trust Company, joined by additional movants American Mortgage & Guaranty and Emory Hill Management Company, is GRANTED. IT IS SO ORDERED. Unless the Court is missing some point, it seems to me that the easiest way to implement the Court's holding is simply to strike the Amended Complaint and return the litigation to the three separate actions by three individual Plaintiffs. The Amended Complaint is hereby stricken. IT IS SO ORDERED. I note that the three cases have already been consolidated for purposes of discovery under Civil Action No. 96C-09-263-WTQ.

1998 WL 110067 (Del.Super.)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

# E X H I B I T    J

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JACQUELINE ROSS-RANDOLPH, *et al.*

      v.

ALLSTATE INSURANCE COMPANY

                       : Civil Action No. DKC 99-3344

## <u>MEMORANDUM OPINION</u>

Pending before the court and ready for resolution are the motions by Defendant Allstate Insurance Company ("Allstate") to dismiss Plaintiffs' complaint and to stay discovery pending resolution of its motion to dismiss.[1] Jacqueline Ross-Randolph and Patricia Smith ("named Plaintiffs") seek to bring a class action against Allstate, alleging, *inter alia*, that it summarily and wrongfully denied certain benefits under automobile liability insurance contracts provided by Allstate and under which Plaintiffs were covered. In their complaint, Plaintiffs bring the following causes of action: (1) breach of contract; (2) breach of covenant of good faith and fair dealing; (3) fraud; (4) breach of statutory duty; (5) bad faith denial of claims; (6) breach of fiduciary duty; and (7) punitive damages. Defendant moves to dismiss the named Plaintiffs' claims for lack of standing. Defendant further contends that the class action allegations should be stricken

---

[1] By consent of the parties, this action was stayed pending resolution of similar cases in other courts and was reopened, again by consent.

because Plaintiffs fail to establish several requirements of Fed. R. Civ. P. 23.  No hearing is deemed necessary, and the court now rules pursuant to Local Rule 105.6.  For the reasons that follow, the court will deny Defendant's motions to dismiss and to stay discovery as to the named Plaintiffs, and grant Defendant's motion to strike the class allegations.  As explained below, Defendant's motion to stay discovery as to the class certification issues is mooted by the court's opinion.

## I. Background

Plaintiffs are Maryland residents, who either purchased, or otherwise were covered under, an Allstate motor vehicle liability insurance policy that contained personal injury protection ("PIP") coverage.  Maryland law requires that all motor vehicle liability insurance policies sold or issued in the state contain PIP coverage, unless the motorist waives such coverage.[2]  Plaintiffs allege that Defendant "induced" them not to waive PIP coverage by representing to them that it would pay their "reasonable and necessary" medical bills and lost income (up to 85 %) regardless of fault.  Allstate further allegedly represented that it would: "(a) evaluate PIP claims fairly, objectively, thoroughly, and promptly, (b) interpret the contracts of insurance in accordance with Maryland law, recognizing Plaintiffs' reasonable expectations, (c) use only proper standards in deciding to pay or deny PIP claims,

---

[2]Md. Code Ann., Ins., §§ 19-505, et seq. (1997).

2

[and] (d) avoid improperly denying a portion of the claim . . . ."
Paper no. 2 ("Complaint") ¶ 18. Plaintiffs allege that after being
involved in automobile accidents and incurring reasonable and
necessary medical expenses and/or lost income, they submitted
timely claims to Allstate. They allege that the company "denied
their claims or refused to provide, in whole or in part, the PIP
benefits required by . . . [the Maryland Insurance Code] and
contract." Complaint ¶¶ 14-16. Plaintiffs further allege that in
denying their claims, Allstate employed a fraudulent scheme,
whereby, among other things, it: (1) used computer programs to
generate reports "predictably" adverse to Plaintiffs that purported
to reflect a reasonable amount for a given medical procedure; and
(2) engaged consultants who issued reports adverse to Plaintiffs,
as a result of, for example, failing to perform a thorough and
objective review of Plaintiffs' medical records when called to do
so. Complaint ¶ 19.

Plaintiff Ross-Randolph alleges that she entered into an
automobile insurance contract with Allstate and subsequently was
involved in an accident. She alleges that Allstate refused to pay
approximately $166 of her accident-related medical bills.
Plaintiff Smith, who was covered under her husband's policy, also
alleges that she was injured in an automobile accident and that
Allstate refused to pay approximately $273 of her related medical
bills.

3

## II. Analysis

Defendant contends that the named Plaintiffs lack standing because they have not suffered an injury in fact. Defendant also asserts that Plaintiffs' class action claims should be dismissed because: (1) there are no questions of law or fact common to the class, for purposes of Rule 23(a)(2) or 23(b)(3); (2) the claims of the representative parties are not typical of those of the class; (3) the class cannot establish the adequacy of representation requirement; and (4) defendant possesses unique defenses. The court addresses arguments regarding the individual and class claims in turn.

### A. Individual Standing

In any litigation, including a purported class action, the named plaintiffs must allege and prove standing in their own right to bring the suit. *See Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) (explaining that an individual who seeks to bring a class action must allege and show that he personally has been injured, "not that injury has been suffered by other, unidentified members of the class to which . . . [he] belong[s] and which . . . [he] purport[s] to represent.") (citation omitted). The existence of a wrong on a defendant's part without an injury to the plaintiff lacks a basis for redress. *Adams v. Bethlehem Steel Corp.*, 736 F.2d 992, 994 (4th Cir. 1984) (citation omitted).

4

Defendant challenges Plaintiffs' standing to bring this action, but fails to designate whether it moves to dismiss on that ground pursuant to Rule 12(b)(1), lack of subject matter jurisdiction, or Rule 12(b)(6), failure to state a claim. While a plaintiff's standing to bring suit may be raised and treated on a motion to dismiss for failure to state a claim, *see e.g., Thompson v. County of Franklin*, 15 F.3d 245, 247 (2d Cir. 1994) (citation omitted), courts generally analyze issues of standing pursuant to 12(b)(1), *see Axel Johnson, Inc. v. Carroll Carolina Oil Co., Inc.*, 145 F.3d 660, 661-62 (4th Cir. 1998) (affirming district court's dismissal of complaint for lack of standing pursuant to 12(b)(1)); *Thompson*, 15 F.3d at 247-48 (12(b)(1) is more appropriate method by which to analyze standing issue); *Maryland Minority Contractor's Ass'n, Inc. v. Maryland Stadium Auth.*, 70 F. Supp 2d. 580, 586-87 (D. Md. 1998) (analyzing standing issue under 12(b)(1)); *Prince George's County v. Levi*, 79 F.R.D. 1, 5 (D. Md. 1977) (same). According to the Second Circuit, the standing "'inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise,'" and thus should be analyzed under 12(b)(1). *Thompson*, 15 F.3d at 247 (quoting *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99 (1979) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975))). Consequently, the court will analyze Defendant's argument that Plaintiffs lack standing to bring this action under Rule 12(b)(1).

5

There are two ways to present a 12(b)(1) motion to dismiss. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). A defendant may either contend (1) that the complaint fails to allege facts upon which subject matter can be based, or (2) that the jurisdictional facts alleged in the complaint are untrue. *Id.* If, as in the case now before the court, a defendant raises the first argument, then the allegations in the complaint are assumed to be true, and the court will view the motion as it would one brought under 12(b)(6). *Id.*

Defendant contends that the named Plaintiffs lack standing because they have alleged an insufficient injury with respect to their breach of contract claim.[3] Specifically, Allstate argues that medical providers have not compelled Plaintiffs to pay the outstanding balances from their medical bills that Allstate refused to pay. Plaintiffs contend that the issue of the suit is the propriety of Allstate's practices, not simply the denial of benefits.

Defendant's argument was considered and rejected in a similar case. In *Puritt v. Allstate Ins. Co.*, 672 N.E.2d 353, 354 (Ill. App. Ct. 1996), a purported class action suit, one of the individual Plaintiffs alleged that he had been involved in an accident, for which he received medical care. He submitted timely

---

[3]It is apparent from the complaint that all of Plaintiffs' causes of action flow from the alleged breach of contract.

6

claims that were denied because Allstate determined that the charges were unreasonable. Although the plaintiff had paid his own medical bill before filing the action, the court did not rest its finding that he had standing to bring the suit on that fact. In denying Allstate's motion to dismiss for failure to assert an injury, the court stated: "If, as plaintiffs contend, Allstate as a matter of policy and practice makes arbitrary and unreasonable determinations concerning the fees medical providers should charge, enough of an injury is established to defeat the motions to dismiss." *Id.* at 356. The court went on to state that "[t]he insureds did not have to wait until lawsuits against them were filed or collection agents began harassing them or their credit files were red-flagged. There is standing." *Id.* In *Tilley v. Allstate Ins. Co.*, 40 F. Supp 2d. 809, 811, 814 (S.D. W.Va. 1999), the court faced a similar issue when it considered Allstate's argument that because plaintiffs had not been compelled to pay their outstanding medical expenses, they suffered no injury. The court found the argument premature. It stated that factual disputes existed as plaintiffs had contended they had paid their own doctors' bills and their reputations and doctor-patient relationships had suffered because of late payments. *Id.* at 814. The court stated, "[h]ere, Plaintiffs alleged Allstate failed to pay their medical expenses in accord with the insurance contract. The Court cannot hold with certainty [on a motion to dismiss] that

7

Plaintiffs cannot prove a set of facts entitling them to relief."
*Id.*

In the instant case, Plaintiffs allege that they entered into insurance contracts with Allstate, and submitted claims for medical treatment they received as a result of injuries sustained in automobile accidents. They allege that Maryland law requires contracts containing PIP coverage to pay insureds reasonable and necessary medical expenses, and up to 85 percent of their lost income incurred as a result of an automobile accident or incident. They allege that Allstate induced them not to waive PIP coverage under their contracts by promising to give their claims independent, objective consideration in determining which claims are reasonable and necessary. They allege that Maryland law requires such consideration. *See Huntt v. State Farm Mut. Auto Ins. Co.*, 72 Md.App. 189, 193-94, 527 A.2d 1333, 1334-35 (1987), *cert. denied*, 311 Md. 286, 533 A.2d 1307 (1987) (insurer's obligation is only to pay reasonable expenses incurred from necessary medical procedures, thus insurer had a right to require claimant to visit doctor of its choice to test proof of entitlement to claim). They allege that Allstate employed a scheme whereby the amounts ultimately paid to medical providers were arbitrarily and fraudulently lowered, resulting in breaches of their contracts, for which they have incurred losses and damages. The fact that creditors or the medical providers have not yet compelled

8

Plaintiffs to pay their outstanding bills does not necessarily defeat standing. Any alleged injury is of course subject to proof. At this stage, however, enough of an injury has been alleged to proceed.

### B. Class claims

"As soon as practicable after commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained." Fed. R. Civ. P. 23(c)(1). Rule 23(a) requires four showings for class certification

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class [("commonality")], (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [("typicality")], and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In addition to satisfying Rule 23(a), a party seeking certification must satisfy one of three requirements under Rule 23(b). Plaintiffs claim that their complaint alleges facts sufficient to support certification under Rule 23(b)(1)(A) or (b)(3). *See* Fed. R. Civ. P. 23(b)(1)(A) (court must find that "the prosecution of separate actions by or against individual [class] members . . . would create a risk of . . . inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for" Defendant); (b)(3) (court must find that "questions of law or fact common to

9

the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy").[4]

There is no presumption that class action should be allowed. *Windham v. American Brands, Inc.*, 565 F.2d 59, 64 n.6 (4th Cir. 1977). The party seeking to maintain a class action bears the burden of proving class action status is appropriate by meeting the requirements under Rule 23. *Id.; Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985) (plaintiff has burden of setting forth prima facie showing that Rule 23 requirements are met *or that discovery is likely to substantiate class allegations*) (emphasis added); *Peoples v. Wendover Funding, Inc.*, 179 F.R.D. 492, 496 (D. Md. 1998) (court must find all requirements of Rule 23(a) and at least one requirement from Rule 23(b) before a court may certify a class) (citing *In re A.H. Robbins Co., Inc.*, 880 F.2d 709, 727-28 (4th Cir. 1989), *abrogated on other grounds by Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997)).

In determining whether a party complies with Rule 23, a court does not have to wait until class certification is sought. *Cook County College Teachers Union v. Byrd*, 456 F.2d 882, 885 (7th Cir.

---

[4]In their complaint, Plaintiffs also cite Rule 23(b)(2) as a basis for class certification. They apparently have abandoned that allegation, as they do not raise it in their memorandum in opposition to Defendant's motion to dismiss.

1972) (party opposing class certification may move for an order to
determine whether an action may be maintained as a class action);
*see also Strange v. Norfolk and Western Railway Co.*, No. 85-1929,
1987 WL 36160, at *3 (4th Cir. Jan. 12, 1987) (citing this
proposition from *Cook County*). A party challenging the validity of
maintaining an action under Rule 23 may move for a determination
under Rule 23(c)(1) that a class action is unwarranted. 7B Charles
Alan Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice &
Procedure, § 1798 (3d ed. 1986); *see also Oxman v. WLS-TV*, 595
F.Supp. 557, 561 (N.D. Ill. 1984) (analyzing plaintiff's motion to
strike class allegations under Rule 23(c)(1)). If a plaintiff
fails to allege sufficient facts to show the requirements under
Rule 23 have been met, then pursuant to Rule 23(d)(4), the court
can order that "the pleadings be amended to eliminate allegations
regarding the representation of absent persons . . . ." 5 Moore's
Federal Practice, § 23.60 [3] (Matthew Bender 3d ed. 1997); *see
also General Telephone Co. of the Southwest v. Falcon*, 457 U.S.
147, 160 (1982) (it at times may be clear from the pleadings alone
"whether the interests of the absent parties are fairly encompassed
within the named plaintiff's claim"); *Lumpkin v. E.I. Du Pont De
Nemours & Co.*, 161 F.R.D. 480, 481 (M.D. Ga. 1995) (granting
defendant's motion to strike class allegations before the defendant
responded to plaintiffs discovery requests, as it was clear that
Rule 23 requirements were not met).

11

Defendant first argues that this case lacks a common question of law or fact to satisfy Rule 23(a)(2) because a fact finder will have to determine for each claimant whether the medical expenses submitted were reasonable or necessary.  Even assuming some common question of fact exists, however, Defendant contends that Plaintiffs fail to meet the manageability requirement under Fed. R. Civ. P. 23(b)(3), which require that issues of fact and law that affect the class predominate over issues affecting only individual members.  Defendant argues that because no common issues of fact predominate, the "predominance" and "superiority" elements of the rule are lacking.

In response, Plaintiffs argue that there only needs to be one question of law or fact common among Plaintiffs to meet the requirements of Rule 23(a)(2).  Plaintiffs claim this showing is met because they "have alleged sufficient common questions" in this case, such as: "(1) whether a common scheme existed to deceive persons of ordinary prudence, (2) whether the defendant owed the plaintiffs a fiduciary duty, (3) whether the defendant acted with an intent to defraud customers, and (4) whether the defendant engaged in a pattern and practice of illegal activity."  Plaintiffs contend that, under Rule 23(b)(3), courts have held that where there are liability issues common to the class, those issues predominate over individual issues, such as varying degrees of damages. As explained below, the court finds that Plaintiffs have

12

failed to satisfy Rules 23(a)(2), (b)(1) or (b)(3), which suffices to defeat class certification.

1. <u>Rule 23(a)(2) -- Commonality of Claims</u>

Under Rule 23(a), commonality and typicality are often analyzed together because they "[b]oth serve as guideposts for determining whether . . . the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected . . . ." *Stott v. Haworth*, 916 F.2d 134, 143 (4th Cir. 1990) (citing *General Telephone Co.*, 457 U.S. at 157 n.13). The commonality requirement does not mandate that Plaintiffs share all issues in common, but merely a single common issue. *Peoples*, 179 F.R.D. at 498 (citing *Central Wesleyan College v. W.R. Grace & Co.*, 143 F.R.D. 628, 636 (D.S.C. 1992), *aff'd*, 6 F.3d 177 (4th Cir. 1993); *Holsey v. Armour & Co.*, 743 F.2d 199, 216-17 (4th Cir. 1984)).

However, class certification is appropriate only "when a determinative critical issue overshadows all other issues." *Stott*, 916 F.2d at 145 (citation omitted). If a court must make specific, individual inquiries as to each of the class plaintiffs regarding the critical issues, then there is no commonality and typicality, and certification is improper. *Id.* In *Stott*, the district court had certified a class of plaintiffs who were discharged when a new administration took office in North Carolina. The plaintiffs asserted that class action status was appropriate because they all

13

held positions that exempted them from being discharged, and they were discharged for political reasons. *Id.* at 137. The defendants moved for summary judgment and decertification. The district court denied both motions. In denying summary judgment, the court "noted that a decision as to the appropriateness of summary judgment could not be made without a review of the circumstances surrounding each class member." *Id.* at 137-38. In denying the motion for decertification, the district court found there was a central issue that predominated: "whether the . . . administration engaged in a policy . . . of firing . . . employees solely because of their political affiliation or activities." *Id.* at 138. Reversing, the Fourth Circuit held that the critical, dispositive questions in the case required individual determinations as to each plaintiff and thus there were no "substantial facts or questions of law common or typical to all members of the certified class." *Id.* at 145. Specifically, the Fourth Circuit noted that to determine whether commonality existed, the district court would have had to conduct a position-by-position analysis on behalf of each plaintiff in order to determine whether a particular position requires, as a qualification for its performance, political affiliation. *Cf. Zimmerman v. Bell*, 800 F.2d 386, 389-90 (4th Cir. 1986) (in securities case, district court did not abuse its discretion in deciding not to certify class, as claims necessarily depended on the unique, precise dates plaintiffs owned stock and whether each

14

stockholder possessed knowledge of certain facts); *Peoples*, 179 F.R.D. at 498 (under Rule 23(a)(2) or 23(b), class certification is inappropriate "where individual factual considerations predominate over common questions").

Plaintiffs argue that a common question only needs to advance the litigation as a whole to satisfy Rule 23(a)(2), that certification will not be defeated solely because of some factual differences among members of the class, and that in some cases, a common course of deceptive conduct by a defendant has sufficed to meet the commonality requirement. However, as explained above, in this circuit, certification is appropriate only when a determinative critical issue overshadows all others. Questions that are not dispositive but that merely propel a suit into a posture where judicial scrutiny is necessary for just adjudication fall short of establishing the commonality prong. *Stott*, 916 F.2d at 145.

Plaintiffs contend that the purported class shares numerous common issues of fact or law, including whether: (1) all Plaintiffs purchased or were covered under contracts containing PIP coverage; (2) all Plaintiffs were involved in automobile accidents; (3) all Plaintiffs submitted timely claims; (4) Defendant systematically denied these claims using a computer program without individual, objective consideration; and (5) defendant made representations to claimants to induce them not to waive PIP coverage. Further, a

15

question of law the class allegedly shares is the proper procedure Defendant must employ to evaluate claims in compliance with Maryland law. Paper no. 18 at 21-22.

However, in order to determine whether any Plaintiff is entitled to relief in this action, each Plaintiff will have to prove his or her entitlement to benefits. Defendant asserts, and Plaintiffs do not deny, that an insurers' obligation under Maryland's PIP statute necessarily turns on whether a particular medical procedure is necessary and an individual claimant's charges derived therefrom are reasonable. Thus, an insurer must make an individual determination as to each insured's claim to determine whether, if at all, PIP benefits are appropriate. *Huntt*, 72 Md.App. at 193-94, 527 A.2d at 1334-35 (PIP statute does not provide a claimant a blank check, as insurers are only obligated to pay reasonable expenses incurred from necessary medical services arising from a particular accident). During litigation of any claims, *the fact finder must determine whether a particular medical provider's procedure was necessary for each claimant*, which in turn will determine the reasonableness of an expense. *See Sabatier v. State Farm Mutual Automobile Ins. Co.*, 327 Md. 296, 303, 609 A.2d 307, 310-11 (1992) (PIP statute required court to make an individual determination as to whether a particular medical procedure was necessary).

16

Other individual factual inquiries involve whether all injuries claimed resulted solely from the alleged accident and whether each claimant actually relied on any alleged representations by Defendant in entering into the contracts. This latter inquiry is especially pertinent as Plaintiffs bring claims for fraud and breach of fiduciary duty. Plaintiffs appear to allege that a fiduciary relationship was developed, at least in part, by an Allstate advertisement that stated "you are in good hands," which they claim, "underscor[ed] the special type of relationship between each of the Plaintiffs and Defendant . . . ." Even assuming all Plaintiffs heard this advertisement, it would be impossible without individual inquiries to determine whether each Plaintiff actually relied on the advertisement or any other alleged representation before entering into a contract with Allstate. The Fourth Circuit has held that claims that require proof of individual reliance, such as fraud, are inappropriate for class action status. *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 342 (4th Cir. 1998) (citing *Jensen v. SIPCO, Inc.*, 38 F.3d 945, 953 (8th Cir. 1994)). Even assuming the truth of Plaintiffs' allegations, Plaintiffs fail to explain how individualized inquiries into each insured's claim can be avoided.

In addition, Plaintiffs cite no authority, and the court has found none, that deals with certification of a class of plaintiffs whose action is based on an insurer's failure to undertake a

17

"reasonable and necessary" analysis as to each class member's individual claims, and in which the court found certification appropriate. Defendant, however, cites and/or attaches as exhibits, several cases from state and federal courts that have addressed the exact or a similar issue and have uniformly found commonality and/or other Rule 23 requirements lacking. Although not binding, these opinions are persuasive. See Paper no. 20, Defendant's exhibit D, *Gloria v. Allstate County Mut. Ins. Co.*, No. SA-99-CA-676-PM, at 22-23 (W.D. Tex. Sept. 29, 2000) (granting defendant's motion to strike class action allegations, incorporated in defendant's motion to dismiss, as "even if . . . the computerized evaluation of the PIP claims was flawed, the parties and the Court still will need to analyze each charge on every claim for reasonableness and necessity."); Paper no. 20, Defendant's exhibit H, *Advocacy Organizations for Patients Providers v. Auto Club Ins. Ass'n*, No. 96-1409-CZ at *3-4 (2000) (Michigan state trial court analyzing class claims under state standard analogous to Rule 23, and holding that whether a provider's charges or services or an insurer's determinations are reasonable and necessary are questions of fact, and such factual inquiries into individual claims would predominate, making class action status unmanageable); *Ammons v. American Family Mut. Ins. Co.*, 897 P.2d 860, 863 (Colo. App. 1995) (typicality prong failed as a determination of what would be a reasonable and necessary medical

18

expense for treatment will vary from person to person); *Ralph v. American Family Mut. Ins. Co.*, 835 S.W.2d 522, 524 (Mo. App. 1992) (issues such as "amount of medical treatment, [and] whether that treatment was necessary, . . . charges are reasonable, and . . . treatment was for injuries sustained in the accident" are all specific to individuals, not common to the class). "[A] representative plaintiff cannot establish commonality . . . if the court must investigate each plaintiff's individual claim . . . ." *Peoples*, 179 F.R.D. at 498 (citation omitted). Thus, Plaintiffs fail to meet the commonality prong under Rule 23(a)(2).[5]

If a movant fails to meet any of Rule 23(a)'s requirements, analysis under Rule 23(b) is unnecessary. *See Broussard*, 155 F.3d at 337 n.3 (party must satisfy requirements of 23(a) before 23(b) can be considered) (citing *Lukenas v. Bryce's Mountain Resort, Inc.*, 538 F.2d 594, 596 (4th Cir. 1976)). However, the court will briefly analyze Plaintiffs' claims under Rule 23(b) as well.

2. Rule 23(b)(1) -- Prejudice to Either Plaintiff or Defendant

Plaintiffs claim that certification is appropriate because they meet the requirements under Rule 23(b)(1). Specifically,

---

[5]Defendant also moves to strike Plaintiffs' allegations for failing to meet Rule 23(a)(3), because it has a unique defense to the named Plaintiffs' claims, and Rule 23(a)(4), because the named Plaintiffs are not representative members of the class. The sole basis for both of Defendant's arguments is that the named Plaintiffs lack standing to bring this suit. The court has denied Defendant's motion to dismiss on standing grounds, and for that reason cannot now definitively state as a matter of law that Plaintiffs fail to meet Rule 23(a)(3) and (4) for lack of standing.

Plaintiffs contend that under Rule 23(b)(1)(A) certification is proper because separate individual actions would inflict upon Defendant varying standards of conduct. Plaintiffs assert that all claimants have a right to an objective review of their individual claims, and that separate individual actions might produce inconsistent standards in the procedures Defendant must undertake to comply with the legal requirement that all PIP claims are evaluated objectively.

A class action may be brought under Rule 23(b)(1)(A) or (b)(1)(B) if individual adjudications would prejudice either the opposing party, (b)(1)(A), or the class members themselves, (b)(1)(B). *Zimmerman*, 800 F.2d at 389 (finding Rule 23(b)(1)(A) inapplicable because defendants did not argue they would be prejudiced if the class was not certified). Moreover, "the dangers of imposing incompatible standards of conduct" on a Defendant in an action for money damages are generally nonexistent. *Id.* (citing *Green v. Occidental Petroleum Corp.*, 541 F.2d 1335, 1340 n.10 (9th Cir. 1976)). In this case, Defendant does not contend that it would suffer prejudice if the case is not certified, and Plaintiffs exclusively request money damages in their prayer for relief. Thus, Rule 23(b)(1)(A) is not the proper basis for class certification. Likewise, Plaintiffs fail to show that any purported class members would suffer prejudice absent certification. Both parties agree that Maryland law requires

20

insurers to conduct independent reviews of an insured's claim. Plaintiffs fail to explain why in this case, as long as Defendant complies with the law, the procedure it adopts is relevant.

3. Rule 23(b)(3) - <u>Whether Common Issues of Law or Fact will Predominate</u>

"In order to 'predominate,' common issues must constitute a significant part of the individual cases." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 626 (5th Cir. 1999) (citing *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986). In support of certification under Rule 23(b)(3), Plaintiffs argue that if there are liability issues common to the class, those common questions of liability will predominate over individual issues regarding varying degrees of damages.[6] *See Iron Workers Local Union No. 17 v. Philip Morris Inc.*, 182 F.R.D. 523, 540 (N.D. Ohio 1998) (especially in antitrust and conspiracy claims, courts frequently consider issues of liability in determining whether common questions of law or fact predominate). Plaintiffs also assert that a single common issue may be the overriding one in a litigation, such as whether there has been a common course of misrepresentation on the part of the Defendant, despite the fact that the suit also entails numerous remaining individual questions.

───────────────

[6]Rule 23(b)(3) also requires that the movant show that a class action is superior to other forms of adjudication. In its motion, however, Defendant focuses on the predominance prong. Thus, the court does so as well.

Plaintiffs contend that this case contains the following overriding issues: (1) the nature and extent of Defendant's duties under Maryland law; (2) Defendant's common course of deceptive conduct in evaluating PIP claims; and (3) Defendant's common course of misrepresentation in inducing Plaintiffs to enter into contracts.

However, the issues that vary in this case do not merely involve degrees of damages. They involve, among other things, whether and to what extent a claimant had a right to PIP benefits at all. As explained above, this inquiry will necessarily require that the fact finder make individual determinations on a number of issues as to each purported class member. Defendant contends that because of these individual inquiries, the case would be unmanageable.

Rule 23(b)(3) sets forth four factors that a court might consider in determining whether the predominance and superiority elements are met. One of the factors is "difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3)(D). A court should generally not deny class certification on manageability grounds without allowing a plaintiff an opportunity to conduct some discovery. *Windham*, 565 F.2d at 64 n.5 (explaining that "hard data should be presented to the district court as to the actual difficulty or ease involved in determining class membership and managing this proceeding") (citation omitted). Even if the court were to permit discovery in this case, however,

it likely would not aid Plaintiffs in proving that they satisfy Rule 23(b)(3). "[W]here individual factual considerations predominate over common questions," class certification is inappropriate under rule 23(b). *Peoples*, 179 F.R.D. at 498. As already explained, it is apparent from the pleadings that individual factual determinations will constitute a significant part of this action, and Plaintiffs themselves admit that Maryland law requires that the court conduct individual inquiries into each insured's claim to resolve the issues this case raises. *Cf.* *Zimmerman*, 800 F.2d at 390 (explaining that when possibility of individualized determinations would impose an undue managerial burden on district court, circuit court could not say that trial court was wrong to deny certification under Rule 23(b)(3)). Thus, Plaintiffs fail to allege sufficient facts to satisfy Rule 23(b)(3)'s requirements as well.

C.    Defendant's Motion to Stay Discovery

Defendant moves to stay discovery in this matter because it contends the court may dispose of the case by granting its motion to dismiss.[7] Plaintiffs contend, at least with respect to the class claims, that discovery should proceed so that they have an opportunity to obtain information bearing on the propriety of the

---

[7]Defendant also states that its motion to stay discovery should be granted pending its motion to stay this entire action. Defendant earlier abandoned that motion and does not seek a ruling on it. Paper no. 16.

23

case.    Specifically, Plaintiffs argue that because they have alleged a common course of conduct on Defendant's part, they should be allowed to conduct discovery on such issues as whether Defendant engaged in an objective review of Plaintiff's claims and the extent to which computer programs were used to evaluate claims.

Defendant's motion is denied as to the named Plaintiffs, as Defendant only sought a stay of discovery until the court ruled on its motion to dismiss, which, if granted, would have disposed of this action.  The motion will be denied, and Defendant presents no argument why discovery should not proceed at this time.

Discovery as to the class presents another matter.   It is Plaintiffs' burden to set forth a prima facie case showing that Rule 23's requirements are met or that discovery is likely to substantiate class allegations. *Mantolete*, 767 F.2d at 1424.  If it appears from the pleadings that class certification is unwarranted, the court may strike allegations pertaining to those claims and refuse to allow further discovery. *Lumpkin*, 161 F.R.D. at 481 (striking class allegations before plaintiffs obtained any discovery).  As explained above, Plaintiffs' claims are riddled with individual inquiries, which makes this action inappropriate for class certification.  To grant any relief in this case, the court will have to inquire into each class member's individual claim to determine whether any medical procedure was necessary, expense was reasonable, and benefits were due.  Maryland law

24

requires such inquiries.  The court finds that additional discovery will not aid Plaintiffs in showing that class action status is appropriate.  Because of the court's resolution on this issue, Defendant's motion to stay discovery with respect to class certification is moot.

### III. Conclusion.

Defendant's motions to dismiss and to stay discovery as to the named Plaintiffs are denied and Defendant's motion to strike the class allegations is granted.  Defendant's motion to stay discovery as to the class certification issues is mooted by the court's opinion.

A separate Order will be entered.

_Deborah K. Chasanow_
DEBORAH K. CHASANOW
United States District Judge

May _11_ , 2001.

25

# EXHIBIT   K

Westlaw.

Not Reported in N.E.2d

Not Reported in N.E.2d, 2000 WL 1298760 (Mass.Super.)
(Cite as: Not Reported in N.E.2d)

Page 1

Only the Westlaw citation is currently available.
Superior Court of Massachusetts.
SOUTHEAST PHYSICAL THERAPY
SERVICES, INC.,
v.
HEALTHCARE VALUE MANAGEMENT, INC.
et al.
**No. CV983546.**

March 27, 2000.

MEMORANDUM OF DECISION AND ORDER
ON PLAINTIFF'S AMENDED MOTION FOR
CLASS CERTIFICATION

KING.

**\*1** This action arises from a complaint brought by the plaintiff, Southeast Physical Therapy Services, Inc. ("SEPT"), against the defendants, Healthcare Value Management, Inc. ("HCVM"), Concentra Managed Care, Inc. ("Concentra"), Commerce Insurance Company, Trust Insurance Company, Premier Insurance Company of Massachusetts, Inc., and Arbella Mutual Insurance Company (collectively, the "Insurers"). In the complaint, SEPT [FN1] seeks injunctive relief and monetary damages for breach of contract, contending that the defendants violated its contract with HCVM by initiating and operating a program that provided for discounted payments of personal injury protection medical expenses. More specifically, SEPT complains of (1) HCVM's failure to ensure that Concentra and the Insurers steered personal injury protection claimants to preferred providers in the HCVM network; [FN2] (2) HCVM's failure to ensure that Concentra and the Insurers paid medical bills within thirty days; and (3) HCVM's disclosure of its preferred provider discounts to Concentra. SEPT further alleges that the defendant Insurers engaged in unfair and deceptive acts and practices in violation of G.L.c. 93A and G.L.c. 176D, § 3, and also violated motor vehicle liability insurance statutes, G.L.c. 90, § 34A and § 34M.[FN3]

FN1. SEPT is a physical therapy clinic owned and operated by a sole practitioner, David F. Bally.

FN2. The HCVM network is the largest preferred provider organization in New England, with approximately 18,500 providers in Massachusetts, including medical centers, community hospitals, and group physician practices. Concentra provides care management and cost containment services to insurance companies. Concentra and HCVM entered into an agreement to establish a Voluntary Network Access ("VNA") program which provides for the processing of personal injury protection medical bills according to a discounted payment schedule.

FN3. On July 21, 1999, this court (Lauriat, J.) dismissed Counts II, VI, and VII of SEPT's complaint alleging that HCVM and Concentra violated G.L.c. 90, § 34A; G.L.c. 90, § 34M; CL. c. 93A; and G.L.c 176D, § 3. The court denied the Insurers' motion to dismiss Counts IV, V, and VII, thus allowing SEPT to proceed against the Insurers with claimed violations of G.L.c. 90, § 34A; G.L.c. 90, § 34M; G.L.c. 93A; and G.L.c. 176D, § 3.

SEPT now moves pursuant to Mass.R.Civ.P. 23 for class certification and seeks to represent: (a) all persons or entities who were at any time a preferred provider of HCVM; and (b) all persons or entities whose medical bills were discounted for Massachusetts automobile insurance carriers by Concentra based on HCVM preferred provider volume discounts. In opposition, the defendants argue that class certification is not appropriate in this case because individual issues predominate over common questions of law or fact. The defendants also contend that a class action is not a superior method for the fair and efficient

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d                                                                                      Page 2

Not Reported in N.E.2d, 2000 WL 1298760 (Mass.Super.)
**(Cite as: Not Reported in N.E.2d)**

adjudication of this case.

### DISCUSSION

A class action may be maintained if four preconditions are met: (1) the class must be numerous; (2) there must be common questions of law or fact; (3) the claims or defenses of the representative parties must be typical; and (4) the class representative must fairly and adequately protect the interests of that class. Mass.R.Civ.P. 23(a). Even if these four requirements are met, the court must find that questions of law or fact common to the case must predominate over questions affecting individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Mass.R.Civ.P. 23(b). The court retains broad discretion in determining whether litigation may be maintained as a class action. *Fletcher v. Cape Cod Gas Co.,* 394 Mass. 595, 601 (1985).

After considering the briefs and arguments of counsel, the court denies the motion for class certification based on the plaintiff's failure to show that common questions of law or fact exist. The court agrees with the defendants' assertion that material factual differences among proposed class members, as well as individual questions of liability and damage, require individualized proof. For example, the court would have to determine whether HCVM's discounted payment program constituted a breach of each separate provider contract. Moreover, the court would have to undertake an individualized damage analysis for each provider as to the amount billed, medical specialty, geographic location, and date of service. Under these circumstances, the court also concludes that a class action would not be superior to individual adjudication of the claims raised by SEPT because the efficiency and economy of judicial administration would not be advanced. Accordingly, class certification in this case is inappropriate.

### ORDER

**\*2** For the foregoing reasons, it is hereby *ORDERED* that the plaintiff's motion for class certification is *DENIED.*

Mass.Super.,2000.
Southeast Physical Therapy Service, Inc. v. Healthcare Value Management, Inc.
Not Reported in N.E.2d, 2000 WL 1298760 (Mass.Super.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT L

Westlaw.

Not Reported in A.2d
2003 WL 22290906 (Del.Super.)
**(Cite as: 2003 WL 22290906 (Del.Super.))**

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.

Superior Court of Delaware.

Sherri L. WATSON
v.
METROPOLITAN PROPERTY & CASUALTY
INSURANCE COMPANY

No. Civ.A.02C05261RRC.

Submitted Sept. 12, 2003.
Decided Oct. 2, 2003.

On Defendant's Motion for Partial Summary
Judgment. Granted in Part, Denied in Part.

On Defendant's Motion in Limine. Denied in Part,
Deferred in Part.

On Plaintiff's Application to Prohibit Defendant's
Expert from Offering Testimony. Deferred.

L. Vincent Ramunno, David R. Scerba, Ramunno,
Ramunno & Scerba, P .A., Wilmington, Delaware,
for Plaintiff.

Norman H. Brooks, Jr., Megan T. Mantzavinos,
Deborah E. Allen, Marks, O'Neill, O'Brien &
Courtney, P.C., Wilmington, Delaware, for
Defendant.

Dear Counsel:

COOCH, J.

*1 Plaintiff filed suit to recover medical expenses
stemming from an automobile accident that
Defendant refused to pay on the ground that the
amounts billed were excessive. Plaintiff also
averred that this refusal was unreasonable and in
"bad faith," and she requested punitive damages and
attorneys' fees. Defendant filed a Motion for Partial
Summary Judgment on these three issues, asserting
that the "reasonableness" of medical expenses under
Delaware's no-fault statute is to be determined by
the medical provider and the insurance company
(and that Plaintiff has failed to proffer evidence
establishing such "reasonableness"), that Plaintiff
has failed to demonstrate that Defendant had acted
in bad faith because Plaintiff has taken no discovery
on this issue (and therefore punitive damages
cannot be recovered), and that there is no basis by
statute or by contract to award to Plaintiff her
attorneys' fees.

Because this Court cannot now rule that the
complained-of bills rendered by Dr. Ross Ufberg in
his treatment of Plaintiff were not "reasonable" in
amount (a determination to be made by the finder of
fact) and because the finder of fact must determine
whether Dr. Ufberg can support the
"reasonableness" of those amounts (which
testimony this Court will permit to be introduced at
trial), Defendant's Motion for Partial Summary
Judgment is hereby DENIED IN PART and that
portion of Defendant's Motion in Limine which
seeks to bar Dr. Ufberg from testifying at trial must
likewise be DENIED. (The Court will not now act
on the portion of the Motion in Limine which seeks
to bar Dr. James Fusco from testifying at trial;
accordingly, the Motion in Limine is also
DEFERRED IN PART.) However, as to those
portions of Defendant's Motion for Partial Summary
Judgment which seek to preclude an assertion of
"bad faith" and to preclude an award of attorneys'
fees in Plaintiff's favor, the Court largely agrees
with the positions advanced by Defendant, and
accordingly, those portions of the Motion for Partial
Summary Judgment are GRANTED.

*FACTUAL AND PROCEDURAL HISTORY*

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
2003 WL 22290906 (Del.Super.)
(Cite as: 2003 WL 22290906 (Del.Super.))

Page 2

Plaintiff, an occupant of an automobile involved in an accident on January 8, 2001, sustained compensable injury. Following the accident, Plaintiff treated with Dr. Ross Ufberg and with Dr. James Fusco. Defendant provided no-fault benefits to Plaintiff pursuant to title 21, section 2118 of the Delaware Code. [FN1] However, following an independent medical exam of Plaintiff conducted at Defendant's request, Defendant discontinued payments for any additional medical treatment to Plaintiff.

> FN1. Section 2118(a)(2) provides, in pertinent part, that a vehicle owner must carry insurance to pay "[c]ompensation to injured persons for reasonable and necessary [medical] expenses incurred within [two] years from the date of the accident...."

Prior to the discontinuance of her no-fault benefits, Plaintiff's bills from Dr. Ufberg totaled $495. Of that amount, Defendant paid Dr. Ufberg $328.10, leaving a balance of $166.90, presumably for Plaintiff herself to pay. [FN2] Defendant paid these lesser amounts to Dr. Ufberg based on its purported assessment of similar medical provider charges "within th[is] provider's geographic region." [FN3] Plaintiff saw Dr. Ufberg two additional times following the independent medical exam, each time being charged $105 (for a total of $210); [FN4] this $210 amount apparently remains unpaid, so Dr. Ufberg's unpaid bills total $376.90.

> FN2. See Ex. "1(A)" to Pl.'s Resp. to Def.'s Mot.

> FN3. See Exs. "B" and "C" to Def.'s Mot.

> FN4. Ex. "1(A)" to Pl.'s Resp. to Def.'s Mot.

*2 In May 2002 Plaintiff filed suit to recover "unpaid medical expenses and/or loss of wages, plus any additional expenses and/or losses to be

incurred in the future...." [FN5] (Plaintiff has since represented that in addition to the amounts billed by Dr. Ufberg, Dr. Fusco is owed $2,177, and "Spinal Imaging" is owed $390 for x-rays.) [FN6] Plaintiff additionally averred that Defendant's "refusal to honor its insurance policy and pay the no-fault benefits to the extent of its coverage ... [wa]s unreasonable ... and in bad faith ... and ha[d] caused ... consequential losses and mental anguish." [FN7] Plaintiff requested a jury trial and demanded judgment against the Defendant "for compensatory and punitive damages, consequential damages, and attorneys' fees." [FN8]

> FN5. Compl. ¶ 7.

> FN6. Pl.'s Resp. to Def.'s Mot. at 1.

> FN7. Compl. ¶ 9.

> FN8. Compl. at 2.

In its Answer to the Complaint, Defendant admitted that Plaintiff "received certain injuries and treatment in connection with the ... auto accident [ ]" [FN9] but averred that "Plaintiff fail[ed] to state the nature of the claim other than [in] a generic ... [manner]." [FN10] Defendant denied that its actions were undertaken in "bad faith," and stated as an affirmative defense that Plaintiff's Complaint "fail[ed] to state a claim for punitive damages." [FN11] Defendant also requested a jury trial.

> FN9. Answer ¶ 4.

> FN10. Id. ¶ 5.

> FN11. Id. ¶ 10.

The docket indicates that in terms of discovery, Plaintiff so far has propounded a single set of interrogatories and a single request for production

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
2003 WL 22290906 (Del.Super.)
(Cite as: 2003 WL 22290906 (Del.Super.))

of documents upon Defendant. The discovery cut-off date has passed. Despite the establishment of both "expert" and "fact" discovery deadlines, it does not appear that Plaintiff conducted any other discovery prior to the dispositive motion deadline in this case. By letter dated July 3, 2003 (four days before Defendant's expert witness cutoff deadline), however, counsel for Defendant indicated to counsel for Plaintiff that Defendant had retained an expert "in the area of hospital and physician medical expense coding[ ]" and that in that expert's opinion, "based upon data collected in th[e] geographical area[,]" was that Defendant had paid "all reasonable and necessary charges imposed by ... Dr. Ufberg." [FN12]

> FN12. Letter from Norman H. Brooks, Jr. to L. Vincent Ramunno of 7/3/03, at 1 (Ex. "3" to Pl.'s Resp. to Def.'s Mot.). By letter dated September 8, 2003, counsel for Plaintiff has indicated that Plaintiff objects to this expert giving testimony on the ground that "the basis for her testimony is not sufficiently set forth so as to enable preparation of an effective cross[-]examination of her...." Letter from David R. Scerba to the Court of 9/8/03, at 1 (Dkt.# 28). In its Reply in support of its Motion in Limine, Defendant contends that its "coding" expert based her opinion "upon data collected for each CPT code in this particular geographical area." Def.'s Reply ¶ 2a. This matter will be taken up, if necessary, at trial (in order to allow for further in-court *voir dire* outside of the presence of the jury to additionally explore the witness's expertise); the Court notes, however, that Defendant's "coding" expert was timely identified, and that counsel for Plaintiff apparently did not depose her prior to the close of all discovery in this matter.

Defendant thereafter filed the instant motion, through which it moves for an order of partial summary judgment "as to the [un]reasonableness of ... [Dr. Ufberg]'s charges and/or Plaintiff's standing to litigate that issue[ ][,] as to Plaintiff's bad faith claim[ ][,] and as to Plaintiff's claims for punitive

damages and attorney's fees." [FN13] A two-day trial is scheduled for October 8, 2003.

> FN13. Def.'s Mot. at 4.

### CONTENTIONS OF THE PARTIES

Defendant's preliminary argument in its Motion for Partial Summary Judgment is that "[t]he issue of whether a medical expense is reasonable is an issue properly left to resolution by the ... [insurer] and the [medical] provider [ ]"; Defendant therefore contends that Plaintiff "lacks standing to maintain an action against ... [it] over the reasonableness of the fees charged by the doctors who treated her." [FN14] Defendant alternatively argues that summary judgment in its favor should be granted because Plaintiff "has proffered no evidence that the amounts charged by ... [Dr. Ufberg] are reasonable." [FN15]

> FN14. Def.'s Mot. ¶ 9.

> FN15. *Id.* ¶ 10.

*3 Defendant maintains that "[t]he affidavit of Dr. Ufberg [attached to Plaintiff's Response and purportedly establishing the "reasonableness" of his fees] speaks for itself in that it is nothing more than a conclusory statement" [FN16] which is "insufficient as a matter of law[ ]"; [FN17] Defendant contends that Plaintiff therefore "fails to satisfy her burden of proof on the issue" and that it is correspondingly entitled to judgment as a matter of law." [FN18] Defendant cites *Anticaglia v. Lynch* [FN19] in support of that last proposition.

> FN16. Def.'s Reply ¶ 3.

> FN17. *Id.* ¶ 4.

> FN18. *Id.* ¶ 7.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
2003 WL 22290906 (Del.Super.)
(Cite as: 2003 WL 22290906 (Del.Super.))

Page 4

FN19. C.A. No. 90C-11-175, 1992 WL 138983, at *6-*7 (Del.Super.Ct. Mar. 16, 1992) (holding that the determination of a "reasonable" and "customary" fee is entirely factual in nature, and that the medical provider testifying on behalf of the reasonableness of his billing in that case had provided "no reliable proof" of the customary and reasonable fees to be expected because he alone testified to their reasonableness).

With regard to Plaintiff's "bad faith" claim, Defendant argues in its Motion for Partial Summary Judgment that "there is simply no evidence that ... [it]'s actions were 'clearly without any justification,' as is required to establish bad faith[ ]"; [FN20] in support, Defendant cites *Casson v. Nationwide Insurance Co.*. [FN21] Defendant highlights that Plaintiff "has taken no depositions in th[is] case[ ]" and that she "has pursued no discovery in furtherance of her allegation...." [FN22] Defendant posits that because "there exist[s] no record evidence tending to support [P]laintiff's allegation" it is "entitled to judgment as a matter of law on plaintiff's claim for bad faith...." [FN23]

FN20. Def.'s Mot. ¶ 14.

FN21. 455 A.2d 361, 369 (Del.1982) (formulating that standard in response to the plaintiff's argument that an insured's "bad faith" refusal to make payments due under an insurance contract breached an "implied duty to deal fairly and in good faith with an insured").

FN22. Def.'s Reply ¶ 10.

FN23. *Id.* ¶ 12.

Defendant similarly contends in its Motion for Partial Summary Judgment that Plaintiff's claims for punitive damages and attorneys' fees "have no basis, and should be dismissed[ ][,]" [FN24] and it again

cites to *Casson* for support of its proposition. [FN25] Defendant contends that "[i]n an action at law, a court may not order payment of attorney's fees ... unless ... authorized by some provision of statute or contract[ ]"; [FN26] Defendant states that there is no such provision in the policy at issue, and again cites *Casson* for the proposition that "there is ... [no] statutory authorization for [such] an award ... in a suit for no-fault benefits...." [FN27]

FN24. Def.'s Mot. ¶ 15.

FN25. *See Casson,* 455 A.2d at 368 (stating that "given a proper set of circumstances," Delaware courts "would authorize recovery of punitive damages in egregious cases of willful or malicious breach of contract[ ]" but that "[a]n assertion of malice without factual basis is insufficient[ ]").

FN26. Def.'s Mot. ¶ 16.

FN27. *See Casson,* 455 A.2d at 370 (stating after refuting the plaintiff's argument that the insurer's conduct therein fell within Delaware's Prohibited Trade Practices Act that "there is no statutory basis for an award of attorney's fees in this [no-fault] case[ ]").

Lastly, Defendant contends in its Motion in Limine that "[n]either Dr. Ufberg's affidavit nor any other evidence proffered by Plaintiff offers any credible data or other basis or method commonly accepted by scientists, physicians or economists which would support Dr. Ufberg's conclusory statement at to the reasonableness of his fees when compared to those charged by other physicians similarly situated in the area." [FN28] Because Defendant contends that such evidence does not satisfy either Delaware Rule of Evidence 702 [FN29] or the *Anticaglia* case, it argues that "Dr. Ufberg's testimony in this regard is merely the product of his own belief or speculation, and must [therefore] be precluded from ... trial." [FN30]

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
2003 WL 22290906 (Del.Super.)
(Cite as: 2003 WL 22290906 (Del.Super.))

Page 5

FN28. Def.'s Mot. in Limine ¶ 14 (Dkt.# 21). Again, the Motion in Limine also seeks to prohibit Dr. Fusco from testifying at trial on similar grounds, an argument which this Court will not now decide.

FN29. Rule 702 provides a three-part test for the admission of "expert" testimony.

FN30. Def.'s Mot. in Limine ¶ 14.

In response to Defendant's preliminary argument regarding her standing, Plaintiff puts forward that "Defendant's ... [contention] is frivolous, absurd, and reflect[s] clearly upon Defendant's bad faith...." [FN31] Plaintiff (correctly) argues that Defendant "offers absolutely no authority for the proposition that it seeks to advance ... [regarding Plaintiff's standing]." [FN32] With regard to Defendant's substantive argument concerning the reasonableness of Dr. Ufberg's billings, Plaintiff responds by attaching an affidavit executed by the doctor stating that "the specific charges assessed are reasonable ... and are wholly consistent with what is usually and customarily charged in this medical community ..."; [FN33] Plaintiff therefore declares that "questions of 'reasonableness' are commonly left for the jury to decide...." [FN34] In fact, Plaintiff contends that "if ... forced to trial ... [she] will present the single question of whether Plaintiff's bills meet the statutory threshold for compensability, i.e., whether they are reasonable, necessary and causally related to the subject accident." [FN35]

FN31. Pl.'s Resp. to Def.'s Mot. ¶ 1.

FN32. Id.

FN33. Ross Ufberg Aff. ¶ 4 (Ex. "1" to Pl.'s Resp. to Def.'s Mot .).

FN34. Pl.'s Resp. to Def.'s Mot. ¶ 2.

FN35. Letter from L. Vincent Ramunno to the Court of 8/6/03, at 1.

*4 Plaintiff further advances that "[n]othing in the [no-fault] statute or the case law requires an insured to submit documentation along with ... medical bills to establish that ... charges [we]re reasonable." [FN36] Plaintiff contends that "[u]nder these circumstances, Dr. Ufberg's [a]ffidavit ... [i]s a timely rebuttal to the final hour assertion of a defense and the listing of a new "expert" [in Mr. Brooks's July 3, 2003 letter to Plaintiff's counsel] ... despite ample time and opportunity to ... [previously disclose that information]." [FN37]

FN36. Pl.'s Resp. to Def.'s Mot. ¶ 5.

FN37. Id.

With regard to punitive damages, Plaintiff argues that her claim "is genuine." [FN38] In support, Plaintiff contends that "the Defendant's position in refusing to pay the bills of Dr. Ufberg is clearly without justification, thus entitling Plaintiff to an award of punitive damages [ ]"; [FN39] like Defendant, Plaintiff cites to Casson to support her argument. [FN40]

FN38. Id. ¶ 4.

FN39. Id.

FN40. See Casson, 455 A.2d at 369 (stating that, with regard to the test of whether "any reasonable justification" existed for an insurer to refuse to honor its contractual obligation, "[t]he ultimate question is whether at the time the insurer denied liability, there existed a set of facts or circumstances known to the insurer which created a bona fide dispute and therefore a meritorious defense to the insurer's liability[ ]").

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
2003 WL 22290906 (Del.Super.)
(Cite as: 2003 WL 22290906 (Del.Super.))

Page 6

In response to Defendant's Motion in Limine, Plaintiff argues that she does have sufficient evidence to establish the "reasonableness" of Dr. Ufberg's charges, in that:

If ... permitted to testify, [Dr. Ufberg] would say that he is a state-licensed physician, who has owned and operated his own medical facility specializing in the treatment of the same type of injuries sustained by [Plaintiff] since 1985; that he is familiar with his billing practices and his charges since he in fact established them; that these charges are the very same charges paid by the majority of insurance companies with which he deals, as well as self[-]insureds, everyday in his practice; that he is aware generally of what other facilities in the local community charge for services similar to his own; that his charges are in no event excessive or unreasonably higher than those charged elsewhere as evidenced by the fact that they are paid in full by the majority of insurance companies with which he deals. [FN41]

FN41. Pl.'s Resp. to Def.'s Mot. in Limine ¶ 2 (Dkt.# 23).

Plaintiff therefore construes *Anticaglia* in her favor, as, according to Plaintiff, the judge deciding that matter "did not preclude Dr. Anticaglia from testifying as [D]efendant seeks to do here with respect to Dr. Ufberg." [FN42] Thus, Plaintiff argues, "[t]he counterarguments of the [D]efendant would clearly go to the weight, not the admissibility of [Dr. Ufberg's] testimony, and the jury, as the trier of fact, would decide the ultimate issue." [FN43] With regard to Defendant's Rule 702 argument, Plaintiff maintains that Dr. Ufberg's testimony "would not be based upon mere speculation but rather would be the product of reliable princip[le] and method (*i.e.,* the marketplace for his services[,] as supported by the fact that most carriers with which he deals pay his charges in full without reduction) and he charged for his services no differently in this case than in any other." [FN44]

FN42. *Id.* ¶ 4 (emphasis in original removed).

FN43. *Id.* ¶ 3 (emphasis in original

removed).

FN44. *Id.* ¶ 3.

*THE SUMMARY JUDGMENT STANDARD*

Summary judgment is granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. [FN45] The Court must view the facts in a light most favorable to the non-moving party. [FN46] When the moving party makes this initial showing, the burden then shifts to the non-moving party to demonstrate that there are material issues of fact. [FN47]

FN45. Super. Ct. Civ. R. 56(c); *Burkhart v. Davies,* 602 A.2d 56 (Del.1991).

FN46. *Merrill v. Crothall-American, Inc.,* 606 A.2d 96, 99-100 (Del.1992).

FN47. Super. Ct. Civ. R. 56(e); *Moore v. Sizemore,* 405 A.2d 679 (Del.1979).

*5 In resisting a motion for summary judgment, the non-movant's evidence of material facts in dispute "must be sufficient to withstand a motion for directed verdict [*i.e.,* motion for judgment as a matter of law] and support the verdict of a reasonable jury." [FN48] Consequently, if (as here) the summary judgment movant does not bear the burden of persuasion at trial, "the movant's burden to show presumptive entitlement to summary judgment is satisfied if the movant points to the absence of any factual support for an essential element of plaintiff's claim." [FN49]

FN48. 11 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 56.03[3], at 56-35 (3d ed.2003) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250-252 (1986)); *see also Cerberus Int'l, Ltd. V. Apollo Mgmt., L.P.,* 794 A.2d

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
2003 WL 22290906 (Del.Super.)
(Cite as: 2003 WL 22290906 (Del.Super.))

Page 7

1141, 1148-1149 (Del.2002) (en banc) (adopting *Liberty Lobby'*s "main holding" that the substantive standard of proof required at trial should also be the substantive standard of proof at the summary judgment stage).

FN49. MOORE ET AL., *supra* note 41, § 56.03[5], at 56-39 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-324 (1986)); *see also Burkhart*, 602 A.2d at 59 (stating that the *ratio decidendi* of *Celotex* is persuasive and directly applicable to circumstances where the non-movant has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof).

*APPLYING THAT STANDARD, DEFENDANT IS IN PART ENTITLED TO SUMMARY JUDGMENT*

The first issue to be discussed is Defendant's assertion that Plaintiff lacks standing to contest the reasonableness of Dr. Ufberg's fees and that "[t]he issue of whether a medical expense is reasonable is an issue properly left to resolution by the ... [insurer] and the [medical] provider." [FN50] As noted, Defendant provides no authority for this assertion. Given that fact (and mindful that the facts must be viewed in the light most favorable to Plaintiff at this summary judgment stage), the Court finds that Defendant has effectively abandoned this claim, and the Court cannot therefore evaluate it in any meaningful manner. [FN51]

FN50. Def.'s Mot. ¶ 9.

FN51. *See FleetBoston Fin. Corp. v. Advanta Corp.*, 2003 WL 240885, at *20 (Del. Ch. Jan. 22, 2003) (stating that a court "would be hard pressed to evaluate or respond to an argument that the proponent does not ... itself ... explain or elaborate[ ]").

With regard to Defendant's argument that it should be granted summary judgment because Plaintiff "has proffered no evidence that the amounts charged by ... [Dr. Ufberg] are reasonable[ ][,]" [FN52] Defendant correctly posits that this burden lies with Plaintiff herself. As a preeminent treatise on the subject has recognized, "[a] claimant to medical expense benefits [under a relevant no-fault statute] bears the burden of proof to establish by a preponderance of the evidence that the medical services received were necessary and that the bills or charges for such services were reasonable." [FN53]

FN52. *Id.* ¶ 10.

FN53. 17 LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE § 254:59 (3d ed.2001).

With regard to Defendant's ultimate argument in its Motion for Partial Summary Judgment (as well as its argument relative to Dr. Ufberg contained within its Motion in Limine), this Court cannot now say that Defendant's claim of unreasonableness would result in a directed verdict in its favor, were this case to go to trial. [FN54] In reaching this conclusion, the Court finds that the *Anticaglia* case is useful. And for that reason, Defendant's Motion for Partial Summary Judgment on this point is denied.

FN54. *See* Super. Ct. Civ. R. 50 (stating that where there "is no legally sufficient evidentiary basis for a reasonable jury to find for ... [a] party on ... [an] issue, the Court may determine the issue against the party ...").

As stated, *Anticaglia* recognized that the determination of the "reasonableness" of a medical provider's bills is entirely factual in nature. Of note from that decision (which was tried to a judge as a non-jury appeal from compulsory arbitration) [FN55] is the Court's statement that although "there was no reliable proof by ... [the medical provider

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
2003 WL 22290906 (Del.Super.)
(Cite as: 2003 WL 22290906 (Del.Super.))

who had brought suit to recover unpaid bills] of the ordinary and reasonable charges made by members of [his] profession" and although "[h]e alone testified that ... [his charges] were reasonable[ ][,]" the judge trying the case could not "give it full weight under all of the circumstances [t]here[ ]" despite the admissibility of such evidence. [FN56] The judge did, however, set forth guidelines of the kind of proof that would be reliable in a given case, such proof including:

FN55. *Anticaglia*, 1992 WL 138983 at *1.

FN56. *Id.* at *7.

*6 the ordinary and reasonable charges usually made by members of the same profession of similar standing for services such as those rendered ..., the nature and difficulty of th[ose] [services], the time devoted to it, the amount of services rendered, the number of visits, the inconvenience and expense to which the physician was subjected, and the size of the city or town where the services were rendered. [FN57]

FN57. *Id.* at *6.

Nevertheless, the plaintiff-doctor in *Anticaglia* offered only his "general" testimony that his fees were "reasonable and customary," that the insurance company had "fully allowed" other fees he had charged the patient for whom the insurer subsequently failed to completely reimburse the doctor, and a letter to the insurer claiming that his fees were based on similar charges in "the Delaware Valley Area" when he in fact "did not offer any proof beyond his own ill-defined representations what he meant by this 'region.' " [FN58]

FN58. *Id.* at *5.

Applying those precepts here, this Court finds that Dr. Ufberg's testimony as to the "reasonableness" of his billings is in fact admissible at trial, and, as argued by Plaintiff, is for the trier of fact to evaluate. From Plaintiff's initial proffer of the substance of Dr. Ufberg's anticipated testimony, this Court cannot now say that there exists "no reliable proof" upon which such "reasonableness" could potentially be proved at trial; instead, the jury will be instructed as to the Plaintiff's burden of proof by a preponderance of the evidence. Any claim that Dr. Ufberg's method of determining the "reasonableness" of his billings is not reliable is therefore part and parcel of the fact-finder's determination, and this Court will not now exclude Dr. Ufberg from testifying on that alternative ground. Accordingly, Defendant's Motion for Partial Summary Judgment is denied as to this issue, as is its Motion in Limine on the same.

Summary judgment in Defendant's favor on Plaintiff's "bad faith" allegation, however, is warranted. As stated, *Casson* requires that, in order to maintain a viable "bad faith" cause of action, a plaintiff "must show that the insurer's refusal to honor its contractual obligation was clearly without any reasonable justification." [FN59] In other words, the *Casson* Court held, "at the time the insurer denied liability, there [cannot have] existed a set of facts or circumstances known to the insurer which created a bona fide dispute and therefore a meritorious defense to the insurer's liability." [FN60] As one treatise on the subject has stated, "[i]n drafting the complaint, it will be necessary for the plaintiff to allege facts showing that the defendant engaged in tortious conduct that was sufficiently aggravated in character...." [FN61]

FN59. *Casson*, 455 A.2d at 369.

FN60. *Id.*

FN61. Roderick J. Mortimer, *Cause of Action to Obtain Punitive Damages in Action Against Insurer for Refusal to Settle or Pay Claim*, in 13 CAUSES OF ACTION 729, at 810 (1987); *but cf* . *Tackett v. State Farm Fire and Cas. Ins. Co.*, 653 A.2d 254, 264 (Del.1995) (stating that "claims by insureds concerning coverage disputes are subject to a contractual analysis[ ]").

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
2003 WL 22290906 (Del.Super.)
(Cite as: 2003 WL 22290906 (Del.Super.))

Applying those standards here, the Court finds that this portion of Plaintiff's action potentially would not withstand a motion for directed verdict were this case to proceed to trial. In other words, Plaintiff has failed at this juncture to show there existed no "set of facts or circumstances known to the insurer which created a bona fide dispute and therefore a meritorious defense to the insurer's liability[ ][,]" [FN62] i.e., the trier of fact may determine that Dr. Ufberg's bills were completely "unreasonable." As stated, Plaintiff has taken no discovery in support of its "bad faith" claim; the burden, however, rests on Plaintiff to show that "although she has complied with all policy requirements," Defendant has not paid "under the policy." [FN63] Plaintiff has therefore made nothing more than "[a]n assertion of malice without factual basis...." [FN64] For that reason, Defendant's Motion for Partial Summary Judgment on this point is granted.

FN62. Casson, 455 A.2d at 369.

FN63. DEL. P.J.I. CIV. § 17.10 (2000); see also Tackett v. State Farm Fire & Cas. Ins. Co., 653 A.2d 254, 264 (1995) (stating that the presence of bad faith "is actionable where the insured can show that the insurer's denial of benefits was 'clearly without any reasonable justification[ ]' ") (citing Casson, supra ).

FN64. Id. at 368.

*7 Lastly, Defendant's argument that summary judgment in its favor barring any recovery of attorneys' fees by Plaintiff must also be granted. As the Casson Court noted, "[a]part from authorization in statute or contract, equity is the only basis for awarding attorney's fees to a successful party...." [FN65] Defendant has stated that there is no relevant provision in the policy at issue here that speaks to an award of attorneys' fees (an argument Plaintiff did not rebut), and the Casson Court indicated that "there is no statutory basis for an award of attorney's fees in th[e] [no-fault] case [arena]." [FN66] Accordingly, Defendant's Motion for Partial Summary Judgment on this issue is

granted as well.

FN65. Id. at 370.

FN66. Id.

## CONCLUSION

For all of the above reasons, Defendant's Motion for Partial Summary Judgment is GRANTED IN PART and DENIED IN PART. [FN67] With respect to Defendant's Motion in Limine, that motion is DENIED IN PART and DEFERRED IN PART.

FN67. Given the Court's disposition, it is not necessary that the Court consider the ultimate question posed by Defendant, i.e., whether a medical expense is reasonable "is an issue properly left to resolution by the ... [insurer] and the [medical] provider." Def.'s Mot. ¶ 9. Thus it is unnecessary for the Court to construe the language of Delaware Department of Insurance Auto Bulletin No. 10 (written in response to "a number of automobile insurers ... refusing to pay ... [no-fault] benefits in the amount charged by health care providers as a result of a determination that the amount charged is not 'reasonable' "), attached as Exhibit "E" to Defendant's motion.

IT IS SO ORDERED.

2003 WL 22290906 (Del.Super.)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.