## IN THE UNITED STATES DISTRICT COURT
### FOR THE STATE OF DELAWARE

| | | |
|---|---|---|
| KERRY JOHNSON and<br>SHARON ANDERSON,<br>on behalf of themselves and all<br>others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | C.A. No. 1:06-cv408 (JJF) |
| v. | ) ) | |
| GOVERNMENT EMPLOYEES<br>INSURANCE COMPANY,<br>GEICO CASUALTY COMPANY,<br>GEICO GENERAL INSURANCE<br>COMPANY, and GEICO INDEMNITY<br>COMPANY, | ) ) ) ) ) ) | TRIAL-BY JURY DEMANDED<br><br>CLASS ACTION |
| Defendants. | ) ) | |

### YOU ARE IN POSSESSION OF A DOCUMENT FILED
### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE
### THAT IS CONFIDENTIAL AND FILED UNDER SEAL

If you are not authorized by Court order to view or retrieve this document, read no further than this page.  You should contact the following person(s):

CROSS & SIMON, LLC
Richard H. Cross, Jr. (No. 3576)
Christopher P. Simon (No. 3697)
Kevin S. Mann (No. 4576)
913 North Market Street, 11th Floor
P.O. Box 1380
Wilmington, Delaware  19899-1380
(302) 777-4200

*Attorneys for Plaintiffs*

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL.  REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY COURT ORDER.

Docket No: 48
Date: 2/25/08

## IN THE UNITED STATES DISTRICT COURT
## FOR THE STATE OF DELAWARE

KERRY JOHNSON and )
SHARON ANDERSON, )
on behalf of themselves and all )
others similarly situated, )
)
      Plaintiffs, )    C.A. No. 1:06-cv408 (JJF)
)
v. )
)
GOVERNMENT EMPLOYEES )
INSURANCE COMPANY, )
GEICO CASUALTY COMPANY, )    TRIAL-BY JURY DEMANDED
GEICO GENERAL INSURANCE )
COMPANY, and GEICO INDEMNITY )
COMPANY, )    CLASS ACTION
)
      Defendants. )

## NOTICE OF MOTION

To:    Dawn L. Becker, Esquire        George M. Church, Esquire
       Gary Alderson, Esquire         Laura A. Cellucci, Esquire
       Law Offices Of Dawn L. Becker     Miles & Stockbridge P.C.
       Citizens Bank Center           10 Light Street
       919 Market Street, Suite 725      Baltimore, Maryland  21202
       Wilmington, DE 19801

    **PLEASE TAKE NOTICE** that the undersigned will present the attached Plaintiffs'

Motion to Compel Defendants' Answers to Interrogatories to the Honorable Joseph J. Farnan on

March 7, 2008, at 2:00 p.m. or as soon thereafter as may be heard.

Dated: February 25, 2008      CROSS & SIMON, LLC
       Wilmington, Delaware
                   By:_____
                      Richard H. Cross, Jr. (No. 3576)
                      Christopher P. Simon (No. 3697)
                      Kevin S. Mann (No. 4576)
                      913 North Market Street, 11th Floor
                      P.O. Box 1380
                      Wilmington, Delaware  19899-1380
                      (302) 777-4200

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL.  REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY COURT ORDER.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE STATE OF DELAWARE

| | | |
|---|---|---|
| KERRY JOHNSON and<br>SHARON ANDERSON,<br>on behalf of themselves and all<br>others similarly situated, | )<br>)<br>)<br>)<br>) | |
| Plaintiffs, | )<br>) | C.A. No. 1:06-cv408 (JJF) |
| v. | )<br>) | |
| GOVERNMENT EMPLOYEES<br>INSURANCE COMPANY,<br>GEICO CASUALTY COMPANY,<br>GEICO GENERAL INSURANCE<br>COMPANY, and GEICO INDEMNITY<br>COMPANY, | )<br>)<br>)<br>)<br>)<br>) | TRIAL-BY JURY DEMANDED<br><br>CLASS ACTION |
| Defendants. | )<br>) | |

### PLAINTIFFS' MOTION TO COMPEL DEFENDANTS'
### ANSWERS TO INTERROGATORIES

Plaintiffs Kerry Johnson and Sharon Anderson (collectively, "Plaintiffs"), by and through undersigned counsel, hereby move pursuant to Fed. R. Civ. P. 37 for an order compelling Defendants Government Employees Insurance Company, GEICO Casualty Company, GEICO General Insurance Company, and GEICO Indemnity Company (collectively, "Defendants" or "GEICO") to provide full and complete responses to discovery propounded by Plaintiffs. In support hereof, Plaintiffs respectfully state as follows:

1.    On November 2, 2007, Plaintiffs served Defendants with their First Set of Interrogatories Directed to Defendants. A true and correct copy of Plaintiffs' First Set of Interrogatories Directed to Defendants is attached hereto as Exhibit A. Plaintiffs' interrogatories seek specific information relating to the very specific averments in Plaintiffs' complaint, relating to GEICO's methods, practices and procedures for reducing, denying, and delaying PIP benefits for Defendants' Delaware insureds.

1

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL. REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY COURT ORDER.

2.    On December 12, 2007, Defendants responded to Plaintiffs' written discovery requests, stating numerous objections to, and failing to respond fully, completely and accurately to numerous interrogatories propounded by Plaintiffs.    Additionally, Defendants failed to identify specific documents responsive to Plaintiffs' requests.

3.    In an effort to resolve apparent impasses over discovery, and to determine *how* GEICO organized and stored data relating to PIP claims, Plaintiffs took a 30(b)(6) deposition and learned, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[1]  Plaintiffs learned that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮.  Plaintiffs further learned that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮.

4.    As of the date of this motion, the parties have been unable to resolve this dispute without Court intervention (*See, e.g.,* correspondence regarding the efforts to resolve this dispute attached hereto as Exhibit B), as set forth in the attached certification of Christopher P. Simon, Esquire, made in accordance with Fed. R. Civ. P. 37(a)(2)(B).  (*See* Exhibit C hereto.)

### Relief Requested

5.    Plaintiffs respectfully request that this Court enter an order overruling Defendants' objections to Plaintiffs' interrogatories, and compelling the Defendants to respond fully and completely to interrogatory nos. 6, 7, 10, 12, 14, 16, 17, 20, 21, 22, 23, 24, 25, 29, 30, 31, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, and 44 and awarding Plaintiffs the costs and expenses related to filing and prosecuting this motion.

---

[1] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL.  REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY COURT ORDER.

**Basis for Relief**

6.    Fed. R. Civ. P. 37(a)(2)(B) provides in pertinent part as follows:

> If...a party fails to answer an interrogatory submitted under Rule 33... the discovering party may move for an order compelling an answer. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make the discovery in an effort to secure the information or material without court action.

Fed. R. Civ. P. 37(a)(2)(B).    Fed. R. Civ. P. 37(a)(3) further provides:    "[A]n evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(3).

7.    Discovery in these cases is governed by the Federal Rules of Civil Procedure. With respect to the scope of discovery, Rule 26 provides, in pertinent part, that a party may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. In the Third Circuit, "it is well recognized that the federal rules allow broad and liberal discovery." *Westchester Fire Ins. Co. v. Household Int'l, Inc.*, 2005 WL 23351, *2 (D. Del. 2005) (Exhibit D hereto); *Pacitti v. Macy's,* 193 F.3d 766, 777-78 (3d Cir.1999) (citing *In re Madden*, 151 F.3d 125, 128 (3d Cir.1998)).

8.    In *Crowhorn v. Nationwide Mut. Ins. Co.*, 2002 WL 388115 (Del. Super. Feb. 28, 2002) (Exhibit E hereto), the Superior Court for the State of Delaware considered a motion to compel filed by plaintiffs in a case very similar to the case at bar. The Superior Court in *Crowhorn* noted that the Delaware Supreme Court's decision in *Benning v. Wit Capital Group*, 2001 WL 1388544 (Del. Supr. Nov. 1, 2001) (Exhibit F hereto) mandated discovery on these issues. *See, Crowhorn*, 2002 WL 388115, *1. Under *Benning*, the Court must "'allow the parties to review all documents that it believes would bear on the viability of the class' and permit 'the parties to conduct sufficient discovery before it determines whether or not a viable

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL. REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY COURT ORDER.

class exists.' In addition, discovery should also encompass 'the question of whether or not a class action remains the superior method for the fair and efficient and adjudication of this litigation.'" *Crowhorn*, 2002 WL 388115, *1 (citing *Benning*, 2001 WL 1388544 at *1-2). For these reasons, Plaintiffs believe they are entitled to discovery on issues relating to class certification, including whether a viable class exists and whether a class action will be a fair and efficient adjudication of the allegations made in this litigation.

9.      Broad discovery is warranted in this case, including discovery on any facts that might serve as a basis for certifying a class in this case. Even without certification of a class, however, Plaintiffs are entitled to discovery on the Defendants' pattern and practice of analyzing, paying or denying PIP claims, which resulted in the denial of Plaintiffs' contractual and lawful benefits. Plaintiffs have repeatedly asked for information related to GEICO's review, analysis, and treatment of PIP claims submitted by their Delaware insureds because they believe such requests are relevant to their direct causes of action. Defendants have steadfastly refused to respond.

WHEREFORE, for the reasons set forth herein, Plaintiffs respectfully request that the Court enter an order compelling Defendants to fully and accurately respond to written discovery requests, and awarding Plaintiffs their fees and costs for filing and prosecuting this motion.

Dated: February 25, 2008       CROSS & SIMON, LLC
       Wilmington, Delaware

                                By: _____
                                    Richard H. Cross, Jr. (No. 3576)
                                    Christopher P. Simon (No. 3697)
                                    Kevin S. Mann (No. 4576)
                                    913 North Market Street, 11th Floor
                                    P.O. Box 1380
                                    Wilmington, Delaware  19899-1380
                                    (302) 777-4200

                                *Attorneys for Plaintiffs*

4

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL. REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY COURT ORDER.

# Exhibit A

## IN THE UNITED STATES DISTRICT COURT
### FOR THE STATE OF DELAWARE

| | | |
|---|---|---|
| KERRY JOHNSON and<br>SHARON ANDERSON,<br>on behalf of themselves and all<br>others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 1:06-cv408 (JJF) |
| v. | ) ) ) | |
| GOVERNMENT EMPLOYEES<br>INSURANCE COMPANY,<br>GEICO CASUALTY COMPANY,<br>GEICO GENERAL INSURANCE<br>COMPANY, and GEICO INDEMNITY<br>COMPANY, | ) ) ) ) ) ) | NON-ARBITRATION<br><br>TRIAL-BY JURY DEMANDED<br><br>CLASS ACTION |
| Defendants. | ) ) | |

## PLAINTIFFS' FIRST SET OF INTERROGATORIES
### DIRECTED TO DEFENDANTS

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiffs Kerry Johnson and

Sharon Anderson, on behalf of themselves and all others similarly situated, request that

Defendants Government Employees Insurance Company, GEICO Casualty Company, GEICO

General Insurance Company and GEICO Indemnity Company (hereinafter collectively,

"GEICO"), respond in writing and, where required, under oath to this First Set of Interrogatories

(the "Discovery Request") within thirty (30) days to the offices of Cross & Simon, LLC, 913 N.

Market Street, 11th Floor, Wilmington, Delaware 19801.

## DEFINITIONS

1.   The terms "you," "your," "Defendants" or "GEICO" means Government Employees Insurance Company, GEICO Casualty Company, GEICO General Insurance Company, and/or GEICO Indemnity Company, and their employees, directors, officers, partners, managing directors, members, managing members, affiliates, subsidiaries, attorneys, accountants, agents and any other persons or entities acting for, or on its behalf.

2.   The term "Plaintiffs" means Kerry Johnson and Sharon Anderson, on behalf of themselves and all others similarly situated, their attorneys, accountants, agents and any other persons or entities acting on their behalf.

3.   The term "Insured" or "Insureds" means any person residing in the State of Delaware who is a party to an automobile insurance and/or related agreement with one or more of the Defendants, including, but not limited to Plaintiffs, from June 26, 2001 to the present, and anyone acting on their behalf.

4.   The term "person" means not only natural persons, but also, without limitation, firms, proprietorships, corporations, partnerships, associations, unincorporated associations, and governmental bodies, agencies, and officials and every other type of organization or entity.

5.   The term "document" means the original and all drafts and copies (including copies bearing notations or marks not found on the original) of any writings or printed, graphic or electronically recorded materials of any nature whatsoever, including but not limited to, correspondence, records, reports, memoranda, notes, calendar or diary entries, letters, facsimile transmissions, envelopes, e-mails, telegrams, telexes, telephone bills, other written communications, messages (including, but not limited to, reports of telephone conversations and conferences), studies, summaries, tabulations, analyses, printed matter, minutes, photographs,

2

film, tapes (electronic, audio and visual), computer diskettes, data files, financial statements, contracts, agreements, other legal documents and instruments, journals, ledgers, other accounting records, canceled or returned checks, manuals, orders, statements, bills, receipts, vouchers, notebooks, data sheets and records kept by any other means. In all cases where originals and/or non-identical copies are not available, the term "document" also means identical copies of original documents and copies of non-identical copies.

This definition includes all documents in your actual or constructive possession, custody or control, or in the possession, custody or control of your employer, attorneys, or agents. If any document was, but is no longer, in your possession or subject to your control or was known to you, but is no longer in existence, state whether it is:

(a)    missing or lost;

(b)    has been destroyed;

(c)    has been transferred, voluntarily or involuntarily, to others; or

(d)    otherwise disposed of and, in such instance, explain in detail the circumstances surrounding the authorization for such disposition and state the date or approximate date thereof.

6.    The term "identify" means, when used in reference to:

(a)    a document, to state separately (i) its description (e.g., letter, report, memorandum, etc.), (ii) its date, (iii) its subject matter, (iv) the identity of each author or signer, (v) its present location and the identity of its custodian, (vi) the number of pages, and (vii) if any such document is no longer in your possession or subject to your control, to state what disposition was made of it and the date of the disposition.

3

(b)      a natural person or persons, to state separately (i) the full name of each such person, (ii) his or her present, or last known, business address, and (iii) his or her present, or last known, residential address;

(c)      an organization or entity other than a natural person (e.g., a company, corporation, firm, association, or partnership), to state separately (i) the full name and type of organization or entity, (ii) the date and state of organization or incorporation, (iii) the address of each of its principal places of business, and (iv) the nature of the business conducted; and

(d)      a conversation, to (i) provide the date of the conversation, (ii) provide the location, (iii) identify the participants, (iv) state whether the conversation was by telephone, in person, or by other means, and (v) state the details of the conversation.

7.      The term "Complaint" means Plaintiffs' First Amended Class Action Complaint, dated August 24, 2006, and any previously or subsequently filed complaint filed in the above-captioned class action proceeding.

8.      The term "Answer" means any of Defendants' pleadings responsive to the Complaint.

9.      The term "PIP" means Personal Injury Protection and any such policy of insurance provided by one or more of the Defendants to an Insured of the type described and governed by Chapter 21 of Title 21 of the State of Delaware Code (21 Del. C. § 2118B).

10.      The term "IME" means a PIP-related medical evaluation of an Insured ordered by, or conducted by one or more of the Defendants.

11.      The term "Treatment Provider" means any doctor, physician, therapist, group of physicians or associated medical, therapy or treatment practice including but not limited to any

4

chiropractor, osteopath, nurse or other health care person that provided treatment to any Insured in connection with a PIP-related claim, or anyone acting on their behalf.

12.   The term "IME Provider" means any doctor, physician, therapist, group of physicians or associated medical, therapy or treatment practice retained by or contracted by one or more of the Defendants at any time for the purpose of conducting PIP-related insurance medical evaluations, including but not limited to any chiropractor, osteopath, nurse or other health care person engaged by Defendants to assess Plaintiffs' condition, injuries, complaints and/or medical records.

13.   The term "medical provider" means any doctor, physician, therapist, osteopath, chiropractor, or medical-related, therapy or treatment practice, or group thereof, whatever it might be called, who or which provides medical service, treatment or medical procedure.

14.   The term "medical procedure" means any procedure or treatment recommended, ordered, or directed by any medical provider.

## INSTRUCTIONS

1.   In construing this Discovery Request:  (a) the singular shall include the plural and the plural shall include the singular and (b) the words "and" and "or" shall be read either disjunctively or conjunctively so as to bring within the scope of this Discovery Request all information that might otherwise be construed to be outside its scope.

2.   With respect to any documents identified in your responses herein:

a.   Identify each such document;

b.   Describe each such document by type or title;

c.   State the date of each such document;

d.   Identify all authors and recipients of each such document;

5

e.    Describe in detail the subject matter of each such document; and

f.    Identify any precise privilege or protection you claim for each such document.

3.    If an answer or any information is withheld on the ground of any privilege or immunity, state the following:

(a)    The nature of the privilege or immunity being claimed;

(b)    The type of document or the nature of the information;

(c)    The general subject matter of the document or the information;

(d)    The identity of each person who created, sent, or received (i) the original of the document or any copy thereof, or (ii) the information;

(e)    The date(s) on which the document or information was created, sent, and/or received; and

(f)    A description of the document or information sufficient to identify it.

4.    In responding to these Discovery Requests, respondent shall identify the particular Defendant to which the response applies or relates.

5.    This Discovery Requests are continuing in nature and you are required to promptly supplement your responses to this Discovery Request to the extent you locate additional documents or acquire additional information, or to the extent subsequent amended pleadings modify or raise new allegations and claims.

6.    Plaintiffs reserve the right to amend, supplement, and/or modify these Discovery Requests.

### INTERROGATORIES

1.    Identify all persons having knowledge of facts relevant to the subject matter of the Complaint and the Answer, or facts contained in or relevant to Defendants' Notice of Removal

6

and responses to Plaintiffs' First Set of Interrogatories Directed to Defendants and First Set of Document Requests Directed to Defendants, and describe the nature of the knowledge of each person.

      **ANSWER:**

2.     Identify and describe all communications of any kind between one or more of the Defendants and Kerry Johnson or his attorneys related to the review, analysis, payment or treatment of PIP claims arising from his July 16, 2004 automobile accident, including the date Mr. Johnson's PIP claims were submitted to any Defendant and the date any Defendant paid those claims, in full or in part. Identify all documents that reflect, refer or relate to your answer.

      **ANSWER:**

3.     Identify and describe all communications of any kind between one or more of the Defendants and Sharon Anderson or her attorneys related to the review, analysis, payment or treatment of PIP claims arising from her August 3, 2004 automobile accident, including the date Ms. Anderson's PIP claims were submitted to any Defendant and the date any Defendant paid those claims, in full or in part. Identify all documents that reflect, refer or relate to your answer.

      **ANSWER:**

7

4.    Identify and describe all communications of any kind between one or more of the Defendants and all Treatment Providers for Kerry Johnson.  Identify all documents that reflect, refer or relate to your answer.

**ANSWER:**

5.    Identify and describe all communications of any kind between one or more of the Defendants and all Treatment Providers for Sharon Anderson.  Identify all documents that reflect, refer or relate to your answer.

**ANSWER:**

6.    Identify all facts and circumstances serving as your basis for payment, in full or in part, or your denial of payment, of any and all medical bills submitted under PIP by Kerry Johnson.  Identify all documents that reflect, refer or relate to your answer.

**ANSWER:**

7.    Identify all facts and circumstances serving as your basis for payment, in full or in part, or your denial of payment, of any and all medical bills submitted under PIP by Sharon Anderson.  Identify all documents that reflect, refer or relate to your answer.

**ANSWER:**

8

8.    Identify all persons including contact information you intend to call as fact witnesses at the trial of this action and state the subject matter on which such witness is expected to testify. Identify all documents that reflect, refer or relate to your answer.

ANSWER:

9.    Identify each person you have retained or specifically employed to provide expert testimony in this action or whom you intend to call as an expert witness at the trial of this matter and state the subject matter on which such expert is expected to testify, the substance of the facts and opinions to which such expert is expected to testify and a summary of the grounds for each opinion. Identify all documents that reflect, refer or relate to your answer.

ANSWER:

10.    Identify each guideline, method, rule, instruction, standard, policy, practice, system, or procedure you used from June 26, 2001 to the present to determine whether a charge for medical services submitted under PIP exceeds an amount which would appear reasonable when compared to the charges of other medical providers in an Insured's same geographic area, including a list of the other medical providers and what their charges are for specific services. Identify all documents that reflect, refer or relate to your answer.

ANSWER:

9

11.     Identify the date when each Defendant began using any guideline, method, rule, instruction, standard, policy, practice, system, or procedure to determine whether a charge for medical services under PIP exceeds an amount which would appear reasonable when compared to the charges of other medical providers in an Insured's same geographic area. Identify all documents that reflect, refer or relate to your answer.

**ANSWER:**

12.     Identify each guideline, method, rule, instruction, standard, policy, practice, system, or procedure you used from June 26, 2001 to the present to determine whether a medical treatment billed under PIP exceeds the level of service required by the diagnosis given or the condition for which an Insured is being treated, including a list of the other medical providers and what their charges are for specific levels of services. Identify all documents that reflect, refer or relate to your answer.

**ANSWER:**

13.     Identify the date when each Defendant began using any guideline, method, rule, instruction, standard, policy, practice, system, or procedure to determine whether a medical treatment billed under PIP exceeds the level of service required by the diagnosis given or the condition for which an Insured is being treated. Identify all documents that reflect, refer or relate to your answer.

**ANSWER:**

10

14.    Identify all persons, agencies or outside sources used by, or relied upon, by any Defendant from June 26, 2001 to the present for obtaining or determining or creating a guideline, method, rule, instruction, standard, policy, practice, system, procedure or data to determine whether a charge for medical services billed under PIP exceeds an amount which would appear reasonable when compared to the charges of other providers in an Insured's same geographic area. Identify all documents that reflect, refer or relate to your answer.

**ANSWER:**

15.    Identify and describe when and how often any guideline, method, rule, instruction, standard, policy, practice, system, or procedure for determining whether a charge for medical treatment billed under PIP exceeds an amount which would appear reasonable when compared to the charges of other providers in an Insured's same geographic area is updated. Identify all documents that reflect, refer or relate to your answer.

**ANSWER:**

16.    Identify and provide any computer or electronic hardware, software or program that you used from June 26, 2001 to the present for determining whether a charge for medical treatment billed under PIP exceeds an amount which would appear reasonable when compared to the charges of other providers in an Insured's same geographic area. Identify all documents that reflect, refer or relate to your answer.

**ANSWER:**

11

17.    Identify and describe all computer equipment you used from June 26, 2001 to the present to review, analyze or consider PIP claims, including but not limited to:  hardware and/or peripherals attached to a computer such as computer cases, server, desktop, tower, portable/batteries, all-in-one.    Include all users for the period June 26, 2001 to the present. Identify all documents that reflect, refer or relate to your answer.

**ANSWER:**


18.    Identify and describe any and all documents that were present in Kerry Johnson's PIP file including any file or part of a file that existed on a computer, but were removed, altered, or destroyed in any way and identify and describe your and your employees' knowledge thereof. Identify all documents that reflect, refer or relate to your answer.

**ANSWER:**


19.    Identify and describe any and all documents that were present in Sharon Anderson's PIP file including any file or part of a file that existed on a computer, but were removed, altered, or destroyed in any way and identify and describe your and your employees' knowledge thereof.  Identify all documents that reflect, refer or relate to your answer.

**ANSWER:**

12

20.    Identify all Defendant and non-Defendant parties, persons, agencies or other outside sources used by, or relied upon, by any Defendant from June 26, 2001 to the present for obtaining any guideline, method, rule, instruction, standard, policy, practice, system, procedure or data to determine whether a medical procedure billed and submitted under PIP exceeds the level of service required by the diagnosis given or the condition for which an Insured is being treated. Identify all documents that reflect, refer or relate to your answer.

**ANSWER:**


21.    Identify and describe when and how often any guideline, method, rule, instruction, standard, policy, practice, system, or procedure for determining whether a medical procedure billed and submitted under PIP exceeds the level of service required by the diagnosis given or the condition for which an Insured is being treated is updated. Identify all documents that reflect, refer or relate to your answer.

**ANSWER:**


22.    Identify and provide any computer or electronic hardware, software or program that you have used from June 26, 2001 to the present for determining whether a medical procedure billed and submitted under PIP exceeds the level of service required by the diagnosis given or the condition for which an Insured is being treated. Identify all documents that reflect, refer or relate to your answer.

**ANSWER:**

23.    Identify any written or recorded guideline, method, rule, instruction, standard, policy, practice, system, procedure, training manual, or other material drafted, adopted, endorsed, used, relied upon or created by one or more of the Defendants from June 26, 2001 to the present for analyzing and determining **whether** a claim arising under or related to PIP is reasonable or necessary as set forth in 21 Del. C. § 2118B.  Identify all documents that reflect, refer or relate to your answer.

**ANSWER:**

24.    Identify any written or recorded guideline, method, rule, instruction, standard, policy, practice, system, procedure, training manual, or other material drafted, adopted, endorsed, used, relied upon or created by one or more of the Defendants from June 26, 2001 to the present for analyzing and determining **when** a claim arising under or related to PIP is paid or reimbursed, in full or in part.  Identify all documents that reflect, refer or relate to your answer.

**ANSWER:**

14

25.    Identify and describe any incentives, employee recognition, bonuses, performance goals and objectives or challenges, whatever it may be called, for each and every person who in any way touched, handled, processed, reviewed, or supervised Kerry Johnson's or Sharon Anderson's files with one or more Defendants. These goals may take the form of statistical performance and evaluation of claims superintendents. Identify all documents that reflect, refer or relate to your answer.

**ANSWER:**

26.    Identify any person or agent of the Defendants responsible for the decision to deny payment in full of an Insured's medical bills submitted under PIP or deny PIP claims, form June 26, 2001 to the present, based on the theory that:

a) a medical charge for services submitted under PIP exceeds an amount which would appear reasonable when compared to the charges of other providers in the Insured's same geographic area; and /or

b) a medical procedure billed and submitted under PIP exceeds the level of service required by the diagnosis given or the condition for which an Insured is being treated.

Identify all documents that reflect, refer or relate to your answer.

**ANSWER:**

15

27.    Identify each employee that worked on or supervised in any way Kerry Johnson's PIP claims file with a breakdown of job title and responsibility.    Identify all documents that reflect, refer or relate to your answer.

ANSWER:


28.    Identify each employee that worked on or supervised in any way Sharon Anderson's PIP claims file with a breakdown of job title and responsibility.    Identify all documents that reflect, refer or relate to your answer.    Identify all documents that reflect, refer or relate to your answer.

ANSWER:


29.    Identify any statistical goals and any cost containment policies or procedures applied by Defendants' PIP section, unit, office, and regional office that handled or supervised in any way Kerry Johnson's PIP claims.    Identify all documents that reflect, refer or relate to your answer.

ANSWER:


30.    Identify any statistical goals and any cost containment policies or procedures applied by Defendants' PIP section, unit, office, and regional office that handled or supervised in

any way Sharon Anderson's PIP claims. Identify all documents that reflect, refer or relate to your answer.

**ANSWER:**

31. Identify any statistical goals and any cost containment policies or procedures applied by Defendants' PIP section, unit, office, and/or regional office that handled or supervised in any way any Insured's PIP claims. Identify all documents that reflect, refer or relate to your answer. Identify all documents that reflect, refer or relate to your answer.

**ANSWER:**

32. Identify any and all employees who were reprimanded or disciplined in any way, or terminated, regarding the review, analysis and/or processing of Kerry Johnson's PIP claims. Identify all documents that reflect, refer or relate to your answer.

**ANSWER:**

33. Identify any and all employees who were reprimanded or disciplined in any way, or terminated, regarding the review, analysis and/or processing of Sharon Anderson's PIP claims. Identify all documents that reflect, refer or relate to your answer.

**ANSWER:**

34.    Identify all judgments or orders entered by a Court, administrative agency or other governmental or judicial entity in the State of Delaware responsive to a PIP claim submitted by or on behalf of an Insured to one or more of the Defendants alleging an improper use of denial justifications including:

a)    whether a PIP medical charge for services exceeds an amount which would appear reasonable when compared to the charges of other providers in an Insured's same geographic area;

b)    whether a procedure billed under PIP exceeds the level of service required by the diagnosis given or the condition for which an Insured is being treated.

Identify all documents that reflect, refer or relate to your answer.

**ANSWER:**

35.    Identify all Insureds or Treatment Providers who submitted medical bills or claims to Defendants from June 26, 2001 to the present. Identify all documents that reflect, refer or relate to your answer.

**ANSWER:**

36.    For any Insured and/or Treatment Provider identified in response to Interrogatory No. 35, identify all instances where a bill or claim was not paid in full by Defendants because Defendants stated that the bills were not reasonable when compared to the charges of other

18

providers in the claimant  Insureds' same geographic area.  Identify all documents that reflect, refer or relate to your answer.

    **ANSWER:**


    37.    For any Insured and/or Treatment Provider identified in response to Interrogatory No. 35, identify all instances where a bill or claim was not paid in full by Defendants because the Defendants stated that the bills exceed the level of service required by the diagnosis given or the condition for which the claimant Insured was or is being treated.  Identify all documents that reflect, refer or relate to your answer.

    **ANSWER:**


    38.    Identify any instance from June 26, 2001 to the present when you determined that a medical treatment billed and submitted under PIP by any Insured exceeded the level of service required by the diagnosis given or the condition for which an Insured was or is being treated, prior to the time you conducted an IME of the Insured whose claim you determined exceeded the level of service required by the diagnosis given or the condition for which an Insured was or is being treated.  Identify all documents that reflect, refer or relate to your answer.

    **ANSWER:**

39.    For the period between June 26, 2001 to present, identify the dates Insureds submitted PIP claims to one or more of the Defendants, and for each claim, identify the date the claim was paid or reimbursed, in full or in part, by one or more of the Defendants.  Identify all documents that reflect, refer or relate to your answer.

ANSWER:

40.    For any instance where a PIP bill submitted by an Insured was not paid in full by Defendants, identify whether you used a guideline, method, rule, instruction, standard, policy, practice, system, or procedure for making such determination different than the guideline, method, rule, instruction, standard, policy, practice, system, or procedure used for determining whether claims submitted by Sharon Anderson and Kerry Johnson would be paid in full, or in part.  Identify all documents that reflect, refer or relate to your answer.

ANSWER:

41.    Identify the Defendant(s) which is a party to the insurance policy or agreement with Kerry Johnson and/or Sharon Anderson.  Identify all documents that reflect, refer or relate to your answer.  Identify all documents that reflect, refer or relate to your answer.

ANSWER:

42.    For any medical bills submitted by a Treatment Provider or an Insured from June 26, 2001 to present, identify amounts paid, in full or in part, by Defendants.    Identify all documents that reflect, refer or relate to your answer.

ANSWER:


43.    Identify all revenues the Defendants collected, derived or otherwise earned from premiums paid by Insureds for PIP from June 26, 2001 to the present.    Identify all documents that reflect, refer or relate to your answer.

ANSWER:


44.    Identify all expenditures of the Defendants for marketing, advertising or selling policies issued by Defendants in Delaware, including policies for PIP, and for any such expenditures, whether the sources of such expenditures included premiums collected from or paid by Insureds for PIP from June 26, 2001 to the present.    Identify all documents that reflect, refer or relate to your answer.

ANSWER:


45.    Identify all persons supplying information used to answer these interrogatories.

ANSWER:

Dated: November 2, 2007
  Wilmington, Delaware

CROSS & SIMON, LLC

By: _____

  Richard H. Cross, Jr. (No. 3576)
  Christopher P. Simon (No. 3697)
  Kevin S. Mann (No. 4576)
  913 North Market Street, 11th Floor
  P.O. Box 1380
  Wilmington, Delaware 19899-1380
  (302) 777-4200

  *Attorneys for Plaintiffs*

# Exhibit B

CROSS & SIMON, LLC
ATTORNEYS AT LAW
913 NORTH MARKET STREET
11TH FLOOR
WILMINGTON, DELAWARE 19801
302-777-4200 / 302-777-4224 (FAX)
www.crosslaw.com

Christopher P. Simon
csimon@crosslaw.com

MAILING ADDRESS:
P.O. BOX 1380
WILMINGTON, DE 19899-1380

SUSSEX COUNTY OFFICE:
17577 NASSAU COMMONS BLVD.
SUITE 102
LEWES, DE 19958
(302) 644-4269
(302) 258-0815 (FAX)

January 24, 2008

**BY ELECTRONIC MAIL,**
**& U.S. MAIL**

George M. Church, Esquire
Miles & Stockbridge P.C.
10 Light Street
Baltimore, Maryland 21202

  Re: *Johnson, et al. v. Government Employees Insurance Co., et al.*
    *D. Del. C.A. No. 1:06-cv-408*

Dear George:

   After further review of Defendants' Answers to Interrogatories and Defendants' Response to Plaintiffs' First Set of Document Requests dated December 12, 2007, we believe most responses are inadequate, and most objections unsupportable. Most of the 6,157 documents that Defendants produced are multiple copies of the same employee training manual. Missing from Defendants' production are documents (including correspondence) relating to the Defendants' policies for analyzing, reviewing, handling and treatment of PIP claims. For example, Defendants identify their use of ███████, and ██████████████, databases to review and process PIP claims, however Defendants fail to produce or identify a single document that explains, describes, documents or identifies how and why these programs are implemented or used. Defendants also failed to produce any materials which describe or identify advertising or sales of their policies to their Delaware insureds. We find the absence of copies of any e-mail correspondence between Defendants' employees troubling.

   Specific objections to Defendants' responses are set forth as follows:

<u>**Document Requests**</u>

   <u>Request for Production Nos. 12 and 13.</u>  Plaintiffs request any and all documents between Defendants and any other expert or other persons engaged by Defendants to assess the reasonableness or necessity of Kerry Johnson's and Sharon Anderson's PIP medical bills and medical treatment. Defendants object to this request to the extent they might have consulted with experts but have not yet identified which experts they might call to testify at trial. Plaintiffs

CROSS & SIMON, LLC
January 24, 2008
Page 2 of 7

are not seeking information on Rule 26 consulting experts retained in connection with, or anticipation of any litigation. Plaintiffs are seeking information and documents relating to the Defendants' actions to assess and formulate an opinion whether PIP medical bills and medical treatment were reasonable and necessary, at the time Defendants made decisions to approve or deny benefits to Plaintiffs and all their Delaware insureds. If Defendants were not relying on a person with expertise in these areas to make such a determination or assessment, and Defendants conducted no such assessment at the time they made their decisions to deny benefits, then Defendants should confirm that immediately. If Defendants did, in fact assess the reasonableness and necessity of PIP medical bills and treatment, then we expect all such information and documents (including, not limited to correspondence, reports, memoranda, notes) that support that opinion to be produced immediately.

Request Nos. 14 and 16. Plaintiffs seek all information relating to the PIP claims of Kerry Johnson and Sharon Anderson. As set forth herein, Defendants have produced nothing which demonstrates or documents any application or use of the ▓▓▓▓▓▓. and ▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓ software/database to review and process Kerry Johnson's and Sharon Anderson's PIP claims. Any and all documents, in electronic format or otherwise, relating to Defendants' use of these databases should be turned over immediately.

Request Nos. 19, 20, 21, 22 and 25. Plaintiffs seek any and all documents in any form relating to any performance goals, objectives or challenges, whatever it may be called, for each and every person or business unit who in any way touched, handled, processed, reviewed, or supervised Kerry Johnson's and Sharon Anderson's files with any Defendant. These goals may take the form of statistical performance and/or evaluation of claims superintendents. Defendants state they are not in possession of any such documents. We note, for example, t▓▓▓▓▓▓▓▓▓▓▓▓, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Defendants should immediately produce any and all documents, in electronic format or otherwise, that relate to any of Defendants' use, review, or analysis of performance objectives, guidelines or goals, including but not limited to their choice of definitions for implementation of ▓▓▓▓for handling PIP claims, and any and all documents that relate to, or serve as the bases for, Defendants' decision to use these databases.

Request No. 40. Plaintiffs seek any and all internal memoranda or correspondence generated by any Defendant or any of its employees, agents or representatives discussing, commenting on, addressing or instructing on any policy of not paying PIP medical bills in part or full. Defendants state that they do not have a policy of not paying PIP medical bills in full. Rather, Defendants state that Defendants' policy is to pay reasonable bills for medically necessary, causally related medical treatment. We hereby request that Defendants produce all internal memoranda or correspondence discussing, commenting on, addressing or instructing on Defendants' policy for paying PIP medical bills. This would include, but not be limited to, any correspondence (including e-mails) by Defendants' management and employees regarding their

CROSS & SIMON, LLC
January 24, 2008
Page 3 of 7

use of ████████, or ███████████████ software, cost-containment measures and other issues relating to Defendants' analysis and management of PIP claims.

Request No. 41.  Please let us know when ████████, and ███████████████ message modifiers will be produced.

Request No. 42.  Plaintiffs seek a list of all hospitals and other medical providers in the same area as the Treatment Providers, used for determining the "reasonable" rate as outlined by each Defendant's internal policies, and used to calculate the rate paid by the Defendants on each explanation of benefit form sent to an insured. Defendants objected to this request because, they say, it is vague, ambiguous and unclear. We believe the request is clear. When the Defendants make a statement that a "fee charged by the treatment provider exceeds an amount which would appear reasonable when compared to charges of other providers in the same geographic area" the Defendant must have some basis for that statement. Defendants expressly represent that they have compared charges to other providers in the same geographic area, however, Defendants state they are not in possession of any document that shows or reflects such comparison. How is that information stored and reviewed? If Defendants really have no such information, we will presume that Defendants' statement on each of their explanation of benefits is false and without basis in fact.

Request No. 44.  Plaintiffs seek documents and information that purport to measure performance of an employee, vendor, branch office, or unit with respect to cost containment or medical cost management procedures. Defendants object to this request as ambiguous and unclear, and then state that no such documents exist. We believe this request is clear. In response to interrogatory no. 31, in which Plaintiffs ask Defendants to "[i]dentify any statistical goals and any cost containment policies or procedures applied by Defendants' PIP section, unit, office, and/or regional office that handled or supervised in any way any Insured's PIP claims," Defendants state that they have no statistical goals, however, with regard to cost containment policies or procedures, Defendants identify their use of ████████, and ███████████████ databases. Defendants use ████████ and ███████████████ databases to manage their PIP claims and to implement cost management procedures in this area. Defendants should immediately produce all documents and information responsive to this request.

Request No. 45.  Plaintiffs seek any and all monthly reports generated by all outside vendors that state the dollar amount of PIP medical examinations they conduct or medical claims they reviewed for Defendants from June 26, 2001 to the present. Defendants state that they have no such documents. Plaintiffs respectfully request that Defendants turn over any documents by which Defendants review and analyze the services provided, directly or indirectly, by ████████ and ███████████████.

Request No. 47.  Plaintiffs seek any and all documents used or generated by any Defendant to determine what constitutes a "reasonable" charge for medical services in New Castle County, Delaware. In their explanations of benefits, Defendants repeatedly make a statement that a "fee charged by the treatment provider exceeds an amount which would appear

CROSS & SIMON, LLC
January 24, 2008
Page 4 of 7

reasonable when compared to charges of other providers in the same geographic area."
Defendants state they, and their agents, have no documents to determine what constitutes a
"reasonable" charge for services in New Castle County, Delaware. If Defendants have no such
information, we will presume that Defendants' statement on each of their explanation of benefits
is false and without basis in fact.

Request No. 48. Plaintiffs seek any and all documents used or generated by any
Defendant to determine what constitutes a "reasonable" charge for a PIP claim. Again, if
Defendants have not used such information, we will presume that Defendants' statement on each
of their explanation of benefits is false and without basis in fact.

Request No. 49. Plaintiffs seek any and all documents used or generated by any
Defendant to determine whether a medical treatment billed under PIP exceeds the level of
service required by the diagnosis given or the condition for which an Insured is being treated,
including any documents listing other medical providers, what their charges are for specific
levels of services, and criteria for making such a determination. Defendants refer generally to
their use of the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮ Please provide a more specific response, and produce any documents that
explain or relate to the Defendants' use of the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Request No. 52. Please advise us on the status of Defendants' search for documents
responsive to this request.

Request No. 54. As set forth above, the parties have agreed to conduct a deposition of a
representative of the Defendants to determine how the Defendants organize and store
information on issues relating to this case, and how best this information can be produced. We
understand that information set forth in the Notice of Removal was obtained by ▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ We believe we are entitled to ▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Request Nos. 55. As set forth above, Plaintiffs believe information on Defendants'
Delaware insureds be produced. Plaintiffs believe broad discovery is warranted in this case,
including discovery relating to whether this case should be certified as a class action.

Request Nos. 56. We believe the Defendants' revenues and profits earned from
managing PIP claims is relevant in this case. Defendants are in the business of collecting
premiums and managing claims; we expect that Defendants regularly review and analyze this
information. Repeated mention of cost-management or cost-containment is made in connection
with Defendants' use of ▮▮▮▮▮▮▮▮ and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ We request this information be
produced immediately.

CROSS & SIMON, LLC
January 24, 2008
Page 5 of 7

Request No. 58.  Plaintiffs believe any report generated by Defendants which evidence the handling of PIP claims is likely lead to the discovery of relevant or admissible evidence, and Plaintiffs object to Defendants' objection on this point.  Plaintiffs request that this information be produced immediately.

Request No. 60.  Plaintiffs seek any documents that evidence a review or analysis by Defendants of any cost-containment or cost-management system employed by Defendants to manage PIP claims and expenses.  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓  We request that documents responsive to this request be produced immediately.

Request No. 62.  Plaintiffs seek any documents that evidence the existence of any compensation program directly tied to the analysis and handling of PIP claims.  Defendants state that this information is not likely to lead to the discovery of admissible or relevant evidence.  Plaintiffs do not deny that such documents exist.  Plaintiffs maintain that any incentive or compensation program linked to the handling and treatment of PIP claims is relevant to this case, and Plaintiff demand that Defendant produce this information immediately.

### Interrogatories

Interrogatory Nos. 6 and 7.  Plaintiffs request that Defendants identify all facts and circumstances serving as Defendants' basis for Defendants' payment, in full or in part, of any and all medical bills submitted under PIP by Kerry Johnson and Sharon Anderson.  Defendants respond that they produced all explanations of benefits detailing those payments with Defendants' Rule 26(a)(1) Disclosures.  Defendants produced documentation stating in conclusory fashion why benefits were paid in full or in part (i.e., "the fee charged by the treatment provider exceeds an amount which would appear reasonable when compared to charges of other providers in the same geographic area."), however Defendants have not identified any facts and circumstances serving as a basis for those conclusions.  Screen notes on the files produced make no mention of such consideration.  Defendants refer generally to the use of ▓▓▓▓▓▓  and ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓but provide no further explanation.  Plaintiffs request that Defendants supplement their response and provide more detail on how they reached the conclusions set forth on the explanations of benefits.

Interrogatory No. 10.  As set forth fully herein, Plaintiffs request that Defendants supplement their response to interrogatory no. 10, and provide more detail on Defendants' use of, and reliance on ▓▓▓▓▓▓ and ▓▓▓▓▓▓▓▓▓▓▓▓.

Interrogatory No. 12.  As set forth fully herein, Plaintiffs request that Defendants supplement their response to interrogatory no. 11, and provide more detail on Defendants' use of, and reliance on ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓  Plaintiffs further request that Defendants identify each instance where Defendants used American Medical Association criteria to make a determination that a medical treatment billed under PIP exceeded the level of service required by the diagnosis given or the condition for which an Insured was being treated,

CROSS & SIMON, LLC
January 24, 2008
Page 6 of 7

and identify any documents, notes, letters, correspondence memorializing and recording such use and reliance.

Interrogatory No. 17. Plaintiffs request that Defendants identify the electronic system or hardware that processes ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and that Defendants identify the electronic system that runs the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ as well as any other system that manages PIP claims. While Defendants have identified their e-mail system in their Proposed Plan for Discovery of Electronic Documents, we note that Defendants have not produced a single piece of e-mail correspondence in response to Plaintiffs discovery.

Interrogatory Nos. 22, 23, 24, 35, 36, 37, 38, 39, 40, 41 and 42. We previously objected to Defendants' refusal to provide adequate responses to requests for information relating to the reduction and denial of PIP benefits for all Defendants' Delaware insureds, or adequate responses to requests for information relating to the timing of Defendants' payments of PIP benefits to Delaware insureds. (See Interrogatory Nos. 35, 36, 37, 38, 39, 40, 41 and 42). The parties have agreed to conduct a deposition of a representative of the Defendants to determine how the Defendants organize and store information on these issues, and how best this information can be produced.

While Plaintiffs are amenable to determining how best this information can be produced, Plaintiffs believe broad discovery is warranted in this case, including discovery relating to whether this case should be certified as a class action. See Crowhorn v. Nationwide Mut. Ins. Co., 2002 WL 388115 (Del. Super. 2002) (citing Benning, 2001 WL 1388544, *1-2 (Del. Supr. 2001) (the Court must "'allow the parties to review all documents that it believes would bear on the viability of the class' and permit 'the parties to conduct sufficient discovery before it determines whether or not a viable class exists.' In addition, discovery should also encompass 'the question of whether or not a class action remains the superior method for the fair and efficient and adjudication of this litigation.'")). Plaintiffs believe they are entitled to discovery on issues relating to class certification, including whether a viable class exists and whether a class action will be a fair and efficient adjudication of the allegations made in this litigation. If, after reviewing this letter and applicable caselaw, Defendants still believe that Plaintiffs are not entitled to discovery on class certification issues and issues relating to Defendants' treatment of their Delaware insureds, please advise us immediately

Interrogatory No. 43. We also note that Defendants objected to interrogatory no. 43. We believe the Defendants' revenues and profits earned from employing "cost-management" or "cost-containment" procedures is relevant in this case, and we request that your confirm that this information will be produced. Again, Defendants are in the business of collecting premiums and managing claims; we expect that Defendants regularly review and analyze this information.

CROSS & SIMON, LLC
January 24, 2008
Page 7 of 7

We thank you in advance for your cooperation in this matter.

Sincerely yours,

Christopher P. Simon

CPS:eb

cc:    Gary W. Alderson, Esquire (by electronic mail and hand delivery)
       Richard H. Cross, Jr., Esquire
       Kevin S. Mann, Esquire
       File Copy

CROSS & SIMON, LLC

Christopher P. Simon
csimon@crosslaw.com

MAILING ADDRESS:
P.O. BOX 1380
WILMINGTON, DE 19899-1380

ATTORNEYS AT LAW
913 NORTH MARKET STREET
11TH FLOOR
WILMINGTON, DELAWARE 19801
302-777-4200 / 302-777-4224 (FAX)
www.crosslaw.com

*SUSSEX COUNTY OFFICE:*
17577 NASSAU COMMONS BLVD.
SUITE 102
LEWES, DE 19958
(302) 644-4269
(302) 258-0815 (FAX)

January 31, 2008

**BY U.S. MAIL**
**& ELECTRONIC MAIL**

George M. Church, Esquire
Miles & Stockbridge P.C.
10 Light Street
Baltimore, Maryland 21202

     Re:   *Johnson, et al. v. Government Employees Insurance Co., et al.*
           *D. Del. C.A. No. 1:06-cv-408*

Dear George:

    We write to follow-up on Plaintiffs' deposition of ███████ conducted Tuesday, January 29, 2008 at your office. We took ███████ deposition for the limited purpose of learning what and how the Defendants' store electronic information.

    As you well know by know, we have repeatedly asked Defendants for information relating to the Defendants' policies for analyzing, reviewing, handling and treatment of PIP claims. As set forth extensively in my numerous previous correspondence, to date, Defendants have failed to produce complete and full responses to Plaintiffs' written discovery requests. For instance, Defendants have summarily disclosed that they used or use ███████ ███████. Notwithstanding, prior to ███████ deposition, Defendants had not yet produced a single statement or document that explains, describes, documents or identifies how and why ███████ ███████. Nor have the Defendants produced a single piece of correspondence between Defendants and these parties.

    On Tuesday, during Plaintiffs deposition of ███████ we learned more about ███████. We learned that the Defendants ███████. We learned that ███████. We learned that ███████.

CROSS & SIMON, LLC
January 31, 2008
Page 2 of 4



We learned that ▓▓▓▓▓▓▓▓▓▓▓

We learned that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

We also learned that the Defendants ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ We learned a ▓▓▓▓▓▓▓▓▓▓▓▓▓. We learned, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

We learned that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

We learned that Defendants regularly ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ For instance, Defendants ▓▓▓▓▓▓▓▓▓▓▓▓▓. We learned that Defendants ▓▓▓▓▓▓▓▓▓▓▓▓▓

As an initial matter, we believe after deposing ▓▓▓▓▓ that the Defendants have extensive information responsive to Plaintiffs' discovery requests that has not yet been produced. Defendants have the capability ▓▓▓▓▓▓▓▓▓▓▓▓ At the very least, Defendants ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. We also understand that the Defendants ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. We request that the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ We understand that you could further ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓We request that Defendants produce ▓▓▓▓▓▓▓▓▓. Also, we expect to receive copies of the contract and related correspondence between Defendants and ▓▓▓▓▓▓ as well as between Defendants and ▓▓▓▓▓.

CROSS & SIMON, LLC
January 31, 2008
Page 3 of 4

Further, we request that Defendants produce detailed written explanations for ▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Defendants should immediately produce any and all documents and correspondence, in electronic format or otherwise, that relate to any of Defendants' (including management's) use, review, or analysis of performance objectives, guidelines or goals, including but not limited to their ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

We have spoken with counsel for ▓▓▓▓▓▓▓▓. Counsel has stated she is not sure how much information ▓▓▓▓▓▓▓ has saved relating to its relationship with the Defendants, which terminated on ▓▓▓▓▓▓▓▓. Plaintiffs filed this complaint on April 19, 2006, ▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ We trust that the Defendants contacted ▓▓▓▓▓▓▓▓ after this case was filed to preserve any and all records relating to Defendants' use of this system and that Defendants have maintained any databases that were resident on Defendant's systems. We will continue to work with ▓▓▓▓▓▓▓ to obtain relevant information however we expect the Defendants to produce any responsive materials, including information about services provided by ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ correspondence related to these claims

We have also been in contact with ▓▓▓▓▓▓▓▓▓▓▓▓ which has represented that Defendants have much, if not all of the information contained in our document requests. We understand the Defendants ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. We have requested information on this process from the Defendants, including information and correspondence between the parties relating to Defendants' decision to ▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓. We request that the Defendants make this material available to us immediately.

We believe the Defendants should have already produced much of the information we have requested previously, and as set forth herein. We find it troubling that Defendants would ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. As set forth in the complaint filed in April 2006, Plaintiffs allege that the Defendants routinely and illegally pay reduced amounts on medical bills submitted under PIP, and that Defendants routinely make such payments after the 30-day deadline established by 21 Del. C. § 2118B. It is clear from the complaints and written discovery what Plaintiffs seek. We are on a tight schedule for discovery in this case and this delay prejudices our ability to meet agreed upon, and Court-ordered deadlines. We have numerous depositions to conduct in this case and we will begin taking those depositions without documentation, reserving all rights to re-notice witness depositions and seek leave of the Court for extensions of discovery deadlines because of the Defendants' delay.

It is also troubling that Defendants were unable to produce a 30(b)(6) witness Tuesday who could discuss the ▓▓▓▓▓▓▓▓▓▓▓▓ It is difficult to imagine that with all of the IT personnel and programmers on staff (many of whom were apparently employed by the Defendants when the Defendants were using ▓▓▓▓▓▓ that Defendants did not produce such a witness. If you do

CROSS & SIMON, LLC
January 31, 2008
Page 4 of 4

not agree to produce such a witness in the timeframe set forth below, we will seek relief from the Court.

Please let me know by Wednesday, February 6, 2008 whether and when the Defendants will comply with the requests set forth herein. We note that these requests are not exclusive, and we re-state our previous concerns and requests with Defendants' responses to date, as set forth in my earlier correspondence. If the Defendants are not willing to produce reports and information we request, and have repeatedly requested, we will have no choice but to seek relief from the Court.

We thank you in advance for your cooperation in this matter.

Sincerely yours,

Christopher P. Simon

CPS:eb

cc:    Gary W. Alderson, Esquire (by electronic mail and hand delivery)
       Richard H. Cross, Jr., Esquire
       Kevin S. Mann, Esquire
       File Copy

Exhibit C

**CERTIFICATION OF CHRISTOPHER P. SIMON**
**IN ACCORDANCE WITH FED. R. CIV. P. 37(a)(1)**

I, Christopher P. Simon, hereby certify that I, and attorneys in my firm, have in good faith conferred or attempted to confer with counsel for Defendants in an effort to obtain resolution of this discovery dispute.

Christopher P. Simon (No. 3697)

# Exhibit D

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 23351 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Westchester Fire Ins. Co. v. Household Intern., Inc.
D.Del.,2005.
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
WESTCHESTER FIRE INSURANCE CO., Plaintiff,
v.
HOUSEHOLD INTERNATIONAL, INC., House-
hold Retail Services, Inc., Household Bank (SB),
N.A., Beneficial National Bank USA, Defendants.
No. Civ.A. 02-1328 JJF.

Jan. 5, 2005.

J.R. Julian, of J.R. Julian, P.A., Wilmington,
Delaware, James J. Duggan, and Michael T. Glas-
cott, of Lustig & Brown, LLP, Buffalo, New York,
for Plaintiff, of counsel.
John A. Parkins, Jr., of Richards, Layton & Finger,
Wilmington, Delaware, John H. Mathias, Jr., Chris-
topher C. Dickinson, John P. Wolfsmith, Joseph F.
Arias, and Daniel Shim, of Jenner & Block LLP,
Chicago, Illinois, for Defendants, of counsel.

*MEMORANDUM OPINION*

FARNAN, J.
    *1 Presently before the Court are (1) the Mo-
tion For Protective Order (D.I.72) filed by Plaintiff
on June 18, 2004; (2) the Motion To Compel Dis-
covery Relating To Financial Institutions Endorse-
ment (D.I.74) filed by Defendants on June 18,
2004; (3) the Motion To Compel Deposition Of
Westchester's Corporate Representative Witness
(D.I.75) filed by Defendants on June 18, 2004; and
(4) the Motion To Compel Discovery Relating To
Westchester's Denials And Defenses (D.I.76) filed
by Defendants on June 18, 2004.

### BACKGROUND

    This litigation stems from Defendants' claim
that Plaintiff Westchester committed fraud by al-
legedly selling comprehensive liability insurance to
Defendants that turned out to have a value far be-
low its purported worth. Underlying this dispute are
claims of fraud alleged by consumers against De-
fendants, arising from the sale or financing of satel-
lite television systems and other consumer products.

    In March 1998, Defendant Beneficial National
Bank USA ("Beneficial") filed suit against
Westchester in this Court seeking declaratory relief
concerning coverage for fraudulent lending claims
involving credit card accounts. In October 2000,
this Court granted Westchester's motion for sum-
mary judgment, holding that a Financial Institutions
Endorsement ("FIE") excluded coverage for predat-
ory lending claims. In May 2002, Defendant
Household International, Inc., Household Retail
Services, Inc., and Household Bank (SB), N.A.
(collectively, "Household") filed suit in federal
court in Illinois alleging that Westchester fraudu-
lently induced Household to purchase insurance
policies that excluded coverage for errors and omis-
sions ("E & O") claims. The case was transferred to
this Court and consolidated with a case brought by
Westchester seeking declaratory judgment that
predatory lending claims were not covered by any
Westchester policy.

    There are three Westchester insurance policies
at issue in this case. Two were issued to Household
and one was issued to Beneficial.

    Discovery in this lawsuit began in November
2003. In June 2004, Defendants filed motions to
compel seeking (1) discovery related to the draft-
ing, meaning, interpretation, or intent of
Westchester's FIE (D.I.74); (2) discovery relating to
the factual underpinnings of issues Westchester
raised by way of its denial and defenses to Defend-
ants' claims (D.I.76); and (3) Westchester's desig-
nation of one or more representative witnesses to
provide deposition testimony on the topics listed in
(1) and (2) above (D.I.75).

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 23351 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

The Court heard Oral Argument on these Motions on September 14, 2004. Because depositions of Defendants' insurance brokers, Johnson & Higgens, were scheduled to take place in November 2004, the Court directed Defendants to show from the brokers' testimony the relevance of the requested discovery to each of Defendants' motions to compel. Defendants submitted a Supplemental Brief In Support Of Motions To Compel Discovery. (D.I.111).

## DISCUSSION

### I. Legal Standard

*2 In relevant part, Rule 26 provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."Fed.R.Civ.P. 26(b)(1). In the Third Circuit, "it is well recognized that the federal rules allow broad and liberal discovery."*Pacitti v. Macy's,* 193 F.3d 766, 777-78 (3d Cir.1999) (citing *In re Madden,* 151 F.3d 125, 128 (3d Cir.1998)).

### II. Parties' Contentions

The parties make the same general arguments to support all four pending motions.

Westchester contends that Defendants' discovery should be limited to the specific manner in which Westchester allegedly misrepresented, tacitly or otherwise, coverage under the subject policies. Specifically, Westchester contends that Westchester's understanding of the FIE, the underlying insurance claims or other similar claims is not relevant to Defendants' fraud claim because there is no dispute as to the meaning of the FIE. Westchester argues that Defendants have not yet identified the acts or misrepresentations upon which Defendants are alleged to have relied upon to their detriment.

Defendants contend that fraud claims necessarily place at issue the alleged defrauder's knowledge and intent. Thus, Defendants contend that meaningful pursuit of their fraud claims requires discovery of Westchester's understanding of the FIE.

### III. Defendants' Motion To Compel Discovery Relating To Financial Institutions Endorsement (D.I.74)

By their motion, Defendants seek to compel production of documents relating to the drafting, meaning, interpretation, or intent of the FIE. In the alternative, Defendants seek permission to depose a 30(b)(6) witness in order to explore Westchester's institutional knowledge with regard to the FIE.

Westchester responds that interpretation of the FIE is not a part of this case, as there is no dispute as to its meaning.

Defendants now contend that the broker testimony demonstrates that further inquiry into Westchester's intent with regard to the FIE is warranted. Specifically, Defendants contend that "the lack of evidence that Defendants or the brokers strenuously objected to the FIE's inclusion in the policy supports Defendants' position that no one understood that the FIE would later be interpreted as restricting coverages as significantly as it has."(D.I. 111 at 12).

After reviewing the deposition testimony, Defendants' arguments, and documents provided in support of Defendants' motions to compel discovery, I conclude that Defendants have not demonstrated the relevance of the discovery requested with regard to the FIE. Defendants do not contend that Westchester withheld from Defendants or their brokers the existence or the contents of the FIE at any time during negotiation of the purchase of the umbrella policy. Rather, Defendants focus on the parties' contemporaneous intent, understanding, and

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

representations with regard to the FIE's meaning. I find that there is no testimony suggesting that Defendants' insurance brokers requested or relied upon having the type of coverage that the FIE excludes. In fact, one of the insurance brokers, Mr. Pallis, testified that "providing coverage for fraud is against public policy and not covered by insurance."(D.I. 112, Ex. D at 70.) Notwithstanding the liberal discovery standard in the Third Circuit, for these reasons I conclude that Defendants have not demonstrated that discovery as to the meaning, scope, interpretation, drafting, or origin of the FIE is relevant to their fraud claim against Winchester, or that such discovery is reasonably calculated to lead to the discovery of admissible evidence. Thus, I will deny Defendant's Motion To Compel Discovery Relating To Financial Institutions Endorsement (D.I.74).

**IV. Motion To Compel Deposition Of Westchester's Corporate Representative Witness (D.I.75) filed by Defendants**

*3 Defendants' request, for the reasons described in sections II and III above, that Westchester present corporate representative testimony on the following topics: Westchester's understanding of the FIE, Westchester's intent in drafting the FIE, Westchester's intent in employing the FIE in its policies, and Westchester's intent in employing the FIE at the time a claim is made.

For the reasons given with regard to Defendants' Motion To Compel (D.I.74) in Section III above, I conclude that Defendants have not demonstrated that the requested discovery is relevant to their fraud claim against Winchester, or that such discovery is reasonably calculated to lead to the discovery of admissible evidence. Thus, I will deny Defendants' Motion To Compel Deposition Of Westchester's Corporate Representative Witness (D.I.75).

**V. Motion To Compel Discovery Relating To Westchester's Denials And Defenses (D.I.76) filed by Defendants**

By their motion, Defendants seek an order compelling further responses to Interrogatory Nos. 6(a), 6(b), 6(f), 6(j), 6(k), 6(l), and 6(m).

With regard to Interrogatories 6(a) and 6(b), Westchester has offered to provide an amended response. Defendants have not indicated that they find Westchester's proposed amended responses insufficient.

With regard to Interrogatory Nos. 6(f), 6(j), and 6(l), in its response Westchester agrees to supplement its response.

With regard to Interrogatory Nos. 6(k) and 6(m), Defendants do not set forth in their brief (D.I.76) reasons why Westchester's responses are inadequate.

I find that the parties at this time do not require the Court's assistance to resolve their dispute with regard to Interrogatory 6. Thus, I will deny the Motion To Compel Discovery Relating To Westchester's Denials and Defenses (D.I.76) with leave to renew should Defendants find Westchester's amended responses insufficient.

**VI. Motion For Protective Order (D.I.72) filed by Plaintiff**

By its motion, Westchester seeks a protective order vacating or limiting the scope of the depositions of Westchester's Rule 30(b)(6) witnesses to only such topics that are germane to this case. Westchester seeks also to vacate or limit Defendants' November 2003 demand for documents directed to westchester. Westchester contends that Defendants' discovery should be limited to the specific manner in which Westchester allegedly misrepresented, tacitly or otherwise, coverage under the subject policies.

Because I determined that the discovery sought

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 23351 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

by Defendants is not relevant under Rule 26, the Court need not decide whether Westchester is entitled to a protective order. Thus, I will deny as moot the Motion For Protective Order (D.I.75) filed by Plaintiff.

### CONCLUSION

In sum, I will (1) deny the Motion To Compel Discovery Relating To Financial Institutions Endorsement (D.I.74) filed by Defendants; (2) deny the Motion To Compel Deposition Of Westchester's Corporate Representative Witness (D.I.75) filed by Defendants; (3) deny with leave to renew the Motion To Compel Discovery Relating To Westchester's Denials And Defenses (D.I.76) filed by Defendants; and (4) deny as moot the Motion For Protective Order (D.I.72) filed by Plaintiff.

*4 An appropriate Order will be entered.

D.Del.,2005.
Westchester Fire Ins. Co. v. Household Intern., Inc.
Not Reported in F.Supp.2d, 2005 WL 23351 (D.Del.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit E

Westlaw.

Not Reported in A.2d
Not Reported in A.2d, 2002 WL 388115 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

H
Crowhorn v. Nationwide Mut. Ins. Co.
Del.Super.,2002.
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.

Superior Court of Delaware.
James M. CROWHORN, on behalf of himself and
all others similarly situated, Plaintiff,
v.
NATIONWIDE MUTUAL INSURANCE COM-
PANY, Defendant.
**No. CIV. A. 00C-06-010.**

Submitted: Nov. 5, 2001.
Decided: Feb. 28, 2002.

Insured brought action against automobile liability
insurer, asserting state statutory claims, common
law fraud, and wrongful refusal to honor contractu-
al obligations, relating to insurer's practices regard-
ing personal injury protection (PIP) claims. On in-
sured's motions for class certification and for spe-
cial discovery master, the Superior Court, Kent
County, William L. Witham, Jr., J., held that: (1)
insured was entitled to conduct discovery bearing
on viability of class certification, before trial court
determined whether to certify a class action; (2) in-
surer's response to request for admissions was inap-
propriate; and (3) appointment of special discovery
master was not warranted.

Motions denied without prejudice.

West Headnotes

**[1] Pretrial Procedure 307A ⟶37**

307A Pretrial Procedure
    307AII Depositions and Discovery
        307AII(A) Discovery in General
            307Ak36 Particular Subjects of Disclos- ure

307Ak37 k. Insurance, Matters Relat-
ing To. Most Cited Cases
The insured was entitled to conduct discovery bear-
ing on the viability of class certification, before the
trial court determined whether to certify as a class
action the insured's action against automobile liab-
ility insurer, asserting state statutory claims, com-
mon law fraud, and wrongful refusal to honor con-
tractual obligations, relating to insurer's practices
regarding personal injury protection (PIP) claims.
Superior Court Civil Rule 23.

**[2] Pretrial Procedure 307A ⟶478**

307A Pretrial Procedure
    307AII Depositions and Discovery
        307AII(G) Requests for Admissions
            307Ak477 Response
                307Ak478 k. Denial of Duty to Re-
spond or Statement of Inability; Objections and
Protective Orders. Most Cited Cases
Automobile liability insurer's responses to insured's
request for admissions, regarding the number of
personal injury protection (PIP) claims which had
been denied by insurer in the last eight years or that
had been paid after the expiration of 30 days, were
inappropriate in insured's putative class action chal-
lenging insurer's practices, where insurer stated that
it lacked information or knowledge and that PIP
claim files, "if they existed," could not be as-
sembled or reviewed in the time period required for
a response; it was hard to believe there were no PIP
claim files available and readily obtainable, insurer
could have reviewed at least some files in an at-
tempt to admit or deny some of the requests for ad-
missions, insurer did not request an extension of
time to try to respond truthfully, and it did not turn
over files so that the insured could attempt to count
potential class members. Superior Court Civil Rules
26(g), 37(c)(1).

**[3] Pretrial Procedure 307A ⟶24**

307A Pretrial Procedure

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                      Page 2
Not Reported in A.2d, 2002 WL 388115 (Del.Super.)
(Cite as: Not Reported in A.2d)

307AII Depositions and Discovery
   307AII(A) Discovery in General
      307Ak24  k. Discovery Methods and Pro-
cedure. Most Cited Cases
Trial court would not grant insured's motion for ap-
pointment of special discovery master in putative
class action against automobile liability insurer
challenging insurer's practices regarding personal
injury protection (PIP) claims, though the motion
appeared to be based on insured's concern that in-
surer's lassitude and indolent approach would make
discovery tasks particularly onerous due to the nu-
merous and complex issues involved in the case;
county case management plan, under which the
parties could move to compel discovery and could
move for corresponding costs or other appropriate
sanctions, was expected to provide the parties with
an adequate remedy for non-responsive discovery.
Superior Court Civil Rules 26, 37.

On Plaintiff's Motion for Class Certification.
Denied (Without Prejudice). On Plaintiff's Motion
for Special Discovery Master. Denied (Without
Prejudice).
John S. Spadaro, Esquire, and Roger D. Landon,
Esquire, of Murphy, Spadaro & Landon, Wilming-
ton, Delaware for the Plaintiff.
Keith E. Donovan, Esquire, of Swartz, Campbell &
Detweiler, Wilmington, Delaware, for the Defend-
ant.

MEMORANDUM OPINION

WITHAM, J.
   *1 Before the Court is the motion of James M.
Crowhorn ("plaintiff") for class certification, as
well as the response of Nationwide Mutual Ins. Co.
("defendant" or "Nationwide") in opposition to cer-
tification. For the reasons outlined in the Delaware
Supreme Court's recent ruling in *Benning v. Wit
Capital Group, Inc.,*[FN1] class certification must be
denied at this time until further discovery is con-
ducted.

   FN1.2001 WL 1388544 (Del.Supr.).

*Background*

   Plaintiff filed this class action complaint on be-
half of himself and all those similarly situated, al-
leging that: Nationwide violated 21 *Del. C.* §
2118B and 6 *Del. C.* § 2513; committed common
law fraud; and wrongfully refused to honor their
contractual obligations arising under certain auto-
mobile insurance policies. The plaintiff's injuries
stem from a motor vehicle collision which occurred
on March 8, 1999. As a result of processing his
claim, plaintiff maintains that he was submitted to
the "systematic practices" of Nationwide in deny-
ing him his first-party insurance or Personal Injury
Protection ("PIP") benefits. He alleges that Nation-
wide's practices, ongoing since at least 1994, are
fraudulent and in violation of Delaware statutes.FN2

   FN2.*See Crowhorn v. Nationwide Mut. Ins.
   Co.,* 2001 WL 695542 (Del.Super.Ct.)
   (explaining factual development of the in-
   stant case).

*Class Certification Standards*

   "[C]ertification of a class action requires a two-
step analysis."[FN3]The first step requires that the
action satisfy all *four* prerequisites mandated by
subsection (a) of ... [R]ule 23." [FN4]These are: (1)
numerosity; (2) commonality; (3) typicality and (4)
adequacy of representation.[FN5]"If and only if all of
the prerequisites of subsection (a) are satisfied, then
Rule 23(b) requires the presence of at least one of
four additional factors."[FN6]Under Rule 23(c) the
Court is directed to determine whether or not a case
qualifies for class certification "as soon as practic-
able after the commencement of an action brought
as a class action."

   FN3.*Mentis v. Delaware Amn. Life Ins.
   Co.,* 2000 WL 973299 at *1
   (Del.Super.Ct.) (citations omitted).

   FN4.*Prezant v. DeAngelis,* 636 A.2d 915,
   920 (Del.1994) (citing *Nottingham Part-*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 2002 WL 388115 (Del.Super.)
(Cite as: Not Reported in A.2d)

*ners v. Dana*, 564 A.2d 1089, 1094 (Del.1989) (emphasis in original).

FN5. Subsection (a) of Rule 23 states:
(a) *Requisites to Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

FN6. *Mentis,* 2000 WL 973299 at *2 (citations omitted). Subsection (b) of Rule 23 states:
(b) *Class Actions Maintainable.* An action may be maintained as a class action if the prerequisites of paragraph (a) are satisfied, and in addition:
(1) The prosecution of separate actions by or against individual members of the class would create a risk of:
(A) Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
(B) Adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
(2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
(3) The Court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matter pertinent to the

findings include:
(A) The interest of members of the class in individually controlling the prosecution or defense of separate actions;
(B) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
(C) The desirability or undesirability of concentrating the litigation of the claims in the particular forum;
(D) The difficulties likely to be encountered in the management of a class action.

[1] In the case *sub judice,* the Court indicated from the bench that it wished to consider the certification issue as soon as practicable; therefore, certain discovery (such as the issue of the appointment of a special discovery master) would be suspended until the parties could brief the certification issue and the Court could resolve the matter on the briefs. It is apparent from the Delaware Supreme Court's opinion in *Benning,* however, that the Court cannot make its final decision with respect to the elements of Rule 23, where a party has attempted to conduct "discovery that would have aided in identifying instances where [the defendant's] actions harmed other proposed class members."[FN7]

FN7. *Benning,* 2001 WL 1388544 at *1.

Under *Benning,* this Court must "allow the parties to review all documents that it believes would bear on the viability of the class"[FN8] and permit "the parties to conduct sufficient discovery before it determines whether or not a viable class exists."[FN9] In addition, discovery should also encompass "the question of whether or not a class action remains the superior method for the fair and efficient adjudication of this litigation."[FN10]

FN8. *Id.*

FN9. *Id.* (citations omitted).

FN10. *Id.* at *2.

*Discovery*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 2002 WL 388115 (Del.Super.)
(Cite as: Not Reported in A.2d)

Page 4

*2 Accordingly, this Court will "order a dis-covery schedule that will allow it to determine properly if the proposed class meets the ... require-ments of Superior Court Rule 23."[FN11] The parties should be prepared to discuss the scheduling of all discovery matters at the upcoming pre-trial confer-ence to be held on March 5, 2002.

    FN11. *Id.*

The Court will also take this opportunity to voice its concerns regarding the discovery process in this case to date. Rule 26(g)[FN12] sets out the duty of the parties in responding to discovery. This rule presupposes that Counsel will make "a reason-able effort to assure that [its] client has provided all the information and documents available to him that are responsive to the discovery demand."[FN13] The test for "what is reasonable is a matter for the Court to decide on the totality of the circumstances."[FN14] In reviewing conduct covered by Rule 26(g), federal courts have considered "the thoroughness, accuracy and honesty (as far as coun-sel can reasonably tell) of the responses and the process through which they have been assembled."[FN15]

    FN12. Del.Super. Ct. Civ. R. 26(g) is simil-ar to Fed.R.Civ.P. 26(g)(2).

    FN13. Advisory Committee Notes to 1983 Amendments to the Federal Rule of Civil Procedure 26(g).

    FN14. *Id.*

    FN15. *See* Gregory P. Joseph, *Sanctions: The Federal Law of Litigation Abuse,* § 42(c), P.541 (3d.ed.2000).

The Court is concerned with the thoroughness and accuracy of the process here. It is noted, for ex-ample, that plaintiff propounded requests for admis-sions to defendant. Plaintiff asked the defendant to admit that the number of PIP claims which have been denied since 1994, or that have been paid after the expiration of thirty days, equaled numbers ran-ging from 25 cases to over 20,000 cases. These re-quests were objected to by defendant. As a result, plaintiff moved to compel a response. An Order was issued for the Court, by Commissioner Freud, that compelled the defendant's response.

Defendant responded to that Order, first, by ob-jecting to the terminology used to define the class. Secondly, defendant maintained that, after reason-able inquiry, it was without sufficient information or knowledge to admit or deny the requests for ad-mission because there was no reasonable method to obtain the information necessary to formulate a re-sponse (without conducting a manual file-by-file review of every PIP file in Delaware since January 1, 1994). Moreover, defendant stated that the claim files, *if they existed,* could not be assembled or re-viewed in the time period required for a response. The Court is concerned that these responses may not be reasonable and that defendant acts at the per-il of Rule 37(c)[FN16] with regard to remedies after trial.[FN17]

    FN16. Under Delaware Superior Court Civil Rule 37(c), a party is not relieved from sanctions for insufficient responses to requests for admission unless:
    (1) the request was held objectionable pursuant to Rule 36(a); or
    (2) the admission sought was of no substantial importance; or
    (3) the party failing to admit had reasonable grounds to believe that [it] might prevail on the matter; or
    (4) there was other good reason for the failure to admit.

    FN17. *Rosenblatt v. Getty Oil Co.,* 1982 WL 17836 at *2 (Del.Ch. ) (stating that: while there may be authority to the con-trary, ... [it is not] the function of the Court, in advance of trial, to analyze the sufficiency of or justification for the vari-ous answers given by a party in response to a request for admissions.... [This is] be-cause Rule 36, with its reference to Rule

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

37(c), would appear to carry its own sanction, namely, that if a party unfairly refuses to admit an uncontroverted fact or legal status, thereby needlessly putting the other party to the formal proof of that fact or status as a necessary part of its case, the Court, in its discretion, may assess the expense of proving such matters against the party to which the request for the admission was made. In refusing to make an admission, a party acts at this peril.... [Otherwise, the Court would be involved] in a determination of the evidentiary merits of factual matters in advance of the trial. In this case, given its complexity, there is no time to do so, nor ... [is] it appropriate.").

Defendant could characterize its response as an attempt to object properly under Rule 37(c)(1) or (4). Defendant's response may be insufficient under rule 37(c)(4) because its objection to the class definition does not appear to have been made to the Commissioner, nor made in a motion for protective order. Defendant "has the burden of persuasion on this issue and the mere mention of a possible defense, without more, is insufficient to meet this burden."[FN18]

FN18.*Cline v. Prowler Ind. of Maryland,* 418 A.2d 968, 984 (Del.1980) (citing *Wileman v. Signal Fin. Corp.,* 358 A.2d 689 (Del.1978))

[2] Under 37(c)(1) the response also fails because Rule 36(a) states that "an answering party may not give lack of information or knowledge as a reason for failure to admit or deny unless ... the information known or readily obtainable by him is insufficient to enable him to admit or deny." Here, the defendant implied that no files may be available (thus there is insufficient information to respond), or if they were available, there was insufficient *time* (not insufficient *information* ) to obtain the truthful response.

*3 The Court finds it hard to believe that there

are *no* PIP files available and readily obtainable under Nationwide's control since 1994 (which defendant implies might be the case). The Court questions why the defendant could not review at least *some* files in an attempt to admit or deny some of the requests for admissions propounded (for example requests one through three perhaps). Importantly, the defendant did not request an extension of time to try to respond truthfully. Nor did it turn over potential files so that the plaintiff could attempt to count potential class members. Inconvenience is not an acceptable excuse for non-responsiveness if there is at least some information available to a party.[FN19]

FN19.*See e.g. Wileman v. Signal Fin. Corp.,* 385 A.2d at 690 (finding sanctions ... appropriate where a party stated that it could not provide certain information, but also stated that such information was available at the home office in Pittsburgh).

This principle is applicable to discovery methods beyond requests for admissions, and the Court is cognizant of additional concerns both parties have raised with respect to discovery that are not addressed here. The Court intends to schedule a plan for resolution of all discovery matters at the pre-trial conference, and will expect the parties to comply fully with all discovery orders as discovery in this matter has languished long enough.

*Special Discovery Master*

[3] The Court is also aware that the plaintiff has requested the appointment of a special discovery master in this case, and has decided to deny that motion for the present. The basis for plaintiff's motion appears to be that Nationwide's lassitude and indolent approach will make discovery tasks particularly onerous due to the numerous and complex issues involved. At the present time, the Court believes that the procedures afforded by the Superior Court Kent County Case Management Plan, whereby the parties may move to compel discovery (and may move for corresponding costs or other ap-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                          Page 6
Not Reported in A.2d, 2002 WL 388115 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

propriate sanctions), should provide the parties an
adequate       remedy       for       non-responsive
discovery.FN20If, however, documents are not
turned over on the basis of privilege, and numerous
documents will therefore need individual review,
the Court will reconsider plaintiff's motion at such
time.

> FN20.*See*     *e.g.*DelawareSuperior     Court
> Civil Rules 26, 37.

Wherefore, plaintiff's motion for class certific-
ation is *denied without prejudice* until completion
of discovery, whereupon the motion may be re-
newed. Plaintiff's motion for the appointment of a
special discovery master is also *denied without pre-
judice.*

IT IS SO ORDERED.

Del.Super.,2002.
Crowhorn v. Nationwide Mut. Ins. Co.
Not Reported in A.2d, 2002 WL 388115 (Del.Super.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit F

Westlaw.

792 A.2d 188                                                           Page 1
792 A.2d 188, 2001 WL 1388544 (Del.Supr.)
**(Cite as: 792 A.2d 188, 792 A.2d 188 (Table))**

▷

Benning v. Wit Capital Group, Inc.
Del.Supr.,2001.
(The decision of the Court is referenced in the At-
lantic Reporter in a 'Table of Decisions Without
Published Opinions.')
Supreme Court of Delaware.
Arthur BENNING, Sr., Barbara Lee Benning, Ar-
thur E. Benning,Jr., and Janessa Dabler On Behalf
of Themselves and all others Similarly Situated,
Appellants/Plaintiff and Intervenor Below,
v.
WIT CAPITAL GROUP, INC., and Wit Capital
Corporation dba Wit Capital, Appellees/Defendants
Below
No. 116,2001.

Submitted Oct. 10, 2001.
Decided Nov. 1, 2001.
Reargument Denied March 18, 2002.

Court Below: Superior Court of the State of
Delaware in and for New Castle County, C.A. No.
99C-06-157.

Before VEASEY, Chief Justice, BERGER and
STEELE, Justices.

ORDER

**\*1** This 1st day of November 2001, it appears
to the Court that:

1. Appellants, Plaintiffs-below, Arthur Ben-
ning, Sr., Barbara Lee Benning, Arthur Benning,
Jr., and Janessa Dabler appeal from the decisions of
the Superior Court denying their Motion for Class
Certification and granting Appellee,· Defendant-be-
low, Wit Capital's Motion to Dismiss. Appellants
argue that the trial court erred in finding that the
proposed Plaintiff class failed to meet the numeros-
ity [FN1] and typicality [FN2] requirements of Superi-
or Court Rule 23(a) and that it further erred in de-
termining that questions affecting individual mem-

bers of the proposed class would predominate over
those common to the class under Superior Court
Rule 23(b)(3).[FN3]

> FN1.*See*Super. Ct. Civ. R. 23(a)(1).

> FN2.*See*Super. Ct. Civ. R. 23(a)(3).

> FN3.*See*Super. Ct. Civ. R. 23(b)(3).

2. We review the Superior Court's determina-
tion of the applicable law *de novo*.[FN4] We review
the factual determination of the lower court to de-
termine whether its application of those legal pre-
cepts is "supported by the record and the product of
an orderly and logical deductive process."[FN5]

> FN4.*Leon N. Weiner & Assoc., Inc. v.
> Krapf,* Del.Supr., 584 A.2d 1220, 1223
> (1991).

> FN5.*Id.;Nottingham Partners v. Dana,*
> Del.Supr., 564 A.2d 1089, 1102 (1989).

3. Appellants contend that the trial judge re-
fused to allow discovery that would have aided in
identifying instances where Wit Capital's · actions
harmed other proposed class members. The record
demonstrates that Appellants requested documents
relating to the identification, recording, monitoring,
and tracking of orders not fulfilled. When these
documents were not produced, the judge failed to
compel their production prior to rendering her de-
cision on class certification. We find that the Super-
ior Court could not have made an orderly and logic-
al decision concerning the presence or absence of
numerosity and typicality without these documents
and any others that may relate to the identification
of other class members and potential claims. While
Rule 23 directs the trial court to make a determina-
tion    on    class    certification    as    soon    as
practicable,[FN6] this is not a mandate for the court
to make that type of determination without the ne-
cessary facts before it.[FN7]The trial court must al-
low the parties to conduct sufficient discovery be-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

792 A.2d 188
792 A.2d 188, 2001 WL 1388544 (Del.Supr.)
(Cite as: 792 A.2d 188, 792 A.2d 188 (Table))

fore it determines whether or not a viable class exists.[FN8]

FN6.*See* Super Ct. Civ. R. 23.

FN7.*See Newton v. Merrill Lynch, Pierce, Fenner & Smith,* 3d. Cir., 259 F.3d 154, 166 (2001) ("Before deciding whether to allow a case to proceed as a class action,...[courts] should make whatever factual and legal inquiries are necessary under Rule 23."); *see also Kamm v. California City Dev. Co.,* 9th Cir., 509 F.2d 205 (1975) (while extent of discovery lies within the sound discretion of the trial court, it is an abuse of discretion to deny discovery where it is necessary to determine the existence of a class).

FN8.*See Shelton v. Pargo, Inc.,* 4th Cir., 582 F.2d 1298, 1313 (1978) (courts should be encouraged to conduct the discovery necessary to make the appropriate findings concerning class certification).

4. In light of this finding, the Superior Court should order a discovery schedule that will allow it to determine properly if the proposed class meets the numerosity and typicality requirements of Superior Court Rule 23. The court should tailor the discovery order to allow the parties to review all documents that it believes would bear on the viability of the class.

5. The trial judge further found that the factual issues of this case were "too individualized" under Rule 23(b)(3) for this litigation to proceed as a class action.[FN9] Because the court failed to allow for sufficient discovery during the certification phase, the trial judge's conclusions are based upon speculation that additional discovery would have yielded divergent claims requiring substantial individual attention. Specifically, the trial judge concluded that the alleged wrongful conduct would have to be examined individually in order to determine damages. While this Court recognizes that

issues of damages by nature require individualized examination, they are not so insurmountable that they automatically preclude class certification.[FN10] Moreover, the court erred in reaching its conclusion before the parties had sufficiently established the record to support its findings. The Rule 23(b) determination must be made in light of all the facts and circumstances available to the court. Thus, the trial judge should have waited to make this determination until after a clearer view of the potential claims and damages of the proposed plaintiff class emerged from discovery.

FN9.*See* Super. Ct. Civ. R. 23(b)(3).

FN10.*Glosser v. Cellcor Inc.,* Del. Ch., C.A. No. 12725, 1995 WL 106527, at *2 n. 5, Allen, C. (1995) (citing *Blackie v. Barrack,* 524 F.2d 891, 905 (9th Cir.1975) ("amount of damages is invariably an individual question and does not defeat class action treatment"); *see also Newton,* 259 F.3d at 189 (obstacles to calculating damages may not preclude class certification, although the putative class must still demonstrate economic loss on a common basis).

*2 6. Once the parties complete appropriate discovery, the Superior Court should then weigh the relevant factors to determine if Plaintiffs have met the requirements of Rule 23(b)(3) for purposes of class certification.[FN11] The trial judge should take care to consider not only whether questions of law or fact common to the class predominate over the questions affecting individual members, but to also give equal weight to the question of whether or not a class action remains the superior method for the fair and efficient adjudication of this litigation.[FN12]

FN11.Rule 23 states that the following factors are to be considered by the trial court: (A) The interest of members of the class in in-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

792 A.2d 188
792 A.2d 188, 2001 WL 1388544 (Del.Supr.)
**(Cite as: 792 A.2d 188, 792 A.2d 188 (Table))**

Page 3

dividually controlling the prosecution or defense of
separate actions;

   (B) The extent and nature of any litigation con-
cerning the controversy already commenced by or
against members of the class;

   (C) The desirability or undesirability of con-
centrating the litigation of the claims in the particu-
lar forum;

   (D) The difficulties likely to be encountered in
the management of a class action. Super. Ct. Civ.
R. 23(b)(3).

       FN12.Super. Ct. Civ. R. 23(b)(3).

   NOW, THEREFORE, IT IS ORDERED that
the orders of the Superior Court denying Plaintiff's
Motion for Class Certification and granting De-
fendant's Motion to Dismiss be REVERSED and
REMANDED for further proceedings consistent
with this order.

Del.Supr.,2001.
Benning v. Wit Capital Group, Inc.
792 A.2d 188, 2001 WL 1388544 (Del.Supr.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE STATE OF DELAWARE**

KERRY JOHNSON and )
SHARON ANDERSON, )
on behalf of themselves and all )
others similarly situated, )
)
      Plaintiffs, )    C.A. No. 1:06-cv408 (JJF)
)
v. )
)
GOVERNMENT EMPLOYEES )
INSURANCE COMPANY, )
GEICO CASUALTY COMPANY, )    TRIAL-BY JURY DEMANDED
GEICO GENERAL INSURANCE )
COMPANY, and GEICO INDEMNITY )
COMPANY, )    CLASS ACTION
)
      Defendants. )

**ORDER**

UPON CONSIDERATION OF Plaintiffs' Motion to Compel Defendants' Answers to Interrogatories (the "Motion") and any response thereto,

IT IS HEREBY ORDERED that:

1.      Plaintiffs' Motion is hereby GRANTED;

2.      Defendants' objections to Plaintiffs' interrogatories nos. 10, 12, 16, 17, 22, 23, 24, 31, 35, 36, 37, 38, 39, 40, 41, 42, 43, and 44 are overruled;

3.      Defendants shall provide full and complete responses to Plaintiffs' interrogatories nos. 10, 12, 16, 17, 22, 23, 24, 31, 35, 36, 37, 38, 39, 40, 41, 42, 43, and 44;

4.      Plaintiffs' are awarded reasonable attorney fees of $_____ for preparing and presenting the Motion.

Dated:_____          _____
                                      The Honorable Joseph J. Farnan
                                      United States District Court

2

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL.  REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY COURT ORDER.

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of February 2008, a true and correct copy of the foregoing Plaintiffs' Motion to Compel Defendants' Answers to Interrogatories was served on the following counsel of record in the manner indicated:

### **BY HAND DELIVERY**

Dawn L. Becker, Esquire
Gary Alderson, Esquire
LAW OFFICES OF DAWN L. BECKER
Citizens Bank Center
919 Market Street, Suite 725
Wilmington, DE 19801

### **BY FIRST CLASS MAIL**

George M. Church, Esquire
Laura A. Cellucci, Esquire
MILES & STOCKBRIDGE P.C.
10 Light Street
Baltimore, Maryland  21202



Kevin S. Mann (No. 4576)

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL.  REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY COURT ORDER.