# IN THE UNITED STATES DISTRICT COURT
## FOR THE STATE OF DELAWARE

| | | |
|---|---|---|
| KERRY JOHNSON and<br>SHARON ANDERSON,<br>on behalf of themselves and all<br>others similarly situated, | ) <br> ) <br> ) <br> ) <br> ) | |
| Plaintiffs, | ) <br> ) | C.A. No. 1:06-cv408 (JJF) |
| v. | ) <br> ) <br> ) | |
| GOVERNMENT EMPLOYEES<br>INSURANCE COMPANY,<br>GEICO CASUALTY COMPANY,<br>GEICO GENERAL INSURANCE<br>COMPANY, and GEICO INDEMNITY<br>COMPANY, | ) <br> ) <br> ) <br> ) <br> ) <br> ) | TRIAL-BY JURY DEMANDED<br><br>CLASS ACTION |
| Defendants. | ) <br> ) | |

## YOU ARE IN POSSESSION OF A DOCUMENT FILED
## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE
## THAT IS CONFIDENTIAL AND FILED UNDER SEAL

If you are not authorized by Court order to view or retrieve this document, read no further than this page. You should contact the following person(s):

CROSS & SIMON, LLC
Richard H. Cross, Jr. (No. 3576)
Christopher P. Simon (No. 3697)
Kevin S. Mann (No. 4576)
913 North Market Street, 11th Floor
P.O. Box 1380
Wilmington, Delaware 19899-1380
(302) 777-4200

*Attorneys for Plaintiffs*

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL. REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY COURT ORDER.

Docket No: 49
Date: 2/25/08

# IN THE UNITED STATES DISTRICT COURT
## FOR THE STATE OF DELAWARE

KERRY JOHNSON and )
SHARON ANDERSON, )
on behalf of themselves and all )
others similarly situated, )
)
   Plaintiffs, )  C.A. No. 1:06-cv408 (JJF)
)
v. )
)
GOVERNMENT EMPLOYEES )
INSURANCE COMPANY, )
GEICO CASUALTY COMPANY, )  TRIAL-BY JURY DEMANDED
GEICO GENERAL INSURANCE )
COMPANY, and GEICO INDEMNITY )
COMPANY, )  CLASS ACTION
)
   Defendants. )

## NOTICE OF MOTION

To: Dawn L. Becker, Esquire   George M. Church, Esquire
  Gary Alderson, Esquire    Laura A. Cellucci, Esquire
  Law Offices Of Dawn L. Becker  Miles & Stockbridge P.C.
  Citizens Bank Center     10 Light Street
  919 Market Street, Suite 725   Baltimore, Maryland  21202
  Wilmington, DE 19801

**PLEASE TAKE NOTICE** that the undersigned will present the attached Plaintiffs'

Motion to Compel Defendants' Production of Documents to the Honorable Joseph J. Farnan on

March 7, 2008, at 2:00 p.m. or as soon thereafter as may be heard.

Dated: February 25, 2008   CROSS & SIMON, LLC
   Wilmington, Delaware

       By: _Kevin S. Mann_____
        Richard H. Cross, Jr. (No. 3576)
        Christopher P. Simon (No. 3697)
        Kevin S. Mann (No. 4576)
        913 North Market Street, 11th Floor
        P.O. Box 1380
        Wilmington, Delaware  19899-1380
        (302) 777-4200

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL.  REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY COURT ORDER.

IN THE UNITED STATES DISTRICT COURT
FOR THE STATE OF DELAWARE

| | | |
|---|---|---|
| KERRY JOHNSON and<br>SHARON ANDERSON,<br>on behalf of themselves and all<br>others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOVERNMENT EMPLOYEES<br>INSURANCE COMPANY,<br>GEICO CASUALTY COMPANY,<br>GEICO GENERAL INSURANCE<br>COMPANY, and GEICO INDEMNITY<br>COMPANY,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 1:06-cv408 (JJF)<br><br><br>TRIAL-BY JURY DEMANDED<br><br><br>CLASS ACTION |

**PLAINTIFFS' MOTION TO COMPEL DEFENDANTS'**
**PRODUCTION OF DOCUMENTS**

Plaintiffs Kerry Johnson and Sharon Anderson (collectively, "Plaintiffs"), by and through undersigned counsel, hereby move pursuant to Fed. R. Civ. P. 37 for an order compelling Defendants Government Employees Insurance Company, GEICO Casualty Company, GEICO General Insurance Company, and GEICO Indemnity Company (collectively, "Defendants" or "GEICO") to produce copies of certain documents. In support hereof, Plaintiffs respectfully state as follows:

1.     On November 2, 2007, Plaintiffs served Defendants with their First Set of Requests for Production Directed to Defendants. A true and correct copy of Plaintiffs' First Set of Requests for Production Directed to Defendants is attached hereto as Exhibit A. Plaintiffs' document requests seek specific information relating to allegations of GEICO's methods, practices and procedures for reducing, denying, and delaying PIP benefits for Defendants' Delaware insureds.

1

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL. REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY COURT ORDER.

2.    On December 12, 2007, Defendants responded to Plaintiffs' written discovery requests, failing to provide most of the requested documents. To date, Defendants have provided no electronic data, rules or reports of any kind.

3.    In an effort to resolve apparent impasses over discovery, and to determine *how* GEICO organized and stored data relating to PIP claims, Plaintiffs took a 30(b)(6) deposition and learned ███████████████████████████████████████████████████ ████████████████████████ Plaintiffs also learned that Defendants ████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████. Plaintiffs understand that ██ ████████████████████████████████████████████████████████████████████ ████████ Information from Defendants' ████████████████████████████████████ ████████have not been provided to Plaintiffs.

4.    Additionally, Plaintiffs believe that there are additional responsive documents that Defendants have failed or refused to produce, specifically those responsive to requests nos. 12, 13, 14, 16, 19, 20, 21, 22, 25, 40, 41, 42, 44, 45, 47, 48, 49, 52, 54, 55, 56, 58, 60, and 62, which responses may be in the form of electronic data.

5.    As of the date of this motion, the parties have been unable to resolve this dispute without Court intervention (*See, e.g.,* correspondence regarding the efforts to resolve this dispute attached hereto as Exhibit B), as set forth in the attached certification of Christopher P. Simon, Esquire, made in accordance with Fed. R. Civ. P. 37(a)(2)(B). (*See* Exhibit C hereto.)

---

[1] The deponent, ██████████████████████████████████████████████████████████ ██████████████████████████████████████████

[2] Defendants' ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL. REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY COURT ORDER.

6.      Plaintiffs respectfully request that this Court enter an order overruling Defendants' objections to Plaintiffs' requests for production, and compelling the Defendants to provide responsive documents to requests for production nos. 12, 13, 14, 16, 19, 20, 21, 22, 25, 40, 41, 42, 44, 45, 47, 48, 49, 52, 54, 55, 56, 58, 60, and 62, and awarding Plaintiffs the costs and expenses related to filing and prosecuting this motion.

7.      Fed. R. Civ. P. 37(a)(2)(B) provides in pertinent part as follows:

> If ... a party fails to permit inspection as requested ... the discovering party may move for an order compelling an answer. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make the discovery in an effort to secure the information or material without court action.

Fed. R. Civ. P. 37(a)(2)(B).  Fed. R. Civ. P. 37(a)(3) further provides:   "[A]n evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(3).

8.      Discovery in these cases is governed by the Federal Rules of Civil Procedure. With respect to the scope of discovery, Rule 26 provides, in pertinent part, that a party may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.  In the Third Circuit, "it is well recognized that the federal rules allow broad and liberal discovery." *Westchester Fire Ins. Co. v. Household Int'l, Inc.*, 2005 WL 23351, *2 (D. Del. 2005) (Exhibit D hereto); *Pacitti v. Macy's,* 193 F.3d 766, 777-78 (3d Cir.1999) (citing *In re Madden,* 151 F.3d 125, 128 (3d Cir.1998)).

9.      Broad discovery is warranted in this case, including discovery on any facts that might serve as a basis for certifying a class in this case. Even without certification of a class, however, Plaintiffs are entitled to discovery on the Defendants' pattern and practice of analyzing, paying or denying PIP claims, which resulted in the denial of Plaintiffs' contractual

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL.  REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY COURT ORDER.

and lawful benefits.  Plaintiffs have repeatedly asked for information related to GEICO's review, analysis, and treatment of PIP claims submitted by their Delaware insureds, as well as information regarding Defendants' advertising and cost containment measures because they believe such requests are relevant to their direct causes of action.  Defendants have steadfastly refused to respond.

10.    Plaintiffs believe that the documents and electronic data, including ▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓ will provide helpful and relevant information in proving Plaintiffs' claims and in certifying a class.  Defendants have made no compelling argument as to why the ▓▓▓▓▓▓▓▓▓▓▓▓ should not be provided.

WHEREFORE, for the reasons set forth herein, Plaintiffs respectfully request that the Court enter an order compelling Defendants to provide documents, rules and electronic data responsive to requests for production nos. 12, 13, 14, 16, 19, 20, 21, 22, 25, 40, 41, 42, 44, 45, 47, 48, 49, 52, 54, 55, 56, 58, 60, and 62, and copies of the ▓▓▓▓▓▓▓▓▓▓▓▓ to Plaintiffs, and awarding Plaintiffs their fees and costs for filing and prosecuting this motion.

Dated: February 25, 2008         CROSS & SIMON, LLC
       Wilmington, Delaware
                                 By: _____
                                 Richard H. Cross, Jr. (No. 3576)
                                 Christopher P. Simon (No. 3697)
                                 Kevin S. Mann (No. 4576)
                                 913 North Market Street, 11th Floor
                                 P.O. Box 1380
                                 Wilmington, Delaware  19899-1380
                                 (302) 777-4200

                                 *Attorneys for Plaintiffs*

4

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL.  REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY COURT ORDER.

# Exhibit A

## IN THE UNITED STATES DISTRICT COURT
### FOR THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| KERRY JOHNSON and SHARON ANDERSON, on behalf of themselves and all others similarly situated, | ) ) ) ) ) |  |
| Plaintiffs, | ) ) | C.A. No. 1:06-cv408 (JJF) |
| v. | ) ) ) | NON-ARBITRATION |
| GOVERNMENT EMPLOYEES INSURANCE COMPANY, GEICO CASUALTY COMPANY, GEICO GENERAL INSURANCE COMPANY, and GEICO INDEMNITY COMPANY, | ) ) ) ) ) ) ) | TRIAL-BY JURY DEMANDED CLASS ACTION |
| Defendants. | ) |  |

## PLAINTIFFS' FIRST SET OF DOCUMENT REQUESTS
### DIRECTED TO DEFENDANTS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiffs Kerry Johnson and Sharon Anderson, on behalf of themselves and all others similarly situated, request that Defendants Government Employees Insurance Company, GEICO Casualty Company, GEICO General Insurance Company and GEICO Indemnity Company (hereinafter collectively, "GEICO"), produce within thirty (30) days to the offices of Cross & Simon, LLC, 913 N. Market Street, 11ᵗʰ Floor, Wilmington, Delaware 19801 the following documents:

## DEFINITIONS

1.      The terms "you", "your", "Defendants" or "GEICO" means Government Employees Insurance Company, GEICO Casualty Company, GEICO General Insurance Company, and/or GEICO Indemnity Company, and their employees, directors, officers, partners, managing directors, members, managing members, affiliates, subsidiaries, attorneys, accountants, agents and any other persons or entities acting for, or on its behalf.

2.      The term "Plaintiffs" means Kerry Johnson and Sharon Anderson, on behalf of themselves and all others similarly situated, their attorneys, accountants, agents and any other persons or entities acting on their behalf.

3.      The term "Insured" or "Insureds" means any person residing in the State of Delaware who is a party to an automobile insurance and/or related agreement with one or more of the Defendants, including, but not limited to Plaintiffs, from June 26, 2001 to the present.

4.      The term "person" means not only natural persons, but also, without limitation, firms, proprietorships, corporations, partnerships, associations, unincorporated associations, and governmental bodies, agencies, and officials and every other type of organization or entity.

5.      The term "document" means the original and all drafts and copies (including copies bearing notations or marks not found on the original) of any writings or printed, graphic or electronically recorded materials of any nature whatsoever, including but not limited to, correspondence, records, reports, memoranda, notes, calendar or diary entries, letters, facsimile transmissions, envelopes, e-mails, telegrams, telexes, telephone

bills, other written communications, messages (including, but not limited to, reports of telephone conversations and conferences), studies, summaries, tabulations, analyses, printed matter, minutes, photographs, film, tapes (electronic, audio and visual), computer diskettes, data files, financial statements, contracts, agreements, other legal documents and instruments, journals, ledgers, other accounting records, canceled or returned checks, manuals, orders, statements, bills, receipts, vouchers, notebooks, data sheets and records kept by any other means.  In all cases where originals and/or non-identical copies are not available, the term "document" also means identical copies of original documents and copies of non-identical copies.

This definition includes all documents in your actual or constructive possession, custody or control, or in the possession, custody or control of your employer, attorneys, or agents.  If any document was, but is no longer, in your possession or subject to your control or was known to you, but is no longer in existence, state whether it is:

(a)    missing or lost;

(b)    has been destroyed;

(c)    has been transferred, voluntarily or involuntarily, to others; or

(d)    otherwise disposed of and, in such instance, explain in detail

the circumstances surrounding the authorization for such disposition and state the date or approximate date thereof.

6.    The term "identify" means, when used in reference to:

(a)    a document, to state separately (i) its description (e.g., letter, report, memorandum, etc.), (ii) its date, (iii) its subject matter, (iv) the identity of each author or signer, (v) its present location and the identity of its custodian, (vi) the number of pages,

3

and (vii) if any such document is no longer in your possession or subject to your control, to state what disposition was made of it and the date of the disposition;

(b)    a natural person or persons, to state separately (i) the full name of each such person, (ii) his or her present, or last known, business address, and (iii) his or her present, or last known, residential address;

(c)    an organization or entity other than a natural person (e.g., a company, corporation, firm, association, or partnership), to state separately (i) the full name and type of organization or entity, (ii) the date and state of organization or incorporation, (iii) the address of each of its principal places of business, and (iv) the nature of the business conducted; and

(d)    a conversation, to (i) provide the date of the conversation, (ii) provide the location, (iii) identify the participants, (iv) state whether the conversation was by telephone, in person, or by other means, and (v) state the details of the conversation.

7.    The term "Complaint" means Plaintiffs' First Amended Class Action Complaint, dated August 24, 2006, and any previously or subsequently filed complaint filed in the above-captioned class action proceeding.

8.    The term "Answer" means any of Defendants' pleadings responsive to the Complaint.

9.    The term "PIP" means Personal Injury Protection and any such policy of insurance provided by one or more of the Defendants to an Insured of the type described and governed by Chapter 21 of Title 21 of the State of Delaware Code (21 Del. C. § 2118B).

4

10.    The term "IME" means a PIP-related medical evaluation of an Insured ordered by, or conducted by one or more of the Defendants.

11.    The term "Treatment Provider" means any doctor, physician, therapist, group of physicians or associated medical, therapy or treatment practice including but not limited to any chiropractor, osteopath, nurse or other health care person that provided treatment to any Insured in connection with a PIP-related claim.

12.    The term "IME Provider" means any doctor, physician, therapist, group of physicians or associated medical, therapy or treatment practice retained by or contracted by one or more of the Defendants at any time for the purpose of conducting PIP-related insurance medical evaluations, including but not limited to any chiropractor, osteopath, nurse or other health care person engaged by Defendants to assess Plaintiffs' condition, injuries, complaints and/or medical records.

13.    The term "medical provider" means any doctor, physician, therapist, osteopath, chiropractor, or medical-related, therapy or treatment practice, or group thereof, whatever it might be called, who or which provides medical service, treatment or medical procedure.

14.    The term "medical procedure" means any procedure or treatment recommended, ordered, or directed by any medical provider.

## INSTRUCTIONS

1.    In construing this Discovery Request:  (a) the singular shall include the plural and the plural shall include the singular and (b) the words "and" and "or" shall be read either disjunctively or conjunctively so as to bring within the scope of this Discovery Request all information that might otherwise be construed to be outside its scope.

5

2.    If an answer or any information is withheld on the ground of any privilege or immunity, state the following:

(a)    The nature of the privilege or immunity being claimed;

(b)    The type of document or the nature of the information;

(c)    The general subject matter of the document or the information;

(d)    The identity of each person who created, sent, or received (i) the original of the document or any copy thereof, or (ii) the information;

(e)    The date(s) on which the document or information was created, sent, and/or received; and

(f)    A description of the document or information sufficient to identify it.

3.    These Discovery Requests are continuing in nature and you are required to promptly supplement your responses to this Discovery Request to the extent you locate additional documents or acquire additional information, or to the extent subsequent amended pleadings modify or raise new allegations and claims.

4.    In responding to these Discovery Requests, respondent shall identify the particular Defendant to which the response applies or relates.

5.    Any electronically stored information produced in response to discovery requests should be produced in native file format, unless otherwise agreed upon.

6.    Plaintiffs reserve the right to amend, supplement, and/or modify these Discovery Requests.

### DOCUMENT REQUESTS

1.    All documents identified in your responses to Plaintiffs' First Set of Interrogatories, served simultaneously herewith.

6

2.    Any and all documents relating to, referring to, or constituting any communications between you and Kerry Johnson and his attorneys, including but not limited to Kerry Johnson's insurance policy contract with you, endorsements and declaration page in effect on July 16, 2004.

3.    Any and all documents relating to, referring to, or constituting any communications between you and Sharon Anderson and her attorneys, including but not limited to Sharon Anderson's insurance policy contract with you, endorsements and declaration page in effect on August 3, 2004.

4.    Any and all documents, including but not limited to correspondence, memoranda and notes (including notes of telephone conversations) relating, referring to or otherwise evidencing any communications between Defendants and any person, at any time, relating to Kerry Johnson.

5.    Any and all documents, including but not limited to correspondence, memoranda and notes (including notes of telephone conversations) relating, referring to or otherwise evidencing any communications between Defendants and any person, at any time, relating to Sharon Anderson.

6.    Any and all documents referring to, relating to, or otherwise evidencing denial, in full or in part, of Kerry Johnson's PIP medical bills submitted to you, including, but not limited to, explanations for denial of full payment.

7.    Any and all documents referring to, relating to, or otherwise evidencing denial, in full or in part, of Sharon Anderson's PIP medical bills submitted to you, including, but not limited to, explanations for denial of full payment.

7

8.    Any and all documents relating to any communication between Defendants and any Treatment Provider for Kerry Johnson, either written or oral, from the date of Kerry Johnson's July 16, 2004 automobile accident to the present date, relating to Kerry Johnson's medical treatment and expenses, including but not limited to, the date of such communications, the nature and form of communications, the names, addresses and telephone numbers of persons involved in those communications.

9.    Any and all documents relating to any communication between Defendants and any Treatment Provider for Sharon Anderson, either written or oral, from the date of Sharon Anderson's August 3, 2004 automobile accident to the present date, relating to Sharon Anderson's medical treatment and expenses, including but not limited to, the date of such communications, the nature and form of communications, the names, addresses and telephone numbers of persons involved in those communications.

10.    Any and all documents, including but not limited to, correspondence, reports, memoranda and notes (including notes of telephone conversations) between Defendants and any IME Provider regarding Kerry Johnson's injuries.

11.    Any and all documents, including but not limited to, correspondence, reports, memoranda and notes (including notes of telephone conversations) between Defendants and any IME Provider regarding Sharon Anderson's injuries.

12.    Any and all documents, including, but not limited to, correspondence, reports, memoranda and notes (including notes of telephone conversations) between Defendants and any other expert or other persons engaged by the Defendants to assess the reasonableness or necessity of Kerry Johnson's PIP medical bills and medical treatment.

8

13.    Any and all documents, including, but not limited to, correspondence, reports, memoranda and notes (including notes of telephone conversations) between any Defendant and any other expert or other persons engaged by any Defendant to assess the reasonableness or necessity of Sharon Anderson's PIP medical bills and medical treatment.

14.    All documents that refer or relate to the PIP claims of Kerry Johnson including but not limited to documents referencing your processing, handling and evaluation of said claims and documentation regarding Kerry Johnson's IME.

15.    Any and all documentation that record the number of medical exams/reviews done by Dr. Willie Thompson and the amount paid by Defendants to Dr. Willie Thompson for the medical exams and or medical reviews conducted by Dr. Willie Thompson.

16.    All documents that refer or relate to the PIP claims of Sharon Anderson including but not limited to documents referencing your processing, handling and evaluation of said claims and documentation regarding Sharon Anderson's IME, if any.

17.    Any and all lists of the section, unit, or office and its make up that handled Kerry Johnson's PIP or related claim, with a breakdown by job title and responsibility of all individuals who make up that section, unit, or office.

18.    Any and all lists of the section, unit, or office of any Defendant and its employees that handled Sharon Anderson's PIP or related claim, with a breakdown by job title and responsibility of all individuals who make up that section, unit, or office.

19.    Any and all documents in any form relating to any performance goals and objectives or challenges, whatever it may be called, for each and every person who in any

9

way touched, handled, processed, reviewed, or supervised Kerry Johnson's files with any Defendant. These goals may take the form of statistical performance and/or evaluation of claims superintendents.

20.    Any and all documents in any form relating to any performance goals and objectives or challenges, whatever it may be called, for each and every person who in any way touched, handled, processed, reviewed, or supervised Sharon Anderson's files with any Defendant. These goals may take the form of statistical performance and/or evaluation of claims superintendents.

21.    Any and all documents in any form relating to any individual unit challenges for a business unit of any Defendant, including performance goals and objectives or challenges, whatever it may be called, for the unit worked by every person who in any way touched, handled, processed, reviewed, or supervised Sharon Anderson's files with any Defendant. These goals may take the form of statistical performance and/or evaluation of claims superintendents.

22.    Any and all documents in any form relating to any individual unit challenges for a business unit of Defendant, including performance goals and objectives or challenges, whatever it may be called, for the unit worked by every person who in any way touched, handled, processed, reviewed, or supervised Kerry Johnson's files with any Defendant. These goals may take the form of statistical performance and evaluation of claims superintendents.

23.    Any and all documents and records relating to any investigation or internal discipline by any Defendant relating to any employee connected with the PIP claims of Kerry Johnson.

24.    Any and all documents and records relating to any investigation or internal discipline by any Defendant relating to any employee connected with the PIP claims of Sharon Anderson.

25.    Any and all documents showing any goal for average amount paid on PIP claims for cases in the business unit of any Defendant that handled Kerry Johnson's claims from the time of his accident until present date including but not limited to any documents that demonstrate a regional basis for comparison of every unit in the Delaware, and all documents that compare or show the statistical goals for adjusters in every unit Delaware.

26.    Any and all documents showing any goal for average amount paid on PIP claims for cases in the business unit of any Defendant that handled Sharon Anderson's claims from the time of his accident until present date including but not limited to any documents that demonstrate a regional basis for comparison of every unit in the Delaware, and all documents that compare or show the statistical goals for adjusters in every unit Delaware.

27.    Any and all complaint records or logs for all Defendant offices in Delaware regarding PIP claims from June 26, 2001 to the present. If such records or logs are not kept, then produce copies of complaints received and documented in whatever form from any of the following, including but not limited to members of the public, Insureds, attorneys, insurance commissioners, their agents or offices, better business bureaus, and public interest groups.

28.    Any and all sales or marketing literature supplied to your employees, brokers or agents in regard to PIP coverage in Delaware from June 26, 2001 to the present.

29.    Any and all documentation relating to the reserve history on Kerry Johnson's file.

30.    Any and all documentation relating to the reserve history on Sharon Anderson's file.

31.    Any and all motion or video pictures, still photographs, plans, drawings, sketches or diagrams regarding Kerry Johnson's collision and/or of Kerry Johnson, including, but not limited to, documentation of the date each item was made; the name, address and employer of the person making or taking the same; and the name, address and employer of the person in whose possession the same now is.

32.    Any and all motion or video pictures, still photographs, plans, drawings, sketches or diagrams regarding Sharon Anderson's collision and/or of Sharon Anderson, including, but not limited to, documentation of the date each item was made; the name, address and employer of the person making or taking the same; and the name, address and employer of the person in whose possession the same now is.

33.    Any and all documents relating to, reviewed, consulted or relied upon by you for, or which, form the basis for your responses asserted in your Answer.

34.    Any and all documents you intend to introduce into evidence at trial.

35.    All documents that refer or relate to or reflect any interview conducted by you or on your behalf with respect to the occurrences described in the Complaint.

36.   All documents provided to or reviewed by any person whom you intend to call as a witness at or in connection with the trial or other evidentiary hearing in this case.

37.   With respect to each person whom you expect to call as an expert witness at or in connection with the trial or other evidentiary hearing in this case:

a.   all documents provided to or reviewed by the expert;

b.   a current curriculum vitae, resume and any other documents which describe the expert's current qualifications;

c.   all reports or other documents produced by the expert which express any findings, conclusions and/or opinions about any of the issues in this case;

d.   all documents upon which the expert's findings, conclusions and/or opinions are based; and

e.   all exhibits to be used as a summary of or support for the expert's findings, conclusions and/or opinions.

38.   All documents including, but not limited to, training manuals, policy manuals, employee handbooks, claims adjuster handbooks, instruction books, educational or learning materials, or any other documents or materials that refer or relate to the training, instruction or education of your employees with respect to any Defendant's policies and procedures for processing claims for PIP benefits in Delaware, including without limitation any claims manuals or similar written guidelines that were in effect as of June 26, 2001 to the present.

39.   Any and all videotapes, cassette recordings, photographs, films, or any other photographic representation in whatever form referring to, relating to or otherwise

13

evidencing training and/or instructions to your employees, adjusters, or managers relating to PIP claim processing or evaluation from June 26, 2001 to the present.

40.    Any and all internal memoranda or correspondence generated by any Defendant or any of its employees, agents or representatives discussing, commenting on, addressing or instructing on any policy of not paying PIP medical bills in part or full.

41.    A complete set of "reason codes" or other codes used by Defendants to determine or explain whether or not PIP medical bills or payments are "reasonable" and/or "necessary" including the source of said code as well as an explanation for all "reasons" in use by Defendants from June 26, 2001 to the present.

42.    A complete list of all hospitals and other medical providers, including addresses, in the same area as Treatment Providers providing the same services as those provided to Plaintiffs, used for determining the "reasonable" rate as outlined by any Defendant's internal policies, and used to calculate amounts paid, in full or in part, or not paid to Sharon Anderson or Kerry Johnson in response to a PIP claim, including but not limited to a copy of all applicable rates for medical procedures from June 26, 2001 to the present.

43.    Any and all reports or documents printed, bound or kept in whatever form that would contain information concerning a comparison of the costs of outside medical providers or vendors who provide medical services for any Defendant for the applicable region of the United States assigned by any Defendant to include Delaware, including but not limited to any cost savings runs from June 26, 2001 to the present.

44.    Any and all reports or documents from any Defendant's regional, divisional, home, or branch offices of any kind, that purport to measure performance of

employees, vendors, branch office or unit compliance with medical cost containment or medical cost management procedures, manuals or guidelines from June 26, 2001 to the present.

45.    Any and all monthly reports generated by any and all outside vendors that state the dollar amount of PIP medical examinations they conduct or medical claims they reviewed for Defendants from June 26, 2001 to the present.

46.    Any and all form letters used regarding any type of medical cost containment program or policy by any Defendant from June 26, 2001 to the present.

47.    Any and all documentation used or generated by any Defendant to determine what constitutes a "reasonable" charge for services in New Castle County, Delaware from June 26, 2001 to the present.

48.    Any and all documentation used or generated by any Defendant to determine what constitutes a "reasonable" charge for a claim submitted by an Insured under PIP.

49.    Any and all documentation used or generated by any Defendant to determine whether a medical treatment billed under PIP exceeds the level of service required by the diagnosis given or the condition for which an Insured is being treated, including any documents listing other medical providers, what their charges are for specific levels of services, and criteria for making such a determination.

50.    Any document that contains any policy, directive or any other writing that mentions any Defendant's policy of or determination to deny and/or reduce the payment of bills submitted by Insureds under PIP, under any justification or reason code from June 26, 2001 to the present.

15

51.    A list of the names, addresses, job titles, and authority of all individuals supplying documents in response to these Requests for Production, and the respective Request numbers for which such individuals supplied the documents in response to.

52.    All documents or other recorded material that refer or relate to the training, instruction or education of your employees, agents or other representatives with respect to the underwriting, drafting or placement of PIP coverage, or of insurance contracts providing or purporting to provide PIP coverage that were in effect as of June 26, 2001 to the present.

53.    All contracts, written agreements or memoranda of understanding by or between you and any IME provider in connection with any PIP claim in Delaware that were in effect from June 26, 2001 to the present.

54.    Any and all documents used or relied upon in the creation of the Notice of Removal and the attached Affidavits of Jan Stewart, Jaci Todd, and Tim Henderson, filed in the District Court of the District of Delaware on June 27, 2006.

55.    Any and all documents containing the names and addresses of all Delaware insureds that have made or submitted PIP claims to any Defendant from June 26, 2001 to the present.

55.    Any and all documents relating to the total amount of PIP medical bills submitted to any Defendant by Insureds and the total medical expenses paid by you relating to those bills from June 26, 2001 to the present.

56.    Each Defendant's audited financial statement for the years 2001, 2002, 2003, 2004, 2005, 2006 and 2007.

16

56.    Each Defendant's annual reports for the years 2001, 2002, 2003, 2004, 2005, 2006 and 2007.

57.    All of Defendants' quarterly reports prepared by branch offices within Delaware, dating June 26, 2001 to the present, which evidence the handling of PIP medical bill claims.

58.    Each Defendant's quarterly reports prepared by regional offices assigned to Delaware, dating June 26, 2001 to the present, which evidence the handling of PIP medical bill claims.

59.    All documentation from June 26, 2001 to the present, evidencing any communications between any Defendant's Delaware offices and any Defendant's regional, home office or headquarters relating to the use of cost containment services for review of PIP medical expenses.

60.    All documents from any Defendant's accounting department evidencing any effect on PIP medical claims expense by your use of cost containment services from June 26, 2001 to the present.

61.    Any and all documentation describing each Defendant's corporate organization operating in the State of Delaware including but not limited to the current Articles of Incorporation; documents that show the names used by the corporation during the past ten years and the dates each was used; all documents that purport to show the date and place of incorporation; documents showing the address of the principle place of business; and documents demonstrating each Defendant's qualifications to do business in Delaware.

17

62.     Each Defendant's table and policies for compensation, salary structure, and compensation and salary increase guidelines for Delaware PIP adjusters, analysts, supervisors, branch and regional managers from June 26, 2001 to the present.

63.     Each Defendant's incentive and performance based compensation plans for all Delaware PIP adjusters, analysts, supervisors, branch and regional mangers from June 26, 2001 to the present.

64.     Each Defendant's claim payment goals, performance plans and measurements, performance evaluation programs, balanced scorecard, closed file review, and quality assurance guidelines for all Delaware PIP adjusters, analysts, supervisors, branch and regional managers from June 26, 2001 to the present.

65.     Each Defendant's claim payment goals, performance plans and measurements, performance evaluation programs, balanced scorecard, closed file review, and quality assurance guidelines for all Delaware claims offices reviewing and/or adjusting PIP, PIP branch claim office and your regional office from June 26, 2001 to the present.

66.     Each Defendant's performance, planning and reviews, assessments and performance reviews of claim payment goals, performance plans and measurements, performance evaluation programs, balanced scorecard, closed file reviews, and quality assurance evaluations for all Delaware claims offices reviewing and/or adjusting PIP claims, PIP branch claims office and your regional office from June 26, 2001 to the present.

67.     List all computer equipment used by Defendants, including but not limited to: hardware and/or peripherals attached to a computer such as computer cases [desktop,

18

tower, portable/batteries, all-in-one]. Include a description of equipment and all users for the period June 26, 2001 to the present.

    a.    Identify the e-mail system(s) used by Defendants, including but not limited to current, backed-up and archived programs and accounts. Indicate whether e-mail is server-based or web-based and state any user names and addresses, and domain names and addresses.

    b.    Produce copies of any and all written policies for the retention of documents, or description of any policy or practice regarding retention of documents.

    c.    Produce any policy or procedure, written or unwritten, for the destruction of documents, including but not limited to business records.

    d.    Identify by job title, job description, and business address and telephone number, any person who has knowledge regarding retention or destruction of documents.

    e.    Identify any documents destroyed. Also, please state which electronic files have been deleted or overwritten, and the dates of destruction or overwriting.

Dated: November 2, 2007        CROSS & SIMON, LLC
      Wilmington, Delaware

By: _____

Richard H. Cross, Jr. (No. 3576)
Christopher P. Simon (No. 3697)
Kevin S. Mann (No. 4576)
913 North Market Street, 11th Floor
P.O. Box 1380
Wilmington, Delaware 19899-1380
(302) 777-4200

*Attorneys for Plaintiffs*

19

# Exhibit B

CROSS & SIMON, LLC
ATTORNEYS AT LAW
913 NORTH MARKET STREET
11ᵀᴴ FLOOR
WILMINGTON, DELAWARE 19801
302-777-4200 / 302-777-4224 (FAX)
www.crosslaw.com

Christopher P. Simon
csimon@crosslaw.com

MAILING ADDRESS:
P.O. BOX 1380
WILMINGTON, DE 19899-1380

*SUSSEX COUNTY OFFICE:*
17577 NASSAU COMMONS BLVD.
SUITE 102
LEWES, DE 19958
(302) 644-4269
(302) 258-0815 (FAX)

January 24, 2008

**BY ELECTRONIC MAIL,**
**& U.S. MAIL**

George M. Church, Esquire
Miles & Stockbridge P.C.
10 Light Street
Baltimore, Maryland 21202

> *Re:*    *Johnson, et al. v. Government Employees Insurance Co., et al.*
> *D. Del. C.A. No. 1:06-cv-408*

Dear George:

After further review of Defendants' Answers to Interrogatories and Defendants' Response to Plaintiffs' First Set of Document Requests dated December 12, 2007, we believe most responses are inadequate, and most objections unsupportable. Most of the 6,157 documents that Defendants produced are multiple copies of the same employee training manual. Missing from Defendants' production are documents (including correspondence) relating to the Defendants' policies for analyzing, reviewing, handling and treatment of PIP claims. For example, Defendants identify their use of ▮▮▮▮▮▮ and ▮▮▮▮▮▮▮▮▮▮▮ databases to review and process PIP claims, however Defendants fail to produce or identify a single document that explains, describes, documents or identifies how and why these programs are implemented or used. Defendants also failed to produce any materials which describe or identify advertising or sales of their policies to their Delaware insureds. We find the absence of copies of any e-mail correspondence between Defendants' employees troubling.

Specific objections to Defendants' responses are set forth as follows:

**Document Requests**

Request for Production Nos. 12 and 13. Plaintiffs request any and all documents between Defendants and any other expert or other persons engaged by Defendants to assess the reasonableness or necessity of Kerry Johnson's and Sharon Anderson's PIP medical bills and medical treatment. Defendants object to this request to the extent they might have consulted with experts but have not yet identified which experts they might call to testify at trial. Plaintiffs

CROSS & SIMON, LLC
January 24, 2008
Page 2 of 7

are not seeking information on Rule 26 consulting experts retained in connection with, or anticipation of any litigation. Plaintiffs are seeking information and documents relating to the Defendants' actions to assess and formulate an opinion whether PIP medical bills and medical treatment were reasonable and necessary, at the time Defendants made decisions to approve or deny benefits to Plaintiffs and all their Delaware insureds. If Defendants were not relying on a person with expertise in these areas to make such a determination or assessment, and Defendants conducted no such assessment at the time they made their decisions to deny benefits, then Defendants should confirm that immediately. If Defendants did, in fact assess the reasonableness and necessity of PIP medical bills and treatment, then we expect all such information and documents (including, not limited to correspondence, reports, memoranda, notes) that support that opinion to be produced immediately.

Request Nos. 14 and 16. Plaintiffs seek all information relating to the PIP claims of Kerry Johnson and Sharon Anderson. As set forth herein, Defendants have produced nothing which demonstrates or documents any application or use of the ███████. and ████████ ███████ software/database to review and process Kerry Johnson's and Sharon Anderson's PIP claims. Any and all documents, in electronic format or otherwise, relating to Defendants' use of these databases should be turned over immediately.

Request Nos. 19, 20, 21, 22 and 25. Plaintiffs seek any and all documents in any form relating to any performance goals, objectives or challenges, whatever it may be called, for each and every person or business unit who in any way touched, handled, processed, reviewed, or supervised Kerry Johnson's and Sharon Anderson's files with any Defendant. These goals may take the form of statistical performance and/or evaluation of claims superintendents. Defendants state they are not in possession of any such documents. We note, for example, ████████████, ████████████████████████████████████████████████████████████ As ████████████████ █████ ███████████████████████████████████████████████████████████████████ █████████████████████████████████████████████ ██████████████████████ ████████████ database ████████████████ information processing ███████████████████. ████████████. Defendants should immediately produce any and all documents, in electronic format or otherwise, that relate to any of Defendants' use, review, or analysis of performance objectives, guidelines or goals, including but not limited to their choice of definitions for implementation of ████ for handling PIP claims, and any and all documents that relate to, or serve as the bases for, Defendants' decision to use these databases.

Request No. 40. Plaintiffs seek any and all internal memoranda or correspondence generated by any Defendant or any of its employees, agents or representatives discussing, commenting on, addressing or instructing on any policy of not paying PIP medical bills in part or full. Defendants state that they do not have a policy of not paying PIP medical bills in full. Rather, Defendants state that Defendants' policy is to pay reasonable bills for medically necessary, causally related medical treatment. We hereby request that Defendants produce all internal memoranda or correspondence discussing, commenting on, addressing or instructing on Defendants' policy for paying PIP medical bills. This would include, but not be limited to, any correspondence (including e-mails) by Defendants' management and employees regarding their

CROSS & SIMON, LLC
January 24, 2008
Page 3 of 7

use of ████████, or ████████████ software, cost-containment measures and other issues relating to Defendants' analysis and management of PIP claims.

Request No. 41.  Please let us know when ████████, and ████████████ message modifiers will be produced.

Request No. 42.  Plaintiffs seek a list of all hospitals and other medical providers in the same area as the Treatment Providers, used for determining the "reasonable" rate as outlined by each Defendant's internal policies, and used to calculate the rate paid by the Defendants on each explanation of benefit form sent to an insured. Defendants objected to this request because, they say, it is vague, ambiguous and unclear. We believe the request is clear.  When the Defendants make a statement that a "fee charged by the treatment provider exceeds an amount which would appear reasonable when compared to charges of other providers in the same geographic area" the Defendant must have some basis for that statement.  Defendants expressly represent that they have compared charges to other providers in the same geographic area, however, Defendants state they are not in possession of any document that shows or reflects such comparison. How is that information stored and reviewed?  If Defendants really have no such information, we will presume that Defendants' statement on each of their explanation of benefits is false and without basis in fact.

Request No. 44.  Plaintiffs seek documents and information that purport to measure performance of an employee, vendor, branch office, or unit with respect to cost containment or medical cost management procedures.  Defendants object to this request as ambiguous and unclear, and then state that no such documents exist.  We believe this request is clear.  In response to interrogatory no. 31, in which Plaintiffs ask Defendants to "[i]dentify any statistical goals and any cost containment policies or procedures applied by Defendants' PIP section, unit, office, and/or regional office that handled or supervised in any way any Insured's PIP claims," Defendants state that they have no statistical goals, however, with regard to cost containment policies or procedures, Defendants identify their use of ████████, and ████████████ databases. Defendants use ████████ and ████████████ databases to manage their PIP claims and to implement cost management procedures in this area.  Defendants should immediately produce all documents and information responsive to this request.

Request No. 45.  Plaintiffs seek any and all monthly reports generated by all outside vendors that state the dollar amount of PIP medical examinations they conduct or medical claims they reviewed for Defendants from June 26, 2001 to the present. Defendants state that they have no such documents.  Plaintiffs respectfully request that Defendants turn over any documents by which Defendants review and analyze the services provided, directly or indirectly, by ████████ ████ and ████████████.

Request No. 47.  Plaintiffs seek any and all documents used or generated by any Defendant to determine what constitutes a "reasonable" charge for medical services in New Castle County, Delaware.  In their explanations of benefits, Defendants repeatedly make a statement that a "fee charged by the treatment provider exceeds an amount which would appear

CROSS & SIMON, LLC
January 24, 2008
Page 4 of 7

reasonable when compared to charges of other providers in the same geographic area."
Defendants state they, and their agents, have no documents to determine what constitutes a
"reasonable" charge for services in New Castle County, Delaware. If Defendants have no such
information, we will presume that Defendants' statement on each of their explanation of benefits
is false and without basis in fact.

Request No. 48. Plaintiffs seek any and all documents used or generated by any
Defendant to determine what constitutes a "reasonable" charge for a PIP claim. Again, if
Defendants have not used such information, we will presume that Defendants' statement on each
of their explanation of benefits is false and without basis in fact.

Request No. 49. Plaintiffs seek any and all documents used or generated by any
Defendant to determine whether a medical treatment billed under PIP exceeds the level of
service required by the diagnosis given or the condition for which an Insured is being treated,
including any documents listing other medical providers, what their charges are for specific
levels of services, and criteria for making such a determination. Defendants refer generally to
their use of the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓. Please provide a more specific response, and produce any documents that
explain or relate to the Defendants' use of the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Request No. 52. Please advise us on the status of Defendants' search for documents
responsive to this request.

Request No. 54. As set forth above, the parties have agreed to conduct a deposition of a
representative of the Defendants to determine how the Defendants organize and store
information on issues relating to this case, and how best this information can be produced. We
understand that information set forth in the Notice of Removal was obtained by ▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. We believe we are entitled to ▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

Request Nos. 55. As set forth above, Plaintiffs believe information on Defendants'
Delaware insureds be produced. Plaintiffs believe broad discovery is warranted in this case,
including discovery relating to whether this case should be certified as a class action.

Request Nos. 56. We believe the Defendants' revenues and profits earned from
managing PIP claims is relevant in this case. Defendants are in the business of collecting
premiums and managing claims; we expect that Defendants regularly review and analyze this
information. Repeated mention of cost-management or cost-containment is made in connection
with Defendants' use of ▓▓▓▓▓▓▓▓ and ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. ▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. We request this information be
produced immediately.

CROSS & SIMON, LLC
January 24, 2008
Page 5 of 7

Request No. 58. Plaintiffs believe any report generated by Defendants which evidence the handling of PIP claims is likely lead to the discovery of relevant or admissible evidence, and Plaintiffs object to Defendants' objection on this point. Plaintiffs request that this information be produced immediately.

Request No. 60. Plaintiffs seek any documents that evidence a review or analysis by Defendants of any cost-containment or cost-management system employed by Defendants to manage PIP claims and expenses. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. We request that documents responsive to this request be produced immediately.

Request No. 62. Plaintiffs seek any documents that evidence the existence of any compensation program directly tied to the analysis and handling of PIP claims. Defendants state that this information is not likely to lead to the discovery of admissible or relevant evidence. Defendants do not deny that such documents exist. Plaintiffs maintain that any incentive or compensation program linked to the handling and treatment of PIP claims is relevant to this case, and Plaintiff demand that Defendant produce this information immediately.

## Interrogatories

Interrogatory Nos. 6 and 7. Plaintiffs request that Defendants identify all facts and circumstances serving as Defendants' basis for Defendants' payment, in full or in part, of any and all medical bills submitted under PIP by Kerry Johnson and Sharon Anderson. Defendants respond that they produced all explanations of benefits detailing those payments with Defendants' Rule 26(a)(1) Disclosures. Defendants produced documentation stating in conclusory fashion why benefits were paid in full or in part (i.e., "the fee charged by the treatment provider exceeds an amount which would appear reasonable when compared to charges of other providers in the same geographic area."), however Defendants have not identified any facts and circumstances serving as a basis for those conclusions. Screen notes on the files produced make no mention of such consideration. Defendants refer generally to the use of ▓▓▓▓▓▓▓▓, and ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓but provide no further explanation. Plaintiffs request that Defendants supplement their response and provide more detail on how they reached the conclusions set forth on the explanations of benefits.

Interrogatory No. 10. As set forth fully herein, Plaintiffs request that Defendants supplement their response to interrogatory no. 10, and provide more detail on Defendants' use of, and reliance on ▓▓▓▓▓▓▓ and ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

Interrogatory No. 12. As set forth fully herein, Plaintiffs request that Defendants supplement their response to interrogatory no. 11, and provide more detail on Defendants' use of, and reliance on ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Plaintiffs further request that Defendants identify each instance where Defendants used American Medical Association criteria to make a determination that a medical treatment billed under PIP exceeded the level of service required by the diagnosis given or the condition for which an Insured was being treated,

CROSS & SIMON, LLC
January 24, 2008
Page 6 of 7

and identify any documents, notes, letters, correspondence memorializing and recording such use and reliance.

 Interrogatory No. 17. Plaintiffs request that Defendants identify the electronic system or hardware that processes ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and that Defendants identify the electronic system that runs the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ as well as any other system that manages PIP claims. While Defendants have identified their e-mail system in their Proposed Plan for Discovery of Electronic Documents, we note that Defendants have not produced a single piece of e-mail correspondence in response to Plaintiffs discovery.

 Interrogatory Nos. 22, 23, 24, 35, 36, 37, 38, 39, 40, 41 and 42. We previously objected to Defendants' refusal to provide adequate responses to requests for information relating to the reduction and denial of PIP benefits for all Defendants' Delaware insureds, or adequate responses to requests for information relating to the timing of Defendants' payments of PIP benefits to Delaware insureds. (See Interrogatory Nos. 35, 36, 37, 38, 39, 40, 41 and 42). The parties have agreed to conduct a deposition of a representative of the Defendants to determine how the Defendants organize and store information on these issues, and how best this information can be produced.

 While Plaintiffs are amenable to determining how best this information can be produced, Plaintiffs believe broad discovery is warranted in this case, including discovery relating to whether this case should be certified as a class action. *See Crowhorn v. Nationwide Mut. Ins. Co.*, 2002 WL 388115 (Del. Super. 2002) (citing *Benning*, 2001 WL 1388544, *1-2 (Del. Supr. 2001) (the Court must "'allow the parties to review all documents that it believes would bear on the viability of the class' and permit 'the parties to conduct sufficient discovery before it determines whether or not a viable class exists.' In addition, discovery should also encompass 'the question of whether or not a class action remains the superior method for the fair and efficient and adjudication of this litigation.'")). Plaintiffs believe they are entitled to discovery on issues relating to class certification, including whether a viable class exists and whether a class action will be a fair and efficient adjudication of the allegations made in this litigation. If, after reviewing this letter and applicable caselaw, Defendants still believe that Plaintiffs are not entitled to discovery on class certification issues and issues relating to Defendants' treatment of their Delaware insureds, please advise us immediately

 Interrogatory No. 43. We also note that Defendants objected to interrogatory no. 43. We believe the Defendants' revenues and profits earned from employing "cost-management" or "cost-containment" procedures is relevant in this case, and we request that your confirm that this information will be produced. Again, Defendants are in the business of collecting premiums and managing claims; we expect that Defendants regularly review and analyze this information.

CROSS & SIMON, LLC
January 24, 2008
Page 7 of 7

We thank you in advance for your cooperation in this matter.

Sincerely yours,

Christopher P. Simon

CPS:eb

cc:     Gary W. Alderson, Esquire (by electronic mail and hand delivery)
        Richard H. Cross, Jr., Esquire
        Kevin S. Mann, Esquire
        File Copy

**CROSS & SIMON, LLC**
ATTORNEYS AT LAW
913 NORTH MARKET STREET
11TH FLOOR
WILMINGTON, DELAWARE 19801
302-777-4200 / 302-777-4224 (FAX)
www.crosslaw.com

Christopher P. Simon
csimon@crosslaw.com

MAILING ADDRESS:
P.O. BOX 1380
WILMINGTON, DE 19899-1380

*SUSSEX COUNTY OFFICE:*
17577 NASSAU COMMONS BLVD.
SUITE 102
LEWES, DE 19958
(302) 644-4269
(302) 258-0815 (FAX)

January 31, 2008

**BY U.S. MAIL**
**& ELECTRONIC MAIL**

George M. Church, Esquire
Miles & Stockbridge P.C.
10 Light Street
Baltimore, Maryland 21202

   *Re:* *Johnson, et al. v. Government Employees Insurance Co., et al.*
     *D. Del. C.A. No. 1:06-cv-408*

Dear George:

  We write to follow-up on Plaintiffs' deposition of ▓▓▓▓▓▓▓, conducted Tuesday, January 29, 2008 at your office. We took ▓▓▓▓▓▓▓ deposition for the limited purpose of learning what and how the Defendants' store electronic information.

  As you well know by know, we have repeatedly asked Defendants for information relating to the Defendants' policies for analyzing, reviewing, handling and treatment of PIP claims. As set forth extensively in my numerous previous correspondence, to date, Defendants have failed to produce complete and full responses to Plaintiffs' written discovery requests. For instance, Defendants have summarily disclosed that they used or use ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Notwithstanding, prior to ▓▓▓▓▓▓▓ deposition, Defendants had not yet produced a single statement or document that explains, describes, documents or identifies how and why ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Nor have the Defendants produced a single piece of correspondence between Defendants and these parties.

  On Tuesday, during Plaintiffs deposition of ▓▓▓▓▓▓▓ we learned more about ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. We learned that the Defendants ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. We learned that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. We learned that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.



CROSS & SIMON, LLC
January 31, 2008
Page 2 of 4

We learned that ████████████████████████

We learned that ████████████████████████

We also learned that the Defendants ████████████████

We learned that Defendants regularly ████████████
For instance, Defendants ████████████████████. We learned that Defendants ████████████

As an initial matter, we believe after deposing ████████ that the Defendants have extensive information responsive to Plaintiffs' discovery requests that has not yet been produced. Defendants have the capability ████████████████. At the very least, Defendants ████ also understand that the Defendants ████████████ We request that the ████ further ████████ We request that Defendants produce ████████. Also, we expect to receive copies of the contract and related correspondence between Defendants and ████ as well as between Defendants and ████.

CROSS & SIMON, LLC
January 31, 2008
Page 3 of 4

Further, we request that Defendants produce detailed written explanations for ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Defendants should immediately produce any and all documents and correspondence, in electronic format or otherwise, that relate to any of Defendants'(including management's) use, review, or analysis of performance objectives, guidelines or goals, including but not limited to their ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

We have spoken with counsel for ▮▮▮▮▮▮. Counsel has stated she is not sure how much information ▮▮▮▮▮▮ has saved relating to its relationship with the Defendants, which terminated on ▮▮▮▮▮▮▮▮▮▮. Plaintiffs filed this complaint on April 19, 2006, ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ We trust that the Defendants contacted ▮▮▮▮▮▮▮▮ after this case was filed to preserve any and all records relating to Defendants' use of this system and that Defendants have maintained any databases that were resident on Defendant's systems. We will continue to work with ▮▮▮▮▮▮▮ to obtain relevant information however we expect the Defendants to produce any responsive materials, including information about services provided by ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ correspondence related to these claims

We have also been in contact with ▮▮▮▮▮▮▮▮▮▮▮▮ which has represented that Defendants have much, if not all of the information contained in our document requests. We understand the Defendants ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ We have requested information on this process from the Defendants, including information and correspondence between the parties relating to Defendants' decision to ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ We request that the Defendants make this material available to us immediately.

We believe the Defendants should have already produced much of the information we have requested previously, and as set forth herein. We find it troubling that Defendants would ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ As set forth in the complaint filed in April 2006, Plaintiffs allege that the Defendants routinely and illegally pay reduced amounts on medical bills submitted under PIP, and that Defendants routinely make such payments after the 30-day deadline established by 21 Del. C. § 2118B. It is clear from the complaints and written discovery what Plaintiffs seek. We are on a tight schedule for discovery in this case and this delay prejudices our ability to meet agreed upon, and Court-ordered deadlines. <u>We have numerous depositions to conduct in this case and we will begin taking those depositions without documentation, reserving all rights to re-notice witness depositions and seek leave of the Court for extensions of discovery deadlines because of the Defendants' delay.</u>

It is also troubling that Defendants were unable to produce a 30(b)(6) witness Tuesday who could discuss ▮▮▮▮▮▮▮▮▮▮▮▮ It is difficult to imagine that with all of the IT personnel and programmers on staff (many of whom were apparently employed by the Defendants when the Defendants were using ▮▮▮▮▮▮, that Defendants did not produce such a witness. If you do

CROSS & SIMON, LLC
January 31, 2008
Page 4 of 4

not agree to produce such a witness in the timeframe set forth below, we will seek relief from the Court.

Please let me know by Wednesday, February 6, 2008 whether and when the Defendants will comply with the requests set forth herein. We note that these requests are not exclusive, and we re-state our previous concerns and requests with Defendants' responses to date, as set forth in my earlier correspondence. If the Defendants are not willing to produce reports and information we request, and have repeatedly requested, we will have no choice but to seek relief from the Court.

We thank you in advance for your cooperation in this matter.

Sincerely yours,

Christopher P. Simon

CPS:eb

cc:    Gary W. Alderson, Esquire (by electronic mail and hand delivery)
       Richard H. Cross, Jr., Esquire
       Kevin S. Mann, Esquire
       File Copy

# Exhibit C

## CERTIFICATION OF CHRISTOPHER P. SIMON
### IN ACCORDANCE WITH FED. R. CIV. P. 37(a)(1)

I, Christopher P. Simon, hereby certify that I, and attorneys in my firm, have in good faith conferred or attempted to confer with counsel for Defendants in an effort to obtain resolution of this discovery dispute.

_CPS_

Christopher P. Simon (No. 3697)

# Exhibit D

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 23351 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

H

Westchester Fire Ins. Co. v. Household Intern., Inc.
D.Del.,2005.
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
WESTCHESTER FIRE INSURANCE CO., Plaintiff,
v.
HOUSEHOLD INTERNATIONAL, INC., House-
hold Retail Services, Inc., Household Bank (SB),
N.A., Beneficial National Bank USA, Defendants.
No. Civ.A. 02-1328 JJF.

Jan. 5, 2005.

J.R. Julian, of J.R. Julian, P.A., Wilmington,
Delaware, James J. Duggan, and Michael T. Glas-
cott, of Lustig & Brown, LLP, Buffalo, New York,
for Plaintiff, of counsel.
John A. Parkins, Jr., of Richards, Layton & Finger,
Wilmington, Delaware, John H. Mathias, Jr., Chris-
topher C. Dickinson, John P. Wolfsmith, Joseph F.
Arias, and Daniel Shim, of Jenner & Block LLP,
Chicago, Illinois, for Defendants, of counsel.

*MEMORANDUM OPINION*

FARNAN, J.
    *1 Presently before the Court are (1) the Mo-
tion For Protective Order (D.I.72) filed by Plaintiff
on June 18, 2004; (2) the Motion To Compel Dis-
covery Relating To Financial Institutions Endorse-
ment (D.I.74) filed by Defendants on June 18,
2004; (3) the Motion To Compel Deposition Of
Westchester's Corporate Representative Witness
(D.I.75) filed by Defendants on June 18, 2004; and
(4) the Motion To Compel Discovery Relating To
Westchester's Denials And Defenses (D.I.76) filed
by Defendants on June 18, 2004.

BACKGROUND

    This litigation stems from Defendants' claim
that Plaintiff Westchester committed fraud by al-

legedly selling comprehensive liability insurance to
Defendants that turned out to have a value far be-
low its purported worth. Underlying this dispute are
claims of fraud alleged by consumers against De-
fendants, arising from the sale or financing of satel-
lite television systems and other consumer products.

    In March 1998, Defendant Beneficial National
Bank USA ("Beneficial") filed suit against
Westchester in this Court seeking declaratory relief
concerning coverage for fraudulent lending claims
involving credit card accounts. In October 2000,
this Court granted Westchester's motion for sum-
mary judgment, holding that a Financial Institutions
Endorsement ("FIE") excluded coverage for predat-
ory lending claims. In May 2002, Defendant
Household International, Inc., Household Retail
Services, Inc., and Household Bank (SB), N.A.
(collectively, "Household") filed suit in federal
court in Illinois alleging that Westchester fraudu-
lently induced Household to purchase insurance
policies that excluded coverage for errors and omis-
sions ("E & O") claims. The case was transferred to
this Court and consolidated with a case brought by
Westchester seeking declaratory judgment that
predatory lending claims were not covered by any
Westchester policy.

    There are three Westchester insurance policies
at issue in this case. Two were issued to Household
and one was issued to Beneficial.

    Discovery in this lawsuit began in November
2003. In June 2004, Defendants filed motions to
compel seeking (1) discovery related to the draft-
ing, meaning, interpretation, or intent of
Westchester's FIE (D.I.74); (2) discovery relating to
the factual underpinnings of issues Westchester
raised by way of its denial and defenses to Defend-
ants' claims (D.I.76); and (3) Westchester's desig-
nation of one or more representative witnesses to
provide deposition testimony on the topics listed in
(1) and (2) above (D.I.75).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 23351 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

The Court heard Oral Argument on these Motions on September 14, 2004. Because depositions of Defendants' insurance brokers, Johnson & Higgens, were scheduled to take place in November 2004, the Court directed Defendants to show from the brokers' testimony the relevance of the requested discovery to each of Defendants' motions to compel. Defendants submitted a Supplemental Brief In Support Of Motions To Compel Discovery. (D.I.111).

## DISCUSSION

### I. Legal Standard

*2 In relevant part, Rule 26 provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."Fed.R.Civ.P. 26(b)(1). In the Third Circuit, "it is well recognized that the federal rules allow broad and liberal discovery."*Pacitti v. Macy's*, 193 F.3d 766, 777-78 (3d Cir.1999) (citing *In re Madden*, 151 F.3d 125, 128 (3d Cir.1998)).

### II. Parties' Contentions

The parties make the same general arguments to support all four pending motions.

Westchester contends that Defendants' discovery should be limited to the specific manner in which Westchester allegedly misrepresented, tacitly or otherwise, coverage under the subject policies. Specifically, Westchester contends that Westchester's understanding of the FIE, the underlying insurance claims or other similar claims is not relevant to Defendants' fraud claim because there is no dispute as to the meaning of the FIE. Westchester argues that Defendants have not yet identified the acts or misrepresentations upon which Defendants are alleged to have relied upon to their detriment.

Defendants contend that fraud claims necessarily place at issue the alleged defrauder's knowledge and intent. Thus, Defendants contend that meaningful pursuit of their fraud claims requires discovery of Westchester's understanding of the FIE.

### III. Defendants' Motion To Compel Discovery Relating To Financial Institutions Endorsement (D.I.74)

By their motion, Defendants seek to compel production of documents relating to the drafting, meaning, interpretation, or intent of the FIE. In the alternative, Defendants seek permission to depose a 30(b)(6) witness in order to explore Westchester's institutional knowledge with regard to the FIE.

Westchester responds that interpretation of the FIE is not a part of this case, as there is no dispute as to its meaning.

Defendants now contend that the broker testimony demonstrates that further inquiry into Westchester's intent with regard to the FIE is warranted. Specifically, Defendants contend that "the lack of evidence that Defendants or the brokers strenuously objected to the FIE's inclusion in the policy supports Defendants' position that no one understood that the FIE would later be interpreted as restricting coverages as significantly as it has."(D.I. 111 at 12).

After reviewing the deposition testimony, Defendants' arguments, and documents provided in support of Defendants' motions to compel discovery, I conclude that Defendants have not demonstrated the relevance of the discovery requested with regard to the FIE. Defendants do not contend that Westchester withheld from Defendants or their brokers the existence or the contents of the FIE at any time during negotiation of the purchase of the umbrella policy. Rather, Defendants focus on the parties' contemporaneous intent, understanding, and

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 23351 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

representations with regard to the FIE's meaning. I find that there is no testimony suggesting that Defendants' insurance brokers requested or relied upon having the type of coverage that the FIE excludes. In fact, one of the insurance brokers, Mr. Pallis, testified that "providing coverage for fraud is against public policy and not covered by insurance."(D.I. 112, Ex. D at 70.) Notwithstanding the liberal discovery standard in the Third Circuit, for these reasons I conclude that Defendants have not demonstrated that discovery as to the meaning, scope, interpretation, drafting, or origin of the FIE is relevant to their fraud claim against Winchester, or that such discovery is reasonably calculated to lead to the discovery of admissible evidence. Thus, I will deny Defendant's Motion To Compel Discovery Relating To Financial Institutions Endorsement (D.I.74).

**IV. Motion To Compel Deposition Of Westchester's Corporate Representative Witness (D.I.75) filed by Defendants**

*3 Defendants' request, for the reasons described in sections II and III above, that Westchester present corporate representative testimony on the following topics: Westchester's understanding of the FIE, Westchester's intent in drafting the FIE, Westchester's intent in employing the FIE in its policies, and Westchester's intent in employing the FIE at the time a claim is made.

For the reasons given with regard to Defendants' Motion To Compel (D.I.74) in Section III above, I conclude that Defendants have not demonstrated that the requested discovery is relevant to their fraud claim against Winchester, or that such discovery is reasonably calculated to lead to the discovery of admissible evidence. Thus, I will deny Defendants' Motion To Compel Deposition Of Westchester's Corporate Representative Witness (D.I.75).

**V. Motion To Compel Discovery Relating To**

Westchester's Denials And Defenses (D.I.76) filed by Defendants

By their motion, Defendants seek an order compelling further responses to Interrogatory Nos. 6(a), 6(b), 6(f), 6(j), 6(k), 6(l), and 6(m).

With regard to Interrogatories 6(a) and 6(b), Westchester has offered to provide an amended response. Defendants have not indicated that they find Westchester's proposed amended responses insufficient.

With regard to Interrogatory Nos. 6(f), 6(j), and 6(l), in its response Westchester agrees to supplement its response.

With regard to Interrogatory Nos. 6(k) and 6(m), Defendants do not set forth in their brief (D.I.76) reasons why Westchester's responses are inadequate.

I find that the parties at this time do not require the Court's assistance to resolve their dispute with regard to Interrogatory 6. Thus, I will deny the Motion To Compel Discovery Relating To Westchester's Denials and Defenses (D.I.76) with leave to renew should Defendants find Westchester's amended responses insufficient.

**VI. Motion For Protective Order (D.I.72) filed by Plaintiff**

By its motion, Westchester seeks a protective order vacating or limiting the scope of the depositions of Westchester's Rule 30(b)(6) witnesses to only such topics that are germane to this case. Westchester seeks also to vacate or limit Defendants' November 2003 demand for documents directed to westchester. Westchester contends that Defendants' discovery should be limited to the specific manner in which Westchester allegedly misrepresented, tacitly or otherwise, coverage under the subject policies.

Because I determined that the discovery sought

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                           Page 4
Not Reported in F.Supp.2d, 2005 WL 23351 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

by Defendants is not relevant under Rule 26, the
Court need not decide whether Westchester is en-
titled to a protective order. Thus, I will deny as
moot the Motion For Protective Order (D.I.75) filed
by Plaintiff.

### CONCLUSION

In sum, I will (1) deny the Motion To Compel
Discovery Relating To Financial Institutions En-
dorsement (D.I.74) filed by Defendants; (2) deny
the Motion To Compel Deposition Of Westchester's
Corporate Representative Witness (D.I.75) filed by
Defendants; (3) deny with leave to renew the Mo-
tion To Compel Discovery Relating To
Westchester's Denials And Defenses (D.I.76) filed
by Defendants; and (4) deny as moot the Motion
For Protective Order (D.I.72) filed by Plaintiff.

**\*4** An appropriate Order will be entered.

D.Del.,2005.
Westchester Fire Ins. Co. v. Household Intern., Inc.
Not Reported in F.Supp.2d, 2005 WL 23351 (D.Del.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

IN THE UNITED STATES DISTRICT COURT
FOR THE STATE OF DELAWARE

KERRY JOHNSON and          )
SHARON ANDERSON,           )
on behalf of themselves and all   )
others similarly situated,        )
                           )
      Plaintiffs,        )     C.A. No. 1:06-cv408 (JJF)
                           )
v.                         )
                           )
GOVERNMENT EMPLOYEES       )
INSURANCE COMPANY,         )
GEICO CASUALTY COMPANY,    )     TRIAL-BY JURY DEMANDED
GEICO GENERAL INSURANCE    )
COMPANY, and GEICO INDEMNITY   )
COMPANY,                   )     CLASS ACTION
                           )
      Defendants.         )

## ORDER

UPON CONSIDERATION OF Plaintiffs' Motion to Compel Defendants' Production of Documents (the "Motion") and any response thereto,

IT IS HEREBY ORDERED that:

1.     Plaintiffs' Motion is hereby GRANTED;

2.     Within 5 days of the date of this Order, Defendants shall provide documents, ▆▆▆ and electronic data responsive to requests for production nos. 12, 13, 14, 16, 19, 20, 21, 22, 25, 40, 41, 42, 44, 45, 47, 48, 49, 52, 54, 55, 56, 58, 60, and 62.

3.     Within 5 days of the date of this Order, Defendants shall provide copies of the ▆▆▆▆▆▆▆▆▆ to Plaintiffs;

4.     Plaintiffs' are awarded reasonable attorney fees of $_____ for preparing and presenting the Motion.

Dated:_____

_____
The Honorable Joseph J. Farnan
United States District Court

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL.  REVIEW AND ACCESS TO THIS DOCUMENT IS
PROHIBITED EXCEPT BY COURT ORDER.

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of February 2008, a true and correct copy of the foregoing Plaintiffs' Motion to Compel Defendants' Production of Documents was served on the following counsel of record in the manner indicated:

### BY HAND DELIVERY

Dawn L. Becker, Esquire
Gary Alderson, Esquire
LAW OFFICES OF DAWN L. BECKER
Citizens Bank Center
919 Market Street, Suite 725
Wilmington, DE 19801

### BY FIRST CLASS MAIL

George M. Church, Esquire
Laura A. Cellucci, Esquire
MILES & STOCKBRIDGE P.C.
10 Light Street
Baltimore, Maryland 21202

Kevin S. Mann (No. 4576)

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL. REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY COURT ORDER.