DOCKET NO. 110
DATE 6/26/08

COPY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE STATE OF DELAWARE

KERRY JOHNSON and
SHARON ANDERSON,
on behalf of themselves and all
others similarly situated,

       Plaintiffs,

v.

GOVERNMENT EMPLOYEES
INSURANCE COMPANY,
GEICO CASUALTY COMPANY,
GEICO GENERAL INSURANCE
COMPANY, and GEICO INDEMNITY
COMPANY,

       Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. 1:06-cv408 (JJF)

TRIAL-BY JURY DEMANDED

CLASS ACTION

## PLAINTIFFS' MOTION TO COMPEL
## DEPOSITION OF DR. WILLIE THOMPSON

## YOU ARE IN POSSESSION OF A DOCUMENT FILED
## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE
## THAT IS CONFIDENTIAL AND FILED UNDER SEAL

CROSS & SIMON, LLC
Richard H. Cross, Jr. (No. 3576)
Christopher P. Simon (No. 3697)
Kevin S. Mann (No. 4576)
913 North Market Street, 11th Floor
P.O. Box 1380
Wilmington, Delaware 19899-1380
(302) 777-4200

*Attorneys for Plaintiffs*

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL. REVIEW AND ACCESS TO THIS
DOCUMENT IS PROHIBITED EXCEPT BY COURT ORDER.

## IN THE UNITED STATES DISTRICT COURT
### FOR THE STATE OF DELAWARE

KERRY JOHNSON and                      )
SHARON ANDERSON,                       )
on behalf of themselves and all        )
others similarly situated,             )
                                       )
                Plaintiffs,            )      C.A. No. 1:06-cv408 (JJF)
v.                                     )
                                       )
GOVERNMENT EMPLOYEES                   )
INSURANCE COMPANY,                     )
GEICO CASUALTY COMPANY,                )      TRIAL-BY JURY DEMANDED
GEICO GENERAL INSURANCE                )
COMPANY, and GEICO INDEMNITY           )
COMPANY,                               )      CLASS ACTION
                                       )
                Defendants.            )

### PLAINTIFFS' MOTION TO COMPEL
### DEPOSITION OF DR. WILLIE THOMPSON

Plaintiffs Kerry Johnson and Sharon Anderson (collectively, "Plaintiffs"), by and through

undersigned counsel, hereby move pursuant to Fed. R. Civ. P. 37 for an order compelling Dr.

Willie Thompson to provide full and complete responses to examination by oral deposition

propounded by Plaintiffs. In support hereof, Plaintiffs respectfully state as follows:

1.      Plaintiffs' case, in essence, relates to improper reductions of bill payments,

improper denial of bill payments and improper delay in bill payments as relates to claims by

Defendants' insureds under their insurance policies. The discovery that is the subject of this

motion (and Plaintiffs' prior motions to compel) all go to the core of Plaintiffs' case.

2.      On or about ████████████ ████████████████, Dr. Willie Thompson

conducted a physical examination of ████████████████ at an office located at 15 Omega

Drive, Building K, First Floor, in Newark, Delaware 19713. *See* Exhibit A hereto. ████████

████████████Dr. Thompson's examination and report. *See* Exhibit B hereto. On ████████

████, Dr. Thompson issued a letter addressed to ████████████████████████████, in

1

████████ ████████ ████, regarding his examination of ████████, attached hereto as Exhibit C.

3.    ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. A copy of ████████████████████is attached hereto as Exhibit D.

4.    On March 13, 2008, Plaintiffs issued a subpoena to Dr. Thompson and served it at Dr. Thompson's Delaware office located at 15 Omega Drive, Newark, Delaware. Service was accepted by Tom Kituski, who, on information and belief, held himself out as authorized to accept service for Dr. Thompson. Dr. Thompson never responded to the subpoena.

5.    Thereafter, Plaintiffs issued a second subpoena to Dr. Thompson on April 22, 2008, serving his office located in Crofton, Maryland. Service was accepted by Dr. Thompson's apparent office manager, Bill Tadlock. Dr. Thompson did not respond to the second subpoena or to telephone calls to his office by Plaintiffs' counsel.

6.    On May 12, 2005, Plaintiffs issued a third subpoena to Dr. Thompson, personally serving him on May 14, 2008 at 9:14 p.m. at 10814 Cherry Blossom Court, Adelphi, Maryland 20783. Plaintiffs tendered two checks, a $40 witness fee and $90.90 travel reimbursement, both of which Dr. Thompson cashed.[1] See Exhibit E hereto.

7.    On May 21, 2008, Defendants' counsel, George Church, Esquire, emailed to Plaintiffs' counsel a copy of Dr. Thompson's apparent policies and fee schedule for testimony. Dr. Thompson's letter stated that he would only permit his deposition upon receipt of $3,500, plus $500 for travel to Wilmington, Delaware, which amount must be paid four weeks in advance of his appearance for deposition. See Exhibit F hereto.

---

[1]    Plaintiffs' counsel previously tendered Dr. Thompson checks with the second subpoena. Those checks were never cashed.

2

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL. REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY COURT ORDER.

8.     On May 22, 2008, Plaintiffs' counsel called Dr. Thompson to discuss scheduling the deposition. Dr. Thompson stated that he was available for deposition on June 11, 2008. In order to save on travel, Dr. Thompson stated that he was willing to be deposed at the offices of Defendants' counsel, Miles & Stockbridge P.C., located in Baltimore, Maryland. Dr. Thompson reiterated his demand for $3,500.

9.     On May 22, 2008, Plaintiffs' counsel wrote Dr. Thompson confirming that Dr. Thompson's deposition would be conducted at the offices of Defendants' counsel, Miles & Stockbridge P.C., located at 10 Light Street, Baltimore, Maryland 21202. Plaintiffs' counsel stated their objection to Dr. Thompson's demanded fee of $3,500, and instead offered to pay Dr. Thompson $250 an hour for his attendance at deposition.

10.     On May 27, 2008, Dr. Thompson again faxed Plaintiffs' counsel a second letter stating that he would only appear on the condition he received $3,500, paid in advance. *See* Exhibit G hereto.

11.     Upon receipt of Dr. Thompson's May 27, 2008 facsimile, Plaintiffs counsel wrote Dr. Thompson again, reiterating their offer to pay Dr. Thompson $250 an hour and restating their intention to take the deposition of Dr. Thompson at 10:00 a.m. on June 11, 2008, at the offices of Miles & Stockbridge in Baltimore, Maryland. *See* Exhibit H hereto.

12.     On May 29, 2008, Plaintiffs counsel talked to Dr. Thompson on the telephone. Dr. Thompson stated that he did not have any documents responsive to the subpoena. He stated that he did not have copies of any medical records from any of the "independent medical examinations" ("IME") that he had performed, including the March 14, 2005 examination of ▓▓▓ ▓▓▓▓▓. Dr. Thompson stated that he did not have copies of any of the IME reports that he had written for or on behalf of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. He further stated that billing for IMEs was processed by an entity he called, "Professional Physicians Group," and therefore he did not have copies of the bills for the IMEs he performed. Finally, Dr. Thompson stated that his flat fee of $3,500.00 was non-negotiable, and that he would not appear for his scheduled deposition

3

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL. REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY COURT ORDER.

absent payment. Plaintiffs' counsel memorialized this call in a letter dated May 29, 2008, which was sent to Dr. Thompson.

13.    On the morning of June 11, 2008, while Plaintiffs' counsel was traveling to Baltimore, Maryland, Plaintiffs' counsel received an e-mail from Mr. Church, Defendants' counsel, informing counsel that he was in receipt of a fax from Dr. Thompson, and that Dr. Thompson was now willing to appear for his deposition only by telephone, and at 1:30 p.m. EDT on June 11, 2008.[2]

14.    Plaintiffs' counsel proceeded to depose Dr. Thompson by telephone on June 11, 2008 at approximately 1:30 p.m.  A copy of the transcript is attached as Exhibit I.  Prior to the deposition, Plaintiffs' counsel faxed Dr. Thompson several documents to review during the deposition; Dr. Thompson refused to retrieve or review any documents sent by Plaintiffs' counsel.  Notwithstanding his early statement that he had no documents relating to the examination of ▮▮▮▮▮▮▮▮, Dr. Thompson apparently now had a copy of his letter dated March 14, 2005. As set forth throughout the transcript, Dr. Thompson refused to answer many questions by Plaintiffs' counsel, was argumentative and generally uncooperative.  Due to Dr. Thompson's failure and refusal to respond to good faith questions posed by Plaintiffs' counsel, Plaintiffs' counsel was unable to conduct a complete and fair deposition of Dr. Thompson.  Midway through the deposition, while answering questions posed by Mr. Church, Dr. Thompson disappeared from the call; Mr. Church was unable to reach Dr. Thompson on Dr. Thompson's cell phone.

15.    Attached hereto as Exhibit J is a certification pursuant to Fed. R. Civ. P. 37(a)(1) indicating the efforts to resolve this dispute prior to filing this motion.

WHEREFORE, Plaintiffs respectfully request that the Court order Dr. Thompson to appear and be examined by oral deposition, and to answer fully questions posed him.  Plaintiffs respectfully request that the Court order that Dr. Thompson appear in person at Plaintiffs'

---

[2]    Plaintiffs' counsel later learned that Dr. Thompson had faxed their office at approximately 12:32 a.m. on the morning of June 11th, however Plaintiffs' counsel did not see this fax until returning to the office in the late morning of June 11, 2008.

4

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL. REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY COURT ORDER.

counsel's office in Delaware for deposition, that Dr. Thompson pay the cost for the court reporter

for such deposition, and that Dr. Thompson pay Plaintiffs' attorney fees for bringing this motion

together with such other relief as the Court deems just and proper.

Dated:  June 26, 2008                     CROSS & SIMON, LLC
            Wilmington, Delaware

                                          By: _____
                                              Richard H. Cross, Jr. (No. 3576)
                                              Christopher P. Simon (No. 3697)
                                              Kevin S. Mann (No. 4576)
                                              913 North Market Street, 11th Floor
                                              Wilmington, Delaware  19801
                                              302-777-4200
                                              302-777-4224 (fax)

                                              *Counsel for Plaintiffs*

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL.  REVIEW AND ACCESS TO THIS
DOCUMENT IS PROHIBITED EXCEPT BY COURT ORDER.

Exhibit  A

Mary Beth 



                                                        

February 17, 2005

~~Kerry Johnson~~
~~1007 Whatever lane~~
~~Newark, DE 19711~~

RE:  Independent Medical Evaluation
Claim #:  0232413390101017
DOI:  ▓▓▓▓

Dear ~~Kerry Johnson~~:

▓GEICO▓ requested ▓Corvel▓ to schedule an Independent Medical Evaluation for you. An appointment has been arranged as follows:

|  |  |
|---|---|
| Date/Time: | ▓March 14, 2005▓ at 10:30 am |
| Doctor:<br>Address: | **Dr. Willie Thompson**<br>**15 Omega Drive, Building K  First Floor**<br>**Newark, DE 19713** |
| Telephone: | **410-451-2600** |

**Please be sure to call us within 48 hours of receipt of letter if any changes need to be made regarding the appointment. If you make any changes to the appointment within 3 days of the scheduled time the doctor's office will charge for the late cancellation or rescheduling of the appointment. If you need directions, call the doctor's office at the above telephone number.**

**Please arrange to pick up and take with you previous x-rays, MRI's, CT scans, and any other radiological studies concerning your injury, as well as any additional medical records.**

Call me at **1-800-275-8463** if there are any questions I can help you with or if you have any problems.

Sincerely,
▓Melissa ▓▓▓
**IME Department**
▓Corvel Corporation▓

cc:     ▓GEICO▓
        ▓Laura Simon▓

# Exhibit B



**Facsimile Transmittal**

Date: 6/21/2005

To:

Fax Number:

From:

Copy To:

Pages Including Cover: 2

REGARDING: Please see the attached invoice we just spoke of-thanks! If you need please call

Thanks for your help!

Sincerely,

Privileged and Confidential: All Information transmitted hereby is intended only for the use of the addressees named above. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipients, please note that any distribution or copying of this communication is strictly prohibited. Anyone who receives this communication in error should notify us immediately by telephone and return the original message to us via the U.S. Mail.

GEICO000039

JUN-21-2005  13:06                                                                                        P.02





*Thank You*

THIS INVOICE IS DUE AND PAYABLE UPON RECEIPT

Federal ID No   IRS#: 55-S352819

TOTAL P.02

GEICO000038

# Exhibit C

**REDACTED DOCUMENT**

# Exhibit D

**REDACTED DOCUMENT**

# Exhibit E

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

KERRY JOHNSON and )
SHARON ANDERSON, )
on behalf of themselves and all )
others similarly situated, )
 )
    Plaintiffs, )    C.A. No. 1:06-cv408 (JJF)
 )
v. )
 )    NON-ARBITRATION
GEICO CASUALTY COMPANY, )    TRIAL BY JURY DEMANDED
GEICO GENERAL INSURANCE )
COMPANY, and GEICO INDEMNITY )
COMPANY, )
 )
    Defendants. )

## NOTICE OF SERVICE OF SUBPOENA

PLEASE TAKE NOTICE that the subpoena attached hereto as Exhibit A was served

upon Dr. Willie Thompson on May 15, 2008.

**CROSS & SIMON, LLC**

_Kevin S. Mann_
Richard H. Cross, Jr. (No. 3576)
Christopher P. Simon (No. 3697)
Kevin S. Mann (No. 4576)
913 North Market Street, 11th Floor
P.O. Box 1380
Wilmington, Delaware 19899-1380
(302) 777-4200
(302) 777-4224 Facsimile
rcross@crosslaw.com
csimon@crosslaw.com
kmann@crosslaw.com

*Attorneys for Plaintiffs*

Dated: May 28, 2008

DOCKET NO. ___95___
DATE ___5/28/08___

# Exhibit  A

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

DISTRICT OF                            DELAWARE

KERRY JOHNSON and SHARON ANDERSON,

V.                                     SUBPOENA IN A CIVIL CASE

GOVERNMENT EMPLOYEES INSURANCE COMPANY, GEICO CASUALTY
COMPANY, GEICO GENERAL INSURANCE COMPANY, and GEICO     Case Number: 1:06-cv408 (JJF)
INDEMNITY COMPANY.

TO: Dr. Willie Thompson
1298 Cronson Blvd., Suite 203
Crofton, MD 21114

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below
to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a
deposition in the above case.

| PLACE OF DEPOSITION Cross & Simon, LLC, 913 N. Market Street, 11th Floor, Wilmington, DE 19801 | DATE AND TIME May 27, 2008 at 11:00 a.m. |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at
the place, date, and time specified below (list documents or objects):

See Schedule A, attached hereto.

| PLACE Cross & Simon, LLC, 913 N. Market Street, 11th Floor, Wilmington, DE 19801 | DATE AND TIME May 22, 2008 at 11:00 a.m. |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers,
directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the
matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| _Kevin S. Mann_ — PLAINTIFFS' COUNSEL | 5/12/08 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Kevin S. Mann, Esquire (No. 4576), Cross & Simon, LLC, 913 N. Market Street, 11th Floor, Wilmington, DE 19801, 302-777-4200

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

¹ If action is pending in district other than district of issuance, state district under case number.

# Affidavit of Process Server

United States District Court District of Delaware
(NAME OF COURT)

kerry Johnson and Sharon Anderson  vs  Government Employees Insurance Co, Geico Casualty Company,    1:06-cv408 (JJF)
PLAINTIFF/PETITIONER    DEFENDANT/RESPONDENT    CASE NUMBER

I  Jesse Pipkin    , being first duly sworn, depose and say: that I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to perform said service.

Service: I served  Dr. Willie Thompson
NAME OF PERSON / ENTITY BEING SERVED

with (list documents)  Subpoena and checks

by leaving with  Dr. Willie Thompson          Self                          At
NAME                    RELATIONSHIP

☑ Residence  10814 Cherry Blossom Court, Adelphi, MD 20783-1043
ADDRESS                    CITY / STATE

☐ Business_____
ADDRESS                    CITY / STATE

On  May 14, 2008          AT  9:14 pm
DATE                    TIME

Thereafter copies of the documents were mailed by prepaid, first class mail on  n/a
DATE

from_____
CITY        STATE        ZIP

Manner of Service:
☑ **Personal:** By personally delivering copies to the person being served.
☐ **Substituted at Residence:** By leaving copies at the dwelling house or usual place of abode of the person being served with a member of the household over the age of _____ and explaining the general nature of the papers.
☐ **Substituted at Business:** By leaving, during office hours, copies at the office of the person/entity being served with the person apparently in charge thereof.
☐ **Posting:** By posting copies in a conspicuous manner to the front door of the person/entity being served.

Non-Service: After due search, careful inquiry and diligent attempts at the address(es) listed above, I have been unable to effect process upon the person/entity being served because of the following reason(s):

☐ Unknown at Address  ☐ Moved, Left no Forwarding  ☐ Service Cancelled by Litigant  ☐ Unable to Serve in Timely Fashion
☐ Address Does Not Exist  ☐ Other_____

Service Attempts: Service was attempted on: (1) 5/14/08    9:14 pm    (2)_____
DATE        TIME            DATE        TIME

(3)_____ (4)_____ (5)_____
DATE        TIME        DATE        TIME        DATE        TIME

Description:. Age 61  Sex B  Race M  Height 6'0" Weight 260 Hair BLK/GR Beard BLK/GR Glasses YES

_____
SIGNATURE OF PROCESS SERVER

SUBSCRIBED AND SWORN to before me this  15th  day of  May  , 20 08, by Jesse Pipkin  ,
Proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

MICHAEL S. TRUPPNER
Notary Public
Anne Arundel Co., MD
My Comm. Exps. March 1, 2011

_____
SIGNATURE OF NOTARY PUBLIC

NOTARY PUBLIC for the state of  Maryland



FORM 2    NATIONAL ASSOCIATION OF PROFESSIONAL PROCESS SERVERS

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | 05/14/2008 | 10814 Cherry Blossom Court Adelphi, MD 20783-1043 |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| Dr. Willie E. Thompson | Personal |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| Jesse E. Pipkin | Process Server |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on  5/15/08
DATE

SIGNATURE OF SERVER

Po Box 1319
ADDRESS OF SERVER

Lanham, MD 20703

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## SCHEDULE A

The following definitions and instructions apply.

### DEFINITIONS

1.    "Dr. Thompson," "you," or "your" means Dr. Willie Thompson, including without limitation all of his attorneys, accountants, agents and any other persons or entities acting on his behalf.

2.    "GEICO" means Government Employees Insurance Company, GEICO Casualty Company, GEICO General Insurance Company, and/or GEICO Indemnity Company, including without limitation all of its corporate locations, and all present and past predecessors, successors, parents, divisions, subsidiaries, agents, affiliates, partnerships, and joint ventures, and all past and present directors, officers, owners, members, representatives, employees, and agents of these entities.

3.    The term "Plaintiffs" means Kerry Johnson and Sharon Anderson, on behalf of themselves and all others similarly situated, their attorneys, accountants, agents and any other persons or entities acting on their behalf.

4.    The term "Insured" or "Insureds" means any person residing in the State of Delaware who is a party to an automobile insurance and/or related agreement with one or more of the Defendants, including, but not limited to Plaintiffs, from June 26, 2001 to the present, and anyone acting on their behalf.

5.    The term "person" means not only natural persons, but also, without limitation, firms, proprietorships, corporations, partnerships, associations, unincorporated associations, and governmental bodies, agencies, and officials and every other type of organization or entity.

6.    The term "document" means the original and all drafts and copies (including copies bearing notations or marks not found on the original) of any writings or printed, graphic or electronically recorded materials of any nature whatsoever, including but not limited to, correspondence, records, reports, memoranda, notes, calendar or diary entries, letters, facsimile transmissions, envelopes, e-mails, telegrams, telexes, telephone bills, other written communications, messages (including, but not limited to, reports of telephone conversations and conferences), studies, summaries, tabulations, analyses, printed matter, minutes, photographs, film, tapes (electronic, audio and visual), computer diskettes, data files, financial statements, contracts, agreements, other legal documents and instruments, journals, ledgers, other accounting records, canceled or returned checks, manuals, orders, statements, bills, receipts, vouchers, notebooks, data sheets and records kept by any other means. In all cases where originals and/or non-identical copies are not available, the term "document" also means identical copies of original documents and copies of non-identical copies.

7.    This definition includes all documents in your actual or constructive possession, custody or control, or in the possession, custody or control of your employer, attorneys, or agents. If any document was, but is no longer, in your possession or subject to your control or was known to you, but is no longer in existence, state whether it is:

(a)    missing or lost;

(b)    has been destroyed;

(c)    has been transferred, voluntarily or involuntarily, to others; or

(d)    otherwise disposed of and, in such instance, explain in detail the circumstances surrounding the authorization for such disposition and state the date or approximate date thereof.

8.    The term "identify" means, when used in reference to:

(a)    a document, to state separately (i) its description (e.g., letter, report, memorandum, etc.), (ii) its date, (iii) its subject matter, (iv) the identity of each author or signer, (v) its present location and the identity of its custodian, (vi) the number of pages, and (vii) if any such document is no longer in your possession or subject to your control, to state what disposition was made of it and the date of the disposition.

(b)    a natural person or persons, to state separately (i) the full name of each such person, (ii) his or her present, or last known, business address, and (iii) his or her present, or last known, residential address;

(c)    an organization or entity other than a natural person (e.g., a company, corporation, firm, association, or partnership), to state separately (i) the full name and type of organization or entity, (ii) the date and state of organization or incorporation, (iii) the address of each of its principal places of business, and (iv) the nature of the business conducted; and

(d)    a conversation, to (i) provide the date of the conversation, (ii) provide the location, (iii) identify the participants, (iv) state whether the conversation was by telephone, in person, or by other means, and (v) state the details of the conversation.

9.    The term "Litigation" means the case captioned: *Kerry Johnson, et al. v. GEICO Casualty Company, et al.*, Civil Action No. 1:06-CV-408-JJF (United States District Court for the District of Delaware).

10.    The term "PIP" means Personal Injury Protection and any such policy of insurance provided by one or more of the Defendants to an Insured of the type described and governed by Chapter 21 of Title 21 of the State of Delaware Code (21 Del. C. § 2118B).

11.     The term "IME" means a PIP-related medical evaluation of an Insured ordered by, or conducted by one or more of the Defendants.

12.     "Person" means any individual or firm, association, organization, joint venture, trust, partnership, corporation, or other collective organization or entity.

13.     The term "third party" means any Person other than you.

## INSTRUCTIONS

1.     In construing this discovery request:  (a) the singular shall include the plural and the plural shall include the singular and (b) the words "and" and "or" shall be read either disjunctively or conjunctively so as to bring within the scope of this discovery request all information that might otherwise be construed to be outside its scope.

2.     With respect to any documents identified in your responses herein:

(a)     Identify each such document;

(b)     Describe each such document by type or title;

(c)     State the date of each such document;

(d)     Identify all authors and recipients of each such document;

(e)     Describe in detail the subject matter of each such document; and

(f)     Identify any precise privilege or protection you claim for each such document.

3.     If an answer or any information is withheld on the ground of any privilege or immunity, state the following:

(a)     The nature of the privilege or immunity being claimed;

(b)     The type of document or the nature of the information;

(c)     The general subject matter of the document or the information;

(d)    The identity of each person who created, sent, or received (i) the original of the document or any copy thereof, or (ii) the information;

(e)    The date(s) on which the document or information was created, sent, and/or received; and

(f)    A description of the document or information sufficient to identify it.

4.    In responding to these Discovery Requests, respondent shall identify the particular Defendant to which the response applies or relates.

5.    Any electronically stored information produced in response to discovery requests should be produced in native file format, unless otherwise agreed upon.

6.    This discovery requests are continuing in nature and you are required to promptly supplement your responses to this discovery request to the extent you locate additional documents or acquire additional information, or to the extent subsequent amended pleadings modify or raise new allegations and claims.

7.    Plaintiffs reserve the right to amend, supplement, and/or modify these discovery requests.

8.    All documents produced in response to these requests shall be produced at the offices of Cross & Simon, LLC, 913 N. Market Street, Wilmington, Delaware 19801.

## REQUESTS FOR DOCUMENTS

1.    Copies of all IME letters or reports you drafted ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ from January 1, 2001 to the present.

2.    All documents and things referring, reflecting, or relating to any communication between you and ▓▓▓▓ concerning IME's for ▓▓▓▓Insureds from January 1, 2001 to the present.

3.    Any communications you have had with ████████████████████████, reflecting, or relating to the Litigation.

4.    Any and all contracts or agreements between you and ████████████████ ████████████████ for you to perform IME's on behalf of ██████████████.

5.    Any and all documents that you reviewed and relied upon to write the IME report for ████████████ on or about ██████████████.

## CERTIFICATE OF SERVICE

I, Kevin S. Mann, hereby certify that on this 28th day of May 2008, a true and correct copy of the foregoing Notice of Service of Subpoena was served on the following counsel of record in the manner indicated:

### BY HAND DELIVERY

Dawn L. Becker, Esquire
Gary Alderson, Esquire
LAW OFFICES OF DAWN L. BECKER
Citizens Bank Center
919 Market Street, Suite 725
Wilmington, DE 19801

### BY FIRST CLASS MAIL

George M. Church, Esquire
Laura A. Cellucci, Esquire
MILES & STOCKBRIDGE P.C.
10 Light Street
Baltimore, Maryland  21202

_Kevin S. M_____
Kevin S. Mann (No. 4576)

## Discovery Documents
1:06-cv-00408-JJF Johnson et al v. GEICO Casualty Company et al

### U.S. District Court

### District of Delaware

#### Notice of Electronic Filing

The following transaction was entered by Mann, Kevin on 5/28/2008 at 1:20 PM EDT and filed on 5/28/2008

**Case Name:**         Johnson et al v. GEICO Casualty Company et al
**Case Number:**       1:06-cv-408
**Filer:**             Kerry Johnson
                       Sharon Anderson
**Document Number:** 95

**Docket Text:**
**NOTICE OF SERVICE of Subpoena on Dr. Willie Thompson on May 15, 2008 by Kerry Johnson, Sharon Anderson. (Attachments: # (1) Exhibit A, # (2) Certificate of Service) (Mann, Kevin)**

**1:06-cv-408 Notice has been electronically mailed to:**

Gary W. Alderson     galderson@geico.com

George M. Church     gchurch@milesstockbridge.com

Richard H. Cross , Jr     rcross@crosslaw.com

Kevin Scott Mann     kmann@crosslaw.com

Christopher Page Simon     csimon@crosslaw.com

**1:06-cv-408 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=5/28/2008] [FileNumber=573617-0]
[217a09ba9424c6dc977659fe7f7fa1d347cce5bb3cb6e9a5136769b9a3705e4f38f3
3c06556b92097822341624f6a1335621964d3800bad75f61f3bf120d9ac9]]
**Document description:**Exhibit A

**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=5/28/2008] [FileNumber=573617-1]
[d87e975204066dd3006626a596c849ced23f628462303e7b8b40e0475f505c25477e
bd95c1b6b410663463f0b4a0741c45e3e9cef3bcfb8621db0c2c089c4deb]]
**Document description:** Certificate of Service
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=5/28/2008] [FileNumber=573617-2]
[192976d4b30132cbc5e6a474045c21dad7271da1dcea28ca38d4af88a394a70367b7
bf15c90f844901ba3dc58f8d047949e26ce8d8fb2c213d546fd454089803]]

# Exhibit F

Willie E. Thompson M.D.
10814 Cherry Blossom Court
Adelphi, Md. 20783
301-937-7525
American Board of Orthopedic Surgeons
F.A.A.O.S.


DEAR MADAM/SIR:

WE RECOGNIZE THE NEED TO BE AVAILABLE FOR LEGAL TESTIMONY.
HOWEVER, A MUCH MORE IMPORTANT RESPONSIBILITY IS TO PROVIDE
PATIENT CARE. UNLESS WE ARE GIVEN ADVANCED NOTICE OF THE NEED
FOR TESTIMONY, OUR PATIENTS MUST BE CANCELLED OR RESCHEDULED.
THIS CAUSES A GREAT INCONVENIENCE AND HARDSHIP TO OUR
CHRONICALLY ILL AND OFTEN HANDICAPPED PATIENTS. MOREOVER, THIS
IS A TIME CONSUMING PROCESS FOR MY STAFF.

FOR THESE REASONS, I HAVE DEVELOPED THE FOLLOWING GUIDELINE
REGARDING REQUESTS FOR LEGAL TESTIMONY.


1.    ALL REQUESTS ARE TO BE MADE IN WRITING INDICATING THE
      PRECISE DATE OF TESTIMONY AND SIGNED BY THE ATTORNEY. THIS
      MUST BE RECEIVED IN MY OFFICE AT LEAST FOUR (4) WEEKS PRIOR
      TO THE PROPOSED DATE OF TESTIMONY. ANY REQUEST THAT DOES
      NOT ADHERE TO THIS POLICY WILL BE AN UNREASONABLE
      INCONVENIENCE TO OUR PATIENTS AND THEREFORE WILL NOT BE
      HONORED.

2.    FEE FOR DEPOSITION IS $3,500.00/FEE FOR COURTROOM APPEARANCE
      IS $3,500.00. PAYABLE FOUR (4) WEEKS IN ADVANCE.


PLEASE SUBMIT PAYMENT TO THE ABOVE ADDRESS.

*TRAVEL FEE TO WILMINGTON, DEL IS AN ADDITIONAL $500.00. IF DEPOSITION IS TO BE DONE IN WILMINGTON, DEL., TOTAL FEE IS $4000.00 WET*

SINCERELY,

*5/20/08*

WILLIE E. THOMPSON M.D.

# Exhibit G

5/27/08

ATTN: ATTY. KEVIN S. MANN

ONCE AGAIN I AM FORWARDING MY FEE
SCHEDULE FOR DEPOSITION TESTIMONY. THIS FEE
IS NON-NEGOTIABLE. FEE MUST BE PAID IN

ADVANCE.

W.G. THOMPSON M.D.

Willie E. Thompson M.D.
10814 Cherry Blossom Court
Adelphi, Md. 20783
301-937-7525
American Board of Orthopedic Surgeons
F.A.A.O.S.

DEAR MADAM/SIR:

WE RECOGNIZE THE NEED TO BE AVAILABLE FOR LEGAL TESTIMONY.
HOWEVER, A MUCH MORE IMPORTANT RESPONSIBILITY IS TO PROVIDE
PATIENT CARE.  UNLESS WE ARE GIVEN ADVANCED NOTICE OF THE NEED
FOR TESTIMONY, OUR PATIENTS MUST BE CANCELLED OR RESCHEDULED.
THIS CAUSES A GREAT INCONVENIENCE AND HARDSHIP TO OUR
CHRONICALLY ILL AND OFTEN HANDICAPPED PATIENTS.  MOREOVER, THIS
IS A TIME CONSUMING PROCESS FOR MY STAFF.

FOR THESE REASONS, I HAVE DEVELOPED THE FOLLOWING GUIDELINE
REGARDING REQUESTS FOR LEGAL TESTIMONY.

1.    ALL REQUESTS ARE TO BE MADE IN WRITING INDICATING THE
      PRECISE DATE OF TESTIMONY AND SIGNED BY THE ATTORNEY.  THIS
      MUST BE RECEIVED IN MY OFFICE AT LEAST FOUR (4) WEEKS PRIOR
      TO THE PROPOSED DATE OF TESTIMONY.  ANY REQUEST THAT DOES
      NOT ADHERE TO THIS POLICY WILL BE AN UNREASONABLE
      INCONVENIENCE TO OUR PATIENTS AND THEREFORE WILL NOT BE
      HONORED.

2.    FEE FOR DEPOSITION IS $3,500.00/FEE FOR COURTROOM APPEARANCE
      IS $3,500.00. PAYABLE FOUR (4) WEEKS IN ADVANCE.

PLEASE SUBMIT PAYMENT TO THE ABOVE ADDRESS.

*TRAVEL FEE TO WILMINGTON, DEL IS AN ADDITIONAL $500.00. IF DEPOSITION IS TO BE DONE IN WILMINGTON, DEL., TOTAL FEE IS $4000.00 WT*

SINCERELY,

WILLIE E. THOMPSON M.D.

*5/20/08*

# Exhibit H

```
                    ┌─────────────────────────────────────────┐
                    │ TRANSMISSION VERIFICATION REPORT          │
                    └─────────────────────────────────────────┘

                                          TIME  : 05/27/2008 17:07
                                          NAME  : CROSS & SIMON LLC
                                          FAX   : 3027774224
                                          TEL   : 3027774200
                                          SER.# : 000B5J214168
```

```
    ┌────────────────────────────────────────────────────────────────────┐
    │                                                                      │
    │   DATE,TIME              05/27  17:06                                 │
    │   FAX NO./NAME           13019370656                                  │
    │   DURATION               00:00:29                                     │
    │   PAGE(S)                02                                           │
    │   RESULT                 OK                                           │
    │   MODE                   STANDARD                                     │
    │                          ECM                                         │
    │                                                                      │
    └────────────────────────────────────────────────────────────────────┘
```

# CROSS & SIMON, LLC
## ATTORNEYS AT LAW
### FACSIMILE

**MAILING ADDRESS:**
P.O. BOX 1380                                   (PHONE) 302-777-4200
913 NORTH MARKET STREET, 11TH FLOOR
WILMINGTON, DE 19899-1380                        (FAX) 302-777-4224

---

To:              Dr. Willie Thompson

From:            Richard H. Cross, Jr.

Fax Number:      301-937-0656

Date:            May 27, 2008

Subject:         Johnson, et al. v. Government Employees Insurance Co., et al.
                 D. Del. C.A. No. 1:06-cv-408

Original to Follow by Mail – Yes __x__ / No ____    No. of Pages (incl. this page) __2__

Message:

# CROSS & SIMON, LLC
## ATTORNEYS AT LAW

Richard H. Cross, Jr.
rcross@crosslaw.com

MAILING ADDRESS:
P.O. BOX 1380
WILMINGTON, DE 19899-1380

913 NORTH MARKET STREET
11TH FLOOR
WILMINGTON, DELAWARE 19801
302-777-4200 / 302-777-4224 (FAX)
www.crosslaw.com

*SUSSEX COUNTY OFFICE:*
17577 NASSAU COMMONS BLVD.
SUITE 102
LEWES, DE 19958
(302) 644-4269
(302) 258-0815 (FAX)

May 27, 2008

<u>VIA U.S. MAIL AND FACSIMILE (301) 937-0656</u>
Dr. Willie Thompson
1298 Cronson Boulevard
Suite 203
Crofton, MD 21114

Re: *Johnson, et al. v. Government Employees Insurance Co., et al.*
*D. Del. C.A. No. 1:06-cv-408*

Dear Dr. Thompson:

I am in receipt of your fax of May 27, 2008. We believe federal case law supports our position that you are not entitled to a fee for a deposition as a fact witness other than the statutory fee and mileage reimbursement. We have already provided you with the fee and mileage reimbursement. We agreed to change the date and move the deposition to Baltimore, Maryland as an accommodation to you. We have offered to pay you a fee of $250.00 per hour for your deposition and you were advised that we don't anticipate the deposition going more than approximately two hours. Notwithstanding all of that, you indicated that you are insisting on a prepayment of $3,500.00 to appear for your fact deposition (and an additional $500 if we wish to go forward in Wilmington, Delaware).

Also, you have not indicated whether you intend to produce the documents that were sought by the subpoena. Please confirm you are producing those documents. In order to hopefully keep the deposition to two hours, we need those documents in advance of the deposition so we can review them.

We intend to move forward with your deposition on June 11, 2008 beginning at 10:00 a.m. at the office of Miles & Stockbridge P.C., 10 Light Street, Baltimore, Maryland 21202. If you fail to appear without relief from the Court, we intend to seek sanctions from the Court. Guide yourself accordingly.

Sincerely yours,

Richard H. Cross, Jr.

cc: George Church, Esquire (via email)
Dawn Becker, Esquire (via email)
Meloney Perry, Esquire (via email)
Laura Celluci, Esquire (via email)
File Copy

# Exhibit I

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

KERRY JOHNSON and SHARON          )
ANDERSON, on behalf of            )
themselves and all others         )
similarly situated,               )
                                  )
        Plaintiffs,               )
                                  )
v.                                )    Civil Action No.
                                  )    1:06-cv-408 (JJF)
GOVERNMENT EMPLOYEES              )
INSURANCE COMPANY, GEICO          )
CASUALTY COMPANY, GEICO           )
GENERAL INSURANCE COMPANY,        )
and GEICO INDEMNITY COMPANY,      )
                                  )
        Defendants.               )

        Telephone deposition of WILLIE E. THOMPSON, M.D.,
taken pursuant to notice at the law offices of Cross &
Simon LLC, 913 North Market Street, 11th Floor,
Wilmington, Delaware, beginning at 1:30 p.m. on
Wednesday, June 11, 2008, before Robert Wayne Wilcox,
Jr., Registered Professional Reporter and Notary Public.

APPEARANCES:

        CHRISTOPHER PAGE SIMON, ESQ.
        CROSS & SIMON LLC
          913 North Market Street - 11th Floor
          Wilmington, Delaware  19801
          for the Plaintiffs,

CORBETT & WILCOX
230 North Market Street - Wilmington, Delaware 19801
(302) 571-0510

Corbett & Wilcox is not affiliated
with Wilcox & Fetzer, Court Reporters

Willie E. Thompson, M.D.

2 (Pages 2 to 5)

| | Page 2 | | Page 4 |
|---|---|---|---|

**Page 2**

1  APPEARANCES (CONT'D):
2  GEORGE CHURCH, ESQ. (via teleconference)
   MILES & STOCKBRIDGE
3     10 Light Street
      Baltimore, Maryland 21202
4        -and-
      MELONEY CARGIL PERRY, ESQ. (via teleconference)
5  MECKLER BULGER & TILSON LLP
      10,000 North Central Expressway - Suite 1450
6     Dallas, Texas 75231
      for the Defendants.
7          - - - - -
8          WILLIE E. THOMPSON, M.D.,
9          the witness herein, having first been
10         duly sworn on oath, was examined and
11         testified as follows:
12           MR. SIMON: All right. Counsel, do you
13   want to enter your appearances on the record?
14           MR. CHURCH: This is George Church. I'm
15   on the deposition on behalf of the GEICO defendants.
16           MS. PERRY: This is Meloney Perry. I'm
17   just listening in on behalf of the GEICO defendants.
18           MR. SIMON: This is Chris Simon, and I'm
19   here on behalf of the plaintiffs.
20   BY MR. SIMON:
21     Q. Mr. Thompson, would you like to enter your
22   appearance?
23     A. Yes. I'm Dr. Willie Thompson.
24     Q. Okay. This is Chris Simon. I want to start

**Page 3**

1  out, for the record, that we had a subpoena that we
2  served on May 28th, and we reserve all rights with
3  respect to this deposition and object to it going forward
4  telephonically. We will conduct the deposition as best
5  possible today but reserve all rights.
6          The notice of subpoena and the subpoena
7  was served on Dr. William Thompson, and the deposition
8  was to take place at the offices of Miles & Stockbridge
9  in Baltimore, Maryland at approximately 12:30. This
10 morning our office received a fax, which I did not see
11 because I was in route to Baltimore when the office
12 opened, indicating that Mr. Thompson would appear
13 telephonically for deposition at 1:30 p.m. today and
14 allow us 90 minutes.
15         Dr. Thompson, could you please spell
16 your name for the record?
17     A. My first name is Willie, W-i-l-l-i-e. Middle
18 initial is E. The last name is Thompson,
19 T-h-o-m-p-s-o-n.
20     Q. Okay. And what is your address?
21     A. My address is 1298 Cronson Boulevard, Crofton,
22 Maryland.
23     Q. Is that your home address?
24     A. No. It's a business address.

**Page 4**

1      Q. What is your home address?
2      A. Why do you need that?
3      Q. Sir, I'm asking you questions. I'd expect you
4  to answer them.
5      A. You can expect anything you want. You're not
6  getting my home address. Now, I did give you the
7  business address. That's the address that's on the
8  letterhead from the report that I gave you.
9      Q. All right. How long have you had that address
10 for that business?
11     A. Several years.
12     Q. Can you tell me approximately how many?
13     A. Several years. That's the best I can tell
14 you.
15     Q. Okay. Prior to that address where was your
16 office located?
17     A. I had several offices.
18     Q. Okay. Can you tell me where your offices are
19 located?
20     A. I had an office at 650 Pennsylvania Avenue
21 Southeast, Washington, DC. I had an office at
22 6323 Georgia Avenue in Washington, DC.
23     Q. Okay. How many offices do you currently have?
24     A. Just the one.

**Page 5**

1      Q. And that's located in Crofton, Maryland?
2      A. Yes.
3      Q. Do you have an office in Delaware?
4      A. No, I don't.
5      Q. Okay. Have you ever had an office in
6  Delaware?
7      A. No, I have never had an office in Delaware.
8      Q. Okay. And are you employed or do you own your
9  practice?
10     A. I'm self-employed.
11     Q. Okay. And can you give me the official or the
12 legal name of your business?
13     A. It's my name, Willie Thompson, orthopaedic
14 surgeon.
15     Q. Okay. Do you have a curriculum vitae?
16     A. Not presently. I do not have one available
17 now.
18     Q. Okay. Do you have any documents with you?
19     A. I have a copy of the report I generated on a
20 patient, ████ ████████ on ████ ██████ ████.
21     Q. Do you have any other documents with you?
22     A. No, I do not.
23     Q. Okay. I want to state for the record that I
24 just sent a fax to your office with several documents

Willie E. Thompson, M.D.

Page 6

1  attached. Will you be reviewing those documents?
2      A. No, I will not.
3      Q. Okay. Where did you go to college?
4      A. I went to college at Jersey City State College
5  in Jersey City, New Jersey.
6      Q. Okay. And what years were you in college?
7      A. 1973 to 1976.
8      Q. And did you graduate?
9      A. No, I did not.
10     Q. You do not have a college degree?
11     A. No. I went to medical school after three
12 years of college.
13     Q. Okay. Where did you attend medical school?
14     A. At the Howard University College of Medicine
15 in Washington, DC.
16     Q. In what years were you in medical school?
17     A. From August of 1976 to May of 1980.
18     Q. Did you graduate from medical school?
19     A. Yes, I did.
20     Q. Okay. And what is your degree?
21     A. I have an M.D. degree in medicine, doctor of
22 medicine.
23     Q. Okay. And where did you do your residency?
24     A. I did an internship at the Rutgers program in

Page 7

1  New Jersey. I did a four-year residency at the Howard
2  program in Washington, DC, and a one-year fellowship at
3  George Washington University in Washington, DC.
4      Q. Okay. Did you begin your residency
5  immediately after medical school?
6      A. I did an internship immediately after medical
7  school.
8      Q. Okay. And can you tell me the dates of that
9  internship and where you did it?
10     A. The dates of that are July 1st, 1980 to
11 June 30th of 1981 at the Rutgers program in
12 New Brunswick, New Jersey.
13     Q. Okay. Did you have a specialty?
14     A. My specialty was surgery.
15     Q. Okay. And then after that where did you go?
16     A. I did a four-year residency in orthopaedic
17 surgery at the Howard University program in Washington,
18 DC.
19     Q. And what years were you there? Can you give
20 me the years?
21     A. July 1st, 1981 to June 3th of 1985.
22     Q. Okay. In 1985 immediately after that
23 residency, where did you go?
24     A. To the fellowship, a combined program of

Page 8

1  George Washington University and Washington Hospital
2  Center.
3      Q. Okay. And how long were you there?
4      A. That was — I was there one year.
5      Q. Okay. And then after that what did you do?
6      A. After that I went into private practice and
7  worked part-time for Kaiser Permanente for several years.
8      Q. When you went into private practice, what was
9  the name of the practice where you worked?
10     A. It was my practice. It's my name.
11     Q. Okay. Did you have any partners?
12     A. No, I did not.
13     Q. Okay. And where was that office located?
14     A. In Washington, DC.
15     Q. Okay. You said you also worked for Kaiser
16 Permanente?
17     A. I worked for Kaiser Permanente on a part-time
18 basis for several years.
19     Q. Can you give me the years?
20     A. 1986 to 1988.
21     Q. Okay. And what was your area of specialty in
22 your private practice?
23     A. I'm an orthopaedic surgeon.
24     Q. Okay. And what did you do for Kaiser

Page 9

1  Permanente?
2      A. Orthopaedic surgery.
3      Q. In 1988 did you take on any other part-time
4  positions?
5      A. No, I did not.
6      Q. So after 1988 you worked solely in private
7  practice?
8      A. Yes. I did.
9      Q. Okay. Has that been continuous from 1988 to
10 present?
11     A. Yes.
12     Q. Okay. When did you pass your boards?
13     A. 1988.
14     Q. Is that the first time you took your boards?
15     A. That's right.
16     Q. Okay. Have you ever done anything besides
17 orthopaedic surgery?
18     A. No, I have not.
19     Q. Okay. Do you have any other areas of
20 expertise?
21     A. No.
22     Q. In what states are you currently licensed?
23     A. The District of Columbia, Virginia, Maryland,
24 Delaware and Pennsylvania.

Willie E. Thompson, M.D.

4 (Pages 10 to 13)

| Page 10 |
|---|

1    Q.   Okay. Have you lived in each of those states?
2    A.   I've lived in Maryland.
3    Q.   Okay. Is that where you currently reside?
4    A.   Yes. I do.
5    Q.   Okay. How long have you lived in the State of
6 Maryland?
7    A.   Since 1976.
8    Q.   Okay. Have you ever had a medical license
9 suspended?
10   A.   No.
11   Q.   Have you ever been disciplined by a medical
12 board?
13   A.   And why is that important? I'm here as a
14 witness of fact regarding the report. I spoke with my
15 attorney. That's the only information I'm required to
16 do. If you want to proceed with that, then we can
17 proceed with that.
18   Q.   Are you refusing to answer the question?
19   A.   Yes.
20   Q.   Okay. It's a factual question.
21        Where do you have surgical privileges?
22   A.   Why do you want -- why do you need to know? I
23 told you I'm here as a witness of fact to my report.
24 That's all I'm going to go into -- the report that I

| Page 11 |
|---|

1 generated on ~~March ? th, 2005~~.
2    Q.   Sir, are you making legal objections to your
3 testimony today? Are you asserting objections for the
4 record?
5    A.   I am not asserting anything.
6    Q.   Okay. Are you going to answer the question?
7    A.   I told you, as a witness of fact, I spoke to
8 my attorney. I will address what's in my report. And
9 that's the facts. Those are the only facts I have and
10 those are the only facts that will be addressed.
11   Q.   Who is your attorney?
12   A.   Why do you need to know that?
13   Q.   I'm asking you a question.
14   A.   If necessary, I'll have him contact you.
15   Q.   I'm asking the question. I want an answer.
16        What is the name of your attorney?
17   A.   I have given you the answer. If I feel
18 there's a need for you to know, then I'll let you know.
19   Q.   Are you refusing to answer my question?
20   A.   You have my answer.
21        Do you want to move on?
22   Q.   Do you currently do surgeries?
23   A.   Excuse me?
24   Q.   Do you currently conduct surgeries as part of

| Page 12 |
|---|

1 your practice?
2    A.   No. I no longer do that.
3    Q.   Okay. When was the last time you conducted a
4 surgery?
5    A.   About three years ago.
6    Q.   Have you discussed our subpoenas with anybody
7 today?
8    A.   Who I discuss subpoenas with is a personal
9 matter.
10   Q.   Okay. Have you discussed --
11   A.   If I discuss it with anyone, it's a personal
12 matter.
13   Q.   Did you discuss the subpoena we issued with
14 Mr. Church?
15   A.   I told you it's a personal matter who I
16 discussed it with.
17   Q.   All right.
18   A.   It is not a matter of your concern. Why do
19 you care who I discuss it with and what business of it is
20 yours?
21   Q.   Are you refusing to answer my question?
22   A.   That is my answer. Move on.
23   Q.   Have you had any discussions with counsel for
24 the defendants, Mr. Church, about this case?

| Page 13 |
|---|

1    A.   That has nothing to do with what is in my
2 report.
3    Q.   Are you refusing to answer the question?
4    A.   If you want to move on and get to this report,
5 go ahead, because nothing else is going to be discussed.
6    Q.   Okay. I'm going to state for the record that
7 you're refusing to answer that question.
8    A.   I don't care what you state for the record.
9 I'm hear to discuss this report as a matter of fact and
10 nothing else.
11   Q.   Have you been promised anything from anyone
12 relating to your testimony today?
13   A.   That's not a topic up for discussion.
14   Q.   Are you refusing to answer that question?
15   A.   That has nothing to do with the report or the
16 information contained herein.
17   Q.   Sir, have you ever been deposed before?
18   A.   Yes, I've been deposed before.
19   Q.   Okay. If I ask you a question, you can answer
20 it. If you don't want to answer it, then you can state
21 that you're refusing to answer it for the record. Okay?
22 You're not taking the deposition. I'm taking the
23 deposition. I'll ask the questions.
24   A.   That doesn't mean you're in control of any

## Page 14

1   response I give or that you're in control of anything I
2   say or do.
3        Q.  I'm stating I will ask the questions, and you
4   can state for the record whether you're answering the
5   question or not.
6        A.  You're not in control of anything I say or do.
7   Now, I'll give you my answer.  And that's the end of it.
8   You can then move on.
9        Q.  Are you familiar with ███████?
10       A.  I have a report in front of me that has the
11  name ███████ on it.
12       Q.  Okay.  Are you familiar with the man ███████
13  ███████?
14            MR. CHURCH:  I object.  You mean —
15       A.  I have —
16            THE REPORTER:  I'm sorry.  You're
17  talking at the same time.  I believe there was an
18  objection.
19            MR. SIMON:  George, were you stating an
20  objection for the record?
21            MR. CHURCH:  I was just going to say —
22  I mean, he said he's got a report.  What do you mean by
23  "familiar with"?
24            MR. SIMON:  I mean what I mean.  He can

## Page 15

1   answer the question.
2            MR. CHURCH:  All right.  I think he did.
3   Go ahead.
4   BY MR. SIMON:
5        Q.  Did you conduct a physical examination of
6   ███████ on or about ███████, Mr. Thompson?
7        A.  I conducted a physical examination on an
8   individual named ███████.
9        Q.  Okay.  Do you remember ███████?
10       A.  Not particularly.
11       Q.  Okay.  Did you review anything prior to your
12  examination of ███████?
13       A.  I reviewed some medical records.  Those are
14  listed in the report.
15       Q.  Okay.  Did you review any other medical
16  records not listed in the report?
17       A.  No.
18       Q.  Okay.  What is the date of your report?
19       A.  It's ███████.
20       Q.  Okay.  Do you have it in front of you?
21       A.  Yes, I do.
22       Q.  Okay.  Are there any notations on the report?
23       A.  What do you mean "notations"?
24       Q.  Hand notations.  Handwritten notations.

## Page 16

1        A.  No, there are no hand notations on the report.
2        Q.  Okay.  Where did you get the report?
3        A.  I don't remember.
4        Q.  How long have you had the report?
5        A.  Probably a week or two.
6        Q.  Okay.  And where did it come from?
7        A.  Once again — are you hard-of-hearing?  I said
8   I don't remember.
9        Q.  Okay.  Can you please tell me who the report
10  is addressed to?
11       A.  It's addressed to ███████ Central Park
12  ███████, Virginia.
13       Q.  Okay.  And what is the reference?
14       A.  What is the what?
15       Q.  What does the reference line say?
16       A.  I'm not sure what you mean by a "reference
17  line."
18       Q.  Is there a reference line in the letter
19  starting with "RE"?
20       A.  I don't have any such thing in front of me.
21       Q.  Under the addressee?
22       A.  I told you what the address said.  That's all
23  it said.
24       Q.  Okay.  Underneath the address for the

## Page 17

1   addressee, is there a reference line:  "RE" colon?
2        A.  Not on this report.
3        Q.  Okay.  What does it say under the addressee?
4        A.  It says what I just told you.  It says
5   ███████, Virginia.
6        Q.  Okay.  And what's the next line?
7        A.  There is no next line.  The next line says Re:
8   ███████.  Date of Injury, ███████.
9        Q.  Okay.  And who is it addressed to?
10       A.  I've already answered that question.
11            Now, will you please move on?
12       Q.  Can you read the first paragraph for me?
13       A.  You read it.  I have it in front of me.  I
14  wrote it.  Why do you need to read it?
15       Q.  I'm asking you to read the first paragraph of
16  the letter.  Are you refusing to read the first paragraph
17  of the letter?
18       A.  I'm not reading anything.
19       Q.  How can I read the first paragraph of a letter
20  that you have in front of you?  You have not provided me
21  with a letter.
22       A.  I have written a report that I generated
23  ███████.  As far as I know, you have a copy of
24  the report.

Willie E. Thompson, M.D.

6 (Pages 18 to 21)

Page 18

1    Q. And what —
2    A. You're questioning me about it. You called
3 me. You contacted me. You must have a copy of it. I'm
4 not going to read this report. You can read it just as
5 well as I can, I'm certain.
6    Q. Okay. And what are your findings in the
7 report?
8    A. The findings are listed on page 2 under
9 Physical Examination.
10    Q. Okay. And what are your findings?
11    A. Please read it.
12    Q. Are you refusing to read your findings in the
13 letter on the record?
14    A. Listen, I've generated this report. I've
15 dictated it. It was typed. I reviewed it and signed it.
16 I don't have to read it. You can read it.
17    MR. CHURCH: Why don't you ask him some
18 specifics about it, Chris? That might facilitate it.
19 BY MR. SIMON:
20    Q. Okay. Dr. Thompson, you state in the first
21 paragraph of a letter that I have that ▮▮▮▮▮▮▮▮▮▮▮
22 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
23 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Is that
24 true?

Page 19

1    A. That's what the report says.
2    Q. Okay. You state in the letter that I have --
3 and the letter that I have that appears to be signed by
4 you -- in the second paragraph ▮▮▮▮▮▮▮▮▮▮▮▮
5 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Okay? Is
6 that consistent with your report that you have presently?
7    A. In the second paragraph?
8    Q. Yes. Beginning with bold-type History of
9 Present Illness.
10    A. That's what's in the report.
11    Q. Okay. You state in the third paragraph ▮▮▮▮▮
12 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
13 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
14 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Hydrocodone and
15 ▮▮▮▮▮▮. Is that correct?
16    A. That's what's in the report.
17    Q. Okay. I want to turn your attention to what
18 is page 3 of the letter that I have on my desk here. Are
19 you looking at that page?
20    A. I have page 3 in front of me.
21    Q. Okay. On the fourth paragraph from the top,
22 the letter states: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
23 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
24 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Page 20

1 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
2 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
3 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
4 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
5 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
6 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
7 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮
8      Is that consistent with your letter?
9    A. That's what's in the report in front of me.
10    Q. Okay. Is that consistent with your
11 recollection?
12    A. I don't have a recollection. I have a report
13 in front of me.
14    Q. Okay. You have no recollection of conducting
15 this examination?
16    A. I have a report in front of me.
17    Q. Okay. Do you remember conducting the
18 examination?
19    A. I don't specifically remember him.
20    Q. Okay. Do you remember how long it took for
21 you to conduct your examination?
22    A. No, I do not.
23    Q. Okay. Do you remember if you asked
24 ▮▮▮▮▮▮▮▮ to do anything during your examination?

Page 21

1    A. It's all listed under the section Physical
2 Examination.
3    Q. Okay. When did you write your report?
4    A. I dictated the report as soon as I got through
5 with the examination.
6    Q. Okay. And how did you dictate it? Can you
7 tell me the specifics of that?
8    A. I dictated into an 800 number.
9    Q. Okay. And whose 800 number was that?
10    A. I have no idea.
11    Q. So you just dialed an 800 number and dictated
12 it into the phone?
13    A. I was provided with an 800 number and some
14 identifying features and I dictated into the system. And
15 it goes right to whoever the requesting party is.
16    Q. Okay. Do you have any recollection of who the
17 requesting party was?
18    A. I don't have a specific recollection.
19    Q. Do you have a recollection of the date of this
20 examination?
21    A. The date on the report says ▮▮▮▮▮▮▮▮▮.
22    Q. Okay. Was that the date you conducted the
23 examination?
24    A. That would be the date.

Page 22

1    Q.  Okay.  Is that the date you signed the report?
2    A.  I would have signed it a few days later.
3    Q.  And what happens to the report after you
4  signed it?
5    A.  Then it goes back to whoever sent it to me.
6    Q.  How did you transmit it to them?
7    A.  Usually via fax.
8    Q.  Okay.  Did you have any other contact with the
9  person who asked you to prepare this report?
10    A.  Not that I remember.
11    Q.  Do you remember how much you were paid to do
12  this report?
13    A.  I am paid for all the reports I do.
14    Q.  Do you remember how much?
15    A.  No, I don't.
16    Q.  Do you know how many independent medical
17  examinations you conduct each year, Dr. Thompson?
18    A.  What does that have to do with this report?
19    Q.  I'm asking you a question.
20       Are you refusing to answer it?
21    A.  You have my answer.
22    Q.  Have you ever heard of an entity called
23  [REDACTED]?
24    A.  Yes, I have.

Page 23

1    Q.  Okay.  And what is your understanding of what
2  [REDACTED] is?
3    A.  It's my understanding that they schedule IMEs.
4    Q.  Okay.  How long have you worked with [REDACTED]?
5    A.  I don't remember.
6    Q.  Can you give me an approximate?
7    A.  No, I cannot.
8    Q.  Did [REDACTED] schedule this IME?
9    A.  I'm not sure if they scheduled it or if
10  someone else scheduled it for them.
11    Q.  Okay.  When you use the term "IME," what does
12  that stand for?
13    A.  Independent medical evaluation.
14    Q.  And do you understand what the purpose of an
15  independent medical examination is?
16    A.  Do you?
17    Q.  Sir, are you going to answer the question or
18  are you refusing to answer the question?
19    A.  You asked me a question.  I asked you a
20  question.  Of course, I understand it.  I do them all the
21  time.
22    Q.  Is that your answer?
23    A.  That's my answer.
24    Q.  Do you have any agreements with [REDACTED] to

Page 24

1  conduct IMEs?
2    A.  I don't have any specific agreement with them.
3    Q.  Who is your contact at [REDACTED]?
4    A.  I don't have any particular person.  I
5  contacted [REDACTED]  [REDACTED] contacts me.
6    Q.  Okay.  Do you and [REDACTED] have any policies for
7  your appearance at depositions regarding reports —
8    A.  No.
9    Q.  — that you generate?
10    A.  No.
11    Q.  When [REDACTED] asked you to do an independent
12  medical examination, what happens?  Can you tell me what
13  happens?
14    A.  In this case what happens is what we have in
15  this report.
16    Q.  Okay.  Can you tell me chronologically what
17  happens?  Do they send you a letter asking you to do an
18  independent medical examination?
19    A.  That has nothing to do with this report.  I'm
20  testifying as to what's going on in this record.  So move
21  on.
22    Q.  Okay.  What happened in this report?  Do you
23  recall what happened after [REDACTED] asked you to conduct
24  this examination?

Page 25

1    A.  Well, obviously, you know.  I sent the report
2  to them.
3    Q.  Did they send you anything prior to your
4  examination of [REDACTED]?
5    A.  I have listed the medical records in the
6  report.
7    Q.  Okay.
8    A.  That's what was sent to me.
9    Q.  So [REDACTED] sent you the items that are
10  identified in your report?
11    A.  I'm not certain who sent it to me.  It was
12  sent to me.
13    Q.  Okay.  Have you ever had any dealings directly
14  with [REDACTED]?
15    A.  Not specifically, no.
16    Q.  How about [REDACTED]?
17    A.  Not specifically, no.
18    Q.  How about [REDACTED]?
19    A.  Not specifically, no.
20    Q.  How about [REDACTED]?
21    A.  Not that I'm aware of.
22    Q.  [REDACTED]?
23    A.  Not that I'm aware of.

Willie E. Thompson, M.D.

8  (Pages 26 to 29)

Page 26

1    Q.  ▮▮▮▮▮▮▮▮▮?
2    A.  Not that I'm aware of.
3    Q.  Do you conduct IMEs for any other entity
4  besides ▮▮▮▮▮?
5    A.  We're here to discuss this report that was
6  generated for ▮▮▮▮▮. Nothing else.
7    Q.  Are you refusing to answer that question?
8    A.  You have my answer.
9    Q.  Has ▮▮▮▮▮ ever asked you about your
10  background or qualifications to do independent medical
11  examinations?
12    A.  We're here to discuss this report and this
13  report only.
14    Q.  Have you ever conducted an IME without
15  actually examining an individual?
16    A.  There's no way -- that's ridiculous.  That's
17  impossible.
18    Q.  When we issued you a subpoena in this case,
19  did we issue you a check as well?
20    A.  There was a small check.  You can have it
21  back, if you want.  I'll be glad to drop it in the mail
22  to you today.
23    Q.  And how much was that for?
24    A.  It was a check for $40 and a check for $90.90,

Page 27

1  and you can certainly have that back anytime you want.
2  In fact, I intend to send it back to you.
3    Q.  Okay.  Did you deposit those checks?
4    A.  I deposited those checks.
5    Q.  How many patients do you have to see today,
6  Dr. Thompson?
7    A.  I don't see anything in this report that
8  relates to how many patients I'm going to see on any
9  particular day.  Move on.
10    Q.  I'm going to ask you again:  Have you ever
11  been disciplined by a state or administrative licensing
12  board?
13    A.  Move on.  We've already been through that.
14    Q.  Are you refusing to answer that question?
15    A.  You have my answer.  Move on.
16    Q.  Have you ever been a party to a civil action?
17    A.  Move on.
18    Q.  Have you ever been charged with a criminal
19  offense?
20    A.  Move on.
21    Q.  Are you refusing to answer any questions
22  related to those questions?
23    A.  You have my answer.
24    Q.  I'm looking at your letter dated ▮▮▮▮▮▮▮,

Page 28

1    ▮▮▮▮  Do you have any reason to disavow any of the
2  statements you made in this letter?
3    A.  No, I do not.
4      MR. SIMON:  George, do you have any
5  questions?
6      MR. CHURCH:  Yeah.
7      MR. SIMON:  Go ahead.
8  BY MR. CHURCH:
9    Q.  Doctor, I gather from what has transpired here
10  that you had spoken to your attorney, your personal
11  attorney, about what you should respond to in the
12  deposition.  Is that fair to say?
13    A.  That is correct.  And I was told the only
14  thing to respond to is the report itself as a witness of
15  fact.  And the only facts I have are what's in the
16  report.
17    Q.  Okay.  I mean, is that the reason you have
18  answered or not answered some of the questions that have
19  been put to you by Mr. Simon?
20    A.  That is correct.
21    Q.  All right.  I do want to ask you some specific
22  questions about your report, if I can.  On the first page
23  in the last full paragraph that starts off ▮▮▮▮▮▮▮▮▮
24  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Page 29

1  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
2  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
3  ▮▮▮▮▮▮▮▮▮
4    Why is that of note?
5    A.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
6  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
7  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
8  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
9  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
10  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
11  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
12  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
13  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
14  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
15    Q.  All right.  And so in the case of ▮▮▮▮▮▮▮
16  who had none of those complaints, is it fair to say that
17  that would indicate ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
18  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮?
19    A.  It would indicate that to me.
20    Q.  All right.  I also see on the second page
21  under Past Medical History there's a one sentence
22  after the first paragraph that says:  ▮▮▮▮▮▮▮▮▮
23  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
24    When you examined him on ▮▮▮▮▮▮▮▮▮

## Page 30

1  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
2  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮?
3      A.  ▮▮▮▮▮▮▮▮▮.
4      Q.  All right.  Under The Physical Examination —
5  I'm just going to pick out a few things here — you talk
6  about the fact that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
7  ▮▮▮▮▮.  What is the significance of that?
8      A.  The significance of that is ▮▮▮▮▮▮▮▮▮▮▮
9  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
10  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
11  ▮▮▮▮▮▮.
12      Q.  All right.  And how does that impacts on your
13  opinions with respect to this accident ▮▮▮▮▮▮▮▮▮▮▮
14  ▮▮▮▮?
15      MR. SIMON:  George, just for the record,
16  are you asking him to give an opinion?
17      MR. CHURCH:  I'm just asking you about
18  his report.
19      MR. SIMON:  I think you're asking you to
20  formulate —
21      MR. CHURCH:  I'm asking you about his
22  report.
23      MR. SIMON:  Fair enough.
24      MR. CHURCH:  Are you objecting?

## Page 31

1      MR. SIMON:  I'm asking you a question.
2      MR. CHURCH:  Well, I mean, I'm not being
3  deposed here.
4      MR. SIMON:  I'm not objecting to him
5  giving an opinion.  I'm just asking you a question for
6  clarification.
7      MR. CHURCH:  The question speaks for
8  itself.  I mean, you can conclude whatever you want.
9      MR. SIMON:  Okay.
10      A.  The fact that you can walk with a normal gait
11  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
12  ▮▮▮▮▮▮▮▮▮.
13      Q.  All right.  Is that why you commented on that
14  in your report?
15      A.  Yes.
16      Q.  All right.  The next paragraph deals with your
17  examination ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
18  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮?
19      A.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.
20      Q.  Okay.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
21  ▮▮▮▮▮▮▮▮▮▮▮?
22      A.  That is correct.
23      Q.  And what effect, if any, would ▮▮▮▮▮▮▮▮
24  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮?

## Page 32

1      A.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
2      Q.  All right.
3      A.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
4  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
5  ▮▮▮▮.
6      Q.  All right.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
7  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
8  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
9  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
10  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮?
11      A.  Yes.  It is.
12      Q.  All right.  You also commented that the
13  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
14  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
15  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ —
16      A.  Yes, it is.
17      Q.  All right.  Also you commented that there's ▮▮
18  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
19  ▮▮▮▮▮▮.  What is the significance of that?
20      A.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
21  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.
22      Q.  All right.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
23  ▮▮▮▮▮▮▮▮▮▮▮▮.  What is the significance of that?
24      A.  That signify you have an infection or that is

## Page 33

1  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
2  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
3  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
4  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.
5      Q.  All right.  And he had none of those.
6  Correct?
7      A.  None of those.
8      Q.  All right.  The next paragraph deals with the
9  upper extremity examination.  In a patient ▮▮▮▮▮▮▮▮
10  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
11  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮?
12      A.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
13  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
14  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
15  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
16  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
17  ▮▮▮▮.
18      Q.  All right.  And that goes to the next sentence
19  of your report that says ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
20  ▮▮▮▮▮▮▮▮▮▮▮▮.  Why is that significant to
21  you in this examination?
22      A.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
23  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
24  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Willie E. Thompson, M.D.

10 (Pages 34 to 37)

Page 34

1  ~~injury to the nerve changes to certain muscle groups,~~
2  ~~the some muscles are going to waste away, visibly soft~~
3  ~~and much smaller than the opposite side.~~
4  Q. All right. And you didn't find that in your
5  examination of ~~Mr. Johnson?~~
6  A. No, I did not.
7  Q. All right. You also talked about ~~manual~~
8  ~~muscle testing revealed that there's 5/5 in both upper~~
9  ~~extremities.~~ What does that mean?
10 A. That means that ~~he had normal strength against~~
11 ~~resistance.~~
12 Q. All right. And what about ~~the bulk and tone~~
13 ~~of this musculature?~~
14 A. Once again, ~~that means he had no muscle~~
15 ~~wasting or atrophy.~~
16 Q. All right. And, again, ~~what is the indication~~
17 ~~of normal sensation throughout the upper extremities~~
18 ~~important?~~
19 A. ~~If you got some type of a nerve injury you're~~
20 ~~going to have a loss of sensation or some indication of~~
21 ~~numbness over the particular area as supplied by that nerve~~
22 ~~root.~~
23 Q. Okay. And in this case he had no problems
24 with that?

Page 35

1  A. Nothing.
2  Q. All right. Let me ask you a couple questions
3  about the ~~lumbar spine exam. When you talked about range~~
4  ~~range of motion throughout the lumbar spine, what are you~~
5  ~~describing?~~
6  A. ~~Bending forward and down which means touching~~
7  ~~your toes, bending all the way back, leaning to each right,~~
8  ~~the left, and twisting your trunk.~~
9  Q. And he was able to do all those things?
10 A. ~~Do all those things fully without any~~
11 ~~restriction.~~
12 Q. All right. And ~~without any tenderness according~~
13 ~~to his statement.~~
14 A. ~~No tenderness, no spasm.~~
15 Q. All right. ~~You also talked about him being~~
16 ~~walking and all that fully performed adequately? What~~
17 ~~is this mean?~~
18 A. That's to check the ~~different muscle groups in~~
19 ~~the lower extremities. And this is a crude impairment work up~~
20 ~~impairs your calf muscles, you would have difficulty up~~
21 ~~walking on your toes. If a major impairment, you would in the~~
22 ~~muscles in the front of your legs, and you would have~~
23 ~~difficulty walking on your heels.~~
24 Q. ~~What is straight leg raising?~~

Page 36

1  A. ~~Straight leg raising is done to place stress~~
2  ~~on the relationship of a finds is an irritation of the~~
3  ~~lower lumbar nerve roots.~~
4  Q. And in this case —
5  THE REPORTER: Excuse me, Mr. Church.
6  The doctor dropped off there at the end of his statement.
7  You stated, "~~Straight leg irritations of~~
8  ~~the lower lumbar nerve roots...~~" Can you complete that,
9  Doctor?
10 MR. CHURCH: Did you hear him, Doctor?
11 Hello?
12 Dr. Thompson?
13 I don't know whether we lost him or not.
14 Dr. Thompson, are you still there?
15 I guess not.
16 Is anybody still here?
17 MR. SIMON: I'm still here, George.
18 MS. PERRY: I'm on the line, George.
19 MR. CHURCH: Let's wait a second and see
20 if he calls back in. I'll tell you what — bear with me
21 a second. I'll see if I can get him back. All right.
22 Bear with me a second.
23 I was in the middle of my
24 cross-examination of Dr. Thompson, and for some reason we

Page 37

1  lost him off of the call. I don't know. He seemed to be
2  in mid sentence, and we lost the connection. So I went
3  on to my conference-calling capabilities on my own line,
4  called the number that I have for him, and got, you know,
5  no answer — got his voice mail message. So I don't know
6  what happened to him. But, obviously, I guess the
7  deposition is still open until we can conclude it at some
8  point. So I guess for now we're done.
9  MR. SIMON: George, do you know who his
10 counsel is?
11 MR. CHURCH: I do not. But I can tell
12 you it's not me.
13 MR. SIMON: I didn't think that.
14 MR. CHURCH: I don't know. Someone
15 actually accused me of that earlier. I don't represent
16 him.
17 MR. SIMON: I'm just going to state for
18 the record it's June 11th at 2:13 p.m. Dr. Thompson is
19 no longer on the phone, and I'm going to reserve all
20 rights and objections. The testimony speaks for itself
21 and his refusal to answer questions speaks for itself.
22 So we'll, I guess, appear before the Court on this.
23 MR. CHURCH: I guess.
24 MR. SIMON: Thanks, George.

Page 38

1          (The deposition adjourned at 2:15 p.m.
2     this same day.)
3
4                - - - - -
5
6              INDEX TO TESTIMONY
7
       WILLIE E. THOMPSON, M.D.          PAGE
8
         Examination by Mr. Simon        2
9        Examination by Mr. Church      28
10
11              - - - - -
12
13     (There were no exhibits marked during this deposition.)
14
15              - - - - -
16
17
18
19
20
21
22
23
24

Page 39

1          C E R T I F I C A T E
2     STATE OF DELAWARE:
                        :
3     NEW CASTLE COUNTY:
4          I, Robert Wayne Wilcox, Jr., a Registered
5     Professional Reporter and Notary Public, within and for
6     the County and State aforesaid, do hereby certify that
7     the foregoing deposition of WILLIE E. THOMPSON, M.D., was
8     taken before me, pursuant to notice, at the time and
9     place indicated; that said deponent was by me duly sworn
10    to tell the truth, the whole truth, and nothing but the
11    truth; that the testimony of said deponent was correctly
12    recorded in machine shorthand by me and thereafter
13    transcribed under my supervision with computer-aided
14    transcription; that the deposition is a true record of
15    the testimony given by the witness; and that I am neither
16    of counsel nor kin to any party in said action, nor
17    interested in the outcome thereof.
18         WITNESS my hand and official seal this 16th day
19    of June A.D. 2008.
20
21    _____
      ROBERT WAYNE WILCOX, JR.
22    REGISTERED PROFESSIONAL REPORTER
      CERTIFICATION NO. 101-RPR
23    (Expires January 31, 2011)
24

# Exhibit J

## CERTIFICATION OF CHRISTOPHER P. SIMON
## IN ACCORDANCE WITH FED. R. CIV. P. 37(d)(1)(B)

I, Christopher P. Simon, hereby confirm that I, and attorneys in my firm have in good faith conferred or attempted to confer with Dr. Willie Thompson and counsel for Defendants in an effort to obtain resolution of this discovery dispute.

_____

Christopher P. Simon (No. 3697)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE STATE OF DELAWARE

KERRY JOHNSON and )
SHARON ANDERSON, )
on behalf of themselves and all )
others similarly situated, )
           )
           Plaintiffs, )     C.A. No. 1:06-cv408 (JJF)
           )
       v. )
           )
GOVERNMENT EMPLOYEES )
INSURANCE COMPANY, )
GEICO CASUALTY COMPANY, )     TRIAL-BY JURY DEMANDED
GEICO GENERAL INSURANCE )
COMPANY, and GEICO INDEMNITY )
COMPANY, )     CLASS ACTION
           )
           Defendants. )

## <u>ORDER</u>

UPON CONSIDERATION OF Plaintiffs' Motion to Compel Deposition of Dr. Willie Thompson

(the "Motion") and any response thereto,

IT IS HEREBY ORDERED that:

     1.     Plaintiffs' Motion is hereby GRANTED;

     2.     Within five (5) days of the date of this Order, Dr. Willie Thompson shall appear for

examination by oral deposition at the office of Cross & Simon, LLC and answer fully questions posed to

him;

     3.     Dr. Willie Thompson shall pay the cost of the court reporter for such deposition and the

June 11, 2008 deposition;

     4.     Plaintiffs' are awarded reasonable attorney fees of $_____ for preparing and

presenting the Motion and attending the June 11, 2008 deposition.


Dated:_____

_____
The Honorable Joseph J. Farnan
United States District Court

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of June, 2008, a true and correct copy of the foregoing

*Plaintiffs' Motion to Compel Deposition of Dr. Willie Thompson* was served on the following in the

manner indicated:

**BY HAND DELIVERY**
Dawn L. Becker, Esquire
Gary Alderson, Esquire
LAW OFFICES OF DAWN L. BECKER
Citizens Bank Center
919 Market Street, Suite 460
Wilmington, DE 19801

**BY FIRST CLASS MAIL**
George M. Church, Esquire
Laura A. Cellucci, Esquire
MILES & STOCKBRIDGE P.C.
10 Light Street
Baltimore, Maryland 21202

**BY FIRST CLASS MAIL**
Meloney Cargil Perry, Esquire
Meckler Bulger & Tilson LLP
10,000 North Central Expressway
Suite 1450
Dallas, TX 75231

**BY FIRST CLASS MAIL**
Dr. Willie E. Thompson
10814 Cherry Blossom Court
Adelphi, MD 20783

**BY FIRST CLASS MAIL**
Dr. Willie E. Thompson
1298 Cronson Boulevard
Suite 203
Crofton, MD 21114

**BY FIRST CLASS MAIL**
Dr. Willie E. Thompson
15 Omega Drive
Building K, First Floor
Newark, DE 19713

_____
Kevin S. Mann (No. 4576)