IN THE UNITED STATES DISTRICT COURT
FOR THE STATE OF DELAWARE

KERRY JOHNSON and )
SHARON ANDERSON, on behalf of )
themselves and all others similarly )
situated, )                                    C.A. No. 1:06-cv408 (JJF)
 )
Plaintiffs, )
 )                                             NON-ARBITRATION
v. )
 )                                             TRIAL BY JURY DEMANDED
GOVERNMENT EMPLOYEES )
INSURANCE COMPANY, GEICO )                     CLASS ACTION
CASUALTY COMPANY, GEICO )
GENERAL INSURANCE )
COMPANY, and GEICO )
INDEMNITY COMPANY, )
 )
Defendants.

## **MOTION TO QUASH**

CorVel Corporation ("CorVel"), incorrectly designated in Plainitffs'

Subpoena issued by Kevin S. Mann, Esquire ("Subpoena")(See Subpoena, attached as

Exhibit A) as "Corvel Healthcare Corporation," moves the Court for an Order, in the

form attached, that quashes the Subpoena purportedly served on it on June 6, 2008 for the

reasons set out in its Objections attached hereto as Exhibit B and for the following

reasons:

1.      The Court should quash the Subpoena pursuant to Rule 45 (c)(3)(A)(iv),

because it subjects CorVel to undue burden. (See Affidavit of Steve Szuchy, attached as

Exhibit C, at ¶¶6-9).

Federal Rules of Civil Procedure  26(c) and Rule 45(c)(3) provides district courts

with broad discretion to quash or modify subpoenas causing "undue burden." *Exxon

Shipping Co. v. U.S. Dept. of Interior*, 34 F.3d 774, 779 (9th Cir. 1994).   The Subpoena

patently breaches the duty imposed by Rule 45 (c)(3) because is overbroad and unduly burdensome. Relevancy is just the threshold requirement the Subpoena must satisfy in order to be enforceable. Even if the Subpoena is relevant, and to the extent it seeks non-privileged information, it should nonetheless be quashed under Rule 45(c)(3)(A)(iv) because of the tremendous overbreadth of the Subpoena and the undue burden it imposes on CorVel. *See* 45(c)(3)(A)(iv); *In Re Edelman v. Taittinger (In re Edelman)*, 295 F.3d 171, 178 (2d Cir. 2002) (courts may modify or quash a subpoena in order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense"); *Mannington Mills, Inc. v. Armstrong World Indus. Inc.*, 206 F.R.D. 525, 529 (D. Del. 2002) ("a nonparty may seek from the court protection from discovery via the overlapping and interrelated provisions of both Rules 26 and 45. A nonparty moving to quash a subpoena, in essence, is the same as moving for a protective order that such discovery not be allowed").

     2.     The Court should quash the Subpoena pursuant to Rule 45 (c)(1), because the information requested is equally obtainable form other sources without undue hardship to plaintiffs and because the parties and the attorney serving the Subpoena did not take reasonable steps to avoid imposing an undue burden or expense on CorVel, a non-party to the litigation. *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 218 F.R.D. 423, (D.Del. 2003)("It is incumbent upon counsel [to avoid imposing undue burden, and] to order discovery demands, *particularly against non-parties*, in such a way that the burdens of giving evidence are reasonable, under all of the circumstances presented")(emphasis supplied).

The Subpoena calls for the production of information or documents that could be obtained from another source. For example, most, if not all, of the items responsive to requests 1 through 15 relate to documents and records that should be available to the requestor in the discovery process by serving written discovery on parties in the litigation, or, alternatively, issuing a subpoenas directly to medical providers. (See Subpoena, Schedule A, "Request for Documents" at ¶¶1-15).

3. The Court should quash the Subpoena pursuant to Rule 45 (c)(1), because it subjects CorVel, a non-party to the litigation, to incur substantial expense. (See Affidavit of Steve Szuchy, attached as Exhibit C, at ¶10 ). The Federal Rules afford non-parties special protection against the time and expense of complying with subpoenas. *Exxon Shipping Co. v. U.S. Dept. of Interior*, 34 F.3d 774, 779 (9th Cir. 1994).

The Subpoena constitutes an attempt to obtain discovery of voluminous documents which must be retrieved, assembled, reviewed, and transmitted by CorVel. This process would subject CorVel to undue burden and expense. The Subpoena seeks documents in CorVel's possession that are unrelated to GEICO claims. (See Subpoena at Exhibit A; Schedule A, "Request for Documents" at ¶¶10, 14-15). Moreover, the Subpoena seeks documents in CorVel's possession that are unrelated to Delaware claimants or Delaware insureds. (See Subpoena at Exhibit A; Schedule A, "Request for Documents" at ¶¶1, 8-12). This is too broad.

4.    The Court should quash the Subpoena because it requests protected health information of individuals that are not parties to this litigation without their informed consent, the disclosure of which would violate the Health Insurance Portability and Accountability Act ("HIPAA"). CorVel understands that this action is brought by 2

3

named plaintiffs, Kerry Johnson and Sharon Anderson. CorVel understands further that, as of the drafting of this motion, this action is brought as a class-action lawsuit with an uncertified class. HIPAA limits the instances in which "protected health information" can be disclosed for a judicial proceeding. *See* 45 CFR § 164.512(e). Under HIPAA, a "covered entity" may disclosed protected health information only after receiving "satisfactory assurances" that (1) reasonable efforts have been made to ensure that the individual who is subject to the request has been provided notice of the request and given an opportunity to object, or (2) that a "qualified protective order" has been entered into or has been requested with regard to the protected health information being sought. 45 CFR § 164.521(e)(iv)(A) and (B).

HIPAA defines "qualified protective order" as

"an order that (A) Prohibits the parties *from using or disclosing the protected health information* for any purpose other than the litigation or proceeding for which such information was requested; and (B) Requires the return to the covered entity or destruction of the protected health information (including all copies made) at the end of the litigation or proceeding.

45 CFR § 164.521(e)(v)(emphasis supplied).

CorVel is aware of and has been provided with a copy of a "Stipulated Confidentiality Order" agreed upon by the parties and signed by the Court on December 4, 2007. That Order, however, (2) was entered into 6 months before the Subpoena was served, and (2) does not include or define "protected health information," or otherwise contemplate any individual's health or medical information of any kind in its definition of "Confidential" information.

5.     The Court should quash the Subpoena because it requests protected health information of individuals that are not parties to this litigation without their informed consent, the disclosure of which would violate Delaware Law.   Federal HIPAA

4

regulations preempt state law, except where state law restrictions relating to the privacy

of individually identifiable health information provide greater protection of that

information. *See* 45 C.F.R. § 160.203(b); *see also Travis v. Thane International, Inc.*,

2005 WL 1971900, at *2 (M.D. Tenn. 2005)("where more stringent or, stated another

way, more confidentiality-friendly, preempt the less stringent edicts of state law; while

states can establish greater protections than those provided for under HIPAA, they cannot

promulgate rules that provide for *less* stringent protections), *citing* 45 C.F.R. § 160.203

(2005)(emphasis added).

Delaware's law on the Confidentiality of Personal Health Information, codified at

16 Del. §§ 1230 *et. seq.* provide more stringent confidentiality provisions than HIPAA,

and therefore applies to the disclosure of information pursuant to the Subpoena request

for information on GEICO's "Delaware insureds." (*See* 45 C.F.R. § 160.203(b); *See*

*also* Subpoena at Exhibit A; Schedule A, "Request for Documents" at ¶¶3-7). Under 16

Del. C. § 1230, "protected health information" includes any information "relat[ing] to an

individuals' past, present or future physical…condition, treatment, [or] service…and that

reveals the identity of the individual whose health care is the subject of the information."

Delaware law provides only limited, enumerated instances in which "protected health

information" may be disclosed without the informed consent of the individual whose

information is being sought. *See* 16 Del. C. §1232(d)(1-7). Unlike the Federal HIPAA

statute, the Delaware statute does not provide an exception where a protective order has

been entered. In regards to a court Order, the statute provides that an entity may only

disclose protected health information "[p]ursuant to a court order in order to avert a clear

danger to an individual or the public health." *See* 16 Del. C. §1232(d)(5).

6. The Court should quash the Subpoena pursuant to Rule 45(c)(3)(A)(iii) to the extent it requires production of matter protected by the attorney-client privilege as to which no exception or waiver applies.

7.       The Court should quash the Subpoena pursuant to Rule 45 (c)(3)(A)(i), because it fails to allow a reasonable time to comply. The Subpoena is untimely in its notice both on its face and in context. It is unreasonable on its face because it provides insufficient notice to a non-party to search, retrieve, and produce records from thousands of files. It is unreasonable in context because it seeks documents unrelated to GEICO claims (See Subpoena at Exhibit A; Schedule A, "Request for Documents" at ¶¶10, 14-15), and unrelated to Delaware claim files. (See Subpoena at Exhibit A; Schedule A, "Request for Documents" at ¶¶1, 8-12). This is too broad.

CorVel estimates that it would take approximately 2,000 man hours to search its files for documents responsive to the Subpoena for Delaware claims that it has performed services for GEICO (See Affidavit of Steve Szuchy, attached as Exhibit C, at ¶ 9).

8.       CorVel is prepared to make available medical records and documents in its possession relating to the named plaintiff, Kerry Johnson upon the receipt of a duly executed authorization form permitting the release of his records.

9.       After a diligent search of its records, CorVel is unable to locate any documents or medical records pertaining to the named plaintiff, Sharon Anderson.

10.       The Subpoena is unreasonably burdensome to CorVel for the reasons set forth in the Affidavit of Stephen J. Szuchy, attached hereto as Exhibit C.

## CONCLUSION

For the foregoing reasons, the Subpoena is procedurally and substantively flawed and the CorVel respectfully request that it be quashed pursuant to the *Federal Rules of Civil Procedure* 45 and 26, unless it is modified to meet CorVel's objections.

MORRIS JAMES LLP

David J. Soldo (#4309)
500 Delaware Avenue
Suite 1500
Wilmington, DE 19899
(302) 888-6800
*Attorneys for CorVel Corporation*

July 14, 2008

IN THE UNITED STATES DISTRICT COURT
FOR THE STATE OF DELAWARE

| | |
|---|---|
| KERRY JOHNSON and<br>SHARON ANDERSON, on behalf of<br>themselves and all others similarly<br>situated,<br><br>          Plaintiffs,<br><br>   v.<br><br>GOVERNMENT EMPLOYEES<br>INSURANCE COMPANY, GEICO<br>CASUALTY COMPANY, GEICO<br>GENERAL INSURANCE<br>COMPANY, and GEICO<br>INDEMNITY COMPANY,<br><br>          Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 1:06-cv408 (JJF)<br><br>NON-ARBITRATION<br><br>TRIAL BY JURY DEMANDED<br><br>CLASS ACTION |

## **ORDER ON MOTION TO QUASH**

Upon consideration of the Objections and Motion to Quash filed by CorVel

Corporation ("CorVel"), and any response thereto, the Court ORDERS this _____ day of

July, 2008 as follows:

1.    The Motion to Quash is granted to the extent that the Subpoena requests the

medical records or other protected health information for individuals that are not named

parties to this litigation.

2.    Upon the receipt of a signed authorization form from Kerry Johnson, CorVel

will deliver to plaintiffs copies of the following documents in its possession:

      A.    Corvel's file on Kerry Johnson, including:

           i.    The Request for Service form received from GEICO;

           ii.    Mr. Johnson's medical records;

          iii.    Documents relating to Mr. Johnson's March 14, 2005 IME,

iv. including:

1. Dr. Willie E. Thompson's March 14, 2005 IME report;

2. CorVel's letter to Laura Simon, Esquire, regarding March 24, 2005 IME;

3. CorVel's letter to Mr. Kerry Johnson regarding March 14, 2005 IME;

4. CorVel's letter to Dr. Willie Thompson concerning Dr. Thompson's March 15, 2005 IME of Kerry Johnson;

5. Documents pertaining to CorVel's payment to Dr. Thompson for the March 14, 2005 IME and report on Kerry Johnson.

B.   A list of those Delaware doctors whom CorVel currently uses to perform IMEs and/or peer record reviews in Delaware.

3.   CorVel has represented that, after a diligent search of its records, CorVel is unable to locate any documents or medical records pertaining to the named plaintiff, Sharon Anderson.   CorVel is not required to produce records on Sharon Anderson.

_____
J.

**EXHIBIT A**

• AO88 (Rev. 12/06) Subpoena in a Civil Case

Issued by the

# UNITED STATES DISTRICT COURT

DISTRICT OF     **DELAWARE**

| | |
|---|---|
| KERRY JOHNSON and SHARON ANDERSON, | **SUBPOENA IN A CIVIL CASE** |
| V. | |
| GOVERNMENT·EMPLOYEES INSURANCE COMPANY, GEICO·CASUALTY COMPANY, GEICO GENERAL INSURANCE COMPANY, and GEICO INDEMNITY COMPANY | Case Number: 1:06-cv408 (JJF) |

TO: Corvel Healthcare Corporation
2711 Centerville Road, Suite 400
Wilmington, DE 19808

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below
···  to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME  . |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a
deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at
the place, date, and time specified below (list documents or objects):

See Schedule A, attached hereto.

| PLACE | DATE AND TIME |
|---|---|
| Cross & Simon, LLC, 913 N. Market Street, 11th Floor, Wilmington, DE 19801 | July 7, 2008 at 10:00 a.m. |

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| . | . |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers,
directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the
matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| _Kevin S. M_____ , PLAINTIFFS' ATTORNEY | |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Kevin S. Mann, Esq. (No. 4576), Cross & Simon, LLC, 913 N. Market Street, 11th Floor, Wilmington, DE 19801, 302-777-4200

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

ı If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information in the Proof of Service is true and correct.

Executed on _____     _____
DATE                              SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises - or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance; (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held; (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# SCHEDULE A

The following definitions and instructions apply.

## DEFINITIONS

1.      "Corvel," "you," or "your" means Corvel Corporation and/or Corvel Healthcare Corporation, including without limitation all of its corporate locations, and all present and past predecessors, successors, parents, divisions, subsidiaries, agents, affiliates, partnerships, and joint ventures, and all past and present directors, officers, owners, members, representatives, employees, and agents of these entities.

2.      "GEICO" means Government Employees Insurance Company, GEICO Casualty Company, GEICO General Insurance Company, and/or GEICO Indemnity Company, including without limitation all of its corporate locations, and all present and past predecessors, successors, parents, divisions, subsidiaries, agents, affiliates, partnerships, and joint ventures, and all past and present directors, officers, owners, members, representatives, employees, and agents of these entities.

3.      The term "Plaintiffs" means Kerry Johnson and Sharon Anderson, on behalf of themselves and all others similarly situated, their attorneys, accountants, agents and any other persons or entities acting on their behalf.

4.      The term "Insured" or "Insureds" means any person residing in the State of Delaware who is a party to an automobile insurance and/or related agreement with one or more of the Defendants, including, but not limited to Plaintiffs, from June 26, 2001 to the present, and anyone acting on their behalf.

5.    The term "person" means not only natural persons, but also, without limitation, firms, proprietorships, corporations, partnerships, associations, unincorporated associations, and governmental bodies, agencies, and officials and every other type of organization or entity.

6.    The term "document" means the original and all drafts and copies (including copies bearing notations or marks not found on the original) of any writings or printed, graphic or electronically recorded materials of any nature whatsoever, including but not limited to, correspondence, records, reports, memoranda, notes, calendar or diary entries, letters, facsimile transmissions, envelopes, e-mails, telegrams, telexes, telephone bills, other written communications, messages (including, but not limited to, reports of telephone conversations and conferences), studies, summaries, tabulations, analyses, printed matter, minutes, photographs, film, tapes (electronic, audio and visual), computer diskettes, data files, financial statements, contracts, agreements, other legal documents and instruments, journals, ledgers, other accounting records, canceled or returned checks, manuals, orders, statements, bills, receipts, vouchers, notebooks, data sheets and records kept by any other means.  In all cases where originals and/or non-identical copies are not available, the term "document" also means identical copies of original documents and copies of non-identical copies.

7.    This definition includes all documents in your actual or constructive possession, custody or control, or in the possession, custody or control of your employer, attorneys, or agents.  If any document was, but is no longer, in your possession or subject to your control or was known to you, but is no longer in existence, state whether it is:

      (a)    missing or lost;

      (b)    has been destroyed;

      (c)    has been transferred, voluntarily or involuntarily, to others; or

(d)     otherwise disposed of and, in such instance, explain in detail the circumstances surrounding the authorization for such disposition and state the date or approximate date thereof.

8.     The term "identify" means, when used in reference to:

(a)     a document, to state separately (i) its description (e.g., letter, report, memorandum, etc.), (ii) its date, (iii) its subject matter, (iv) the identity of each author or signer, (v) its present location and the identity of its custodian, (vi) the number of pages, and (vii) if any such document is no longer in your possession or subject to your control, to state what disposition was made of it and the date of the disposition.

(b)     a natural person or persons, to state separately (i) the full name of each such person, (ii) his or her present, or last known, business address, and (iii) his or her present, or last known, residential address;

(c)     an organization or entity other than a natural person (e.g., a company, corporation, firm, association, or partnership), to state separately (i) the full name and type of organization or entity, (ii) the date and state of organization or incorporation, (iii) the address of each of its principal places of business, and (iv) the nature of the business conducted; and

(d)     a conversation, to (i) provide the date of the conversation, (ii) provide the location, (iii) identify the participants, (iv) state whether the conversation was by telephone, in person, or by other means, and (v) state the details of the conversation.

9.     The term "Litigation" means the case captioned: *Kerry Johnson, et al. v. GEICO Casualty Company, et al.*, Civil Action No. 1:06-CV-408-JJF (United States District Court for the District of Delaware).

10.    The term "PIP" means Personal Injury Protection and any such policy of insurance provided by one or more of the Defendants to an Insured of the type described and governed by Chapter 21 of Title 21 of the State of Delaware Code (21 Del. C. § 2118B).

11.    The term "IME" means a PIP-related independent medical examination of an Insured ordered by, or conducted by one or more of the Defendants.

12.    The term "IME Provider" means any doctor, physician, therapist, group of physicians or associated medical, therapy or treatment practice retained by or contracted by one or more of the Defendants at any time for the purpose of conducting PIP-related independent medical examinations, including but not limited to any chiropractor, osteopath, nurse or other health care person engaged by Defendants to assess Plaintiffs' condition, injuries, complaints and/or medical records.

13.    "Person" means any individual or firm, association, organization, joint venture, trust, partnership, corporation, or other collective organization or entity.

14.    The term "third party" means any Person other than you.

## INSTRUCTIONS

1.    In construing this discovery request:  (a) the singular shall include the plural and the plural shall include the singular and (b) the words "and" and "or" shall be read either disjunctively or conjunctively so as to bring within the scope of this discovery request all information that might otherwise be construed to be outside its scope.

2.    With respect to any documents identified in your responses herein:

(a)    Identify each such document;

(b)    Describe each such document by type or title;

(c)    State the date of each such document;

(d)    Identify all authors and recipients of each such document;

(e)    Describe in detail the subject matter of each such document; and

(f)    Identify any precise privilege or protection you claim for each such document.

3.    If an answer or any information is withheld on the ground of any privilege or immunity, state the following:

(a)    The nature of the privilege or immunity being claimed;

(b)    The type of document or the nature of the information;

(c)    The general subject matter of the document or the information;

(d)    The identity of each person who created, sent, or received (i) the original of the document or any copy thereof, or (ii) the information;

(e)    The date(s) on which the document or information was created, sent, and/or received; and

(f)    A description of the document or information sufficient to identify it.

4.    In responding to these Discovery Requests, respondent shall identify the particular Defendant to which the response applies or relates.

5.    Any electronically stored information produced in response to discovery requests should be produced in native file format, unless otherwise agreed upon.

6.    This discovery requests are continuing in nature and you are required to promptly supplement your responses to this discovery request to the extent you locate additional documents or acquire additional information, or to the extent subsequent amended pleadings modify or raise new allegations and claims.

7.    Plaintiffs reserve the right to amend, supplement, and/or modify these discovery requests.

8.      All documents produced in response to these requests shall be produced at the offices of Cross & Simon, LLC, 913 N. Market Street, Wilmington, Delaware 19801.

## REQUESTS FOR DOCUMENTS

1.      Provide all documents and things referring, reflecting, or relating to any communication between you and GEICO concerning IMEs for GEICO Insureds from June 26, 2001  to the present.

2.      Provide any and all communications you have had with GEICO or any third party referring, reflecting, or relating to the Litigation.

3.      Identify any and all IME Providers, including doctors, physicians, therapists, chiropractors, osteopaths, nurses, groups of physicians or associated medical, therapy or treatment practices, or other health care persons retained by or contracted by you, at any time from June 26, 2001  to the present, for the purpose of conducting PIP-related IMEs on GEICO's Delaware Insureds.

4.      Provide any and all communications you have had with IME Providers in Delaware referring, reflecting, or relating to PIP-related insurance medical evaluations on GEICO's Delaware Insureds from June 26, 2001  to the present.

5.      Provide any and all contracts or agreements between you and GEICO for performance of IMEs in Delaware from June 26, 2001  to the present.

6.      Provide any and all contracts or agreements between you and IME Providers for performance of IMEs on GEICO's Delaware Insureds from June 26, 2001  to the present.

7.      Provide any and all documentation, guidelines, methods, rules, instructions, standards, policies, practices, data, systems, software, hardware, procedures, training manuals, or other material drafted, adopted, endorsed, used, relied upon or created by you to determine what

constitutes a "reasonable" charge for medical treatment by a medical provider in the State of Delaware from June 26, 2001 to present.

8.      Copies of all IME reports performed at the request of GEICO or where GEICO was the PIP carrier.

9.      Copies of all documents concerning how IMEs are administered for GEICO (Corvel's selection of doctors, review of doctors' qualifications and certifications, and contacting and scheduling doctors).

10.     Copies of all documents concerning how IME reports are generated by Dr. Willie E. Thompson's office for Corvel and Professional Physicians Group (i.e., phone transcription).

11.     Identification of all fees charged for IMEs performed at the request of GEICO or where GEICO was the PIP carrier.

12.     Copies of all IME reports performed at the request of GEICO or where GEICO was the PIP carrier.

13.     Copies of all medical records used or reviewed by Dr. Willie E. Thompson and notes of Dr. Willie E. Thompson generated in connection with the Kerry Johnson IME.

14.     Copies of all documents concerning methods by which IME reports are generated by Dr. Willie E. Thompson's office for Corvel and Professional Physicians Group (i.e., phone transcription, e-mail).

15.     Copies of transcripts or recorded statements by any IME Provider relating to an IME performed on an Insured in Delaware, including but not limited to, Dr. Willie E. Thompson's examination of Kerry Johnson.

**EXHIBIT B**

IN THE UNITED STATES DISTRICT COURT
FOR THE STATE OF DELAWARE

KERRY JOHNSON and                      )
SHARON ANDERSON, on behalf of          )
themselves and all others similarly    )
situated,                              )        C.A. No. 1:06-cv408 (JJF)
                                       )
        Plaintiffs,                    )
                                       )        NON-ARBITRATION
    v.                                 )
                                       )        TRIAL BY JURY DEMANDED
GOVERNMENT EMPLOYEES                   )
INSURANCE COMPANY, GEICO               )        CLASS ACTION
CASUALTY COMPANY, GEICO                )
GENERAL INSURANCE                      )
COMPANY, and GEICO                     )
INDEMNITY COMPANY,                     )
                                       )
        Defendants.

**CORVEL CORPORATION'S
OBJECTIONS TO SUBPOENA**

**GENERAL OBJECTIONS**

CorVel Healthcare Corporation ("CorVel") objects to each and every request to

the extent it seeks information that CorVel is under an obligation to a third party not to

disclose.

CorVel objects to each and every request to the extent it seeks protected health

information CorVel is obligated not to disclose under the Health Insurance Portability

and Accountability Act (HIPAA), or other federal or state statute.

CorVel objects to each and every request to the extent it seeks protected health

information CorVel is obligated not to disclose pursuant to 16 Del. C. §§1230 *et. seq.*

CorVel objects to each and every request to the extent it seeks the release of health information or medical records for individuals other than the named plaintiffs, Kerry Johnson and Sharon Anderson.

CorVel objects to each and every request to the extent that it fails to comply with Federal Civil Rule of Procedure 45(c)(1).

CorVel objects to each and every request to the extent that it seeks information that is a matter of public record or that are equally available to or already in the possession of or within the control of the requestor.

CorVel objects to each and every request to the extent it seeks information that is equally available by other means, and obtainable from other parties, including parties to the litigation, without undue hardship to the requestor.

CorVel objects to each and every request to the extent it seeks documents not in CorVel's possession, custody or control, documents no longer maintained by CorVel or documents which cannot be located following a diligent search and reasonable inquiry.

CorVel objects to each and every request to the extent it is vague, ambiguous, overbroad, unduly burdensome, unlimited in time or scope, or otherwise unclear as to the information sought.

CorVel objects to the time and place demanded for the production of documents. The subpoena fails to allow a reasonable time for compliance.

CorVel objects to each and every request to the extent it requests documents that may be protected by the attorney-client privilege and/or the work product doctrine.

CorVel objects to each and every request to the extent that the request purports to impose burdens on CorVel greater than, inconsistent with, or not authorized by, the Federal Rules of Civil Procedure.  In responding to these requests, CorVel will comply with the Federal Rules of Civil Procedure.

A statement that CorVel will produce responsive information is not a representation that any such information exists.

The applicable foregoing general objections are incorporated into each of the specific objections and responses that follow.  The stating of a specific objection or response shall not be construed as a waiver of these general objections.

## SPECIFIC OBJECTIONS AND RESPONSES TO REQUESTS

In addition to the foregoing General Objections, CorVel objects to producing documents which have previously been produced to parties to the litigation.

CorVel objects to these requests to the extent they are overbroad, and would subject CorVel, a non-party to the lawsuit, to undue burden and significant expense. CorVel estimates that the document requests, as issued, require review of between 630,000 and 1,100,000 pages. (*See* Affidavit of Stephen Szuchy, attached as Exhibit C to CorVel's simultaneously filed and served Motion to Quash).

CorVel objects to being asked to expend its resources to respond to these overbroad requests within a short time period of less than 45 days when the requesting party had opportunity to frame narrower requests, make them, review and obtain whatever documents are available from other sources, including parties to this litigation, at an earlier date, but did not do so.

In answering these Interrogatories, CorVel assumes that an IME examination or report and/or peer record review does not constitute "medical treatment" as set forth in these requests.

CorVel's file on the named plaintiff Kerry Johnson totals over 400 pages. CorVel has identified and retrieved its file on Mr. Johnson and is prepared to produce those records from Mr. Johnson's file that are responsive to the Subpoena.

After a diligent search of its records, CorVel is unable to identify any documents in its possession on the named plaintiff, Sharon Anderson.

1.    Provide all documents and things referring, reflecting, or relating to any

communication between you and GEICO concerning IMEs for GEICO insureds from

June 26, 2001 to the present.

**RESPONSE:**

**This document request is extremely overbroad and seeks information which**

**subjects CorVel to undue burden and unnecessary expense. By way of example, this**

**request seeks information that is not limited to geographical location, seeks**

**information for CorVel's services outside of the state of Delaware, and, to that**

**extent, is irrelevant to the litigation. CorVel has between 8,400 and 11,000 files it has**

**administered for clients in Delaware since 1991. Many of its files contain IMEs for**

**worker's compensation cases and/or 3rd party liability claims for clients other than**

**GEICO.**

**This request also seeks documents for individuals who are not parties to the**

**litigation, the release of which could subject CorVel to future liability subject to the**

**Health Insurance Portability and Accountability Act (HIPAA), or other federal or**

**state statute.**

**Subject to the foregoing objections, CorVel receives a Request for Service**

**from GEICO for a Delaware IME together with copies of the patient's medical**

**records, and returns a finalized IME report to GEICO. CorVel does not**

**differentiate between IMEs for PIP-related or 3rd party liability claims. CorVel is**

**prepared to make available the medical records and documents in its possession**

**relating to the named plaintiff Kerry Johnson, including GEICO's Request for**

**Service and Dr. Willie E. Thompson's March 14, 2005 IME report.**

**After a diligent search of its records, CorVel is unable to locate any documents or medical records pertaining to Sharon Anderson.**

2.      Provide any and all communications you have had with GEICO or any third party referring, reflecting, or relating to the Litigation.

**RESPONSE:**

**This document request is extremely overbroad and seeks information which subjects CorVel to undue burden and unnecessary expense. By way of example, CorVel has between 8,400 and 11,000 files it has administered for clients in Delaware since 1991. Many of its files contain IMEs for worker's compensation cases and/or 3rd party liability claims for clients other than GEICO.**

**This request also seeks documents for individuals who are not parties to the litigation, the release of which could subject CorVel to future liability subject to the Health Insurance Portability and Accountability Act (HIPAA), or other federal or state statute.**

**Subject to the foregoing objections, CorVel is prepared to make available medical records and documents in its possession relating to a March 14, 2005 IME of the named plaintiff Kerry Johnson, performed by Dr. Willie E. Thompson, including the Request for Service received from GEICO and Dr. Thompson's March 14, 2005 IME report, and CorVel's letters to Laura Simon, Esquire, Mr. Kerry Johnson, and Dr. Willie Thompson concerning Dr. Thompson's March 15, 2005 IME of Kerry Johnson.**

**After a diligent search of its records, CorVel is unable to locate any documents or medical records pertaining to Sharon Anderson, including any IME.**

6

**After a diligent search of its records, CorVel is unable to locate any records pertaining to Sharon Anderson.**

3.      Identify any and all IME Providers, including doctors, physicians, therapists, chiropractors, osteopaths, nurses, groups of physicians or associated medical, therapy or treatment practices, or other health care persons retained by or contracted by you, at any time from June 26, 2001 to the present, for the purpose of conducting PIP-related IMEs on GEICO's Delaware Insureds.

**RESPONSE:**

**CorVel is prepared to make available a list of those Delaware doctors whom it currently uses to perform IMEs and/or peer record reviews in Delaware.**

4.      Provide any and all communications you have had with IME Providers in Delaware referring, reflecting, or relating to PIP-related insurance medical evaluations on GEICO's Delaware Insureds from June 26, 2001 to the present.

**RESPONSE:**

**This document request is extremely overbroad and seeks information which subjects CorVel to undue burden and unnecessary expense.  By way of example, CorVel has between 8,400 and 11,000 files it has administered for clients in Delaware since 1991.  Many of its files contain IMEs for worker's compensation cases and/or 3rd party liability claims for clients other than GEICO.**

**This request also seeks documents for individuals who are not parties to the litigation, the release of which could subject CorVel to future liability subject to the Health Insurance Portability and Accountability Act (HIPAA), or other federal or state statute.**

7

**Subject to the foregoing objections, CorVel is prepared to make available medical records and documents in its possession relating to a March 14, 2005 IME of the named plaintiff Kerry Johnson, performed by Dr. Willie E. Thompson, including CorVel's letter to Dr. Thompson scheduling Mr. Johnson's March 14, 2005 IME.**

**After a diligent search of its records, CorVel is unable to locate any documents or medical records pertaining to Sharon Anderson.**

5.     Provide any and all contracts or agreements between you and GEICO for performance of IMEs in Delaware from June 26, 2001 to the present.

**RESPONSE:**

**CorVel is unaware of any written agreement between CorVel and GEICO relating to CorVel's case management services performed in Delaware. CorVel's services for GEICO in Delaware are limited to scheduling IMEs and peer record reviews with Delaware doctors, obtaining IME or peer record review and providing GEICO with copies of those reports.**

6.     Provide any and all contracts or agreements between you and IME Providers for performance of IMEs on GEICO's Delaware Insureds from June 26, 2001 to the present.

**RESPONSE:**

**This document request is extremely overbroad, seeks information that is irrelevant to the litigation, and that subjects CorVel to undue burden and unnecessary expense. By way of example, CorVel has between 8,400 and 11,000 files it has administered for clients in Delaware since 1991. Many of its files contain**

IMEs for worker's compensation cases and/or 3rd party liability claims for clients other than GEICO.

CorVel is prepared to make available a list of those Delaware doctors whom it currently uses to perform IMEs in Delaware. CorVel does not have a written agreement with either Principal Physicians Group or Dr. Willie E. Thompson.

CorVel has written Independent Medical Examiner/Peer Agreements with some Delaware physicians. CorVel will produce copies of those agreements upon receipt of informed consent disclosures form the doctors or their groups.

7.      Provide any and all documentation, guidelines, methods, rules, instructions, standards, policies, practices, data, systems, software, hardware, procedures, training manuals, or other material drafted, adopted, endorsed, used, relied upon or created by you to determine what constitutes a "reasonable" charge for medical treatment by a medical provider in the State of Delaware from June 26, 2001 to present.

**RESPONSE:**

This document request is extremely overbroad, seeks information that is irrelevant to the litigation, and that subjects CorVel to undue burden and unnecessary expense. By way of example, CorVel has between 8,400 and 11,000 files it has administered for clients in Delaware since 1991. Many of its files contain IMEs for worker's compensation cases and/or 3rd party liability claims for clients other than GEICO.

CorVel is unaware of any such documentation in its possession relating to CorVel's case management services performed for GEICO in Delaware. CorVel's services for GEICO in Delaware are limited to scheduling IMEs and/or peer record reviews with Delaware doctors, obtaining copies of reports on IMEs and/or peer record reviews, and providing GEICO with copies of those reports via email, facsimile, U.S. Mail, and/or hand delivery. In answering these Interrogatories, CorVel assumes that an IME and/or peer record review does not constitute "medical treatment" as set forth in this request. CorVel does not contact or correspond with treating doctors in Delaware regarding their charges for medical treatment. CorVel does not pay Delaware physicians for services other than IME and peer record review fees. CorVel does not discuss or negotiate Delaware physicians' rates, other than IME and peer record review fees.

8.    Copies of all IME reports performed at the request of GEICO or where GEICO was the PIP carrier.

**RESPONSE:**

This document request is extremely overbroad and seeks information which subjects CorVel to undue burden and unnecessary expense. By way of example, this request seeks information that is not limited to geographical location, seeks information for CorVel's services outside of the state of Delaware, and, to that extent, is irrelevant to the litigation. CorVel has between 8,400 and 11,000 files it has administered for clients in Delaware since 1991. Many of its files contain IMEs for worker's compensation cases and/or 3rd party liability claims for clients other than GEICO.

10

**This request also seeks documents for individuals who are not parties to the litigation, the release of which could subject CorVel to future liability subject to the Health Insurance Portability and Accountability Act (HIPAA), or other federal or state statute.**

**Subject to the foregoing objections, CorVel is prepared to  make available medical records and documents in its possession relating to and including a March 14, 2005 IME and report on the named plaintiff Kerry Johnson, performed by Dr. Willie E. Thompson.**

**After a diligent search of its records, CorVel is unable to locate any documents or medical records pertaining to Sharon Anderson.**

9.    Copies of all documents concerning how IMEs are administered for GEICO (CorVel's selection of doctors, review of doctors' qualifications and certifications, and contacting and scheduling doctors).

**RESPONSE:**

**CorVel is prepared to make available documents relating to its credentialing process of doctors for IME and peer record reviews in Delaware.**

10.    Copies of all documents concerning how IME reports are generated by Dr. Willie E. Thompson's office for CorVel and Professional Physicians Group (i.e., phone transcription).

**RESPONSE:**

**This document request is extremely overbroad, seeks information that is irrelevant to the litigation, and subjects CorVel to undue burden and unnecessary expense.  By way of example, CorVel has between 8,400 and 11,000 files it has**

administered for clients in Delaware since 1991. Many of its files contain IMEs for worker's compensation cases and/or 3rd party liability claims for clients other than GEICO.

This request also seeks documents for individuals who are not parties to the litigation, the release of which could subject CorVel to future liability subject to the Health Insurance Portability and Accountability Act (HIPAA), or other federal or state statute.

Subject to the foregoing objections, CorVel has no information responsive to request for documents relating to "Professional Physicians Group." CorVel assumes that this request seeks information relating to Willie Thompson and his affiliation with Principal Physicians Group.

CorVel receives finalized IME and peer record reports form Delaware physicians. CorVel does not perform transcription services for Delaware doctors, and has no knowledge of how reports are generated by Dr. Willie E. Thompson an/or Principal Physician's Group.

CorVel is prepared to  make available medical records and documents in its possession relating to and , including copies of its correspondence to Willie E. Thompson relating to his March 15, 2005 IME of the named plaintiff, Kerry Johnson.

After a diligent search of its records, CorVel is unable to locate any documents or medical records pertaining to Sharon Anderson.

11.    Identification of all fees charged for IMEs performed at the request of GEICO or where GEICO was the PIP carrier.

**RESPONSE:**

This document request is extremely overbroad and seeks information which subjects CorVel to undue burden and unnecessary expense. By way of example, this request seeks information that is not limited to geographical location, seeks information for CorVel's services outside of the state of Delaware, and, to that extent, is irrelevant to the litigation. CorVel has between 8,400 and 11,000 files it has administered for clients in Delaware since 1991. Many of its files contain IMEs for worker's compensation cases and/or 3rd party liability claims for clients other than GEICO.

This request also seeks documents for individuals who are not parties to the litigation, the release of which could subject CorVel to future liability subject to the Health Insurance Portability and Accountability Act (HIPAA), or other federal or state statute.

Subject to the foregoing objections, CorVel has no information reponsive to request for documents relating to "Professional Physicians Group." CorVel assumes that this request seeks information relating to Willie Thompson and his affiliation with Principal Physicians Group.

CorVel is prepared to make available medical records and documents in its possession, including fees charged by Willie E. Thompson relating to his March 15, 2005 IME of the named plaintiff, Kerry Johnson.

13

**After a diligent search of its records, CorVel is unable to locate any documents or medical records pertaining to Sharon Anderson.**

12.    Copies of all IME reports performed at the request of GEICO or where GEICO was the PIP carrier.

**RESPONSE:**

**CorVel objects to this request as wholly duplicative of Request #8, and refers plaintiffs to CorVel's response to #8, above.**

13.    Copies of all medical records used or reviewed by Dr. Willie E. Thompson and notes of Dr. Willie E. Thompson generated in connection with the Kerry Johnson IME.

**RESPONSE:**

**CorVel is prepared to make available medical records and documents in its possession relating to a March 14, 2005 IME of the named plaintiff Kerry Johnson, performed by Dr. Willie E. Thompson.**

14.    Copies of all documents concerning methods by which IME reports are generated by Dr. Willie E. Thompson's office for CorVel and Professional   Group (i.e., phone transcription, e-mail).

**RESPONSE:**

**Subject to the foregoing objections, CorVel has no information responsive to request for documents relating to "Professional Physicians Group."  CorVel assumes that this request seeks information relating to Willie Thompson and his affiliation with Principal Physicians Group.**

**CorVel receives finalized IME and peer record reports from Willie Thompson and Principal Physicians Group by email, facsimile, and U.S. mail.**

14

**CorVel does not perform transcription services for Delaware doctors, and has no knowledge of the methods by which reports are generated by Dr. Willie E. Thompson and/or Principal Physician's Group.**

**CorVel is prepared to make available medical records and documents in its possession relating to and including copies of Willie E. Thompson's March 15, 2005 IME report on the named plaintiff, Kerry Johnson.**

**After a diligent search of its records, CorVel is unable to locate any documents or medical records pertaining to Sharon Anderson, including any IME.**

15.    Copies of transcripts or recorded statements by any IME Provider relating to an IME performed on an Insured in Delaware, including but not limited to, Dr. Willie E. Thompson's examination of Kerry Johnson.

**<u>RESPONSE:</u>**

**This document request is extremely overbroad, seeks information that is irrelevant tot the litigation, and that subjects CorVel to undue burden and unnecessary expense. By way of example, CorVel has between 8,400 and 11,000 files it has administered for clients in Delaware since 1991. Many of its files contain IMEs for worker's compensation cases and/or 3rd party liability claims for clients other than GEICO.**

**This request also seeks documents for individuals who are not parties to the litigation, the release of which could subject CorVel to future liability subject to the Health Insurance Portability and Accountability Act (HIPAA), or other federal or state statute.**

15

Subject to the foregoing objections, CorVel has no information reponsive to request for documents relating to "Professional Physicians Group." CorVel assumes that this request seeks information relating to Willie Thompson and his affiliation with Principal Physicians Group.

CorVel receives finalized IME and peer record reports form Delaware physicians by email, facsimile, and U.S. mail.  CorVel does not perform transcription services for Delaware doctors, and has no knowledge of how reports are generated by Dr. Willie E. Thompson an/or Principal Physician's Group.

CorVel is prepared to  make available medical records and documents in its possession relating to and including a copy of Willie E. Thompson's March 15, 2005 IME report on the named plaintiff, Kerry Johnson.  CorVel has no knowledge of any transcript or recorded statement relating to Dr. Willie E. Thompson's March 15, 2005 IME on the named plaintiff, Kerry Johnson, other than his March 15, 2005 IME report.

After a diligent search of its records, CorVel is unable to locate any documents or medical records pertaining to Sharon Anderson.

MORRIS JAMES LLP


_____

David J. Soldo (#4309)
500 Delaware Avenue
Suite 1500
Wilmington, DE 19899
(302) 888-6800
*Attorneys for CorVel Corporation*

**EXHIBIT C**

IN THE UNITED STATES DISTRICT COURT
FOR THE STATE OF DELAWARE

| | | |
|---|---|---|
| KERRY JOHNSON and | ) | |
| SHARON ANDERSON, on behalf of | ) | |
| themselves and all others similarly | ) | |
| situated, | ) | C.A. No. 1:06-cv408 (JJF) |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | NON-ARBITRATION |
| | ) | |
| GOVERNMENT EMPLOYEES | ) | TRIAL BY JURY DEMANDED |
| INSURANCE COMPANY, GEICO | ) | |
| CASUALTY COMPANY, GEICO | ) | CLASS ACTION |
| GENERAL INSURANCE | ) | |
| COMPANY, and GEICO | ) | |
| INDEMNITY COMPANY, | ) | |
| | ) | |
| Defendants. | | |

## AFFIDAVIT REGARDING BURDEN

| | |
|---|---|
| STATE OF VIRGINIA | ) |
| | ) ss. |
| COUNTY OF HENRICO | ) |

BE IT REMEMBERED that on this 11th day of July, 2008 personally appeared before me, the undersigned, a notary public for the state and county aforesaid, Stephen J. Szuchy, who being duly sworn according to law did depose and say:

1.    I am Stephen J. Szuchy, Care IQ Manager for CorVel Corporation ("CorVel"). I am familiar with the documents housed at CorVel. I am responsible for assisting counsel in responding to the Subpoena issued to Corvel Healthcare Corporation by plaintiffs' attorney, Kevin S. Mann, Esquire ("Subpoena"). I submit this affidavit in support of CorVel's Motion to Quash the Subpoena.

2.    I have reviewed the pertinent requests; and I am familiar with the contents thereof.

3.    I have knowledge and information which I believe to be true regarding the existence of documents and information of the type sought in the Subpoena.

4.    CorVel is a nationwide company specializing in Managed Care Services. CorVel maintains its corporate offices in Irvine, California, and has approximately 110 offices located throughout the United States. CorVel's Fredericksburg, Virginia office maintains and archives documents for CorVel's services performed in Delaware, Maryland, Virginia, West Virginia, North Carolina, South Carolina, Kentucky, and the District of Columbia.

5.    CorVel provides case management services for numerous clients in Delaware, including GEICO. CorVel's services performed for GEICO in Delaware are limited to scheduling and obtaining reports for Defense Medical Examinations, Independent Medical Examinations ("IMEs"), and peer record reviews.

6.    CorVel's system for record retrieval does not enable it to readily locate responsive documents in storage by nature of the terms being requested in the Subpoena. Documents from 2001-2005 are stored off-site, in paper files, and would require manual searches. Documents produced or obtained after 2005 have been scanned to PDF electronic files, but are not searchable by text.

7.    With regard to the majority of requested documents, the categories listed by requesting party for the documents are not categories which CorVel has used for categorizing or indexing its files. CorVel's computer and paper documents are indexed in alphabetical order by a claimant's last name. CorVel's files are not separated by state (e.g. Delaware), client (e.g. GEICO), type of case (e.g. Worker's Compensation, PIP, or 3rd party Motor Vehicle Liability claims). Accordingly, each computer and paper file would need to be searched individually in order to determine whether the file pertains to: (1) a Delaware claim, (2) for a GEICO insured, (3) relating to Personal Injury Protection benefits, and (4) whether an IME was performed.

8.    There are three ways to access documents at CorVel: (1) One can search CorVel's computer database to identify those documents or files which you want to review; (2) One can search paper files housed at CorVel's Fredericksburg Virginia office for those documents or files which you want to review, or (3) One can search paper files stored off-site at a Fredericksburg, Virginia location for those documents or files which you want to review.

9.    Based upon my knowledge of CorVel's business practices, it would be unduly burdensome for CorVel to comply with the Subpoena requests. CorVel would have to search approximately 8,400-11,000 open and closed claim files, in order to locate those documents, if any, which are responsive to the overbroad Subpoena requests. Such a search would greatly disrupt CorVel's business and would result in significant expense.

      a.      I estimate the average paper file consists of 75-100 pages.

      b.      I estimate that the 8,400 – 11,000 claim files include between 630,000 and 1,100,000 documents.

      c.      I estimate that CorVel has generated approximately 1,000 Delaware files relating to GEICO claims since June 2001.

      d.      I estimate that searches for relevant information in the case files and production of documents requested would take approximately 2 hours per file. This equates to 2,000 man hours.

      e.      Assuming CorVel can hire 4 temporary workers to conduct the search on a full-time basis (40 hours per week), I estimate that the search would take over 3 months to complete.

     10.      Compliance with the Subpoena request would subject CorVel to substantial expense.

      a.      CorVel does not have employees that it could take away from their normal daily tasks to conduct such a search. A local temporary agency in the area, Randstad Work Solutions, currently charges $17.96 per hour.

      b.      I estimate the cost to CorVel to conduct a search for documents to identify CorVel's Delaware, PIP-related, GEICO claims where IMEs were performed at approximately $36,000. This estimate does not include the actual production costs to CorVel of printing, scanning, or otherwise producing the documents.

11.    CorVel has retrieved its file on Mr. Kerry Johnson.  The documents at issue in CorVel's file on the named plaintiff Kerry Johnson total over 400 pages.  Because CorVel could easily obtain its file on Mr. Johnson by conducting a search by name, and it has not been subjected to undue burden or expense in these efforts.

12.    After a diligent search of its records, CorVel is unable to identify any documents in its possession on the named plaintiff, Sharon Anderson.

Stephen J. Szuchy

Sworn to before me this 11th day of July, 2008.

Notary Public

MATTHEW R. DELUMYEA
Notary Public
Commonwealth of Virginia
7113292
My Commission Expires Mar 31, 2011