IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

KERRY JOHNSON and                          :
SHARON ANDERSON,                           :
on behalf of themselves and                :
all others similarly situated,             :
                                           :
              Plaintiffs,                  :
                                           :
        v.                                 :      C.A. No. 06-408-JJF
                                           :
GEICO CASUALTY COMPANY,                     :
GEICO GENERAL INSURANCE COMPANY,            :
GEICO INDEMNITY COMPANY, and               :
GOVERNMENT EMPLOYEES INSURANCE              :
COMPANY,                                   :
                                           :
              Defendants.                  :

---

Richard H. Cross, Jr., Esquire; Christopher P. Simon, Esquire;
and Kevin S. Mann, Esquire of CROSS & SIMON, LLC, Wilmington,
Delaware.
John Sheehan Spadaro, Esquire of JOHN SHEEHAN SPADARO, LLC,
Hockessin, Delaware.

Attorneys for Plaintiff.

George M. Church, Esquire, and Laura A. Cellucci, Esquire, of
MILES & STOCKBRIDGE P.C., Baltimore, Maryland.
Meloney Cargil Perry, Esquire of MECKLER BULGER TILSON MARICK &
PEARSON LLP, Dallas, Texas.
Paul A. Bradley, MARON MARVEL BRADLEY & ANDERSON, P.A.,
Wilmington, Delaware.

Attorneys for Defendant.

---

**MEMORANDUM OPINION**

December _30_ , 2009
Wilmington, Delaware

Joseph J Farnan Jr.

**Farnan, District Judge.**

Presently before the Court are the following motions: Defendants' Rule 23 Motion To Deny Class Certification (D.I. 198); Plaintiffs' Motion For Class Certification (D.I. 262); and Plaintiffs' Motion To Stay Consideration Of Defendants' Motion To Deny Class Certification (D.I. 272). Because the Court will consider Defendants' Rule 23 Motion To Deny Class Certification and Plaintiffs' Motion For Class Certification concurrently, Plaintiffs' Motion To Stay Consideration Of Defendants' Motion To Deny Class Certification will be denied. For the reasons discussed, the Court will grant in part and deny in part Defendants' Rule 23 Motion To Deny Class Certification, as well as Plaintiffs' Motion For Class Certification. Specifically, the Court will deny certification of the 30-Day Claims Class. The Court will certify the Passive Modality Class, with Ms. Anderson as class representative, to pursue a class action suit against Defendants as to Counts III, IV, and VI. The Court will certify the Geographic Reduction Class, with Ms. Anderson as class representative, to pursue a class action suit against Defendants as to Counts III, IV, and VI.

**I.    Factual Background**

**A.    The Parties**

Plaintiff Kerry Johnson ("Mr. Johnson") is a Delaware resident and insured of GEICO Indemnity Company. (D.I. 25 ¶ 3.)

1

Mr. Johnson alleges that on or about July 16, 2004, he was
involved in an automobile collision in New Castle County,
Delaware. (Id. ¶ 27.) He contends that, despite routine
submission of his medical records and bills, payment of his PIP
benefits claims were delayed and/or denied without reasonable
justification. (Id. ¶¶ 29-37.) Plaintiff Sharon Anderson (Ms.
Anderson") is a Delaware resident and insured of Government
Employees Insurance Company. (Id. ¶ 4.) Ms. Anderson alleges
that she was injured in an automobile collision in New Castle
County, Delaware on or about August 3, 2004 (Id. ¶ 42.) She also
contends that, despite routine submission of her medical records
and bills, payment of her PIP benefits claims were delayed and/or
denied without reasonable justification. (Id. ¶¶ 44-52.)

Defendants GEICO Indemnity Company and Government Employees
Insurance Company are insurance companies incorporated in
Maryland, with their principal places of business in Washington,
D.C. (Id. ¶¶ 5, 8.) Defendant GEICO Corporation is a holding
company incorporated in Delaware with its principal place of
business in Washington, D.C. (Id. ¶ 9.)

**B.    The Delaware Personal Injury Protection Statute**

Under Delaware law, automobile insurers are required to
provide no-fault medical benefit protection known as "Personal
Injury Protection," or "PIP" for persons injured while occupying
an insured motor vehicle. 21 Del. C. § 2118(a)(2). Insurers

2

must pay, up to the policy's limits, all "reasonable and necessary expenses incurred within 2 years from the date of the accident." Id. Once the insurer is notified by a potential claimant of his/her desire to file an initial claim for benefits under this statute, the insurer must provide a claim form within 10 days. 21 Del. C. § 2118B(b). The insurer must process the claim and either make payments which are due claimant, or provide claimant with an explanation of its denial, within 30 days of receipt of the written claim request. Id. § 2118B(c). The purpose of these timing requirements is to

> ensure reasonably prompt payment of sums owed by insurers to their policyholders and other persons covered by their policies pursuant to §2118 of this title, and to prevent the financial hardship and damage to personal credit ratings that can result from the unjustifiable delays of such payment.

Id. § 2118B(a).

## II. Procedural Background

Plaintiffs Kerry Johnson and Sharon Anderson (collectively, "Plaintiffs") initially filed this proposed class action suit on behalf of themselves and all others similarly situated against Defendants GEICO Casualty Company ("GEICO Casualty"), GEICO General Insurance Company ("GEICO General"), and GEICO Indemnity Company ("GEICO Indemnity") (collectively, "Defendants") in the Superior Court for the State of Delaware in and for New Castle County. In a nine count Complaint, Plaintiffs alleged that Defendants committed various statutory and common law violations,

3

including breaches of insurance contracts, bad faith breaches of insurance contracts, breach of the duty of fair dealing, and common law fraud, in connection with Defendants' denial of benefits under Personal Injury Protection ("PIP") coverage issued as part of Defendants' insurance contracts. (D.I. 1, Ex. D ¶¶ 1-2.) On June 27, 2006, Defendants removed this suit from the Delaware Superior Court to this Court pursuant to 28 U.S.C. §1332 and §1446. (D.I. 1.)

In a Memorandum Opinion and Order issued on September 27, 2007 (D.I. 23, 24), the Court granted Plaintiffs' Motion For Leave To File Amended Complaint to the extent that Plaintiffs sought to supplement the facts alleged and add Government Employees Insurance Company as a defendant. Further, the Court partially granted Defendants' Motion To Dismiss For Failure To State A Claim, dismissing three of the nine counts alleged in the Complaint. In a Memorandum Opinion and Order issued on December 11, 2009 (D.I. 314, 315), the Court granted Plaintiffs' Motion For Leave To Amend First Amended Complaint. The Second Amended Class Action Complaint (D.I. 316) added GEICO Corporation as an additional defendant, added a Count VII for tortuous interference with contractual relations, and added a claim for injunctive relief. The Second Amended Class Action Complaint also amended the proposed class definitions, and supplemented the causes of action with additional facts. Also in its December 11, 2009

4

Memorandum Opinion and Order, the Court granted Defendants' Rule
12(b)(1) Motion To Dismiss For Lack Of Standing, dismissing GEICO
Casualty and GEICO General as defendants.  Accordingly, the
following claims remain against Defendants GEICO Indemnity,
Government Employees Insurance Company, and GEICO Corporation:
Count I, declaratory judgment that Defendants violated 21 Del. C.
§ 2118 and breached their automobile contracts with Plaintiffs;
Count II, breach of contract; Count III, bad faith breach of
contract; Count IV, breach of the duty of fair dealing; Count V,
common law fraud; Count VI, consumer fraud in violation of 6 Del.
C. § 2513; and Count VII, tortuous interference with contractual
relations.

On April 22, 2009, Defendants filed a Rule 23 Motion To Deny
Class Certification.  (D.I. 198).  On July 20, 2009, Plaintiffs
filed a Motion For Class Certification.  (D.I. 262.)  Plaintiffs
also filed a Motion to Stay Defendants' Rule 23 Motion To Deny
Class Certification on July 21, 2009.  (D.I. 272.)  The Court
heard oral argument regarding the class certification issue on
September 30, 2009.

### III. Parties' Contentions

By its Motion For Class Certification and Answering Brief In
Response To Defendants' Rule 23 Motion To Deny Class
Certification (D.I. 224), Plaintiffs contend that Defendants are
violating Delaware law through their policies and claims

processing systems.  (Id. at 3.)  Plaintiffs contend that, as a
general matter, class certification is warranted because
Defendants are "perpetuating this wrongful conduct on thousands
of Delaware claimants and wrongfully withholding millions of
dollars in benefits and penalties."  (D.I. 263, at 3.)
Specifically, Plaintiffs contend that all four elements of Rule
23(a) are met, and that certification is appropriate under Rule
23(b)(3), 23(b)(1)(A), and /or 23(b)(2).  (Id.)

    Plaintiffs seek certification of five counts of the Second
Amended Class Action Complaint: Counts I, II, III, IV, and VI.[1]
(Id. at 21-22.)  With respect to these claims, Plaintiffs
identify three basic categories of alleged wrongful conduct by
Defendants:

> (1) routine[] fail[ure] to process and pay bills within the
> 30 [day] required statutory period and fail[ure] to pay the
> required statutory penalty (the "30-Day Claims"); (2)
> systematic[] den[ial of] payments for passive modality
> treatments performed more than eight weeks after an accident
> without performing any investigation as required (the
> "Passive Modality Claims"); and (3) systematic[] reduc[tion
> of] payments to an arbitrary 80th percentile without
> performing any investigation (the "Geographic Reduction
> Claims").

_____

[1]Plaintiffs had not yet been granted leave to file the
Second Amended Class Action Complaint at the time this Motion To
Certify class was filed.  Plaintiffs noted that, if granted leave
to file the Second Amended Class Action Complaint, they also
sought certification of the tortuous interference and injunctive
relief claims.  (D.I. 263, at 22 n.32.)  However, the Court
declines to consider these claims with Plaintiffs' Motion To
Certify Class because the issue has not been fully briefed with
respect to these claims, and Defendants have not had an
opportunity to answer.

(Id. at 1.)  Specifically, with regard to the Passive Modality

Claims, Plaintiffs allege that Defendants employ a computer rule

which denies payment for passive modalities based solely on the

date of loss, the date of treatment, and treatment code ("CPT

code").  (D.I. 263, at 8.)  Further, Plaintiffs allege that

Defendants have intentionally set this rule to deny payments

without the possibility of human review.  (Id. at 9.)  With

regard to the Geographic Reduction Claims, Plaintiffs allege that

Defendants are reducing bills to the 80th percentile of charges

submitted based solely on an arbitrary recommendation made by

their database providers, without performing a reasonable

investigation based on all available information.  (Id. at 12,

16.)

    Plaintiffs move for certification of plaintiff classes

consisting of:

    1.   All persons, who, during the period from April 19,
         2003[2] to date of final judgment: (a) submitted first-
         party medical expense claims to Defendants pursuant to
         Defendants' Delaware automobile insurance policy's PIP
         coverage; (b) which claims, not disputed by Defendants,
         were not paid within the 30-day period under 21 Del. C.
         § 2118B; (c) which Defendants did not tender payment of
         penalties or interest from in accordance with 21 Del.
         C. § 2118B (the "30-Day Claims Class").

    2.   All persons, who, during the period from March 21,

_____

    [2]This date represents a modification of the previous class
definition, as Plaintiffs do not assert that the statute of
limitations was tolled with respect to 30-Day Claims.  (Id. at
n.35.)

1996[3] to date of final judgment: (a) submitted first-party medical expense claims to Defendants pursuant to Defendants' Delaware automobile insurance policy's PIP coverage; (b) had their claim submitted to Defendants' computer review system; (c) received or were tendered no payment on the submitted medical expenses for treatment of a passive modality (based on Defendants' rule declaring that the treatment would "provide no therapeutic benefit during the chronic period" of the diagnosed conditions); and (d) received or were tendered an amount less than the stated policy limits (the "Passive Modality Class").

3.    All persons, who, during the period from October 7, 1994[4] to date of the final judgment: (a) submitted first-party medical expense claims to Defendants pursuant to Defendants' Delaware automobile insurance policy's PIP coverage; (b) had their claim submitted to Defendants' computer review system; (c) received or were tendered partial payment but in an amount less than the submitted medical expenses (based on the "80th percentile"); and (d) received or were tendered an amount less than the stated policy limited (the "Geographic Reduction Class").

(Id. at 22-23.)

By its Motion To Deny Class Certification and its Answering Brief in Opposition To Plaintiffs' Motion For Class Certification (D.I. 291), Defendants contend that there are numerous "threshold" deficiencies in Plaintiffs' arguments which preclude class certification. (Id. at 4.) According to Defendants, Plaintiffs lack standing as to GEICO General and GEICO Casualty. (Id. at 5.) Further, Defendants contend that the proposed class

---

[3]The date Defendants allegedly adopted the Passive Modality Rule. (Id. at n.34.)

[4]The date Defendants allegedly began their license with Medata. (Id. at n.33.)

definitions are "meaningless," and that membership in the proposed classes cannot be determined by objective criteria. (See id. at 5-6.) Defendants also object to certification on statute of limitations grounds, and the alleged lack of a trial plan presented by Plaintiffs. (Id. at 6-7, 10-11.) With regard to Rule 23(a), Defendants contend that Plaintiffs fail to meet any of the four required elements (D.I. 198, at 35-51), and cannot satisfy the requirements of Rule 23(b)(1)(A), 23(b)(2), or 23(b)(3). (Id. at 56-75.) Defendants also generally argue that Plaintiffs, as the party seeking certification, have failed to meet their burden of proving that certification is appropriate. (Id. at 13-17.)

## IV. Legal Standard

Class certification is determined under federal statutory law, even when a federal court sits in diversity. Huber v. Taylor, 469 F.3d 67, 82 (3d Cir. 2006). Before a proposed class can be certified, plaintiffs must establish that all four prerequisites of Rule 23(a), and at least one part of Rule 23(b), of the Federal Rules of Civil Procedure are met. Johnston v. HBO Film Mgmt., 265 F.3d 178, 183 (3d Cir. 2001). The district court must conduct a "rigorous analysis" when determining whether Rule 23's requirements have been met. Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 161 (1982).

In a recent case, In re Hydrogen Peroxide Antitrust Litig.,

552 F.3d 305 (3d Cir. 2008), the Third Circuit provided detailed guidance for district courts conducting this "rigorous analysis." A party's assurances that it plans to meet Rule 23's requirements are insufficient. In re Hydrogen Peroxide, 552 F.3d at 318. Rather, the Court is required to make a decisive finding that each requirement of Rule 23 has been met. Id. at 320. To the extent factual determinations are necessary, they must be made by a preponderance of the evidence. Id. Because Rule 23 does not merely establish pleading rules, the Court may make a "preliminary inquiry into the merits," and "may consider the substantive elements of the plaintiff's case in order to envision the form that a trial on those issues would take." Id. at 316-17 (internal citations omitted); see also Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 166 (3d Cir. 2001)("A class certification decision requires a thorough examination of the factual and legal allegations.") If the Court grants class certification, the order must include "a clear and complete summary of those claims, issues, or defenses subject to class treatment." Wachtel v. Guardian Life Ins. Co. of Am., 453 F.3d 179, 184 (3d Cir. 2006).

**V. Discussion**

**A. Preliminary Matters**

Before addressing the Rule 23 requirements for class certification, Defendants raise preliminary issues that must be

resolved: whether Plaintiffs have standing, whether Plaintiffs present an objectively-determinable class,[5] and whether the proposed class definitions include members whose claims have been barred by the statute of limitations. (D.I. 198, at 18.) The Court has fully explored Defendants' contentions regarding standing in its ruling on Defendants' Motion To Dismiss For Lack Of Jurisdiction Over The Subject Matter (see D.I. 314), and need not conduct any further analysis here.

1.   Objectively Determinable Plaintiff Classes

"Rule 23 implicitly requires that prospective plaintiffs propose a class definition that is readily ascertainable based on objective criteria." Agostino v. Quest Diagnostics Inc., 256 F.R.D. 437, 478 (D.N.J. 2009). Defendants contend that membership in the proposed classes cannot be determined with objective criteria. (D.I. 198, at 19; D.I. 291, at 6.) Essentially, Defendants argue that determining membership in the proposed classes would have to be done on a case-by-case basis,

---

[5]   For purposes of clarification, the Court notes that, in Defendants' Motion To Deny Class Certification, Defendants made this argument with respect to the original class definition contained in the First Amended Class Action Complaint. Plaintiffs subsequently filed for leave to amend, seeking, *inter alia*, to revise the proposed class definition into three classes. (D.I. 225.)  In their Reply Brief In Support Of Defendants' Rule 23 Motion To Deny Class Certification (D.I. 253) and Answering Brief In Opposition To Plaintiffs' Motion For Class Certification (D.I. 291), Defendants' contentions were made with respect to the three classes defined in the Second Amended Class Action Complaint. The Court will evaluate the class definitions in the Second Amended Class Action Complaint.

looking at the merits of each individual's claims.  (D.I. 291, at
6.)

A proposed class definition should not "inextricably
intertwine[] identification of class members with liability
determinations."  See Pichler v. UNITE, 228 F.R.D. 230, 247 (E.D.
Pa. 2005).  To determine membership in the Passive Modality and
Geographic Reduction Classes, the Court need not determine
whether each individual's claim for benefits was ultimately
reasonable and necessary[6], or whether Defendants' conduct in
denying or reducing payment was arbitrary.  Simply put, a
plaintiff's membership status in one of these classes, as
defined, will not automatically entitle that plaintiff to any
relief.

However, the 30-Day Claims Class does intertwine
identification of class members with liability: in order to be a
member, a person must have submitted a claim for first-party
medical expenses which was not disputed by Defendants; "not paid
within the 30-Day period" proscribed by 21 Del. C. § 2118B; and
on which Defendants "did not tender payment of penalties or
interest from in accordance with 21 Del. C. § 2118B." (D.I. 225,
Ex. 1 ¶ 88.)  By virtue of membership in this class, all

---

[6] Defendants' contentions that class certification is
inappropriate based on the alleged necessity of individualized
factual determinations under the PIP statute is extensively
examined in the Rule 23 analysis to follow.

plaintiffs would be entitled to relief. Therefore, the Court concludes that membership in the 30-Day Claims Class is not ascertainable based on objective criteria because it would entail inquiry into the merits of the putative members' claims, and certification of this class will be denied.

## 2. Statute of Limitations

Defendants contend that the proposed classes, as defined, contain members whose claims are barred by Delaware's three year statute of limitations.[7] (D.I. 291, at 6-7.) Plaintiffs do not contest Defendants' assertions with respect to which statutes of limitations are applicable. Rather, Plaintiffs argue that the statute of limitations has been tolled under the doctrine of fraudulent concealment.[8] (D.I. 225, Ex. A ¶ ; D.I. 295, at 5.)

Delaware law recognizes that a statute of limitations may be tolled when a defendant has fraudulently concealed from a plaintiff the facts necessary to put him on notice of the truth. See Gregorovich v. E.I. duPont de Nemours, 602 F. Supp. 2d 511,

---

[7] Defendants cite to Crowhorn v. Nationwide Mut. Ins. Co., No. Civ. A. 00C-06-010WLW, 2002 WL 1767529, at *5 (Del. Super. Ct. July 10, 2002), for the proposition that a cause of action for benefits wrongfully withheld under 21 Del. C. § 2118 accrues at the time the benefits are denied. Under 11 Del. C. § 8106, the statute of limitations for asserting breach of contract, declaratory judgment, and statutory fraud under 6 Del. C. § 2513 is three years.

[8] Plaintiffs only contend that the claims of the Passive Modality and Geographic Reduction Classes have been tolled. (D.I. 295, at 6 n.6.)

13

518-19 n.9 (D. Del. 2009)(citing In re Tyson Foods, Inc. Consol. S'holder Litig., 919 A.2d 563, 585 (Del. Ch. 2007)). "Under this doctrine, a plaintiff must allege an affirmative act of 'actual artifice' by the defendant that either prevented the plaintiff from gaining knowledge of material facts or led the plaintiff away from the truth." In re Tyson Foods, 919 A.2d at 585. "Mere ignorance of the facts by a plaintiff, where there has been no such concealment, is no obstacle to operation of the statute [of limitations.]" Halpern v. Barren, 313 A.2d 139, 143 (Del. Ch. 1973). The doctrine of fraudulent concealment cannot be invoked by a dilatory plaintiff who was not or should not have been fooled. In re Tyson Foods, 919 A.2d at 585. Plaintiffs bear the burden of pleading facts which amount to fraudulent concealment. Litman v. Prudential-Bache Prop., Inc., Civ. A. No. 12137, 1994 WL 30529, at *4 (Del. Ch. Jan. 14, 1994).

In reviewing the Second Amended Class Action Complaint, the following allegation sufficiently pleads fraudulent inducement for the Geographic Reduction Class: "When Defendants reduce reimbursements, they tell their policyholders that the reason for the reduction is that the bill submitted is not reasonable when compared to other providers' in the insured geographic area. . . [This] statement[ is] false." (D.I. 225, Ex. 1 ¶ 49.) The following allegation pleads fraudulent inducement for the Passive Modality Class: "When Defendants deny coverage for passive

14

modalities based on their rules, Defendants tell their policyholders that the treatment was not necessary or medically related to the insured's injuries. [This] statement[ is] false." (Id.) Further, the following allegation pleads fraudulent inducement as to both proposed classes: "Defendants state to their policyholders (and the Delaware Department of Insurance) that they are willing to reconsider reductions and denials... [N]otwithstanding their public statements, Defendants' actual policy is to never reverse their decisions." (Id. ¶ 51.)

None of Plaintiffs' allegations contain reference to the word "fraud," yet they may be fairly characterized as more than mere generalizations. These paragraphs allege specific acts of concealment and/or misrepresentations by Defendants so as to prevent Plaintiffs from gaining knowledge about Defendants' actual policies and practices with respect to passive modalities and geographic reductions. Accordingly, the Court concludes that the statute of limitations is tolled.

## B. Rule 23 Requirements

### 1. Rule 23(a)

The four requirements of Rule 23(a) are as follows:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). While commonality and numerosity evaluate

the sufficiency of the proposed class itself, typicality and
adequacy of representation evaluate the sufficiency of the named
plaintiffs. Hassine v. Jeffes, 846 F.2d 169, 176 n.4 (3d Cir.
1988). In addition to the four requirements of Rule 23(a), a
plaintiff seeking class certification must also satisfy one of
the requirements of Rule 23(b). Fed. R. Civ. P. 23(b).

    2.  Rule 23(b)

        a.  *Inapplicability Of Rule 23(b)(1) And (b)(2)*

The Court concludes that certification, if appropriate, can
only be made pursuant to Rule 23(b)(3). Certification under Rule
23(b)(1)(A) is generally inappropriate where the primary relief
sought is monetary damages. 5 James Wm. Moore et al., Moore's
Federal Practice § 23.41[6][a]. Similarly, certification under
Rule 23(b)(2) is generally inappropriate where the primary relief
sought is not injunctive or declaratory relief. Id. §
23.43[3][b]. "[W]here the Complaint seeks both injunctive and
declaratory relief and damages, the applicability of Rule
23(b)(1) and (b)(2) depends on whether the primary relief sought
is monetary damages." Allen v. Holiday Universal, 249 F.R.D.
166, 189 (E.D. Pa. 2008). District courts in the Third Circuit
have followed the test set forth in the Fifth Circuit case
Allison v. Citgo Petroleum Corp., 151 F.3d 402 (5th Cir. 1998),
when determining which relief sought predominates. Barabin v.
Aramark Corp., 210 F.R.D. 152, 160-61 (E.D. Pa. 2002).

16

Monetary relief predominates "unless it is incidental to requested injunctive or declaratory relief." Allison, 151 F.3d at 415. "Incidental damages, in turn, are those 'that flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief.'" Barabin, 210 F.R.D. at 161 (citing Allison, 151 F.3d at 415.) The following factors should be considered in determining whether damages are incidental: "(1) whether such damages are of a kind to which class members would be automatically entitled; (2) whether such damages can be computed by 'objective standards,' and not standards reliant upon 'the intangible, subjective differences of each class member's circumstances'; and (3) whether such damages would require additional hearings." Id.

In the Court's view, the requested monetary damages are not incidental because it is unclear at this stage whether a determination of damages for class members would require additional hearings and would depend in part on individual class members' circumstances. Therefore, certification of the proposed classes under Rule 23(b)(1) or (b)(2) would be inappropriate.[9]

b.   *Rule 23(b)(3)*

Rule 23(b)(3) requires the Court to find that: "questions of

---

[9]   It appears that the parties implicitly recognize that Rule 23(b)(3) is most appropriate here because they dedicate the vast majority of their briefing to certification under Rule 23(b)(3), rather than 23(b)(1) or (b)(2).

law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b).

## C. Certification Under Rule 23(a) and Rule 23(b)(3)

The Court concludes that both the Passive Modality Class and the Geographic Reduction Class meet the requirements of Rule 23(a) and (b)(3) with respect to Counts III, IV, and VI. The Court will address each requirement of Rule 23(a) and Rule 23(b)(3) in turn.

### 1. Numerosity

The numerosity requirement addresses whether class action treatment is necessary. Baby Neal for and by Kanter v. Casey, 43 F.3d 48, 55 (3d Cir. 1994). In general, numerosity is satisfied "if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40," however, "no minimum number of plaintiffs is required." Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001). Among the factors to consider with respect to numerosity are: 1) the estimated size of the proposed class; 2) the expediency of joinder; and 3)the practicality of multiple lawsuits. In re ML-Lee Acquisition Fund II, L.P., 848 F. Supp. 527, 558 (D. Del. 1994).

Plaintiffs contend that the Geographic Reduction and Passive

Modality Classes meet the numerosity requirement. Plaintiffs conducted a review of 190 randomly selected files from a pool of over 5000 closed files turned over during discovery, and assert that they have identified 51 files with at least one Geographic Reduction Claim, and 71 files with at least one Passive Modality Claim. (D.I. 263, at 24.) Extrapolating these findings to all 5108 closed files, Plaintiffs contend there would be over 1900 potential members in the Geographic Reduction Class, and over 1300 potential members in the Passive Modality Class. (D.I. 313, at 13:13-17; 20:23 - 21:1.) At oral argument, Plaintiffs contended that numerosity is additionally supported by a report produced by Defendants which identified $636,000 in passive modality reductions and $337,000 in geographic reductions between 2003 and 2005. (Id. at 31:3-13.) Defendants repeat their arguments as to the improper definition of each proposed plaintiff class, and contend that, as a result of inadequate definitions, Plaintiffs fail to establish that either of the classes meet the numerosity requirement.[10]  (D.I. 198, at 35-35; D.I. 291, at 11.) Further, Defendants contend that analysis of the claim files is an "extraordinarily arduous task," and that Plaintiffs have failed to produce any evidence as to how they

---

[10]  To the extent that the improper class definitions contention has already been addressed, see supra pp. 11-13, the Court adopts the reasoning set forth above and will not consider this contention again here.

arrived at their findings.  (D.I. 313, at 59:18 - 60:13.)

Even without extrapolating the 190 sample files to the full
5108 pool of closed files, the Court concludes that Plaintiffs
have established the existence of numerosity by a preponderance
of the evidence.  Both classes appears to have least 50 or more
potential members, with the potential of exponentially greater
membership.  As such, joinder is impractical.  Further,
Plaintiffs have identified and provided exhibits listing each
file number in which they assert that a Geographic Reduction or
Passive Modality Claim exists.  (D.I. 266, Ex. 81-82; D.I. 267,
Ex. 84.)  Plaintiffs have also provided an exhibit summarizing
their review of the 190 closed sample files.[11]  (D.I. 264, Ex.
6.)  Accordingly, the Court concludes that each of the proposed
plaintiff classes meets the numerosity requirement.

    2.    Commonality and Predominance

The commonality element does not require identical claims or
facts among all class members, but rather, that "the named
plaintiffs share at least one question of law or fact with the
grievances of the prospective class."  Johnston, 265 F.3d at 184
(citing In re Prudential Ins. Co. of Am. Sales Practice Litig.
Agent Actions, 148 F.3d 283, 310 (3d Cir. 1998)).  Accordingly,

_____

[11] Defendants object to the competency of the evidence
presented in these exhibits.  However, the Court notes that the
evidence underlying these exhibits- the explanations of benefits
for the Geographic Reduction and Passive Modality Claims- have
been provided as well.  (See D.I. 267, Ex. 84.)

20

commonality is satisfied if the party seeking certification can show that "the questions of law or fact linking the class members are substantially related to the resolution of the litigation, even though the individuals are not identically situated." In re DaimlerChrysler AG Sec. Litig., 216 F.R.D. 291, 295-96 (D. Del. 2003) (citing Deutschman v. Beneficial Corp., 132 F.R.D. 359, 372 (D. Del. 1990)).

Rule 23(b)(3)'s predominance element requires that common issues predominate over the issues applying only to individual members of the proposed class. See Fed. R. Civ. P. 23(b)(3). Predominance ensures that a "class is sufficiently cohesive to warrant adjudication by representation." In re Life USA Holding, Inc., 242 F.3d 136, 144 (3d Cir. 2001). The predominance requirement incorporates Rule 23(a)'s commonality requirement, yet is far more demanding. In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 528 (3d Cir. 2004). Accordingly, in the Third Circuit, commonality and predominance should be analyzed together, "with particular focus on the predominance requirement." Id. "If proof of the essential elements of [a] cause of action requires individual treatment, then class certification is unsuitable." In re Hydrogen Peroxide, 552 F.3d at 311 (citing Newton, 259 F.3d at 172).

Plaintiffs generally contend that the commonality element is met with respect to the proposed plaintiff classes because the

21

case is based on the uniform practices and procedures used by
Defendants to administer PIP benefits. (D.I, 295, at 11.)
Plaintiffs provided the Court with a non-exhaustive list of 25
alleged common questions of fact and law. (D.I. 266, Ex. 79.)
Plaintiffs contend that the predominance requirement is met with
respect to these alleged common issues of law and fact in that
the "central and predominant issue of each claim is whether
Defendants, by their systematic conduct, policies, and
procedures, breached their obligations with their policyholders,
violated applicable law, and did so in bad faith." (D.I. 263, at
30; D.I. 224, at 66.)

Defendants respond that the commonality requirement cannot
be met because the legal and factual issues are individualized
issues. (D.I. 198, at 38.) According to Defendants, many of the
"common questions" asserted by Plaintiffs are questions of
ultimate liability (i.e., that every class member's claim
necessarily requires specific, individualized fact-finding to
determine whether Defendants are liable on the claim). (Id.)
Defendants assert that Plaintiffs have also failed to meet their
burden on the predominance requirement. (Id. at 57.) With
respect to Plaintiffs' contract-based claims, Defendants contend
that the individual issues of reasonableness and necessity
predominante. (Id. at 59-60.) With respect to Plaintiffs' fraud
claim, Defendants contend that the same individualized issues

22

exist in that Plaintiffs cannot prove Defendants made false

misrepresentations "without first proving that [Defendants] did

not pay reasonable or necessary PIP expenses or that [they]

delayed payment or denied payment and/or did not fairly deal with

its insureds." (Id. at 65.)

The Court will examine whether the proposed classes meet the

commonality and predominance requirements for each claim

asserted:

> a.   *Count I: Declaratory Judgment*

The Declaratory Judgment Act provides that a district court

"may declare the rights and other legal remedies of any

interested party seeking such declaration."  28 U.S.C. § 2201(a)

(1994).  Plaintiffs seeks a declaratory judgment that Defendants

violated 21 Del. C. § 2118 and breached their contracts with

insureds by failing to pay claims submitted in accordance with

Delaware's PIP statute.  (D.I. 316 ¶ 103.)  Plaintiffs contend

that the common issues for declaratory judgment involve whether

the policies and procedures employed by Defendants are improper.

(D.I. 263, at 21.)

Plaintiffs have not met their burden of establishing that,

with respect to a declaratory judgment action, the named

Plaintiffs share common questions of law or fact with each of the

proposed classes.  The Court is persuaded that certifying the

Passive Modality and Geographic Reduction Classes to pursue a

declaratory judgment against Defendants based on such a broad
assertion of commonality is inconsistent with its duty to conduct
a rigorous analysis into the requirements of Rule 23.  Moreover,
assuming *arguendo* that commonality exists, the Passive Modality
and Geographic Reduction Classes could not meet the predominance
requirement.  As discussed in the next section, for breach of
contract claims, the individual issues of members of both classes
predominate over issues common to the classes.

                b.   *Count II*: *Breach of Contract*

In general, establishing breach of an insurance contract
requires that the plaintiff prove that there was a valid
insurance contract in effect at the time of the loss, that the
insured plaintiff complied with all conditions precedent to the
insurer's obligation to make payment, and the insurer failed to
make payment as mandated by the policy.  Casson v. Nationwide
Ins. Co., 455 A.2d 361, 365 (Del. Super. Ct. 1982).  In Delaware,
for a breach of contract claim for denial of PIP benefits, the
insured plaintiff bears the burden of proving the claimed
expenses are both reasonable and necessary.  See, e.g., Murphy v.
United Serv. Auto Ass'n, No. Civ. A. 04C-07-003RFS, 2005 WL
1249374, at *2 (Del. Super. Ct. May 10, 2005)("As a matter of
law, the burden lies on the Plaintiff, not on the insurer, to
show the expenses were 'reasonable and necessary.'").

With respect to the proposed Passive Modality and Geographic

Reduction Classes, several common issues of fact and law exist,
such as whether Defendants breached their insurance contracts by
attempting to hide actual exclusions to their coverage, or by
failing to disclose their statutory and regulatory obligations to
their insureds. (See D.I. 266, Ex. 79.)  However, the Court is
persuaded that these common issues do not predominate as to
either the Passive Modality Class or the Geographic Reduction
Class for a breach of contract claim.  Even if the claims of the
Passive Modality and Geographic Reduction Classes were
systematically denied and reduced, respectively, individualized
inquiries would be required to determine whether each class
member's individual claim was actually medically necessary and
their expenses reasonable.

           c.   *Count III: Bad Faith Breach of Contract*

"Under Delaware law, insurance companies owe a duty of good
faith and fair dealing to their insureds."  Crowhorn v.
Nationwide Mut. Ins. Co., No. Civ. A. 00C-06-010 WLW, 2001 WL
695542, at *3 (Del Super. Ct. Apr. 26, 2001).  "Where an insurer
fails to investigate or process a claim or delays payment in bad
faith, it is in breach of the implied obligations of good faith
and fair dealing underlying all contractual obligations."
Tackett v. State Farm Fire and Cas. Ins. Co., 653 A.2d 254, 264
(Del. 1995).  An insurer engages in bad faith denial of claimed
PIP benefits when an insured plaintiff can prove "that the

insurer's refusal to honor [the claim] was clearly without any reasonable justification." Albanese v. Allstate Ins. Co., No. 97C-08-191-WTQ, 1998 WL 437370, at *2 (Del. Super. Ct. July 7, 1998)(citing Casson, 455 A.2d at 369). In other words, the issue is "whether at the time the insurer denied liability, there existed a set of facts or circumstances known to the insurer which created a bona fide dispute and therefore a meritorious defense to the insurer's liability." Id. (citing Casson, 455 A.2d at 369).

Among the common issues are whether Defendants systematically and arbitrarily reduced PIP benefits using an 80th percentile cap, and denied coverage for passive modalities when performed more than eight weeks after an accident, and if so, whether these amount to decisions made without reasonable justification. See generally Murphy, 2009 WL 1249374, at *2 n.6 ("an insured who wants to challenge an insurer's denial of benefits because of the insurer's belief that they were not reasonable and necessary must bring a claim of bad faith denial of benefits against the insurer."). Specifically, for the Passive Modality Class, common issues of fact include whether, as a rule, Defendants denied claims for passive modalities based solely on the date of treatment and CPT code, without the possibility of human review. If so, a common issue of law is whether such a rule supplies a meritorious defense to Defendants'

liability on all Passive Modality Claims. For the Geographic

Reduction Class, common issues of fact include a determination of

whether Defendants' use of the 80th percentile cap is arbitrary,

or based on scientific principles designed to ensure that

reasonable payments are made. A common legal question is whether

the rule capping payments at an 80th percentile supplies a

meritorious defense against Defendants' liability for payments so

reduced.

Defendants dispute that these contract-based claims can be

decided on a class-wide basis, and contend that there must be a

showing that delay or denial of each individual class member's

PIP benefits was "clearly without any reasonable justification."

(D.I. 198, at 59-60.) The Court disagrees because if, as

Plaintiffs allege, Defendants reduce bills based *solely* on an

80th percentile cap, and deny bills based *solely* on treatment

dates and CPT codes which reflect passive modality claims, such

conduct applies on a class-wide basis. Thus, the Court concludes

that commonality is present, and that any individualized issues

are not predominant. See First State Orthopaedics v. Concentra,

Inc., 534 F. Supp. 2d 500, 511 (E.D. Pa. 2007)(holding, in the

context of a certification of a settlement class, that "[w]here .

. . [Defendant] engaged in standardized conduct, arguably giving

rise to contractual claims by the class, the commonality and

27

predominance requirements of Rule 23 are satisfied.")[12]

d.  *Count IV: Breach of Duty of Good Faith And Fair Dealing*

The implied covenant of good faith and fair dealing inheres in every contract, including insurance contracts. Dunlap v. State Farm Fire and Cas. Co., 878 A.2d 434, 442 (Del. 2005). The Delaware Supreme Court has stated that

> [T]he implied covenant requires a 'party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain.' Thus, parties are liable for breaching the covenant when their conduct frustrates the 'overarching purpose' of the contract by taking advantage of their position to control implementation of the agreement's terms.

Id. (citations omitted). Among the common issues are whether Defendants systematically and arbitrarily reduced bills based on an 80th percentile cap, and denied claims for passive modalities when performed more than eight weeks after an accident, and if so, whether such conduct frustrated the "overarching purpose" of the insurance contracts. (See D.I. 263, at 22.)

Individualized issues of reasonableness and necessity of

---

[12]The Court rejects Defendants' blanket contention that "settlement class action cases are not persuasive authority as to non-settlement cases insofar as predominance and superiority are concerned." (D.I. 291, at 19.) Rather, in Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1997), the Supreme Court stated that in the context of settlement-only class certification, a district court need not inquire into the difficulties of managing the class action under Fed. R. Civ. P. 23(b)(3)(D) since there would be no trial. However, "other specifications of the Rule. . . . demand undiluted, even heightened attention in the settlement context." Id.

claimed benefits do not predominate because Defendants' conduct

towards Plaintiffs may still amount to a breach of the duty of

good faith and fair dealing even if no underlying breach of

contract ultimately occurs.[13]  See Amirsaleh v. Bd. of Trade of

the City of N.Y., Inc., C.A. No. 2822-CC, 2009 WL 3756700, at *4

(Del. Ch. 2009)(stating that the implied covenant of good faith

and fair dealing "is triggered when the defendant's conduct does

not violate the express terms of the agreement but nevertheless

deprives the plaintiff of the fruits of the bargain."); see also

Dunlap, 878 A.2d at 444 (citations omitted)(emphasis in

original)(stating that the implied covenant of good faith is the

---

[13]In this manner, the present case can be distinguished from
St. Louis Park Chiropractic, P.A. v. Fed. Ins. Co., Nos. 08-3808,
08-3809, 08-3821, 08-3823, 08-3824, 2009 WL 2171221 (3d Cir. July
22, 2009), relied on by Defendants.  In St. Louis Park,
plaintiffs brought a breach of contract action against defendant
insurance companies, the gravamen of which was that "use of
computerized auditing *itself* violated the insurance contracts."
St. Louis Park, 2009 WL 2171221, at *3 (emphasis in original).
The Third Circuit held that plaintiffs failed to state a
cognizable breach of contract claim because plaintiffs' insurance
policies did not require or bar the use of any means of expense
evaluation.  Id. at *4.  Alternatively, the Third Circuit stated
that the use of computerized auditing did not violate the
contractual provision requiring defendants to pay "reasonable"
expenses because plaintiffs presented no authority that that
provision required or prohibited a certain type of review.  Id.
Defendants contend that St. Louis Park stands for the broad
proposition that Defendants can use any method to calculate
payments to its insured as long as those payments are reasonable.
(D.I. 313, at 49:4-9.)  Even if this is so, and Defendants
conduct in using databases does not violate the letter of
Defendants' insurance contracts with Plaintiffs, St. Louis Park
does not address whether that conduct may nevertheless violate
the duty of good faith and fair dealing attached to the
contracts.

29

obligation to "preserve the *spirit* of the bargain rather than the letter . . . It requires more than just literal compliance with the policy provision and statutes. The implied covenant of good faith and fair dealing requires that the insurer act in a way that honors the insured's reasonable expectations.") Accordingly, if Defendants employed arbitrary, systematic procedures such that members of the Passive Modality and Geographic Reduction Classes had their bills denied or reduced as a result of lack of fair dealing, such conduct applies on a class-wide basis, and individual issues are not predominant.

    e.    *Count VI: Consumer Fraud*

In order to prove consumer fraud, Plaintiffs must prove that Defendants intentionally concealed material facts with the intent that others would rely upon such concealment. See 6 Del. C. § 2513; see also A&R Assoc., L.P. v. Shell Oil Co., 725 A.2d 431, 440 (Del. Super. Ct. 1998). Plaintiffs need not prove individual reliance. See 6 Del. C. § 2513. Plaintiffs contend that Defendants "never disclose prior to issuing an insurance policy or prior to denying a passive modality claim that they do not pay for passive modalities, as a rule, eight weeks after the accident" (D.I. 224, at 13) and "never disclose[] to claimants or the Department of Insurance that they are limiting payments to the 80th percentile" (D.I. 263, at 19). Proof of Defendants' liability on this consumer fraud claim would depend on evidence

common to all members of the proposed classes, including evidence

that Defendants, as alleged, have made willful misrepresentations

about PIP coverage, or evidence that Defendants intentionally

concealed the coverage's exclusions, or their own statutory

obligations. See 5 James Wm. Moore, Moore's Federal Practice §

23.23[4][c] (noting that in consumer fraud actions arising under

state law, "common issues generally arise from allegations that

all class members received standardized documents containing

misrepresentations"). These common issues predominate, as proof

of Defendants' liability under this statute would not turn on

whether Defendants engaged in such conduct towards each

individual class member, or whether each individual class member

relied on Defendants' conduct.[14] See In re Warfarin Sodium

Antitrust Litig., 391 F.3d at 528 ("while liability [under the

Delaware Consumer Fraud statute] depends on the conduct of

[defendant], and whether it conducted a [widespread] campaign of

---

[14] In contrast, Nafar v. Hollywood Tanning Sys., Inc., No.
08-3994, 2009 WL 2386666, (3d Cir. Aug. 5, 2009), cited by
Defendants, dealt with the New Jersey Consumer Fraud Act
("NJCFA"). Unlike the Delaware Consumer Fraud Act, the NJCFA
requires a causal relationship between the defendants' unlawful
conduct and the plaintiff's ascertainable loss. Id. at *7
(citations omitted). The Third Circuit reversed the district
court's order certifying a class to pursue a claim under the
NJCFA, stating that "evidence of plaintiffs' conduct relevant to
the causation issue cannot be ignored without comment in a
predominance analysis . . . because the Supreme Court of New
Jersey has held that individual issues regarding plaintiff's
behavior may, in certain cases, defeat predominance in a NJCFA
class action..." Id.

misrepresentation and deception, it does not depend on the
conduct of individual class members"). Accordingly, the Court
concludes that both proposed plaintiff classes meet the
commonality and predominance requirement for a consumer fraud
claim.

### 3.   Typicality

Typicality can exist despite factual differences between the
putative class members' claims as long as "the claims of the
named plaintiffs and putative class members involve the same
conduct by the defendant." Johnston, 265 F.3d at 184 (citing
Newton, 259 F.3d at 183-84). Accordingly, the Court must
determine whether "the named plaintiff[s'] individual
circumstances are markedly different or . . . the legal theory
upon which the claims are based differs from that upon which the
claims of the other class members will perforce be based." Id.
(citing Eisenberg v. Gagnon, 766 F.2d 770, 786 (3d Cir. 1985);
see also Wilmington Firefighters Local 1590 v. City of
Wilmington, 109 F.R.D. 89, 93 (D. Del. 1985)("A representative's
claim is typical of it arises from the same event, practice, or
conduct that gives rise to the claim of the other class members,
and is based on the same legal theory.")

Plaintiffs contend that any factual differences which might
exist between Ms. Anderson and Mr. Johnson, as class
representatives, and the members of the proposed classes will not

32

bar a finding of typicality because there are strong similarities
of legal theories between Ms. Anderson, Mr. Johnson and the
proposed class members, and because all have allegedly suffered
similar injuries as a result of Defendants' systematic conduct.
(D.I. 263, at 26-27.)  Specifically, Plaintiffs contend that Ms.
Anderson and Mr. Johnson are typical victims of both proposed
classes in that both had PIP benefits denied and payments reduced
as a result of Defendants' allegedly arbitrary rules.  (D.I. 224,
at 62.)

     Defendants contend that neither Ms. Anderson nor Mr. Johnson
can meet the typicality requirement because both have individual
circumstances different from other proposed class members, and
because the claims of both are subject to unique defenses.  (D.I.
198, at 44.)  The Court will consider the typicality of each
named Plaintiff.

               a.   *Mr. Johnson*

     The Court concludes that Mr. Johnson's claims of bad faith
breach of contract (Count III), breach of the duty of good faith
and fair dealing (Count IV), and consumer fraud (Count VI) are
typical of the Passive Modality and Geographic Reduction Classes.
Defendants contend that Mr. Johnson's claims are not typical of
the claims of the proposed classes in that he must establish that
the treatments for which he claimed PIP benefits were necessary
and causally related to his automobile accident (in light of his

pre-existing medical history), and that he sustained compensable damages. (D.I. 198, at 31-35, 45-46). Specifically, with respect to compensable damages, Defendants contend Mr. Johnson is atypical because "there are no outstanding issues with respect to bills or payments made to any of Mr. Johnson's providers," and "[h]e has not incurred any out of pocket expenses, no lawsuits have been filed against him by any provider and his credit ratings are unaffected." (Id. at 45.) Plaintiffs contest this assertion, and argue that Delaware Recovery Systems, Inc. has an open collection matter against Mr. Johnson for non-payment of a balance owed to a provider. (D.I. 224, at 26.)

"Where an action challenges a policy of practice, the named plaintiffs suffering one specific injury from the practice can represent a class suffering other injuries, so long as all the injuries are shown to result from the practice." Baby Neal, 43 F.3d at 58. Defendants contend that Mr. Johnson's claims are not typical because he has no outstanding issues concerning payment of medical bills, and therefore, has allegedly suffered no injury.[15] However, the Court's view is that Defendants have misconstrued the injury common to the proposed plaintiff classes, and that the injury alleged to have been suffered by the proposed

---

[15]Defendants assert that Mr. Johnson is not typical because he has suffered no injury, but interestingly, do not contend that Mr. Johnson lacks standing as a result of this alleged lack of injury.

34

classes does not merely depend on the existence of outstanding
bills.   The relevant injury is the denial, reduction or delay of
full PIP benefits without reasonable investigation and
justification.[16]   The Court accordingly concludes that Mr.
Johnson's legal theories under Counts III, IV and VI are typical
of members of the three proposed classes- that Defendants failed
to conduct an investigation into reimbursement claims, and that
PIP benefits were denied or reduced based solely upon Defendants'
allegedly systematic and arbitrary conduct, rather than upon
reasonable justification.

            b.   *Ms. Anderson*

     The Court concludes that Ms. Anderson's claims of bad faith
breach of contract (Count III), breach of the duty of good faith
and fair dealing (Count IV), and consumer fraud (Count VI) are
typical of the Passive Modality and Geographic Reduction Classes.
Defendants admitted during discovery that Ms. Anderson's claims
were reviewed and analyzed in a manner consistent with how all
other policyholders' claims were reviewed and analyzed during the
relevant time period.   (D.I. 266, Ex. 77.)   Ms. Anderson had
claims for reimbursement of PIP benefits denied for being passive
modalities, and reduced to the 80th percentile.   Defendants
contend that Ms. Anderson will be subject to atypical defenses

---

[16]However, whether Mr. Johnson has any outstanding issues
concerning the payment of medical bills would be relevant to a
damages inquiry.

against these denials/reductions. (D.I. 291, at 14.)  Namely,

these defenses include: (1) that one provider fabricated her

records to support medical bills paid by Defendants; (2) her

treating physician determined that no additional therapy was

warranted; (3) some of the treatment received by Ms. Anderson was

never prescribed by her physician; (4) the treating physician

could not state with certainty that treatment Ms. Anderson

received was casually related to her accident.  (Id. at 15.)

However, Defendants admit these defenses were "unknown . . .

to GEICO back when the claim was being handled in the Claims

Department."  (D.I. 313, at 62:24-25.)  Thus, these are not

unique defenses against Ms. Anderson's bad faith breach of

contract and breach of the duty of good faith and fair dealing

claims because they have no bearing on whether Defendants

conducted a reasonable investigation into Ms. Anderson's claims

*before* denying and/or reducing them.  The Court accordingly

concludes that Ms. Anderson's legal theories under Counts III, IV

and VI are typical of members of the three proposed classes- that

Defendants failed to conduct an investigation into reimbursement

claims, and that PIP benefits were denied or reduced based solely

upon Defendants' allegedly systematic and arbitrary conduct,

rather than upon reasonable justification.

### 4. Adequacy of Representation

In examining whether the class representatives will

adequately protect the interests of the class, the Court must
determine (1) whether the interests of the class representatives
conflict with those of the putative class members, and (2)
whether the class attorney is capable of representing the
proposed class. Johnston, 265 F.3d at 185. "[A] class
representative must be part of the class and 'possess the same
interest and suffer the same injury' as the class members."
Amchem, 521 U.S. 625-26 (1997)(citations omitted). As an initial
matter, Defendants do not appear to contend that the class
attorney is incapable of representing the proposed classes of
plaintiffs. The Court is also satisfied that Plaintiffs' counsel
has thus far vigorously and competently represented the interests
of the proposed plaintiff classes. Accordingly, the Court
concludes that the class attorney is capable of representing the
proposed classes.

Defendants contend that neither Ms. Anderson nor Mr. Johnson
are adequate class representatives because they "lack even the
most fundamental knowledge and understanding of their claims,
GEICO's policy and procedure, the PIP law generally, and/or class
action jurisprudence." (D.I. 198, at 54.) Because Ms. Anderson
and Mr. Johnson lack this knowledge, they are incapable of
fulfilling their fiduciary duties as class representatives,
according to Defendants. (Id.) Defendants also challenge Mr.
Johnson's credibility as it bears on his capability to act as a

37

fiduciary. (Id. at 50.) Further, Defendants contend that Ms. Anderson and Mr. Johnson are inadequate class representatives whose interests inherently conflict with the interests of the putative class members. (D.I. 291, at 16.) Because the value of each class member's claims in the three proposed classes differs, Defendants assert, Ms. Anderson and Mr. Johnson can not adequately represent each member's interests. (Id.) The Court will consider the adequacy of each named Plaintiff.

a. *Mr. Johnson*

The Court is cognizant of Defendants' concerns about Mr. Johnson's credibility, and concludes that these concerns prevent Mr. Johnson from serving as an adequate class representative. "Courts are obligated to carefully scrutinize adequacy of representation in all class actions to ensure the forthrightness and vigor with which the class representative would assert and defend the interests of class members." In re FleetBoston Fin. Corp. Sec. Litig., 253 F.R.D. 315, 329 (D.N.J 2008).

When questioned about his previous involvement in litigation at his deposition, Mr. Johnson was unequivocal about his involvement in other civil and criminal cases:

Q. Okay. Other than the three lawsuits that you mentioned a while ago, have you ever been party to any court proceeding? First, let's say a civil case, any other kind of civil case other than the three auto accident cases?
A. No.
Q. Okay. How about, have you ever been charged with a crime?

38

A.    No.

(Def. Hr'g Ex. 3 at 10:12- 20.)   However, Defendants have
presented the Court with a list of at least eleven other civil
and criminal cases in Delaware in which Mr. Johnson was
previously involved (D.I. 291, at 50-51), as well as accompanying
docket sheets (id. Ex. 45).   Plaintiffs have not responded to
this issue.

Some of these cases- such as an employment discrimination
action against a previous employer, a disorderly conduct charge,
and landlord tenant disputes- are not germane this action and, in
and of themselves, would probably not call into question the
adequacy of Mr. Johnson's representation.   However, several
cases, including the mortgage action, replevin action, bankruptcy
petition, and criminal charge for writing a bad check in excess
of $500, raise questions about Mr. Johnson's financial dealings.
When viewed cumulatively, this history of litigation calls into
question Mr. Johnson's adequacy to serve as a class
representative.   Perhaps more importantly, his failure to address
any of these cases when directly asked bears on his
forthrightness.   Accordingly, the Court is not satisfied that Mr.
Johnson can adequately fulfill his fiduciary responsibilities to
class members.

b.    Ms. Anderson

The Court concludes that Ms. Anderson is an adequate

representative for both proposed classes. In the Third Circuit, a named plaintiff need not have knowledge of the material facts in support of the plaintiff's claim in order to be an adequate representative of the class. Lewis v. Curtis, 671 F.2d 779, 789 (3d Cir. 1982), abrogated on other grounds by Kamen v. Kemper Fin. Serv., Inc., 500 U.S. 90 (1991), as recognized in Garber v. Lego, 11 F.3d 1197, 1206-07 (3d Cir. 1993). The Third Circuit reasoned that such a requirement does not make vigorous representation of the client any more likely. Id. Moreover, "the adequacy-of-representation test is not concerned [with] whether plaintiff personally derived the information pleaded in the complaint or whether he will personally be able to assist his counsel." Id.

Ms. Anderson has demonstrated that she understands the material allegations of her Complaint against Defendants (Def. Hr'g Ex. 2 at 111:23 ("[GEICO]" [d]idn't pay timely"); 112:5 ([d]idn't pay all that was submitted"); 112:9-10 "[a]nd didn't pay for some of the treatments at all")), and the general nature of her complaint against Defendants (id. at 112:13-14 ("I don't believe they adhered to PIP like they were supposed to")). Although Ms. Anderson has not read Delaware's PIP statute (id. at 50:10-12), she has read her insurance policy (id. at 48:24), and she manifests a basic understanding of what PIP coverage is (id. at 48:8-11 ("Personal injury protection, in part of my policy, I

believe, is to take care of any medical expense that I may have in an accident, irregardless [sic] of who is at fault.")). Ms. Anderson may not know what the term "class certification" means (id. at 13:21-23), but she understands the nature of a class action (id. at 10:6-8 ("My understanding of a class action is when an entity does something that is not appropriate or against the law to more than one person")), and that she owes duties to other members of the class as their representative (id. at 11:24-12:9).

It is clear that Ms. Anderson does not know what elements are required to prove her legal causes of action (id. at 152:2-155:2, 164:9-16;), nor what categories of damages are being sought (id. at 125:9- 126:10). In the Court's view, however, these issues are insufficient to declare Ms. Anderson inadequate to serve as a class representative. See McDonough v. Toys R Us, Inc., 638 F. Supp. 2d 461, 477 (E.D. Pa. 2009)(stating that adequacy does not require a plaintiff to master legal theories).

Further, the differences in value of the class members' payment reductions and denials do not, without more, automatically render Ms. Anderson's interests antagonistic to the absent class members' interests. See 5 James Wm. Moore et al., Moore's Federal Practice §23.25[2][b][viii] (3d ed. 2009)(recognizing that class members are often economic competitors for shares of the relief sought, but absent some

41

direct and fundamental conflict, such competition will not generally prevent a single class representative from adequately representing class members). The absent class members and Ms. Anderson share a unified interest in proving that Defendants employed arbitrary and systematic procedures which resulted in the denial, reduction, and delay of claims for PIP benefits without reasonable justification. Establishing liability on this point is necessary for all class members, including the absent class members and Ms. Anderson, to prevail on any of the claims.

5. Superiority

Pursuant to Rule 23(b)(3), the Court must determine whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Among the pertinent factors to be considered:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;
(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
(C) The desirability or undesirability of concentrating the litigation of the claims on the particular forum; and
(D) the likely difficulties in managing a class action.

Id. "The superiority requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." In re Prudential Ins. Co. Am. Sale Practice Litig. Agent Actions, 148 F.3d 283, 316 (3d Cir. 1998)(internal quotations omitted).

Plaintiffs contend that a class action is the superior

42

method of adjudication for this dispute because many of the
claims at issue are for nominal amounts, and the costs of
individual litigation would be high.  (D.I. 263, at 36-37.)
Further, Plaintiffs contend that a trial would not be
unmanageable and that it would be a "gross injustice" to deny
certification for lack of a trial plan given the current state of
discovery.  (D.I. 224, at 70.)  Defendants contend the
superiority requirement is not met because Plaintiffs' claims and
Defendants' defenses contain a 'multitude of individualized
issues," making resolution by class action difficult and
inefficient.  (D.I. 291, at 68.)  In the same vein, Defendants
assert that the predominance of individualized issues precludes
Plaintiffs from being able to develop any workable trial plan.
(Id. at 68-69.)

     As discussed previously in the sections of this opinion
dealing with commonality, predominance, and typicality, the
individualized issues regarding Plaintiffs' claims and
Defendants' defenses do not preclude class certification.  Given
the predominance of common issues, the Court concludes a trial on
the certified claims could be managed efficiently.  No evidence
has been put before the Court that other litigation by or against
the class members has already begun.  Further, no objection has
been made to the desirability of this Court as a forum in light
of the fact that the controversy involves Delaware law and

Delaware plaintiffs. Accordingly, the Court concludes that the superiority requirement has been met.

## VI. Conclusion

For the reasons discussed, the Court will grant in part and deny in part Defendants' Rule 23 Motion To Deny Class Certification, as well as Plaintiffs' Motion For Class Certification. Specifically, the Court will deny certification of the 30-Day Claims Class. The Court will certify the Passive Modality Class, with Ms. Anderson as class representative, to pursue a class action suit against Defendants as to Counts III, IV, and VI. The Court will certify the Geographic Reduction Class, with Ms. Anderson as class representative, to pursue a class action suit against Defendants as to Counts III, IV, and VI.

An appropriate Order will be entered.