IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

```
KERRY JOHNSON and                      :
SHARON ANDERSON,                       :
on behalf of themselves and            :
all others similarly situated          :
                                       :
               Plaintiffs,             :
                                       :
        v.                             :    C.A. No. 06-408-JJF
                                       :
GEICO CASUALTY COMPANY,                :
GEICO GENERAL INSURANCE COMPANY,       :
GEICO INDEMNITY COMPANY, and           :
GOVERNMENT EMPLOYEES INSURANCE         :
COMPANY,                               :
                                       :
               Defendants.             :
```

---

Richard H. Cross, Jr., Esquire; Christopher P. Simon, Esquire; and Kevin S. Mann, Esquire of CROSS & SIMON, LLC, Wilmington, Delaware.
John Sheehan Spadaro, Esquire of JOHN SHEEHAN SPADARO, LLC, Hockessin, Delaware.

Attorneys for Plaintiff.

George M. Church, Esquire, and Laura A. Cellucci, Esquire, of MILES & STOCKBRIDGE P.C., Baltimore, Maryland.
Meloney Cargil Perry, Esquire of MECKLER BULGER TILSON MARICK & PEARSON LLP, Dallas, Texas.
Paul A. Bradley, MARON MARVEL BRADLEY & ANDERSON, P.A., Wilmington, Delaware.

Attorneys for Defendant.

---

**MEMORANDUM OPINION**

July **9** , 2010
Wilmington, Delaware

Farnan, District Judge.

Presently before the Court are several motions pertaining to
discovery disputes: (1) Motion For Order To Show Cause And
Sanctions Against Berkshire Hathaway, Inc. (D.I. 193) filed by
Plaintiffs Sharon Anderson and Kerry Johnson; (2) Motion For
Protective Order (D.I. 256) filed by Defendants GEICO Indemnity
Company and Government Employees Insurance Company; and (3)
Motion To Compel Defendants' Production Of Documents (D.I. 286)
filed by Plaintiffs Sharon Anderson and Kerry Johnson.  Also
before the Court is a Rule 12(b)(1) Motion To Dismiss For Lack Of
Standing and Rule 12(b)(6) Motion To Dismiss For Failure To State
A Claim (D.I. 318) filed by Defendant GEICO Corporation, and a
Motion To Stay Order Pending Appeal (D.I. 331) filed by
Defendants Government Employees Insurance Company, GEICO
Indemnity Company, and GEICO Corporation.

## I.   Background

Plaintiffs Kerry Johnson and Sharon Anderson (collectively,
"Plaintiffs") initially filed this class action suit on behalf of
themselves and all others similarly situated in the Superior
Court for the State of Delaware in and for New Castle County; it
was subsequently removed to this Court on June 27, 2006.  (D.I.
1.)  The factual background relevant to this action has been
fully set forth in the Court's previous Memorandum Opinions.
However, a few salient procedural items bear repeating here.

In a Memorandum Opinion and Order issued on December 11,

2009 (D.I. 314, 315), the Court granted Plaintiffs' Motion For Leave To Amend First Amended Complaint. The Second Amended Class Action Complaint (D.I. 316) added GEICO Corporation as an additional defendant, added a Count VII for tortuous interference with contractual relations, and added a claim for injunctive relief. The Second Amended Class Action Complaint also amended the proposed class definitions, and supplemented the causes of action with additional facts. Also in its December 11, 2009 Memorandum Opinion and Order, the Court granted Defendants' Rule 12(b)(1) Motion To Dismiss For Lack Of Standing, dismissing GEICO Casualty Company ("GEICO Casualty") and GEICO General Insurance Company ("GEICO General") as defendants. Accordingly, the following claims remain against Defendants GEICO Indemnity Company ("GEICO Indemnity"), Government Employees Insurance Company, and GEICO Corporation (collectively, "Defendants"): Count I, declaratory judgment that Defendants violated 21 Del. C. § 2118 and breached their automobile contracts with Plaintiffs; Count II, breach of contract; Count III, bad faith breach of contract; Count IV, breach of the duty of fair dealing; Count V, common law fraud; Count VI, consumer fraud in violation of 6 Del. C. § 2513; and Count VII, tortuous interference with contractual relations.

On December 30, 2009, the Court granted in part and denied in part the parties' motions regarding class certification.

(D.I. 321.) Specifically, the Court certified the Passive
Modality Class, with Ms. Anderson as class representative, to
pursue a class action suit against Defendants as to Counts III,
IV, and VI. (Id.) The Court certified the Geographic Reduction
Class, with Ms. Anderson as class representative, to pursue a
class action suit against Defendants as to Counts III, IV, and
VI. (Id.)

## II. Defendants' Rule 12(b)(1) Motion To Dismiss For Lack Of Standing and Rule 12(b)(6) Motion To Dismiss For Failure To State A Claim (D.I. 318)

### A. Parties' Contentions

By their Motion To Dismiss, Defendants first claim that
Plaintiffs lack standing against GEICO Corporation, and
therefore, that GEICO Corporation should be dismissed as a
defendant to this action. (D.I. 319.) Defendants note that
while the Second Amended Class Action Complaint (D.I. 316)
alleges that Ms. Anderson was a named insured of Government
Employees Insurance Company, and that Mr. Johnson was a named
insured of GEICO Indemnity Company, it only alleges that GEICO
Corporation "is a holding company whose affiliates are personal
lines property and casualty insurers." (Id. at 2.) Defendants
contend that, as a holding company, GEICO Corporation does not
issue insurance policies or engage in handling PIP claims in
Delaware, and further, that there is no allegation that either
Plaintiff is in contractual privity with GEICO Corporation. (Id.

3

at 3-4.) As a result, Defendants contend that Plaintiffs'
alleged injuries are not traceable to GEICO Corporation, and that
GEICO Corporation should be dismissed for the same reasons former
Defendants GEICO Casualty and GEICO General were dismissed.[1]
(Id.) Alternatively, Defendants contend that the Second Amended
Complaint does not state a plausible claim for relief against
GEICO Corporation, and does not make any allegation connecting
GEICO Corporation to Plaintiffs' injuries.  (Id. at 6-7.)

     Plaintiffs contend that the Second Amended Complaint states
a claim against GEICO Corporation upon which relief can be
granted, and that the allegations in the Second Amended Complaint
and evidence in record demonstrates that Plaintiffs have standing
against GEICO Corporation. (D.I. 327, at 7.)  Plaintiffs contend
that the record shows that GEICO Corporation "actively
participates in, if not controls, the management and strategies

_____

[1] GEICO Casualty and GEICO General were dismissed by Order
dated December 11, 2009.  (D.I. 315.)  In its accompanying
Memorandum Opinion, the Court stated that the injury alleged by
Plaintiffs in the Second Amended Class Action Complaint is the
denial of benefits and performances to which Plaintiffs were
lawfully entitled under PIP coverage issued as part of
Defendants' insurance contracts, due to Defendants' "arbitrary,
unreasonable, unjust, unfair, fraudulent, deceptive, and
otherwise wrongful and illegal conduct."  (D.I. 314, at 20.)
Ultimately, the Court found that even if GEICO Casualty and GEICO
General engaged in the arbitrary and unreasonable denial of
benefits, Plaintiffs' injuries were not traceable to that
conduct.  (Id.)  Rather, Plaintiffs' alleged injuries were
traceable to Government Employees Insurance Company and GEICO
Indemnity, the insurance companies which issued their policies.
(Id.)

4

implemented by [GEICO Indemnity and Government Employees Insurance Company]." (Id. at 5.) Plaintiffs contend that GEICO Corporation is integrally linked to GEICO Indemnity and Government Employees Insurance Company in that GEICO Corporation regularly receives management reports documenting, inter alia, claims handling systems and cost-containment efforts. (Id.) Specifically, Plaintiffs point to representations about GEICO Corporation made by Berkshire Hathaway, Inc. ("Berkshire"), Defendants' parent company, to the Securities and Exchange Commission, and financial statements that demonstrate that GEICO Corporation provides "advisory services" to GEICO Indemnity and Government Employees Insurance Company. (Id. at 7.) Further, Plaintiffs contend that standing is not lacking merely because Plaintiffs are not in contractual privity with GEICO Corporation because not all claims are premised on contractual privity. (Id.)

B.    Legal Standard

1.    *Rule 12(b)(1)*

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the Court may dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Motions brought under Rule 12(b)(1) may present either a facial challenge or a factual challenge to the Court's subject matter jurisdiction. Gould Elecs. Inc. v. U.S., 220 F.3d 169, 176 (3d Cir.

2000)(citing Mortensen v. First Fed. Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)). If the motion presents a factual attack, the Court may consider evidence outside the pleadings, id., including affidavits, depositions, and testimony, to resolve factual issues bearing on jurisdiction. Gotha v. U.S., 115 F.3d 176, 179 (3d Cir. 1997). Moreover, in reviewing a factual challenge to the court's subject matter jurisdiction, the presumption of truthfulness does not attach to the allegations of the complaint. Mortensen, 549 F.2d at 891. If the motion presents a facial attack, the Court may only consider the allegations of the complaint, and documents referenced therein, in the light most favorable to the plaintiff. Gould Elecs., 220 F.3d at 176.

2. *Rule 12(b)(6)*

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move for dismissal based on a plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations in a complaint as true and view them in the light most favorable to the plaintiff. See Christopher v. Harbury, 536 U.S. 403, 406 (2002). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Assuming the factual

allegations are true, even if doubtful in fact, the "factual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombley, 550 U.S. 544, 555 (2007). While the complaint need not make detailed factual allegations, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than mere labels and conclusions, and a formulaic recitation of the elements of a cause of action." Id. (internal quotations and citations omitted). Thus, stating a claim upon which relief can be granted "'requires a complaint with enough factual matter (taken as true) to suggest' the required element" of a cause of action. Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008)(citing Twombley, 550 U.S. at 556.) In sum, if a complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009), then the complaint is "plausible on its face," and will survive a motion to dismiss under Rule 12(b)(6). Twombley, 550 U.S. at 570.

## C. Discussion

Standing to sue is a constitutional prerequisite to maintaining an action in federal court. See DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 (2006)(citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992))("The 'core component' of

7

the requirement that a litigant have standing to invoke the authority of a federal court 'is an essential and unchanging part of the case-or-controversy requirement of Article III.'"). To demonstrate standing, a plaintiff must demonstrate that a case or controversy exists within the meaning of Article III of the Constitution. Lujan, 504 U.S. at 560. To meet this requirement, a plaintiff must show: 1) that it suffered an injury-in-fact; 2) the injury is fairly traceable to the action challenged; and 3) it is likely that the injury will be redressed by a favorable decision. Id. at 560-61.

The Court first examines the facial challenges to the Second Amended Class Action Complaint, and concludes that Plaintiffs have sufficiently alleged standing and a plausible claim for relief against GEICO Corporation. Plaintiffs allege that GEICO Corporation "is a holding company whose affiliates are personal lines property and casualty insurers," and that GEICO Indemnity and Government Employees Insurance Company are wholly-owned subsidiaries of GEICO Corporation. (D.I. 316 ¶ 9.) Plaintiffs allege that Defendants operate jointly, collectively, and interchangeably under the names "GEICO" or "GEICO Direct." (Id. ¶ 10.) Plaintiffs further allege, inter alia, that "GEICO is a prolific advertiser in the insurance market," and that for years "GEICO has derived substantial revenues and profits from the sale of insurance products in Delaware." (Id. ¶¶ 13, 14.) Taking

8

Plaintiffs' allegations that GEICO Corporation acts jointly and collectively with its wholly-owned subsidiaries as true, the Court concludes that Plaintiffs have stated, at a minimum, plausible claims for consumer fraud and tortuous interference with contractual relations against GEICO Corporation. Accordingly, the Second Amended Class Action Complaint is facially sufficient to withstand Defendants' Motion To Dismiss.

Turning to Defendants' factual attack on subject matter jurisdiction, the Court again concludes that it must defer ruling on Plaintiffs' standing against GEICO Corporation.[2] Although GEICO Corporation may eventually be dismissed for the same reason as GEICO Casualty and GEICO General - i.e., lack of a traceable injury - Defendants fail to recognize the relevant procedural history of this action. In September 2007, the Court granted Plaintiffs' Motion For Leave To File Amended Complaint (D.I. 11) which, inter alia, added GEICO General and GEICO Casualty as defendants. The Court concluded at that time that "[i]t [was] unclear . . . what role each entity plays with respect to the

---

[2]   In challenging Plaintiffs' Motion For Leave To Amend Complaint (D.I. 225), Defendants argued that Plaintiffs should not be given leave to amend to add GEICO Corporation as a defendant because Plaintiffs lacked standing against GEICO Corporation. (D.I. 250, at 3.) In granting Plaintiffs leave to amend, the Court stated that, "[b]ecause an evaluation of this relationship would necessarily require the Court to examine matters outside the pleadings, the Court will defer ruling on the question of Plaintiffs' standing against GEICO Corporation." (D.I. 134, at 10.) Defendants filed the present Motion To Dismiss contesting standing seventeen days later.

allegations of the Complaint," and that "discovery on the issue

of standing is warranted before the Court entertains the question

of whether GEICO General or GEICO Casualty should be dismissed

from this action." (D.I. 23, at 6.) Subsequent to such

discovery, GEICO General and GEICO Casualty were dismissed in

December 2009.

Similarly, the Court permitted GEICO Corporation to be added

as a defendant, deferring the question of standing.[3] Defendants'

contention that Plaintiffs should be able to establish standing

against GEICO Corporation from discovery already conducted is

belied by the fact that several discovery disputes concerning

"management reports" and the interrelationship between GEICO

Corporation and the other Defendants are also currently pending

before the Court. Accordingly, Defendants' Motion To Dismiss

will be denied at this time, but the Court will revisit the issue

of Plaintiffs' standing against GEICO Corporation at a later

time, if needed.

**III. Defendants' Motion To Stay Order Pending Appeal (D.I. 331)**

A. Parties' Contentions

Defendants filed a Petition for Permission to Appeal in the

---

[3] It is worth noting that Defendants make substantially the
same standing arguments in the present Motion To Dismiss as they
did when opposing amendment of the Complaint to add GEICO
Corporation as a defendant. In fact, Defendants largely relied
on the same affidavit of GEICO Corporation Corporate Secretary
William Robinson in support of their positions on both Motions.

United States Court of Appeals for the Third Circuit (the

"Petition") on January 13, 2010, challenging the propriety of the

Court's December 30, 2009 Order certifying this case as a class

action.  By their present Motion, Defendants ask the Court to

stay all proceedings and discovery until the Third Circuit has

ruled on Defendants' Petition.  (D.I. 331 ¶ 6.)  Additionally,

should Defendants' Petition be granted, Defendants seek

continuance of the stay until the appeal is finally disposed of.

(Id. ¶ 9.)  Defendants contend that a stay should be granted

because: (1) Defendants are likely to succeed on the merits of

the appeal; (2) Defendants will be irreparably harmed if a stay

is not granted; (3) Plaintiffs will not be prejudiced by a stay;

and (4) the public interest is promoted by a stay.  (Id. ¶¶ 10,

19.)  With respect to the likelihood of success of the merits,

Defendants argue that this case raises several issues of first

impression and it is likely the Third Circuit will agree with

Defendants' positions on those issues.  (Id. ¶ 19.)  According to

Defendants, Plaintiffs will not be prejudiced as this case is

still at an early stage.  (Id. ¶ 16.)  In contrast, Defendants

contend that they will be irreparably harmed should a stay not

issue because the class discovery Plaintiffs seek is extremely

time-consuming and expensive.  (Id. ¶ 15.)  Finally, Defendants

contend that a stay serves public interest because the private

information of Delaware citizens' PIP files will be protected

until class certification is finally determined, and because a stay will help prevent confusion and promote judicial economy. (Id. ¶ 18.)

Plaintiffs oppose a stay pending appeal of the Court's class certification order and contend that this is another effort by Defendants to delay discovery. (D.I. 333 ¶ 1.) Plaintiffs contend that much of the discovery sought- namely, discovery concerning GEICO Corporation, the new cause of action for tortuous interference with contractual relations, and Defendants' practices and procedures as they relate to Plaintiffs' claims of bad faith and breach of the covenant of good faith and fair dealing- will need to be conducted regardless of whether this case remains certified as a class action. (Id. ¶¶ 5,6,9.) With regard to discovery to identify the class members, Plaintiffs believe this information is available electronically, and that any potential confusion to the public concerning class membership can be avoided by an order that the parties hold off on actual notices being sent to class members. (Id. ¶¶ 7, 8.) Finally, Plaintiffs argue that the Court conducted a rigorous analysis before granting class certification, and that the Third Circuit is not likely to reverse. (Id. ¶ 11.)

B.  Legal Standard

Under Rule 23(f) of the Federal Rules of Civil Procedure, "[a] court of appeals may permit an appeal from an order granting

12

or denying class certification," but "[a]n appeal does not stay
proceedings in the district court unless the district judge or
the court of appeals so orders." Fed. R. Civ. P. 23(f).
Although any stay in district court proceedings pending appeal of
a class certification order should be sought first from the
district court, Newton v. Merril Lynch, Pierce, Fenner & Smith,
Inc., 259 F.3d 154, 165 n.6 (3d Cir. 2001), the Third Circuit has
not yet articulated a standard which district courts should
follow in ruling on a motion to stay pending appeal under Rule
23(f). Cases from other Circuits and district courts which have
addressed this issue suggest that in determining whether to stay
proceedings pending appeal under Rule 23(f), a court should
consider factors similar to those examined in the context of a
preliminary injunction motion. See Blair v. Equifax Check Serv.,
Inc., 181 F.3d 832, 835 (7th Cir. 1999)(noting in dicta that "a
stay would depend on a demonstration that the probability of
error in the class certification decision is high enough that the
costs of pressing ahead in the district court exceed the costs of
waiting. (This is the same kind of question that a court asks
when deciding whether to issue a preliminary injunction or a stay
of an administrative decision.)")(citations omitted); In re
Lorazepam & Clorazepate Antitrust Litig., 208 F.R.D. 1, 3 (D.D.C.
2002)(noting that a decision to stay pending a Rule 23(f)
petition is discretionary and should be informed by a flexible

application of the factors used to consider preliminary injunctive relief); see also In re Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd., 262 F.3d 134, 140 (2nd Cir. 2001)("[W]e hold that a stay will not issue unless the likelihood of error on the part of the district court tips the balance of hardships in favor of the party seeking the stay."). Accordingly, the Court will consider the same factors which generally guide the determination of whether a preliminary injunction should issue in the Third Circuit: "(1) a likelihood of success on the merits; (2) that [the moving party] will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." Kos Pharm., Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004) (citation omitted). Consistent with the principal that preliminary injunctions are considered to be "extraordinary relief," see id., a stay pending appeal under Rule 23(f) should not be granted as a matter of course. See Prado-Steiman ex rel. Prado v. Bush, 221 F.3d 1266, 1273 n.8 (11th Cir. 2000)("Rule 23(f) contemplates that in most cases discovery (at the very least, merits discovery) will continue notwithstanding the pendency of an appeal of the class certification order."); Blair, 181 F.3d at 835 (stating that interlocutory appeals under Rule 23(f) should not unduly retard the pace of litigation because

"stays will be infrequent").

C.  Discussion

Upon consideration of all relevant factors, the Court concludes that Defendants' Motion will be granted to the extent that discovery concerning class membership will be stayed. However, a stay of all proceedings pending Defendants' appeal is not warranted, and Defendants' Motion will be denied in all other respects.

Turning first to the likelihood of success on the merits, the Court must predict both the likelihood that the Third Circuit will grant Defendants' Petition, and the likelihood that the Third Circuit will agree with Defendants on the substantive merits. See In re Lorazepam, 208 F.R.D. at 4 (stating that an analysis of likelihood of success on the merits has two layers). In the Court's view, Defendants are likely to be granted review under Rule 23(f). In Newton, the Third Circuit emphasized that its decision of whether to exercise interlocutory review under Rule 23(f) is discretionary, but "[i]f granting the appeal . . . would permit us to address (1) the possible case-ending effect of an imprudent class certification decision (the decision is likely dispositive of the litigation); (2) an erroneous ruling; or (3) facilitate development of the law on class certification, then granting the motion would be appropriate." Newton, 259 F.3d at 165. In 2008, the Third Circuit decided In re Hydrogen Peroxide

15

Antitrust Litig., 552 F.3d 305 (3d Cir. 2008), which provided guidance in the type of "rigorous analysis" district courts must perform before certifying a class action under Rule 23.  Due to the significant nature of the Hydrogen Peroxide decision, and the fact that it is less than two years old, the Court believes this case may facilitate the development of class certification case law, and thus, that the Third Circuit is likely to grant Defendants' Petition.

The more difficult task is to assess the likelihood that Defendants will succeed on the substantive merits of their arguments.  Defendants cite the following as issues of first impression raised by their appeal: (1) whether Ms. Anderson can adequately represent the classes under Rule 23(a)(4); (2) whether Ms. Anderson can represent a class of plaintiffs where she has no standing; (3) whether a class action may be certified where the evidence shows there is no objective way to define the classes; and (4) whether a court can certify a case as a class action in the absence of a trial plan.  In the Court's view, these issues do not so much represent novel legal questions as they do disagreements with the determinations the Court made in its December 30, 2009 Memorandum Opinion on class certification. Certainly, however, the Court recognizes that the Third Circuit may disagree with its findings on these issues.

Looking next to the risk of prejudice to Plaintiffs, the

Court disagrees with Defendants' assertion that Plaintiffs would not be prejudiced by a stay. This case was initiated approximately four years ago, and staying all proceedings pending a final disposition by the Third Circuit would likely cause more significant delays in the resolution of this long-standing litigation. Even if the class certification order were to be reversed in its entirety, individual plaintiffs Ms. Anderson and Mr. Johnson would maintain individual causes of action that need to be resolved. Thus, the potential prejudice to Ms. Anderson and Mr. Johnson is substantial. Contrary to Defendants' assertion, that Plaintiffs are still seeking discovery and that there is no Scheduling Order in place does not indicate that Plaintiffs would not suffer prejudice by a stay. Rather, in the Court's view, that this action has been pending for several years, that there are still outstanding discovery matters, and that there was a suspension of the scheduling deadlines reflect the contentious nature of this action and the parties' difficulty in advancing discovery without court intervention. When understood in this light, the Court is concerned about prolonging an already difficult and protracted discovery process.

On the other hand, the Court is cognizant that there is potential for Defendants to be irreparably harmed if all proceedings are permitted to go forward. Defendants represent that production of only part of the class discovery Plaintiffs

17

seek, from 2001 through 2008, would take over a year and cost in excess of one million dollars. These costs are appreciable. The Court agrees that in this case, if the Third Circuit were to modify or reverse part of the certification order, the class definition and class size could be significantly impacted.

In sum, upon weighing the uncertainty of Defendants' likelihood of success on the merits, the prejudice that Plaintiffs would suffer if all proceedings were to be stayed, and the potential harm to Defendants if potentially unnecessary discovery on class membership were to proceed, the Court concludes that the best course is to stay discovery on class membership only, but to permit the case to proceed in all other respects, including merits discovery. Additionally, the public interest will be best served by this solution. Delaware citizens' PIP files will be protected until class certification is finally determined, and any confusion of notice will be avoided. At the same time, the public interest in resolution of this case, especially if the Third Circuit determines that it will remain a class action, will be furthered by allowing merits discovery to proceed.

## IV.  **Plaintiffs' Motion For Order To Show Cause And Sanctions Against Berkshire Hathaway, Inc. (D.I. 193)**

### A.  Parties' Contentions

By its Motion, Plaintiffs request issuance of a Rule To Show Cause why Berkshire should not be held in contempt of Court for

18

failure to comply with the Court's February 20, 2009 Memorandum Order.[4] (D.I. 193, at 1.) Plaintiffs essentially contend that Berkshire's counsel was non-responsive and non-committal with regard to when the documents and privilege log subject to the Court's Order would be produced. (Id. at 2.) For example, Plaintiffs contend that on March 19, 2009, Berkshire's counsel indicated that production "will be completed on or before April 7, 2009," but that on April 8, 2009, Berkshire's counsel indicated that review and bates numbering was just beginning, and that the new estimated date for production was April 27, 2009. (Id.) Plaintiffs argue that Berkshire should be held in contempt and should be held to have waived any privilege for its failure to produce any documents more than seven weeks after the Court's Order. (Id. at 2-3.)

Berkshire contends that sanctions are inappropriate in this instance for several reasons. First, Berkshire contends that Plaintiffs have failed to include a certification that they conferred or attempted to confer in good faith before seeking

---

[4] The February 20, 2009 Memorandum Order granted Berkshire's Motion To Quash Plaintiffs' Subpoena Seeking The Production Of Documents And A Corporate Deponent, except as to the following documents: 1) documents relevant to the Defendants' business practices pertaining to PIP claims, cost containment efforts, and bill processing systems; and 2) documents that provide information in a reporting context on the financial aspects of claim handling and cost containment that it receives from Defendants in the course of their business relationship. (D.I. 192.) Berkshire was also ordered to prepare and produce a privilege log for documents subject to a privilege. (Id.)

19

court action, as required by Rule 37(a)(1). (D.I. 201 ¶ 6.) Second, Berkshire contends that the Court's February 20, 2009 Order did not provide a deadline for production, and that Berkshire should not be sanctioned for failing to meet its own "aspirational deadline." (Id. ¶ 7.) Finally, Berkshire contends that sanctions are not warranted because Plaintiffs have not been prejudiced, and because Berkshire has not engaged in any previous demonstrated misbehavior. (Id. ¶¶ 8-9.)

In reply, Plaintiffs contend that Berkshire's delay is unreasonable, and that the limited documents produced by Berkshire are heavily redacted and thus not in compliance with the Court's Order. (D.I. 205.) Berkshire subsequently filed a Sur-Reply, contending that document production was substantially completed on April 24, May 4, and May 14, 2009, and that over 1500 pages of documents were produced. (D.I. 220, at 1.) Further, Berkshire contends that it amended its privilege log in response to Plaintiffs' objections, providing a final log on May 18, 2009. (Id.) Plaintiffs respond that over sixty percent of the pages produced contain redactions, and that Berkshire has improperly redacted documents as irrelevant. (D.I. 221.)

B. Discussion

The Court declines to issue a Rule To Show Cause why Berkshire should not be held in contempt for failure to comply with the Court's February 20, 2009 Order. As Berkshire notes,

20

the Order did not specify a deadline by which production was to be completed, and the Court does not find the two to three month delay to be so unreasonable as to warrant sanctions.  Moreover, Plaintiffs essentially changed the basis of their request for a Rule To Show Cause: originally Plaintiffs contended that Berkshire's failure to comply with the Court's Order related to the timeliness of productions, but later contended that Berkshire's failure to comply related to the specificity of the privilege log and redactions taken for irrelevance.  The Court does not consider the issue of Berkshire's privilege log and redactions to be sufficiently briefed to make a determination on Berkshire's compliance.  In addition, the extent to which any dispute still exists is unclear; in the time since this Motion was filed, the Court has issued other substantive opinions, including one on class certification, and several other discovery issues will be resolved in this Memorandum Opinion.  If the parties are unable to resolve any remaining issues in light of the current procedural posture of this action and the resolution of other pending discovery disputes, Plaintiffs may renew this Motion with more specificity.

## V.  Defendants' Motion For Protective Order (D.I. 256)

### A.  Parties' Contentions

Defendants' Motion concerns a Rule 30(b)(6) deposition noticed by Plaintiffs on June 24, 2009 (D.I. 248).  Defendants

21

note that thirty-six areas of inquiry were noticed, and seek a protective order as to the entire deposition, or in the alternative, a protective order as to Topics 1-21, 28, 30-33, and 35-36. (D.I. 256, at 1.) Defendants specifically focus on the history of discovery efforts in this action, and contend that a protective order for the entire deposition is appropriate because Plaintiffs have had ample opportunity to obtain the information sought, but failed to do so. (Id. at 6.) Further, Defendants contend that the information sought is unduly burdensome and duplicative of previous productions. (Id. at 6-7.) With regard to Topics 1-21, 28, and 30-33, Defendants repeat these general allegations, with the addition of more particularized details. (See id. at 8-10.)

Plaintiffs dispute that they have had ample opportunity to obtain the information sought, contending that discovery is not yet closed, and that any delays in the completion of discovery have been occasioned by Defendants' delay tactics. (D.I. 282, at 2-5.) Plaintiffs further contend that all contested topics of the 30(b)(6) deposition are appropriate for discovery. (Id. at 7-10.)

B.     Discussion

Rule 26(c) of the Federal Rules of Civil Procedure provides that "[a] party or any person from whom discovery is sought" may move for an order to protect itself from "annoyance,

embarrassment, oppression, or undue burden or expense."  Fed. R.
Civ. P. 26(c)(1).  The movant must demonstrate good cause for the
issuance of a protective order.  Id.  "Good cause is established
on a showing that disclosure will work a clearly defined and
serious injury to the party seeking closure.  The injury must be
shown with specificity."  Pansy v. Borough of Stroudsburg, 23
F.3d 772, 786 (3d Cir.1994) (quoting Publicker Indus. Inc. v.
Cohen, 733 F.2d 1059, 1071 (3d Cir.1984)).  In determining
whether there is good cause, courts will balance the party's need
for the information against the resulting injury of disclosure.
Id. at 787.  Further, "the court must limit the frequency or
extent of discovery" if it determines that "the discovery sought
is unreasonably cumulative or duplicative," "the party seeking
discovery has had ample opportunity to obtain the information by
discovery in the action," or "the burden or expense of the
proposed discovery outweighs its likely benefit."  Fed. R. Civ.
P. 26(b)(2)(C).

    As an initial matter, the Court cannot accept Defendants'
contention that Plaintiffs' Rule 30(b)(6) notice itself was
untimely and abusive, because all deadlines under the Scheduling
Order were suspended on November 10, 2008.[5]  (D.I. 166.)  The
Court will address each category of information sought in the

_____

[5] The parties will be ordered to confer and submit a proposed
revised Scheduling Order.

23

Rule 30(b)(6) notice. Defendant provides no specific arguments with respect to Topics 22-27, 29, and 34, and accordingly, no protective order will be issued with respect to those topics.

Topics 1-3 pertain to Defendants' reasons for switching to the Fair Isaac computer review system. Defendants claim that they have already produced thousands of documents relating to their database vendors Medata and Fair Isaac, and that Plaintiffs have already deposed witnesses about the use and details of these databases. Plaintiffs contend that Defendants' counsel repeatedly objected to questions on this topic, and that documents produced after discovery suggest reasons why Defendants switched to Fair Isaac. Defendants appear to have produced a substantial number of documents concerning the transition to Fair Isaac (see D.I. 285, at 5), and Plaintiffs did pose questions of this nature to a previous 30(b)(6) deponent (id., Ex. 3). Accordingly, the Court agrees that Plaintiffs' 30(b)(6) notice with regard to this topic is duplicative and unduly burdensome to Defendants.

Topics 4-12 pertain to statements contained on Defendants' annual corporate reports. Defendants contend that these annual statements were produced in May 2008, and that the burden of preparing a witness to testify on 1600 pages of these statements is extremely burdensome, especially in light of their limited relevance. Plaintiffs contend that they are seeking to discuss

three issues: (1) statements concerning the sharing of services
by Defendants and the "interlocutory charge agreement" referenced
in the reports; (2) statements that GEICO Corporation provides
"advisory services for an annual fee"; and (3) income and profits
of the Defendants. The Court agrees that the interrelationship
of Defendants is relevant, and additionally notes that since this
Motion was filed, GEICO General and GEICO Casualty have been
dismissed as parties to this action. Accordingly, the Court
concludes that no good cause exists for a protective order with
respect to these topics.

Topics 13-15 pertain to profits earned by Defendants.
Defendants contend that it is irrelevant, burdensome and
duplicative to produce a witness to testify about four companies'
net and gross profits earned, premiums collected, and PIP claims
paid since 1994. Since Defendants filed this Motion, GEICO
General and GEICO Casualty have been dismissed as parties, and
the Court has certified the Passive Modality and Geographic
Reduction classes with respect to Counts III, IV, and VI. In
light of these Orders, the Court concludes that Defendants have
not shown good cause for issuance of a protective order on these
topics.

Topics 16-21 pertain to the databases used in computer
review systems. Plaintiffs contend that they are entitled to
seek discovery on the number of bills that make up the Fair Isaac

and Medata databases and the threshold number of bills sufficient
to process a claim for geographic reductions, and that they have
not previously sought discovery on this information.  However,
the Court is persuaded that the nature of these topics is not
"information known or reasonably knowable to [Defendants]", Fed.
R. Civ. P. 30(b)(6), and would necessarily require testimony from
Fair Isaac and Medata witnesses.

Topics 28 pertains to distinctions in how PIP claims are
processed and administered by Defendants.  Defendants contend
that this is duplicative of Plaintiffs' March 2008 request, but
Plaintiffs contend that Defendants had objected to such discovery
as irrelevant.  Although the Court agrees that the request
appears duplicative, the information sought is relevant and the
Court is unable to determine whether and to what extent
Defendants have given discovery on this topic.  Accordingly, no
good cause exists for issuance of a protective order on this
topic.

Topics 30-33 seek to explore the relationship between and
among GEICO Corporation and its subsidiaries, distinctions in how
Defendants market insurance products, the purpose and terms of
any intercompany charge agreement between or among Defendants,
and the purpose and terms of any investment advisory agreements
between and among Defendants.  Defendants contend that Plaintiffs
have had ample opportunity for this discovery, and that

26

Plaintiffs' requests are irrelevant. In light of the Court's decision on Defendants' Motion To Dismiss GEICO Corporation, the Court declines to enter a protective order on these topics.

Topic 35 pertains to management reports from GEICO Indemnity and Government Employees Insurance Company to its parent or affiliate companies, including reports to GEICO Corporation. Defendants contend that such reports are irrelevant. In light of the Court's decision on Defendants' Motion To Compel, the Court declines to enter a protective order on this topic.

Topic 36 pertains to the basis for the assertion that use of an 80th percentile for geographic reduction is an industry standard. Defendants contend that this topic is cumulative and duplicative of a previous 30(b)(6) deposition. While this was indeed a topic of a previous deposition, the Court has reviewed the relevant portion of that transcript (D.I. 282, Ex. 21) and notes that the witness was unable to provide any basis for Defendants' decision to use the 80th percentile or to believe that it was an industry standard. Accordingly, no good cause exists for issuance of a protective order on this topic.

In sum, the Court will grant Defendants' Motion with respect to Topics 1-3 and 16-21 of Plaintiffs' 30(b)(6) deposition notice. Defendants' Motion will be denied as to all other Topics.

**VI. Plaintiffs' Motion To Compel Defendants' Production Of Documents (D.I. 286)**

27

## A.   Parties' Contentions

By its Motion, Plaintiffs ask the Court to order Defendants to produce the following categories of management reports dating from June 26, 2001 to the present: 1) monthly and quarterly reports provided to Berkshire; 2) semi-annual and annual presentations made to Berkshire; 3) Medata and Fair Isaac reports tracking effectiveness and productivity; 4) regular reports concerning restored benefits; 5) weekly reports including "report card stats for the PIP adjustors"; and 6) "scorecards" and "quartile reports." (D.I. 286, at 9-10.)  Plaintiffs contend that all of these categories of management reports are encompassed within requests made in Plaintiffs' formal requests for production.[6]  (Id. at 3-4.)  Defendants answered Plaintiffs' formal requests by stating, inter alia, that the requests were vague and ambiguous, were not likely to lead to discoverable information, that any responsive documents have been produced, and that Defendants are not in possession of any responsive documents.  (Id., Ex. 5.)  Plaintiffs contend that, in spite of these answers and explicit representations by Defendants' counsel that management reports do not exist, the management reports do exist and are discoverable.  (Id. at 7-8.)  Specifically,

---

[6] Plaintiffs contend that several requests encompass management reports, including Request Nos. 1, 19, 20, 21, 22, 44, 55, 58, 59, 63, 64, 65, and 66 in the First Set of Requests for Production, and Request Nos. 1, 2, 3, 4, 5, 6, 7, 8, and 9 in the Second Set of Requests for Production.  (D.I. 286, Ex. 5.)

Plaintiffs note that Troy Arthur, one of Defendants' 30(b)(6) deponents, mentioned management reports, that other discovery demonstrates that Defendants regularly use management reports, and that Berkshire actually produced quarterly and semi-annual reports. (Id. at 1-2, 4-6.)

With regard to the quarterly management reports and semi-annual presentations, Defendants respond that Plaintiffs never formally requested those categories of documents (and accordingly, have failed to identify the specific request(s) to which they would have been responsive). (D.I. 294, at 7.) Defendants contend that all responsive Fair Isaac and Medata reports have already been produced, and that the "scorecards," "quartile reports," and weekly reports including "report card stats for the PIP adjustors" are irrelevant and/or not responsive to any document request propounded on Defendants. (Id. at 7-8.)

C.   Discussion

The Court accepts Defendants' representations that all responsive Medata and Fair Isaac reports and weekly reports concerning restored benefits have been produced to Plaintiffs. Upon review of the documents referencing "scorecards," "quartile reports," and weekly reports including "report card stats for the PIP adjustors," and taking into account Defendants' explanations are to why these documents are irrelevant, the Court agrees that these three categories of documents do no appear reasonably

calculated to lead to the discovery of admissible evidence.
Accordingly, Plaintiffs' Motion To Compel will be denied with
respect to Medata and Fair Isaac reports tracking effectiveness
and productivity, weekly reports concerning restored benefits,
weekly reports including "report card stats for the PIP
adjustors," "scorecards," and "quartile reports."

      The Court will grant Plaintiff's Motion To Compel with
respect to monthly and quarterly reports provided to Berkshire
and semi-annual and annual presentations made to Berkshire.
Included in Plaintiffs' First Set Of Document Requests were the
following requests:

      Request No. 44:    Any and all reports or documents from
      any Defendants' regional, divisional, or branch offices of
      any kind, that purport to measure performance of employees,
      vendors, branch office or unit compliance with medical cost
      containment or medical cost management procedures, manuals,
      or guidelines from June 26, 2001 to the present.

      Request No. 58:    Each Defendant's quarterly reports
      prepared by regional offices assigned to Delaware, dating
      June 26, 2001 to the present, which evidence the handling of
      PIP medical claims

(D.I. 286, Ex. 5.)  Admittedly, these requests do not explicitly
request monthly and quarterly reports provided to Berkshire and
semi-annual and annual presentations made to Berkshire.
Defendants' position that they did not consider such documents to
be responsive to these requests is somewhat untenable, however,
when one considers that Berkshire, Defendants' parent company,
produced over 1000 pages of quarterly reports and semi-annual

presentations in response to the Court's February 20, 2009 Order
to produce (1) documents relevant to the Defendants' business
practices pertaining to PIP claims, cost containment efforts, and
bill processing systems, and (2) documents that provide
information in a reporting context on the financial aspects of
claim handling and cost containment that it receives from
Defendants in the course of their business relationship.

In addition, Defendants' conduct with regard to Plaintiffs'
attempts to obtain management reports is troubling.  In
depositions of Defendants' 30(b)(6) witnesses, Defendants'
counsel repeatedly represented that "there are no management
reports."  Defendants contend that these statements were limited
only to management reports concerning the monitoring of PIP
claims and cost containment measures relating to PIP claims, as
that was a noticed topic of the depositions.  This explanation is
not entirely satisfactory in light of the following exchange
between counsel at Valerie Coffey's deposition:

> Mr. Cross [Plaintiffs' Counsel]: Okay, I'm not limiting my
> question to simply what can be spit out of AutoAdvisor or
> SmartADvisor.  I'm saying doesn't the management at GEICO
> look at the claims that it is paying?
>
> Mr. Church [Defendants' Counsel]: Object.
>
>  *  *  *
>
> Mr. Cross: . . . And how do they look at that?  What is it -
> where do they get those reports?
>
> Mr. Church: Object.  She didn't say they get the reports.

Mr. Cross: How do they get that information?

Ms. Coffey: I don't know how they get the information.

Mr. Cross: Does somebody at GEICO know how they get that information?

Ms. Coffey: I do not know if there's somebody at GEICO that woiuold be able to tell you how they got that information...

Mr. Cross: All right.  So you don't know who might know and you don't know where they might get that information?

Ms. Coffey: I can tell you you cannot get it out of bill review.

      *    *    *

Mr. Church: We answered Interrogatories in the case and have explained the answer to this question, and I'll take five minutes to see if I can find it.  I'm weary of this.  We have provided the answer to this question.  There are no management reports.  I know you don't believe it, but that's the way it is.

Mr. Simon [Plaintiffs' Counsel]: Are you using a defined term when you say that, George?

Mr. Church: What?

Mr. Simon: Are you using a defined term, management reports?

Mr. Church: There's no - there's no reports.

(D.I. 286, Ex. 4, Coffey Dep. Tr.)  Accordingly, the Court will order Defendants to produce the requested monthly and quarterly reports provided to Berkshire and semi-annual and annual presentations made to Berkshire.

## VII. Conclusion

For the reasons discussed, Defendants' Motion To Dismiss is denied.  Defendants' Motion To Stay is granted in part and denied

in part.  Plaintiffs' Motion For Rule To Show Cause is denied.
Defendants' Motion For A Protective Order is granted in part and
denied in part.  Plaintiffs' Motion To Compel is also granted in
part and denied in part.

An appropriate Order will be entered.