IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

KERRY JOHNSON, et al.,

    Plaintiffs,

v.

GEICO CASUALTY CO., et al,

    Defendants.

Civil Action No. 06-408-RGA

MEMORANDUM OPINION

Richard H. Cross, Jr., Esq. (argued), Christopher P. Simon, Esq., Kevin S. Mann, Esq., Cross & Simon, LLP, Wilmington, DE; William H. Narwold, Esq., Motley Rice LLP, Hartford, CT, attorneys for Plaintiffs.

Paul A. Bradley, Esq., Maron Marvel Bradley & Anderson, LLC, Wilmington, DE; George M. Church, Esq. (argued), Laura Cellucci, Esq., Miles & Stockbridge P.C., Baltimore, MD; Meloney C. Perry, Esq., Perry Law PC, Dallas, TX, attorneys for Defendants.

September 24, 2015

1

*/s/ Richard G. Andrews*
**ANDREWS, U.S. DISTRICT JUDGE:**

Presently before the Court are Defendants' Motion to Decertify the Classes (D.I. 700), related briefing (D.I. 701, 704, 708, 715, 717), Plaintiffs' Motion for Wilmington Pain & Rehabilitation Center and Rehabilitation Associates, P.A. to Intervene and Substitute as Class Representatives (D.I. 726), and related briefing (D.I. 727, 729, 730, 737). The Court heard oral argument on the motion to decertify on May 27, 2015. (D.I. 724).

For the reasons discussed herein, Plaintiffs' motion to substitute new class representatives is **DENIED**. Defendants' motion to decertify the classes is **GRANTED**.

## BACKGROUND

At the center of the complaint is the allegation that Geico uses arbitrary computer-based rules to determine whether to pay personal injury protection ("PIP") benefits, and that it will not change such determinations once made. Delaware law requires that Geico pay "reasonable and necessary" PIP benefits. 21 *Del. C.* § 2118(a)(2)(a).

The factual and procedural background leading up to class certification is set forth in the certification opinion, *Johnson v. Geico Casualty Co.*, 673 F. Supp. 2d 255, 263-65 (D. Del. 2009). At that time, on Plaintiffs' motion for class certification and over Defendants' motion to deny certification, the Court certified two classes to pursue counts III (bad faith breach of contract), IV (breach of duty of good faith and fair dealing), and VI (consumer fraud) of the Second Amended Complaint (D.I. 316), under Federal Rule of Civil Procedure 23(b)(3). The classes were certified as follows:

> All persons, who, during the period from March 21, 1996 to date of final judgment: (a) submitted first-party medical expense claims to Defendants pursuant to Defendants' Delaware automobile insurance policy's PIP coverage; (b) had their claim submitted to Defendants' computer review system; (c) received or were tendered no payment on the

2

submitted medical expenses for treatment of a passive modality (based on Defendants' rule declaring that the treatment would "provide no therapeutic benefit during the chronic period" of the diagnosed conditions); and (d) received or were tendered an amount less than the stated policy limits (the "Passive Modality Class").

All persons, who, during the period from October 7, 1994 to date of the final judgment: (a) submitted first-party medical expense claims to Defendants pursuant to Defendants' Delaware automobile insurance policy's PIP coverage; (b) had their claim submitted to Defendants' computer review system; (c) received or were tendered partial payment but in an amount less than the submitted medical expenses (based on the "80th percentile [cap]"); and (d) received or were tendered an amount less than the stated policy limit[s] (the "Geographic Reduction Class").

*Id.* at 266. Defendants filed a petition to appeal the Court's certification order. *See* FED. R. CIV. P. 23(f). The Court of Appeals denied the petition. (D.I. 340).

The classes were certified before any trial plan was filed. *Johnson*, 673 F. Supp. 2d at 267. At the time of certification, it was also "unclear . . . whether a determination of damages . . . would depend in part on individual class members' circumstances." *Id.* at 270. Plaintiffs represented at that time that computation of damages would not depend on each claimant's individual circumstances. (D.I. 224 at 73).

Plaintiffs have since proposed a trial plan and made several submissions with respect to damages. (D.I. 432, 531-1, 536, 537). Plaintiffs propose that the measure of damages for these claims is "the amount of the claims Defendants wrongfully reduced, denied or delayed to class members, monies GEICO retained for its own benefit." (D.I. 432 at p. 22). Plaintiffs argue that this amount is the difference between what the medical providers billed and what Geico paid. (D.I. 724 at 19-20, 26). Plaintiffs point to the Court's note at certification that "[t]he relevant injury is the denial, reduction or delay of full PIP benefits without reasonable investigation and justification" to argue that class members need not prove out-of-pocket payments to demonstrate injury. (D.I. 432 at p. 23; *see Johnson*, 673 F. Supp. 2d at 277-78).

3

Plaintiffs propose presenting expert testimony to prove damages as follows:

> Damages evidence will be presented to the jury through a summary prepared from the [Medata and Fair Isaac] extracts . . . pursuant to Federal Rule of Evidence 1006. The extracts will show the proof of loss, the amount of the reduction or denial and basis for the reduction or denial. Other evidence of profits and statutory penalties will be presented through direct documents or summaries. There will be no extrapolations or averaging; that is, evidence of damages will be presented for each and every class member.

(D.I. 432 at p. 6). Plaintiffs served Defendants with the expert report of Charles Setzfand and provided it to the Court in a status report. (D.I. 531). Mr. Setzfand used the electronic medical bill review data to calculate geographic reductions and passive modality reductions based on reason codes, and also calculated statutory penalties on those amounts. (*Id.*).

In May 2013, Defendants moved for summary judgment as to then-class representative Sharon Anderson's individual claims. (D.I. 579). On March 26, 2014, the Court granted Defendants' motion as to consumer fraud and tortious interference with contract. (D.I. 655 at pp. 6-10). On June 16, 2014, the Court granted Defendants' motion as to breach of contract, bad faith breach of contract, and the breach of good faith and fair dealing. (D.I. 675). On September 12, 2015, the Court granted Defendants' motion as to the declaratory judgment count. (D.I. 695). All three certified counts are thus currently without a class representative. On June 15, 2015, Plaintiffs moved to substitute Wilmington Pain & Rehabilitation Center and Rehabilitation Associates, P.A. as class representatives. (D.I. 726).

## LEGAL STANDARDS

### A. Substituting Class Representative

When a named class representative becomes inadequate after the class has been certified, the court may grant leave to substitute new representatives. *Goodman v. Lukens Steel Co.*, 777

4

F.2d 113, 124-25 (3d Cir. 1985); *see also* 1 McLaughlin on Class Actions § 4:36 (11th ed.) ("[C]ourts have consistently granted plaintiffs leave to substitute new representatives where ... a class has already been certified and the certified representative becomes unavailable (*e.g.*, dies, decides not to pursue the claim, becomes inadequate for another reason, etc.").

Federal Rule of Civil Procedure 24 provides: "On timely motion, the court may permit anyone to intervene who ... has a claim or defense that shares with the main action a common question of law or fact." FED. R. CIV. P. 24(b)(1)(B). In determining whether to allow intervention, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." FED. R. CIV. P. 24(b)(3).

## B. Decertification

"Under Rule 23(c)(1), District Courts are required to reassess their class rulings as the case develops." *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 140 (3d Cir. 1998). "A [certification] determination once made can be altered or amended before the decision on the merits if, upon fuller development of the facts, the original determination appears unsound." FED. R. CIV. P. 23(c) advisory committee's note. "[S]uch an order, particularly during the period before any notice is sent to members of the class, is inherently tentative." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982) (internal quotation omitted).

Class certification is determined under federal statutory law, even when a federal court sits in diversity. *Huber v. Taylor*, 469 F.3d 67, 82 (3d Cir. 2006). Before a proposed class can be certified, plaintiffs must establish that all four prerequisites of Rule 23(a), and at least one part of Rule 23(b), of the Federal Rules of Civil Procedure are met. *Johnston v. HBO Film Mgmt.*, 265 F.3d 178, 183 (3d Cir. 2001). Rule 23(a) requires that:

5

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a). Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).[1] The district court must conduct a "rigorous analysis" when determining whether Rule 23's requirements have been met. *Gen. Tel. Co.*, 457 U.S. at 161.

The Third Circuit has provided detailed guidance for district courts conducting this "rigorous analysis." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305 (3d Cir. 2008). A party's assurances that it plans to meet Rule 23's requirements are insufficient. *Id.* at 318. Rather, the Court is required to make a "definitive determination" that each requirement of Rule 23 has been met. *Id.* at 320. To the extent factual determinations are necessary, they must be made by a preponderance of the evidence. *Id.* Because Rule 23 does not merely establish pleading rules, the Court may make a "preliminary inquiry into the merits," and "may consider the substantive elements of the plaintiffs' case in order to envision the form that a trial on those issues would take." *Id.* at 316-17 (internal citations omitted); *see also Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 166 (3d Cir. 2001) ("A class certification decision requires a thorough examination of the factual and legal allegations."). If the Court grants class certification, the order must include "a clear and complete summary of those claims, issues, or

---

[1] The Court and parties appear to agree that certification is not warranted under Rule 23(b)(1) or (2). *See Johnson*, 673 F. Supp. 2d at 270.

6

defenses subject to class treatment." *Wachtel v. Guardian Life Ins. Co. of Am.*, 453 F.3d 179, 184 (3d Cir. 2006).

## ANALYSIS

### A. Substituting Class Representative

Plaintiffs seek to substitute Wilmington Pain & Rehabilitation Center and Rehabilitation Associates, P.A., which are medical treatment providers, as class representatives. (D.I. 727 at p. 3). Plaintiffs maintain that nothing in the class definitions limit the classes to policyholders. (*Id.* at p. 15). Plaintiffs rely on *DeMaria v. Horizon Healthcare Services, Inc.* to argue that a healthcare provider has standing to pursue claims related to systematic denial of insurance claims based on computer database recommendations. (*Id.* at p. 16 (citing 2015 WL 3460997 (D.N.J. June 1, 2015))).

Defendants argue that healthcare providers are not included in the certified class, and therefore cannot serve as class representatives. (D.I. 729 at 16). I agree. A class representative must be a member of the class. *Bailey v. Patterson*, 369 U.S. 31, 32-33 (1962). For nine years this case has been litigated on behalf of Geico policyholders. For example, in opposing Defendants' motion to decertify the class, Plaintiffs themselves described the classes as "policyholders whose claims were denied solely based on the '80th percentile' cap" and "policyholders whose claims were denied solely for date of treatment." (D.I. 704 at 9, 14). The fact that the definitions do not expressly state that medical providers are excluded from the classes does not mean they are class members.

In addition, *DeMaria* is distinguishable because, in that case, the suit was brought on behalf of healthcare providers at the outset. *See DeMaria*, 2015 WL 3460997, at *1. Whether or

7

not a provider can have standing is not relevant to whether providers are members of the certified classes in this case. I find that they are not, and never have been. I will therefore deny Plaintiffs' motion to substitute Wilmington Pain & Rehabilitation Center and Rehabilitation Associates, P.A. as new class representatives.

**B.      Decertification**

*1.      Bad Faith Breach of Contract (Claim III)*

Defendants contend that bad faith breach of contract is not suitable for treatment as a class action because common issues do not predominate. (D.I. 701 at 9). Defendants note that the Court did not certify the breach of contract claim because individualized inquiries would be required to determine if the medical expenses were reasonable and necessary. (*Id.* at 9-10). As I previously held, bad faith breach of contract requires proving breach of contract. (D.I. 675 at p. 5). Defendants maintain that bad faith breach of contract therefore cannot proceed on a class-wide basis because the same individualized inquiries would be required. (D.I. 701 at 10).

Plaintiffs respond that the issue is whether common issues predominate, not whether there are any individual issues at all. (D.I. 704 at 33). Plaintiffs note that the Court previously found that common issues did predominate and therefore certified the classes. (*Id.*). Plaintiffs argue that they will show that Geico would have paid the claims in full absent the passive modality and 80th percentile rules. (*Id.* at 35). Therefore, Plaintiffs maintain that "no review of damages in individual claims will be required." (*Id.* at 36).

The Court has already determined that the breach of contract claim is not suitable for class treatment because, even assuming that Geico's policies resulted in the classes' claims being "systematically denied and reduced, . . . individualized inquiries would be required to determine

8

whether each class member's individual claim was actually medically necessary and their expenses reasonable." *Johnson*, 673 F. Supp. 2d at 273. At the time the Court certified the bad faith breach of contract count, it did not have Plaintiffs' proposed plan for demonstrating damages. It now does. Plaintiffs' damages expert did not consider whether the billed medical expenses were reasonable or necessary. (D.I. 537-1 at 66). Plaintiffs have not identified any means to demonstrate that "Geico would have paid the claims in full absent the passive modality and 80th percentile rules." (D.I. 704 at 35). Therefore, just as with the breach of contract claim, individualized inquiries into each class member's medical expenses would be required.

2. *Breach of Good Faith and Fair Dealing (Count IV)*

Defendants argue that proving breach of good faith and fair dealing requires establishing that, had the parties thought to have negotiated an issue, they would have clearly agreed to incorporate that issue into the contract itself. (D.I. 701 at 10-11). They argue that I previously held that an actual ability to negotiate is required. (*Id.* at 11). Because insurance contracts are contracts of adhesion, they cannot be negotiated. (*Id.*). Defendants maintain that Plaintiffs therefore cannot prove breach of good faith and fair dealing. (*Id.*).

Plaintiffs respond that Defendants misstate the law. (D.I. 704 at 36). Plaintiffs argue that Delaware law does not require proving that the parties had the ability to negotiate the contract. (*Id.*).

> Where an insurer fails to investigate or process a claim or delays payment in bad faith, it is in breach of the implied obligations of good faith and fair dealing underlying all contractual obligations. A lack of good faith, or the presence of bad faith, is actionable where the insured can show that the insurer's denial of benefits was "clearly without any reasonable justification."

9

*Tackett v. State Farm Fire & Cas. Ins. Co.*, 653 A.2d 254, 264 (Del. 1995). "[P]arties are liable for breaching the covenant when their conduct frustrates the 'overarching purpose' of the contract by taking advantage of their position to control implementation of the agreement's terms." *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005). Plaintiffs argue that the overarching purpose of PIP insurance is to "prevent the financial hardship and damage to personal credit ratings that can result from the unjustifiable delays of . . . payments." (D.I. 704 at 8 (quoting 21 *Del. C.* §2118B(a))).

I agree with Plaintiffs that the ability to negotiate the contract is not necessary for a breach of good faith and fair dealing claim. The reference in my previous opinion to what the parties "would have agreed to" did not necessary contemplate an actual negotiation. Rather, breach of good faith and fair dealing relates to "understandings or expectations that were so fundamental that [the parties] did not need to negotiate about those expectations." *Katz v. Oak Indus. Inc.*, 508 A.2d 873, 880 (Del. Ch. 1986).

That does not, however, resolve the question of whether common issues predominate. In its prior opinion, the Court concluded, "Individualized issues of reasonableness and necessity of claimed benefits do not predominate because Defendants' conduct towards Plaintiffs may still amount to a breach of the duty of good faith and fair dealing even if *no* underlying breach of contract ultimately occurs." *Johnson*, 673 F. Supp. 2d at 275 (emphasis in original). From this, the Court concluded that "if Defendants employed arbitrary, systematic procedures such that [class members] had their bills denied or reduced as a result of lack of fair dealing, such conduct applies on a class-wide basis, and individual issues are not predominant." *Id.* The revised trial

10

plan (D.I. 432) and submissions related to damages (D.I. 531-1, 536, 537) have caused me to reconsider these two propositions.

As the Court held at certification, showing liability under these claims does not require proof of a breach of contract, *i.e.*, a denial of reasonable and necessary PIP benefits. *Johnson*, 673 F. Supp. 2d at 273-74, 275. "Where an insurer fails to investigate or process a claim or delays payment in bad faith, it is in breach of the implied obligations of good faith and fair dealing underlying all contractual obligations." *Tackett*, 653 A.2d at 264. The implied covenant of good faith and fair dealing "is triggered when the defendant's conduct does not violate the express terms of the agreement but nevertheless deprives the plaintiff of the fruits of the bargain." *Amirsaleh v. Bd. of Trade of City of New York, Inc.*, 2009 WL 3756700, at *4 (Del. Ch. Nov. 9, 2009). Whether the requested PIP benefits were reasonable and necessary does not inform whether the rules were justified or the investigation was sufficient under the covenant of good faith and fair dealing.

The alleged uniform course of conduct applied to a proposed class supports certification for the issue of whether that course of conduct creates liability. *See Chiang v. Veneman*, 385 F.3d 256, 266 (3d Cir. 2004), *abrog. on other grounds by In re Hydrogen Peroxide*, 552 F.3d at 318 n.18. Plaintiffs' theory that Defendants' conduct violated the covenant of good faith and fair dealing in the insurance contracts is common to all class members, even if their underlying PIP benefit claims vary. *See Folks v. State Farm Mut. Auto. Ins. Co.*, 281 F.R.D. 608, 617 (D. Colo. 2012). Plaintiffs' theory that Defendants breached the good faith covenant by implementing the 80th percentile cap and the passive modality rule without justification or investigation meets the

11

commonality and predominance requirements for the reasons enumerated at certification. *See Johnson*, 673 F. Supp. 2d at 273-76.

While the conduct creating liability is common across the class, the injury to each class member is not common among them. The damage to a Geico customer from a breach of the duty of good faith and fair dealing occurs when Geico frustrates the overarching purpose of the agreement, which is to provide reasonable and necessary medical expenses. Thus, while the question of whether Defendants employed "arbitrary, systematic procedures such that [class members] had their bills denied or reduced as a lack of fair dealing" is a class-wide question, individualized inquiries would still be required to determine whether individual claims were medically necessary and their expenses were reasonable.

3.  *Consumer Fraud*

Count VI is for consumer fraud, which requires proving that Defendants intentionally concealed material facts with the intent that others would rely upon such concealment. *See* 6 *Del. C.* § 2513. Plaintiffs need not show that anyone relied on the misrepresentations. *Id.* They do, however, need to show damages. Section 2525 provides a private cause of action to any "victim" of consumer fraud. 6 *Del. C.* § 2525; *see also Smith v. Peninsula Adjusting Co., Inc.*, 2011 WL 2791252, *5 (Del. Super. Ct. June 16, 2011) ("A private cause of action may be brought be a consumer . . . to recover for losses suffered as a result of fraud or deception under 6 *Del. C.* § 2513."). *Stephenson v. Capano Development, Inc.* states the three ways that the Delaware Consumer Fraud Act ("CFA") "differs from the traditional legal and equitable actions." 462 A.2d 1069, 1074 (Del. 1983). "In all other respects, however, the statute must be interpreted in light of established common law definitions and concepts of fraud and deceit." *Id.*

12

None of the three differences in any way suggests that, as compared to a traditional legal action, plaintiff does not need to show damages caused by the defendant.

The court in *Stephenson* noted that a plaintiff may recover for any injury resulting from the "direct and natural consequences of [the plaintiff's] acting on the strength of [Geico's] statements." *Id.* at 1077. Plaintiffs' proposed damages are to be the sum total of the reductions. The total amount of reductions is, in itself, a relatively easy number to calculate. The problem is, the "easy number to calculate" is not an accurate measure of damages. For the same reason that the sum total of reductions does not provide a number for the breach of contract claims, it also does not provide an accurate measurement of the amount of consumer fraud damages. Damages would still require individual determinations.

The Court's earlier opinion contrasted *In re Warfarin Sodium Antitrust Litig.* and *Nafar v. Hollywood Tanning Sys., Inc.*, 339 F. App'x 216 (3d Cir. 2009). *See Johnson*, 673 F. Supp. 2d at 276 & n.14. The Court's point was that the suitability of class treatment here was more like that in *Warfarin* than in *Nafar*. Upon further reflection, that is not so. The New Jersey Consumer Fraud Act ("NJCFA") at issue in *Nafar* and the CFA are identical in their descriptions of what is an unlawful practice, other than for differences immaterial for present purposes. *Compare 6 Del. C.* §2513(a) *with* N.J.S.A. § 56:8-2. Both state that it does not matter "whether or not any person has in fact been misled, deceived or damaged thereby." While it is true, as the Court previously stated, that the NJCFA "requires a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss," 673 F. Supp. 2d at 276, that is just as true in a suit for damages under the CFA. *Yarger v. ING Bank, fsb*, 285 F.R.D. 308, 323 n.21 (D. Del. 2012). It does not make any difference whether the victim relied upon the Defendants'

13

fraud, but absent monetary loss causally related to Defendants' fraud, there is no viable suit for damages.

When a plaintiff purchases an insurance policy which promises performance in the future—to wit, the payment of reasonable and necessary medical expenses—the insurance company's non-payment or reduced payment of medical expenses is not the same thing as its non-payment or reduced payment of *reasonable and necessary* medical expenses. Until the latter is shown, there is no proof of damages.

4. *Individualized Damages Issues Predominate and Require Decertification*

As to liability, the Court restates and adopts its rationale for certification under Rules 23(a) and 23(b)(3). *See Johnson*, 673 F. Supp. 2d at 269-81.

When the Court originally certified the classes, it was "unclear . . . whether a determination of damages . . . would depend in part on individual class members' circumstances." *Johnson*, 673 F. Supp. 2d at 270. The Court noted that individual issues might come into play in the damages analysis. *Id.* at 278 n.16. Plaintiffs represented at that time that they intended to prove damages "according to objective standards" and that "computation will never depend on the PIP claimant's individual medical profile, the severity of his or her injuries or any other subjective factors." (D.I. 224 at 73). Now, the Revised Trial Plan proposes presenting "evidence of damages . . . for each and every class member," and Mr. Setzfand's report is "by person" and by "unique" "individuals." (D.I. 432 at p. 6; D.I. 531-1). This damages model explicitly provides individual proof of damages. It therefore warrants re-evaluation of whether continued class certification as to both liability and damages is

appropriate. *See Bayshore Ford Truck v. Ford Motor Co.*, 2010 WL 415329, *4-6 (D.N.J. Jan. 29, 2010).

The inquiry begins with Plaintiffs' proposed individual proof of the "the amount of the claims Defendants wrongfully reduced, denied or delayed to class members, monies GEICO retained for its own benefit." (D.I. 432 at p. 22). This measure of damages requires showing the amount that each class member has lost out of pocket. *See Johnson*, 673 F. Supp. 2d at 277-78 & n.16 ("[W]hether Mr. Johnson has any outstanding issues concerning the payment of medical bills would be relevant to a damages inquiry."); *see also Ostrof v. State Farm Mut. Auto. Ins. Co.*, 200 F.R.D. 521, 528-29 (D. Md. 2001) (discarding a proposed "amount of reduction" measure of damages where it did not require showing out-of-pocket losses). This "out-of-pocket" measure requires Plaintiffs to make individualized proof as to whether the claimed benefits were reasonable and necessary (*i.e.*, whether the class member was entitled to the denied amount under the PIP statute in the first place). Damages determinations would be rife with individual inquiries:

> Was there in fact an accident? Was the claimant injured? Was the event adequately documented? Was review of the claim based on computer review alone? Utilization review alone? Medical review alone? On some combination of these? Did the claimant have a pre-existing medical condition? Was the treatment prescribed for the claimant necessary? Was it excessive? Were the health care provider's bills reasonable? Was there duplication in billing? Was fraud involved? Did the individual claimant actually have to pay the amount [the insurer] denied? Has the claimant been sued for the fee? And so the litany proceeds. Common sense, no less than due process, makes such inquiries relevant.[2]

*Ostrof*, 200 F.R.D. at 529.

---

[2] Of course, not all of these are at issue in this case. For example, it is undisputed that claim reviews were based on computer review alone. Nevertheless, many of these inquiries will apply to a damages analysis here.

These individual damages issues invoke review of whether questions of law or fact common to the members of the class predominate over any questions affecting only individual members under Rule 23(b)(3). The presence of individual questions as to [each class member] does not mean that the common questions of law and fact do not predominate over questions affecting individual members as required by Rule 23(b)(3).

> The presence of individual questions as to [each class member] does not mean that the common questions of law and fact do not predominate over questions affecting individual members as required by Rule 23(b)(3).
>
> To be sure, there are cases where the question of damages is so central that it can, in some sense, overtake the question of liability.

*Chiang*, 385 F.3d at 273 (internal quotation marks and citations omitted) (finding it "unlikely that the calculation of damages will be suitable for class determination"). The issue here is whether the individual proofs of damages predominate over the common liability issues set forth above—that is, whether this is "one of those cases where the question of damages is so central that it can, in some sense, overtake the question of liability." *Id.*

The analyses in *Folks*, *Wu v. MAMSI Life & Health Ins. Co.*, and *Ostrof* illustrate how readily individual damages issues, stemming from an insurer's overarching course of deceptive or illegal conduct designed to minimize the amount of PIP claims an insurer would pay, can predominate over common liability issues. *Folks*, 281 F.R.D. at 619-20; *Wu*, 269 F.R.D. 554, 562-63, 564-65 (D. Md. 2010); *Ostrof*, 200 F.R.D. 521. Each of those cases involved a class action based on denial of PIP benefits. The courts in those cases found that individualized damages inquiries predominated, even though liability would be suitable for class treatment. *Folks*, 281 F.R.D. at 619-20; *Wu*, 269 F.R.D. at 561; *Ostrof*, 200 F.R.D. at 531-32 (collecting

16

cases finding that individual inquiries predominate where reasonable and necessary medical expenses were at issue).

*Folks*, *Wu*, and *Ostrof* are persuasive here. Common liability issues do not predominate over individualized damages issues and therefore Rule 23(b)(3)'s predominance requirement is not met as to Plaintiffs' claims. Although there are common questions of law and fact as to the substantive liability of Defendants for their allegedly deficient processes and misrepresentations, these common questions would consume much less litigation time than the proof of damages for each individual class member. These individualized determinations regarding entitlement to relief and damages owed would predominate over any common questions of law and/or fact.

Plaintiffs argue in a footnote in connection with their motion to substitute new class representatives that they would be willing to seek reprocessing of claims rather than calculating damages for each class member. (D.I. 727 at p. 18 n.6). Plaintiffs did not make this argument in the briefing related to the motion to decertify or at oral argument. Plaintiffs acknowledge that the reprocessing proposal is not properly before the Court at this time. (D.I. 730 at 13).

Rule 23(b)(3) also requires that a class action be a superior method of fairly adjudicating the issues. If Defendants' implementation of the passive modality and 80th percentile rules were proven to breach the covenant of good faith and fair dealing, and/or to violate Defendants' representations in the policies, "the trial would collapse into individual mini-trials on the merits of and defenses to each class member's claim." *Wu*, 269 F.R.D. at 565. Each mini-trial would include, at a minimum, whether the PIP claim was for reasonable and necessary medical expenses, and the dollar amount each claimant was out-of-pocket on each PIP claim. Given that

17

these issues predominate over the more straightforward liability issues, a class action is not a superior method of handling these claims.

Because certification is not possible under any of Rule 23(b)'s provisions, the class must be decertified. As for Rule 23(a)'s requirements, the Court's analyses at the time of certification stand as to numerosity. *See Johnson*, 673 F. Supp. 2d at 271-72. Regarding commonality, as to substantive liability, the Court renews its findings made at the time of certification. *Id.* at 272-76. The individualized determinations with respect to the relief to be granted do not undermine Rule 23(a) commonality as to liability issues; they just predominate over them under Rule 23(b)(3)'s more demanding standard. *See Folks*, 281 F.R.D. at 617, 619-20; *In re Warfarin*, 391 F.3d at 527-28. As there is currently no class representative, I cannot address typicality or adequacy. Even assuming that a new policyholder class representative could be found, my conclusion that individualized issues predominate would not change.[3]

## CONCLUSION

For the reasons set forth herein, Plaintiffs' motion to substitute new class representatives is **DENIED**. Defendants' motion to decertify is **GRANTED**. An appropriate order will be entered.

---

[3] Defendants also argue that the class should be decertified because individual inquiries would be necessary to determine standing. (D.I. 701 at 15). Because I find that individual damages inquiries predominate, I will not address whether individualized inquiries would also be necessary to determine standing.

18